1  Eugene P. Ramirez (State Bar No. 134865)
     *eugene.ramirez@manningkass.com*
2  Kayleigh Andersen (State Bar No. 306442)
     *kayleigh.andersen@manningkass.com*
3  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
4  801 S. Figueroa St, 15th Floor
   Los Angeles, California 90017-3012
5  Telephone: (213) 624-6900
   Facsimile: (213) 624-6999
6
   Attorneys for Defendants, COUNTY OF
7  SAN BERNARDINO and DEPUTY
   CHRISTOPHER ALFRED
8
                **UNITED STATES DISTRICT COURT**
9
        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10

11  STEFFON BARBER, an individual,          Case No. 5:22-cv-00625-KK-DTBx
12              Plaintiff,                   *[District Judge, Kenly Kiya Kato,*
                                             *Magistrate Judge, David T. Bristow]*
13       v.
14  COUNTY OF SAN BERNARDINO, a             **DEFENDANTS COUNTY OF SAN**
15  municipal entity, and DOES 1 through    **BERNARDINO AND DEPUTY**
    10, inclusive,                          **CHRISTOPHER ALFRED'S**
16                                          **NOTICE OF MOTION AND**
                Defendant.                  **MOTION FOR SUMMARY**
17                                          **JUDGMENT AND/OR SUMMARY**
                                            **ADJUDICATION; MEMORANDUM**
18                                          **OF POINTS AND AUTHORITIES;**
                                            **DECLARATION OF KAYLEIGH**
19                                          **ANDERSEN AND EXHIBITS**

20                                          Filed concurrently with:
                                              *Separate Statement of Uncontroverted*
21                                              *Facts;*
                                              *Request for Judicial Notice;*
22                                              *Notice of Lodging of Non-Paper*
                                              *Exhibits; and*
23                                              *[Proposed] Order*

24                                          Judge:  Hon. Kenly Kiva Kato
                                            Date:   11/13/2025
25                                          Time:   9:30 a.m.
                                            Crtrm.: 3, 3rd Floor
26

27  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

28        **PLEASE TAKE NOTICE THAT** on November 13, 2025, at 9:30 a.m., or as

---

MANNING | KASS

soon thereafter as counsel may be heard, in Courtroom 3, 3rd Floor of the above-referenced Court located at 3470 Twelfth Street, Riverside, CA 92501-3801, Defendants COUNTY OF SAN BERNARDINO ("the County") and DEPUTY CHRISTOPHER ALFRED ("Deputy Alfred") (together, "the Defendants") will and hereby do move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in favor of all Defendants as to all of Plaintiff Steffon Plaintiff's ("Plaintiff's") claims asserted in the Complaint.

This motion is made on the ground that the Defendants are entitled to judgment as a matter of law and on the following grounds:

1.     The Defendants are entitled to judgment on Plaintiff's first and second causes of action brought under 42 U.S.C. § 1983 because those claims are barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994).

2.     Deputy Alfred is entitled to judgment on Plaintiff's first cause of action under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment because undisputed facts demonstrate that the force used was reasonable under the totality of the circumstances facing the officers. Furthermore, Deputy Alfred is entitled to qualified immunity because there is no evidence that the use of force violated any clearly-established law.

3.     The County  is entitled to judgment on Plaintiff's second cause of action for *Monell* liability based on unconstitutional custom, policy, or practice because there is no underlying constitutional violation.  Further, there is no evidence of any longstanding unlawful custom, policy, or practice.

4.     Deputy Alfred is entitled to judgment on Plaintiff's third cause of action for battery because undisputed facts demonstrate that the force used by Deputy Alfred was objectively reasonable.  Furthermore, the County is not vicariously liable because there are no underlying wrongful acts.

5.     Deputy Alfred is entitled to judgment on Plaintiff's fourth cause of action for negligence because undisputed facts demonstrate that Deputy Alfred acted

2

MANNING | KASS

reasonably under the totality of the circumstances and did not breach any duty of due care that they owed to Plaintiff.  Furthermore, the County is not vicariously liable because there are no underlying wrongful acts.

6.     Deputy Alfred is entitled to judgment on Plaintiff's fifth cause of action for violation of the Bane Act because undisputed facts demonstrate that there was no underlying constitutional violation.  Furthermore, there is no evidence of any specific intent to violate Plaintiff's constitutional rights.   In addition, the County is not vicariously liable because there are no underlying wrongful acts.

7.     Deputy Alfred is entitled to judgment on Plaintiff's sixth cause of action for intentional infliction of emotional distress because the undisputed facts demonstrate that there is no evidence that Deputy Alfred's conduct was "extreme and outrageous" or that he had the requisite intent. Furthermore, there is no evidence of Plaintiff's severe and emotional distress or causation.  In addition, the County is not vicariously liable because there are no underlying wrongful acts.

This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the concurrently-filed statement of uncontroverted facts, and declaration of Kayleigh Andersen (with exhibits), all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any such additional evidence or argument as the Court may allow prior to ruling on the motion.

Pursuant to Civil Local Rule 7-3, the parties met and conferred via videoconference on September 30, 2025 regarding the issues raised in this motion.. Kayleigh Andersen participated on behalf of Defendants and Renee Masongsong and Rodney S. Diggs participated on behalf of Plaintiff at the videoconference.  The parties thoroughly discussed each issue to be raised in the motion but were unable to reach a resolution.

1    DATED:  October 9, 2025          Respectfully submitted,

2                                     **MANNING & KASS**
3                                     **ELLROD, RAMIREZ, TRESTER LLP**

4

5                                     By:    ___/s/ Kayleigh Andersen___
6                                            Eugene R. Ramirez
                                             Kayleigh A. Andersen
7                                            Attorneys for Defendants, COUNTY OF
                                             SAN BERNARDINO and DEPUTY
8                                            CHRISTOPHER ALFRED

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANNING | KASS

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................. 8

II.   STATEMENT OF FACTS .................................................................. 10

      A.    9-1-1 Call on April 27, 2021 .................................................. 10

      B.    Deputy Alfred Responds to the Scene .................................... 11

      C.    Deputy Alfred Fired Shots at Plaintiff To Prevent Serious Bodily Injury or Harm to Himself .................................................... 12

      D.    Plaintiff Was Convicted of California Penal Code section 245(c) ....... 13

      E.    Plaintiff Did Not Seek Assistance for Any Mental or Emotional Injuries .............................................................................. 13

III.  LEGAL STANDARD ........................................................................ 13

IV.   ARGUMENT ..................................................................................... 14

      A.    Plaintiff's Federal Claims Are Barred Under *Heck v. Humphrey* ........ 14

      B.    Deputy Alfred Is Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Excessive Force Claim (Claim 1) .................... 17

            1.    The Force Used Was Reasonable and Not Excessive Under the Totality of the Circumstances ........................... 17

                  a.    Plaintiff Posed an Immediate Threat ............................. 18

                  b.    Active Resistance ......................................................... 21

            2.    No Violation of Any Clearly-Established Law .................... 21

      C.    Monell Claim Fails (Claim 2) ................................................. 22

      D.    Battery Claim Fails (Claim 3) ................................................. 23

      E.    Negligence Claim Fails (Claim 4) ........................................... 24

      F.    Bane Act Claim Fails (Claim 5) .............................................. 25

      G.    Intentional Infliction of Emotional Distress Fails (Claim 6) .............. 25

V.    CONCLUSION .................................................................................. 26

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................. 14

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ............................ 23

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) .................................... 17, 21, 22

*Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614 (9th Cir. 2023) .................... 18, 21

*Gaxiola v. City of Richmond Police Dept.*, 131 Fed.Appx. 508 (9th Cir. 2005)

............................................................................................................................ 19, 22

*Gordon v. Cnty. of Orange*, 6 F.4th 961 (9th Cir. 2021) .......................................... 23

*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................... 17, 18

*Heck v. Humphrey,* 512 U.S. 477 (1994) ........................................................... 14, 17

*Johnson v. Cnty. of L.A.*, 340 F.3d 787 (9th Cir. 2003 ....................................... 23, 25

*Kisela v. Hughes*, 584 U.S. 100 (2018) .................................................................... 22

*Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) ...................................... 14

*Lockett v. Cnty. of Los Angeles*, 977 F.3d 737 (9th Cir. 2020) ................................ 22

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) .............................. 19, 20

*Napouk v. Las Vegas Metro. Police Dep't,* 123 F.4th 906 (9th Cir. 2024) .............. 16

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099 (9th Cir. 2000) ......................................................................................................................... 14

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ............................................................... 22

*San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725 (9th Cir. 2009) ................................................................................................... 23

*Sanders v. City of Pittsburg*, 14 F.4th 968 (9th Cir. 2021) ..................................... 14

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ............................................. 16

*Tennessee v. Garner*, 471 U.S. 1 (1985) .................................................................. 16

*United States v. Aceves-Rosales*, 832 F.2d 1155 (9th Cir. 1987) ............................ 16

*Waid v. Cnty. of Lyon*, 87 F.4th 383 (9th Cir. 2023) ..............................................17, 22

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ..............................................20, 22

**STATE CASES**

*Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) ..................................................24

*J.J. v. M.F.* 223 Cal.App.4th 968 (2014) ..............................................23, 25, 26

*Kentucky Fried Chicken of Cal., Inc. v. Superior Court* 14 Cal.4th 814
    (1997) ..............................................................................23, 25, 26

*People v. White*, 101 Cal. App. 3d 161 (1980) ..........................................................16

**FEDERAL STATUTES**

Fed. R. Civ. P. 56(a) ..........................................................................................14

**STATE STATUTES**

Cal. Civ. Code § 50..........................................................................................23

Cal. Pen. Code § 187(a) ....................................................................................13

Cal. Pen. Code § 245(c) ....................................................................................13

**MANNING | KASS**

7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 27, 2021, Deputy Christopher Alfred ("Deputy Alfred") responded to a 911 call in the city of Adelanto because Plaintiff ("Plaintiff") made Maria Gallo ("Ms. Gallo") and Joseph Cocchi ("Mr. Cocchi") fear for their safety by slamming his hand on their cars, blocking them from parking, trying to open their car doors, and asking the married couple to drive him somewhere. Mr. Cocchi told Deputy Alfred he thought Plaintiff might have a gun although, admittedly, Mr. Cocchi stated he did not see one. Deputy Alfred also received information that Plaintiff might also be under the influence of drugs or alcohol.

After speaking to Ms. Gallo and Mr. Cocchi, Deputy Alfred identified the Plaintiff and attempted to speak with him. However, Plaintiff refused to comply multiple times and instead, got into his vehicle, and reversed the vehicle in an attempt to seriously injure or kill Deputy Alfred. Because the driveway was bordered on both sides by tall fences or a wall, and there was no time and opportunity for Deputy Alfred to move out of the path of Plaintiff's reversing vehicle without putting Deputy Alfred at a greater risk of being seriously injured or killed, Deputy Alfred fired six shots at Plaintiff in order to avoid being seriously harmed or killed. Plaintiff was injured in the head and treated.

Plaintiff was eventually convicted by jury of assault with a deadly weapon likely to produce great bodily injury (California Penal Code § 245(c).) His conviction is now final.   Notably, at the hearing on the revocation of his probation, Plaintiff was found to be in violation of his probation terms and the Court found by a preponderance of the evidence that Plaintiff knew that Deputy Alfred was a police officer.

In addition, Plaintiff also did not attend therapy or counseling or take any medication for any mental or emotional types of injuries.

Plaintiff now brings an action against Deputy Alfred and the County claiming

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE
OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES**

excessive use of force and other related claims. As further set forth in this Motion for Summary Judgment ("MSJ"), the undisputed facts show that as a matter of law, there is no genuine dispute as to many material fact and the Defendants are entitled to judgment as a matter of law on all causes of action.

First, under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), Plaintiff's criminal conviction for violation of California Penal Code section 245(c) bars his first and second causes of action brought under 42 U.S.C. § 1983 because a judgment in Plaintiff's favor on those causes of action would call into question the conviction.

Second, Deputy Alfred is entitled to judgment on Plaintiff's first cause of action under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment because the undisputed facts demonstrate that the force used was reasonable under the totality of the circumstances. Specifically, the undisputed facts demonstrate that the Deputy Alfred genuinely and reasonably believed that Plaintiff posed an imminent threat to him when he reversed the vehicle directly at Deputy Alfred, thereby justifying the use of deadly force. Furthermore, Deputy Alfred is entitled to qualified immunity because there is no evidence that the use of force violated any clearly-established law. On the contrary, well-settled precedent at the time of the incident authorized use of deadly force when a suspect uses a car as a weapon, as Plaintiff did here.

Third, the County is entitled to judgment on Plaintiff's second cause of action for *Monell* liability based on unconstitutional custom, policy, or practice because there is no underlying constitutional violation. Further, there is no evidence of any longstanding unlawful custom, policy, or practice.

Fourth, the Defendants are entitled to judgment on Plaintiff's third cause of action for battery. The undisputed facts demonstrate that the force used by Deputy Alfred was objectively reasonable and the County cannot be vicariously liable because there are no underlying wrongful acts.

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

<u>Fifth</u>, the Defendants are entitled to judgment on Plaintiff's fourth cause of action for negligence. The undisputed facts show that Deputy Alfred acted reasonably under the totality of the circumstances and did not breach any duty of due care that they owed to Plaintiff; and the County is not vicariously liable because there are no underlying wrongful acts.

<u>Sixth</u>, the Defendants are entitled to judgment on Plaintiff's fifth cause of action for violation of the Bane Act because the undisputed facts demonstrate that there was no underlying constitutional violation; there is no evidence of any specific intent to violate Plaintiff's constitutional rights; and the County is not vicariously liable because there are no underlying wrongful acts.

<u>Seventh</u>, the Defendants are entitled to judgment on Plaintiff's sixth cause of action for intentional infliction of emotional distress because the undisputed facts demonstrate that there is no evidence that Deputy Alfred's conduct was "extreme and outrageous" or that he had the requisite intent; there is no evidence of Plaintiff's severe and emotional distress or causation; and the County is not vicariously liable because there are no underlying wrongful acts.

## II.    STATEMENT OF FACTS

### A.    9-1-1 Call on April 27, 2021

On April 27, 2021, at approximately 11:12pm, the San Bernardino County Sheriff's Dispatch Department ("Dispatch") received a call from Ms. Gallo reported that Plaintiff was "going crazy", wouldn't let her into her residence, and was asking her to take him somewhere, and that when she was trying to park her driveway, he kept trying to open the doors. SUF 1, 2. Ms. Gallo stated that she Plaintiff was her neighbor and that he lived behind them at 12013 White Avenue. SUF 3. Ms. Gallo reported that Plaintiff was wearing a white t-shirt and jeans and looked black. SUF 4. Ms. Gallo stated that Plaintiff's vehicle was a black Chevy Trailblazer. SUF 7. Mr. Cocchi advised that Plaintiff was now taking things out of the vehicle and possibly under the influence of alcoholic beverages and/or drugs. SUF 5, 6.

---

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

**B.    Deputy Alfred Responds to the Scene**

Dispatch transmitted over the air to call a unit to respond.  SUF 8.  Deputy Alfred copied the call. SUF 9.  Dispatch also transmitted a description of the neighbor as being a black male, last seen wearing a white t-shirt and jeans and that he was possibly intoxicated. SUF 10.

At approximately 11:19 p.m., Deputy Alfred arrived on the scene. SUF 12. He was the first and only deputy to arrive. SUF 12. Deputy Alfred spoke to Ms. Gallo and Mr. Cocchi who explained that Plaintiff was threatening them and slamming his hands on the car and stated that it was the neighbor behind them.  SUF 13, 14. Mr. Cocchi told Deputy Alfred that they were scared. SUF 16. Deputy Alfred believed this as Ms. Gallo and Mr. Cocchi fearing for their safety. SUF 17. Mr. Cocchi also advised Deputy Alfred that Plaintiff might have a gun but he did not see a gun. SUF 15.

Deputy Alfred walked down the driveway to speak to the Plaintiff. SUF 18. The surface of the driveway was gravel and dirt. SUF 19.  The driveway was the width of about one car lane and because it was so narrow, in order to leave the driveway, you had to reverse your vehicle. SUF 22. It was dark outside and there was very limited ambient lighting from the street posting. SUF 23. On one side of the driveway, the east side, was a chain-link fence.  SUF 24. On the other side of the driveway, the west side, was a picket fence. SUF 24.

Using a flashlight as his light source, Deputy Alfred illuminated the ground in front of him. SUF 25. Deputy Alfred was wearing the uniform of the County's Sherriff's Department: a tan top, green pants, and a face covering. SUF 26. Deputy Alfred dropped his face covering towards his neck. SUF 27.

Deputy observed Plaintiff's vehicle parked in the driveway, with the front of the vehicle facing south.  SUF 28. The cargo hatch, facing north and towards Deputy Alfred, was open. SUF 29. At approximately 10 to 15 feet from the back of Plaintiff's vehicle, north of the vehicle, Deputy Alfred started giving commands to

---

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff. SUF 30. Deputy Alfred stayed behind the vehicle because in the event of fire or an exchange in gunfire, the vehicle could serve as a barrier.  SUF 31. Where he was standing, to the left (the east) was a chain-link fence approximately three to four feet away. SUF 32 To the right (the west) was the wall of the residence, approximately three to four feet away. SUF 33.

Deputy Alfred gave Plaintiff verbal commands to display his hands and walk backwards towards him, telling Plaintiff to come to him multiple times, and telling Plaintiff to display his hands multiple times. SUF 34. Plaintiff failed to comply and instead, in response to Deputy Alfred's command to show him his hands, Plaintiff asked Deputy Alfred to show Plaintiff his hands.  SUF 35.  Then Plaintiff told Deputy Alfred to back up. SUF 35. Plaintiff also heard Deputy Alfred say "Don't reach into your vehicle" and Plaintiff intentionally reached into his vehicle. SUF 36. At approximately 11:22 p.m., Deputy Alfred called out over the radio that Plaintiff was not complying with his commands. SUF 37. Plaintiff then entered his vehicle and Deputy Alfred ordered Plaintiff to not enter his vehicle. SUF 38. When Plaintiff got into his vehicle, Deputy Alfred observed that the vehicle's engine was on and idling. SUF 38.

**C.    Deputy Alfred Fired Shots at Plaintiff To Prevent Serious Bodily Injury or Harm to Himself**

Deputy Alfred was still about 10 feet from the back of the vehicle when Plaintiff got into the car. SUF 40. Then Deputy Alfred observed the reverse lights of Plaintiff's vehicle come on. SUF 42. Deputy Alfred believed that Plaintiff's purpose in getting into the car was to leave but he had no indication that Plaintiff would reverse the vehicle until the reverse lights came on. SUF 41, 43. The engine of the vehicle revved and the car started moving in reverse. SUF 44, 45. The tires of the vehicle gained traction on the hard packed dirt. SUF 46.

Deputy Alfred believed that Plaintiff's intention in reversing the vehicle was to harm him. SUF 47. However, Deputy Alfred could not move out of the path of

12

the reversing vehicle because to his left (the east) was a chain-link fence and to the right (the west) of him was the wall of the residence. SUF 24. A couple of feet ahead of Deputy Alfred was an opening, three to four feet from the stucco on the west side. SUF 48. In order to get to the opening to the right (the west) of him, Deputy Alfred would have had to move closer to the reversing vehicle. SUF 49.

Based on his training and the Sherriff's Department use of force policies regarding firearms being discharged at a moving vehicle in order to prevent himself from suffering great bodily injury or death, and because the time and circumstances did not allow Deputy Alfred to step aside or else result in Deputy Alfred being run over by the Plaintiff's vehicle, Deputy Alfred fired six shots at Plaintiff, injuring Plaintiff in the head. SUF 40-50; 58-67. After Deputy Alfred's last shot, the truck moved back approximately one foot and stopped. SUF 51. While Plaintiff was removed from his vehicle, the vehicle slowly reversed and one of Deputy Alfred's partners placed it in park to stop the vehicle from reversing. SUF 54.

### D.    Plaintiff Was Convicted of California Penal Code section 245(c)

Plaintiff was arrested and booked for Penal Code section 245(c), assault with a deadly weapon on a peace officer. SUF 55.  Plaintiff was charged, along with attempted murder (Cal. Pen. Code § 187(a)), of assault with a deadly weapon likely to produce great bodily injury (Cal. Pen. Code § 245(c)) and convicted by jury of assault with a deadly weapon likely to produce great bodily injury (Cal. Pen. Code § 245(c).) SUF 56.  Plaintiff was sentenced to 14 years. SUF 57.

### E.    Plaintiff Did Not Seek Assistance for Any Mental or Emotional Injuries

Plaintiff did not attend therapy or counseling or take any medication for any mental or emotional types of injuries. SUF 68.

## III.    LEGAL STANDARD

Summary judgment is proper where the movant "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

13

1  matter of law." Fed. R. Civ. P. 56(a).  A moving party without the ultimate burden

2  of persuasion at trial can meet its burden in one of two ways:  by either "produc[ing]

3  evidence negating an essential element of the nonmoving party's case" or

4  "show[ing] that the nonmoving party does not have enough evidence of an essential

5  element of its claim or defense to carry its ultimate burden of persuasion at trial."

6  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1106 (9th Cir.

7  2000).  The nonmoving party then "must set forth specific facts showing that there

8  is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9  (1986).

10  **IV.    ARGUMENT**

11       **A.    Plaintiff's Federal Claims Are Barred Under *Heck v. Humphrey***

12       Plaintiff brings two claims under § 1983—excessive force (claim 1); and

13  municipal liability for unconstitutional custom, practice, or policy (claim 2);

14  Defendants are entitled to summary judgment on these two claims because they are

15  barred under *Heck v. Humphrey,* 512 U.S. 477, 487 (1994) *("Heck").*

16       Under *Heck*, a § 1983 claim ***must*** be dismissed if "a judgment in favor of the

17  plaintiff would necessarily imply the invalidity of his conviction or sentence,"

18  unless the conviction or sentence has already been invalidated. 512 U.S. 477), 487.

19  "Thus, *Heck* bars a plaintiff's action if it would negate an element of the offense ***or***

20  allege facts inconsistent with the plaintiff's conviction."  *Sanders v. City of*

21  *Pittsburg*, 14 F.4th 968, 970–71 (9th Cir. 2021).  By preventing collateral attacks on

22  convictions by way of civil actions, the *Heck* bar furthers the principles of "finality

23  and consistency."  *Heck*, 512 U.S. at 484–85.  To decide whether success on a

24  section 1983 claim would necessarily imply the invalidity of a conviction, the Court

25  must determine which acts formed the basis for the conviction. *Lemos v. Cnty. of*

26  *Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (*en banc*). Where, as here, the

27  conviction is based on a jury verdict, the Court looks to the record of the criminal

28  case—including the jury instructions—to determine which facts the jury necessarily

14

1    found.  *Id.*

2        Here, Plaintiff was convicted with one count of assault with a deadly weapon

3    other than a firearm or assault with force likely to cause great bodily injury in

4    violation of California Penal Code section 245(a)(1). Declaration of Kayleigh

5    Andersen In Support of Motion for Summary Judgment ("Andersen Decl."), ¶ 10,

6    Exhibit ("Ex.") H (Jury Verdict Minute Order); Request for Judicial Notice ("RJN")

7    Ex. 1 (Jury Instructions from the Transcript of Criminal Trial.).  The jury was

8    instructed on the following elements of the offense:

> 1.    The defendant did an act **with a deadly weapon** other than a firearm, that by its nature would directly and **probably result in the application of force to a person**;
> 2.    The defendant **did that act willfully**;
> 3.    When the defendant acted, **he was aware of facts** that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone;
> AND
> 4.    When the defendant acted, he had the present ability to apply force with **a deadly weapon** other than a firearm to a person.
> …
> **A deadly weapon is an object, instrument or weapon that is used in such a way that is capable of causing and likely to cause death or great bodily injury**.  The deadly weapon in this case is alleged to be a vehicle. **Great bodily injury means significant or substantial harm. It is an injury that is greater than minor or moderate harm**.

23    *Id.*; *see also* Cal. Pen. Code § 245(c).

24        Plaintiff's conviction bars claims 1 and 2 in this action because in order to

25    prevail on his excessive use of force claims, Plaintiff would necessarily have to

26    prove that he did ***not*** pose a significant threat of death or serious physical injury to

27    Deputy Alfred when Deputy Alfred shot him; to do so would necessarily invalidate

28    the jury's conviction of Plaintiff for California Penal Code section 245(a)(1); and

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

thus claims 1 and 2 are barred by *Heck*. Given the state criminal conviction, to
prevail on claims 1 and 2, it is impossible for Plaintiff under *Heck* to establish that
Deputy Alfred's use of force in this action was unreasonable under the totality of the
circumstances.

In order to prevail on claims 1 and 2, Plaintiff would need to prove that he did
***not*** pose a significant threat of death or serious physical injury to Deputy Alfred
when they shot at him.  To do so would contradict the jury's findings that Plaintiff
acted "with a deadly weapon" or force "likely to produce great bodily injury" when
he accelerated at Deputy Alfred on April 27, 2021. *Id.* Moreover, "It is indisputable
that an automobile can inflict deadly force on a person and that it can be used as a
deadly weapon." *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir.
1987) (*per curiam*).

As Plaintiff cannot establish that he did ***not*** pose a significant threat of death
or serious physical injury as a matter of law, Deputy Alfred's actions were
reasonable as a matter of law. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("[w]here
the officer has probable cause to believe that the suspect poses a ***threat of serious
physical harm***, either to the officer or to others, it is ***not constitutionally
unreasonable*** to prevent escape by using deadly force.")(emphasis added); *Napouk
v. Las Vegas Metro. Police Dep't,* 123 F.4th 906, 919 (9th Cir. 2024)(declining "to
create a rule by which officers have a duty to indefinitely retreat when ***faced with an
immediate threat***".)(emphasis added).

Under California law, a peace officer cannot be engaged in the "lawful"
performance of his duties ***unless*** the officer was using appropriate force during the
course of effecting the arrest. *See People v. White*, 101 Cal. App. 3d 161, 167
(1980); *see also Smith v. City of Hemet*, 394 F.3d 689, 695–96 (9th Cir. 2005) (*en
banc*).  Plaintiff's conviction under Penal Code section 245(a) necessarily implies
that the jury concluded that the Deputy Alfred ***was*** acting lawfully when Plaintiff
accelerated at them.  Because judgment in favor of Plaintiff on his excessive-force

16

1 claim (and derivative claims) would once again contradict Plaintiff's conviction, the
2 claims are similarly barred under *Heck*.

3    In order to overcome the *Heck* bar, Plaintiff bears the burden of
4 demonstrating that the conviction was "reversed on direct appeal, expunged by
5 executive order, declared invalid by a state tribunal authorized to make such
6 determination, or called into question by a federal court's issuance of a writ of
7 habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey* 512 U.S. 477, 486–487
8 (1994). "A claim for damages bearing that relationship to a conviction or sentence
9 that has *not* been so invalidated is not cognizable under § 1983." *Id.* It would be
10 impossible for Plaintiff to do so here and thus the Defendants are entitled to
11 summary judgment.

12    **B.    Deputy Alfred Is Entitled to Qualified Immunity on Plaintiff's**
13    **Fourth Amendment Excessive Force Claim (Claim 1)**

14    "Qualified immunity protects government officials from liability for civil
15 damages insofar as their conduct does not violate clearly established statutory or
16 constitutional rights of which a reasonable person would have known." *Waid v.*
17 *Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023) ("*Waid*").  It protects government
18 officials "***unless*** (1) they violated a federal statutory or constitutional right, ***and*** (2)
19 the unlawfulness of their conduct was clearly established at the time." *District of*
20 *Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)(emphasis added) ("*Wesby*"). Here,
21 Plaintiff's claim fails under both prongs.

22    **1.    The Force Used Was Reasonable and Not Excessive Under**
23    **the Totality of the Circumstances**

24    The pertinent question under the Fourth Amendment is whether the use of
25 force was "objectively reasonable in light of the facts and circumstances confronting
26 [the officers], without regard to their underlying intent or motivation." *Graham v.*
27 *Connor*, 490 U.S. 386, 397 (1989) ("*Graham*").  The Court must weigh the "nature
28 and quality of the intrusion on an individual's Fourth Amendment interests against

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

the countervailing governmental interests at stake." *Id.* at 396. Factors that are considered in assessing the government interests at stake include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The "***most important***" factor is whether the suspect posed an "***immediate threat***" to the safety of the officers or others. *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023) ("*Strickland*") (emphasis added.) Notably, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396. Here, the force used was reasonable and not excessive under the totality of the circumstances faced by Deputy Alfred.

### a.    Plaintiff Posed an Immediate Threat

The most dispositive factor is the immediate threat posed by Plaintiff. Undisputed evidence demonstrates that after refusing to comply with Deputy Alfred's commands, Plaintiff told Deputy Alfred to "back up" and then reversed his vehicle. SUF 34-46. Undisputed facts show that Deputy Alfred observed the reverse lights illuminated and then the vehicle did in fact reverse. SUF 42-46. Notably, when Plaintiff was removed from the vehicle, the car continued to reverse and Deputy Alfred's partner had to change the gear from reverse to park in order to prevent the vehicle from moving. SUF 54.

Deputy Alfred believed that Plaintiff's intention in reversing the vehicle was to harm him. SUF 47. Deputy Alfred had no other means of moving out of the path of the vehicle because he was in a narrow driveway, no wider than the width of one

18

1  car lane, with a chain link fence on his left and the wall of the stucco on the right.

2  SUF 21-22, 24, 48. While there was an opening to his right wide (to the west),

3  Deputy Alfred would have had to move closer to the direction of the reversing

4  vehicle in order while the vehicle was reversing towards him, putting him at an ever

5  greater risk of serious injury or harm. SUF 49.

6      In *Gaxiola v. City of Richmond Police Dept.*, the Ninth Circuit found that the

7  officers' use of deadly force against the suspect was objectively reasonable because

8  the suspect was attempting to use his car as a deadly weapon. 131 Fed.Appx. 508,

9  509 (9th Cir. 2005) ("*Gaxiola").* Specifically, the suspect had used his car to strike

10  one of the officers, knocking him backwards, and the Ninth Circuit held that "[e]ven

11  if [one of the officers was] standing by the driver's side door and ***not at the front*** of

12  the vehicle at the time the suspect was shot, the threat to [the officers] by the

13  suspect's continued operation of the car was both serious and immediate." *Id."*

14  (emphasis added). The Ninth Circuit found that "[t]he officers reasonably believed

15  that if they did not use deadly force at that time, the car would strike [one of the

16  officers] again, likely running him over. ***There is no evidence to the contrary.***" *Id.*

17  Similarly here, Deputy Alfred faced a serious and immediate threat being directly in

18  the path of the reversing vehicle and there is no evidence to the contrary. SUF 42-

19  49. Thus, Deputy Alfred's use of force was objectively reasonable under the

20  circumstances. *Gaxiola*, 131 Fed.Appx. 508, 509 (9th Cir. 2005). *")*

21      In *Monzon v. City of Murrieta*, the Ninth Circuit found that the officers' use

22  of force was reasonable and justified by the imminent threat that the suspect

23  presented when he "ignored commands to stop the van and drove near, toward, and

24  amongst the officers on foot." 978 F.3d 1150, 1157 (9th Cir. 2020) ("*Monzon*"). In

25  *Monzon*, it was disputed whether the suspect drove directly at the officers or tried to

26  drive around them. *See id.* at 1154–55, 1157.) For example, one of the officers was

27  " up to 15 feet away from the van and was not in its direct path at the time he

28  opened fire." Nonetheless, the Ninth Circuit held that "[a] reasonable officer in the

19

position of [the officers] would have probable cause to believe that Monzon posed ***an immediate threat to the safety of one or more of the other officers or himself*** as Monzon drove his car toward and among the five officers." *Id.* at 1158).  The Court observed:

> Officers are permitted to use deadly force to protect the lives of other officers.  Here, where it is undeniable that Monzon drove his van amongst the officers and toward some of them, it does not matter whether Monzon drove the van toward all of the officers when the shooting began. In this chaotic situation spanning a mere 4.5 seconds, the officers that Monzon did not drive directly toward were justified in using deadly force to protect the lives of their fellow officers that Monzon was driving toward.

*Id.* at 1159).  The same is true here. On these undisputed facts, "[a] reasonable officer in the position of [Deputy Alfred] would have probable cause to believe that [Plaintiff] posed ***an immediate threat to the safety of … himself***."  *See id.* at 1158).

The Ninth Circuit's decision in *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), is similarly on point.  There, the Court held that there was no constitutional violation where the officer shot at a minivan that was accelerating around him. *Id.* at 551. As relevant here, the Ninth Circuit rejected the plaintiff's attempt to defeat summary judgment by offering a "sanitized version of the incident." *Id.*  The Court also rejected the plaintiff's attempt to argue that one of the officers mistakenly thought another officer was being run over when he, in fact, was not, because "***the critical inquiry is what [the officer] perceived***." *Id.* at 551.   Here, Deputy Alfred perceived Plaintiff to be an imminent threat to his safety and feared that Plaintiff was trying to harm him when Plaintiff reversed his vehicle towards Deputy Alfred. SUF 47.

Even if the officers reasonably, but mistakenly, believed that Plaintiff posed an imminent threat, their use of deadly force was still justified under the totality of circumstances. "Officers can have reasonable, but mistaken, beliefs as to the facts

20

1   establishing the existence of an immediate threat, and in those situations courts will

2   **not** hold that they have violated the Constitution." *Strickland*, 69 F.4th at 621.

3   **b.    Active Resistance**

4   There is no dispute that Plaintiff put up significant resistance to being

5   detained by refusing to comply with Deputy Alfred's commands multiple times.

6   SUF 34-36. Just like in *Gaxiola* and *Monzon*, Plaintiff's driving "endangered

7   [Deputy Alfred] and left them with only seconds to consider less severe

8   alternatives." 131 Fed.Appx. at 509; 978 F.3d at 1157.  Similar to that case, it

9   would be "a serious mistake" to "dissect, evaluate, and second-guess the officers'

10  actions piecemeal" and with the benefits of hindsight. *Monzon,* 978 at 1157–58.  As

11  in *Monzon*, this was a "very dynamic and chaotic" situation "where [Deputy Alfred

12  was] faced with the immediate threat of significant harm (*see id.* at 1154) that was

13  caused **solely** by Plaintiff's actions of resisting arrest and reversing his car into

14  Deputy Alfred.  SUF 34-47. In *Monzon,* the officers "were forced to make split-

15  second decisions about a driver who deliberately turned his car around and drove it

16  toward and between them."  *Id.*  Similarly, here, the Court cannot ignore "the

17  totality of the dynamic and quickly changing circumstances" that Plaintiff created

18  by refusing to comply with Deputy Barber's commands, then immediately getting

19  into his vehicle and reversing his vehicle at Deputy Alfred. *See id.;* SUF 34-47.

20  Simply put, the uncontested facts are that Plaintiff was reversing his vehicle at

21  Deputy Alfred and Deputy Alfred had to make a split-second decision . As such, the

22  use of force was justified.

23  **2.    No Violation of Any Clearly-Established Law**

24  "Clearly established" means that, "at the time of the officer's conduct, the law

25  was sufficiently clear that every reasonable official would understand that what he is

26  doing is unlawful." *Wesby*, 583 U.S. 48, 63 (2018)internal citations omitted).

27  "[E]xisting law must have placed the constitutionality of the officer's conduct

28  beyond debate." *Id*.  "This demanding standard protects all but the plainly

21

MANNING | KASS

MANNING | KASS

incompetent or those who knowingly violate the law." *Id*.  The Supreme Court has repeatedly told courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam).  "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine here, excessive force, will apply to the factual situation the officer confronts." *Id*.  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id*.  Plaintiff  bears the burden of showing that the right was clearly established at the time of the conduct.  *See Waid v. County of Lyon*, 87 F.4th at 388.

Here, Plaintiff cannot show that at the time of the conduct, "the law was sufficiently clear that every reasonable official would understand that [the officers' conduct was] unlawful." *See Wesby*, 583 U.S. at 63.  As discussed above, Plaintiff cannot point to any "***settled law***" that would have ***clearly defined*** with the ***necessary specificity*** that the use of force under these circumstances was unreasonable "***beyond debate***." *See id.* at 63–64.  On the contrary, applicable U.S. Supreme Court and Ninth Circuit precedent at the time of the incident established that the officers' conduct was objectively reasonable.  *See Gaxiola,* 131 Fed.Appx. at 509; *Monzon*, 978 F.3d at 1158; *Wilkinson*, 610 F.3d at 551; *see also Plumhoff v. Rickard*, 572 U.S. 765, 776–77 (2014) (police officers justified in using deadly force to stop the suspect from speeding away).

### C.    Monell Claim Fails (Claim 2)

Plaintiff asserts two *Monell* claims against the County:  (1) unlawful policy, custom, or practice, and (2) failure to train.  Both claims fail because, as discussed above, Plaintiff cannot establish an underlying constitutional violation.  *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims … require a plaintiff to show an underlying constitutional violation.").  Plaintiff's

22

1  conspiracy to violate constitutional rights fails for the same reason.  *See San Diego*
2  *Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 740 (9th
3  Cir. 2009) ("the absence of any actionable constitutional violation negates by
4  definition the existence of a conspiracy to violate constitutional rights").

5      Furthermore, there is absolutely no evidence of any *unlawful* custom, policy,
6  or practice.  The only evidence is that the County had specific policies in place
7  governing *appropriate* use of force.  Andersen Decl., ¶ 14; Ex. L.  Nor can Plaintiff
8  demonstrate any "**longstanding** practice or custom" that is "so permanent and well
9  settled as to constitute a 'custom or usage' with the force of law."  *Gordon v. Cnty.*
10  *of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021).  Finally, there is absolutely no
11  evidence of any failure to train or that any failure was done with deliberate
12  indifference.  *See  Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir.
13  2021).

14      **D.      Battery Claim Fails (Claim 3)**

15      Plaintiff's state-law claim for battery is dependent on an officer applying an
16  unreasonable amount of force. *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th
17  Cir. 2003).  Here, as discussed above, the force used by Deputy Alfred was objectively
18  reasonable.  Thus, the state-law claim for battery fails as a matter of law. In addition,
19  the County is not vicariously liable because there are no underlying wrongful acts.
20  *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir. 2003).

21      Notably, the use of reasonable force to protect oneself from injury applies to
22  **all** persons, and not just police officers. Cal. Civ. Code § 50 ("[a]ny necessary force
23  may be used to protect from wrongful injury the person … of oneself."); *Kentucky*
24  *Fried Chicken of Cal., Inc. v. Superior Court* 14 Cal.4th 814, 829 (1997) ("[b]oth
25  article I, section 1 of the California Constitution and [California] Civil Code section
26  50 recognize the right of any person to defend property with reasonable force"); *J.J.*
27  *v. M.F.* 223 Cal.App.4th 968, 976 (2014) ("In a suit for assault and battery, the
28  defendant is not liable if that defendant reasonably believed, in view of all the

23

MANNING | KASS

1  circumstances of the case, that the plaintiff was going to harm him or her and the

2  defendant used only the amount of force reasonably necessary to protect himself or

3  herself.")

4  **E.    Negligence Claim Fails (Claim 4)**

5  "[I]n order to prove facts sufficient to support a finding of negligence, a

6  plaintiff must show that [the] defendant had a duty to use due care, that he breached

7  that duty, and that the breach was the proximate or legal cause of the resulting

8  injury." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013).  "The

9  reasonableness of an officer's conduct is determined in light of the totality of

10  circumstances."  *Id.* at 629–30.  Here, Deputy Alfred's conduct was reasonable

11  under the totality of the circumstances and his conduct complied with all of the

12  County Sherriff's Department policies.

13  Considering the behavior of Plaintiff being uncooperative, possibly being

14  under the influence, and having threatened Ms. Gallo and Mr. Cocchi; the lack of

15  options to move out of the way of the reversing vehicle; and both the potential

16  serious injury to himself as well as the fact that Plaintiff was planning to leave,

17  Deputy Alfred's use of force was reasonably based on the totality of the

18  circumstances perceived by him at the time, and not with the benefit of hindsight.

19  Given that he believed that immediate action must be taken in order to prevent

20  serious harm to himself, Deputy Alfred used lethal force to prevent an immediate

21  threat of death or seriously bodily injury or escape by Plaintiff. *Id.*

22  Finally, with respect to moving vehicles, Deputy Alfred complied with the

23  policy that permits firearms to be discharged when a vehicle, as was here, time and

24  circumstances did not allow him to move out of the path of the vehicle while it was

25  being operated in a manner which "is likely to result in great bodily injury or death

26  to a safety member or another person, and other reasonable means of defense have

27  been exhausted, or are not available or practical." *Id.*; Andersen Decl., ¶ 14; Ex. H-J.

28  In addition, the County is not vicariously liable because there are no

24

MANNING | KASS

underlying wrongful acts.  *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir. 2003).

Notably, the use of reasonable force to protect oneself from injury applies to **all** persons, and not just police officers. Cal. Civ. Code § 50; *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* 14 Cal.4th 814, 829 (1997); *J.J. v. M.F.* 223 Cal.App.4th 968, 976 (2014).

### F.    Bane Act Claim Fails (Claim 5)

The Bane Act provides for liability for interference with an individual's rights "by threat, intimidation, or coercion."  Cal. Civ. Code § 52.1(b).  Here, as discussed above, there is no evidence of underlying constitutional violation.

Furthermore, Bane Act violations require "***specific intent*** to violate the arrestee's right to freedom from unreasonable seizure."  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043–45 (9th Cir. 2018).  Here, there is absolutely no evidence to suggest that the Deputy Alfred acted with any specific intent to interfere with Plaintiff's rights.  Rather, undisputed evidence demonstrates that Deputy Alfred was only reacting to the imminent threat that as a result of Plaintiff's actions.

In addition, the County is not vicariously liable because there are no underlying wrongful acts.  *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir. 2003).

Notably, the use of reasonable force to protect oneself from injury applies to **all** persons, and not just police officers. Cal. Civ. Code § 50; *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* 14 Cal.4th 814, 829 (1997); *J.J. v. M.F.* 223 Cal.App.4th 968, 976 (2014).

### G.    Intentional Infliction of Emotional Distress Fails (Claim 6)

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

1  proximate causation of the emotional distress by the defendant's outrageous

2  conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009). Even accepting as true

3  Plaintiff's assertion that he "sustained severe mental and emotional distress," Dkt.

4  No. 72 at ¶ 1-1 at 7, and further assuming his "emotional distress of such substantial

5  . . . or enduring quality that no reasonable person in civilized society should be

6  expected to endure it," *Hughes*, 46 Cal. 4th at 1051, there is no evidence in the

7  record to support a finding in Plaintiff's favor on this cause of action.

8          Plaintiff cannot prove Deputy Alfred's conduct was "so extreme as to exceed

9  all bounds of that usually tolerated in a civilized community." *Id.* Nor is there any

10 evidence that any of the law enforcement personnel at the scene that day had the

11 requisite "intent to cause, or reckless disregard for the probability of causing,

12 emotional distress." *Miller v. United Parcel Serv., Inc.*, 2004 WL 1771571, at *14

13 (N.D. Cal. Aug. 6, 2004), *aff'd*, 196 F. App'x 489 (9th Cir. 2006) (noting intent is

14 an element of the cause of action). Finally, the undisputed evidence demonstrates

15 that Plaintiff never sought treatment for any alleged mental and emotional distress.

16 *Id.* Plaintiff did not attend therapy or counseling or take any medication for any

17 mental or emotional types of injuries. *Id.* Again, even assuming she had proven a

18 constitutional violation for which the Department could be held liable, summary

19 judgment is warranted on this cause of action.

20         In addition, the County is not vicariously liable because there are no

21 underlying wrongful acts. *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir.

22 2003).

23         Notably, the use of reasonable force to protect oneself from injury applies to

24 ***all*** persons, and not just police officers. Cal. Civ. Code § 50; *Kentucky Fried Chicken*

25 *of Cal., Inc. v. Superior Court* 14 Cal.4th 814, 829 (1997); *J.J. v. M.F.* 223

26 Cal.App.4th 968, 976 (2014).

27 **V.    CONCLUSION**

28         The Court should grant Defendants' motion and enter summary judgment in

26

1 | their favor.  In the alternative, the Court should grant partial summary judgment.

2 | DATED:  October 9, 2025          Respectfully submitted,

3

**MANNING & KASS**

4 | **ELLROD, RAMIREZ, TRESTER LLP**

5

6

7 | By:       /s/ Kayleigh Andersen

Eugene R. Ramirez

8 | Kayleigh A. Andersen

Attorneys for Defendants, COUNTY

9 | OF SAN BERNARDINO and

DEPUTY CHRISTOPHER ALFRED

10

MANNING | KASS

27

1

## CERTIFICATE OF COMPLIANCE

2

3    The undersigned, counsel of record for the Defendants County of San

4    Bernardino and Deputy Christopher Alfred, certifies that this brief contains 6,583

5    words, which complies with the word limit of L.R. 11-6.1.

6

7    DATED:  October 9, 2025          Respectfully submitted,

8
                                     **MANNING & KASS**
9                                    **ELLROD, RAMIREZ, TRESTER LLP**

10

11

12                                   By:  _____/s/ Kayleigh Andersen_____

13                                        Eugene R. Ramirez
                                          Kayleigh A. Andersen
14                                        Attorneys for Defendants, COUNTY
                                          OF SAN BERNARDINO and
15                                        DEPUTY CHRISTOPHER ALFRED

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

2

**DECLARATION OF KAYLEIGH ANDERSEN**

I, Kayleigh Andersen, declare as follows:

3

4

1.      I am an attorney duly admitted to practice before this Court.  I am a

5

partner at Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for

6

Defendants, COUNTY OF SAN BERNARDINO ("the County") and DEPUTY

7

CHRISTOPHER ALFRED ("Deputy Alfred") (together, "the Defendants").  I have

8

9

personal knowledge of the facts set forth herein, and if called as a witness, I could

10

and would competently testify thereto.  I make this declaration in support of

11

12

Defendants County of San Bernardino and Deputy Christopher Alfred's Notice of

13

Motion and the Defendants' Motion for Summary Judgment And/or Summary

14

Adjudication ("the Motion").

15

2.      Pursuant to Federal Rules of Civil Procedure Rule 56, the Court may

16

17

consider these exhibits in ruling on the Motion because they are  admissible at trial.

18

3.      Attached as **Exhibit A** is a true and correct copy of the transcript of the

19

20

deposition of Deputy Alfred taken on August 26, 2025, highlighted for the Court's

21

convenience, and related Exhibits 1-8, 10.

22

4.      Attached as **Exhibit B** (which is being lodged) is a true and correct

23

24

copy of the 911 call received by the Dispatch Department of the San Bernardino

25

County Sheriff's Department on  April 27, 2021 produced by Defendant in this

26

action under Bates number COSB 001247.

27

28

5.      Attached as **Exhibit C** (which is being lodged) is a true and correct

2

MANNING | KASS

MK

1  copy of the audio recording from Deputy Alfred's department-issued digital belt

2  recorder produced by Defendant in this action under Bates numbers COSB 001249.

3

4       6.     Attached as **Exhibit D** is a true and correct copy of the CAD report for

5  April 27, 2021 as related to the incident produced by Defendant in this action under

6  Bates numbers COSB  001169-001175.

7

8       7.     Attached as **Exhibit E** (which is being lodged) is a true and correct

9  copy of the audio recording from the  San Bernardino County Sheriff's Department

10 on  April 27, 2021 dispatch calling the unit about the incident produced by

11 Defendant in this action under Bates numbers COSB 001248.

12

13      8.     Attached as **Exhibit F** is a true and correct copy of the Arrest/Booking

14 Application produced by Defendant in this action under Bates number COSB

15 001176.

16

17      9.     Attached as **Exhibit G** is a true and correct copy of the transcript of the

18 deposition of Plaintiff Steffon Plaintiff taken on September 9, 2025, highlighted for

19 the Court's convenience.

20

21      10.    Attached as **Exhibit H** is a true and correct copy of the Minute Order

22 of the jury verdict of the Superior Court of California, County of San Bernardino,

23 dated December 16, 2024 in *People of the State of California v. Steffon Todd*

24 *Plaintiff*, Case No. FVI21001037, also submitted as **Exhibit 1** to the Request for

25 Judicial Notice.

26

27      11.    Attached as **Exhibit I** is a true and correct copy of the Minute Order of

28

3

MANNING | KASS

MK

the sentencing of the Superior Court of California, County of San Bernardino, dated June 20, 2025 in *People of the State of California v. Steffon Todd Plaintiff*, Case No. FVI21001037, also submitted as **Exhibit 2** to the Request for Judicial Notice.

12.   Attached as **Exhibit J** is a true and correct copy of the Minute Order of the hearing on revocation of probation of the Superior Court of California, County of San Bernardino, dated December 16, 2024 in *People of the State of California v. Steffon Todd Plaintiff*, Case No. FVI21001037, also submitted as **Exhibit 3** to the Request for Judicial Notice.

13.   Attached as **Exhibit K** is a true and correct copy of the relevant pages of the transcript of the trial in *People of the State of California v. Steffon Todd Plaintiff*, Case No. FVI21001037, also submitted as **Exhibit 4** to the Request for Judicial Notice.

14.   Attached as **Exhibit L** is a true and correct copy of the relevant pages of the San Bernardino County Sheriff's Department Manual, pages omitted for brevity produced by Defendant in this action under Bates numbers COSB000001, COSB000672-COSB000677, and COSB000684.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9th day of October, 2025, at Los Angeles, California.

/s/Kayleigh Andersen
Kayleigh Andersen

4

MANNING | KASS