UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

STEFFON BARBER, an individual, )
)
Plaintiff, )
)
vs. ) Case No.
) 5:22-cv-00625-KK-SHK
COUNTY OF SAN BERNARDINO, )
a municipal entity, and )
DOES 1 THROUGH 10, )
inclusive, )
)
Defendant. )
_____)

REMOTE DEPOSITION OF

STEFFON TODD BARBER

APPEARING REMOTELY VIA ZOOM

SEPTEMBER 9, 2025

Reported by:
F. ELOIS DUNCAN
CSR NO. 4066
Job No. 13309719



THE SULLIVAN GROUP OF COURT REPORTERS
AN ESQUIRE DEPOSITION SOLUTIONS COMPANY

```
 1         MS. ANDERSEN:  You're muted.                          9:06AM
 2         THE VIDEOGRAPHER:  Our court reporter today is F.
 3   Elois Duncan representing the Sullivan Group of Court
 4   Reporters.
 5         The court reporter will now swear in the              9:06AM
 6   witness.
 7
 8                    STEFFON TODD BARBER,
 9   the witness herein, having been first duly sworn, was
10   examined and testified as follows:                          9:07AM
11
12                        EXAMINATION
13   BY MS. ANDERSEN:
14       Q   All right.  Good morning, Mr. Barber.  Can you
15   hear me okay?                                               9:07AM
16       A   Yes, ma'am.
17       Q   Thank you for your patience this morning.  I
18   still hear a lot of background noise, so let's do our
19   best, all of us here, to speak slowly and maybe give a
20   little bit more time after we are done speaking before the  9:07AM
21   next person speaks, okay?
22       A   Yes.
23       Q   Great.
24           Have you ever had your deposition taken before?
25       A   Not to my -- no.                                    9:07AM
```

|   |   |   |
|---|---|---|
| 1 | with the colors of their uniform? | 10:01AM |
| 2 | A   Yes. | |
| 3 | Q   And what color top or shirt do they wear? | |
| 4 | A   Um, it's either tan or green. | |
| 5 | Q   And then they also have the green pants.  Are | 10:01AM |
| 6 | you familiar with that? | |
| 7 | A   Yes, yes. | |
| 8 | Q   But you couldn't tell what this -- what Deputy | |
| 9 | Alfred was wearing when you had contact with him.  It | |
| 10 | wasn't until later that you learned what he was wearing; | 10:01AM |
| 11 | is that correct? | |
| 12 | A   Yes, ma'am. | |
| 13 | Q   Were there any lights on the front of the home | |
| 14 | that illuminated any part of the driveway? | |
| 15 | A   No, not until after.  Not until after from what | 10:02AM |
| 16 | I hear. | |
| 17 | Q   Let me clarify that.  Are you saying that the | |
| 18 | lights were turned on after your contact with him? | |
| 19 | A   The lights were installed after my arrest. | |
| 20 | Q   Okay. | 10:02AM |
| 21 | So there were -- at the time of this incident | |
| 22 | you're not aware of any lights on the front of the house | |
| 23 | that illuminated the driveway in any way? | |
| 24 | A   No. | |
| 25 | Q   Okay. | 10:02AM |

|   |   |   |
|---|---|---|
| 1 | A   Yes, ma'am. | 10:05AM |
| 2 | Q   Okay. | |
| 3 |     Did you tell this individual to show you his | |
| 4 | hand? | |
| 5 | A   Yes. | 10:05AM |
| 6 | Q   Why did you tell an individual that you couldn't | |
| 7 | see to show you his hand? | |
| 8 | A   I don't recall.  I couldn't see him. | |
| 9 | Q   Okay. | |
| 10 |     And it's your testimony that you didn't see a | 10:05AM |
| 11 | flashlight at all; correct? | |
| 12 | A   That's my testimony. | |
| 13 | Q   Okay. | |
| 14 |     Did you hear the deputy give you commands to not | |
| 15 | get into your vehicle? | 10:06AM |
| 16 | A   Yeah, I heard those commands, but I didn't know | |
| 17 | who it was. | |
| 18 | Q   Okay. | |
| 19 |     Have you ever been -- before this incident, had | |
| 20 | you ever been robbed? | 10:06AM |
| 21 | A   I mean, this is not something I want to talk | |
| 22 | about. | |
| 23 | THE REPORTER:  It's not something I want to talk | |
| 24 | about? | |
| 25 | THE WITNESS:  Yes. | 10:06AM |

| | | |
|---|---|---|
| 1 | THE REPORTER: You talk and you move your head. | 10:06AM |
| 2 | BY MS. ANDERSEN: | |
| 3 | Q  Okay. | |
| 4 | Well, during any -- if you were ever robbed | |
| 5 | prior to this incident, did that individual tell you not | 10:06AM |
| 6 | to get into your vehicle? | |
| 7 | A  No. | |
| 8 | Q  How long is that driveway from, let's say the | |
| 9 | front of your house all the way to the street? | |
| 10 | MR. DIGGS: Calls for speculation. | 10:07AM |
| 11 | But you can answer. | |
| 12 | THE WITNESS: Um -- I think the estimates that they | |
| 13 | made that day were around 40 feet. I'm not sure. | |
| 14 | BY MS. ANDERSEN: | |
| 15 | Q  Other than the deputy telling you to not get | 10:07AM |
| 16 | into the vehicle, did you hear him say anything else to | |
| 17 | you before you got in the vehicle? | |
| 18 | A  No. | |
| 19 | Q  Prior to getting into your vehicle, did you hear | |
| 20 | the deputy say, "Don't reach into your vehicle"? | 10:07AM |
| 21 | MR. DIGGS: Objection; that assumes facts not in | |
| 22 | evidence and it lacks foundation based on prior responses. | |
| 23 | But you can answer. | |
| 24 | THE WITNESS: Yeah. | |
| 25 | And I intentionally reached in my vehicle to see | 10:08AM |

```
 1  if he was talking to me, and nothing happened, so I                10:08AM
 2  figured he wasn't talking to me.  The voice was at a
 3  distance.  I do remember that.
 4  BY MS. ANDERSEN:
 5       Q   Okay.                                                      10:08AM
 6           What were you reaching for when he told you not
 7  to reach?
 8       A   I think my cell phone was on my seat.
 9       Q   Okay.
10           What -- if you were trying to figure out who he            10:08AM
11  was talking to, what do you recall him saying prior to him
12  saying, "Don't reach into your vehicle," or words to that
13  effect?
14       A   I don't recall.
15       Q   Did you hear him say anything to the effect of,            10:08AM
16  "Hey, come talk to me," anything like that?
17       A   No.  I mean, I heard all that in trial, but as
18  far as asking me, do I remember all that, I don't.
19       Q   Okay.
20           When you reached into your vehicle, did you grab           10:09AM
21  your cell phone?
22       A   I believe I did --
23       Q   Okay.
24       A   -- I recall correctly.
25       Q   And then after you grabbed your cell phone, did            10:09AM
```

```
 1   you hear any other words from the deputy?              10:09AM
 2        A   No, I don't.
 3        Q   I guess other than don't -- don't reach in there
 4   or don't reach for that or words to that effect?
 5        A   Don't get in that f-ing car or something to    10:09AM
 6   that.  I don't know.
 7        Q   Okay.
 8            And then eventually you see it get into the
 9   driver's seat of the vehicle; is that correct (verbatim)?
10        A   That is correct.                               10:09AM
11        Q   Okay.
12            Did you close the driver's door as well?
13        A   That is correct.
14        Q   And at the time you got into the driver's seat
15   of the vehicle, was the trunk open?                     10:09AM
16        A   That hatch was open, yes.
17        Q   Okay.
18            Do you know why it was open?
19        A   I failed to close it.
20        Q   Okay.                                          10:10AM
21            And then was the vehicle already on, like,
22   turned on when you got into the driver's seat?
23        A   It sure was.  It was --
24        Q   I'm sorry.  Can you repeat the last part of what
25   you just said.                                          10:10AM
```

|   |   |   |
|---|---|---|
| 1 | A   I said it sure was.  It was idling. | 10:10AM |
| 2 | Q   Okay. | |
| 3 | A   Yes. | |
| 4 | Q   And then did you put it in reverse once you | |
| 5 | closed your door? | 10:10AM |
| 6 | A   I don't recall.  I must have.  I must have | |
| 7 | because the car rolled backwards -- | |
| 8 | Q   Okay. | |
| 9 | A   -- once I was out of the car.  But I don't | |
| 10 | recall putting it in reverse. | 10:10AM |
| 11 | Q   Okay. | |
| 12 | So you say -- but you do recall the car moving | |
| 13 | backwards? | |
| 14 | A   Yes, from -- from -- from trial, that's what.  I | |
| 15 | don't recall. | 10:11AM |
| 16 | MR. DIGGS:  Only -- | |
| 17 | THE WITNESS:  The person, I don't recall. | |
| 18 | (Simultaneously speaking, unreportable.) | |
| 19 | BY MS. ANDERSEN: | |
| 20 | Q   Your counsel -- I think I know what he was going | 10:11AM |
| 21 | to say. | |
| 22 | You can correct me if I'm wrong. | |
| 23 | So I'm not looking for what you learned at trial | |
| 24 | or anything like that.  I'm asking for your recollection, | |
| 25 | Mr. Barber.  If you don't recall something, I don't really | 10:11AM |

```
 1  want you guessing or telling me stuff you heard at trial       10:11AM
 2  that you didn't know at the time or didn't hear at the
 3  time.  Does that make sense?
 4         A    I apologize.
 5         Q    That's okay.                                       10:11AM
 6              Mr. Diggs, is that correct?
 7         MR. DIGGS:  That's correct.  Thank you, Counsel.
 8         MS. ANDERSEN:  Of course.  Thank you.
 9              Madam Court Reporter, do you need him to repeat
10  something?  I'm sorry.                                         10:11AM
11         THE REPORTER:  I don't think so.  Thank you.
12  BY MS. ANDERSEN:
13         Q    So is it your testimony that at the time you got
14  into the driver's seat, you still had not seen this man in
15  your driveway, Mr. Barber?                                     10:11AM
16         A    No.
17         Q    And you do not recall whether you put it in
18  reverse or not; is that correct?
19         A    That's correct.
20         Q    But you do have a recollection of the car moving   10:12AM
21  backwards; is that correct?
22         A    Yes.
23         MR. DIGGS:  Misstates the witness's testimony.
24  BY MS. ANDERSEN:
25         Q    Was that yes?  I'm sorry.                          10:12AM
```

|   |   |   |
|---|---|---|
| 1 | something about not reaching in the car, did you make any | 10:16AM |
| 2 | attempt to go back in your house?  No? |  |
| 3 | It keeps cutting out.  I just want to make sure |  |
| 4 | it's clear.  I'm sorry I'm asking you to repeat yourself. |  |
| 5 | Did you say no? | 10:16AM |
| 6 | A   No, I don't recall. |  |
| 7 | Q   It keeps cutting out.  I'm just asking you to |  |
| 8 | repeat yourself.  Did you say no? |  |
| 9 | A   No, I don't recall. |  |
| 10 | Q   Okay. | 10:16AM |
| 11 | After -- okay, let's go back to the vehicle |  |
| 12 | rolling backwards.  Do you know how far it rolled |  |
| 13 | backwards from where it was parked originally when you got |  |
| 14 | in? |  |
| 15 | A   That car, it didn't hit the fence.  It was right | 10:17AM |
| 16 | there.  So at least a couple feet. |  |
| 17 | Q   Okay. |  |
| 18 | And how many times were you hit? |  |
| 19 | A   Once. |  |
| 20 | Q   Okay. | 10:17AM |
| 21 | And where were you hit? |  |
| 22 | A   The back of the cranium. |  |
| 23 | Q   Do you recall whether the vehicle was still |  |
| 24 | rolling backwards when you were hit in the back of the |  |
| 25 | head? | 10:17AM |

```
 1        Q   Do you attribute any, like, mental or emotional     10:35AM
 2   injuries to the events of the incident?
 3        A   Yeah, I am wheelchair-bound because of it.
 4        Q   Have you attended any therapy or counseling to
 5   discuss the incident?                                        10:35AM
 6        A   No.  I think they offer that on the mainline.
 7   But as far as the prison -- I think the office that's on
 8   the mainline, everything is very limited here, just where
 9   we come to get our points for custody, what security level
10   we are, and as soon we are endorsed, we go to wherever       10:35AM
11   we're going to be housed at for the duration of our time.
12   We stop -- we get shipped out.  It's not a permanent
13   place.  Right here the mainline has a lot more to offer
14   from what I understand.
15        Q   Okay.                                               10:36AM
16            So because you're relatively new to Wasco State
17   Prison, you're in some type of temporary housing?
18        A   Yes, ma'am.
19        Q   Okay.
20            Do you have a cellmate right now?                   10:36AM
21        A   No.
22        Q   Okay.
23            Did you ever attend any type of therapy or
24   counseling while you were at the West Valley Detention
25   Center?                                                      10:36AM
```

| | | |
|---|---|---|
| 1 | A    No. | 10:36AM |
| 2 | Q    Have you taken any medication for any mental or | |
| 3 | emotional types of injuries? | |
| 4 | A    You are talking like mental health medication? | |
| 5 | Q    Yes.  Anything like that since the incident? | 10:37AM |
| 6 | A    No.  I refused all that. | |
| 7 | Q    Okay. | |
| 8 |     Have you ever spoken with Deputy Alfred from the | |
| 9 | sheriff's department at any time before or after the | |
| 10 | incident? | 10:37AM |
| 11 |     Was that a no?  I think you cut out. | |
| 12 | A    No.  No, ma'am. | |
| 13 | Q    Okay. | |
| 14 |     I actually think that's all the questions I | |
| 15 | have.  Thank you, Mr. Barber. | 10:37AM |
| 16 | A    Sure. | |
| 17 | MR. DIGGS:  Let's take five minutes.  I don't think | |
| 18 | I'm going to have any questions, Counsel.  But I just want | |
| 19 | to make sure that I speak with co-counsel just in case. | |
| 20 | So we're going to take about a five-minute break. | 10:38AM |
| 21 | MS. ANDERSEN:  Sounds good. | |
| 22 | MR. DIGGS:  Okay. | |
| 23 | THE VIDEOGRAPHER:  Off the record.  The time is | |
| 24 | 10:38 a.m. | |
| 25 | (Whereupon there was a pause in the proceedings.) | 10:38AM |

REPORTER'S CERTIFICATION

STATE OF CALIFORNIA    )
                       )
COUNTY OF LOS ANGELES  )

    I, F. ELOIS DUNCAN, a Certified Shorthand Reporter of the State of California, do hereby certify:

    That prior to being examined, the witness named in the foregoing deposition solemnly stated to testify to the truth, the whole truth and nothing but the truth;

    That the said deposition was taken down by me remotely in stenotype at the time and place therein stated and thereafter reduced to typewriting under my direction, and that the deposition transcript is a true and correct record of the proceedings here held.

    I further certify that I am not counsel or attorney for any of the parties hereto or in any way interested in the event of this cause and that I am not related to any of the parties thereto.

    Dated this 19th day of September, 2025.

_____
F. ELOIS DUNCAN
Certified Shorthand Reporter
License No. 4066