

# DEPARTMENT MANUAL

SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT

COSB000001

When a field release is to be made, the field officer shall be responsible for the following:

- Prepare an original CHP 180 form, "Recovered Vehicle Report," and mark it plainly "Release to Owner in As Is Condition."
- Assign the DR number used on the original stolen report, if the original DR was issued by this Department.
- Obtain the signature of the owner or his agent in the release section of the CHP 180 form.
- Notify the station/division as soon as possible, so that the Daily Log and computer system can be updated.

### 3.574. Vehicle Appraisal/Valuation

Pursuant to the Vehicle Code, all safety officers of the Department are designated "appraisers" and have the authority to make appraisals of the value of vehicles for the purposes of Chapter 10 of the Vehicle Code.

- In all instances when an officer removes a vehicle pursuant to Chapter 10 of the Vehicle Code by estimating the value as one hundred dollars ($100) or less, over one hundred dollars ($100) but less than three hundred dollars ($300), the officer shall then enter that estimate and the appropriate time and date of appraisal, the appraising officer's signature and his identification number on the CHP 180 Form.
- A copy of the completed CHP 180 Form, with the appraisal, given to the tow/storage company shall constitute compliance with the Vehicle Code.

### 3.604. Use of Reasonable Force: Defined

Any safety member who has reasonable cause to believe that the person to be arrested has committed a public offense may

use objectively reasonable force to effect the arrest, to prevent escape or to overcome resistance.

The "reasonableness" of the force used shall be evaluated from the perspective of a reasonable safety member in the same situation, based on the totality of the circumstances known to or perceived by the safety member at the time, rather than with the benefit of hindsight. The totality of the circumstances shall account for occasions when safety members may be forced to make quick judgments about using force, and the amount of force that is necessary, in circumstances that are tense, uncertain and rapidly evolving.

A safety member who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested. A safety member shall not be deemed an aggressor or lose his right to self-defense by the use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance.

### 3.606. Factors Determining Reasonable Force

When determining whether or not to apply any level of force and evaluating whether a deputy has used reasonable force, a

number of factors shall be taken into consideration. These factors include, but are not limited to:

- The seriousness of the suspected offense or reason for contact with the individual.
- The behavior of the individual being confronted (as reasonably perceived by the deputy at the time).
- The age, size, relative strength, skill level, and number of subjects vs. deputies.
- The level of injury and/or exhaustion of the deputy.
- The level of drug/alcohol influence exhibited by the subjects involved (mental capacity).
- The proximity or availability of weapons.
- The availability of options (what resources are reasonably available to the deputy under the circumstances).
- The training and experience of the deputy.
- The potential for injury to citizens, deputy and suspects.
- The risk of escape.
- The existence of other exigencies.

A deputy is frequently required to make split-second decisions and the amount of time available to evaluate and respond to changing circumstances may impact the decision-making process.

While various degrees of force exist, each deputy is expected to use only the amount of force reasonable under the circumstances to successfully complete the arrest, to prevent escape, or to overcome resistance.

### 3.606.10 De-Escalation

Gaining voluntary compliance enhances officer and public safety, helps officers to defuse a situation, mitigates unintended consequences, and establishes law enforcement legitimacy and community trust.

Safety members shall use de-escalation techniques, crisis intervention tactics and other alternatives to force, as per their training, when feasible. Alternatives to force are not required by a member when the member reasonably believes that immediate action must be taken to prevent injury to themselves, another member or the public.

It is necessary for members to utilize crisis intervention tactics when applicable to a situation. If a member, based on their training and experience, determines a subject might be experiencing a crisis, the member shall consider crisis intervention tactics as an available means of de-escalation.

De-escalation techniques may include:

- Creating distance and a buffer zone between the officer and the subject;
- Establishing an effective line of communication with the subject, considering factors such as mental illness, possible intoxication, and potential medical or physical conditions; and
- Considering other available resources, including specialized units, psychiatric emergency response team clinicians, and negotiators.

New: 8-24-20

## 3.606.20 Use of Carotid Neck Restraint and Lateral Vascular Neck Restraint (LVNR)

Pursuant to Government Code 7286.5, the San Bernardino County Sheriff's Department policy does not authorize the use of a Carotid Neck Restraint or the Lateral Vascular Neck Restraint (LVNR) as an approved use of force option.

New: 1-4-21

## 3.608.  The Use of Lethal Force

The use of lethal force is justified in the following circumstances:

- A safety member may use lethal force to protect himself or others from what he reasonably believes to be an immediate threat of death or serious bodily injury.
- A safety member may use lethal force to accomplish the arrest or prevent the escape of a suspected felon, when the member has probable cause to believe that the suspect poses a significant threat of death or serious bodily injury to the deputy or others.

Safety members shall not use lethal force to protect themselves from assaults that are perceived by the member to not likely have serious results.

A safety member shall not fire at a person who is called upon to halt on mere suspicion and who simply runs away to avoid arrest. Nor should a deputy fire at a "fleeing felon" if the member has any doubt whether the person to be fired at is in fact the person against whom the use of lethal force is permitted under this policy.

The use of lethal force cannot be justified solely by stating that it was initiated due to an order or authorization given by another department member. Safety members must be able to articulate a justified and appropriate use of lethal force, based on information available to them at the time it is used. There may be times when an authorization to use lethal force has been communicated, and yet circumstances have changed to the point that lethal force is no longer reasonable. Using an occupied vehicle to barricade a roadway, or ramming a vehicle is generally not recommended, but there may be certain limited situations where these techniques are necessary and appropriate.

Firearms should not be discharged from or at a moving vehicle except in exigent circumstances.  In these situations, a safety

member must have articulable reason(s) for this use of lethal force, which include, but are not limited to the following:

- A person in the vehicle is threatening the safety member or another person with lethal force by means other than the vehicle; or

- The vehicle is operated in a manner which is likely to result in great bodily injury or death to a safety member or another person, and other reasonable means of defense have been exhausted, or are not available or practical. This may include, if time and circumstances allow, moving out of the path of the vehicle.

### 3.610. Reporting the Use of Force

A supervisor's use of force investigation shall be completed if circumstances involved in an incident fall under the guidelines set forth in this policy section. In such instances the investigating supervisor shall complete the BlueTeam Use of Force Report.

The term "use of force" is defined as any physical effort used to control, restrain, or overcome resistance by another.

The following requirements apply to any use of force incidents involving the application of open hand strikes, fists, feet, canines, impact weapons, Taser, or chemical agents or as directed by a supervisor:

1. All members involved make an oral report to their supervisor as soon as practicable after the incident.
2. At the direction of the incident supervisor, the initiating member shall complete a related crime report containing a detailed description of the facts involved including, but not limited to:
    1. The threat perceived by the member.

- The primary safety member shall complete a BlueTeam entry in the "Show of Force" module. The entry shall include a brief summary of the incident documenting the totality of circumstances. The entry shall also include the names of all safety members and involved civilians.
- If the incident is not associated with a DR, the call history number shall be used. Include all attachments such as a call history, audio recordings, video, photographs, etc.
- The BlueTeam Show of Force entry will be sent to the supervisor for approval.
- The supervisor shall ensure all criminal and supplemental reports by involved members, and/or other documentation of the incident, including but not limited to, all evidence such as photographs, audio and video recordings etc. are entered into the BlueTeam show of force report before sending it to the station/division commander or his/her designee.
- The final submission will be made by the station/division commander or designee in the IA Pro system.

For BlueTeam documentation requirements refer to Department policy 3.610.

Revised: 4-13-21

## 3.610.50 Self-Defense or Defense of Others

A safety member may use objectively reasonable force to protect themselves or others from death or great bodily injury. If a member has an objectively reasonable belief that a subject poses a threat of death or great bodily injury and conventional force options are impractical, unavailable or have been tried and were unsuccessful, the member may use a type of force not specifically authorized by Department policy, so long as the force used is objectively reasonable.

New: 1-4-21

## 3.612. Use of Firearms: Approved Firearm Immediately Available

Generally, while on-duty, safety members shall be armed, with an approved firearm, on their person. Exceptions include while at a jail facility, when assignment dictates otherwise, or where prohibited by law or regulation. When entering a jail facility rifles may remain locked in a rifle rack in a locked vehicle and sidearms may be locked in the vehicle trunk or provided gun locker.

Safety employees and Designated Level 1 Reserve Deputy Sheriffs are not required to be armed while off-duty. The decision to be armed while off-duty shall be discretionary with the involved safety employee or Designated Level 1 Reserve Deputy.

It is the responsibility of all safety employees to have an approved firearm immediately available on one's person, in the passenger area of a vehicle, at one's residence, or in some other easily accessible area, while off-duty and when reasonably practicable.

No off-duty safety member is authorized to carry a weapon on their person, have a weapon easily accessible or within arm's reach, or to engage in any law enforcement activity when the member is so impaired by any alcohol, narcotic, or other controlled substances that they are unable to exercise the level of judgement and care of a reasonable law enforcement officer.

Generally, having a weapon in a vehicle's locked trunk, a locked container, or secured at one's residence is considered "not immediately available/easily accessible."

Storage and transportation of firearms shall comply with applicable law. When leaving a handgun in an unattended vehicle, safety members shall:

- Lock the handgun in the vehicle's trunk;
- Secure the handgun in a locked container that is out of plain view;
- Secure the handgun in a locked utility or tool box;

If a vehicle is not equipped with a trunk, safety members shall:

- Lock the handgun in a center utility console out of plain view;
- Secure the handgun in a locking glove box;
- Secure the firearm as allowed by other applicable law.

Storage of firearms shall comply with Penal Code section 25100 (criminal storage of firearm accessible to child) whenever applicable.

### 3.612.10  Use of Firearms: Field of Fire

Regardless of the nature of the crime or the justification for firing at a suspect, deputies must remember that their basic responsibility is to protect the public. Deputies shall not fire under conditions that would subject bystanders or hostages to death or possible injury, except to preserve life or prevent serious bodily injury. Firing under such conditions is not justified unless the failure to do so at the time would create a substantial, immediate threat of death or serious bodily injury.

### 3.614.  Drawing or Exhibiting Firearms

Unnecessarily or prematurely drawing or exhibiting a firearm limits a safety member's alternatives in controlling a situation, creates unnecessary anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the

firearm. A safety member's decision to draw or exhibit a firearm should be based on the tactical situation and the safety member's reasonable belief there is a substantial risk that the situation may escalate to the point where deadly force may be justified. When a safety member has determined that the use of deadly force is not necessary, the safety member shall, as soon as practicable, secure or holster the firearm.

### 3.616. Warning Shots

Generally, warning shots should not be fired.

### 3.618. Shooting at Fleeing Misdemeanants

Safety members shall not use deadly force to effect the arrest or prevent the escape of a person whose only offense is classified solely as a misdemeanor under the Penal Code.

### 3.620. Surrendering a Weapon

A safety member or his partner may be at the mercy of an armed suspect who has the advantage, but experience has shown that the danger to a safety member is not reduced by his giving up his gun upon demand. Surrendering his weapon might mean giving away his only chance for survival; therefore, a safety member should use every tactical tool at his disposal to avoid surrendering his weapon.

This must be the individual officer's decision, as it shall depend on the particular circumstances surrounding his safety. Extreme caution in this regard should be exercised.

### 3.622. Use of Force in Vehicle Pursuits

The Department recognizes that Code 3 and pursuit driving are two of the most common, yet most hazardous of law enforcement functions, subjecting both the involved safety