RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE MCNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Tel:   (213) 489-0028
Fax:   (213) 489-0552

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

Attorneys for Plaintiff STEFFON BARBER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, et al.,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTB<br><br>Assigned to:<br>District Judge Kenly Kiya Kato<br>Magistrate Judge David T. Bristow<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        11/13/2025<br>Time:       9:30 a.m.<br>Crtrm:      3<br><br>*[Filed concurrently with Plaintiff's Response to Defendants' Separate Statement of Facts; Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Scott DeFoe; Declaration of Robert Morales]* |

1

# **TABLE OF CONTENTS**

I.  INTRODUCTION ....................................................................................... 1

II.  FACTS ...................................................................................................... 2

III.  ARGUMENT .......................................................................................... 5

    A.  Plaintiff's Fourth Amendment Claim Survives ...................................... 5

        1.  The Shooting Was Excessive and Unreasonable......................... 5

        2.  Alfred is Not Entitled to Qualified Immunity ............................ 9

    B.  Plaintiff's Monell Claim Survives ........................................................ 12

    C.  Plaintiff's Claims Are Not Heck-Barred ............................................... 15

    D.  Plaintiff's State Law Claims Survive..................................................... 18

        1.  Battery........................................................................................ 18

        2.  Negligence ................................................................................. 18

        3.  Bane Act .................................................................................... 19

        4.  IIED ........................................................................................... 20

IV.  CONCLUSION ....................................................................................... 20

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE ............................................. 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A.D. v. California Highway Patrol,*
    712 F.3d 446 (9th Cir. 2013)..........................................................................11

*Acosta v. City & Cnty. of S.F.,*
    83 F.3d 1143 (9th Cir. 1996)..................................................................10, 11

*Beets v. County of Los Angeles,*
    200 Cal. App. 4th 916 (2011)........................................................................15

*Beets v. County of Los Angeles,*
    669 F.3d 1038 (9th Cir. 2012)......................................................................17

*Blankenhorn v. City of Orange,*
    485 F.3d 463 (9th Cir. 2007).........................................................................20

*Bryan v. McPherson,*
    630 F.3d 805 (9th Cir. 2010)...........................................................................6

*City of St. Lous v. Praprotnik,*
    485 U.S. 112 (1988)........................................................................................12

*Cole v. Fair Oaks Fire Protection Dist.,*
    43 Cal.3d 148 (1987)......................................................................................20

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001)..........................................................................7

*Drummond v. City of Anaheim,*
    343 F.3d 1052 (9th Cir. 2003).......................................................................11

*Gaxiola v. City of Richmond Police Dept.,*
    131 Fed. Appx. 508 (9th Cir. 2005) .................................................................9

*Gaxiola v. City of Richmond Police Dept.,*
    2004 WL 2402908 ............................................................................................9

*Glenn v. Washington Cnty.,*
    673 F.3d 864 (9th Cir. 2011)............................................................................6

*Godawa v. Byrd,*
    798 F.3d 457 (6th Cir. 2015)..........................................................................11

*Gonzalez v. City of Anaheim,*
    747 F.3d 789 (9th Cir. 2014)............................................................................6

*Graham v. Connor,*
    490 U.S. 386 (1989)..........................................................................................6

*Harris v. Roderick,*
    126 F.3d 1189 (9th Cir. 1997)..........................................................................6

*Hayes v. Cnty. of San Diego,*
    57 Cal. 4th 622 (2013)............................................................................18, 19

1    *Heck v. Humphrey,*
       512 U.S. 477 (1994) ................................................................. 15

2    *Hooper v. County of San Diego,*
3       629 F.3d 1127 (9th Cir. 2011) ................................................ 17

4    *Hope v. Pelzer,*
       536 U.S. 730 (2002) ................................................................ 11

5    *Hughes v. Pair,*
6       46 Cal. 4th 1035 (2009) .......................................................... 20

7    *Hunter v. Cty. of Sacramento,*
       652 DF.3d 1225 (9th Cir. 2011) .............................................. 13

8    *Johnson v. Bay Area Rapid Transit Dist.,*
9       724 F.3d 1159 (9th Cir. 2013) ................................................ 18

    *Johnson v. Jones,*
10     515 U.S. 304 (1995) ................................................................ 10

11   *Kirby v. Duva,*
       530 F.3d 475 (6th Cir. 2008) .................................................. 11

12   *Larez v. City of Los Angeles,*
13     946 F.2d 630 (9th Cir. 1991) .................................................. 15

14   *Monell v. Dep't Soc. Servs. of N.Y.,*
       436 U.S. 658 (2018) ................................................................ 12

15   *Monzon v. City of Murrieta,*
16     978 F.3d 1150 (9th Cir. 2020) .................................................. 9

17   *Munoz v. City of Union City,*
       120 Cal. App. 4th 1077 (2004) .............................................. 18

18   *N.S. v. Kan. City Bd. of Police Comm'rs,*
19     143 S.Ct. 2422 (2023) ............................................................ 11

20   *Orn v. City of Tacoma,*
       949 F.3d 1167 (9th Cir. 2020) ................................................ 10

21   *Oviatt v. Pearce,*
22     954 F.2d 1470 (9th Cir. 1992) ................................................ 15

    *People v. White,*
23     101 Cal. App. 3d 161 (1980) .................................................. 15

24   *Reese v. County of Sacramento,*
       888 F.3d 1030 (9th Cir. 2018) ................................................ 19

25   *Rodriguez v. City of Long Beach,*
26     2011 WL 3757122 (C.D. Cal., Aug. 25, 2011, No. SACV 10-00271 DOC) . 17

    *S.B. v. County of San Diego,*
27     864 F.3d 1010 (9th Cir. 2017) .................................................. 6

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Sanford v. Motts*,
    258 F.3d 1117 (9th Cir. 2001)........................................................................17

*Scott v. Harris*,
    550 U.S. 372 (2007)........................................................................................6

*Scott v. Smith*,
    109 F.4th 1215 (9th Cir. 2024)......................................................................11

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005)........................................................................17

*Smith v. Cupp*,
    430 F.3d 766 (6th Cir. 2005)........................................................................11

*Tabares v. City of Huntington Beach*,
    988 F.3d 1119 (9th Cir. 2021)......................................................................18

*Tennessee v. Garner*,
    471 U.S. 1  (1985)...........................................................................................6

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011).........................................................................6

*United States v. Reese*,
    2 F.3d 870 (9th Cir. 1993)............................................................................19

*Villanueva v. California*,
    986 F.3d 1158 (9th Cir. 2021)......................................................................10

*Vos. v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018).........................................................................8

*Warren v. Marcus*,
    78 F.Supp.3d 1228 (N.D. Cal. 2015) ............................................................20

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010).......................................................................8, 9

<u>Statutes</u>

California Government Code § 815.2...................................................................17

<u>Other Authorities</u>

Judicial Council of California Civil Jury Instruction No. 1305B............................18

Judicial Council of California Civil Jury Instruction No. 441 ..........................18, 19

-iv-

1    **I.    INTRODUCTION**

2    This Court should deny Defendants' motion for summary judgment in its

3    entirety. Viewing the facts in the light most favorable to Plaintiff, which this Court

4    is required to do on a motion for summary judgment, Barber posed no immediate

5    threat of death or serious bodily injury to any person at the time of Alfred's six

6    lethal shots, including because no person was about to be struck by the Trailblazer

7    with no opportunity to get out of the way. Under basic police training and standards,

8    officers can only use deadly force based on an objectively reasonably belief that the

9    person has the present ability, opportunity, and apparent intent to immediately cause

10   death or serious bodily injury. That was not the case here, where Alfred had time

11   and room to move out of the path of the slow-moving Trailblazer. As explained in

12   the declaration of Robert Morales, the Trailblazer was either not in motion when

13   Deputy Alfred started firing his shots or was moving at a slow speed of under one

14   mile per hour. When the Trailblazer reversed, it rolled backwards in a straight line,

15   and Alfred had room to move laterally to his left or right. Additionally, as

16   articulated by Plaintiff's police practices expert, Scott DeFoe, in his declaration filed

17   concurrently herewith, under the facts of this case, it would not have been

18   appropriate for Alfred to shoot Barber simply for attempting to drive away.

19   Therefore, the shooting violated Barber's rights to be free from excessive and

20   unreasonable force under federal and state law.

21   Alfred is not entitled to qualified immunity, which only applies to Plaintiff's

22   federal claims. The material facts surrounding the shooting—including Alfred's

23   distance from the Trailblazer, the Trailblazer's minimal speed, and Alfred's ability

24   to move out of its path—are hotly disputed and preclude summary judgment. With

25   respect to the first prong of qualified immunity, a reasonable jury could find that a

26   reasonable police officer in Alfred's position would not have used deadly force

27   under the facts of this case. Where the facts are disputed, only a jury can decide, and

28   summary judgment and qualified immunity must be denied. With respect to the

second prong of qualified immunity, Alfred was on notice at the time of this incident that shooting the driver of a slow-moving, non-threatening vehicle is a Fourth Amendment violation.  In determining whether Alfred was "on notice," this Court looks to legal opinions published prior to the date of the shooting and to Alfred's training. Police officers, including Alfred, are trained to move out of the path of a moving vehicle rather than shooting at the vehicle or its driver and trained that an assaultive motor vehicle does not presumptively justify the use of deadly force.

Finally, *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar Plaintiff's claims. Mr. Barber's conviction under Penal Code §245(a)(1) does not rest on the lawfulness of Alfred's use of deadly force. Barber's conviction for this lesser-included offense is entirely consistent with his claim that Alfred's later resort to deadly force was excessive. Accordingly, no element of Plaintiff's §1983 or state law claims would necessarily imply the invalidity of that conviction. This case presents quintessential jury questions about credibility, perception, and reasonableness. Because a rational jury could find that Alfred's conduct was unconstitutional and unlawful, Defendants' motion should be denied in full.

## II.    FACTS

Alfred had never seen Barber prior to this incident and had no specific information about him. (PAMF-69). At the time of the shooting, Alfred had no information that Barber had physically injured anyone. (PAMF-70). The reporting party did not report that they saw Barber with a weapon or that Barber said he had a weapon. (PAMF-71). Alfred never saw a gun or other weapon on Barber or in the Trailblazer. (PAMF-72). Alfred had no information that Barber was under the influence of drugs or alcohol. (PAMF-74). Alfred knew that Mr. Barber was in his own driveway. (PAMF-75). Alfred was armed with a Taser, a police baton, and OC spray. (PAMF-77). Alfred had a flashlight that provided some illumination. (PAMF-78). Alfred was the starting point guard of his varsity high school basketball team.

1    (PAMF-79).

2    When Alfred contacted Barber in his driveway prior to the shooting, Barber

3    thought it was neighbor speaking. (PAMF-82). Alfred did not announce that he was

4    a police officer prior to shooting. (PAMF-110). Alfred did not request backup before

5    attempting to contact Barber. (PAMF-109). Alfred failed to give Barber a verbal

6    warning that he was prepared to use deadly force before shooting. (PAMF-92). The

7    Trailblazer was parked on a low-friction surface consisting of dirt and gravel.

8    (PAMF-84). The Trailblazer could not have moved as soon as the accelerator was

9    engaged because the rear tires experienced a loss of traction, and the front tires had

10   to overcome static friction. (PAMF-85). Alfred was not struck by any gravel or dirt

11   from the tires prior to the shooting. (PAMF-86). Alfred used profanity with Barber.

12   (PAMF-108).

13   Alfred intentionally fired six shots at Mr. Barber with the intent of striking

14   him. (PAMF-87). At the time of the shooting, it was not the case that any person

15   was about to be run over by the Trailblazer with no opportunity to get out of the

16   way. (PAMF-88). Alfred had ample time and room to move out of the path of the

17   Trailblazer. (PAMF-89). At the time of the shooting, Alfred had approximately two

18   to four feet between the left side of his body and the fence to his left. (PAMF-90).

19   The driveway width was approximately 15 feet, 7 inches at the north end and 13

20   feet, 8 inches at the south end. (PAMF-76). Prior to firing his shots, Alfred formed

21   the impression that Barber's vehicle was on and that Barber wanted to leave.

22   (PAMF-83). After seeing the reverse lights come on, Alfred failed to step out of the

23   way. (PAMF-111). A reasonable officer in Alfred's position would have moved to a

24   position of cover and formulated an effective and safe tactical plan. (PAMF-113).

25   When the Trailblazer rolled backwards, it did so in a straight line; Barber never

26   changed the direction of the Trailblazer. (PAMF-91).

27   When Alfred fired his first shot, the Trailblazer was either not in motion or

28   was moving at a slow speed of under one mile per hour. (PAMF-93). At the time of

-3-

the first shot, the Trailblazer had moved backwards less than one foot. (PAMF-94). At the time of the second shot, the Trailblazer still had not moved backwards more than one foot. (PAMF-95). At the time of the last shot, the vehicle had decelerated, and was moving at approximately less than one mile per hour before coming to rest. (PAMF-96). The vehicle came to a stop because Barber stepped on the brakes. Barber applied the brakes mildly, as opposed to slamming on the brakes. The vehicle gradually decelerated after the brakes were pressed while remaining in reverse gear. (PAMF-100). The maximum speed the Trailblazer reached during the six shots was approximately 3.4 miles per hour. (PAMF-101). The average human walking speed ranges from 3.0 to 3.5 miles per hour. (PAMF-102).

Alfred was not struck by the Trailblazer. (PAMF-104). Alfred never had to dive out of the way of the Trailblazer. (PAMF-103). Alfred was in motion and advancing toward the Trailblazer during the shooting sequence, at a pace faster than normal human walking pace. (PAMF-99). At the time of the first shot, Alfred was approximately 51 feet from the rear of the Trailblazer. (PAMF-97). At the time of the last shot, Alfred was approximately 21 feet from the rear of the Trailblazer. (PAMF-98). After the shooting, Barber's foot was on the brake pedal. (PAMF-105). When deputies were removing Barber from the Trailblazer after the shooting, the Trailblazer moved backwards an additional two to three feet. (PAMF-106).

Basic police officer training teaches that shooting at a moving vehicle has shown to be a poor tactic in most scenarios. (PAMF-114). If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate the vehicle. (PAMF-114). Baisc police training instructs that an assaultive motor vehicle does not presumptively justify the use of deadly force. (PAMF-115). At the time of this incident, Alfred understood that the County of San Bernardino's policy directed that deputies "shall not" shoot at a moving vehicle. (PAMF-116). Alfred had been trained to get out of the path of a moving vehicle, if feasible, rather than shooting at it. (PAMF-117). Alfred had also been trained not to tactically position

himself in a bad spot, if he can avoid it, with respect to moving vehicles. (PAMF-118). Police officers are expected to follow their own department policies. (PAMF-107). Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Alfred to shoot at Barber for attempting to drive away. (PAMF-119). Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle tries to leave the area. (PAMF-119).

Basic police training and standards instruct that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. (PAMF-120). Officers are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. (PAMF-121). Police standards instruct that subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (PAMF-122). Basic police training teaches that deadly force should only be used when no reasonable alternative measures are available and that an overreaction in using deadly force is excessive force. (PAMF-123, 125). Police officers are trained to give a verbal warning prior to using deadly force. (PAMF-124).

## III.    ARGUMENT

### A. Plaintiff's Fourth Amendment Claim Survives

#### 1. The Shooting Was Excessive and Unreasonable

When evaluating a 42 U.S.C. §1983 excessive force claim, the inquiry is whether the officer's actions are "objectively reasonable" considering the facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th

-5-

Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). "Not all errors in perception or judgment . . . are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* Factors to consider on balance include the seriousness of the crime at issue, whether the suspect posed an immediate threat of death or serious bodily injury to the officers or the public, and the availability of alternative methods to effectuate an arrest or overcome resistance. *Graham*, 490 U.S. at 396.

Additionally, deadly force may be used only after a verbal warning has been given, if feasible. *Tennessee v. Garner*, 471 U.S. 1, 12 (1985); *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) ("[a] rational jury may find . . . a warning was practicable and the failure to give one might weigh against reasonableness") (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)); *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("whenever practicable, a warning must be given before deadly force is employed"). Here, Alfred failed to give Barber a verbal warning prior to using deadly force. Alfred did not identify himself as a police officer before shooting. Barber heard a voice but did not see anyone in the driveway.

The most important *Graham* factor under the facts of this case is whether Barber or the Trailblazer posed an immediate threat of death or serious bodily injury to Alfred or any other person at the time of the shots. "A simple statement by an

-6-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

officer that he fears for . . . the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Along these lines, an officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.*

On Plaintiff's facts, neither Barber nor the Trailblazer posed an immediate threat of death or serious bodily injury to any person immediately prior to or at the time of Alfred's shots, and a reasonable jury could agree that Alfred's use of deadly force was objectively unreasonable. At the time of the first shot, the Trailblazer was either stopped or had just started to move at a speed of less than one mile per hour. By the time of the second shot, the Trailblazer had only rolled back less than one foot. During the shots, the Trailblazer was moving slowly, reaching a maximum speed of 3.4 miles per hour, which is average human walking speed, and decelerating when Alfred fired his final shot. Alfred stood a significant distance to the rear of the Trailblazer approximately 51 feet when he fired his first shot and approximately 21 feet away from the rear of the Trailblazer. Alfred had a clear lateral path to remain out of the Trailblazer's path, was not struck by the Trailblazer and never had to dive or move abruptly to avoid being struck. No civilian was in the vehicle's path or otherwise endangered. Even if the shooting had occurred as Alfred describes, it would still be unreasonable. Given that no person was about to be struck by the Trailblazer immediately prior to or at the time of the shots and Alfred had time and room to move, there was no reason for Alfred to use deadly force.

The "seriousness of the crime" *Graham* factor also weighs in Plaintiff's favor. Prior to the shooting, Alfred had no information that Barber had committed any crime involving the infliction of serious bodily injury or death. The only report was that Barber was acting erratically in his own driveway. Alfred saw no weapon, and Barber did not verbally threaten Alfred. Alfred's decision to advance on Barber without backup escalated a minor disturbance into a lethal confrontation.

1   Additionally, police are required to consider what other tactics were available to
2   handle the situation. *See, e.g.*, *Vos. v. City of Newport Beach*, 892 F.3d 1024 (9th
3   Cir. 2018). Here, Alfred simply could have stepped to his left rather than shooting.

4          Finally, Alfred engaged in multiple tactical failures contrary to training and
5   department policy. The County's policy expressly prohibits deputies from shooting
6   at moving vehicles except in extreme, life-threatening circumstances, which was not
7   the case here. Alfred ignored that directive, placing himself in harm's way and then
8   using the danger he created as justification for deadly force. Such conduct cannot be
9   deemed objectively reasonable as a matter of law under the Fourth Amendment.

10          As explained by Mr. DeFoe, from the standpoint of police practices, including
11  basic police training, Peace Officer Training and Standards (POST), and the
12  County's own policies, Alfred's use of deadly force was excessive and unreasonable
13  for the following reasons: this was not an immediate defense of life situation;
14  subjective fear is insufficient to justify a use of deadly force; the shooting violated
15  basic police training; Barber committed no crime involving the infliction of serious
16  injury or death; Alfred could not justify shooting Barber under a fleeing felon
17  theory; Barber was not armed with a gun or other weapon during this incident;
18  Barber never verbally threatened to harm Alfred; Alfred had reasonable alternative
19  measures other than shooting; Alfred showed no reverence for human life when he
20  fired at Barber; police officers are trained that they must justify every shot fired, and
21  all six of Alfred's shots were unjustified. (PAMF-127).

22     The chaotic situation in *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), cited
23  by Defendants, is inapposite. In *Wilkinson*, a fleeing stolen van crashed into a pole
24  following a police pursuit, and the shooting officer observed another officer
25  approach the van and fall to the ground in slippery mud. *Id.* at 549. In holding that
26  the use of deadly force in *Wilkinson* was reasonable, the Ninth Circuit emphasized
27  that the shooting officer saw another officer fall to the ground, the driver continued
28  to accelerate, the muddy yard was slippery, and an officer was either lying on the

-8-

1   ground nearby or disoriented and unable to move out of the way. 610 F.3d at 541.

2   By contrast, Barber was attempting to reverse his own vehicle out of his own

3   driveway, the Trailblazer rolled backwards at very slow speeds, and Alfred had time

4   and room to move out of the way. Further, in *Wilkinson*, the driver was presumably

5   aware of the police presence, including lights and sirens, whereas Alfred did not

6   announce himself as a police officer, and Barber thought it was his neighbor

7   speaking.

8          *Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) is also

9   distinguishable. In *Monzon*, Monzon led officers on a high-speed chase in a stolen

10  van, intentionally accelerated the van in an arc toward officers, and crashed into a

11  police cruiser, pushing that cruiser into one of the officers. *Id.* at 1153. By contrast,

12  here, Barber was in his own driveway, unaware that Alfred was a police officer, and

13  the Trailblazer rolled back slowly a short distance in a straight line. Whereas

14  Monzon's van moved unpredictably directly toward officers, Alfred had time and

15  room to simply step out of the way rather than shooting. Notably, in *Monzon*,

16  officers did not fire any shots when the van slowly rolled backwards after the

17  shooting. *Id*. at 1155.

18         Nor is *Gaxiola v. City of Richmond Police Dept.*, 131 Fed. Appx. 508 (9th

19  Cir. 2005) analogous. In *Gaxiola*, the suspect turned the steering wheel toward an

20  officer and drove the vehicle directly into the officer's body, knocking him off

21  balance, and then continued to turn the vehicle toward the officer. *Gaxiola v. City of*

22  *Richmond Police Dept.*, 2004 WL 2402908, at *2. By contrast, here, Barber never

23  maneuvered the Trailblazer toward Alfred and never struck anyone with the

24  Trailblazer. Rather, Barber was slowly attempting to leave his own driveway, and

25  unlike in *Gaxiola*, Barber was unaware that he was being stopped by police.

26         **2.  Alfred is Not Entitled to Qualified Immunity**

27         Alfred is not entitled to qualified immunity for three reasons.  First, disputed

28  issues of material fact preclude granting qualified immunity on summary judgment.

*See, e.g.*, *Villanueva v. California*, 986 F.3d 1158, 1173 (9th Cir. 2021); *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Based on the overwhelming number of disputed factors bearing on the reasonableness of the use of deadly force, granting qualified immunity at this stage would violate this well-established precedent. *See Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (The reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…'"). Here, the disputed issues of material fact bearing on whether Alfred's use of deadly force was reasonable preclude affording qualified immunity to Alfred at this stage. Disputed issues of material fact in this case include the speeds at which the Trailblazer was travelling, the distance between Alfred and the Trailblazer at the time of the shots, and whether Alfred had time and room to step out of the way rather than shooting.

Second, Barber's constitutional right to be free from excessive force under this set of facts was clearly established at the time of the shooting. The Ninth Circuit in *Villanueva v. State of California* stated, "[i]n light of *Acosta* [*v. City & Cnty. of S.F.*, 83 F.3d 1143, 1146 (9th Cir. 1996)], all reasonable officers would know it is impermissible to shoot at a slow-moving car when he could 'simply step[] to the side' to avoid danger." 986 F.3d at 1172 (quoting *Acosta*, 83 F.3d at 1146). The Ninth Circuit in *Villanueva* denied qualified immunity and found that "a reasonable jury could conclude that the officers used excessive force, because they 'lacked an objectively reasonable basis to fear for [their] own safety, as [they] could simply have stepped back [or to the side] to avoid being injured.'" *Id*. at 1171 (quoting *Orn v. City of Tacoma*, 949 F.3d 1167, 1179 (9th Cir. 2020).

Decades of Ninth Circuit precedent have made clear that an officer may not use deadly force against the driver of a slow-moving vehicle when the officer could avoid harm by simply stepping aside. *See, e.g.*, *Orn*, 949 F.3d at 1179 (denying qualified immunity where "Orn's vehicle was moving at just five miles per hour [and the shooting officer] could therefore have avoided any risk of being struck by

simply taking a step back, a common-sense conclusion"); *A.D. v. California Highway Patrol*, 712 F.3d 446, 458 (9th Cir. 2013) (denying qualified immunity where suspect's nondangerousness placed the case squarely "within the obvious" and holding that shooting driver of slow-moving car was unreasonable where the driver posed no threat); *Acosta*, 83 F.3d at 1146 (finding that a reasonable officer "would have recognized that he could avoid being injured when the car moved slowly, by simply stepping to the side"). Courts in other circuits have reached the same conclusion. *See, e.g.*, *Godawa v. Byrd*, 798 F.3d 457 (6th Cir. 2015); *Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008); *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005).

The above-cited cases are sufficient to put Alfred on notice that shooting Barber under this set of facts would violate his constitutional right to be free from excessive force. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) "[A] decision with identical facts is not required to clearly establish" a constitutional right. *Scott v. Smith*, 109 F.4th 1215, 1227 (9th Cir. 2024); *see also N.S. v. Kan. City Bd. of Police Comm'rs*, 143 S.Ct. 2422, 2423 (2023). There can be "notable factual distinctions" so long as the prior decisions give "reasonable warning" that the conduct is unconstitutional. *Scott*, 109 F.4th at 1227.

Third, it is well established that an officer's violation of police training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable"). An officer who makes a conscious decision to violate basic training guidelines, designed to safeguard the subject, should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed their decision to be lawful. *See id*.

As explained by Mr. DeFoe, basic police officer training teaches that shooting

-11-

at a moving vehicle has shown to be a poor tactic in most scenarios. If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle. An assaultive motor vehicle does not presumptively justify the use of deadly force. At the time of the shooting, Alfred understood that the County's policy directed that deputies "shall not" shoot at a moving vehicle. Prior to this incident, Alfred had been trained to get out of the path of a moving vehicle, if feasible, rather than shooting at it, and had been trained not to tactically position himself in a bad spot with respect to moving vehicles. Alfred had also been trained that a threat is "imminent" only when a reasonable officer in the same situation would believe the person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury. Alfred violated this training when he fired at Barber, notwithstanding that no person was in the Trailblazer's potential path during the shots and no person was in immediate danger of being struck by the vehicle. Alfred's decision to ignore these directives demonstrates that his conduct was not only unreasonable but in knowing violation of clearly established norms. Accordingly, qualified immunity must be denied.

## B. Plaintiff's *Monell* Claim Survives

Taking the facts and all reasonable inferences therefrom in the light most favorable to Plaintiff, Defendant County is not entitled to summary judgment on Plaintiff's *Monell* claim for "unconstitutional custom, practice, and policy," which encompasses the County's inadequate training policies. FAC at ¶ 52. Municipal liability may attach when an employee committed a constitutional violation pursuant to a widespread practice or custom. *City of St. Lous v. Praprotnik*, 485 U.S. 112, 127 (1988); *Monell v. Dep't Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (2018) (holding that municipalities are liable for violations of civil rights under § 1983 if such violations result from the "execution of a government's policy or custom."). "[A] custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished."

1  *Hunter v. Cty. of Sacramento*, 652 DF.3d 1225, 1236 (9th Cir. 2011).

2     The County's custom and practice is so pervasive that even when a jury finds

3  a deputy liable for excessive force by a jury, the County fails to take corrective

4  action and retains the deputy, which has resulted in at least one shooting deputy later

5  shooting another individual. In *Archibald v. County of San Bernardino*, case number

6  5-16-cv-1128, Plaintiff argued that Deputy Woods used deadly force against the

7  unarmed decedent when he posed no immediate threat. The jury in that case

8  returned a $33.5 million verdict against the County and Woods, even though the

9  County accepted Woods' version of the shooting and found that the shooting was

10  within policy. Woods continued to work as a County deputy after the Archibald

11  shooting. Subsequently, on January 14, 2018, Woods shot civilian Ryan Martinez.

12  The contentions against Woods were that he shot Mr. Martinez without giving him

13  commands, without warning, and when there was no immediate threat of serious

14  bodily injury to anyone. After the *Martinez* shooting, the County continued to

15  employ Woods as a deputy.

16     Additionally, in *Estate of Merlin Factor v. County of San Bernardino, et al.*,

17  case number 5:14-cv-01289-DMG-AGR(x), the *Factor* plaintiffs argued that the use

18  of deadly force against the unarmed Mr. Factor was unreasonable. The police

19  reports showed that Mr. Factor was unarmed, and the parties settled the case for a

20  high six-figure settlement. In *Young v. County of San Bernardino, et al.*, case

21  number 5:15-CV-01102-JGB-SP, the plaintiff argued that the 2014 shooting of

22  Keivon Young was excessive and unreasonable, and in 2016 a jury agreed and

23  awarded a high six-figure verdict in plaintiff's favor. In the police shooting case

24  *V.R. v. County of San Bernardino*, case number 5:19-cv-01023-JGB-SP, a

25  unanimous jury agreed with Plaintiffs in April 2022 that the shooting of Juan Ramos

26  was excessive and unreasonable and violated the Bane Act.

27     In this case, Alfred's deposition testimony reveals fundamental gaps in basic

28  constitutional training. Alfred testified at deposition that he was not trained on core

-13-

constitutional principles, including not having been trained that deadly force should only be used where there is an immediate threat of death or serious bodily injury, not trained to give a verbal warning before using deadly force, where feasible, and not trained that deadly force should only be used where there are no reasonable alternative measures. (PAMF-128-130). Instead, Alfred testified he was only trained on vague "totality of circumstances" standards without concrete constitutional guardrails. This testimony demonstrates that the County's training program systematically failed to train on basic Fourth Amendment standards, creating a blueprint for constitutional violations.

Alfred also testified that at the time of the incident, he understood that the County's policy directed that deputies "shall not" shoot at a moving vehicle, and that after the April 2021 shooting of Barber, the verbiage of the policy changed from "shall not" to "generally." (PAMF-131). This post-incident policy revision demonstrates the department's recognition that their existing policy was problematic and suggests a pattern of modifying policies to retroactively shield officers rather than ensure constitutional compliance. Finally, Alfred did not give his interview regarding this incident until approximately two weeks after the shooting. (PAMF-132). The delayed critical interview indicates either deliberate coordination time or inadequate urgency in investigating potential misconduct.

The County's response to obvious policy violations establishes a custom of non-accountability. The absence of documented policy violation findings, combined with reactive policy changes, demonstrates deliberate indifference to constitutional training and enforcement. Alfred's testimony provides direct evidence that inadequate training was the proximate cause of the constitutional violation. Based on the foregoing, a jury could find the County's pattern of only crediting officers' accounts "so pronounced" that it constituted an unofficial policy or custom whereby officers "understood that if their conduct violated citizens' rights, it would nevertheless go unpunished, if not expressly condoned." *See Larez v. City of Los*

-14-

*Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). Plaintiff's *Monell* claim should thus be submitted to the jury, particularly when considering that "[w]hether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

### C. Plaintiff's Claims Are Not *Heck*-Barred

Defendants' reliance on *Heck v. Humphrey* is misplaced. *Heck* bars a §1983 action only if a judgment in the plaintiff's favor would necessarily imply the invalidity of a prior conviction. 512 U.S. 477, 487 (1994). As Defendants concede in their Motion, Barber was not convicted under PC §245(c) (assault on a peace officer with a deadly weapon). Rather, Plaintiff was convicted under PC §245(a)(1) (assault with a deadly weapon on a person). Here, success on Barber's excessive force claim would not undermine the validity of the PC §245(a)(1) conviction. Barber's conviction under Penal Code §245(a)(1) for assault with a deadly weapon does not rest on any determination that Alfred's shooting was lawful. The assault conviction could be based on conduct preceding the shooting—such as Barber's act of reversing his vehicle—without establishing that Alfred's later use of deadly force was reasonable or constitutionally permissible.

A conviction under PC §245(c) requires that all of the following elements be satisfied: the defendant committed an act with a deadly weapon or by force likely to produce great bodily injury; the act was likely to result in the application of force to the victim; the defendant had the present ability to apply force to the victim; and the defendant knew or reasonably should have known that the victim was a peace officer engaged in the lawful performance of his duties. An officer who uses unreasonable or excessive force is not lawfully performing his duties, as required for offense of assault with a deadly weapon on a police officer. *Beets v. County of Los Angeles*, 200 Cal. App. 4th 916 (2011); *People v. White*, 101 Cal. App. 3d 161, 167 (1980) (a peace officer cannot be engaged in the "lawful performance of his duties" where the officer used excessive force). Barber was charged under PC §245(c), and

1   the jury declined to convict him of this charge. Implicit in the jury's findings is that

2   the jury considered the facts and concluded that Alfred was not in the lawful

3   performance of his duties at the time of the shooting because the shooting was not

4   necessary to immediately defend human life. The criminal jury also likely found that

5   Alfred violated basic police training when he fired at a moving vehicle, despite

6   having been trained that a deputy "shall not" discharge a firearm at a moving vehicle

7   and trained to step out of the way rather than shooting. Because the charge under

8   which Barber was convicted (PC §245(a)) includes no element relating to Alfred's

9   conduct, a finding in Plaintiff's favor on his §1983 claim would not invalidate his

10  criminal conviction.

11         Further, the elements of PC §245(a) are distinct from the standards

12  surrounding Plaintiff's excessive force claim. Under PC §245(a), the criminal jury

13  in this case was instructed that one element of the offense is whether, "when the

14  defendant acted, he had the present ability to apply force with a deadly weapon."

15  (Def. Mot. at p. 15). By contrast, in determining whether Alfred used excessive

16  force when he shot Barber, the civil jury must consider whether Barber had the

17  present ability, opportunity, and apparent intent to immediately cause death or

18  serious bodily injury. On Plaintiff's §1983 claim, the civil jury must also consider

19  that Alfred did not announce himself as a police officer, did not issue a verbal

20  warning prior to shooting Barber, and Alfred had reasonable alternative measures to

21  shooting, including stepping out of the way.

22         In declining to convict Barber under PC §245(c), the criminal jury likely

23  determined that Barber did not have the opportunity or apparent intent to

24  immediately cause death or serious bodily injury. Barber did not know that Alfred

25  was a police officer, because Alfred did not announce himself as a police officer

26  prior to shooting, and Barber saw no person in his driveway. Alfred had time and

27  space to move out of the Trailblazer's path or potential path, the Trailblazer was

28  either stopped or just starting to move backwards at the time of the first shot, the

1    Trailblazer was rolling backwards slowly in a straight line, at approximately average
2    human walking speed at its fastest point, and decelerating at the time of the last shot.
3    Barber did not maneuver the Trailblazer to strike Alfred. Alfred knew Barber
4    wanted to leave the driveway, knew the Trailblazer was on, and saw the reverse
5    lights come on. The criminal jury likely determined that Alfred did not perceive the
6    Trailblazer to be an immediate threat of death or serious bodily injury; otherwise,
7    Alfred would not have positioned himself behind the Trailblazer.

8        Additionally, factual ambiguity regarding the factual basis of the conviction
9    precludes the application of *Heck*. *Rodriguez v. City of Long Beach*, 2011 WL
10   3757122, at *5 (C.D. Cal., Aug. 25, 2011, No. SACV 10-00271 DOC) (citing
11   *Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001)). During the criminal trial,
12   expert testimony on both sides established multiple reasonable possibilities,
13   including that the Trailblazer moved before the first shot, the Trailblazer moved
14   after the first shot due to involuntary response to gunfire, and the Trailblazer moved
15   simultaneously with the shots. Therefore, *Heck* does apply because the prosecution
16   was unable to eliminate the alternative explanations, meaning there is insufficient
17   clarity regarding what specific conduct formed the factual basis of Barber's
18   conviction. Furthermore, under the *Heck* doctrine and Ninth Circuit precedent, even
19   accepting that a criminal assault occurred, Alfred's response can still be
20   constitutionally unreasonable. Reasonable jurors can find both: (a) Plaintiff
21   committed assault; and (b) Alfred's shooting response was excessive.

22       Further, the Ninth Circuit has consistently held that excessive force claims are
23   not barred where, as here, the challenged use of force is distinct in time or nature
24   from the conduct underlying the conviction. *Hooper v. County of San Diego*, 629
25   F.3d 1127, 1134 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 699–700
26   (9th Cir. 2005) (en banc); *Beets v. County of Los Angeles*, 669 F.3d 1038, 1044 (9th
27   Cir. 2012). Barber's claim that Alfred's use of deadly force was excessive therefore
28   does not call into question the validity of his conviction.

**D. Plaintiff's State Law Claims Survive**

Neither qualified immunity nor the *Heck* doctrine apply to Plaintiff's state law claims. The County is vicariously liable on Plaintiff's state law claims. Cal. Gov. Code § 815.2(a).

### 1. Battery

This Court should deny Defendants' request for summary judgment with respect to Plaintiff's battery claim for the reasons discussed above in connection with Plaintiff's excessive force claim. Under California law, battery claims arising out of excessive force by a peace officer are evaluated by way of traditional Fourth Amendment analysis under *Graham*, *supra*. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004) ("Federal civil rights claims of excessive force are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive."). CACI 1305B ("A peace officer may use deadly force only when necessary in defense of human life."). A reasonable jury could find that the shooting was objectively unreasonable and contrary to police training as described in section IIIA of this brief and in Scott DeFoe's declaration.

### 2. Negligence

Under California negligence law, "peace officers have a duty to act reasonably when using deadly force." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013); CACI 441. The negligence analysis is broader than the Fourth Amendment analysis, which "tends to focus more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on pre-shooting conduct." *Hayes*, 57 Cal. 4th at 638; *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation."). Pre-

1  shooting tactics "are relevant considerations under California law in determining

2  whether the use of deadly force gives rise to negligence liability. Such liability can

3  arise, for example, if the tactical conduct and decisions show, as part of the totality

4  of circumstances, that the use of deadly force was unreasonable." *Hayes*, 57 Cal. 4th

5  at 639; CACI 441 (considering the officer's tactical conduct and decisions before

6  using deadly force). Here, Alfred engaged in pre-shooting negligence when he stood

7  behind a vehicle he anticipated would move, which is contrary to basic police

8  training. Alfred knew that Barber's vehicle was on, knew that Barber wanted to

9  leave his driveway, knew that Barber would need to reverse out of the driveway to

10  leave, and saw the reverse lights come on. Alfred had room to move to his left, out

11  of the vehicle's path, and yet he failed to tactically reposition rather than shooting.

12  Alfred also failed to announce himself as a police officer, failed to give Barber a

13  verbal warning prior to shooting, and failed to call for backup.

## 3. Bane Act

15  Plaintiff's Bane Act claim survives because Alfred acted with reckless

16  disregard for Barber's constitutional right to be free from excessive force when he

17  shot him without warning when no person was in immediate danger of being struck

18  by the Trailblazer. "[I]t is not necessary for the defendants to have been 'thinking in

19  constitutional *or legal terms* at the time of the incidents, because a reckless

20  disregard for a person's constitutional rights is evidence of a specific intent to

21  deprive that person of those rights.'" *Reese v. County of Sacramento,* 888 F.3d 1030,

22  1045 (9th Cir. 2018). (quoting *United States v. Reese*, 2 F.3d 870, 855 (9th Cir.

23  1993)). This was not the "direst of circumstances" and shooting Barber was not

24  Alfred's "last resort." Shooting Barber in the head under these facts—where Alfred

25  failed to announce himself as a police officer and had time and room to move to the

26  left of the slow-moving vehicle rather than shooting—certainly shows a reckless

27  disregard for Barber's constitutional rights.

28  //

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 4. IIED

On Plaintiff's facts, shooting the unarmed Barber in the head without warning when the Trailblazer was moving slowly and Alfred had time and room to move out of the Trailblazer's path without shooting was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009). Behavior "may be considered outrageous if a defendant ... abuses a relation or position which gives him power to damage the plaintiff's interest." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 n. 7 (1987). There is no reasonable dispute that Alfred "intended to inflict injury or engaged in with the realization that injury will result" when he fired six shots at Barber. *Hughes*, 46 Cal. 4th at 1051.

Because there are triable issues of fact surrounding the shooting incident, "there is a genuine dispute about whether Defendant's conduct was extreme and outrageous and undertaken with the intent of causing Plaintiff emotional distress." *Warren v. Marcus*, 78 F.Supp.3d 1228, 1250 (N.D. Cal. 2015) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n. 17 (9th Cir. 2007)) (reversing grant of summary judgment on intentional infliction of emotional distress claim premised on alleged use of excessive force where there were disputes of fact regarding whether the use of force was lawful). A reasonable jury could find that Alfred's shots were excessive and unreasonable and could find that being shot in the head without warning caused Barber "emotional distress of such substantial . . . or enduring quality that no reasonable person in civilized society should be expected to endure it," *Hughes*, 46 Cal. 4th at 1051.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants are not entitled to summary judgment. Material facts remain in genuine dispute as to whether Alfred's use of deadly force was objectively reasonable. Because these issues must be resolved by a jury, Plaintiff respectfully requests that the Court deny Defendants' Motion for

1   Summary Judgment in its entirety.

2

3   DATED: October 23, 2025          IVIE MCNEILL WYATT

4                                    PURCELL & DIGGS

5                             By: _____s/ Rodney S. Diggs_____

6                                    Rodney S. Diggs
7                                    Attorney for Plaintiff, Steffon Barber

8

9   DATED: October 23, 2025          LAW OFFICES OF DALE K. GALIPO

10                            By: _____s/ Renee V. Masongsong_____

11                                   Dale K. Galipo
12                                   Renee V. Masongsong
                                     Attorneys for Plaintiff, Steffon Barber

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Steffon Barber, certifies that this brief contains 6,989 words, which complies with the word limit of L.R. 11-6.2.

DATED: October 23, 2025                     LAW OFFICES OF DALE K. GALIPO

                                        By: _____s/ Renee V. Masongsong_____
                                            Dale K. Galipo
                                            Renee V. Masongsong
                                            Attorneys for Plaintiff, Steffon Barber