RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE y WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff STEFFON BARBER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br>v.<br>COUNTY OF SAN BERNARDINO, and CHRISTOPHER ALFRED,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTB<br><br>**DECLARATION OF PLAINTIFF'S POLICE PRACTICES EXPERT SCOTT DEFOE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

# DECLARATION OF SCOTT A. DEFOE

I, Scott DeFoe, declare as follows:

1. I am a police practices expert specializing in the procedures of police practices and proper police tactics, including proper procedures for the detention and arrest of individuals and the type and degree of force, if any, appropriate under different circumstances.

2. I am a competent adult and personally familiar with the facts contained herein and would and could competently testify thereto if called upon to do so.

3. My opinions are based in part on my training, professional experience and education. I am a twenty-year veteran of the Los Angeles Police Department. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star.

4. My qualifications to review this case are set forth in detail in "Exhibit 1" attached hereto.

5. Before reaching my opinions in this case, I reviewed the investigation materials from the San Bernardino County Sheriff's Department, including the police investigative reports, San Bernardino County Sheriff's Department Manual, scene photographs, CAD report, deposition transcript of Steffon Barber, deposition transcript of Deputy Alfred, initial interview of Deputy Alfred, scene diagrams, transcripts from the criminal case, and audio belt recording of Deputy Alfred.

6. <u>Deadly Force Applications</u>

   a) The use of deadly force is the most serious decision a peace officer has to make. Deadly force applied by a peace officer is force that creates a substantial risk of causing death or serious bodily injury. (*Peace Officer Standards and Training ("POST") 2020 Update, Learning Domain ("LD") 20: Chapter 4—Deadly*

*Force, page 3*).

b) A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary to defend against an imminent threat of death or serious bodily injury to the officer or to another person. (*Cal. Penal Code Section 835a(c)(1)(A); POST LD 20: Chapter 4—Deadly Force, page 4*).

c) A threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. (*Cal. Penal Code Section 835a(e)(2)*).

d) Deadly force can only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. Subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (*Cal. Penal Code Section 835a(e)(2)*).

e) Basic police training teaches that that a suspect's failure to comply with officer commands alone is an insufficient basis for the use of deadly force.

f) Police officers are trained that the decision to use deadly force must be guided by the reverence for human life.

g) Pursuant to basic police training and standards, an officer must justify every shot he or she fires.

h) Basic police training teaches that an overreaction in using deadly force is excessive force.

i) Police officers are trained that deadly force should only be used when no reasonable alternative measures are available.

j) Police officers are trained to give a verbal warning before using deadly force, where feasible.

7. Standards Surrounding Shooting at Moving Vehicles

San Bernardino County Sheriff's Department Manual, Policy 3.608, The Use of Lethal Force, states as follows:

> Firearms should not be discharged from or at a moving vehicle except in exigent circumstances. In these situations, a safety member must have articulable reason(s) for this use of lethal force, which include, but are not limited to the following: [1] A person in the vehicle is threatening the safety member or another person with lethal force by means other than the vehicle; or [2] The vehicle is operated in a manner which is likely to result in great bodily injury or death to a safety member or another person, and other reasonable means of defense have been exhausted, or are not available or practical. This may include, if time and circumstances allow, moving out of the path of the vehicle.

Officers are expected to follow their own department policies.

Deputy Alfred's understanding of the policy in effect at the time of the incident was that deputies should get out of the path of a moving vehicle, rather than shooting at it, if feasible. (*Deposition Transcript of Christopher Alfred, pages 11, 13, 48*). Deputy Alfred had been trained, at the time of the incident, not to tactically position himself in a bad spot, with respect to moving vehicles. (*Deposition Transcript of Christopher Alfred, page 11*).

In addition to the San Bernardino County Sheriff's Department Manual, basic police officer training teaches that shooting at a moving vehicle has shown to be a

-4-   Case No. 5:22-cv-00625-KK-DTB
DECLARATION OF SCOTT DEFOE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

poor tactic in most scenarios. If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle.

Additionally, an assaultive motor vehicle does not presumptively justify the use of deadly force.

8. Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Deputy Alfred to shoot at Mr. Barber for fleeing or attempting to flee. Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area.

Police officers are trained that they can only shoot a fleeing felon where all of the following factors are present: (1) the person threatens the officer with a weapon or the officer has information that the person has committed a felony involving the infliction of serious bodily harm or death, (2) the officer has probable cause to believe that that the person will cause death or serious bodily injury to another person unless immediately apprehended, (3) the officer has probable cause to believe that the use of deadly force is reasonably necessary, and (4) the officer gives some warning that deadly force may be used, where feasible. (*POST LD 20, Chapter 4, Use of Deadly Force, pages 5, 6, 11; Cal. Penal Code 835a; San Bernardino County Sheriff's Department Manual 3.608, The Use of Lethal Force*).

These four factors were not met in this case. Mr. Barber did not inflict or threaten to inflict death or serious bodily injury against anyone at any point relative to this incident; Mr. Barber did not have a firearm, and Mr. Barber posed no immediate threat of death or serious bodily injury necessitating deadly force.

9. Deputy Alfred violated basic police officer training and standards with respect to the use of deadly force when he shot Mr. Barber while Mr. Barber occupied the driver seat of a vehicle. A reasonable officer acting consistent with standard police practices would not have used lethal force in this situation. Mr.

Barber did not pose an immediate threat of death or serious bodily injury to Deputy Alfred or to any other person at the time of the shots. At the time of the shooting, it was not the case that any person was about to be run over by the vehicle with no opportunity to get out of the way. Deputy Alfred had time and space to step out of the vehicle's path rather than resorting to deadly force.

    a) Deputy Alfred never saw a gun on Mr. Barber. *(Deposition Transcript of Christopher Alfred, page 13)*. Deputy Alfred had no corroborated information that Mr. Barber had a gun, and in Deputy Alfred's experience, a reporting party might report that a person has a gun in order to expedite law enforcement response.

    b) Deputy Alfred knew that Mr. Barber was in his own driveway. *(Deposition Transcript of Christopher Alfred, page 32)*.

    c) Deputy Alfred did not give any verbal warning he was going to shoot at any point. *(Deposition Transcript of Christopher Alfred, page 13)*.

    d) Deputy Alfred was not struck by any gravel or dirt from the tires prior to the shooting. (*Deposition Transcript of Christpher Alfred, Page 68*).

    e) The driveway width was approximately 15 feet and 7 inches. *(San Bernardino County Sheriff's Department Crime Report, Scene Description, PLTFID000274)*.

    f) At the time of the shooting, Deputy Alfred had approximately two to four feet between the left side of his body and the chain link fence to his left. (*Deposition Transcript of Christopher Alfred, pages 19-20; photographs of the scene*).

    g) Deputy Alfred was the starting point guard of his varsity high school basketball team. (*Deposition Transcript of Christopher Alfred, page 22)*.

    h) When Mr. Barber's vehicle moved backwards, it moved backwards

approximately 16.9 feet, moving slowly in a straight line. *(Scene photographs and diagrams; investigative reports; Deposition Transcript of Christopher Alfred, pages 61-62; criminal case transcripts).*

    i) Prior to firing his shots, Deputy Alfred formed the impression that Mr. Baber's vehicle was on and that Mr. Barber wanted to leave, and he saw the reverse lights come on. (*Deposition Transcript of Christopher Alfred, pages 40, 74).*

    j) Deputy Alfred knew that the only way to leave the driveway was to reverse out. (*Deposition Transcript of Christopher Alfred, pages 49-50).*

    k) Deputy Alfred never had to dive out of the way of Mr. Barber's vehicle. (*Deposition Transcript of Christopher Alfred, page 48).*

    l) Deputy Alfred was not struck by Mr. Barber's vehicle. (*Deposition Transcript of Christopher Alfred, page 48).*

10. <u>Deputy Alfred Engaged in Pre-Shooting Negligent Tactics</u>

    a) There was a gross lack of situational awareness and fundamental tactical errors on the part of Deputy Alfred during this incident.

    b) Deputy Alfred never identified himself as a police officer. (*Deposition of Christopher Alfred, page 38*).

    c) A reasonable officer in Deputy Alfred's position would have immediately moved to a position of cover and formulated an effective and safe tactical plan. Deputy Alfred exercised poor tactics when he placed himself in a position behind the vehicle and did not step out of the way after Mr. Barber entered the vehicle. (*Deposition of Chistopher Alfred, page 40*).

    d) A reasonable officer under these facts would have waited for additional

San Bernardino County Sheriff's Department deputies to assist with containment and tactical deployment to take Mr. Barber into custody. (*POST LD 23, Chapter 2, pages 2-8*).

11. <u>The Shooting was Excessive and Unreasonable</u>

From the standpoint of police practices, including basic police training, POST standards, and the County of San Bernardino's own policies, Deputy Alfred's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons:

a) <u>No Immediate Defense of Life Situation</u>. Police officers are trained that they can only use deadly force in an Immediate Defense of Life Situation, in other words, when there is an immediate or imminent threat of death or serious bodily injury. A fear of future harm is not enough. There was no immediate defense of life situation when Deputy Alfred fired his shots. No person was about to be run over by Mr. Barber's vehicle at the time of the shots.

b) <u>Subjective fear is insufficient</u>. Basic police training requires that any use of deadly force must be based on an "objective" rather than "subjective" "reasonable necessity" of action to "imminent danger." In this case, the record does not support any objectively reasonable explanation that Mr. Barber posed an immediate threat of death or serious bodily injury at the time that any of the shots were fired. Mr. Barber was unarmed, and no person was about to be struck by Mr. Barber's vehicle.

c) <u>Violation of basic police training.</u> Deputy Alfred violated police training and standards surrounding shooting at vehicles and their driver when he shot Mr. Barber while Mr. Barber occupied the

-8- Case No. 5:22-cv-00625-KK-DTB
DECLARATION OF SCOTT DEFOE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

driver seat of a vehicle. There was no person about to be struck by Mr. Barber's vehicle when Deputy Alfred fired his shots. Therefore, there was no reason for Deputy Alfred to shoot.

d) <u>No crime involving the infliction of serious injury or death.</u> Deputy Alfred was not responding to a crime involving the infliction of death or serious bodily injury. Deputy Alfred had no information that Mr. Barber was armed and no information that anyone had been injured.

e) <u>Cannot shoot for fleeing</u>. Deputy Alfred could not justify shooting Mr. Barber under a Fleeing Felon theory, including because Mr. Barber was unarmed, and Deputy Alfred had no information that Mr. Barber had killed or injured anyone prior to the shooting.

f) <u>Unarmed</u>. Mr. Barber did not have a firearm or other weapon during this incident.

g) <u>No verbal threats</u>. Mr. Barber never verbally threatened to harm Deputy Alfred.

h) <u>Reasonable alternative measures available</u>. Officers are trained that they can only use deadly force in a "last resort" situation. Deputy Alfred had other reasonable measures available, including moving out of the way, waiting for backup, giving further commands, and setting up a perimeter for later apprehension.

i) <u>No reverence for human life</u>. Police officers are trained that they must show a reverence for human life. Deputy Alfred showed no reverence for human life when he fired at Mr. Barber.

j) <u>Police officers are responsible for justifying every shot</u>. Police

officers are trained that they must justify every shot they fire. Deputy Alfred is responsible for every shot that he fired in this case, and all six of his shots were unjustified.

I declare under penalty of perjury that the foregoing is true and correct, and that this was executed this 23rd day of October, 2025 at Huntington Beach, California.

_____
Scott DeFoe

# EXHIBIT 1

# Scott A. DeFoe

P.O. Box 4456, Huntington Beach, CA 92605-4456
Cell: 714-655-4280
sdefoe313@msn.com

*Curriculum Vitae*

## Executive Profile

**Expert Witness / Consultant Specialties Include:**

| | |
|---|---|
| Police Procedures / Tactics | Use of Force (Lethal and Less Lethal) |
| SWAT | K9 |
| Narcotics | Jail Operations |
| Informants | Police Corruption / Internal Investigation |
| Vehicle Pursuits | Vice |
| Surveillance-Marine | Evidence Analysis & Preservation |
| Security | Premise Liability / Forseeability |

## Awards and Commendations

**Purple Heart** (LAPD),
**Medal of Valor** (LAPD)
**Police Star** (LAPD) and over 100 Los Angeles Police Department and citizen commendations.

## Professional Experience

**Consultant / Expert Witness**
April 2013 to Present
**On-Scene Consulting Group, LLC.** - Los Angeles, CA

Provide comprehensive service which includes in-depth analysis and investigations with detailed reporting of all findings. Testified as an Expert Witness in pre-trial depositions and in various courts throughout the United States.

**Director of Security**
March 2016 to September 2017
**L&R Group of Companies** - Los Angeles, CA

Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments, and projected developments throughout the United States. Conducted all facets of security training to ensure compliance with the Bureau of Security and Investigative Services (BSIS). Ensured compliance with appropriate safety and sustainability regulations for all of the developments in coordination with Human Resources, Legal, and law enforcement to ensure the safety and security of protection of our staff, executives, tenants, and guests.

- Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains.
- Mitigated expected threats. Utilized preplanned coordinated actions in response to infrastructure warnings or incidents.
- Conducted internal investigations and audits.
- Directed the day-to-day management of site security operations for major sites through subordinates to ensure timely delivery of required services and appropriate response to incidents.
- Designed and implemented appropriate security, measures for existing and projected developments.
- Coordinated all security efforts with current practices and procedures.
- Researched and deployed appropriate technology solutions, innovative security management techniques, and other procedures to ensure physical safety of employees, tenants and guests.

**Scott A. DeFoe** Page 2

**Director of Security**
June 2014 to March 2016
**Universal Protection Service** - Los Angeles, CA

Directed supervision of 84 Security Professionals at the City National Plaza. Conducted and or facilitated all Bureau of Security Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis.

- Trained others on Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.
- Conducted ongoing risk and vulnerability assessments of the City National Plaza to include security staffing and deployment, closed circuit television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats.
- Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants.
- Coordinated all security efforts to ensure safety at special events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD), Los Angeles Fire Department (LAFD) on an ongoing basis.

**Riverside County Sheriff's Department** - **Deputy Sheriff (Lateral)** - June 2013 to June 2014
April 2014 to June 2014

Assigned to Jurupa Valley Station Field Deputy Training Program. Conducted all facets of patrol service to include: calls for service, self-initiated field activity, arrests, citations, booking of evidence, and court testimony.

June 2013 to April 2014

Assigned to Robert Presley Detention Center (RPDC). Processed and monitored inmate population from initial intake, housing, court, transportation and release. Conducted searches of inmate population as well as the facility on an ongoing basis. Utilized experience as a Gang Officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of investigations.

- Provided information to gang detail.
- Functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors.
- Attended and certified in RSO Supplemental Jail Operations Core Course and Title XV training prior to deployment at RPDC. Received on-going training to include: Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents, and Proper Protocols and Procedures when responding to a medical incident or suicide.

**Vice President of Security Operations**
June 2010 to April 2013
**Caruso Affiliated** - Los Angeles, CA

Identified and conducted risk and vulnerability assessments for all Caruso Affiliated Developments, projected developments/investments, and residences. Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated. Mitigated expected threats. Utilized preplanned, coordinated actions in response to infrastructure warnings or incidents.

- Responded to hostilities and identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include: on-site security personnel, local law enforcement, medical and fire rescue and relevant investigative agencies.
- Conducted all facets of security training for the company and employees.
- Formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests. Conducted ongoing audits and internal investigations.

**Scott A. DeFoe** Page 3

**Level I Reserve Police Officer**
June 2010 to March 2016
**Los Angeles Police Department** - Los Angeles, California

>Initially assigned to Counter Terrorism from June 2010 through April 2012. Completed staff projects for the Deputy Chief.
>
>Assigned to the Wilshire Division from April 2012 through March 2016. Assisted with tactical and shooting training days as an Adjunct Instructor. Assigned to patrol functions including: responding to calls for service, conducting follow-up investigations, conducting self-initiated law enforcement activities including arrests, booking of arrestees, completing reports and booking of evidence.

- Worked in conjunction with citizens and local businesses in developing crime fighting strategies.
- Provided active shooter training to local businesses.
- Worked in conjunction with Wilshire Detectives and Wilshire Crime Analysis Detail (CAD) to reduce crime.

**Sergeant II+1 Special Weapons and Tactics (SWAT) Supervisor**
August 2005 to June 2010
**Los Angeles Police Department** - Los Angeles, California

>Supervised the response and tactical intervention during barricaded subject incidents. Supervised the coordination and facilitation of high risk warrant services. Supervised the Crisis Negotiation Team (CNT) during barricaded and suicidal subject incidents. Developed SWAT's Counter-Terrorism and Training Cadre to include the preparation and submission of federal and state grants for the acquisition of equipment.

- Performed and facilitated all aspects of tactical and crisis negotiation training to federal, state and local law enforcement agencies.
- Responded and trained Mumbai local and state police officers following the 2008 terrorist attack in Mumbai, India.
- Assisted with the development of multi-assault counter-terrorism action capabilities training.
- Completed audits, employee performance reviews, investigative reports and internal investigations.
- Conducted use of force investigations on SWAT incidents and submitted reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Sergeant II+1 Metropolitan Division K9 Platoon**
April 2000 to September 2005
**Los Angeles Police Department** - Los Angeles, California

>Supervised and facilitated all facets of K9 training. Ensured that all K9 deployments conformed to the K9 deployment criteria, through training of personnel and supervision of K9 searches. Functioned as a member on a K9 Search Team when necessary. Provided on-scene command during critical incidents at Command Posts.

- Completed use of force investigations and K9 contacts. Submitted all reports to Officer-in-Charge for his review and approval.
- Completed all requisite administrative reports to include audits.
- Testified in court, and at administrative hearings. Wrote 2002 LAPD Metropolitan Division K9 Platoon Manual.

**Scott A. DeFoe**                                                                                                               Page 4

**Sergeant II-77th Division Vice, Officer-in-Charge**
February 1999 to March 2000
**Los Angeles Police Department** - Los Angeles, California
Supervised investigations involving pimping, pandering, prostitution, bookmaking, gaming, gambling and other vice related activities. Conducted audits and administrative reports. Prepared and served search warrants for the above-mentioned crimes. Supervised twelve undercover officers and six uniformed officers on a daily basis. Worked in conjunction with other Department entities on sensitive investigations.

- Completed rating reports for subordinates assigned to the Unit.
- Conducted use of force investigations, audits, personnel complaints and other administrative tasks.
- Submitted all reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Management Services Division Supervisor-Sergeant**
November 1997 to March 1999
**Los Angeles Police Department** - Los Angeles, California
Conducted research projects, directives and correspondence at the direction of the Chief of Police. Reviewed staff work by subordinates. Conducted follow-up investigations as required to ensure that policies and procedures were adhered to by all organizational units within the Department. Conducted large scale audits and investigations.

- Served a six-month loan on the Rampart Corruption Task Force investigating and auditing use of force reports.
- Served a six-month loan at Internal Affairs Division, Headquarters Section. Investigated personnel complaints beyond the scope of geographical patrol divisions.
- Staff writer for the 2000 Los Angeles Police Department Manual.

**Hollenbeck Division Special Enforcement Group Officer-in-Charge**
November 1996 to November 1997
**Los Angeles Police Department** - Los Angeles, California
Provided supervisory oversight of eighteen police officers and detectives during gang investigations, crime suppression and the service of search warrants. Provided all aspects of tactical training to the group. Completed audits, employee ratings and administrative duties.

- Monitored and reviewed gang and narcotic investigations to ensure compliance with Department policy. Conducted use of force investigations.
- Submitted all investigative and administrative reports to the Commanding Officer for his review and approval. Testified in court and at administrative hearings.

**Detective, Wilshire Division**
March 1995 to November 1996
**Los Angeles Police Department** - Los Angeles, California
Assigned to various areas including: Robbery, Burglary, Auto Theft, Major Assault Crimes (Assaults with Domestic Violence), Homicide and the West Bureau Narcotics Group Field Enforcement Section. Conducted preliminary investigations and follow-up investigations. Interviewed victims and witnesses of crimes and interrogated individuals suspected of committing crimes. Conducted surveillances.

- Filed criminal investigations with the Los Angeles City Attorney's Office and the Los Angeles District Attorney's Office.
- Worked in conjunction with other law enforcement agencies and entities within the Los Angeles Police Department.
- Wrote and served search warrants. Booked evidence related to investigations.
- Trained local businesses and community groups in the areas of safety and security.

**Scott A. DeFoe** Page 5

**Police Officer**
November 1989 to March 1995
**Los Angeles Police Department** - Los Angeles, California
Functioned in numerous roles as a Police Officer I, II, and III to include: Patrol, Field Training Officer (FTO), Detective Trainee, Vice, Special Enforcement Group, Divisional CRASH (gangs) and Operation Central Bureau CRASH (gangs).

- Selected to Specialized Units based on high performance and ability to work well in small cohesive units throughout the Department.
- Testified in court on a multitude of matters. Certified in court as a narcotic, gang, and vice expert.

**Special Agent-Organized Crime Drug Task Force (OCDETF)**
June 1988 to October 1989
**Department of Treasury, United States Customs Service** - San Francisco, California. Special Agent assigned to a multi-agency narcotics task force. Investigated major suppliers of narcotics and dangerous drugs who were engaged in illegal activities on an organized and commercial basis in an undercover capacity.

- Prepared and served search warrants. Worked in conjunction with the Assistant United States Attorney in San Francisco. Testified in Federal Court and at Asset Forfeiture Hearings.

**United States Army Reserve**
June 1983 to June 1989
Honorable Discharge as E-4. Military Occupational Skill (MOS)-72E-Combat Infantry Communications

**Training (Received and Provided Training):**
Weapons Training/Qualification on Monthly Basis-M-4, MP-5, Benelli Shotgun, Kimber/.45/1911, Remington 870 Shotgun, Glock, Force Option Simulator (Quarterly). Quarterly mandatory weapons certification from November 1989 to June 2010.

**Additional Training/Certification(s):** (11/1989-06/2010)

**Supervisor Training:**
Incident Command System 100-800
Sexual Harassment Training for Supervisors
Career Development for Supervisors
Standards Based Assessments for Supervisors
Supervisors Consent Decree Training
Vehicle Pursuit Policy Supervisor Training
Watch Commander School Retaliation Training
RMIS TEAMS II (Non-Categorical Use of Force Supervisor Training)
Ethics in Law Enforcement
Career Survival Workshops
Problem Oriented Policing and the SARA Model
Cultural Diversity Tools for Tolerance
Instructor Development Course (IDC)
Officer Involved Shootings Administrative Investigations Training
Prop 115-Hearsay Evidence Training
Managing Workplace Conflict CLETS-NCIC
Racial Profiling
West Point Leadership School for Supervisors
Basic Supervisor School

**HAZMAT Training:**
Advanced Chemical and Biological Integrated Response, LAFD Hazardous Materials Technical Specialist (A-D)-Certified HAZMAT Technician, Technical Emergency Response Training, Law Enforcement Protective Measures.

**Scott A. DeFoe** Page 6

**Crisis Negotiations/Mental Health Training:**
Hostage Negotiations - Advanced, Behavioral Sciences Services Section
Officer-Involved Shooting/Barricaded Subject Services Debriefs
Crisis Negotiation Training and Curriculum Development for West Point Military Academy
Didi Hirsch Suicide Prevention Training (Volunteered and Supervised on an ongoing basis)
Mood Disorders/Post Traumatic Stress Disorder Training, Communicating with People with Disabilities
Mental Health Introduction MEU-SMART Orientation
Mental Illness Update
Drug Recognition Expert Training and Certification
Under the Influence-11550 Health and Safety Code Training
Institute for the Prevention of In-Custody Deaths Training on Recognizing Agonal & Other Breathing Problems (2015). Attended and facilitated LAPD CNT 40-Hour Course
Attended FBI Basic Crisis Negotiation Course

**Tactical Training:**
Crowd Management Control, Search and Arrest Warrant Tactics
Less than Lethal Use of Force Training and Certification TASER MX-26, X-26 Train the Trainer (Trainer/Instructor Certification)
Excited Delirium & Agitated Chaotic Events, Train the Trainer.
End of Pursuit Tactics Overview
Communication-Keeping Your Edge
Crowd Management and Control
Immediate Action Rapid Deployment
Arrest and Control Trainer Certification
Los Angeles County Sheriff's Department Explosive Breaching Course
Mobile Field Force Supervisor Train the Trainer
Officer Survival-Shooting
Personal Protective Equipment (PPE)
Pursuit Intervention Techniques for Supervisors
Baton/Impact Weapon
Advanced Canine Supervisor Course
Basic Metro School
Collapsible Baton
Officer Safety Field Tactics
Mobile Field Force Training
Narcotics/Tactical Entry Update
Field Training Officer Update
Standard Emergency Management System (SEMS)
CPR-First Aid Recertification
Basic Arrest and Control Techniques
Driver Awareness Training
Range Safety Officer and Supervisor Training
Interrogation Techniques
VICE School
37mm Baton Round Training
Civil Unrest Response Training
Hobble Training
Advanced Field Officer Course, Oleoresin Capsicum (OC) Gas Training
Search Warrant Counter Measures
Riverside Sheriff's Department Jail Operations Course to include Title XV

**Scott A. DeFoe** Page 7

**Detective Training:**

Basic Detective School
Juvenile Procedures School
Association of Threat Assessments Professionals (ATAP) Training
Workplace Investigative Training
LAPD Narcotics School
POST Investigative and Interrogation Course
POST Cognitive & Statement Analysis Training Course
Special Investigative Section Surveillance Training

**California Peace Officer Standards and Training (P.O.S.T.) Commission: Basic, Intermediate, Advanced and Supervisory Certificates.**

**Outside Training**:

Dale Carnegie 12-week Public Speaking School
Americans for Effective Law Enforcement (AELE) Certified Litigation Expert Courses
Use of Force By The Numbers: 4, 8, 14 (Institute for the Prevention of In-Custody Deaths-IPICD)
California Specialized Training Unit Hazardous Materials First Responder Operations Weapons of Mass Destruction Law Enforcement Field Support Course
Louisiana State University Screening of Persons by Observational Techniques (SPOT)
Subconscious Communication for Detecting Danger by International Academy for Linguistics and Kinesics
Department of Homeland Security WMD Radiological/Nuclear Course of Hazardous Materials Technicians
UNLV WMD Radiological/Nuclear Awareness Train The Trainer Course, FEMA Advanced Chemical and Biological Integrated Response Course Mobile Training Event
FEMA WMD Law Enforcement Threat
Hazard Recognition, and Emergency Actions Training
CSTI Technician/Specialist 1A-D, DHS WMD Tactical Commander Management and Planning
Licensed California Private Investigator (License No. 29151)
Certified California Criminal Defense Investigator.

**Associations**

California Association of Licensed Investigators
Peace Officers Association of Los Angeles County (POALAC)
Americans for Effective Law Enforcement (AELE)
California Crime Prevention Officers Association
International Association in Crime Prevention Partners
California Peace Officers Association

**Education**

**Master of Legal Studies**, 2020
**Pepperdine Law School** - Malibu, California, United States

**Master of Arts**: **Public Administration**, 1998
**California State University** - Long Beach, California, United States

**Bachelor of Science**: **Criminal Justice**, 1988
**Northeastern University** - Boston, Massachusetts, United States