# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

```
STEFFON BARBER, an        )
individual,               )
                          )
        Plaintiff,        )
                          )
           vs.            ) Case No.
                          ) 5:22-cv-00625-KK-SHK
                          )
COUNTY OF SAN BERNARDINO, )
a municipal entity, and   )
DOES 1 THROUGH 10,        )
inclusive,                )
                          )
        Defendant.        )
_____)
```

REMOTE DEPOSITION OF

STEFFON TODD BARBER

APPEARING REMOTELY VIA ZOOM

SEPTEMBER 9, 2025

Reported by:
F. ELOIS DUNCAN
CSR NO. 4066
Job No. 13309719



THE SULLIVAN GROUP OF COURT REPORTERS
AN ESQUIRE DEPOSITION SOLUTIONS COMPANY

```
 1                 UNITED STATES DISTRICT COURT

 2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4     STEFFON BARBER, an            )
       individual,                   )
 5                                   )
             Plaintiff,              )
 6                                   )
               vs.                   ) Case No.
 7                                   ) 5:22-cv-00625-KK-SHK

 8     COUNTY OF SAN BERNARDINO,     )
       a municipal entity, and       )
 9     DOES 1 THROUGH 10,            )
       inclusive,                    )
10                                   )
             Defendant.              )
11     _____)

12

13

14     DEPOSITION OF STEFFON TODD BARBER, taken remotely on

15     behalf of Defense beginning at 9:05 a.m. and ending at

16     10:45 a.m. on September 9, 2025, before F. Elois Duncan,

17     Certified Shorthand Reporter No. 4066, CSR.
```

```
 1   REMOTE APPEARANCES:

 2


 3   For Plaintiff: STEFFON TODD BARBER

 4           IVIE McNEIL WYATT PURCELL & DIGGS
             By:  RODNEY S. DIGGS, ESQ.
 5           RENEE MASONGSONG, ESQ.
             444 South Flower Street
 6           32nd Floor
             Los Angeles, CA 90071
 7           213-489-0028
             RDiggs@imwlaw.com
 8

 9   For Defendant: COUNTY OF SAN BERNARDINO

10           MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
             BY:  KAYLEIGH ANDERSON, ESQ.
11           801 South Figueroa Street
             15th Floor
12           Los Angeles, CA 90017
             213-624-6900
13

14   ALSO PRESENT: OLIVER CALDERON, Videographer

15

16

17

18

19

20

21

22

23

24

25
```

THE SULLIVAN GROUP OF COURT REPORTERS

3

| | | |
|---|---|---|
| 1 | don't know each other.  We haven't been -- like that, but | 9:45AM |
| 2 | it seemed that type of environment.  Anyway, I don't know. | |
| 3 |     Q    Okay. | |
| 4 |     Did they give you a ride? | |
| 5 |     A    No. | 9:45AM |
| 6 |     Q    And eventually they did move their vehicle out | |
| 7 | of the driveway; is that correct? | |
| 8 |     A    Yeah.  Yes, they did eventually move it. | |
| 9 |     Q    Okay. | |
| 10 |     After they moved their vehicle out of the | 9:45AM |
| 11 | driveway, did you drive your vehicle to the corner store? | |
| 12 |     A    I never made it out to the corner store. | |
| 13 | Another police came and instructed me not to get in the | |
| 14 | car.  Couldn't see where it was coming from and, um, I | |
| 15 | jumped in the car anyway.  Attempted to go in the store | 9:45AM |
| 16 | and ended up in the hospital.  I later found out that that | |
| 17 | whole interactions, what I thought was my neighbor, the | |
| 18 | person I didn't see was actually Deputy Christopher | |
| 19 | Alfred. | |
| 20 |     Q    Okay. | 9:46AM |
| 21 |     Let me go back to the contact with the | |
| 22 | neighbors.  Before you had this interaction with the | |
| 23 | neighbors while they're in their vehicle, did you take | |
| 24 | anything, any type of illicit substance or drink any | |
| 25 | alcohol? | 9:46AM |

```
 1       A    Did I see what?                                    10:04AM
 2       Q    Did you see a man in your driveway at any time
 3  prior to getting into your vehicle?
 4       A    Again, the only one I had contact with was
 5  Joseph, the landlord or husband, I believe.                  10:04AM
 6       Q    After they left in their vehicle, did you see a
 7  man in your driveway at any time prior to getting into
 8  your vehicle?
 9       A    No.
10       Q    Okay.                                              10:04AM
11            Do you recall talking to anybody in your
12  driveway between --
13       A    Yeah.
14       Q    Hold on.  Let me finish my question.
15            -- between your contact with Joseph and Maria      10:04AM
16  and getting into your vehicle?
17       A    Yes, there was a voice.  I do remember there was
18  a voice.  I remember having discourse with the voice.  But
19  as far as seeing the person, the voice was -- no, I don't.
20  The voice of the person that I was having this discourse    10:05AM
21  with, I never seen him.
22       Q    Okay.
23            So it's your testimony that you didn't see a man
24  or anybody in your driveway prior to getting into your
25  vehicle after your contact with the neighbors?              10:05AM
```

```
 1         A    Yes, ma'am.                                    10:05AM
 2         Q    Okay.
 3              Did you tell this individual to show you his
 4   hand?
 5         A    Yes.                                           10:05AM
 6         Q    Why did you tell an individual that you couldn't
 7   see to show you his hand?
 8         A    I don't recall.  I couldn't see him.
 9         Q    Okay.
10              And it's your testimony that you didn't see a  10:05AM
11   flashlight at all; correct?
12         A    That's my testimony.
13         Q    Okay.
14              Did you hear the deputy give you commands to not
15   get into your vehicle?                                    10:06AM
16         A    Yeah, I heard those commands, but I didn't know
17   who it was.
18         Q    Okay.
19              Have you ever been -- before this incident, had
20   you ever been robbed?                                     10:06AM
21         A    I mean, this is not something I want to talk
22   about.
23         THE REPORTER:  It's not something I want to talk
24   about?
25         THE WITNESS:  Yes.                                  10:06AM
```

```
 1          THE REPORTER:  You talk and you move your head.        10:06AM
 2   BY MS. ANDERSEN:
 3       Q   Okay.
 4           Well, during any -- if you were ever robbed
 5   prior to this incident, did that individual tell you not     10:06AM
 6   to get into your vehicle?
 7       A   No.
 8       Q   How long is that driveway from, let's say the
 9   front of your house all the way to the street?
10           MR. DIGGS:  Calls for speculation.                    10:07AM
11           But you can answer.
12           THE WITNESS:  Um -- I think the estimates that they
13   made that day were around 40 feet.  I'm not sure.
14   BY MS. ANDERSEN:
15       Q   Other than the deputy telling you to not get          10:07AM
16   into the vehicle, did you hear him say anything else to
17   you before you got in the vehicle?
18       A   No.
19       Q   Prior to getting into your vehicle, did you hear
20   the deputy say, "Don't reach into your vehicle"?              10:07AM
21           MR. DIGGS:  Objection; that assumes facts not in
22   evidence and it lacks foundation based on prior responses.
23           But you can answer.
24           THE WITNESS:  Yeah.
25           And I intentionally reached in my vehicle to see      10:08AM
```

```
 1   if he was talking to me, and nothing happened, so I           10:08AM
 2   figured he wasn't talking to me.  The voice was at a
 3   distance.  I do remember that.
 4   BY MS. ANDERSEN:
 5        Q    Okay.                                               10:08AM
 6             What were you reaching for when he told you not
 7   to reach?
 8        A    I think my cell phone was on my seat.
 9        Q    Okay.
10             What -- if you were trying to figure out who he    10:08AM
11   was talking to, what do you recall him saying prior to him
12   saying, "Don't reach into your vehicle," or words to that
13   effect?
14        A    I don't recall.
15        Q    Did you hear him say anything to the effect of,    10:08AM
16   "Hey, come talk to me," anything like that?
17        A    No.  I mean, I heard all that in trial, but as
18   far as asking me, do I remember all that, I don't.
19        Q    Okay.
20             When you reached into your vehicle, did you grab   10:09AM
21   your cell phone?
22        A    I believe I did --
23        Q    Okay.
24        A    -- I recall correctly.
25        Q    And then after you grabbed your cell phone, did    10:09AM
```

```
 1         A    I said it sure was.  It was idling.                10:10AM
 2         Q    Okay.
 3         A    Yes.
 4         Q    And then did you put it in reverse once you
 5   closed your door?                                              10:10AM
 6         A    I don't recall.  I must have.  I must have
 7   because the car rolled backwards --
 8         Q    Okay.
 9         A    -- once I was out of the car.  But I don't
10   recall putting it in reverse.                                  10:10AM
11         Q    Okay.
12              So you say -- but you do recall the car moving
13   backwards?
14         A    Yes, from -- from -- from trial, that's what.  I
15   don't recall.                                                  10:11AM
16              MR. DIGGS:  Only --
17              THE WITNESS:  The person, I don't recall.
18          (Simultaneously speaking, unreportable.)
19   BY MS. ANDERSEN:
20         Q    Your counsel -- I think I know what he was going    10:11AM
21   to say.
22              You can correct me if I'm wrong.
23              So I'm not looking for what you learned at trial
24   or anything like that.  I'm asking for your recollection,
25   Mr. Barber.  If you don't recall something, I don't really    10:11AM
```

| | | |
|---|---|---|
| 1 | want you guessing or telling me stuff you heard at trial | 10:11AM |
| 2 | that you didn't know at the time or didn't hear at the | |
| 3 | time.  Does that make sense? | |
| 4 |     A    I apologize. | |
| 5 |     Q    That's okay. | 10:11AM |
| 6 |          Mr. Diggs, is that correct? | |
| 7 |     MR. DIGGS:  That's correct.  Thank you, Counsel. | |
| 8 |     MS. ANDERSEN:  Of course.  Thank you. | |
| 9 |          Madam Court Reporter, do you need him to repeat | |
| 10 | something?  I'm sorry. | 10:11AM |
| 11 |     THE REPORTER:  I don't think so.  Thank you. | |
| 12 | BY MS. ANDERSEN: | |
| 13 | ==Q    So is it your testimony that at the time you got== | |
| 14 | ==into the driver's seat, you still had not seen this man in== | |
| 15 | ==your driveway, Mr. Barber?== | 10:11AM |
| 16 | ==A    No.== | |
| 17 | ==Q    And you do not recall whether you put it in== | |
| 18 | ==reverse or not; is that correct?== | |
| 19 | ==A    That's correct.== | |
| 20 |     Q    But you do have a recollection of the car moving | 10:12AM |
| 21 | backwards; is that correct? | |
| 22 |     A    Yes. | |
| 23 |     MR. DIGGS:  Misstates the witness's testimony. | |
| 24 | BY MS. ANDERSEN: | |
| 25 |     Q    Was that yes?  I'm sorry. | 10:12AM |

```
 1        A    Yes.                                            10:12AM
 2        Q    Okay.
 3             Do you recall pressing down on the gas pedal at
 4   any time you got into the driver's seat?
 5        A    I don't recall.                                 10:12AM
 6        Q    Okay.
 7             Were you looking at the odometer or speedometer
 8   or anything like that at the time you got into the
 9   driver's seat when your car started rolling backwards?
10        A    I don't recall those -- those little details of 10:12AM
11   the incident.
12        Q    Okay.
13             So is it your recollection that the car was in
14   park the whole time and you're just not sure how it moved
15   backwards?                                                10:13AM
16        A    I really don't recall.
17        Q    Okay.
18             Do you recall shifting gears at any time while
19   you were in the driver's seat?
20        A    I don't recall.                                 10:13AM
21        Q    Okay.
22             Once you got into the driver's seat, did you
23   hear any other words from the deputy?
24        A    No.
25        Q    Okay.                                           10:13AM
```

THE SULLIVAN GROUP OF COURT REPORTERS

```
1                    REPORTER'S CERTIFICATION

2    STATE OF CALIFORNIA    )
                            )
3    COUNTY OF LOS ANGELES  )

4

5         I, F. ELOIS DUNCAN, a Certified Shorthand Reporter

6    of the State of California, do hereby certify:

7         That prior to being examined, the witness named in

8    the foregoing deposition solemnly stated to testify to the

9    truth, the whole truth and nothing but the truth;

10        That the said deposition was taken down by me

11   remotely in stenotype at the time and place therein stated

12   and thereafter reduced to typewriting under my direction,

13   and that the deposition transcript is a true and correct

14   record of the proceedings here held.

15        I further certify that I am not counsel or attorney

16   for any of the parties hereto or in any way interested in

17   the event of this cause and that I am not related to any

18   of the parties thereto.

19

20        Dated this 19th day of September, 2025.

21

22                         _____

23                         F. ELOIS DUNCAN
                           Certified Shorthand Reporter
24                         License No. 4066

25
```