RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE MCNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Tel:   (213) 489-0028
Fax:   (213) 489-0552

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

Attorneys for Plaintiff STEFFON BARBER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO and CHRISTOPHER ALFRED,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTB<br><br>Assigned to:<br>District Judge Kenly Kiya Kato<br>Magistrate Judge David T. Bristow<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF, ARGUMENT REGARDING, OR REFERENCES TO PLAINTIFF STEFFON BARBER'S CRIMINAL RECORD AND PRIOR BAD ACTS**<br><br>Final PTC:   January 8, 2026<br>Time:        10:30 a.m.<br>Crtrm:       3, 3rd Floor<br>             3470 Twelfth Street<br>             Riverside, CA 92501-3801 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT that Plaintiff hereby moves *in limine* for an order excluding any evidence, testimony, argument, or reference at trial to Plaintiff Steffon Barber's criminal history, including but not limited to: (1) contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring prior to this incident; (2) allegations that Mr. Barber had a "moniker"; (3) hearsay

i

1  statements, including by Maria Gallo, that Mr. Barber had struck, hit or yelled at his
2  wife in the past; (4) Mr. Barber's probation status at the time of the incident; (5)
3  criminal charges filed against Mr. Barber arising from this incident; and (6) Mr.
4  Barber's criminal conviction and incarceration resulting from this incident. Plaintiff
5  makes this Motion pursuant to Federal Rules of Evidence 401, 402, 403, and 404.

6       This Motion is based on this Notice of Motion, the Memorandum of Points
7  and Authorities, the records and files of this Court, and upon such other oral and
8  documentary evidence as may be presented at the time of the hearing.

10  Dated: December 11, 2025      IVIE MCNEILL WYATT
11      PURCELL & DIGGS

12      By:  *s/ Rodney S. Diggs*
13      Rodney S. Diggs
    Attorney for Plaintiff, Steffon Barber

15  Dated: December 11, 2025      LAW OFFICES OF DALE K. GALIPO

16      By:  *s/ Renee V. Masongsong*
17      Dale K. Galipo
    Renee V. Masongsong
18      Attorneys for Plaintiff, Steffon Barber

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights case arises from the non-fatal shooting of Plaintiff Steffon Barber ("Mr. Barber") by County of San Bernardino Sheriff's Deputy Christopher Alfred on April 27, 2021. On Plaintiff's facts, Mr. Barber posed no immediate threat of death or serious bodily injury to any person at the time of Deputy Alfred's six lethal shots, including because no person was about to be struck by Mr. Barber's vehicle with no opportunity to get out of the way. Therefore, the shooting violated Barber's rights to be free from excessive and unreasonable force under federal and state law. Mr. Barber brings state and federal causes of action for: (1) Excessive Force under 42 U.S.C. § 1983 and the Fourth Amendment; (2) Municipal Liability—Unconstitutional Custom, Practice, or Policy; (3) Battery; (4) Negligence; (5) Violation of Cal. Civil Code § 52.1; (6) Intentional Infliction of Emotional Distress. This Motion seeks to exclude all evidence of Mr. Barber's criminal history – both before and after the incident – because such evidence is irrelevant, unfairly prejudicial, constitutes improper character evidence, and would violate the fundamental principle that use of force must be evaluated solely from the perspective of what the officer knew at the moment force was used.

At the time of the incident, Deputy Alfred had never seen Mr. Barber before, and he had no specific information about Mr. Barber's criminal history, including whether Mr. Barber had any criminal convictions prior to the shooting. (Alfred Depo. at 29:20-30:20, Dkt. 101-5). Deputy Alfred had no knowledge of Mr. Barber's identity, criminal record, or probation status when he made the split-second decision to fire six shots. Deputy Alfred also had no information that Mr. Barber had injured anyone. After the shooting, Mr. Barber was convicted under PC §245(a)(1) (assault with a deadly weapon on a person) for his conduct arising from the incident. Mr. Barber is currently incarcerated and serving a sentence that relates to both the PC §245(a)(1) conviction and his prior criminal record and probation violations

from separate incidents.

Plaintiff anticipates that Defendants will attempt to introduce inflammatory evidence of Mr. Barber's criminal record, including the fact that he was convicted of assault with a deadly weapon arising from the incident, for the purpose of unduly prejudicing Plaintiff and misleading the jury into thinking that such evidence can be used to justify Deputy Alfred's use of force or reduce Mr. Barber's compensatory damages. Such evidence would improperly invite the jury to conclude that Mr. Barber "deserved" to be shot or that his damages should be diminished based on his character rather than the objective reasonableness of Deputy Alfred's actions. Accordingly, by way of this motion, Plaintiff seeks to exclude evidence, testimony, argument, or reference to his criminal history, including but not limited to the following: (1) contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring prior to this incident; (2) allegations that Mr. Barber had a "moniker"; (3) hearsay statements, including Maria Gallo, that Mr. Barber had struck, hit or yelled at his wife in the past; (4) Mr. Barber's probation status at the time of the incident; (5) criminal charges filed against Mr. Barber arising from this incident; and (6) Mr. Barber's criminal conviction and incarceration resulting from this incident.

## II.  ARGUMENT

### A. Evidence of Mr. Barber's Criminal Record is not Relevant.

Since the United States Supreme Court first elucidated the Fourth Amendment reasonableness standard in police use of force cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Glenn v. Washington Cnty.*, 673 F.3d 864, 873, n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." Accordingly, juries in the Ninth Circuit are expressly instructed that they

2

"must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene" at the time of the use of force "and not with the 20/20 vision of hindsight." *Id.*; Ninth Circuit Model Jury Instruction 9.25; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). Furthermore, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986). Relevant evidence is only that "evidence having [a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Here, Mr. Barber's criminal history has zero relevance to the central question in this case: whether Deputy Alfred's use of deadly force was objectively reasonable based on the facts and circumstances confronting him at the moment he fired his weapon. Because Deputy Alfred was completely unaware of Mr. Barber's criminal history, probation status, or subsequent convictions at the time of the shooting, this evidence cannot possibly shed light on whether his actions were reasonable at the time.

Mr. Barber's convictions prior to the incident include the following, none of which was known to Deputy Alfred at the time of the shooting: 2005—violation of PC §487(c), felony grand theft; 2006—violation of PC §69 and §148(a)(1), misdemeanor obstruct/resist officer; 2006—vehicle code violations for driving under the influence without a license; 2006—violation of PC §422, criminal threats, and violation of PC §69, misdemanor obstruct/resist officer; 2009—violation of PC §243(a), misdemeanor battery; 2010—violation of PC §666, felony petty theft; 2012—violation of health and safety code, misdemeanor possession of controlled substance; 2017—violation of PC §415(a), misdemeanor fight/noise/offensive words; 2017—vioaltion of PC §237a(a), felony child cruelty; 2018—violation of of PC §69, felony obstruct/resist officer. Many of these convictions occurred more than

ten years ago, and none of these charges bear on Mr. Barber's veracity for truth telling. *See* Fed. Rules of Evid., Rule 609. Under Rule 609(b)(1), evidence of crimes more than ten years old is inadmissible unless the probative value substantially outweighs its prejudicial effect, which, as described further below, it does not in this case. Certainly, Mr. Barber's juvenile criminal history should be excluded, as should evidence of any arrests or charges for which he was not ultimately convicted.

After the incident, Mr. Barber was charged under PC §245(c) (assault on a peace officer with a deadly weapon), PC §187(a) (attempted murder), and PC §245(a)(1) (assault with a deadly weapon on a person), based on his conduct during the April 27, 2021, incident giving rise to this civil rights lawsuit. Mr. Barber was not convicted under PC §245(c) or PC §187(a), but he was convicted under PC §245(a)(1).

In light of how the jury will be instructed and given the great weight of Supreme Court and Ninth Circuit authority on this issue, permitting the jury to learn about Mr. Barber's criminal record (both before and after the incident), probation status, prior contacts with law enforcement, and periods of incarceration would violate this well-established precedent. Given that this hindsight evidence is not relevant to the jury's reasonableness determination, any probative value would be substantially outweighed by the risk of unfair prejudice that the jury would rest its decision on an improper basis and judge the officers' conduct with 20/20 hindsight.

It is clear that Mr. Barber's criminal record prior to the April 27, 2021, shooting is irrelevant to whether Deputy Alfred's use of deadly force against Mr. Barber was reasonable. Mr. Barber's PC §245(a)(1) conviction arising from the shooting incident is also irrelevant, as are the charges on which he was not convicted. Mr. Barber's conviction under Penal Code §245(a)(1) for assault with a deadly weapon does not rest on any determination that Deputy Alfred's shooting was lawful. The assault conviction could be based on conduct preceding the shooting—such as Mr. Barber's act of reversing his vehicle—without establishing

that Alfred's later use of deadly force was reasonable or constitutionally permissible. The criminal jury also likely found that Deputy Alfred violated basic police training when he fired at a moving vehicle, despite having been trained that a deputy "shall not" discharge a firearm at a moving vehicle and trained to step out of the way rather than shooting. Because the charge under which Mr. Barber was convicted (PC §245(a)) includes no element relating to Deputy Alfred's conduct, his conviction is irrelevant to the issues in the instant civil case.

Further, the elements of PC §245(a) are distinct from the standards surrounding Plaintiff's excessive force claim. Under PC §245(a), the criminal jury in this case was instructed that one element of the offense is whether, "when the defendant acted, he had the present ability to apply force with a deadly weapon." By contrast, in determining whether Deputy Alfred used excessive force when he shot Barber, the civil jury must consider whether Mr. Barber had the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury. The civil jury must also consider that Deputy Alfred did not announce himself as a police officer, did not issue a verbal warning prior to shooting Mr. Barber, and Deputy Alfred had reasonable alternative measures to shooting, including stepping out of the way. Additionally, only four years of the sentence that Mr. Barber is currently serving actually relates to his conduct on April 27, 2021. The remaining ten years and four months are punishment for his prior criminal record and probation violations from entirely separate incidents.

**B. Evidence of Mr. Barber's Criminal Record is Unfairly Prejudicial, a Waste of Judicial Time, and Confusing to the Jury.**

As described above, Mr. Barber's criminal record has no probative value in this case. In the alternative, if there is any probative value to this evidence, it is substantially outweighed by the danger of unfair prejudice. Accordingly, it should be excluded under Rule 403 of the Federal Rules of Evidence.

Rule 403 excludes even relevant evidence "if its probative value is

1  substantially outweighed by the danger of unfair prejudice, confusion of the issues,
2  or misleading the jury, or by considerations of undue delay, waste of time, or
3  needless presentation of cumulative evidence." "Unfair prejudice" means "undue
4  tendency to suggest decision on an improper basis, commonly, though not
5  necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th
6  Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991)
7  (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger
8  or punitive impulses).

9        With respect to Mr. Barber's criminal record prior to the April 27, 2021
10 shooting, there is a real danger that the jury might incorrectly assume that because
11 Mr. Barber committed crimes in the past, he was committing a crime at the time of
12 his contact with Deputy Alfred. Admission of this evidence poses a substantial risk
13 of leading to "litigation of collateral issues, thereby creating a side issue which
14 might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972
15 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003)
16 (en banc); *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute
17 in this case is whether Deputy Alfred's use of deadly force was objectively
18 reasonable under the circumstances. Mr. Barber is not on trial. His prior conduct
19 does not bear on the reasonableness of Deputy Alfred's conduct.  If Defendants are
20 permitted to introduce evidence of Mr. Barber's criminal history, record, then that
21 will compel Plaintiff to explain the circumstances of these acts, delve into whether
22 Mr. Barber was actually convicted of each of these charges, or otherwise to try to
23 mitigate their prejudicial impact. This will distract the jury from its central task and
24 will unduly consume this Court's and the jury's time. *See Wilson v. City of Chicago*,
25 6 F.3d 1233 (7th Cir. 1993) (finding it improper in a civil rights case against officers
26 for the district court to admit plaintiff's criminal history—turning "trial of the
27 defendants into a trial of the plaintiff").
28       With respect to the charges filed against Mr. Barber relating to the April 27,

2021 incident, and his PC §245(a) conviction, there is an additional layer of acute danger that the jury will reach a conclusion based on improper considerations and assumptions. The danger presented by introduction Mr. Barber's PC §245(a) conviction and related charges is that they may usurp the jury's role to independently weigh the evidence and reach its own conclusion based on the facts and the law in the civil case. The jury should decide the case based on its own evaluation of the evidence presented at the trial of the instant civil case, and not based on what the criminal jury decided or what the charges the district attorney determined to file. Determining the reasonableness of Deputy Alfred's actions is a task for the jury, and there is a significant risk that the jury might give undue deference to the findings of the criminal jury. If this information is not excluded, then the jury might be tempted to disregard the evidence presented at the civil trial and disregard the civil law and jury instructions, instead deciding that the shooting of Mr. Barber was justified simply because a criminal jury convicted Mr. Barber of assault with a deadly weapon arising from this incident. This would be extremely unfair to Mr. Barber, given that the elements of PC §245(a) differ from the elements of Mr. Barber's civil claims, and the civil and criminal standards differ. Further, it would be unclear to the civil jury what facts and evidence were presented to the criminal jury for the criminal jury to reach their verdict without consuming an unreasonable amount of this Court's time during what should be a relatively short trial.

It would also be prejudicial to Mr. Barber for the jury to learn that he is currently serving a sentence of fourteen years and four months because it calls for speculation that he will serve the entire sentence. He has a possible early release date of October 27, 2027—less than two years from now. Plaintiff has retained medical experts to discuss Mr. Barber's injuries and projected future care for those injuries. If the jury learns that Mr. Barber could be incarcerated for an additional thirteen years or so, they may be tempted to reduce his compensatory damages

based on pure speculation that he will actually be incarcerated for an additional thirteen years. Further, only approximately four years of Mr. Barber's sentence actually relates to his conduct on April 27, 2021. Admission of Mr. Barber's current period of incarceration would thus unnecessarily consume Court time in explaining which portion of his sentence actually relates to the incident, and this would further bring in information about the prior criminal conduct that was unknown to Deputy Alfred at the time of the shooting.

For all the above reasons, Mr. Barber's entire criminal record should be excluded in full. In the alternative, if the Court determines that some of this inflammatory evidence may be potentially relevant, the Court should hold a brief hearing outside the presence of the jury under Rule 104(a) to establish relevance, foundation, and any appropriate limits on its use before the jury is permitted to hear any of it.

### C. Mr. Barber's Criminal Record is Improper Character Evidence

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Introduction of Mr. Barber's criminal record would suggest an improper inference based on character evidence, to the extent that the jury might infer from the fact that Mr. Barber engaged in bad conduct on another occasion that he gave Deputy Alfred probable cause to believe that he had committed a crime on the date in question. *See Evans v. City of San Diego*, 913 F. Supp. 2d 986, 992-93 (S.D. Cal. 2012) (in false arrest case, evidence of plaintiff's conduct outside the time frame of the arrest is inadmissible character evidence). Since any evidence of Mr. Barber's criminal record would require an inference as to Mr. Barber's character to make it relevant, such that it is inadmissible.

//
//
//

**D. Any Reports and Certain Statements Pertaining to Mr. Barber's Criminal History Are Hearsay Under Federal Rules of Evidence, Rules 801 and 802.**

Finally, any reports containing the above information would constitute hearsay under Federal Rules of Evidence, Rules 801 and 802. This also applies to witness Maria Gallo's statements that Mr. Barber's wife told her that Mr. Barber hit her and that she was afraid of Mr. Barber. Even if a hearsay statement falls under an exception to the rule, it is not admissible if such statement consists of one or more statements that are themselves hearsay. Accordingly, this evidence should also be excluded on this ground.

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court grant Plaintiff's motion *in limine* to exclude all information regarding Mr. Barber's criminal record, including but not limited to the following: (1) Mr. Barber's contacts with law enforcement, arrests, charges, convictions, and periods of incarceration occurring prior to this incident; (2) allegations that Mr. Barber had a "moniker"; (3) hearsay statements, including by Maria Gallo, that Mr. Barber had struck, hit or yelled at his wife in the past; (4) Mr. Barber's probation status at the time of the incident; (5) criminal charges filed against Mr. Barber arising from this incident; and (6) Mr. Barber's criminal conviction and incarceration resulting from this incident.

Respectfully submitted,

Dated: December 11, 2025      IVIE MCNEILL WYATT
                              PURCELL & DIGGS

                        By:   *s/ Rodney S. Diggs*
                              Rodney S. Diggs
                              Attorney for Plaintiff, Steffon Barber

| | |
|---|---|
| Dated: December 11, 2025 | LAW OFFICES OF DALE K. GALIPO |
| | By: *s/ Renee V. Masongsong* |
| | Dale K. Galipo |
| | Renee V. Masongsong |
| | Attorneys for Plaintiff, Steffon Barber |