**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

**LAW OFFICES OF DALE K. GALIPO**
**Dale K. Galipo, Esq. (SBN 144074)**
dalekgalipo@yahoo.com
**Renee V. Masongsong, Esq. (SBN 281819)**
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff **STEFFON BARBER**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER,<br><br>      *Plaintiff,*<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, and DEPUTY CHRISTOPHER ALFRED,<br><br>      *Defendants.* | Case No. 5:22-cv-00625-KK-DTB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE PLAINTIFF'S EXPERTS SCOTT DEFOE AND ROBERT MORALES** |

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff hereby opposes Defendants' Motion in Limine No. 2 on the following grounds.

## I.   DEFENDANTS' MOTION VIOLATES THE COURT ORDER.

This Court's orders states: "Memoranda of Points and Authorities in support of or in opposition to motions in limine **shall not exceed ten (10) pages**. Motions in limine shall not be compound, i.e., each motion shall address only one item of evidence or witnesses." **(Dkt. 47 at 6)**. Defendants' Motion in limine No. 2 is 15 pages long and requests the exclusion of both Scott Defoe and Robert Morales. Discussing both witness blatantly ignores the court's standing order because the motion is compound and mentions two witnesses testifying to two different aspects of the case. Plaintiff is prejudiced by his inability to adequately respond to this compound motion while attempting to comply with this Court's page limitation. Therefore, the Court should not consider this motion in limine and deny it with prejudice to prevent an unfair advantage.

## II.   [1]ANALYSIS

### A. SCOTT DEFOE IS EXCEPTIONALLY QUALIFIED

Scott Defoe possesses exceptional qualifications to testify as a police practices expert based on his extensive education, training, and practical experience. As a twenty-year veteran of the Los Angeles Police Department who held supervisory positions for the last 14 years of his career, DeFoe received over 100 commendations, including the Medal of Valor, Purple Heart, and Police Star. He holds California POST Commission certifications at the Basic, Intermediate, Advanced, and Supervisory levels, and is a Licensed California Private Investigator (License No. 29151) and Certified California Criminal Defense Investigator. His LAPD career included diverse assignments in patrol, detective work, gang investigations, narcotics, K9 operations, SWAT, and internal investigations,

---

[1] For applicable law, please reference Plaintiff's opposition to Defendants' Motion in Limine No. 4.

providing him with direct, hands-on experience in the very areas about which he offers expert opinions. Additionally, he served as a Special Agent with the U.S. Customs Service on an Organized Crime Drug Task Force (1988-1989), further broadening his law enforcement expertise. His qualifications satisfy Federal Rule of Evidence 702's requirement that an expert witness possess "knowledge, skill, experience, training, or education" sufficient to assist the trier of fact.

Defendants' argument that Mr. Defoe does not lack the qualifications to opine regarding police tactics, policies, and procedures is plainly erroneous because Mr. Defoe has spent the majority of his life studying, applying, investigating, and practicing the procedures at issue in this case.

## B. SCOTT DEFOE'S OPINIONS ARE BASED ON RELIABLE METHODOLOGY AND ADEQUATE FOUNDATION.

DeFoe's opinions are grounded in well-established, testable standards that are widely accepted in the law enforcement community. His analysis relies on POST Learning Domains, which set forth standardized training requirements for all California peace officers, as well as department-specific policies such as the San Bernardino County Sheriff's Department Manual. These standards are subject to ongoing review, revision, and peer scrutiny within the law enforcement profession.

DeFoe's methodology involves comparing an officer's conduct against objective, documented standards including POST training requirements, departmental policies, California Penal Code Section 835a, Fourth Amendment reasonableness standards, and generally accepted police practices. As a Supervisor, Defoe investigated over one hundred (100) Use of Force Incidents and was personally involved in lethal and less-lethal force incidents. Mr. Defoe has received the LAPD Medal of Valor and Police Star for two lethal use of force incidents.

Based on his experience, education, and years of service, DeFoe applies practical, field-tested knowledge to his evaluations of reports and evidence. His approach of analyzing police conduct through the lens of established training

standards, policies, and legal requirements represents a reliable methodology that has gained general acceptance in the field of police practices expert testimony.

Defense's argument focuses on lack of foundation and speculative opinions. Defense's argument fails because Mr. Defoe formed his opinion based on hours of audio, reports, documents, photos, and other evidence relating to the Sheriff investigation. **(Dkt. 108 Andersen Decl., Ex. at 2-4**).

## C. SCOTT DEFOE'S OPINIONS ARE NOT SPECULATIVE AND ARE BASED ON SUFFICIENT EVIDENCE.

Defendants argue that Mr. Defoe's opinions are speculative and lack foundation by raising that fact that Mr. Defoe included facts relating to mental health. **(Dkt. 108 Andersen Decl., Ex. A at 20-21).** This argument mischaracterizes Mr. Defoe's opinion, by failing to account for the evidence provided to Mr. Defoe that formed the basis of his opinion. Additionally, Mr. Defoe's opinions are based on his specialized knowledge, extensive education, and comprehensive review of police investigation and evidence.

Before forming his opinions, DeFoe conducted a thorough review of the investigation materials, including: (1) San Bernardino County Sheriff's Department Crime Reports; (2) scene photographs and diagrams; (3) CAD reports; (4) deposition transcripts of both Steffon Barber and Deputy Alfred; (5) Deputy Alfred's initial interview; (6) Deputy Alfred's audio belt recording; (7) San Bernardino County Sheriff's Department Manual and policies; and (8) other investigation documents This comprehensive record review provided DeFoe with the factual foundation necessary to analyze Deputy Alfred's conduct against applicable standards. There is sufficient evidence because Mr. Defoe used evidence gathered directly by the Sheriff and listened to audio of witnesses who were there.

DeFoe's methodology mirrors that of experienced police practices experts nationwide who routinely base opinions on review of police reports, witness statements, scene documentation, audio/video recordings, and departmental policies.

His factual foundation is not speculative—it is grounded in the documented evidence generated during the investigation of this incident.

DeFoe did not offer generic opinions divorced from the facts of this case. He specifically analyzed: (1) whether Deputy Alfred's decision to position himself behind a running vehicle was consistent with police training on tactical positioning; (2) whether Deputy Alfred had reasonable alternatives to using deadly force given the specific circumstances; (3) whether each of Deputy Alfred's six shots was justified based on the threat present at that moment; (4) whether the vehicle's slow reverse movement presented an imminent threat; and (5) whether Deputy Alfred's pre-shooting tactics created the dangerous situation. Each opinion applies established standards to the specific factual circumstances documented in the evidence DeFoe reviewed. This evidence is sufficient because it was produced from the investigation report from the Sheriff.

Defense's argument that Mr. Defoe concluded Mr. Barber had mental health issues is plainly erroneous and misstates Mr. Defoe's opinion. Mr. Defoe's opinion is based on what an officer should do under the circumstances of a call for service regarding mental health episodes or a person that appears to be having a mental health crisis. His opinion concluded that Deputy Alfred failed to rule out mental health. Defoe formed this opinion based on the fact Deputy Alfred had personal knowledge prior to contacting Mr. Barber. This fact was generated from the witnesses who called and were interviewed, and the objective signs displayed by Mr. Barber. These facts were provided to Mr. Defoe based on the evidence he relied on to form his opinion. Mr. Defoe did not render an opinion regarding Mr. Barber's mental state, rather, his opinion focused on what an officer should have done under the circumstances. While forming his opinion Defoe considered the type of call, witness statements, information known to Deputy Alfred, Mr. Barber's mannerisms, and communications between Mr. Barber and Deputy Alfred. Moreover, experts may rely on hearsay.

## D. THE COURT SHOULD DENY DEFENDANTS' REQUEST TO EXCLUDE SCOTT DEFOE'S TESTIMONY IN ITS ENTIRETY.

Defendants seek to exclude "all testimony by Scott Defoe" at trial. **(Dkt. 108 at 2, 14)**. This sweeping request lacks merit. Scott DeFoe is an exceptionally qualified expert whose testimony is essential for the jury to understand police training and standards.

Even if the Court were to find merit in any of Defendants' specific objections—which Plaintiff disputes—the appropriate remedy would be to limit or exclude only the specific testimony subject to a valid objection, not to exclude Mr. Defoe's entire testimony. Federal Rule of Evidence 702 and *Daubert* require exclusion only of unreliable or unhelpful expert testimony.

Here, Mr. Defoe's will opine on Deputy Alfred's conduct. This testimony is critical to help the jury understand the standard of care and breach from the standard of care because Mr. Defoe's testimony will directly speak to what a reasonable officer would do under the same or similar circumstances.

## E. ROBERT MORALES IS EXCEPTIONALLY QUALIFIED TO TESTIFY UNDER FEDERAL RULES OF EVIDENCE 702 AND *DAUBERT*.

Defense moves to exclude testimony of accident reconstructionist Robert Morales. Robert Morales holds a Master of Science degree in Mechanical Engineering with a specialization in controlled systems from California State University, Los Angeles, along with three Bachelor of Science degrees in Mechanical Engineering, Manufacturing Engineering, and Software and Computer Engineering. He is certified by the Society of Automotive Engineers in Accident Reconstruction, certified as a CDR Technician by Crash Data Group, and certified as a Forensic Video Technician by the Law Enforcement & Emergency Services Video Association International.

Additionally, Morales has over fourteen years of professional experience as an accident reconstructionist, having reconstructed more than one thousand vehicle accidents throughout his career. He currently serves as Senior Managing Accident Reconstructionist at Young & Associates Engineering Services, where his work includes reconstruction of accidents involving industrial equipment, heavy trucks, agricultural equipment, cars, bicycles, motorcycles, and pedestrians, utilizing laser measurement, GPS trackers, accelerometers, computerized simulations, and numerical methods. Prior to that, he served as Senior Forensic Engineer at Momentum Engineering Corp., conducting state-of-the-art computer simulation and animation production, vehicle and site inspections, and extensive computer-based analysis using momentum and energy-based equations.

Critically, Morales has demonstrated his expertise through peer-reviewed publications in SAE Technical Papers, including: (1) "Accuracy and Validation of Geotab GPS Fleet Tracking Devices" (SAE Technical Paper 2021-01-0908); (2) "Accuracy and Validation of 360-Degree Camera Use in Photogrammetry" (SAE Technical Paper 2022-01-0829); and (3) "Accuracy and Validation of Geotab GPS Fleet Tracking Devices for Medium Duty Trucks" (SAE Technical Paper 2022-01-0140). These publications demonstrate that Morales' methodologies, particularly his photogrammetry techniques, have been subjected to peer review and published in technical literature, establishing general acceptance within the accident reconstruction field.

### F. MORALES USED RELIABLE, TESTABLE, AND SCIENTIFICALLY VALIDATED PROCEDURES.

Morales conducted a comprehensive photogrammetry analysis of the incident scene using industry-standard protocols that are widely accepted in the accident reconstruction field. His photogrammetry procedures included: (1) correcting the original scene photographs for lens distortion to ensure geometric fidelity; (2) integrating the corrected photographs with a 3D point cloud of the incident site

obtained on October 20, 2025, allowing for precise spatial alignment; (3) generating camera solutions through photogrammetric techniques to determine exact placard locations; (4) establishing fixed reference points using the Edison utility pole and the east-facing exterior wall of 12015 White Avenue; and (5) validating his measurements through independent verification and documenting margins of error inherent in the photogrammetric method. When his analysis revealed discrepancies with police measurements, he transparently disclosed potential error sources including instrumentation limitations, human-operator error, and environmental factors. This photogrammetry methodology is not speculative—Morales completed SAE training specifically in "Photogrammetry and Analysis of Digital Media" and has published peer-reviewed research validating the "Accuracy and Validation of 360-Degree Camera Use in Photogrammetry", demonstrating that his methods have been subjected to peer review and published in the scientific literature.

     Morales performed detailed forensic audio analysis of Deputy Alfred's belt recording using three professional-grade programs: (1) Anped-5 for precise audio timing analysis and waveform examination; (2) Adobe Audition for sound isolation and frequency analysis to distinguish between tire spinning sounds, vehicle movement, and gunshots; and (3) After Effects for synchronizing audio events with visual timeline analysis.38 Through spectral analysis of the 13-minute, 17-second Windows Media Audio recording captured at 44.1 kHz, he identified sharp, high-amplitude spikes indicative of gunshots and created a precise temporal sequence showing that only 6 seconds elapsed between Mr. Barber entering his vehicle and the final shot, Deputy Alfred discharged six rounds within approximately 2.5 seconds, and tire spinning sounds were audible for approximately 0.75 seconds before the vehicle gained traction. Morales also analyzed acoustic signatures to identify Deputy Alfred's movement patterns based on equipment rattling sounds, using his LEVA Level 1, 2, and 3 certifications. Additionally, Morales conducted vehicle dynamics analysis using established engineering principles and published

data, including: (1) researching consumer reports of the 2003 Chevrolet Trailblazer to determine its reverse acceleration capability (0.07 G); (2) analyzing the driveway surface composition to calculate a friction coefficient of 0.4 to 0.5 based on published data for gravel surfaces under dry conditions; (3) calculating vehicle speed and acceleration using physics formulas showing maximum speed of 3.4 mph; (4) validating calculations using multiple engineering software programs including Excel, MathCAD, and specialized simulation programs; and (5) comparing the vehicle's maximum speed to published biomechanical data showing average human walking speed of 3.0 to 3.5 mph.

Additionally, Morales integrated multiple independent sources of evidence to cross-validate his conclusions: physical evidence (scene photographs, measurements, tire impressions, shell casing locations, and vehicle weight data); audio evidence (Deputy Alfred's belt recording analyzed using specialized software); testimonial evidence (depositions and police reports); technical research (consumer reports on the Trailblazer, published friction coefficient data, biomechanical data, and Glock 21 research); and geospatial data (Google imagery and 3D point cloud scans). As Morales explained, "I apply my knowledge to make analyses by using a combination of physical evidence, photographs, audio, and/or video, in conjunction with research, engineering, computations, simulations, and calculations." This multi-disciplinary integration is the hallmark of reliable expert analysis—each analytical method provides an independent check on the others, and convergent findings from multiple methodologies strengthen confidence in the conclusions. His shell casing distribution analysis, based on the principle that casings ejected from a Glock 21 follow predictable ballistic patterns, revealed a 32-foot linear progression from first to last casing consistent with forward movement during firing. Morales' methodology has been tested and subjected to peer review through his three published SAE Technical Papers, his testimony being subjected to cross-examination in the criminal trial, his regular presentations at professional

conferences, and court acceptance of his measurements and analyses in hundreds of previous California cases.

### G. MORALES' OPINIONS ARE BASED ON SUFFICIENT FACTS AND DATA.

Morales' opinions satisfy Federal Rule of Evidence 703's requirement that expert opinions be based on "sufficient facts or data" of a type reasonably relied upon by experts in the field. Before forming his opinions, Morales conducted an exhaustive review of case materials including a Statement of Deputy Alfred and his deposition transcript, Deposition of Steffon Barber, Photographs of the scene and physical evidence, Measurements of the scene documented in police investigation reports, Police investigation reports and supplemental reports, Audio belt recording of Deputy Alfred, Research regarding the 2003 Chevrolet Trailblazer SUV's mechanical specifications, Research regarding Deputy Alfred's Glock 21 firearm, Google imagery of the scene, 3D point cloud scan of the incident site, and Vehicle weight data from Detective Liang's processing report.

It is known and accepted that an Accident reconstructionist routinely base their opinions on these types of materials: scene photographs, physical measurements, audio/video recordings, witness statements, vehicle specifications, and engineering research data. The factual foundation Morales relied upon is of a type reasonably relied upon by experts in accident reconstruction and satisfies Rule 703.

### H. MORALES' OPINION WILL ASSIST THE TRIER OF FACT AND WITHIN HIS SCOPE OF EXPERTISE.

Morales' testimony will assist the jury in understanding technical matters beyond common knowledge: (1) how fast the Trailblazer was moving at various points during the incident; (2) how far the vehicle traveled; (3) the timing sequence of events based on audio analysis; (4) the mechanical limitations imposed by the dirt/gravel surface on vehicle acceleration; (5) the spatial positioning of physical

evidence; and (6) the correlation between physical evidence, audio evidence, and witness accounts. These are precisely the types of technical, specialized questions for which expert testimony is appropriate.

Morales' opinions are squarely within his areas of expertise as an accident reconstructionist with specific training and certifications in vehicle dynamics, photogrammetry, and forensic audio/video analysis. He is qualified to offer opinions on vehicle movement, speed, acceleration, timing, and spatial positioning based on analysis of physical evidence, photographs, and audio recordings—the core competencies of accident reconstruction experts.

## IV. CONCLUSION

For the reasons stated above, Defendants have failed to meet their burden of demonstrating that Scott Defoe's and Robert Morales expert testimony should be excluded. Excluding both Scott Defoe's and Robert Morales's testimony would prejudice Plaintiff by depriving the jury of critical information necessary to fairly assess the devastating and lifelong impact of Defendants' actions and how this tragedy could have been prevented.

Accordingly, the Court should deny Defendants' Motion in Limine No. 2 to Exclude Plaintiff's Experts Scott Defoe and Robert Morales.

Dated: December 18, 2025

**IVIE McNEILL WYATT PURCELL & DIGGS**
By: /s/ Rodney S. Diggs
Rodney S. Diggs, Esq.
Brandon Tanter, Esq.
Attorneys for Plaintiff,
STEFFON BARBER

**LAW OFFICES OF DALE K. GALIPO**
By: /s/ Renee V. Masongsong
Dale K. Galipo, Esq.
Renee V. Masongsong, Esq.
Attorneys for Plaintiff,
STEFFON BARBER