**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

**LAW OFFICES OF DALE K. GALIPO**
**Dale K. Galipo, Esq. (SBN 144074)**
Email: dalekgalipo@yahoo.com
**Renee V. Masongsong, Esq. (SBN 281819)**
Email: rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff, **STEFFON BARBER**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, | CASE NO.: 5:22-cv-00625-KK-DTB |
| *Plaintiff,* | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3 TO EXCLUDE PLAINTIFF'S EXPERT DR. AMY MAGNUSSON; DECLARATION OF RODNEY S. DIGGS** |
| COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED | |
| *Defendants.* | |

Plaintiff STEFFON BARBER ("Plaintiff") will and hereby does oppose Defendants County of San Bernardino and Deputy Christopher Alfred's motion *in limine* no. 3 to exclude Plaintiff's expert Dr. Amy Magnusson.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  Summary

On April 27, 2021, at approximately 11:12 p.m., Deputy Christopher Alfred of the San Bernardino County Sheriff's Department responded to a call for service at 12013 White Avenue in Adelanto, California. The incident occurred in a residential driveway where Plaintiff Steffon Barber was seated in his parked 2003 Chevrolet Trailblazer. Without identifying himself as a law enforcement officer and while wearing a full-face ski mask, Deputy Alfred gave commands to Mr. Barber. Mr. Barber entered his vehicle and started the engine. Within seconds, Deputy Alfred fired six shots from his department-issued Glock 21, .45 caliber handgun in rapid succession—approximately 2.4 to 2.5 seconds—at Mr. Barber's vehicle.

One bullet struck Mr. Barber in the back of his head, causing devastating and permanent injuries. Mr. Barber was airlifted to Arrowhead Regional Medical Center where he underwent emergency brain surgery. Medical records document that Mr. Barber suffered a gunshot wound to the right parietal vertex with comminuted skull fracture, with bullet and bone fragments penetrating into his brain. Neurosurgeons performed debridement of necrotic brain tissue and placed a titanium cranioplasty plate. As a direct result of Deputy Alfred's actions, Mr. Barber is now permanently wheelchair bound with left-sided hemiparesis, severe weakness affecting one side of his body, cognitive deficits, and other catastrophic permanent injuries.

Defendants' *motion in limine* to exclude Plaintiff's retained expert Amy Magnusson, M.D., on the ground that the testimony of Dr. Magnusson will be cumulative/duplicative of Plaintiff's retained forensic pathologist expert, Bennett Omalu, M.D. Further, Defendants' Motion also seek to exclude any testimony or opinions by Dr. Magnusson that are based on speculation and/or lack foundation;

any testimony or opinions beyond the expert's scope of expertise; and any testimony or opinions by the expert regarding treatment recommendations that are irrelevant or not possible given Plaintiff's incarnation. Defendants' Motion is meritless and represents an improper attempt to prevent the jury from hearing critical testimony regarding the devastating and permanent injuries Mr. Barber sustained as a result of Deputy Alfred's use of deadly force.

## II.     Dr. Magnusson's Testimony Easily Satisfies The Daubert Threshold

Dr. Magnusson's testimony satisfies Rule 702 and Daubert. She is board certified in Physical Medicine and Rehabilitation with subspecialty certifications in Spinal Cord Medicine and Brain Injury Medicine. (***Diggs' Decl Ex. A – Magnusson's curriculum vitae***). Her opinions are based on comprehensive review of Mr. Barber's extensive medical records and apply established rehabilitation medicine principles—the standard methodology in her field. Her testimony will directly assist the jury in understanding Mr. Barber's permanent disabilities, treatment needs, and life care requirements, which are essential to assessing damages. Defendants' conclusory assertions fail to undermine Dr. Magnusson's qualifications, reliable methodology, or the probative value of her testimony.

## III.    The Testimony That Plaintiff Intends To Elicit From Dr. Amy Magnusson Is Not Cumulative Of Dr. Benette Omalu's Testimony

Defendants argue that Dr. Magnusson's testimony is cumulative and duplicative of Dr. Bennet Omalu's testimony. (Dkt. 109 at 5-7). This argument fails because Dr. Magnusson and Dr. Omalu offer distinct expert opinions within their respective areas of specialization that complement rather than duplicate each other.

Dr. Omalu is a forensic pathologist and neuropathologist who will testify regarding the nature and extent of Mr. Barber's gunshot wound, the pathological damage to his brain, the mechanism of injury, and the causal relationship between Deputy Alfred's shooting and Mr. Barber's permanent neurological injuries. Dr. Omalu's expertise lies in bullet trajectory, forensic pathology, neuropathology, and

determining cause and extent of injuries from a pathological perspective. *("Diggs' Decl", Ex. B – Dr. Omalu's Curriculum Vitae)*. On October 31, 2025, Dr. Omalu submitted his Rule 26 Report. *(Diggs' Decl., Ex. C – Dr. Omalu's Rule 26 Report).*

By contrast, Dr. Magnusson's expertise lies in rehabilitation medicine, functional assessment, and developing comprehensive life care plans for individuals with permanent disabilities. Moreover, Dr. Magnusson is a physical medicine and rehabilitation physician (physiatrist) who will testify regarding the functional consequences of Mr. Barber's injuries, his ongoing rehabilitation needs, treatment recommendations to optimize his function and quality of life, required durable medical equipment and assistive devices, need for caregiver assistance, and his long-term prognosis – as outlined in her Rule 26 Report, dated October 31, 2025. *(Diggs' Decl., Ex D – Dr. Magnusson's Rule 26 Report*).

While both experts address Mr. Barber's traumatic brain injury, they approach it from entirely different medical specialties with different purposes. Dr. Omalu explains what happened to Mr. Barber's brain from a pathological standpoint and causation. Dr. Magnusson explains how Mr. Barber functions now and in the future as a result of his brain injury and what medical care,0equipment, and assistance he requires. These are not cumulative topics—they are complementary perspectives that together provide the jury with a complete understanding of Mr. Barber's injuries and damages.

Federal Rule of Evidence 403 permits exclusion of cumulative evidence only when its probative value is "substantially outweighed" by concerns about needless presentation of cumulative evidence. The cases Defendants cite involved situations where multiple experts offered nearly identical opinions on the same issue. *See United States v. Alisal Water Corp.*, 431 F.3d 643, 659-60 (9th Cir. 2005); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1484 (9th Cir. 1991). Here, Dr. Magnusson and Dr. Omalu offer meaningfully different perspectives within their distinct areas of expertise. The jury needs to hear from both experts to fully understand the nature of

Mr. Barber's injuries (Dr. Omalu) and the functional impact and future care requirements resulting from those injuries (Dr. Magnusson). Accordingly, Dr. Magnusson's testimony is not cumulative and should not be excluded under Rule 403.

More importantly, Defendants are attempting to exclude well-founded expert opinions on Mr. Barber's injuries, treatment needs, and prognosis—testimony that is essential for the jury to fairly evaluate the damages Mr. Barber has suffered and will continue to suffer for the rest of his life. Dr. Magnusson's opinions were thoroughly documented in her Rule 26 Report, *(Exhibit D)* and she was examined at length during her December 5, 2025, deposition by Defendants. Dr. Magnusson is board certified in physical medicine and rehabilitation with subspecialty board certifications in both spinal cord medicine and brain injury medicine. *(Exhibit A)* Her extensive experience treating patients with traumatic brain injuries and spinal cord injuries makes her uniquely qualified to assess Mr. Barber's condition and needs. Her opinions are based on reliable methodology, thorough review of extensive medical records, and her specialized knowledge and training in treating individuals with the exact type of catastrophic injuries Mr. Barber sustained.

Defendants' arguments that Dr. Magnusson's testimony is cumulative, speculative, or irrelevant fail as a matter of law and fact. Dr. Magnusson provides distinct rehabilitation and treatment planning testimony that complements rather than duplicates Dr. Omalu's forensic pathology and neuropathology opinions. Her testimony regarding Mr. Barber's functional limitations, ongoing treatment needs, and rehabilitation requirements is critical evidence the jury must hear to fully understand the life-altering consequences of Defendants' actions. Accordingly, Defendants' motion should be denied in its entirety.

### IV. **Dr. Magnusson's Opinions Are Not Speculative and Are Based on Sufficient Evidence**

     Defendants argue that Dr. Magnusson's opinions are speculative and lack foundation. (Dkt. 109 at 7-9). This argument mischaracterizes the nature of expert medical testimony regarding future treatment needs and prognosis. Dr. Magnusson's opinions are based on her specialized knowledge, extensive clinical experience, and comprehensive review of Mr. Barber's medical records documenting his injuries and treatment to date.

     When a physician with Dr. Magnusson's qualifications and experience reviews extensive medical records documenting a patient's traumatic brain injury, ongoing symptoms, functional limitations, and treatment history, and then offers opinions regarding the patient's need for future medical care, rehabilitation services, medications, equipment, and assistance—those opinions are not speculative. They represent the application of specialized medical knowledge to the documented facts of the patient's condition. Such testimony routinely assists juries in understanding the future medical and rehabilitative needs of catastrophically injured plaintiffs.

     Defendants specifically challenge Dr. Magnusson's opinion regarding Mr. Barber's shoulder pain, arguing she cannot state to a reasonable degree of medical certainty whether the shoulder pain relates to the incident. (Dkt. 109 at 8-9; Andersen Decl., Ex. B at 17:6-25). Dr. Magnusson appropriately testified that Mr. Barber's left hemiparesis can cause shoulder instability and pain, that shoulder pain was first documented in medical records during his acute hospitalization following the shooting, and that the clinical correlation suggests a potential relationship to his injuries. (Andersen Decl., Ex. B at 17:9-25). She candidly acknowledged she cannot say with "absolute certainty" but explained the clinical basis for potential correlation. (Id.). This honest, scientifically grounded testimony is precisely the type of expert opinion that assists juries. The jury can weigh Dr. Magnusson's explanation and determine what weight to give her opinions regarding the shoulder injury. Any limitations in the certainty of her opinions go to the weight of her testimony, not its admissibility.

Similarly, Defendants argue Dr. Magnusson's opinions are speculative because she did not read Mr. Barber's deposition testimony. (Andersen Decl., Ex. B at 20:20-21:7). However, Dr. Magnusson reviewed extensive objective medical records documenting Mr. Barber's injuries, treatment, functional limitations, and clinical findings. Her opinions are based on this objective medical evidence, not on Mr. Barber's subjective complaints. While reviewing deposition testimony might have provided additional information, the absence of that review does not render her opinions inadmissible. Again, this goes to the weight of her testimony, which the jury can properly evaluate.

### V. Dr. Magnusson's Opinions Have Sufficient Foundation Under Federal Rule of Evidence 703

Defendants argue that Dr. Magnusson's opinions lack foundation because she did not conduct an in-person evaluation of Plaintiff. While Dr. Magnusson acknowledged at her December 5, 2025, deposition that she did not personally examine Plaintiff, this is not disqualifying under Federal Rule of Evidence 703.

Federal Rule of Evidence 703 provides that an expert may base an opinion on facts or data that the expert "has been made aware of or personally observed" if such facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Experts routinely base opinions on medical records, imaging studies, operative reports, and other treating physicians' assessments. Under Federal Rule of Evidence 702, an expert may rely on the opinions of others, such as treating physicians, if the expert's opinion is independently supported by evidence and the record demonstrates that the expert conducted an independent evaluation of the evidence (*Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534 (2012)). Additionally, a medical expert's use of differential diagnosis, which involves rejecting alternative causes of an injury, is appropriate when grounded in significant clinical experience and examination of medical records and literature (*Murray v. Southern Route Maritime SA*, 870 F.3d

915 (2017)). This supports the notion that medical records and assessments are valid bases for expert opinions when properly analyzed. Physical examination is not a prerequisite to expert testimony when the expert has reviewed extensive medical documentation providing a sufficient basis for forming reliable opinions.

Dr. Magnusson reviewed extensive medical records documenting Plaintiff's injuries, treatment, and current functional status, providing a sufficient basis for her opinions under Rule 703. Moreover, Plaintiff's incarceration status and security restrictions at Wasco State Prison may have made in-person examination logistically difficult or impossible. The appropriate remedy, if Defendants believe the lack of in-person examination affects the weight of Dr. Magnusson's testimony, is vigorous cross-examination—not exclusion.

## VI. **Dr. Magnusson Is Highly Qualified to Render Opinions Regarding Plaintiff's Traumatic Brain Injury, Functional Limitations, and Life Care Needs**

Dr. Amy Magnusson is eminently qualified to testify as a medical expert regarding Plaintiff's traumatic brain injury, functional limitations, rehabilitation needs, and life care planning. (***Exhibit A***). She is board certified in Physical Medicine and Rehabilitation with subspecialty board certifications in Spinal Cord Medicine and Brain Injury Medicine—precisely the medical specialties necessary to evaluate, diagnose, and treat individuals with the types of catastrophic neurological injuries that Plaintiff sustained. ***(Exhibit D ).***

Physical Medicine and Rehabilitation (PM&R), also known as physiatry, is the medical specialty specifically dedicated to restoring function to patients with disabling injuries, including traumatic brain injury. PM&R physicians routinely diagnose and treat the types of injuries Plaintiff sustained, focusing on the long-term functional consequences and rehabilitation needs rather than acute surgical intervention. Dr. Magnusson's subspecialty board certifications in Spinal Cord Medicine and Brain Injury Medicine make her precisely the type of expert needed

to opine on traumatic brain injury rehabilitation, functional assessment, and life care planning for individuals with permanent neurological impairments.

Defendants' argument that Dr. Magnusson is unqualified because she is not a psychologist, or neurologist fundamentally misunderstands the distinct roles of these medical specialties. Neurologists diagnose neurological diseases and disorders; neurosurgeons perform surgical procedures on the brain and spine. In contrast, PM&R physicians like Dr. Magnusson focus on optimizing function, independence, and quality of life for patients living with the long-term consequences of neurological injuries. Dr. Magnusson's specialty focuses on the long-term functional consequences and rehabilitation needs—which is exactly what the jury needs to understand regarding Plaintiff's damages.

Dr. Magnusson's extensive clinical experience treating patients with traumatic brain injuries, combined with her specialized training in rehabilitation medicine and life care planning, qualifies her to render opinions regarding Plaintiff's functional limitations, prognosis, and need for lifelong medical care and rehabilitation services. Given Dr. Magnusson's breadth of experience in physical medicine and rehabilitation with subspecialty expertise in brain injury medicine, this Court should find that she is qualified to render opinions regarding Plaintiff's traumatic brain injury, functional status, rehabilitation needs, and life care planning.

### VII. Dr. Magnusson's Opinions Regarding Mr. Barber's Prognosis and Future Functional Decline Are Admissible

Dr. Magnusson's opinions regarding Mr. Barber's prognosis and anticipated progressive functional decline are based on her specialized knowledge and clinical experience treating patients with traumatic brain injuries and permanent neurological deficits. (*Ex. C at 3, 9*). She explains that individuals with Mr. Barber's type of injuries experience progressive functional decline beyond the normal aging process and require ongoing specialized care to prevent complications and optimize function and quality of life. (Id.).

These opinions are not speculative—they represent the application of Dr. Magnusson's medical expertise to Mr. Barber's documented condition. Courts routinely admit expert medical testimony regarding prognosis and anticipated future medical needs for catastrophically injured plaintiffs. Such testimony is essential for the jury to fairly assess future damages. Dr. Magnusson's testimony that Mr. Barber faces progressive functional decline, increasing care needs over time, and lifelong consequences from his traumatic brain injury will assist the jury in understanding the full scope and duration of Mr. Barber's damages.

### VIII. The Court Should Deny Defendants' Request to Exclude Dr. Magnusson's Testimony in Its Entirety

Defendants seek to exclude "all testimony by Dr. Magnusson" at trial. (Dkt. 109 at 4, 10). This sweeping request lacks merit. Dr. Magnusson is an exceptionally qualified expert whose testimony is essential for the jury to understand Mr. Barber's catastrophic injuries, functional limitations, ongoing treatment needs, and prognosis. Her opinions are based on reliable methodology, adequate foundation, and specialized knowledge within her areas of expertise. Her testimony is not cumulative, speculative, or irrelevant.

Even if the Court were to find merit in any of Defendants' specific objections—which Plaintiff disputes—the appropriate remedy would be to limit or exclude only the specific testimony subject to a valid objection, not to exclude Dr. Magnusson's entire testimony. Federal Rule of Evidence 702 and Daubert require exclusion only of unreliable or unhelpful expert testimony. Here, Dr. Magnusson's core testimony regarding Mr. Barber's injuries, rehabilitation needs, required medical care and equipment, and prognosis is clearly reliable, helpful, and admissible. The Court should deny Defendants' motion in its entirety and permit Dr. Magnusson to testify at trial.

### IV. Conclusion

For the reasons stated above, Defendants have failed to meet their burden of demonstrating that Dr. Magnusson's expert testimony should be excluded. Dr. Magnusson is exceptionally well qualified with board certifications in physical medicine and rehabilitation, spinal cord medicine, and brain injury medicine—the precise specialties relevant to Mr. Barber's catastrophic injuries. Her methodology is reliable and based on comprehensive review of extensive medical records. Her testimony will directly assist the jury in understanding Mr. Barber's permanent disabilities, ongoing treatment needs, and prognosis. Her opinions complement rather than duplicate Dr. Omalu's testimony by addressing the functional consequences and rehabilitation requirements arising from Mr. Barber's traumatic brain injury. Excluding Dr. Magnusson's testimony would prejudice Plaintiff by depriving the jury of critical information necessary to fairly assess the devastating and lifelong impact of Defendants' actions.

Accordingly, the Court should deny Defendants' Motion in Limine No. 3 to Exclude Plaintiff's Expert Amy Magnusson.

Dated: December 18, 2025         **IVIE McNEILL WYATT PURCELL & DIGGS**

                                      **By:** /s/ Rodney S. Diggs
                                              RODNEY S. DIGGS, ESQ.
                                              BRANDON TANTER, ESQ.
                                              Attorneys for Plaintiff
                                              **STEFFON BARBER**

                                **LAW OFFICES OF DALE K. GALIPO**

                                      By:   /s/ Renee V. Masongsong
                                              DALE K. GALIPO
                                              RENEE V. MASONGSONG
                                              Attorneys for Plaintiff
                                              **STEFFON BARBER**

# **DECLARATION OF RODNEY S. DIGGS**

I, Rodney S. Diggs, declare as follows:

1. I am a partner with Ivie McNeill Wyatt Purcell & Diggs APLC, attorneys for Plaintiff Steffon Barber. The following is within my own personal knowledge, and if called upon to testify I could and would competently testify thereto.
2. Attached hereto as ***Exhibit A*** is a true and correct copy Dr. Bennett Omalu's curriculum vitae.
3. Attached hereto as ***Exhibit B*** is a true and correct copy of Dr. Bennett Omalu's Rule 26 Report, dated October 31, 2025.
4. Dr. Magnusson's expertise lies in rehabilitation medicine, functional assessment, and developing comprehensive life care plans for individuals with permanent disabilities.
5. Attached hereto as ***Exhibit C*** is a true and correct copy of Dr. Amy Magnusson's Rule 26 Report, dated October 31, 2025.
6. Attached hereto as ***Exhibit D*** is a true and correct copy of Dr. Amy Magnusson's curriculum vitae.
7. In accordance with Local Rule 7-3, prior to the filing of the motion/opposition, on December 4, 2025, Defendants' counsel and Plaintiff's telephonically met and conferred regarding the issues presented in Defendants' meet and confer letter outlining the issues presented in this motion. Plaintiff's counsel stated that they had reviewed Defendants' correspondence and would oppose Defendants' forthcoming motion. Thus, the parties were unable to resolve the issues informally.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of December 2025, at Los Angeles, California.

/s/ Rodney S. Diggs
Declarant