**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**IVIE MCNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Tel: (213) 489-0028
Fax: (213) 489-0552

**LAW OFFICES OF DALE K. GALIPO**
**Dale K. Galipo, Esq. (SBN 144074)**
dalekgalipo@yahoo.com
**Renee V. Masongsong, Esq. (SBN 281819)**
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff **STEFFON BARBER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual, <br><br> *Plaintiff,* <br><br> v. <br><br> COUNTY OF SAN BERNARDINO, a municipal entity, and CHRISTOPHER ALFRED, an individual, <br><br> *Defendants.* | Case No. 5:22-cv-00625-KK-DTB <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5 TO TRIFURCATE TRIAL INTO THREE PHASES: (1) LIABILITY PHASE, COMPENSATORY DAMAGES CALCULATION, AND PUNITIVE DAMAGES PREDICATE; (2) PUNITIVE DAMAGES CALCULATION, IF NECESSARY; AND (3) MONELL LIABILITY, MONELL DAMAGES CALCULATION, IF NECESSARY** |

P a g e | 1

Plaintiff STEFFON BARBER ("Plaintiff") will and hereby does oppose Defendants County of San Bernardino and Christopher Alfred's motion *in limine* No. 5 to trifurcate trial.

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

### I.  <u>Summary</u>

Defendants seek an unprecedented three-phase trial structure that would unduly prejudice Plaintiff, waste judicial resources, and improperly fragment the jury's consideration of this straightforward § 1983 excessive force case. While Defendants frame their request as promoting efficiency, trifurcation would instead create unnecessary complexity, require the jury to hear evidence and deliberate on three separate occasions, and improperly sever issues that are inherently intertwined in cases arising from a single incident of alleged police misconduct.

The applicable legal standards governing excessive force claims under 42 U.S.C. § 1983 do not support—much less require—the extreme severance Defendants propose. Federal courts routinely try § 1983 excessive force cases with liability, compensatory damages, and the punitive damages predicate presented together in a unified first phase, followed by a second phase on punitive damages calculation if necessary. This traditional bifurcation structure adequately addresses any concerns about prejudice from wealth evidence while preserving the jury's ability to make coherent, informed decisions about the totality of Defendants' conduct. Defendants' attempt to further carve out Monell liability into a third phase is particularly inappropriate given that municipal liability under Monell is predicated on the same underlying constitutional violation at issue in the liability phase and shares common factual foundations.

Plaintiff does not oppose all severance. To the contrary, Plaintiff will agree to a traditional two-phase bifurcation: (1) a first phase addressing liability, compensatory damages, and the predicate for punitive damages, including Monell liability; and (2) if necessary, a second phase addressing punitive damages

calculation against the individual defendant. This reasonable compromise adequately protects against any potential prejudice from wealth evidence while avoiding the waste, confusion, and unfairness that would result from Defendants' proposed three-phase structure. Accordingly, Defendants' motion to trifurcate should be denied, and the Court should adopt the bifurcation structure Plaintiff proposes.

## II. Facts

On April 27, 2021, Deputy Christopher Alfred of the San Bernardino County Sheriff's Department shot Plaintiff Steffon Barber in the head during a response to a mental health crisis at Plaintiff's residence in Adelanto, California. Plaintiff was seated in his vehicle in his own driveway when Deputy Alfred fired six rounds from his service weapon, striking Plaintiff once in the back of the head and causing severe traumatic brain injury. Plaintiff is now permanently wheelchair-bound and suffers from ongoing cognitive deficits, left-sided paralysis, and progressive traumatic encephalopathy.

Plaintiff brings individual claims under 42 U.S.C. § 1983 for excessive force against Deputy Alfred, as well as municipal liability claims against the County of San Bernardino under *Monell v. Department of Social Services*. The Monell claims are based on the County's failure to train deputies regarding use of deadly force, unconstitutional customs and practices in evaluating officer-involved shootings, and ratification of Deputy Alfred's conduct by finding the shooting "within policy." Both the individual and municipal liability claims arise from the same incident and share common factual foundations.

The evidence necessary to prove both sets of claims is substantially overlapping and interrelated. The facts of the shooting itself—including Deputy Alfred's tactical decisions, failure to use de-escalation techniques, and decision to shoot at a moving vehicle—are equally relevant to establishing both the individual excessive force violation and the County's failure to adequately train. Deputy

Alfred's training deficiencies, his understanding of County Policy 3.608 regarding shooting at moving vehicles, his violation of that policy, and the County's post-incident determination that his conduct was "within policy" despite the policy violation all bear directly on both individual and municipal liability. Additionally, evidence of the County's pattern of finding similar shootings involving moving vehicles "within policy" is relevant to both Deputy Alfred's understanding of constitutional standards and the County's deliberate indifference to training failures.

Plaintiff's expert witness Scott DeFoe will testify regarding both the individual excessive force claim and the Monell claim. Mr. DeFoe's opinions address Deputy Alfred's tactical errors and violation of basic police training, the unreasonableness of the force used, the County's failure to properly train Deputy Alfred on use of force standards, and the County's ratification of Deputy Alfred's conduct through its "within policy" finding. This unified expert testimony demonstrates the inherent interrelation between the individual and municipal claims and the inefficiency of artificially separating them into distinct trial phases.

### III. ANALYSIS

#### A. Trifurcation Is Legally Disfavored and Would Create Unnecessary Complexity in This Straightforward Excessive Force Case

Federal Rule of Civil Procedure 42(b) provides that "the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for convenience, to avoid prejudice, or to expedite and economize. However, the party seeking severance bears the burden of demonstrating that such relief is warranted. In *United States v. Disla*, the court stated that "the party seeking severance bears the burden of demonstrating the need for separate trials" and must establish that joinder was "so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever" (*U.S. v. Disla*, 805 F.2d 1340 (1986)). Courts disfavor multiple phases of trial because they create inefficiency, potential for inconsistent verdicts, and jury confusion. The decision to bifurcate or trifurcate is within the trial court's

sound discretion, but that discretion must be exercised with careful consideration of the factors relevant to the particular case.

In evaluating whether to grant severance, courts consider: (1) whether the issues are inextricably intertwined; (2) whether separate trials would prejudice either party; (3) whether the same evidence applies to multiple claims; and (4) judicial economy. (*Lindora, LLC v. Isagenix International, LLC*, 198 F.Supp.3d 1127 (2016)). These factors weigh heavily against trifurcation in this case. The claims against Deputy Alfred for excessive force and the Monell claims against the County arise from the same incident, involve substantially overlapping evidence, and present issues that are fundamentally interrelated. Artificially severing these claims into three separate phases would not promote judicial economy or avoid prejudice—it would accomplish precisely the opposite.

In § 1983 cases against municipalities and individual officers, the claims typically share common facts and evidence such that complete separation is inappropriate. The constitutional violation committed by the individual officer forms the predicate for municipal liability under Monell, and the same evidence that demonstrates the officer's violation of constitutional standards often also demonstrates the municipality's failure to train or deliberate indifference. Here, evidence regarding Deputy Alfred's tactical decisions, his understanding of County policies, his violation of Policy 3.608 regarding shooting at moving vehicles, and his training deficiencies are directly relevant to both the individual excessive force claim and the County's failure to train. Similarly, evidence of the County's pattern of finding similar shootings "within policy" goes to both Deputy Alfred's understanding of acceptable conduct and the County's deliberate indifference to constitutional training.

Three-phase trials are rarely ordered and only in exceptional circumstances not present here. Defendants have failed to demonstrate any exceptional circumstances that would justify the extraordinary relief they seek. This is not a case

involving multiple plaintiffs with divergent claims, complex multiparty litigation requiring separate treatment of distinct theories, or any other circumstance that would render a unified liability phase unworkable. Rather, this is a straightforward § 1983 excessive force case arising from a single incident in which both individual and municipal liability are predicated on the same underlying facts and share common evidentiary foundations. Trifurcation is neither necessary nor appropriate.

### B. Plaintiff Agrees to Traditional Bifurcation, Which Adequately Addresses Defendants' Legitimate Concerns While Avoiding the Prejudice and Inefficiency of Trifurcation

Plaintiff does not oppose reasonable trial management procedures that protect against prejudice while promoting efficiency. Accordingly, Plaintiff agrees to bifurcation of this trial into two phases: (1) Phase One addressing liability, compensatory damages, and the predicate for punitive damages (including all Monell claims); and (2) Phase Two, if necessary, addressing calculation of punitive damages against Deputy Alfred. This traditional bifurcation structure adequately addresses Defendants' stated concerns about prejudice from punitive damages wealth evidence while preserving the jury's ability to consider the complete picture of Defendants' conduct and its consequences.

Bifurcation protects against prejudice from punitive damages evidence while allowing the jury to hear the complete liability case in one coherent phase. The primary concern with punitive damages evidence is that testimony regarding Deputy Alfred's personal financial condition and net worth may improperly influence the jury's liability determination. Traditional bifurcation eliminates this concern by deferring all evidence of wealth and financial condition to the second phase, to be presented only if the jury first finds liability and determines that punitive damages are warranted. However, there is no similar concern with Monell evidence that would justify further fragmentation of the trial.

Monell liability must be decided in Phase One because it is a predicate for institutional punitive damages and because the same evidence proving Deputy

1  Alfred violated Plaintiff's rights also proves the County's systemic failures. Under
2  *City of Los Angeles v. Heller*, there can be no Monell liability unless the individual
3  officer violated the plaintiff's constitutional rights. Accordingly, the jury must first
4  determine whether Deputy Alfred's use of deadly force was excessive before it can
5  consider whether the County's policies, customs, or training deficiencies caused that
6  violation. Moreover, the evidence necessary to establish both claims is inextricably
7  intertwined. Deputy Alfred's training history, his understanding of County Policy
8  3.608, his violation of that policy by shooting at a moving vehicle, and the County's
9  post-incident determination that the shooting was "within policy" despite the policy
10 violation all bear directly on both individual and municipal liability.

11     The expert testimony in this case, particularly from Plaintiff's police practices
12 expert Scott DeFoe, addresses both individual and municipal liability and cannot be
13 artificially split without creating confusion and inefficiency. Mr. DeFoe will testify
14 that Deputy Alfred's use of deadly force was objectively unreasonable, that Deputy
15 Alfred failed to follow basic police training and County policy, that the County failed
16 to adequately train Deputy Alfred on constitutional use of force standards, and that
17 the County ratified Deputy Alfred's conduct by finding the shooting "within policy."
18 This testimony is equally relevant to establishing the excessive force violation and
19 the County's failure to train. Requiring Mr. DeFoe to testify in Phase One regarding
20 the excessive force claim and then return in a hypothetical Phase Three to provide
21 substantially similar testimony regarding municipal liability would waste time,
22 confuse the jury, and create unnecessary expense.

23     Evidence of prior similar incidents and the County's pattern of finding officer-
24 involved shootings "within policy" goes directly to both excessive force and Monell
25 ratification theories. The County's handling of previous shootings involving moving
26 vehicles—including the *Archibald, Martinez, Factor, Phillips, Young*, and *Ramos*
27 cases—demonstrates both a pattern that Deputy Alfred would have understood as
28 acceptable conduct and the County's deliberate indifference to constitutional

training. This evidence is admissible in Phase One to show Deputy Alfred's state of mind and the environment in which he operated, as well as to establish the County's custom of ratifying excessive force. Artificially deferring this evidence to a third phase would undermine its probative value and require the jury to revisit issues already decided in Phase One.

Separating Monell claims into a third phase would require re-presenting substantial evidence already heard in Phase One, creating inefficiency and jury confusion. After hearing all the evidence regarding the shooting incident, Deputy Alfred's training, and his violation of policy in Phase One, the jury would be asked to return for a third phase to hear much of the same evidence again—this time framed in terms of municipal liability. The jury would hear again about Policy 3.608, about Deputy Alfred's understanding of that policy, about his training deficiencies, and about the County's post-incident investigation. This redundancy serves no purpose other than to waste judicial resources and risk jury fatigue and confusion. Traditional bifurcation avoids these problems by allowing the jury to consider all liability issues together in a coherent, efficient manner.

### C. Trifurcation Would Prejudice Plaintiff, Create Risk of Inconsistent Verdicts, and Undermine Judicial Economy

Trifurcation would fragment Plaintiff's case and undermine the persuasive power of showing the systemic nature of the violations that resulted in his catastrophic injuries. A central theme of Plaintiff's case is that the shooting that left him permanently wheelchair-bound and cognitively impaired was not an isolated mistake by one deputy, but rather the predictable result of the County's systemic failures to train, supervise, and hold deputies accountable for shooting at moving vehicles in violation of policy and constitutional standards. The County's pattern of finding such shootings "within policy," the policy change from "shall not" to "generally" after this incident, and Deputy Alfred's testimony that he was never trained on core constitutional principles all tell a coherent story that the jury must hear together to understand the full scope of what happened and why. Artificially

severing the municipal liability claims into a separate phase would rob Plaintiff of the opportunity to present this unified narrative and would improperly minimize the County's role in causing Plaintiff's injuries.

The jury may become fatigued or lose interest by a third phase, potentially affecting deliberations and the quality of their decision-making. Jurors are asked to take time away from their work and families to serve, and they approach that service with appropriate seriousness in the initial phases of trial. However, requiring jurors to return for a third round of deliberations after they have already decided liability and compensatory damages in Phase One and potentially punitive damages calculation in Phase Two creates a significant risk that fatigue and impatience will set in. The Monell claims—which require careful consideration of complex evidence regarding training practices, policy implementation, and the County's pattern of responses to similar incidents—deserve the jury's full attention. Relegating these claims to a third phase when juror engagement may be waning does a disservice to both parties and risks compromising the quality of the verdict.

Requiring Plaintiff to prove the County's liability separately after already proving the underlying constitutional violation is duplicative and prejudicial. Under *City of Los Angeles v. Heller*, the jury will necessarily determine in Phase One that Deputy Alfred violated Plaintiff's Fourth Amendment rights before any consideration of municipal liability can proceed. That constitutional violation forms the foundation for the Monell claims. Yet under Defendants' trifurcation proposal, after the jury has already found that Deputy Alfred used excessive force, Plaintiff would have to present much of the same evidence again in Phase Three to establish that the County's training failures or customs caused that very violation. This structure is inherently duplicative, forces Plaintiff to re-litigate issues already decided, and creates a substantial risk that the jury will be confused about what they are being asked to decide in the third phase.

Witness availability and logistics are complicated by multiple phases, particularly where experts and fact witnesses may need to testify multiple times or return to court after extended delays. Mr. DeFoe will need to testify regarding both the reasonableness of Deputy Alfred's use of force and the County's training failures. Under bifurcation, he testifies once in Phase One and addresses all liability issues in a coherent manner. Under trifurcation, he would either need to testify twice (once in Phase One regarding excessive force and again in Phase Three regarding training), creating obvious inefficiency and additional expense, or his testimony would need to be artificially limited in Phase One to exclude discussion of County training practices, depriving the jury of the complete context necessary to understand Deputy Alfred's actions. Neither option serves the interests of justice or judicial economy. Similar concerns arise with fact witnesses who have knowledge of both the incident and the County's policies and practices.

The risk of inconsistent verdicts increases with three phases, particularly where the same factual findings may be required in multiple phases. For example, the jury's determination in Phase One regarding whether Deputy Alfred violated County Policy 3.608 by shooting at a moving vehicle is directly relevant to the Monell ratification claim in Phase Three. Yet if these determinations are made in separate phases, there is a risk that the jury's Phase One findings may not align with its Phase Three conclusions, creating internal inconsistencies in the verdict. Traditional bifurcation eliminates this risk by having the jury consider all liability issues—including both individual and municipal liability—in a single, coherent phase where they can ensure their findings are internally consistent.

Judicial economy strongly favors hearing all liability issues together in Phase One followed by a punitive damages phase if necessary. The Court will need to instruct the jury on the elements of excessive force, the standards governing use of deadly force, the reasonableness analysis under *Graham v. Connor*, and the relevant County policies and training practices. These same instructions and legal standards

apply equally to the Monell failure-to-train claims. Requiring the Court to instruct the jury on these matters in Phase One and then again in Phase Three serves no purpose and wastes valuable judicial resources. Similarly, counsel's opening statements and closing arguments on liability issues can be presented efficiently in Phase One if all liability claims are heard together but would need to be repeated or significantly expanded if Monell claims are carved out into a third phase.

The specific facts of this case demonstrate how artificially severing individual and municipal liability issues prejudices Plaintiff and undermines the jury's ability to render a just verdict.

## IV. Conclusion

Based on the foregoing arguments, Defendants' motion *in limine* to trifurcate trial should be denied. Plaintiff respectfully agrees to traditional bifurcation of the trial into two phases (1) liability, compensatory damages, and punitive damages predicate, and (2) punitive damages calculation if necessary—which adequately addresses Defendants' concerns while preserving judicial economy and avoiding the prejudice and inefficiency inherent in Defendants' proposed three-phase structure.

Dated: December 18, 2025  **IVIE McNEILL WYATT PURCELL & DIGGS**

By: /s/ Rodney S. Diggs
Rodney S. Diggs, Esq.
Brandon Tanter, Esq.
Attorneys for Plaintiff,
STEFFON BARBER

**LAW OFFICES OF DALE K. GALIPO**

By: /s/ Renee V. Masongsong
Dale K. Galipo, Esq.
Renee V. Masongsong, Esq.
Attorneys for Plaintiff,
STEFFON BARBER