UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-00625-KK-DTBx** | Date: | January 7, 2026 |
|---|---|---|---|
| Title: | *Steffon Barber v. County of San Bernardino et al.* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING in part and DENYING in part Defendants' Motions in Limine [Dkts. 107, 108, 109, 111, 112], and GRANTING in part Plaintiffs' Motions in Limine [Dkts. 114, 115, 116]**

## I.
## INTRODUCTION

On December 11, 2025, defendants County of San Bernardino ("County") and Christopher Alfred ("Deputy Alfred") (together, "Defendants") filed five motions in limine seeking to exclude evidence and witness testimony and to trifurcate the trial into three phases. ECF Docket Nos. ("Dkts.") 107, 108, 109, 111, 112. On the same day, plaintiff Steffon Barber ("Plaintiff") filed three motions in limine seeking to exclude evidence and witness testimony. Dkts. 114, 115, 116.

On December 18, 2025, Defendants filed Oppositions to Plaintiff's Motions in Limine Nos. 1 and 3, dkts. 119, 121, and a Notice of Non-Opposition to Plaintiff's Motion in Limine No. 2, dkt. 120. On the same day, Plaintiffs filed Oppositions to Defendants' motions in limine. Dkts. 124-128.

The matters, thus, stand submitted. The Court finds the matters appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motions in Limine, and **GRANTS in part** Plaintiff's Motions in Limine.

///

///

## II.
## PROCEDURAL HISTORY

On June 17, 2025, Plaintiff filed the operative Second Amended Complaint ("SAC") against Defendants, alleging violations of the Fourth Amendment and related state-law claims arising from the April 27, 2021 shooting of Plaintiff.  Dkt. 72, SAC.  With respect to Plaintiff's federal law claims, Plaintiff raises (1) a cause of action against Deputy Alfred for deprivation of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983") and (2) a cause of action against the County for deprivation of his civil rights based on a failure-to-train theory under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ("Monell").  Id. ¶¶ 24-61.

Pursuant to the Court's Civil Trial Scheduling Order, the Final Pretrial Conference is scheduled for January 8, 2026, and trial is set to begin on January 26, 2026.  See dkt. 47.

## III.
## DISCUSSION

A.    **DEFENDANTS' MOTIONS IN LIMINE**

   1.    **Motion in Limine No. 1**

Defendants' Motion in Limine No. 1 seeks to exclude "all evidence, argument, and/or testimony of any other prior or subsequent incidents or investigations involving Defendant Deputy Christopher Alfred and/or other San Bernardino County Sheriff's Department deputies or personnel which are unrelated to the subject incident."  Dkt. 107 at 3.  Specifically, Defendants seek to exclude (1) "reference to any prior or subsequent use of force incidents or unrelated investigations involving Defendant Deputy Alfred," (2) "reference to any unrelated incidents, news or media reports involving any San Bernardino County Sheriff's Deputies that are not parties to this case," and (3) "all evidence or reference . . . to other lawsuits or litigation involving the defendants, or Defendant County's deputies" as irrelevant under Federal Rule of Evidence 402 ("Rule 402") and unfairly prejudicial under Federal Rule of Evidence 402 ("Rule 403").  Id. at 3-4.

In his Opposition, Plaintiff contends evidence of Deputy Alfred's prior use of force incidents is admissible for non-propensity purposes and is probative of his "state of mind and his departure from proper training and protocols."  Dkt. 124 at 4.  Additionally, Plaintiff contends the evidence of other prior or subsequent incidents of excessive force involving deputies from the San Bernardino County Sheriff's Department ("SBCSD") is relevant to establishing Plaintiff's Monell claim for municipal liability.  Id. at 5-6.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  However, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Further, under Federal Rule of Evidence 404 ("Rule 404"), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, Rule 404 permits the introduction of evidence of past wrongs for other

purposes, if, among other things, the evidence "tends to prove a material point." United States v. Santini, 656 F.3d 1075, 1077 (9th Cir. 2011) (quoting United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir. 2008)).

Here, the Court finds the evidence of Deputy Alfred and other SBCSD deputies' prior or subsequent use of excessive force is irrelevant to Deputy Alfred's individual liability. This evidence does not "bear on th[e] issue" of "whether, objectively, [Deputy Alfred's] use of force had been excessive." Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). Hence, this evidence is irrelevant and, thus, inadmissible as to Deputy Alfred's individual liability. See, e.g., Dugan v. Cnty. of Los Angeles, No. CV 11-8145-CAS-SHx, 2013 WL 3863979, at *3 (C.D. Cal. July 23, 2013) (finding evidence regarding other incidents of excessive force as irrelevant); see also Vazquez v. City of Long Beach, No. CV 12-9923-PJW, 2016 WL 9114912, at *3 (C.D. Cal. Apr. 19, 2016) (finding the probative value of other acts of alleged excessive force as to an individual officer's liability was substantially outweighed by the risk of unfair prejudice).

However, the Court finds the evidence of prior or subsequent use of excessive force is relevant to Plaintiff's Monell claim for municipal liability. To succeed on his Monell claim on a failure-to-train theory, Plaintiff must show (1) "a constitutional violation," (2) "a municipal training policy that amounts to a deliberate indifference to constitutional rights," and (3) "the constitutional injury would not have resulted if the municipality properly trained their employees." Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153-54 (9th Cir. 2021). As Defendants appear to concede, evidence of other incidents involving SBCSD deputies' use of excessive force is relevant to Plaintiff's Monell claim. See dkt. 107 at 3 (noting this evidence would have been irrelevant had the Court granted summary judgment to Defendants on Plaintiff's Monell claim). Specifically, such evidence is probative of whether the County had an inadequate training policy, whether the County had notice of the need for better police training, and, thus, whether the County was deliberately indifferent to the violation of constitutional rights caused by the alleged failure to train. See Velazquez v. City of Long Beach, 793 F.3d 1010, 1028 (9th Cir. 2015) (holding evidence of prior complaints of excessive force was admissible with respect to the plaintiff's Monell claim); Henry v. Cnty. of Shasta, 132 F.3d 512, 519 (9th Cir. 1997) (holding post-event evidence is "highly probative" as to the existence of a municipal policy or custom). To the extent Defendants risk potential prejudice from the introduction of this evidence, the Court may issue an appropriate limiting instruction to the jury. See Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 807 (9th Cir. 2018) (noting "the district court's many limiting instructions cured any possible prejudice" resulting from the admission of evidence relevant to the plaintiffs' Monell claims but irrelevant to individual liability (citing Velazquez, 793 F.3d at 1028)). Hence, this evidence is admissible as to Plaintiff's Monell claim. See, e.g., Allen v. City of Los Angeles, No. CV 10-4695-CAS-RCx, 2012 WL 1641712, at *3-4 (C.D. Cal. May 7, 2012) (excluding evidence of other alleged police misconduct as to the individual defendants' liability but finding such evidence may be admissible as to the plaintiff's Monell claim).

Accordingly, Defendants' Motion in Limine No. 1 is **GRANTED in part** as to proving Deputy Alfred's individual liability and **DENIED in part** as to proving the County's municipal liability.[1]

---

[1] The Court would entertain a limiting instruction advising as to the limitations imposed on their consideration of this evidence.

### 2. Motion in Limine No. 2[2]

Defendants' Motion in Limine No. 2 seeks to exclude all testimony by Plaintiff's police practices expert, Scott DeFoe, and Plaintiff's incident reconstruction expert, Robert Morales as unreliable.[3]  Dkt. 108 at 3.  Federal Rule of Evidence 702 ("Rule 702") allows the admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (a) the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(a)-(d).  To be admissible, expert testimony must be both relevant and reliable.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993) ("Daubert").  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010) (citation modified), as amended (Apr. 27, 2010).  Rule 702 should be applied consistently with the "liberal thrust" of the Federal Rules of Evidence and their "general approach of relaxing the traditional barriers to 'opinion testimony.'"  Daubert, 509 U.S. at 588.

#### a. Scott DeFoe

Defendants argue Mr. DeFoe relies on "pure speculation" in rendering his opinions.  Dkt. 108 at 4.  As examples of Mr. DeFoe's allegedly unreliable opinions, Defendants cite (1) his opinions and references to a "fleeing felon," (2) his opinion as to whether an officer should use deadly force against a moving vehicle, (3) his opinion as to whether Deputy Alfred could have moved out of the way of the vehicle, (4) his opinion as to Deputy Alfred's alleged failure to determine whether Plaintiff was mentally ill or experiencing a mental health crisis, and (5) his opinion as to the County's failure to train Deputy Alfred.  Id. at 4-12.

Here, the Court finds Mr. DeFoe's testimony is both relevant and reliable.  First, Mr. DeFoe's opinions are relevant to assist the jury in assessing whether Deputy Alfred's use of force conformed to police standards and training and, thus, was reasonable.  See, e.g., Cullinan v. City of Los Angeles, No. CV 20-10258-CBM-ASx, 2022 WL 3012159, at *2 (C.D. Cal. June 8, 2022) (finding a police practices expert's testimony as to an officer's use of force was relevant).  Second, Mr. DeFoe's testimony is sufficiently reliable.  According to his expert report, Mr. DeFoe is qualified as a police practices expert based on his extensive education, training, and experience, including his twenty-eight-year-long career in law enforcement and previous investigation of over one hundred

---

[2] Per the Court's Civil Trial Scheduling Order, "motions in limine shall not exceed ten (10) pages," and "each motion shall address only one item of evidence or witness."  Dkt. 47 at 6.  Here, Defendants' Motion in Limine No. 2 exceeds ten pages and addresses two of Plaintiff's expert witnesses.  While the Court is not pleased with Defendants' failure to comply with the Court's Scheduling Order, the Court will consider the merits of Defendants' motion.

[3] In support of their Motion in Limine No. 2, Defendants request the Court take judicial notice of pages of the trial transcript in Plaintiff's criminal case in state court related to the April 27, 2021 incident.  Dkt. 110.  However, the Court need not rely on this document, nor does it alter the Court's determination of Defendant's Motion in Limine No. 2.  Accordingly, Defendants' Request for Judicial Notice is **DENIED as moot**.

use of force incidents. See Dkt. 108 at 17, Declaration of Kayleigh Andersen ("Andersen Decl.") ¶ 2, Ex. A at 22-27 ("DeFoe Report"). Mr. DeFoe formed his opinions based on his expertise, knowledge of standard police practices and professional and academic literature in the field, and review of relevant materials. Id. at 2-6.

None of Defendants' arguments to the contrary are persuasive. First, Defendants mischaracterize several of Mr. DeFoe's opinions in the examples they cite of his "unsubstantiated claims and unsupported opinions." Dkt. 108 at 8. Contrary to Defendants' assertions, Mr. DeFoe does not suggest Deputy Alfred used deadly force "because Plaintiff was trying to flee," "a vehicle cannot be considered a deadly weapon to law enforcement," or "Plaintiff was experiencing a mental health crisis" at the time of the shooting. Id. at 8-10. Rather, Mr. DeFoe's opinions address whether Deputy Alfred's conduct complied with standard police training regarding the use of force when an individual is fleeing or attempting to leave the area, is in a moving vehicle, or may be experiencing a mental health crisis. See DeFoe Report at 12-17, 20-21. As noted, Mr. DeFoe's opinions on these issues is directly relevant to the jury's assessment of whether Deputy Alfred's use of force was reasonable.

Further, Mr. DeFoe's opinions are reliable because they fall within the scope of his expertise and are supported by his review of the record. Id. at 2-4. While Defendants argue Mr. DeFoe's opinions "rely on incorrect or speculative information" and "overrid[e] the eyewitness accounts and the physical evidence," Rule 702 "requires foundation, not corroboration." Elosu v. Middlefork Ranch Inc., 26 F.4th 1017, 1025 (9th Cir. 2022). In offering his opinions, Mr. DeFoe "specified which records and materials [he] reviewed in preparation" and "described the facts that [he] relied upon based on [his] review of these records and materials." Hyer v. City & Cnty. of Honolulu, 118 F.4th 1044, 1057 (9th Cir. 2024). Hence, Mr. DeFoe's testimony is sufficiently reliable. To the extent Defendants are concerned Mr. DeFoe's testimony is not sufficiently corroborated or credible, such concerns go to the weight of the testimony and, therefore, are properly addressed through cross examination. See Elosu, 26 F.4th at 1028.

### b.   Robert Morales

Defendants argue Mr. Morales is not qualified and relies on "pure speculation" in rendering his opinions. Dkt. 108 at 12-15. Specifically, Defendants argue (1) Mr. Morales lacks the requisite expertise to provide opinions as to Deputy Alfred's location, (2) Mr. Morales's opinion as to whether Plaintiff was in control of the vehicle during the shooting lacks foundation, (3) Mr. Morales's opinion as to the movement of Plaintiff's vehicle over time is speculative, and (4) Mr. Morales is unqualified to testify to Deputy Alfred's physical capabilities during the incident. Id. at 12-14. Thus, Defendants seek to exclude several opinions by Mr. Morales regarding the movements of Deputy Alfred and Plaintiff's car during the shooting. Id. at 14-15.

Here, as set forth in the Court's December 22, 2025 Order denying Defendants' Motion for Summary Judgment, the Court finds Mr. Morales is not qualified to opine on ballistics evidence. See dkt. 132 at 8 (citing United States v. Johnson, 875 F.3d 1265 (9th Cir. 2017), and Krause v. Cnty. of Mohave, 459 F. Supp. 3d 1258 (D. Ariz. 2020), for the proposition a qualified expert must attest to the reliability of ballistics evidence). Therefore, Mr. Morales may not testify as to Deputy Alfred's location at the time of the shooting to the extent his opinion relies on ballistics evidence beyond the scope of his expertise. See id. However, Mr. Morales may testify as to the location of the shell casings themselves based on his review and analysis of the records and materials. Id.

Nonetheless, the Court finds the remaining portions of Mr. Morales's testimony are relevant and sufficiently reliable. First, Mr. Morales's testimony is relevant to assist the jury in determining the chain of events leading up to and during the April 27, 2021 shooting and, thus, whether Deputy Alfred's use of force was reasonable. Second, Mr. Morales's opinions are reliable because he is qualified as an accident reconstruction expert based on his education, training, and experience, and he formed his opinions based on his expertise in accident reconstruction, application of forensic methods, and review of the relevant materials. See Andersen Decl. ¶ 4, Ex. C ("Morales Report").

None of Defendants' other objections to Mr. Morales's testimony are persuasive. First, Mr. Morales formed his opinion as to whether Plaintiff was in control of the vehicle during the shooting based on an audio analysis of Deputy Alfred's belt recording, employing "advanced spectral analysis techniques" to "identif[y] and isolate[]" "significant acoustic events." Id. at 10-11. Thus, Mr. Morales's opinion is supported by sufficient evidentiary foundation and was formed in a manner consistent with his knowledge and experience. See Hyer, 118 F.4th at 1056. Similarly, contrary to Defendants' argument, Mr. Morales adequately explains how he derived his conclusions on the movement of Plaintiff's vehicle during the shooting from his review and analysis of the relevant materials using, among other methods, photogrammetry and vehicle dynamics reconstruction. See Andersen Decl. ¶ 4, Ex. C at 6, 12. Finally, Mr. Morales's opinions as to the average person's walking speed and whether Deputy Alfred had enough time to move away from Plaintiff's vehicle do not implicate expertise in "body dynamics." Dkt. 108 at 14; cf. Wise v. S. Tier Express, Inc., 780 F. App'x 477, 479 (9th Cir. 2019) (holding a statement that a vehicle accident occurred at "walking speed" was "fair commentary on lay opinion evidence"). Hence, the remaining portions of Mr. Morales's testimony are sufficiently reliable. To the extent Defendants argue Mr. Morales's testimony is not sufficiently corroborated or credible, such concerns go to the weight of the testimony and, therefore, are properly addressed by cross examination. See Elosu, 26 F.4th at 1028; see also Zuniga v. City of Los Angeles, No. CV 22-03665-CBM-ASx, 2024 WL 4738212, at *2 (C.D. Cal. Sep. 18, 2024) (finding an accident reconstruction expert "not need to state his opinions with absolute certainty for his testimony to be admissible").

Accordingly, Defendants' Motion in Limine No. 2 is **DENIED** as to Mr. DeFoe, **GRANTED in part** as to Mr. Morales to the extent Mr. Morales's testimony relies on ballistics evidence, and **DENIED in part** as to the remainder of Mr. Morales's testimony.

### 3. Motion in Limine No. 3

Defendants' Motion in Limine No. 3 seeks to exclude all testimony by Plaintiff's expert, Dr. Amy Magnusson as cumulative, unsupported by the requisite qualifications, lacking foundation, and irrelevant. Dkt. 109. As specific examples of Dr. Magnusson's allegedly unreliable opinions, Defendants cite (1) Dr. Magnusson's psychological and neurological diagnostic opinions as to Plaintiff's injuries, including his shoulder injury and (2) Dr. Magnusson's treatment recommendations for Plaintiff, which she made without knowledge of his incarceration in state custody. Id. at 7-10.

Here, the Court finds Dr. Magnusson's testimony is both relevant and reliable. First, Dr. Magnusson's testimony is relevant to assess the extent of Plaintiff's care needs and, therefore, the extent of Plaintiff's alleged damages from Deputy Alfred's use of force. Contrary to Defendants' argument, Dr. Magnusson's treatment recommendations for Plaintiff are not irrelevant simply

because Defendants speculate certain treatment options "may be unavailable" while Plaintiff is incarcerated.  Id. at 10.  Second, Dr. Magnusson's testimony is sufficiently reliable.  As Defendants concede, Dr. Magnusson is "board certified in physical medicine and rehabilitation, with subspecialties in spinal cord and brain injury."  Id. at 8.  To form her opinions, Dr. Magnusson relied on her education and training and reviewed Plaintiff's medical reports.  Id.; see Sementilli v. Trinidad Corp., 155 F.3d 1130, 1134 (9th Cir. 1998) (holding a medical expert's testimony based on his review of the plaintiff's medical records is admissible).

None of Defendants' other arguments are persuasive.  First, the Court rejects Defendants' argument that Dr. Magnusson's testimony is cumulative of Dr. Bennet Omalu's ("Dr. Omalu") testimony because their testimony concerns different issues.  Dr. Magnusson's opinions concern Plaintiff's treatment and rehabilitation options, Dr. Omalu's testimony concerns the nature of Plaintiff's injuries.  See dkt. 126 at 3-5; Friedman v. Medjet Assistance, LLC, No. CV 09-07585-MMM-VBKx, 2010 WL 9081271, at *6 (C.D. Cal. Nov. 8, 2010) (noting testimony from two physicians was not cumulative where the physicians had distinct areas of expertise).  Regardless, even if the evidence is "cumulative to some degree," such evidence is not "needlessly cumulative." Friedman, 2010 WL 9081271, at *6.  Second, Dr. Magnusson need not examine Plaintiff in person for her testimony to be reliable.  See Sementilli, 155 F.3d at 1134 (holding a medical expert's testimony was not inadmissible simply because the expert "did not personally examine" the plaintiff).  Third, with respect to Plaintiff's shoulder injury, Dr. Magnusson's testimony is admissible even if she cannot testify with absolute certainty as to the cause of the injury.  See Messick v. Novartis Pharms. Corp., 747 F.3d 1193, 1199 (9th Cir. 2014) ("[I]ssues regarding the correctness of [her] opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility").  To the extent Defendants argue Dr. Magnusson's testimony is not credible or corroborated by the evidence, such concerns go to the weight of the testimony and, therefore, are properly addressed by cross examination.  See Elosu, 26 F.4th at 1028.

Accordingly, Defendants' Motion in Limine No. 3 is **DENIED**.

### 4. Motion in Limine No. 4

Defendants' Motion in Limine No. 4 seeks to exclude all testimony by Plaintiff's expert, Dr. Omalu as beyond the scope of his expertise, lacking foundation, and speculative.  Dkt. 111.  As specific examples of Dr. Omalu's allegedly unreliable opinions, Defendants cite (1) Dr. Omalu's testimony regarding bullet trajectory, velocity, and patterns of injury, (2) Dr. Omalu's testimony regarding traumatic brain injury ("TBI"), and (3) Dr. Omalu's testimony regarding pain and suffering.  Id. at 5-9.

Here, the Court finds Dr. Omalu's testimony is both relevant and reliable.  First, Dr. Omalu's testimony is relevant to assess the extent of Plaintiff's injuries and, therefore, the extent of Plaintiff's damages from Deputy Alfred's use of force.  Second, Dr. Magnusson's testimony is sufficiently reliable.  As Defendants concede, Dr. Omalu is an "Anatomic Pathologist, Clinical Pathologist, Forensic Pathologist, Neuropathologist, and [] Epidemiologist, licensed to practice in California."  Id. at 5.  In this capacity, Dr. Omalu has "conducted and performed over 13,000 autopsies and death investigations and examined over 15,000 brain tissue specimens."  Id. at 11, ¶ 2, Ex. A at 2.  To form his opinions, Dr. Omalu reviewed Plaintiff's medical record and other materials relevant to this case and conducted a two-hour in-person examination of Plaintiff.  Id. at 5.

None of Defendants' arguments to the contrary are persuasive. First, with respect to Dr. Omalu's opinions regarding bullet trajectory, velocity, and Plaintiff's body position, the Court finds Dr. Omalu is qualified to testify on the direction in which bullets enter bodies based on his education, training, and experience as a forensic pathologist and his assessment of Plaintiff's gunshot wounds. See, e.g., Barillas v. City of Los Angeles, No. CV 18-08740-CJC-ASx, 2021 WL 4434977, at *13 (C.D. Cal. Apr. 12, 2021) (finding a forensic pathologist was qualified to testify as to bullet trajectory based on the plaintiff's gunshot wounds); Murillo v. City of Los Angeles, No. CV 21-8738-FMO-AGRx, 2023 WL 9420539, at *2 (C.D. Cal. Aug. 21, 2023) (same). Second, Dr. Omalu's testimony as to Plaintiff's diagnosis of TBI is sufficiently grounded in his expertise in forensic pathology, medical literature, and his review of relevant materials in this case; the fact that Dr. Omalu does not opine on Plaintiff's TBI diagnosis "with exact precision" does not render his opinion unreliable. Murillo, 2023 WL 9420539, at *3. Finally, even if Plaintiff is available to testify on his subjective experience of pain and suffering, Dr. Omalu's testimony is still relevant to assist the jury in assessing the degree of force used and the extent of Plaintiff's injuries. See, e.g., A.B. v. Cnty. of San Diego, No. 18cv1541-MMA-LLx, 2020 WL 4430971, at *7 (S.D. Cal. July 31, 2020). To the extent Defendants argue Dr. Omalu's testimony is not credible or corroborated by the evidence, such concerns go to the weight of the testimony and, therefore, are properly addressed by cross examination. See Elosu, 26 F.4th at 1028.

Accordingly, Defendants' Motion in Limine No. 4 is **DENIED**.

**5.     Motion in Limine No. 5**

Defendants' Motion in Limine No. 5 seeks to trifurcate the trial into (1) a liability phase, including compensatory damages calculation and punitive damages predicate, (2) a punitive damages calculation phase, and (3) a Monell liability and damages phase. Dkt. 112. Defendants argue trifurcation would "allow a logical presentation of the evidence and avoid potential jury confusion." Id. at 4. Defendants also contend they will suffer undue prejudice if the trial is not trifurcated. Id. at 6. Plaintiff opposes trifurcation but does not oppose bifurcation of the trial into (1) a first phase addressing liability, including for Plaintiff's Monell claim, compensatory damages, and the predicate for punitive damages, and (2) a second phase addressing punitive damages calculation. Dkt. 128 at 2-3.

Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of separate claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court has "broad discretion" to bifurcate a trial. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004) (citation omitted). A court may bifurcate a trial to "avoid[ ] a difficult question by first dealing with an easier, dispositive issue," Danjaq LLC v. Sony Corp., 263 F.3d 942, 961 (9th Cir. 2001), or to avoid the risk of prejudice. See Quintanilla v. City of Downey, 84 F.3d 353, 356 (9th Cir. 1996) (explaining that, in a § 1983 case challenging the use of a police dog during a search, the trial court bifurcated the trial of the individual officers from that of the city in part avoid prejudice); see also Est. of Diaz v. City of Anaheim, 840 F.3d 592, 601 (9th Cir. 2016) (reversing and remanding for new trial after finding abuse of discretion in failing to bifurcate liability from damages). The moving party has the burden to prove that bifurcation is appropriate. Howard v. City of Los Angeles, No. CV 14-3687-SS, 2017 WL 11682193, at *12 (C.D. Cal. Feb. 21, 2017) (citation omitted).

Here, the Court finds trifurcation is not warranted. Plaintiff's claims for individual liability and <u>Monell</u> liability both stem from Deputy Alfred's April 27, 2021 shooting of Plaintiff and, thus, involve overlapping evidence and witness testimony. Therefore, trifurcation would likely result in duplicative proceedings and not promote convenience or judicial economy. <u>See, e.g.</u>, <u>Briones v. City of San Bernardino</u>, No. CV 10-07571, 2012 WL 13124163, at *2 (C.D. Cal. Feb. 16, 2012) (declining to trifurcate a trial involving individual liability and <u>Monell</u> claims); <u>Aguilar v. City of Los Angeles</u>, No. CV 17-4382-CBM-MRWx, 2018 WL 11682561, at *2 (C.D. Cal. Oct. 2, 2018) (same). Further, as noted, to the extent Defendants are concerned about the risk of potential prejudice, the Court may issue appropriate limiting instructions to the jury. <u>See</u> <u>Rodriguez</u>, 891 F.3d at 807.

Accordingly, Defendants' Motion in Limine No. 5 is **DENIED**. However, in light of Plaintiff's willingness to bifurcate the trial, the Court will bifurcate the trial into two phases. The first phase will address liability, Plaintiff's Monell claim, and compensatory damages, and whether Plaintiff is entitled to punitive damages. If the jury finds Deputy Alfred liable in the first phase, a second phase will address the calculation punitive damages. <u>See, e.g.</u>, <u>Abascal v. Cnty. of Los Angeles</u>, No. CV 23-05246-HDV-JCx, 2025 WL 1090387, at *2 (C.D. Cal. Mar. 17, 2025).

### B. PLAINTIFF'S MOTIONS IN LIMINE

#### 1. Motion in Limine No. 1

Plaintiff's Motion in Limine No. 1 seeks to exclude all evidence of Plaintiff's criminal history, including (1) prior contacts with law enforcement, (2) allegations that Plaintiff had a "moniker," (3) hearsay statements regarding whether Plaintiff had struck or yelled at his wife in the past, (4) Plaintiff's probation status at the time of the April 27, 2021 incident, and (5) Plaintiff's criminal conviction and incarceration resulting from the April 27, 2021 incident. Dkt. 114 at 2. Specifically, Plaintiff argues such evidence is irrelevant, unfairly prejudicial, impermissible character evidence, and hearsay. <u>Id.</u> at 2-9. Defendants argue such evidence is relevant to show Plaintiff's "intent, motive, and plan" during the April 27, 2021 incident and to establish the amount of damages. Dkt. 119 at 4-5.

Here, the Court finds the evidence of Plaintiff's criminal history is inadmissible. First, it is undisputed Deputy Alfred was unaware of Plaintiff's criminal history, including his probation status, prior to the April 27, 2021 incident. Thus, Plaintiff's past criminal history is not relevant to determining whether Deputy Alfred's use of force was "objectively reasonable in light of the facts and circumstances confronting [him]" at the time of the incident. <u>Glenn v. Washington Cnty.</u>, 673 F.3d 864, 871 (9th Cir. 2011) (citation modified); <u>see also id.</u> at 873 n.8 ("We cannot consider evidence of which the officers were unaware—the prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both ways." (citing <u>Graham</u>, 490 U.S. at 396)).

Second, Defendants seek to offer the evidence of Plaintiff's criminal history to show Plaintiff's "impetus to ignore the commands of law enforcement and resist arrest," as the evidence "make it more likely that Plaintiff would display repeated noncompliance and resist [Deputy Alfred] in his lawful duties" and, thus, "that Plaintiff posed an immediate threat." Dkt. 114 at 4, 8. However, as noted, Rule 404 prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Defendants' proffered purpose for introducing Plaintiff's criminal history appears to fall squarely within Rule 404's limit by showing

Plaintiff had a criminal character and acted in conformity with that character trait by refusing to comply with and resisting Deputy Alfred's commands. See, e.g., Castro v. Cnty. of Los Angeles, No. CV 13-06631-CAS-SSx, 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015) (excluding evidence of the plaintiff's prior convictions where such evidence served the purpose of demonstrating the plaintiff's criminal character); V.V. v. City of Los Angeles, No. CV 21-01889-MCS-PDx, 2022 WL 3598167, at *6 (C.D. Cal. July 6, 2022) (same).

Additionally, while Defendants contend Plaintiff's criminal history is admissible for non-propensity purposes, Defendants fail to show how Plaintiff's intent, motive, or plan are at issue in this case. See Jackson v. Cnty. of San Bernardino, 194 F. Supp. 3d 1004, 1009 (C.D. Cal. 2016) (finding the plaintiff's motivation or intention irrelevant where the defendants did not assert a "suicide by cop" defense); Valtierra v. City of Los Angeles, 99 F. Supp. 3d 1190, 1193 (C.D. Cal. 2015) (same). Finally, as set forth in the Court's December 22, 2025 Order, the elements of assault under section 245(c) of the California Penal Code for which Plaintiff was convicted are broader than and distinct from the issue of whether Deputy Alfred's conduct was objectively reasonable for the purposes of Plaintiff's excessive force claim. See dkt. 132 at 11-12. Therefore, Plaintiff's conviction offers little probative value in this case. Moreover, even assuming Plaintiff's conviction were relevant, the Court finds the probative value of this evidence would be outweighed by the risk of prejudice and confusing the issues as the jury would be required to sift through complex issues including the factual and legal basis for Plaintiff's criminal conviction and how to factor Plaintiff's criminal conviction into a civil case raising factually and legally distinct excessive force claims.

Accordingly, Plaintiffs' Motion in Limine No. 1 is **GRANTED** to the extent such evidence is presented on issues related to liability. However, the Court reserves ruling on whether the evidence is presented for the limited purpose of determining damages.

2. **Motion in Limine No. 2**

Plaintiffs' Motion in Limine No. 2 seeks to exclude evidence, testimony, argument, or reference to (1) the District Attorney's conclusions regarding Deputy Alfred's use of deadly force, (2) the District Attorney's decision not to press charges against Deputy Alfred, and (3) the County's findings regarding Deputy Alfred's use of deadly force. Dkt. 115. Defendants do not oppose Plaintiff's Motion in Limine No. 2. Dkt. 120.

Accordingly, Plaintiffs' Motion in Limine No. 2 is **GRANTED**.

3. **Motion in Limine No. 3**

Plaintiffs' Motion in Limine No. 3 seeks to exclude evidence of Plaintiff's drug use, including (1) Plaintiff's criminal history relating to drug use, (2) the toxicology report indicating the presence of methamphetamine and benzodiazepines at the time of the incident, (3) hearsay statements regarding Plaintiff's drug use in medical records or police reports, (4) witness testimony regarding Plaintiff's drug use, and (5) the portion of the 911 call indicating Plaintiff appeared to be intoxicated or under the influence. Dkt. 116 at 1-2. Plaintiff argues this evidence is irrelevant and unfairly prejudicial and amounts to impermissible character evidence and hearsay. Id. at 2. Defendants contend the evidence of Plaintiff's drug use is relevant to showing Plaintiff's "intent, motive, and plan during the incident" and to the issue of damages. Dkt. 121 at 3-4.

Here, the Court finds evidence of Plaintiff's drug use is inadmissible. First, Deputy Alfred could not have known the specific details of Plaintiff's prior drug use or drug use immediately preceding the incident. See dkt. 116 at 2. As noted, the Court may not "consider evidence of which the officers were unaware." Glenn, 673 F.3d at 873 n.8 (citing Graham, 490 U.S. at 396). Further, even if Deputy Alfred believed Plaintiff was under the influence of drugs, such evidence has "marginal, if any, probative value as to damages, and none as to liability." Est. of Diaz v. City of Anaheim, 840 F.3d 592, 603 (9th Cir. 2016); accord V.V., 2022 WL 3598167, at *4-5. Hence, Deputy Alfred may only testify to his impression of Plaintiff or information he knew at the time of the incident.

Accordingly, Plaintiffs' Motion in Limine No. 3 is **GRANTED** to the extent Defendants seek to introduce evidence of Plaintiff's drug use beyond Deputy Alfred's knowledge at the time of the incident. However, the Court reserves ruling on whether the evidence is presented for the limited purpose of determining damages.

## IV.
## CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** as follows:

1. Defendants' Motion in Limine No. 1 is **GRANTED in part** and **DENIED in part** (Dkt. 107);
2. Defendants' Motions in Limine Nos. 2, 3, 4, and 5 are **DENIED** (Dkts. 108, 109, 111, 112);
3. Plaintiffs' Motion in Limine Nos. 1 and 3 are **GRANTED IN PART** (Dkt. 114, 116); and
4. Plaintiffs' Motion in Limine No. 2 is **GRANTED** (Dkt. 115).

**IT IS SO ORDERED**.