Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
Angela Brunson (State Bar No. 189223)
  *Angela.Brunson@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED



# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual, | Case No. 5:22-cv-00625-KK-DTBx |
| Plaintiff, | *[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]* |
| v. | |
| COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive, | **DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS** |
| Defendants. | |

*Submitted Separately from Defendants' Motion for a New Trial under FRCP 59*

*Filed Concurrently with:[Proposed] Order*

Judge:        Hon. Kenly Kiya Kato
Date:         May 7, 2026
Time:         9:30 a.m.
Courtroom:    3

Judgment entered: 2/25/26

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

**TO THE HONORABLE COURT AND ALL PARTIES AND COUNSEL:**

**PLEASE TAKE NOTICE THAT** on May 7, 2026, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Kenly Kiya Kato, United States District Judge, located in Courtroom 3 of the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 Twelfth Street, Riverside, California, Defendants County of San Bernardino ("the County") and Deputy Christopher Alfred ("Deputy Alfred") (collectively, "Defendants") will renew their motion for judgment as a matter of law as to the claims for which the jury returned a verdict for plaintiff (e.g., excessive force and the state law claims) and as to Deputy Alfred's qualified immunity defense.

This motion is made pursuant to Fed. R. Civ. Pro. 50(b) and is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Kayleigh Andersen and exhibits, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Defendants' motion is made on the grounds that Defendants are entitled to judgment as matter of law because (1) no reasonable juror could have concluded that the force used by Deputy Alfred was unreasonable under the totality of the circumstances; (2) Deputy Alfred is entitled to qualified immunity; and (3) Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

### STATEMENT REGARDING CONFERENCE OF COUNSEL

Pursuant to Civil Local Rule 7-3, counsel for the Defendants met and conferred with Plaintiff's counsel on March 17, 2026 via telephone and email to discuss the substance of the Defendants' instant motion and were unable to reach a resolution, necessitating the need for this Motion.

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS

DATED:  March 25, 2026

Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**


By: _____/s/ Kayleigh Andersen_____
Eugene P. Ramirez, Esq.
Kayleigh Andersen, Esq.
Angela Brunson, Esq.
Attorneys for Defendants, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

3

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I. INTRODUCTION .................................................................................................. 1

    A.    Background ...................................................................................... 1

    B.    Trial ................................................................................................. 2

II. LEGAL STANDARD ........................................................................................... 3

III. THE DEFENDANTS' MOTION IS TIMELY ..................................................... 3

IV. THE JURY'S FINDING OF EXCESSIVE FORCE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE .................................................. 3

V. DEPUTY ALFRED IS ENTITLED TO QUALIFIED IMMUNITY ................... 6

VI. PLAINTIFF'S CLAIMS ARE BARRED BY *HECK* ......................................... 10

    A.    Plaintiff's claim is barred by *Heck* because, based on the jury's findings in Plaintiff's criminal trial, Deputy Alfred's fear of death or serious bodily injury was necessarily reasonable. ................... 10

    B.    In ruling otherwise, the court's erroneous understanding of the elements of Barber's conviction permeated its *Heck* analysis.............. 12

VII. DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ........................................................................................ 16

    A.    *Heck* bars Plaintiff's state law claims. ...................................... 17

    B.    Battery ........................................................................................... 17

    C.    Negligence .................................................................................... 18

    D.    Bane Act Violation ....................................................................... 19

    E.    Intentional Infliction of Emotional Distress ............................... 20

VIII. CONCLUSION ................................................................................................... 20



**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................ 6

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................... 8

*Blanford v. Sacramento Cnty.*, 406 F.3d 1110 (9th Cir. 2005) ......................... 8, 9, 10

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) .................................................. 4

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) .......................... 3

*Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) ............................................................................................... 5, 10

*Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614 (9th Cir. 2023) ........................... 4, 6

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................... 6

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ...................................... 6

*Heck v. Humphrey*, 512 U.S. 477 (1994) ................................................... 1, 2, 10, 17

*Hung Lam v. City of San Jose*, 869 F.3d 1077 (9th Cir. 2017) ..................... 11, 12, 16

*Johnson v. Myers*, 129 F.4th 1189 (9th Cir. 2025) ................................................... 11

*Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) ........................... 10, 11, 12

*Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870 (C.D. Cal. 2016) ........................ 6

*Mayfield v. City of Mesa*, 131 F.4th 1100 (9th Cir. 2025) ........................... 10, 12, 16

*Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017) ........................................................... 7

*Muhammad v. Garrett*, 66 F. Supp. 3d 1287 (E.D. Cal. 2014) ................................ 17

*Mullenix v. Luna*, 577 U.S. 7 (2015) ..................................................................... 7, 8

*Ortega v. Rodenspiel*, 617 F. App'x 795 (9th Cir. 2015) ......................................... 12

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) .......................................................... 5, 8, 9

*Price v. Sery*, 513 F.3d 962 (9th Cir. 2008) ............................................................. 11

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ................................. 19

ii

MANNING | KASS

*Rivas-Villegas v. Cortesluna,*
   595 U.S. 1 (2021) .................................................................................................. 7

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................... 4

*Tolan v. Cotton*, 572 U.S. 650 (2014) ................................................................... 7

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009) ................... 7

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ............................................. 8, 9

*Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024) ..................................... 9

*Yount v. City of Sacramento*, 43 Cal.4th 885 (2008) ........................................... 17

## STATE CASES

*Brown v. Ransweiler,* 171 Cal.App.4th 516 (2009) ............................................. 17

*Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) .......................................... 19

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) .......................................................... 20

*In re B.M.*, 6 Cal.5th 528 (Cal. 2018) ......................................................... 13, 14

*Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334 (1996) .......................... 17

*People v. Chance*, 44 Cal.4th 1164 (Cal. 2008) .............................................. 13, 14

## STATE STATUTES

Cal. Civ. Code § 52.1(b) ................................................................................ 19

Cal. Gov't. Code § 815.2 ................................................................ 17, 18, 19, 20

Cal. Pen. Code, § 245(a)(1) ............................................................................. 1

## RULES

Fed. R. Civ. P. 50(b) ..................................................................................... 1, 3

iii

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(b), Defendants County of San Bernardino and Deputy Christopher Alfred renew their Fed. R. Civ. P. 50(a) motion, which was denied at trial.  Defendants move the court for an order granting judgment for Defendants as to Plaintiff Steffon Barber's excessive force and state law claims. This Court should grant the motion as a matter of law, because: (1) no reasonable juror could have concluded that the force used by Deputy Alfred was unreasonable under the totality of the circumstances; (2) Deputy Alfred is entitled to qualified immunity; and (3) Plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

### A.      Background

This civil rights action arises out of the use of deadly force against Steffon Barber ("Plaintiff"), who was injured on April 27, 2021, during a confrontation with Deputy Alfred.  Deputy Alfred responded to a 911 call regarding Plaintiff whereupon he attempted to speak with Plaintiff and issued several commands to show his hands and step away from his vehicle.  Plaintiff refused to comply and instead reversed his vehicle into Deputy Alfred.

With no opportunity to safely move out of the way and fearing for his life, Deputy Alfred shot and injured Plaintiff.  Plaintiff was convicted by a jury of assault with a deadly weapon other than a firearm (Cal. Pen. Code, § 245(a)(1)) in *People of the State of California v. Steffon Todd Barber*, a state criminal case, bearing San Bernardino Case No. FVI21001312.  Plaintiff is currently incarcerated, serving a thirteen-year prison sentence following his conviction.  Plaintiff subsequently filed this action, asserting various claims under 42 U.S.C. § 1983 and state law.

On December 22, 2025, this Court denied Defendants' motion for summary judgment, which argued, *inter alia*, that Plaintiff's claims were barred under *Heck v.*

1

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*Humphrey*, 512 U.S. 477 (1994).  Dkt. 132.

**B.      Trial**

On January 30, 2026, the case proceeded to trial by jury on six claims: excessive force; unconstitutional policy, practice or custom; battery; negligence; violation of the Bane Act; and intentional infliction of emotional distress ("IIED"). Trial lasted seven days with the jury charged on the fifth day.

On February 3, 2026, Defendants moved for judgment as a matter of law. Dkt. 172.  The Court denied the motion on the record, without prejudice to a renewed motion at the end of trial.  [Tr. IV: 742:23-743:3].[1]  The Court determined that "a reasonable jury would have a legally sufficient basis to find for [Plaintiff]" on both his section 1983 claims and related state law claims.  [Tr. IV: 744:22-745:1].  It also found that Deputy Alfred was not entitled to qualified immunity. [Tr. IV: 743:13-14].

On February 9, 2026, the jury returned its verdict.  Dkt. 200.  The jury concluded that Deputy Alfred used excessive force against Plaintiff and was negligent.  *Id*.  The jury concluded Plaintiff was comparatively negligent.  *Id*.  The jury allocated 64% responsibility to Deputy Alfred for Plaintiff's injuries, and 36% to Plaintiff himself.  *Id*.

The jury found for Plaintiff on his battery, Bane Act, and IIED claims.  *Id*. The jury concluded that the County did not fail to provide adequate training to its police officers, and thus could not be liable on Plaintiff's federal claims.  *Id*.  The jury awarded $27,350,000 in total damages: $7,250,000 in past pain and suffering and emotional distress; $18,250,000 in future pain and suffering and emotional distress; and $1,850,000 in future economic loss.  *Id*.

---

[1] Citations to the trial transcript ("Tr.") follow this format: Trial Day (Roman numeral): Page Number(s):Line Number(s).

2

## II.    LEGAL STANDARD

Under Fed. R. Civ. P. 50, "a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury.  If the judge denies … the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

Judgment as a matter of law is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in that party's favor, the evidence permits only one conclusion, and that conclusion is contrary to the jury's verdict. *Id.*  When considering a Rule 50(b) motion, the court reviews the jury's verdict for substantial evidence. *Id.*  Even if the Court determines the jury's factual findings are adequately supported, it must address whether its ultimate legal conclusion is correct considering those findings. *See* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

## III.    THE DEFENDANTS' MOTION IS TIMELY

The Rule 50(b) motion must be filed no later than 28 days after entry of judgment and may include an alternative or joint request for a new trial under Rule 59. Fed. R. Civ. Pro. 50(b).  The Court entered judgment on February 25, 2026. Dkt. 207.  Accordingly, the Defendants' motion is timely.  Fed. R. Civ. Pro. 50(b).

## IV.    THE JURY'S FINDING OF EXCESSIVE FORCE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The evidence presented at trial does not support the jury's conclusion that

3

Deputy Alfred's use of force was excessive.  Force is excessive when an officer employs an "'objectively unreasonable' amount of force under the 'totality of the circumstances.'" *Est. of Strickland v. Nevada Cnty*., 69 F.4th 614, 619 (9th Cir. 2023).  "Whether the use of deadly force is reasonable is highly fact-specific." *Scott v. Harris*, 550 U.S. 372, 387 (2007).  Among the factors the jury may consider in making this determination are: "(1) the type and amount of force inflicted; (2) the severity of the crime at issue, (3) whether the suspect posed an immediate threat to the safety of the officers or others; and (4) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  The U.S. Supreme Court has held that the reasonableness of the officer's actions must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Bryan v. MacPherson*, 630 F.3d 805, 812 (9th Cir. 2010) (internal citations omitted).  The "'calculus of reasonableness' in these circumstances 'must [also] embody allowance for the fact that police officers are often forced to make split-second judgments'.'" *Est. of Strickland,* 69 F.4th at 619.

Here, none of the evidence Plaintiff presented was sufficient to raise any doubt that Deputy Alfred's use of deadly force was reasonable under the totality of the circumstances.  *Scott,* 550 U.S. at 385 ("all that matters is whether [the officer's] actions were reasonable").  The evidence revealed that when confronted with the immediate and lethal threat of Plaintiff's feloniously reversing a vehicle into him (which a jury in an underlying criminal case found to be violative of California Penal Code section 245(a)(1)), Deputy Alfred was forced to make a split-second decision to save his life.  Based on Deputy Alfred's trial testimony:

- Deputy Alfred was solo [Tr. II: 196:11-12; 270:4-6];
- Deputy Alfred responded to the scene regarding an argument between neighbors [Tr. II: 294:11-17];
- Deputy Alfred was carrying thirty pounds of equipment on him and

4

was on a gravel surface, which was a potential trip and fall hazard [Tr. II: 221:9-13; 258:19-259:8; 278:22-279:6; 279:11-14];

- Deputy Alfred observed Plaintiff next to the Trailblazer with the hatchback in an open position [Tr. II: 277:9-14];

- Deputy Alfred instructed Plaintiff multiple times to show him his hands, Plaintiff acknowledged he heard him, and Plaintiff ignored Deputy Alfred's command and then got into the driver's seat of the Trailblazer [Tr. II: 279:17-280:10];

- Deputy Alfred observed Plaintiff put his Trailblazer in reverse gear and the engine revved and reversed into Deputy Alfred [Tr. II: 222:17-24];

- Deputy Alfred had only seconds between when the Trailblazer started reversing to assess the threat and determine his response to that threat [Tr. II: 257:17-20; 258:5-9; 384:14-15];

- Deputy Alfred feared that that he would be injured or killed by the Trailblazer [Tr. II: 259:13-15];

- Deputy Alfred could not feasibly and safely move out of the way of the reversing Trailblazer because the left (east) boundary was a chain-link fence approximately 6 feet high, and the right (west) boundary was the building stucco; and in order for Deputy Alfred to access the gap in the wooden fence on the west side of the driveway, Deputy Alfred would have had to move *into the path* of the reversing Trailblazer [Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2]; and

- Even if Deputy Alfred could have accessed the gap in the wooden fence, because it was a wooden fence, it would not have provided any protection from the reversing Trailblazer [Tr. II: 257:23-258:4; 287:10-288:3].

Based on these circumstances, and as a matter of law, Deputy Alfred acted reasonably in firing his service weapon in order to stop a real, immediate, and very lethal threat. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (officer did not act unreasonably in firing weapon at fleeing suspect where, "under the circumstances at the moment when the shots were fired," it was reasonable to conclude suspect would continue to pose a deadly threat); *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 799 (9th Cir. 2025) (officer acted reasonably in firing first four rounds when decedent moved towards her with a knife, and refused to comply with her orders to stop and drop the knife thereby creating a heightened sense of urgency and unpredictability); and *Hart v. City of Redwood City*, 99 F.4th

5

543, 550 (9th Cir. 2024) (officers had only seconds to react to non-responsive man quickly approaching them with a knife). Deputy Alfred testified that the Trailblazer was in motion for all six of his shots and only came to a stop after his sixth shot. [Tr. II: 226:12-227:14]. The testimony of Robert Morales confirmed that the vehicle was in motion for all six shots (Tr. III: 419:15-16; 421:20-24; 423:9-424:17) although the Defendants dispute Morales' calculations as to how many feet the Trailblazer moved at the time of the first shot and in between each shot.

Significantly, the law does not permit speculation about how an officer "may" have been able to employ non-lethal methods with perfect 20/20 hindsight. *Est. of Strickland*, 69 F.4th at 619. Yet, this forbidden speculation formed the basis of Plaintiff's only argument against the reasonableness of Deputy Alfred's use of force. Plaintiff argued throughout the course of trial that Deputy Alfred *could have* stepped out of the way of the Trailblazer. This argument ignored undisputed evidence that Deputy Alfred had thirty pounds of equipment on him that would have hindered his ability to step out of the way, and that he was walking on a gravel surface which presented a trip and fall hazard. Regardless, Plaintiff's argument relies on the kind of 20/20 hindsight that the Supreme Court has prohibited in the assessment of whether an officer's use of force was reasonable. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

The evidence presented at trial permits only one reasonable conclusion— namely, that Deputy Alfred's use of deadly force to neutralize the felonious threat of a reversing Trailblazer was reasonable under the circumstances. Accordingly, Deputy Alfred is entitled to judgment as a matter of law on Plaintiff's claim for excessive force. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 892 (C.D. Cal. 2016).

## V.    DEPUTY ALFRED IS ENTITLED TO QUALIFIED IMMUNITY

Even if the Court were to conclude that the jury's finding of excessive force

was both supported by the evidence and legally correct, Deputy Alfred is nevertheless entitled to qualified immunity based on the evidence presented at trial and the jury's findings based on that evidence.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). A peace officer is entitled to qualified immunity unless: (1) the facts, "taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right," and (2) "the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). "The second part of this analysis . . . is an issue for a judgment as a matter of law under Rule 50(a) and (b)." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *accord Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (holding that the "'clearly established' inquiry is a question of law that only a judge can decide"). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

As set forth above, Plaintiff's evidence was insufficient to show that Deputy Alfred violated Plaintiff's right to be free from the use of excessive force in these circumstances. In addition, Plaintiff's evidence was insufficient to establish that the right in question was clearly established at the time of the violation. Given Plaintiff's conduct and the circumstances faced by Deputy Alfred, it cannot be said that Deputy Alfred was "plainly incompetent" or "knowingly violate[d] the law." *Mullenix*, 577 U.S. at 15. Plaintiff cannot establish that the alleged unconstitutionality of Deputy Alfred's use of deadly force is "beyond debate." *Mullenix*, 577 U.S. at 14; *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (where facts do not present "an obvious case," Plaintiff "must identify a case that

7

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

put [defendant] on notice that his specific conduct was unlawful").

When applying the clearly established prong of the qualified immunity analysis, district courts have been admonished to "not define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A plaintiff 'bears the burden of showing that the right at issue was clearly established.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019). That "relevant precedent must define the right with a 'high degree of specificity' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply'" was recently affirmed by the United State Supreme Court. *Zorn v. Linton*, No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026).

It is not beyond debate that Deputy Alfred "violated [Plaintiff's] clearly established right," because "the right's contours were [not] sufficiently definite that any reasonable official in [Deputy Alfred's] shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (quoting *Plumhoff,* 572 U.S. at 778-779). In April 2021, it was not clearly established that the use of deadly force against a suspect violated the Fourth Amendment when the suspect, having acknowledged that he heard the officer, failed to comply with an officer's repeated commands, and then accelerated his vehicle in reverse into the officer who could not step out of the way of the vehicle. *See Mullenix*, 577 U.S. at 14; *see also Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1116–1119 (9th Cir. 2005) (holding officers did not violate Fourth Amendment by shooting sword-wielding plaintiff who acknowledged but refused officers' repeated commands to drop sword and then walked purposefully toward side entrance of private residence). It is undisputed in this case that Plaintiff assaulted Deputy Alfred with a deadly weapon.

The decision in *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) is instructive. There, the suspect was the driver of a moving vehicle, ignored police commands, and attempted to accelerate within close quarters of two officers on foot.

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*Id.* at 551.  The Ninth Circuit stated that "[i]n this 'tense, uncertain, and rapidly evolving' situation, a reasonable officer had probable cause to believe that the threat to safety justified the use of deadly force." *Id.*  The court therefore concluded that because the officer "did not violate a constitutional right" in the first place, it need not reach the question of whether that right was clearly established.  *Id.*; *see also Blanford*, 406 F.3d at 1116–1119 (same with respect to noncompliant sword-wielding plaintiff whom officers reasonably perceived as a threat).

The same is true here.  Based on *Wilkinson* and *Blanford*, this Court should grant judgment in defendants' favor on the underlying section 1983 claim, concluding that Deputy Alfred's conduct did not violate the Fourth Amendment.  At a minimum, based on *Wilkinson—which pre-dated the incident here*, and which similarly involved a plaintiff accelerating a vehicle at an officer[2]—it was not clearly established that Deputy Alfred's use of deadly force in response was unconstitutional.

In addition to *Wilkinson* and *Blanford*, case law has granted officers qualified immunity when the officers continued shooting until the threat to their safety was eliminated:

- In *Plumhoff v. Rickard*, 572 U.S. 765 (2014), the officers were entitled to qualified immunity when "the record conclusively disprove[d] [plaintiff's] claim that the chase in the present case was already over when [defendants] began shooting." *Id.,* at 777.

- In *Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024), the Ninth Circuit specifically held that "[o]nce plaintiff attempted to accelerate his vehicle, the officers did not need to risk their safety by first waiting to see if his attempt would be successful, and they acted reasonably in firing the

---

[2]    Indeed, *Wilkinson* is particularly compelling because it involved the *specific scenario* of a suspect accelerating a vehicle at an officer, and the court concluded that the officer's use of deadly force in response to that lethal threat was constitutional.  Thus, *Wilkinson* not only shows how to define the clearly established law at an appropriate level of specificity (as this Court is required to do), but it also placed Deputy Alfred on notice—before the incident—that his conduct was constitutional.  *See Ashcroft*, 563 U.S. at 742.

immediate fourteen-second volley of shots in response to that effort." *Id.* at 645. "Having fired that initial volley, the officers then reasonably ceased firing, as Williams's further attempts at acceleration proved fruitless." *Id.* at 645-6.

- In *Est. of Hernandez*, 139 F.4th 790 (9th Cir. 2025), the court concluded that the officer's actions were reasonable when she fired the first two shots because the plaintiff posed a threat.

Finally, Deputy Alfred is also entitled to qualified immunity even if his perception that Plaintiff posed an imminent threat was mistaken but reasonable. *Blanford*, 406 F.3d at 1116) (qualified immunity protected officers who used deadly force against plaintiff who wielded edged sword and could not hear officers' command to drop sword because he was wearing headphones).

For the reasons set forth above, Deputy Alfred is entitled to qualified immunity as a matter of law.

## VI.   PLAINTIFF'S CLAIMS ARE BARRED BY *HECK*

**A.   <u>Plaintiff's claim is barred by *Heck* because, based on the jury's findings in Plaintiff's criminal trial, Deputy Alfred's fear of death or serious bodily injury was necessarily reasonable.</u>**

Under *Heck*, a section 1983 claim is barred if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." 512 U.S. at 487. To determine whether success in the action would imply the invalidity of a conviction, "a court must look at the record of the criminal case—including the jury instructions—to determine which facts the jury necessarily found." *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (en banc). Courts also consider the elements of the offense. *See id.* Courts then compare the "facts the jury necessarily found" to the plaintiff's claim. *Id.* "If the plaintiff's success on her claim would negate an element of the offense of which she was convicted, then *Heck* bars that claim." *Mayfield v. City of Mesa*, 131 F.4th 1100, 1108 (9th Cir. 2025) (cleaned up).

Plaintiff claims that Deputy Alfred used unreasonable and excessive force

10

when he shot him. Dkt. 72 at 12. "[A] law enforcement officer's use of force will be justified, or not, by what that officer reasonably believed about the circumstances confronting him." *Price v. Sery*, 513 F.3d 962, 968 (9th Cir. 2008). "[D]eadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)); *see Johnson v. Myers*, 129 F.4th 1189, 1194 (9th Cir. 2025).[3]

Accordingly, if the jury verdict in Plaintiff's criminal trial necessarily means that Deputy Alfred's fear of serious bodily injury or death was reasonable, then Plaintiff's claim is barred under *Heck*.[4]  *See Lemos*, 40 F.4th at 1006.

That is exactly what the jury verdict means. Plaintiff was convicted of assault with a deadly weapon other than a firearm in violation of California Penal Code section 245(a)(1). Dkt. 97-5; *see also* Declaration of Kayleigh Andersen ("Andersen Decl."), ¶ 2, Exhibit ("Ex.") 1 (felony abstract of judgment in Plaintiff's criminal matter). To find Plaintiff guilty of that offense, the jury had to find that Plaintiff willfully "did an act with a deadly weapon other than a firearm, that by its nature would directly and probably result in the application of force to a person," and that when he acted, he "had the present ability to apply force with a deadly

---

[3]    Although the Ninth Circuit's deadly force cases often use the phrase "probable cause to believe," the Ninth Circuit has held that there is no significant legal difference between that phrase and the phrase "reasonably believes." *Price*, 513 F.3d at 969.

[4]    The court previously rejected the *Heck* defense when Defendants raised it on summary judgment. *See* Dkt. No. 132 at 9–12. However, Defendants are permitted to raise this purely legal defense again for consideration in their Rule 50(b) motion. *See Est. of Aguirre v. Cnty. of Riverside*, 131 F.4th 702, 706 (9th Cir. 2025) (holding defendant could raise argument in Rule 50(b) motion because it was a "purely legal issue" that "had been expressly raised at summary judgment").

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

weapon other than a firearm to a person." Dkt. 97-8 at 2–3. The jury was instructed that "[a] deadly weapon is any object, instrument or weapon that is *used in such a way* that it is capable of causing and *likely to cause death or great bodily injury. The deadly weapon in this case is alleged to be the vehicle*." *Id.* at 3 (emphasis added).

In light of those findings, Deputy Alfred's belief that Plaintiff posed a significant threat of death or serious bodily injury was necessarily reasonable. The jury in Plaintiff's criminal trial already found, beyond a reasonable doubt, that by reversing his vehicle into Deputy Alfred, Barber committed an act that was "likely to cause death or great bodily injury" and that "would directly and probably result in the application of force." *Id.* at 2–3. Because he committed that act, Plaintiff cannot possibly prove—without invalidating those prior jury findings—that Deputy Alfred's fear of death or serious injury was not reasonable. And Plaintiff therefore cannot prove—without invalidating his prior conviction—that Deputy Alfred used excessive force. *See Hung Lam*, 869 F.3d at 1086; *see also Ortega v. Rodenspiel*, 617 F. App'x 795, 796 (9th Cir. 2015) ("[T]he district court properly accepted the jury's finding from Ortega's criminal trial for assault with a deadly weapon that Ortega 'used his car in such a way that was . . . likely to cause death or great bodily injury.' . . . Thus, Officer Rodenspiel acted reasonably when he fired his weapon in response to Ortega's threat of death or serious injury.")

Put simply, success on Plaintiff's section 1983 claim would "negate an element of the offense of which [he] was convicted"—i.e., the deadly weapon element. *Mayfield*, 131 F.4th at 1108 (cleaned up). Accordingly, Plaintiff's excessive force claim is barred under *Heck*. *See Lemos*, 40 F.4th at 1006.

**B.** **In ruling otherwise, the court's erroneous understanding of the elements of Barber's conviction permeated its *Heck* analysis.**

In its order denying summary judgment, the court ruled that success on

12

Plaintiff's excessive force claim does not necessarily imply the invalidity of his conviction because section 245(a)(1) "covers a broad swath of conduct." Dkt. 132 at 11. However, the court's application of controlling California precedent was erroneous.

*First*, the court understated the probability of injury that is required to satisfy the deadly weapon element. The court stated that "[t]he deadly weapon inquiry focuses on 'what harm *could* have resulted from the way the object was actually used,'" and that the element could be met "where there is just 'more than a mere possibility' of injury." *Id.* (quoting *In re B.M.*, 6 Cal.5th 528, 534 (Cal. 2018).

But in *In re B.M.*, the California Supreme Court emphasized that the defendant's actual use of the deadly weapon must be "*likely* to cause serious injury." 6 Cal.5th at 534) (emphasis added). The *B.M.* court cited to dictionaries establishing that the ordinary meaning of "likely" is "having a high probability of occurring or being true" and "very probable," and the court relied on case law which held that the term "likely" refers to "situations in which the probability of serious injury is great." *Id.* at 533) (quotations and citations omitted). The court also emphasized that "the determination of whether an object is a deadly weapon under section 245(a)(1) must rest on evidence of how the defendant actually 'used' the object." *Id.* at 534.)

*Second*, the court misunderstood the temporal standard for the "present ability" element. The court stated that the actus reus element of the offense could be met "when an injury would occur with 'delay' or not as the 'next step in the sequence of events.'" *Id.* (quoting *People v. Chance*, 44 Cal.4th 1164, 1172 (Cal. 2008).

But in *Chance*, the California Supreme Court made clear that, although injury need not be the "instantaneous result" of the defendant's act, the time between the act of assault and the potential injury must be small. *Id.* at 1171. The court noted

13

MANNING | KASS

that "the present ability element contemplates 'immediate' injury." *Id.* (*citing with approval People v. McMakin*, 8 Cal. 547, 548 (1857) ("The intention must be to commit a present, and not a future injury, upon a different occasion.  The acts done must be in preparation for an immediate injury.")).  The "present ability" element is satisfied "when a defendant equips and positions himself to carry out a battery." *Id.* at 1172.

The court's misapplication of controlling California precedent permeated its *Heck* analysis.  For example, in discussing the factual basis of Plaintiff's conviction, the court ruled that "it is unclear what specific act" constituted the assault with a deadly weapon.  Dkt. 132 at 11.  The court noted that the jury may have convicted Plaintiff for (1) entering an idling car knowing someone was behind him; (2) illuminating his brake lights by putting the car in reverse; (3) revving his engine or spinning his tires; or (4) reversing his Trailblazer.  *Id.*

But the first three of those four acts could not possibly constitute assault with a deadly weapon because none of those three acts are "likely" to result in serious injury or death.  There is no probability—let alone a "high probability"—that merely entering an idling vehicle, revving an engine, or turning on brake lights would cause serious physical injury.  *In re B.M.*, 6 Cal.5th at 533 (quotations and citations omitted).

To the contrary, there is only one act that Plaintiff committed having *any* probability of resulting in serious injury or death: reversing the vehicle into Deputy Alfred.  *See id.*  That is the only act that "contemplates 'immediate' injury." *Chance*, 44 Cal.4th at 1171.  That is why the trial court in the criminal case instructed the jury that the "deadly weapon in this case is alleged to be the vehicle." Dkt. 97-8 at 3.  Consequently, the only possible factual basis of Plaintiff's conviction is Plaintiff reversing his vehicle into Deputy Alfred.

In fact, while the summary judgment record alone establishes that the factual

14

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

predicate of Plaintiff's conviction was his reversing his vehicle into Deputy Alfred, the closing arguments presented by the prosecutor and Plaintiff's counsel at his criminal trial reinforce that conclusion. The prosecutor specifically argued that "the act alleged is that he attempted to run Deputy Alfred down with that motor vehicle." Andersen Decl., ¶ 3, Ex. 2 at 684; *see also id.* ("He had to intend the act, that acceleration of that vehicle, with wrongful intent."); *id.* at 685 ("Reasonable people know that driving a vehicle at a person will result in the application of force, a hit, an impact."). Plaintiff's criminal counsel extensively challenged the "deadly weapon" element, arguing that the manner in which Plaintiff actually used the vehicle was not likely to injure Deputy Alfred. *Id.* at 716, 740–742.[5] The jury unanimously rejected that argument, resulting in Plaintiff's conviction. Dkt. 97-5.

This court also relied on cases where, based on the record before it, the Ninth Circuit held that a reasonable jury could find that the officer engaged in excessive force. *See* Dkt. 132 at 12 (collecting cases). But those cases are inapposite: none of them involved an act that a criminal jury had already found—unanimously and beyond a reasonable doubt—was "likely to cause death or great bodily injury." Dkt. 97-8 at 3.

Because the criminal jury already reached that finding, Plaintiff cannot prove that Deputy Alfred used excessive force (i.e., he did not have a reasonable fear of

---

[5]    Defendants request that this Court take judicial notice of the attached excerpts of the transcript of Plaintiff's criminal trial, and of the abstract of the judgment in that case. *See* Andersen Decl., ¶¶ 2–3, Exs. 1, 2. The transcript excerpts include the parties' opening statements, the final instructions delivered to the jury, and closing arguments presented by the prosecutor and Plaintiff's criminal defense counsel. Courts regularly take judicial notice of transcripts and other documents from criminal proceedings in other courts. *See Rivera v. Corr. Corp. of Am.*, 999 F.3d 647, 649 (9th Cir. 2021) (transcript); *United States v. Dreyer*, 804 F.3d 1266, 1276 (9th Cir. 2015) (transcript); *McDermott v. Johnson*, 85 F.4th 898, 919 (9th Cir. 2023) (documents in state court record); *see also* Fed. R. Evid. 201.

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

serious injury or death, *see Hung Lam*, 869 F.3d at 1086) without "negat[ing] an element of the offense of which [he] was convicted"—namely, the deadly weapon element, *Mayfield*, 131 F.4th at 1108 (cleaned up).  This court should therefore enter judgment as a matter of law in favor of Defendants.[6]

## VII.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

All of Plaintiff's state law claims fail as a matter of law because Plaintiff's evidence was insufficient for a jury to conclude that Defendants are liable.  For the same reasons that no constitutional violations were committed, no state torts were

---

[6]    In its prior order, the court ruled that Defendants forfeited their *Heck* argument by failing to plead it in their answers.  Dkt. 132 at 10.  At the outset, the court need not consider forfeiture for purposes of this motion because the court already ruled on the *Heck* issue on the merits.  *See Hebrard v. Nofziger*, 90 F.4th 1000, 1007–08 (9th Cir. 2024) (analyzing *Heck* on the merits where defendant failed to plead *Heck* in its answer but district court nonetheless considered it on the merits).

In any event, the forfeiture doctrine does not bar Defendants' *Heck* defense. *First*, "[i]n the absence of a showing of prejudice . . . an affirmative defense may be raised for the first time at summary judgment."  *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) (rejecting argument that defendant waived qualified immunity defense where plaintiff "has not claimed prejudice; nor is any suggested by the record").  There was no prejudice to Plaintiff in considering the *Heck* defense at summary judgment even though it was not asserted in the Defendants' answers. That is confirmed by Plaintiff's summary judgment opposition, in which he fully briefed the issue on the merits without any claim of prejudice or the need for more discovery.  *See* Dkt. No. 101 at 15–17.

*Second*, in his opposition to the motion for summary judgment, Plaintiff never argued forfeiture.  *See* Dkt. No. 101 at 15–17.  Plaintiff therefore forfeited any forfeiture argument.  *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (holding party forfeited forfeiture argument by failing to assert it); *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) ("It is 'well-established' that a party can 'waive waiver' implicitly by failing to assert it.").

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS

committed, either.  *See Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996).  Further, since Deputy Alfred is not liable on the state law claims, there is no basis for the County's liability under respondeat superior principles.  *See* Cal. Gov't. Code § 815.2.

## A.    *Heck* **bars Plaintiff's state law claims.**

Application of the *Heck* doctrine does not bar only plaintiff's § 1983 claim.  It also bars his state law claims for battery, negligence, intentional infliction of emotional distress, and violation of the Bane Act, all of which arise from the same alleged misconduct (i.e., the alleged excessive force).  *See Heck*, 512 U.S. at 468 ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments."); *Yount v. City of Sacramento*, 43 Cal.4th 885, 902 (2008) (holding state tort claims are also barred under *Heck* because "we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct"); *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1301 (E.D. Cal. 2014) (ruling plaintiff's claim under Bane Act barred by *Heck*), *aff'd sub nom. Muhammad v. City of Bakersfield*, 671 F. App'x 982 (9th Cir. 2016).

## B.    **Battery**

The standard for proving battery by a police officer is the same standard applied to § 1983 actions: Plaintiff must prove the officer's use of force was unreasonable.  *See Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009).  "The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer."  *Id.*  This test is context-specific and "highly deferential to the police officer's need to protect himself and others."  *Id.*

As set forth above, Deputy Alfred is not liable for battery because his use of deadly force was necessary under the totality of the circumstances to protect himself from serious bodily injury or death. Plaintiff was uncooperative and ignored Deputy

17

Alfred's commands, and when he entered his Trailblazer, the Trailblazer's hatchback was open. [Tr. II: 277:9-14; 279:17-280:10]. Thus, the event of Plaintiff reversing his vehicle into Deputy Alfred was not expected, and Deputy Alfred had only a matter of seconds after the Trailblazer started reversing to assess the threat and decide how to respond to it. [Tr. II: 257:17-20; 258:5-9; 384:14-15]. Deputy Alfred could not safely move out of the way of the reversing Trailblazer and feared injury or death. [Tr. II: 259:13-15; 277:15-278:5; 288:9-289:1; 305:25-306:2]. Furthermore, Deputy Alfred's actions complied with the County Sheriff's Department's use of force policy permitting an officer to shoot at a moving vehicle when, like here, time and circumstances did not allow him to move out of the path of the vehicle. [Tr. II: 269:14-24].

A reasonable officer in the same circumstances would have perceived that Plaintiff was acting with intent to cause serious injury, given that Plaintiff ignored Deputy Alfred's commands and then Plaintiff put his Trailblazer in reverse and accelerated into Deputy Alfred in the narrow driveway where Deputy Alfred had no way to safely move out of the way. Further, since Deputy Alfred is not liable for battery, the County' cannot be liable under respondeat superior principles. *See* Cal. Gov't. Code § 815.2.

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's battery cause of action.

**C.    Negligence**

For the same reasons the jury's finding that Deputy Alfred used excessive force against Plaintiff is unsupportable, its conclusion that Deputy Alfred was negligent is also not borne out by the evidence at trial.

Plaintiff did not present sufficient evidence to establish that Deputy Alfred "had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57

18

Cal.4th 622, 629 (2013). "[P]eace officers have a duty to act reasonably when using deadly force." *Id.* at 695. "The reasonableness of an officer's conduct is determined in light of the totality of circumstances." *Id*. at 629–30. Here, as set forth above, Deputy Alfred's actions were reasonable under the totality of the circumstances. [Tr. II: 257:17-20; 258:5-9; 277:9-14; 269:14-24279:17-280:10; 384:14-15].

Further, since Deputy Alfred is not liable for negligence, the County' cannot be liable under respondeat superior principles. *See* Cal. Gov't. Code § 815.2.

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's negligence cause of action.

**D.    Bane Act Violation**

The Bane Act provides for liability for interference with an individual's constitutional rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). It requires a "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 1043.

As discussed above, Plaintiff did not present evidence sufficient to prove a Bane Act violation because he did not present sufficient evidence of an underlying constitutional violation. *Id.* In addition, Plaintiff did not present sufficient evidence of coercion independent of the constitutional violation itself—the evidence showed that Deputy Alfred was only reacting to Plaintiff's actions in the moment. [Tr. II: 257:17-20; 258:5-9; 277:9-14; 269:14-24279:17-280:10; 384:14-15].

Since Deputy Alfred is not liable for violation of the Bane Act, the County' cannot be liable under respondeat superior principles. *See* Cal. Gov't. Code § 815.2.

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's cause of action for violation of the Bane Act.

19

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS

**E.      Intentional Infliction of Emotional Distress**

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the Plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009).

Here, Plaintiff did not present sufficient evidence that Deputy Alfred's conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*  Nor was there any evidence that any of the law enforcement personnel at the scene that day had the requisite "intent to cause, or reckless disregard for the probability of causing, emotional distress." *Id.* (noting intent is an element of the cause of action).  Finally, Plaintiff did not present evidence that he ever sought treatment for any alleged mental or emotional distress. [Tr. III: 460:1-500:3].

Since Deputy Alfred is not liable for intentional infliction of emotional distress, the County' cannot be liable under respondeat superior principles. *See* Cal. Gov't. Code § 815.2.

## VIII.  CONCLUSION

Based on the evidence presented at trial, judgment should be entered against Plaintiff and in favor of Defendants on Plaintiff's excessive force and state law claims. Further, Defendant Deputy Alfred is entitled to qualified immunity as a matter of law. Lastly, *Heck* requires the dismissal of all claims as a matter of law.

20

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

DATED:  March 25, 2026         Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By:         /s/ Kayleigh Andersen
            Eugene P. Ramirez, Esq.
            Kayleigh Andersen, Esq.
            Angela Brunson, Esq.
            Attorneys for Defendants, COUNTY OF
            SAN BERNARDINO and DEPUTY
            CHRISTOPHER ALFRED

21

*Certificate of Compliance with L.R. 11-6.2*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,656 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 25, 2026

By:    /s/ Kayleigh Andersen
        Kayleigh Andersen

---

1

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

**DECLARATION OF KAYLEIGH ANDERSEN**

I, Kayleigh Andersen, declare as follows:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendants, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of Defendants' Renewed Motion for Judgment as a Matter of Law Pursuant to FRCP 50(b).

2.    Attached as **Exhibit 1** is a true and correct copy of a certified copy of the Felony Abstract of Judgment in *People of the State of California v. Steffon Todd Barber*, No. FVI21001312 (San Bernardino County).

3.    Attached as **Exhibit 2** is a true and correct copy of the relevant pages of the transcript of the trial in *People of the State of California v. Steffon Todd Barber*, No. FVI21001312 (San Bernardino County).

4.    Attached as **Exhibit 3** is a true and correct copy of a certified copy of the People's sentencing brief in *People of the State of California v. Steffon Todd Barber*, No. FVI21001312 (San Bernardino County).

5.    Attached as **Exhibit 4** is a true and correct copy of a certified copy of the People's supplemental sentencing brief in *People of the State of California v. Steffon Todd Barber*, No. FVI21001312 (San Bernardino County).

6.    Attached as **Exhibit 5** is a true and correct copy of a certified copy of the Declaration of Kathleen Fultz, District Attorney in support of motion to increase bail in *People of the State of California v. Steffon Todd Barber*, No. FVI21001312 (San Bernardino County).

7.    Pursuant to Local Rule 7-3, on or about March 17, 2026, I and my co-counsel, Eugene Ramirez, met and conferred with Plaintiff's counsel, Renee

2

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Masongsong, regarding the substance of this motion. Mr. Ramirez spoke with Ms. Masongsong via telephone, and I followed up with her via email.  The parties were unable to come to an agreement, thereby necessitating the need for this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of March, 2026, at Los Angeles, California.

/s/ Kayleigh Andersen
Kayleigh Andersen

MANNING | KASS

3

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b); MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**