Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
 *kayleigh.andersen@manningkass.com*
Angela Brunson (State Bar No. 189223)
 *Angela.Brunson@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>              Plaintiff,<br><br>       v.<br><br>COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. 5:22-cv-00625-KK-DTBx<br><br>*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*<br><br>**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**<br><br>*Filed Concurrently:*<br>*1. Request for Judicial Notice In Support; and*<br>*2. [Proposed] Order*<br><br>Judge:   Hon. Kenly Kiya Kato<br>Date:    May 7, 2026<br>Time:    9:30 a.m.<br>Crtrm.:  3; 3rd Floor |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 7, 2026 at 9:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Hon. Kenly Kiya Kato, located in the United States Courthouse, 3470 Twelfth Street, Riverside, CA 92501, Defendants County of San Bernardino and Deputy Christopher Alfred ("Defendants") will and hereby do move this Court for a new trial pursuant to Federal Rule of Civil Procedure 59 ("Rule 59") (the "Motion").[1]

This Motion is made upon the following grounds:

1.     The clear weight of the evidence is against the jury's findings in favor of the Plaintiff;

2.     The Court's erroneous evidentiary rulings substantially prejudiced the Defendants; and

3.     The jury's award of damages was excessive and clearly not supported by the evidence, and based on speculation or guesswork resulting in compensatory damages that have turned punitive.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Kayleigh A. Andersen and exhibits filed concurrently herewith, the request for judicial notice, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

**STATEMENT REGARDING CONFERENCE OF COUNSEL**

Pursuant to Civil Local Rule 7-3, counsel for the Defendants met and conferred with Plaintiff's counsel on March 17, 2026 via telephone and email to discuss the substance of the Defendants' instant motion and were unable to reach a resolution, necessitating the need for this Motion.

---

[1]     Defendants have also concurrently filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b).

2

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

DATED:  March 25, 2026           Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By: _____/s/ Kayleigh Andersen_____
Eugene P. Ramirez
Kayleigh Andersen
Angela Brunson
Attorneys for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

**MANNING | KASS**

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I. INTRODUCTION .................................................................................................... 1

II. LEGAL STANDARD ............................................................................................ 2

III. THE JURY'S VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE ...................................................................................................... 3

    A.    The evidence at trial does not support plaintiff's excessive force claim. ........................................................................................................ 3

    B.    Deputy Alfred is entitled to qualified immunity. .................................... 6

    C.    Plaintiff's state law claims (battery, negligence, violation of Bane Act, and intentional infliction of emotional distress) also fail. ........................................................................................................... 6

IV. THE COURT'S ERRONEOUS EVIDENTIARY RULINGS SUBSTANTIALLY PREJUDICED THE DEFENDANTS ............................ 8

    A.    The Court prejudicially erred in excluding evidence of plaintiff's criminal history. ........................................................................ 9

        1.    *Barber's underlying criminal conviction was admissible and relevant, and this Court prejudicially erred in concluding otherwise.* ................................................................. 9

        2.    *The Court prejudicially erred in barring Defendants from cross-examining Plaintiff about his criminal history after he opened the door to it.* ..................................................... 11

    B.    The Court prejudicially erred in limiting Dr. Vilke's testimony. ......... 11

    C.    The Court prejudicially erred in permitting testimony of future economic damages. ................................................................................ 13

    D.    The Court prejudicially erred in denying defendants' MIL No. 2 to exclude Robert Morales's testimony. ............................................... 14

V. THE JURY'S DAMAGES AWARD WAS EXCESSIVE ................................. 17

VI. CONCLUSION ................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002)................................................................................................18

*Barillas v. City of Los Angeles*, No. CV 18-08740-CJC (ASX), 2021 WL 4434977 (C.D. Cal. Apr. 12, 2021).................................................15

*Bell v. Williams*, 108 F.4th 809 (9th Cir. 2024) .....................................17, 18

*Bennett By & Through Bennett v. Hosp. Corp. of Am.*, 912 F.2d 468 (9th Cir. 1990)................................................................................................18

*Bergen v. F/V St. Patrick,* 816 F.2d 1345 (9th Cir.1987)............................11

*Boyd v. City & County of San Francisco*, 576 F.3d 938 (9th Cir. 2009) ..................10

*Burgess v. Premier Corp.,* 727 F.2d 826 (9th Cir.1984)..............................11

*Castro v. Poulton*, No. 215CV1908JCMGWF, 2017 WL 3723651 (D. Nev. Aug. 29, 2017)..................................................................................15

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994)..........................................3, 9

*Chinaryan v. City of Los Angeles*, 113 F.4th 888 (9th Cir. 2024).............7, 8

*City of Panama*, 101 U.S. 453 (1879) .......................................................19

*Del Monte Dunes v. City of Monterey*, 95 F.3d 1422 (9th Cir. 1996).........17

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) ..................................9

*Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952 (9th Cir. 1998) .........15

*Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) ..............................................................................3

*Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614 (9th Cir. 2023)................3

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829 (9th Cir. 2014)...............................................................................................2

*Fenner v. Dependable Trucking Co.,* 716 F.2d 598 (9th Cir. 1983) ..................17, 18

*Georges v. Novartis Pharms. Corp.*, 988 F. Supp. 2d 1152 (C.D. Cal. 2013)..........19

*Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011) .........12

ii

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*Graham v. Connor,* 490 U.S. 386 (1989) ........................................................3, 6, 9, 10

*Grunenthal v. Long Island R. Co.*, 393 U.S. 156 (1968)....................................14, 18

*Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825 (9th Cir. 2001) ............15

*Hawkins v. United States*, 30 F.3d 1077 (9th Cir. 1994)........................................17

*Heath v. Cast*, 813 F.2d 254 (9th Cir. 1987) ........................................................10

*Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002)..................................13

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022) ............................................7

*Hunter v. Bryant*, 502 U.S. 224 (1991) ..............................................................5

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295 (N.D. Cal. 2022)......................................................................................................13

*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999) .........................15, 16, 17

*Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) ..................................................5

*Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) ...........3

*Losee v. City of Chico,* 738 F. App'x 398 (9th Cir. 2018)........................................7

*Malley v. Briggs*, 475 U.S. 335 (1986)................................................................6

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007) .......................................2

*Obrey v. Johnson,* 400 F.3d 691 (9th Cir. 2005)...................................................8

*Parle v. Runnels*, 505 F.3d 922 (9th Cir. 2007) ...................................................3

*Peraza v. Delameter*, 722 F.2d 1455 (9th Cir. 1984)............................................10

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012)..........13

*Ruelas v. Cnty. of Alameda*, 108 F.4th 1208 (9th Cir. 2024) .................................14

*Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323 (9th Cir. 1995)..............................8

*Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017) ...........................6

*Sutton v. Earles*, 26 F.3d 903 (9th Cir. 1994)......................................................14

*Tennessee v. Garner*, 471 U. S. 1 (1985) .............................................................3

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009) ...................6

*United States v. Amaral*, 488 F.2d 1148 (9th Cir. 1973)...................................16, 17

*United States v. Bailey,* 696 F.3d 794 (9th Cir. 2012) ............................................8

iii

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*United States v. Felix,* 17-cr-009, 2019 WL 2744621 (S.D. Ohio, July 1, 2019)........................................................................................................16

*United States v. Frederick*, 78 F.3d 1370 (9th Cir. 1996)..............................3

*United States v. Gay*, 967 F.2d 322 (9th Cir. 1992) ....................................10

*Valenzuela v. City of Anaheim*, 29 F.4th 1093 (9th Cir. 2022) ..................19

*W. Gas Const. Co. v. Danner*, 97 F. 882 (9th Cir. 1899) ...........................19

*Walden v. United States*, 31 F. Supp. 2d 1230 (S.D. Cal. 1998)................14

*Watec Co. v. Liu,* 403 F.3d 645 (9th Cir. 2005) .........................................17

## STATE CASES

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) .....................................7

*Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) ...................................7

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009)......................................................8

## OTHER AUTHORITIES

CALCRIM 875, "Assault with a Deadly Weapon or Force Likely to Produce Great Bodily Injury" (Pen. Code §§ 245(a)(1).................................................9

Ninth Circuit Model Civ. Jury Instruction No. 1.10 ("What Is Not Evidence").......18

Westlaw Personal Injury Valuation Handbook ..................................19, 20

## RULES

Fed. R. App. P. 32-1 .......................................................................................7

Fed. R. Civ. P. 26...........................................................................................12

Fed. R. Civ. P. 37...........................................................................................12

Fed. R. Civ. P. 59.............................................................................................2

Fed. R. Evid. 401 .............................................................................................9

Fed. R. Evid. 402 .............................................................................................9

Fed. R. Evid. 404 ...........................................................................................10

Fed. R. Evid. 609 ...........................................................................................10

iv

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Fed. R. Evid. 702 ...................................................................................................... 15, 16

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE
OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS
AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case arises out of a shooting that occurred on April 27, 2021 in Adelanto, California, when Plaintiff Steffon Barber accelerated a vehicle in reverse at Deputy Christopher Alfred, and Deputy Alfred fired shots to stop the threat.  At trial, the jury found that Deputy Alfred used excessive force against Plaintiff, and additionally found for Plaintiff on his state law causes of action (battery, negligence, Bane Act violation, intentional infliction of emotional distress). *Id.* The jury found that Plaintiff was comparatively negligent for his injuries, allocating 36% responsibility to Plaintiff and 64% to Deputy Alfred. *Id*. The jury found for the County on Plaintiff's *Monell* cause of action. *Id.* The jury awarded Plaintiff $27,350,000 in total damages: $7,250,000 in past pain and suffering and emotional distress; $18,250,000 in future pain and suffering and emotional distress; and $1,850,000 in future economic loss. *Id*.

Simultaneously with their renewed motion for judgment as a matter of law ("Rule 50(b) Motion"), Defendants County of San Bernardino and Deputy Alfred ("Defendants") move for a new trial with respect to the jury's findings for the Plaintiff. If the Court denies the Defendants' request for judgment as a matter of law, the Court should, at a minimum, grant the Defendants' motion for a new trial on the following grounds.

***First***, the clear weight of the evidence is against the jury's findings. Deputy Alfred's use of force was objectively reasonable: the entire encounter lasted only 10 to 12 seconds; Plaintiff had already been criminally convicted of assault with a deadly weapon for the same act of reversing his Trailblazer into Deputy Alfred; and Deputy Alfred had no safe means of egress from the narrow driveway. The verdicts on the state law claims *rise and fall with the* flawed verdict on the § 1983 claim.

***Second***, the Court's erroneous evidentiary rulings substantially prejudiced the

1

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Defendants. For example, the Court excluded Plaintiff's California Penal Code § 245(a)(1) conviction—directly relevant to objective reasonableness, Plaintiff's intent, and comparative fault—while simultaneously admitting the testimony of Plaintiff's reconstruction expert, Robert Morales, who lacked the training or experience in ballistics, biomechanics, police practices, or forensic audio analysis necessary to reconstruct an officer-involved shooting. The Court also erroneously excluded Dr. Vilke's timely-disclosed opinion regarding Plaintiff's failure to mitigate, gutting Defendants' mitigation defense.

**Third**, the $27,350,000 damages award was grossly excessive and the product of passion and prejudice. The future damages rested entirely on counsel's unsupported closing argument, with no actuarial evidence, employment history, or future medical cost testimony in the record. The total award is nearly seven times the mean and nineteen times the median of comparable verdicts in California federal courts—and exceeds all such awards combined.

For the reasons set forth herein, the Court should (1) grant the Defendant's Motion; or (2) deny the Motion on the condition that Plaintiff accept a remittitur and that judgment be entered in that lesser amount of damages which the court considers justified.

## II.   LEGAL STANDARD

A party may move for a new trial on grounds that have been historically granted, such as "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Fed. R. Civ. P. 59; *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal citations omitted). In considering a Rule 59 motion, the district court can weigh the evidence and make credibility determinations. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014). The Court need not view the evidence from the perspective most favorable to the prevailing party.

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

Importantly, each error at trial should not be viewed in isolation since "[t]he cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  The "overall effect of all the errors in the context of the evidence introduced at trial against the defendant" is far more effective than "a balkanized, issue-by-issue harmless error review."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

## III.    THE JURY'S VERDICT WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE

### A.    The evidence at trial does not support plaintiff's excessive force claim.

Whether a use of force is constitutional under the Fourth Amendment must viewed from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Constitutional violations do not rise and fall on a fraction of a second."  *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 816 (9th Cir. 2025) (Nelson, J., concurring in part, dissenting in part).

Here, the clear weight of the evidence shows that Deputy Alfred's use of force was objectively reasonable under the totality of the circumstances.  Plaintiff posed a serious and immediate threat to Deputy Alfred by unexpectedly reversing his Trailblazer into Deputy Alfred when Deputy Alfred had no means of ***safely*** moving out of the Trailblazer's path.  *Tennessee v. Garner*, 471 U. S. 1, 11 (1985); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) ("the most important single element is … whether the suspect poses an immediate threat to the safety of the officers or

3

others").

It was undisputed that *mere seconds* passed between the time that Deputy Alfred's first words to Plaintiff were spoken to the time the last shot was fired. Tr. II: 257:17-22. Indeed, Deputy Alfred testified that the *entire incident only lasted about 10-12 seconds*. *Id.* The clear weight of the evidence also showed that if Deputy Alfred could have safely moved out of the way of Plaintiff's reversing Trailblazer, there would have been no reason for him to shoot. Tr. II: 236:24-25; 242:7-10. Deputy Alfred acted reasonably by responding to the call and properly investigating. *See* Testimony of Scott DeFoe at Tr. II: 312:1-7, 11-13 ("landlord/tenant type civil dispute"; "it was the neighbor … not letting them enter their residence"); 312:7-8 ("no weapons involved"); 352:20-353:4 (Deputy Alfred investigating the call, including attempting to make contact with plaintiff); and 346:22-347:3 (back up not required).

Furthermore, Plaintiff's testimony about not knowing that Deputy Alfred was a police officer, or that Deputy Alfred was behind his Trailblazer in the driveway, was simply not credible. Plaintiff saw his neighbors completely exit the driveway. Tr. III: 478:19-479:5. Plaintiff's claim about not hearing Deputy Alfred's commands was contradicted by his deposition testimony when he stated that it was the **police** telling him not to leave. *Compare* Tr. III: 479:25; 482:8-10 *with* Tr. III: 480:2-481:15. Plaintiff's claim that he did not know Deputy Alfred was behind his vehicle in the driveway was also contradicted by the fact that Plaintiff claimed that the purpose of leaving his trunk wide open was so the light "could illuminate the whole – driveway because it's dark," and also his confirming that he told someone to "back the fuck up." *Compare* Tr. III: 485:25-486:2 *with* Tr. III: 486:19-488:5; Tr. III: 484:24-25. Plaintiff's lack of credibility was further evidenced by Plaintiff's non-answer of "I don't know. I can't … give you an answer to that" when defense counsel asked him, why he would say to someone "back the fuck up" if he was only

4

trying to reverse the vehicle but did not know anyone was in the driveway.  Tr. III: 485:7-15.

Since Deputy Alfred's **only** option was to cross the narrow driveway behind the vehicle in order to move out of the way of the reversing Trailblazer, this placed him in the pathway of the Trailblazer and in **greater danger** (Tr. II: 250:6-7). Plaintiff ignored Deputy Alfred's commands.  Despite the fact that the light of the vehicle illuminated the driveway, Plaintiff still chose to reverse the vehicle back into Deputy Alfred who stood behind the Trailblazer.  Tr. III: 483:15-488:5. Even if Deputy Alfred could have made it through the opening in the fence, he still could not have reached safety because the vehicle could have easily knocked down the fence.  Tr. II: 258:3-4.

Deputy Alfred reasonably feared being injured or killed by the reversing vehicle, and Plaintiff was convicted of assault with a deadly weapon for committing the very act that placed Deputy Alfred in that reasonable fear.  Tr. II: 259:13-15. Deputy Alfred had the right to defend himself from an imminent threat of death or serious bodily injury, and he was not required to stop shooting until the threat ceased.  Tr. II: 358:7-359:10.  Deputy Alfred used the force necessary to stop the threat and shot at the Trailblazer until it stopped moving; the vehicle was in motion during the full course of fire.  Tr. II: 227:3-4, 227:10-11.

Even though Scott DeFoe (Plaintiff's police practices expert) disagreed with Deputy Alfred's assessment of the situation, his *opinion* did not render Deputy Alfred's actions unreasonable.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (the question is whether the officer "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed …  after the fact"); *Lal v. California*, 746 F.3d 1112, 1118 (9th Cir. 2014).  Furthermore, for the reasons set forth in Section IV.D, the testimony of Plaintiff's expert, Robert Morales—regarding how many feet the

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Trailblazer travelled before the first shot and between each shot fired—was not credible. Both Mr. DeFoe's and Mr. Morales' assessments are the type of 20/20 hindsight that is explicitly prohibited in adjudicating excessive forces claims under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

**B.** **Deputy Alfred is entitled to qualified immunity.**

The clear weight of the evidence demonstrates that Deputy Alfred is entitled to qualified immunity. Plaintiff failed to establish that Deputy Alfred violated a statutory or constitutional right and that the right was clearly established at the time of the challenged conduct. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *Malley v. Briggs*, 475 U.S. 335, 3441 (1986) (qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").[2] Barber's conduct constituted assault with a deadly weapon, which is undisputed on this factual record. Barber has failed to identify "sufficiently specific constitutional precedents" to alert Deputy Alfred that his particular conduct (defending against a threat to his life from a vehicle accelerating in his direction) was unlawful. *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (reversing and vacating jury verdict and damages awards); *Zorn v. Linton*, No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026) ("relevant precedent must define the right with a 'high degree of specificity' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply'").

**C.** **Plaintiff's state law claims (battery, negligence, violation of Bane Act, and intentional infliction of emotional distress) also fail.**

As set forth above, Deputy Alfred's actions were reasonable under the totality

---

[2] Defendants hereby incorporate by reference their arguments set forth in the concurrently-filed Rule 50(b) motion that addresses qualified immunity.

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

of the circumstances. Thus, for the same reasons that verdict on Plaintiff's § 1983 claim is not supported by the clear weight of the evidence, the jury's verdicts for battery and negligence are similarly flawed. *See Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009) (standard for proving battery is the same standard applied to § 1983 actions and is highly deferential to the police officer's need to protect himself); *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 632 (2013) ("[t]he reasonableness of an officer's conduct is determined in light of the totality of circumstances").

The jury's verdict on Plaintiff's claim for violation of the Bane Act also cannot stand. "[T]he elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (citing *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)); *Losee v. City of Chico,* 738 F. App'x 398, 401 (9th Cir. 2018) ("a constitutional violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent requirement under the Bane Act")). "An officer acts with the requisite specific intent if the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case, and the officer commit[s] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024) (internal citations omitted) *cert. denied sub nom. Cueto v. Chinaryan*, 145 S. Ct. 1927, 221 L. Ed. 2d 667 (2025).

As the clear weight of the evidence is against the finding of excessive use of force, there can be no Bane Act violation either. There was no evidence of Deputy Alfred's "specific intent" because, as set forth above, the Plaintiff's constitutional rights were not clearly delineated and Deputy Alfred did not shoot at Plaintiff with

7

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

the purpose of depriving Plaintiff of his constitutional rights. *Chinaryan*, 113 F.4th at 907.

Finally, the clear weight of the evidence does not support the jury's verdict on Plaintiff's intentional infliction of emotional distress claim. There was no evidence that Deputy Alfred's conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community" nor that Deputy Alfred had the "intent to cause, or reckless disregard for the probability of causing, emotional distress." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). Moreover, Plaintiff did not present evidence that he ever sought treatment for any alleged mental and emotional distress. *See, generally,* Plaintiff's testimony at Tr. III: 460:1-500:3.

## IV.   THE COURT'S ERRONEOUS EVIDENTIARY RULINGS SUBSTANTIALLY PREJUDICED THE DEFENDANTS

When erroneous evidentiary rulings substantially prejudice a party, a new trial is warranted. *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995) (internal citations omitted). The court first considers whether the evidentiary ruling was improper, and then considers whether the error was harmless. *United States v. Bailey,* 696 F.3d 794, 802–03 (9th Cir. 2012).

Under the harmless error standard, the court must grant a new trial due to an erroneous evidentiary ruling "unless it is more probable than not that the error did not materially affect the verdict." *Obrey v. Johnson,* 400 F.3d 691, 701 (9th Cir. 2005) (quotations omitted). The court "begin[s] with a presumption of prejudice." *Id.* "That presumption can be rebutted by a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had been admitted." *Id.* "The party benefitting from the error has the burden of persuasion," and "in cases of equipoise," the court must reverse. *Id.*

8

## A. The Court prejudicially erred in excluding evidence of plaintiff's criminal history.

### 1. *Barber's underlying criminal conviction was admissible and relevant, and this Court prejudicially erred in concluding otherwise.*

The Court erred in excluding Plaintiff's conviction for violating Penal Code § 245(a)(1) based upon Barber reversing his Trailblazer into Deputy Alfred. Prejudice resulted because the conviction made it more probable that Deputy Alfred's use of force was objectively reasonable, Fed. R. Evid. 401, 402; *Graham v. Connor,* 490 U.S. 386, 397 (1989). Not only was the criminal conviction erroneously discarded for purposes of Defendants' *Heck* arguments (which itself mandates entry of judgment as a matter of law for Defendants), the Court excluded it from the trial altogether. It was systematically swept under the carpet at virtually every turn, and for every purpose, resulting in a one-sided trial in which the jury was kept in the dark about critically probative evidence.

Plaintiff's conviction is evidence that he posed an immediate threat to Deputy Alfred, which is "the most important factor" in the calculus of reasonableness. *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994); Fed. R. Evid. 401, 402. Also, the nature and elements of Plaintiff's conviction—which required a finding that Plaintiff acted "willfully" and with awareness that his reversing his Trailblazer would likely result in great bodily injury to Deputy Alfred (regardless of whether Plaintiff was aware that he was a police officer)—were a vitally important consideration in whether Deputy Alfred's use of force was justified. Dkt. 99-1, 99-2; CALCRIM 875, "Assault with a Deadly Weapon or Force Likely to Produce Great Bodily Injury" (Pen. Code § 245(a)(1).); *cf. Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) ("Ultimately, [the defendant] was charged with **nothing more than** obstructing police in the performance of their duties" (emphasis added)).

Plaintiff's conviction is also relevant to what Deputy Alfred perceived prior to

9

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

his use of force—i.e., that Plaintiff was intentionally reversing the Trailblazer at Deputy Alfred; that it was not practical for Deputy Alfred to give advance warning of his use of force; and that Plaintiff was attempting to evade arrest or flee. *Graham v. Connor,* 490 U.S. 386 (1989); *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009).

The Court also erred in excluding Plaintiff's criminal record. First, Plaintiff's criminal record is relevant to the determination of damages. *Boyd v. City & Cnty. of San Francisco,* 576 F.3d 938, 944 (9th Cir. 2009) (decedent's past incarceration relevant to issue of damages); *Peraza v. Delameter*, 722 F.2d 1455 (9th Cir. 1984) (admitting evidence of plaintiff's subsequent encounters with police as relevant to issue of damages). Second, Plaintiff's criminal record is relevant to demonstrating Plaintiff's bias against police officers and Plaintiff's motive in bringing the lawsuit. The jurors should have been allowed to hear this evidence and decide the existence and extent of Plaintiff's anti-police bias and whether this had any effect on his actions. Fed. R. Evid. 404(b); *Heath v. Cast*, 813 F.2d 254, 259 (9th Cir. 1987). Third, Plaintiff's criminal record was relevant for impeachment. Fed. R. Evid., 609; *United States v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992). Lastly, Plaintiff's criminal history was relevant to Defendants' argument regarding mitigation, as the Court noted this in ruling on excluding Dr. Vilke's testimony regarding Plaintiff's regression. *See* Section C below. Tr. V: 776:5-15 ("the argument regarding mitigation … gets into my order on the motions in limine, because [the Court's] understanding is that [Plaintiff] refused physical therapy while in prison because of the restraints and conditions of that therapy. … [S]o to simply say that he declined therapy without a full explanation of why under the circumstances … does not present a full picture.")

The prejudice to Defendants from these erroneous evidentiary rulings was palpable. Even without the conviction and criminal history, the jury concluded that

10

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Plaintiff was 36% responsible. With both his conviction and criminal record in evidence, Defendants would have likely prevailed at trial, or at the very least, the jury would have allocated a substantially greater percentage of fault to Plaintiff than it did.

2.    *The Court prejudicially erred in barring Defendants from cross-examining Plaintiff about his criminal history after he opened the door to it.*

A court may properly admit testimony that was previously ruled to be inadmissible when a party raises that topic himself. *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1352 (9th Cir. 1987) (counsel waives right to object when he elicits inadmissible evidence during his examination); *Burgess v. Premier Corp.,* 727 F.2d 826, 834 (9th Cir. 1984) (party who first raised the subject himself on cross-examination opened the door to questioning about the topic) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[02] at 12–15 (1982) (attorney can waive client's right to raise error on appeal by eliciting inadmissible evidence himself).

Here, defense counsel never asked Plaintiff about his criminal history or incarceration, but Plaintiff opened the door on cross-examination by stating that he was "being **chained** in a room" during physical therapy (Tr. III: 496:10-11 [emphasis added]), and he "[had] a walker **in prison**" (Tr. III: 496:15-16 [emphasis added]). Thus, the Court erred in failing to permit defense counsel to ask questions to Plaintiff about his conditions of confinement as it related to both the basis for his conviction as well as his failure to mitigate damages. The jury did not get the full story, and this error was therefore prejudicial in that the jury likely would have returned a verdict more favorable to the defense had it not occurred.

**B.    The Court prejudicially erred in limiting Dr. Vilke's testimony.**

With respect to defense expert Dr. Vilke's testimony, the Court initially ruled that Dr. Vilke's testimony "would be ***within the bounds of the report*** and those two opinions just stated on the record[ and review of the medical records]". Tr. IV:

11

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

739:19-23 (emphasis added); Declaration of Kayleigh Andersen ("Andersen Decl."), ¶ 2, Ex. A.  Thereafter, the Court reversed course and excluded Dr. Vilke's opinion with respect to Plaintiff's regression resulting from his not following physical therapy recommendations.  Tr. V: 774:21-775:21; Andersen Decl., ¶ 2, Ex. A, p. 14.  Specifically, the Court opined that "Mr. Barber's regression and progress is likely due to his lack of following physical therapy recommendations from the hospital, as well as refusing physical therapy treatments while in jail, **that has nothing to do with [opinion 1]**."  Tr. V: 774:21-775:21 (emphasis added).  Given this ruling, and making the best of a bad situation, defense counsel strategically came to an agreement with plaintiff's counsel to admit only one paragraph of Dr. Vilke's report.

The Court's exclusion of Dr. Vilke's testimony was erroneous.  The Court allowed evidence of Plaintiff's ***progression*** with physical therapy, which was included as a basis of Dr. Vilke's opinion 1 (*see* Andersen Decl., ¶ 2, Ex. A, p. 14, first full paragraph ("progression" and "improvement"); thus, the Court should have also admitted Dr. Vilke's analysis regarding  the "regression in progression" (*id.* at last full paragraph).)  In addition, Dr. Vilke's opinion regarding regression was clearly included as a part of his review of the Plaintiff's medical records, and (*id.,* last full paragraph ("in reviewing the jail medical record")).

In addition, because defense counsel fully complied with Federal Rule of Civil Procedure 26 by timely disclosing Dr. Vilke as an expert witness and producing his report, the Court's erroneous ruling amounted to an improper sanction on the basis of a technicality. Fed. R. Civ. P. 26, 37; *cf. Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (failure to timely disclose expert reports was not substantially justified nor harmless and thus warranted exclusion). The Court conceded that had Dr. Vilke added an additional heading in his report with respect to regression, the Court would not have excluded this opinion.  This type of error did not warrant exclusion because it was inadvertent, did not alter the

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

substance of Dr. Vilke's opinions, nor prejudice Plaintiff in any way. *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1314 (N.D. Cal. 2022) (inadvertent errors that do not affect substance of expert's opinions do not warrant preclusion of expert's testimony).

The Court's erroneous exclusion of Dr. Vilke's regression opinion substantially prejudiced Defendants, dealing a fatal blow to their mitigation defense. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (even when party failed to timely comply with Rule 26 in producing evidence, evidence preclusion not warranted as it would deal a fatal blow to the plaintiff's claim for fees and punitive damages, amounting to dismissal of claim).  The Court noted on the record that: "the argument regarding mitigation … gets into my order on the motions in limine, because [the Court's] understanding is that [Plaintiff] refused physical therapy while in prison because of the restraints and conditions of that therapy. … [S]o to simply say that he declined therapy without a full explanation of why under the circumstances … does not present a full picture." Tr. V: 776:5-15.  But for the Court's exclusion of Dr. Vilke's testimony regarding the Plaintiff's failure to mitigate, there is a substantial likelihood that the jury would have awarded a materially smaller amount of damages to Plaintiff than it did.

## C.    **The Court prejudicially erred in permitting testimony of future economic damages.**

Future economic damages may be established by past earnings or by expert testimony.  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002) (testimony of certified public accountant as to lost wages and future lost wages); *see also Haddigan v. Hawkins,* 441 F.2d 844 (3d Cir. 1970) ("complete absence of any actuarial evidence of guidance from which the jury could have made the calculation of present worth").  Future economic loss is calculated by the multiplication of a plaintiff's present annual salary over his life expectancy. *Grunenthal v. Long Island*

13

*R. Co.*, 393 U.S. 156 (1968).  In addition, there must be evidence of causation connecting the injury and the loss.  *Sutton v. Earles*, 26 F.3d 903 (9th Cir. 1994) (award of future lost wages to plaintiff after decedent died was clearly erroneous because decedent's cause of death was unrelated to accident that formed basis for plaintiff's suit).

Plaintiff is not entitled to future economic damages.  Plaintiff is currently detained at the Salinas Valley State Prison (Dkt. 133) and, as a prisoner, he is not entitled to wages.  *Ruelas v. Cnty. of Alameda*, 108 F.4th 1208, 1211 (9th Cir. 2024).  In addition, as fully set forth in Defendants' Objection to the Proposed Judgment (Dkt. 206) which the Defendants incorporate by reference, Plaintiff did not testify as to his lost wages or employment during trial.  *Walden v. United States*, 31 F. Supp. 2d 1230, 1235 (S.D. Cal. 1998) ("any claim by plaintiff for … impaired future earning capacity must be supported by concrete evidence").  Plaintiff only testified about participating in "general labor" prior to April 27, 2021. Tr. III: 466:12-14; 492:1-8. When Plaintiff was asked about his employment prior to the incident, Plaintiff's counsel objected and the Court sustained the objection.  Tr. III: 492:9-13.  Thus, Plaintiff did not provide any testimony about his employment.  Finally, Plaintiff presented no evidence of his future medical costs or specific future medical treatment.  *Id.* at 460-500 (Plaintiff's testimony, generally); 505-560 (Dr. Bennet Omalu's testimony, generally).  And Plaintiff failed to provide evidence of causation connecting his injury from the incident and his alleged lost future wages. *Sutton v. Earles*, 26 F.3d 903, 914 (9th Cir. 1994).

**D.     The Court prejudicially erred in denying defendants' MIL No. 2 to exclude Robert Morales's testimony.**

When the Court properly excluded Mr. Morales from testifying as to ballistics evidence (*see* Dkt. 158, p. 5), Mr. Morales could no longer qualify as an expert in incident/accident reconstruction.  The only area in which Mr. Morales qualifies as

14

an expert is *automobile accident reconstruction*, but without expertise in police practices, ballistics, biomechanics, or forensic audio (not video) analysis, Mr. Morales was unqualified to testify as an expert in reconstruction of the April 27, 2021 incident, as it included equipment outside of his knowledge, skill, experience, training, or education. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999) (expert testimony must have "a reliable basis in the knowledge and experience of [the relevant] discipline" (internal citations omitted)); *compare Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998) (expert in plane crash reconstruction properly admitted as an expert because of his experience with instrumentation analysis and electronic equipment) *with Barillas v. City of Los Angeles*, No. CV 18-08740-CJC (ASX), 2021 WL 4434977, at *12 (C.D. Cal. Apr. 12, 2021) (expert with no scientific or technical knowledge related to forensics cannot opine on blood-splatter analysis) *and Castro v. Poulton*, No. 215CV1908JCMGWF, 2017 WL 3723651, at *3 (D. Nev. Aug. 29, 2017) (despite having 26 years of traffic accident experience, expert excluded because he had no experience in staged accidents).

First, without knowledge, skill, experience, training or education in *ballistics*, Mr. Morales' conclusions were speculative and conjectural. *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (excluding testimony without sufficient basis in facts). For example, Mr. Morales failed to substantiate his speculative conclusions as to how many feet Plaintiff's Trailblazer had travelled in the driveway in relation to Deputy Alfred before the first shot was fired and at the time each subsequent shot was fired. Tr. III: 411:3-19; 423:9-424:14; 427.

In addition, without knowledge, skill, experience, training or education in biomechanics or police practices, Mr. Morales' comments on Deputy Alfred's walking speed were also baseless. Tr. III: 425:14-426:20. For this reason, his conclusion that Deputy Alfred *could have moved out of the way* of the reversing

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Trailblazer—and that Deputy Alfred had enough time to find cover instead of shooting—were nothing more than opinions "within the full understanding of the average man." *United States v. Amaral*, 488 F.2d 1148, 1152–53 (9th Cir. 1973). Moreover, these opinions were legally irrelevant because there is no duty to retreat under California law. Cal. Pen. Code § 835a(d) ("A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested."); *see Reed v. Hoy*, 909 F.2d 324, 331 (9th Cir. 1989) (concluding duty to retreat would "be inconsistent with police officers' duty to the public"), *overruled on other grounds by Virginia v. Moore*, 553 U.S. 164, 175 (2008).

Finally, Mr. Morales had no knowledge, skill, experience, training, or education in forensic audio analysis. Fed. R. Evid. 702; *Kumho Tire,* 526 U.S. at 149. Mr. Morales's only identified training was in forensic **video** (not audio) analysis. *Compare* Dkt. 108, pp. 81-86 (Morales' curriculum vitae) *with* Andersen Decl., ¶ 3, Ex. B, p. 25 (expert was qualified . . . "in the fields of sound perception and source localization", having "presented papers related to audio analysis of gunshot and related to the physics of earwitness accounts" and "was the principal investigator and chief consulting contractor for the FBI's Forensic Audio and Video Analysis Unit on acoustic gunshot analysis for five years."); *see also* Request for Judicial Notice ("RJN"), Ex. 1; and *United States v. Felix,* 17-cr-009, 2019 WL 2744621 at *3 (S.D. Ohio, July 1, 2019) (qualifying witness as "expert in the science of audiology and voice analysis, such that he has the relevant expertise to testify regarding the scientific characteristics of speech, acoustics, and audiology, as well as verifiable analytic technology used within those fields[, but excluding him as an expert in] witness memory, victim perception, or law enforcement procedure.) Even at trial, Mr. Morales admitted that his audio analysis is in **conjunction with video only**, and **not separately in audio only**. Tr. III: 445:18-446:5; 446:13-16

16

(when asked about training in the field of audio analysis, Mr. Morales answered with his training in video analysis and audio analysis as a part of it).

Lastly, Mr. Morales' qualifications were limited to automobile accidents. His opinions and testimony lacked sufficient basis in the multiple disciplines required to reconstruct this incident; accordingly, his opinions were purely speculative and conjectural and failed to inform the jury about matters not within the full understanding of the average person. Fed. R. Evid. 702; *Kumho Tire,* 526 U.S. at 149; *United States v. Amaral*, 488 F.2d 1148, 1152–53 (9th Cir. 1973).

## V.    THE JURY'S DAMAGES AWARD WAS EXCESSIVE

Compensatory damages are meant to make the plaintiff whole, not to allow them to win the litigation lottery. *Hawkins v. United States*, 30 F.3d 1077, 1083–84 (9th Cir. 1994). "There 'must be an upper limit' to every damages award." *Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024) (citing *Gasperini v. Ctr. for Humans.*, Inc., 518 U.S. 415, 435 (1996).) "Otherwise, if left unrestrained, compensatory damages awards could go beyond their compensatory function and ***turn punitive***." *Id.* (emphasis added).

Thus, a court may grant a new trial where the amount of damages is "grossly excessive . . . clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). "[N]o verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice." *Watec Co. v. Liu,* 403 F.3d 645, 655 (9th Cir. 2005) (internal citations omitted).

In determining that a damages award is excessive, the Court "may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner v. Dependable Trucking Co.,* 716 F.2d 598, 603 (9th Cir. 1983) (footnote omitted). "The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of

17

damage which the court considers justified." *Id.* "If the prevailing party does not consent to the reduced amount, a new trial must be granted. If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

Several factors are considered in determining whether a damages award is excessive, but evidence presented at trial and awards in comparable cases are particularly relevant. *Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024).

First, evidence presented at trial is relevant "because damages awards, especially emotional distress damages awards, are fact-dependent." *Id.* While "[e]vidence supporting an emotional damages award may consist of nothing more than oral testimony … [o]ther evidence may also be relevant, including related economic damages such as loss of income and documentation of medical treatment or conditions caused by the distress; … and physical injuries caused by the distress." *Id.* Second, "awards in previous cases that are 'similar enough to serve as a meaningful benchmark' may provide insight in determining whether an award was within reasonable bounds." *Id.*

Here, the damages award is grossly excessive and clearly not supported by the evidence. First, as to the jury's award of $18,250,000 in future pain and suffering and emotional distress and $1,850,000 in future economic loss, the Plaintiff's failure to provide evidence of post-injury lifespan is fatal to any concrete calculation of future damages. *See Grunenthal v. Long Island R. Co.*, 393 U.S. 156, 158 (1968). The jury's award was therefore based solely on Plaintiff's counsel's closing argument suggesting that Plaintiff was expected to live for another 33 years. *See* Tr. V: 850:24; 851:16 ("33 years"); *see also* Ninth Circuit Model Civ. Jury Instruction No. 1.10 ("What Is Not Evidence" . . . "Arguments and statements by lawyers are not evidence"); *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("the arguments and statements of counsel are not evidence") (quotations omitted).

18

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

Second, even if there were evidence of Plaintiff's post-injury lifespan, the jury's $1,850,000 award for future economic loss was speculative, as there was no evidence presented at trial of Plaintiff's wages or employment history. *See* Section IV.C, above; *cf. Georges v. Novartis Pharms. Corp.*, 988 F. Supp. 2d 1152, 1161 (C.D. Cal. 2013) (plaintiff presented evidence of past medical expenses setting a baseline for reasonable medical expenses necessary to treat his condition).

Third, as to pain and suffering, while "there is no precise rule for estimating damages for bodily pain and suffering," *W. Gas Const. Co. v. Danner*, 97 F. 882, 890 (9th Cir. 1899), the damages "must be left to turn mainly upon the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is a just compensation for the injuries inflicted." *The City of Panama*, 101 U.S. 453, 464 (1879). A comparison of prior civil verdicts in which a plaintiff was shot and survived can only lead to the conclusion that the jury was swayed by passion or prejudice in awarding the exorbitant noneconomic damages award it did here.

Comparable cases from other district courts in California demonstrate that the jury's damages award is far outside the mainstream. Awards in similar cases— involving excessive force claims in California federal district courts since 2008 against police defendants based on shootings causing bodily injury—have never exceeded $11,300,000. Andersen Decl., ¶ 4, Ex. C; RJN, Ex. 2. The median award in such cases is $4,013,576.33, and the mean is $1,468,979. Thus, the award in this case of $27,350,000 is ***almost seven times*** greater than the mean, and ***almost nineteen times*** greater than the median award. Indeed, the $27,350,000 award is ***greater than all these awards combined***.

Benchmarks for awards can also be identified from the Westlaw Personal Injury Valuation Handbook ("Handbook"), a resource recently endorsed by ten Ninth Circuit judges in a statement respecting the denial of rehearing en banc. *See Valenzuela v. City of Anaheim*, 29 F.4th 1093, 1101 (9th Cir. 2022) (Bea, J.,

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

statement respecting denial of rehearing en banc) (relying on the Handbook in finding verdict excessive).  According to the Handbook, basic injury values (or base value of a specific injury with specific medical expenses) for claims involving complete paraplegia for plaintiffs aged between 30 to 34 ranges from $138,313 and $7,049,065 depending on total medical expense; and incomplete or spastic paraplegia for plaintiffs aged between 30 to 34 ranges from $231,467 to $3,000,000 depending on medical expenses.  *See* Jury Verdict Research Series, Personal Injury Valuation Handbook, Basic Injury Values for Claims Involving Paralysis Injuries, 2011 WL 5528279 at *8, 11.[3]  The Handbook also provides basic injury values for claims of brain injury for male plaintiffs aged 18 years and older, with injury values for mild brain injury ranging from $18,203 to $1,612,500, and injury values for moderate brain injury ranging from $54,820 to $7,521,250.  Jury Verdict Research Series, Personal Injury Valuation Handbook, Basic Injury Values and Adjustments for Claims of Mild and Moderate Brain Injuries, 2011 WL 5528456 at *1, 3.[4]

---

[3] The Handbook defines paraplegia and incomplete or spastic paraplegia as follows:

> Paraplegia is the total paralysis of the lower extremities and, generally, the lower trunk. Paraplegia usually involves bladder and bowel incontinence and a lack of sexual sensation. Incomplete paraplegia is the partial paralysis of the lower limbs and trunk. In cases of incomplete or spastic paraplegia, a plaintiff may have total paralysis of one leg and only partial paralysis of the other, or partial paralysis of both legs.

Jury Verdict Research Series, Personal Injury Valuation Handbook, Basic Injury Values for Claims Involving Paralysis Injuries, Paraplegia, Plaintiffs Age 30-34, 2011 WL 5528279 at *19.

[4] The Handbook defines mild and moderate brain injury as follows:

> For purposes of the analysis, a Mild Brain Injury was defined as one that caused impairment enough to affect the

20

quality of life but not so much as to require on-going care. For example, a person afflicted with a mild brain injury might not be able to continue with his or her current employment but might be able to handle a less demanding or less technical job. In other cases, the injured person might not be able to attain the level of education that was possible prior to injury but would be able to pursue an education at a lower level. Common manifestations of a mild brain injury include, but are not limited to: minor memory loss; memory disturbances; forgetfulness; hyperactivity; personality changes; blackouts; irritability; nausea; fatigue; concentration deficits; limited loss of speech, hearing, taste, or smell; and balance and coordination problems.

A Moderate Brain Injury is characterized by a more significant loss of quality of life, which may require that the injured person receive assistance or on-going care. Though plaintiffs with moderate brain damage are generally capable of performing most day-to-day activities, their ability to care for themselves is often limited.

Examples of the types of symptoms suffered by individuals with moderate brain damage include: short-term memory loss; visual impairment; profound personality change; learning disabilities which preclude learning new skills; gross motor deficits which significantly impair the ability to ambulate; complete loss of senses of smell or taste and severe speech problems. Cases of moderate brain injury can also include multiple manifestations of a brain injury which individually would be considered symptoms of a mild brain injury but the combination of several manifestations causes significant impairment.

Jury Verdict Research Series, Personal Injury Valuation Handbook, Basic Injury Values and Adjustments for Claims of Mild and Moderate Brain Injuries, 2011 WL 5528456 at *4-5.

21

There can be no doubt that the $7,250,000 damages award for past pain and suffering and emotional distress and $18,250,000 damages award for future pain and suffering and emotional distress is a product of passion, prejudice, and an intent to punish.  There is no basis for valuing Plaintiff's pain and suffering and emotional distress at such an exorbitant level.  This applies equally to the $1,850,000 award in future economic loss, which was not supported by any evidence in the record.

If the Court elects to offer a remittitur, the jury's allocation of 36% fault to Plaintiff for his injuries provides a useful guidepost.  After adjusting for the outsized aggregate award, this Court, in the exercise of its discretion, should apply an additional discount to reflect the jury's determination that Plaintiff was more than one-third responsible for his injuries.

## VI.    CONCLUSION

For the reasons set forth herein, the Court should grant the Defendant's Motion; or deny the Motion on the condition that Plaintiff accept a remittitur and that judgment be entered in whatever lesser amount of damages the Court considers justified.

DATED:  March 25, 2026                    Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

By:  _____/s/ Kayleigh Andersen_____
Eugene P. Ramirez
Kayleigh Andersen
Angela Brunson
Attorneys for Defendant, COUNTY OF
SAN BERNARDINO and DEPUTY
CHRISTOPHER ALFRED

22

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

*Certificate of Compliance with L.R. 11-6.2*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,952 words, which complies with the word limit of L.R. 11-6.1.

DATED:  March 25, 2026

By:   /s/ Kayleigh Andersen
Kayleigh Andersen

1

## DECLARATION OF KAYLEIGH ANDERSEN

I, Kayleigh Andersen, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am a partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of Defendants County of San Bernardino and Deputy Christopher Alfred's Notice of Motion and Motion for New Trial Pursuant to Federal Rule of Civil Procedure 59.

2.     Attached as **Exhibit A** is a true and correct copy of the report of Dr. Gary M. Vilke, M.D., FACEP, FAAEM.

3.     Attached as **Exhibit A** is a true and correct copy of the District Court of Alaska's "Order re: motions in limine to exclude defense expert witnesses" in *United States v. Wells,* 13-cr-00008 (July 17, 2019).

4.     Attached as **Exhibit C** is a table of contents for comparable verdicts and true and correct copies of the following:

    a.     *Bowles v. Police Officer Yo, et al*., JVR No. 2108300020, 2021 WL 3887805 (N.D.Cal.) (Verdict and Settlement Summary);

    b.     *Arias v. Deputy Sheriff Fitch,* JVR No. 1706190024, 2017 WL 2634918 (C..Cal.) (Verdict and Settlement Summary);

    c.     *Lam v. City of San Jose, et al.,* JVR No. 1603250043, 2015 WL 10553208 (N.D.Cal.) (Verdict and Settlement Summary);

    d.     *Allens v. City of Los Angeles*, 50 Trials Digest 15th 4, 2012 WL 6708591 (C.D.Cal.) (Verdict and Settlement Summary);

    e.     *Contreras v. City of Los Angeles*, 6 Trials Digest 16th 3, 2012 WL 7159584 (C.D.Cal.) (Verdict and Settlement Summary); and

2

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

f.   *Gilbert v. City of Los Angeles*, 22 Trials Digest 14th 2, 2011 WL 1873268 (C.D.Cal.) (Verdict and Settlement Summary).

5.   Pursuant to Local Rule 7-3, on or about March 17, 2026, I and my co-counsel, Eugene Ramirez, met and conferred with Plaintiff's counsel, Renee Masongsong, regarding the substance of this motion. Mr. Ramirez spoke with Ms. Masongsong via telephone, and I followed up with her via email.  The parties were unable to come to an agreement, thereby necessitating the need for this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of March, 2026, at Los Angeles, California.

                                                    /s/ Kayleigh Andersen
                                                    Kayleigh Andersen

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**

MANNING | KASS

4

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FRCP 59; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAYLEIGH ANDERSEN AND EXHIBITS**