# EXHIBIT 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CHRISTIAN PINEDA,

      Plaintiff,

v.

CITY OF LOS ANGELES; *et al.*,

      Defendants.

Case No.: 2:21-cv-06470-CBM-ASx

**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS [181]**

The matter before the Court is Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs. (Dkt. No. 181 (the "Motion").) The matter is fully briefed. (Dkt. Nos. 182, 187.)

## I.    BACKGROUND

On May 29, 2020, Plaintiff sustained injuries to his left side while moving backwards with his arms and hands up while attending a protest in Los Angeles.

**A.    Complaint**

On August 11, 2021, Plaintiff filed this action asserting First Amendment and Fourth Amendment claims under 42 U.S.C. § 1983 against the City of Los Angeles, Chief Michel More, and Officer Colton Haney and seeking damages, declaratory judgment and attorneys' fees. *Id.* (Dkt. No. 1.) Plaintiff also brought *Monell* claims against the City for unconstitutional policy, practice, or custom, ratification, and failure to train, supervise, discipline, or correct. *Id.*

1

**B.    Trial and Jury Verdict**

On April 19, 2023, the Case proceeded to trial on Plaintiff's First and Fourth Amendment claims against Officer Haney and Plaintiff's *Monell* claims against the City of Los Angeles and Chief Michel Moore.  (Dkt. No. 138.)  On April 27, 2020, the jury returned its verdict.  The jury found in favor of Plaintiff on his Fourth Amendment claim and his *Monell* claim against the City for failure to properly train its officers to handle the usual and recurring situations with which they would have to deal.  (Dkt. No. 171.)  The jury awarded Plaintiff $85,000 in compensatory damages.  While the jury found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights, they did not award punitive damages.

## II.    STATEMENT OF THE LAW

Plaintiffs seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  Section 1988 provides that in a Section 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  "The purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). (quoting H.R.Rep. No. 94-1558, p. 1 (1976)).

"The Supreme Court has instructed that [t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as the 'lodestar.' Method."  *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal quotation marks and citation omitted).  "Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community."  *Id.* (internal quotation marks and citation omitted.)  "The hours expended and the rate should be supported by adequate documentation and other evidence."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ),

*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011).  The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of the hourly rates requested.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

### III.   DISCUSSION

### A.   Prevailing Party

A "prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Ackerley Commc'ns, Inc. v. City of Salem, Or.*, 752 F.2d at 1394 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)).  Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation mark and citation omitted); *see also* 42 U.S.C. § 1988.  Defendants contest that Plaintiff is the prevailing party, and request that the Court exercise its discretion not to award attorneys' fees because Defendants prevailed on Plaintiff's First Amendment claims and on all claims against Chief Michel Moore.  However, Plaintiff prevailed on his Section 1983 excessive force claim against Defendant Haney and his Section 1983 *Monell* claim against the City for failure to train.  Accordingly, Plaintiff is the prevailing party for purposes of Section 1983.

### B.   Lodestar

Plaintiff seeks $1,257,522.30 in attorneys' fees.  Plaintiffs seek the following:

| Attorney/Biller | | Hours | Hourly Rate | Lodestar x .9 |
| --- | --- | --- | --- | --- |
| Dan Stormer | Attorney | 239.3 | $1,400 | $335,020 |
| Morgan Ricketts | Attorney | 325.8 | $915 | $298,107 |
| Shaleen Shanbhag | Attorney | 80.5 | $800 | $64,400 |

| David Washington | Attorney | 845.6 | $700 | $591,920 |
|---|---|---|---|---|
| Tami Galindo | Paralegal | 385 | $280 | $107,800 |
| **SUBTOTAL** | | 1,876.2 | | $1,397,247 **x 90%** |
| **TOTAL** | | | | **$1,257,522.30** |
| | | | | |

### 1. Reasonable Hourly Rate

"Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community." *Vargas*, 949 F.3d at 1194 (internal quotation marks and citation omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks and citation omitted). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Thus, the district court "must base its determination" of the prevailing market hourly rate "on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (emphasis in original).

Plaintiff submits declarations from Paul Hoffman and V. James DeSimone demonstrating comparable attorneys' fee rates in the Central District for attorneys with similar experience to Plaintiff's counsel. (Declaration of Paul Hoffman ("Hoffman Decl."); Declaration of V. James DeSimone ("DeSimone Decl.").) Mr. Hoffman has practiced law in Los Angeles since 1976 and is the Director of the Civil Rights Litigation Clinic at UC Irvine Law School. (Hoffman Decl. ¶ 2.) From 1984 to 1994, Mr. Hoffman was the Legal Director of the ACLU

Foundation of Southern California and litigated hundreds of civil rights cases. (*Id.*)  Mr. Hoffman declares that over the past 47 years, he has become familiar with the rates charged by lawyers in the Los Angeles community.  (*Id.* ¶ 4.)  Mr. Hoffman has known Mr. Stormer for more than 40 years and has litigated cases with him.  (*Id.* ¶ 5.)  Mr. Hoffman declares that Mr. Stormer is one of the premier civil rights lawyers in California, and given his expertise, background and reputation, Mr. Hoffman believes $1,400 an hour is a reasonable hourly rate.  (*Id.* ¶ 5.)  Mr. Hoffman further declares that he has known Ms. Rickets for nearly ten years and referred a civil rights case to her when she was first beginning to practice in the field.  (*Id.* ¶ 6.)  Ms. Ricketts has consulted Mr. Hoffman on civil rights cases, including Ninth Circuit argument.  (*Id.*)  Based on Ms. Ricketts' experience, skill level, and ability as a civil rights attorney in Los Angeles, Mr. Hoffman believes an hourly rate of $915 is reasonable.  (*Id.*)  As to Mr. Washington, Mr. Hoffman declares that while he has not worked with Mr. Washington, he understands that Mr. Washington is a 2015 law school graduate who clerked for the District of Puerto Rico.  (*Id.* ¶ 7.)  Mr. Hoffman believes that a rate of $700 per hour is within the standard range of rates charged in the community for work by an attorney of this level of experience.  (*Id.*)

Plaintiff also submits the declaration of V. James DeSimone who has practice law in Los Angeles since 1985.  (DeSimone Decl. ¶ 2.)  Mr. DeSimone declares that he has litigated civil rights cases since 1990.  (*Id.* ¶¶ 2-3.)  He has authored numerous articles and taught seminars on civil rights and speaks often at bar association events.  (*Id.* ¶ 5.)  Mr. DeSimone declares that he is familiar with the rates charged by plaintiffs' attorneys throughout California as he has had to survey them in connection with fee applications each year.  (*Id.* at ¶ 8.)  Mr. DeSimone further declares that rates of similarly trained attorneys for complex civil litigation such as civil rights cases vary from $350 to $1500 an hour.  (*Id.* ¶ 16.)  As a lawyer with thirty-five years of experience, Mr. DeSimone's hourly rate

is $1,100, which he believes to be on the lower end of the range. (*Id.*) Mr. DeSimone has known Mr. Stormer for over thirty years and has co-counseled cases with him. (*Id.* ¶ 18.) Mr. DeSimone declares that Mr. Stormer's hourly rate is in line with rates currently being charged by attorneys in large firms of comparable or lesser skill and experience in specialized litigation groups. (*Id.*) Further, he declares that he is aware that attorneys with Mr. Stormer's skills, experience, and abilities charge anywhere from $1,100 to $1,800 per hour for plaintiff's side litigation. (*Id.* ¶ 19.) Mr. DeSimone has known Ms. Ricketts for about ten years and believes her hourly rate is in line with fees charged by trial attorneys in civil rights cases at her skill and experience level. (*Id.* ¶ 20.)

The Declarations of DeSimone and Hoffman evidence that Dan Stormer is considered a leading civil rights attorney. (*See* DeSimone Decl. ¶ 18; Hoffman Decl. ¶ 5.) Plaintiff also submits declarations attesting to the reputation, skill, and experience of Plaintiff's counsel. (*See e.g.,* Declaration of Dan Stormer ("Stormer Decl."); Declaration of Morgan Ricketts ("Ricketts Decl."); Declaration of Clay Washington ("Washington Decl.").) Mr. Stormer declares that he has practiced law for 49 years and is a founding partner of the law firm Hadsell Stormer Renick & Dai LLP, which practices primarily in the areas of employment discrimination, constitutional, civil rights, international human rights, and public interest law. (Stormer Decl. ¶ 2.) Among his many accolades, Mr. Stormer has co-authored three law review articles, wrote a monthly column for the Matthew Bender California Labor and Employment Bulletin, has been the subject of numerous legal media profiles, taught legal programs, and received numerous awards in recognition of his skills in civil rights cases. (*Id.* ¶¶ 6-8.) Additionally, on February 22, 2024, in *Pederson, et al. v. The County of Plumas, et al.*, 2:89-1659 (E.D. Cal. filed Dec. 4, 1989), a Court in the Eastern District of California awarded Plaintiffs attorneys' fees, including $6,000 for 4 hours billed by Mr. Stormer at his hourly rate of $1,500. (Dkt. No. 194, March 29, 2024 Declaration

of David Washington ¶¶ 2, 4.)  Thus, Plaintiff's requested rate of $1,400 per hour for Mr. Stormer is supported.

Morgan Ricketts served as counsel in the case and during trial.  Ms. Ricketts graduated from the Harvard Law School in 2009,  has litigated civil rights cases since 2013, and has first-chaired at least ten jury trials.  (Ricketts Decl. ¶ 2.)  Ms. Ricketts estimates litigating twenty to thirty plaintiff's civil rights cases.  (*Id.*)  Plaintiff submitted declarations attesting to her skill and experience.  (*See* DeSimone Decl. ¶ 20; Hoffman Decl. ¶ 6.)  The Court finds her requested rate of $915 reasonable and supported by the evidence.

David Washington served as counsel in the case and during trial.  Mr. Washington has been practicing for eight years, first as a Federal Defender, then as a Civil Rights Fellow with the Southern Poverty Law Center, where he declares he litigated the largest class action lawsuit ever brought against the Alabama Department of Corrections.  (Washington Decl. ¶ 6-8.)  Additionally, in *Pederson,* 2:89-1659 the district court awarded Plaintiffs' attorneys' fees, including $110,460 for 157.8 hours billed by Mr. Washington at his 2023 hourly rate of $700.  (Dkt. No. 194, March 29, 2024 Declaration of David Washington ¶¶ 2, 4.)  The Court finds the requested $700 per hour reasonable based on the evidence presented.

The Court similarly finds the requested rates of $800 for attorney Shaleen Shanbhag and $280 for paralegal Tami Galindo reasonable based on the evidence presented in the Declarations of Dan Stormer and Morgan Rickets.  (Stormer Decl. ¶ 21, Ricketts Decl. ¶ 8.)  Ms. Shanbhag is a former partner at Hadsell & Stormer and graduated from law school in 2014.  (Stormer Decl. ¶ 33.)  Ms. Galindo's requested hourly rate is consistent with the City's requested rate for its own paralegal's time as demonstrated in a Motion for Attorney's fees filed by the City of Los Angeles in February 2019.  (Ricketts Decl. ¶ 8.)

Defendants contend that (1) the rates requested by Mr. Washington and Ms.

Rickets should be reduced based on their lack of experience litigating civil rights cases, and (2) Mr. Stormer's rate should be reduced back on his lack of involvement throughout the case, including trial. Defendants support their argument with a declaration from Gerald G. Knapton, an expert on legal fees. (Declaration of Gerald G. Knapton ("Knapton Decl.").) Mr. Knapton is a senior partner with Ropers, Majeski P.C. (*Id.* ¶ 2.) He has qualified and testified as an expert on legal fees more than sixty times. (*Id.* ¶ 3.) Mr. Knapton relies on the 2022 Real Rate Report[1] to determine non-contingent hourly rates of partners, associates and paralegals based on location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing and paid invoices from about 80 companies. (*Id.* ¶ 35.) The Real Rate Report shows the following data for partners, associates, and paralegals:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
|------|-------------|----------------|--------|----------------|
| Partner | 10592 | $430 | $653 | $969 |
| Associate | 9930 | $329 | $485 | $703 |
| Paralegal | 4215 | $150 | $225 | $325 |

The numbers change slightly for attorneys in Los Angeles:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
|------|-------------|----------------|--------|----------------|
| Partner | 40 | $410 | $835 | $995 |
| Associate | 38 | $361 | $475 | $735 |

Based on Mr. Knapton's analysis, Defendants propose reducing Plaintiff's counsel's rates to $835 for Mr. Stormer, $835 for Ms. Ricketts, $475 for Mr. Washington, and $225 for Ms. Galindo.

In the Ninth Circuit, reasonable rates for civil rights cases are not based

---

[1] The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse and contains data on law firm rates and staffing trends based on actual invoice data.

only on rates offered in similar civil rights claims but rather comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir.2009) (holding that "the proper scope of comparison is not so limited" as to only other attorneys involved in prison litigation) (internal quotation marks and citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Camacho*, 523 F.3d at 980 ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (citation omitted).

The declarations filed in support of Plaintiff's Motion demonstrate that Plaintiff's counsel's requested rates are comparable to other attorneys in Los Angeles with similar skill and experience in complex litigation. The Court finds that counsel represented Plaintiff with professionalism, skill, and knowledge of the law. Thus, the Court overrules Defendants' objections to the declarations submitted by Plaintiff. The Court considers the declarations in calculating appropriate hourly rates for Mr. Stormer, Ms. Ricketts, Mr. Washington, Ms. Shahbag and Ms. Galindo.

### 2. Reasonable Hours

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Courts generally accept the reasonableness of hours supported by declarations of counsel. *See, e.g., Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359,

396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.")

Counsel's sworn declarations and attached time records evidence the attorney and paralegal hours spent on this litigation.  Counsel applied a 10% reduction across the board to account for any potential billing errors.  (Stormer Decl. ¶ 33.)  Plaintiff requests a total of 1,876.2 hours.

Defendants contend that Plaintiff should not be awarded fees for administrative work, duplicative work, excessively billed work, block-billed entries, and vague billing descriptions.  Defendants seek a 100% reduction for "administrative work."  Defendants refer to Exhibit 5A of Mr. Knapton's declaration which includes 82.10 hours of billing entries totaling $44,910.50 in fees.  (Knapton Decl. ¶ 68, Exhibit 5A.)  Defendants cite to *Keith v. Volpe*, 644 F. Supp. 1317, 1323 (C.D. Cal. 1986), *aff'd*, 858 F.2d 467 (9th Cir. 1988), which disallowed hours for "clerical, secretarial and similar routine work" such as "pickup copies," "Xerox/distribute memo," "tag exhibits," "file review," "organize files," and "reproduce documents."  Exhibit 5A includes a large number of time entries for "Outlook/calendaring."  Counsel includes time entries for 1.8, 1.6 and .8 hours of work done by Mr. Washington for "draft trial calendar," "trial related deadlines chart," and "Update case calendar," respectively.  The Court finds these tasks to be appropriately billed at the paralegal hourly rate.  Exhibit 5A also includes time spent to "Prepare/edit/finalize Plaintiff's complaint/initiating documents (summons/civil case cover sheet/notice of interested parties)/efile/open new case/prepare chambers copies"; and "Work with IT and client to extract data from his phone for production."  On reply, Plaintiff explains that while there is staff that perform non-specialized tasks such as answering phones, mailing, and printing, tasks that require compliance with court rules such as such as determining how many copies must be delivered to chambers and by what time,

filling out legal forms such as a summons, preparing proofs of service, and filing court documents – are all considered paralegal or attorney tasks, because they require familiarity with and adherence to court procedures and rules.  The Court agrees that these tasks require some familiarity with court rules, and thus the Court does not reduce the fee award based on those time entries.  The Court subtracts $1,764 from the requested fee award to account for attorney time spent calendaring.

Defendants request a 30% reduction for block billed entries.  Defendants refer the Court to Exhibit 5B of Mr. Knapton's declaration which includes 261.50 hours of billing entries totaling $130,127.50 in fees.  (Knapton Decl. ¶ 86, Exhibit 5B.)  Defendants contend that the block billed entries are vague, duplicative, and unnecessary and should be reduced for failing to set forth with any degree of particularity, a breakdown of attorney time for the multiple tasks set forth in each block billed entry.  However, the examples in Exhibit 5b are not examples of improper block-billing.  The Ninth Circuit defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted).  A time entry which identifies interrelated tasks performed simultaneously is not considered block billing.  *See, e.g.*, *LaToya A. v. San Francisco Unified Sch. Dist.*, 2016 WL 344558, at *8 (N.D. Cal. Jan. 28, 2016)  Therefore, the Court includes the time entries identified in Exhibit 5B in the fee award.

Defendants request an additional 30% reduction for vague billing entries.  Defendants refer the Court to Exhibit 5C of Mr. Knapton's declaration which contains 567.30 hours of billing entries totaling $293,972 in fees.  A fee applicant must submit "evidence supporting the hours worked" and "should identify the general subject matter of his time expenditures" but "is not required to record in

great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Here, the majority of the time entries included in Exhibit 5C relate to communications with the client. On Reply, Plaintiff explains that most of the time, the subject of the call with the client is privileged and inappropriate to disclose, and that the safer practice is to simply note that there was a client communication. While the time entries referencing "call with client" are vague, each entry is less than an hour, which the Court finds to be a reasonable amount of time to discuss matters with the client. Additionally, Plaintiff requests $14,210 for time entries described as "document review" but has not provided any evidence to support this request, such as the volume or categories of documents reviewed. Without additional information, the Court finds these entries vague. Upon review of additional entries which Defendants contend are vague including "Emails/prepare/edit Plaintiff's complaint," "Discovery plan," "Leave message for Daniel Sosa," "Edit video clip for production," and "Draft discovery requests" the Court finds these entries adequate and do not warrant a reduction in the fee award. Moreover, Plaintiff's counsel has already applied a 10% across the board reduction in the attorneys' fees sought. The Court subtracts $14,210 from the requested fee award to account for unexplained time spent on "document review."

Defendants request a 100% reduction of duplicative work. Defendants refer the Court to Exhibit 5D of Mr. Knapton's declaration which contains 13.10 hours of billing entries totaling $5,647.50. (Knapton Decl. ¶ 69, Exhibit 5D.) Defendants contend that in light of counsels' experience and expertise in civil rights work, only one attorney should have been required to attend conferences with opposing counsel, depositions, and client meetings. The Ninth Circuit has held "duplicative work is not inherently inappropriate" (*see Chaudhry v*, 751 F.3d at 1112 (finding district court's reduction of fees by 88% in light of the fact that "multiple attorneys and legal assistants attended and participated in certain conferences, depositions, court hearings, and trial, doing much of the same work"

and "[m]any of the law clerks billed for duplicative note-taking or for training at trial or depositions" required a "more specific explanation than that provided by the district court) (citing *Moreno*, 534 F.3d at 1112)), and "the participation of more than one attorney" in case or at a hearing "does not constitute an unnecessary duplication of effort" (*see Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986));  *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."); *Lauderdale v. City of Long Beach*, 2010 WL 11570514, at *7 (C.D. Cal. Jan. 11, 2010)  ("[H]aving multiple attorneys attend depositions, meetings and settlement conferences allowed counsel to contribute creative solutions, reduced the need for inter-office communications after meetings, and ameliorated disagreements over what actually went on at meetings.").  As Plaintiff explains, it is a routine practice for more than one attorney to attend conferences with opposing counsel, depositions, and client meetings.  Additionally, the entries in Exhibit 5D relate to conferences amongst Plaintiff's various counsel for purposes of discussing case strategy.  (*See* Ex. 5D ("Litigation strategy call w/ DS"; "Telephone call with DS and DCW re litigation strategy"; "conf with DS, DW re: experts; "Meeting with SS, DW re experts.").) The participation of more than one attorney was necessary to discuss the relevant issues as provided in the time entries.  Therefore, the Court the Court includes the time entries identified in Exhibit 5D in the fee award.

Defendants request a 40% reduction of "excessively billed work." Defendants refer the Court to Exhibit 5E of Mr. Knapton's declaration which contains 293.10 hours of billing entries totaling $131,892.50.  (Knapton Decl. ¶ 72, Exhibit 5E.)  Defendants identify tasks that appear to have taken more time than necessary based on the length of the document filed with the Court.  For example, Defendants identify 11.2 hours spent by Ms. Shanbhag's entries to "Draft initial disclosures" which were 3.5 pages in length and 13.7 hours spent by

Mr. Washington's to "Draft ex parte app to compel and for sanctions" which was a 4.5-page Application that was denied by the Court. (*See* Dkt. No. 44.) The time spent on the initial disclosures and ex parte application were excessive. Plaintiff's counsel include time entries of 3 and 6 hours spent by Ms. Ricketts and Mr. Washington, respectively, for "Travel to and from Court." This time appears excessive based on the location of Plaintiff's counsel's offices and the courthouse. Plaintiff's counsel also include time entries of 11, 12.4, 15.8, 16.8 and 17.4 hours, for "trial preparation" or trial-related tasks, without substantiating the amount requested. During trial, Court was in session with the jury for approximately five hours, with about two hours spent with counsel after the jury was excused. Without additional information, the Court finds these time entries excessive. The Court limits trial days to eight hours and subtracts the additional time billed. As to the other time entries identified in Exhibit 5E, the Court does not find these entries excessive. Additionally, as noted above, Plaintiff's counsel has already applied a 10% reduction in the attorneys' fees sought. Therefore, the Court subtracts $59,215 from the requested fee award to account for excessive time as indicated above.

### 3. Multiplier

Plaintiff does not request a multiplier. However, Defendants contend that Plaintiff's fee demand should be reduced based on Defendants' success on the majority of the claims asserted against them. The jury found in favor of Defendants on Plaintiff's claims against Chief Moore, and on the majority of claims against the City of Los Angeles with respect to *Monell* liability. Defendants attempt to quantify Plaintiff's success based on a 50% success rate and ask that the Court reduce Plaintiff's number of hours by 75% for their limited success.

The Supreme Court has held: "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will

encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Here, Plaintiff prevailed on his Fourth Amendment claim against Officer Haney and his *Monell* claim against the City of Los Angeles for failure to properly train its officers (Dkt. No. 171.) The jury awarded Plaintiff $85,000 in compensatory damages and found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights. The other claims asserted were related to the underlying incident and based on a common core of facts. Thus, the time spent on claims for which Plaintiff did not prevail cannot reasonably be separated from time spent on claims on which Plaintiff did prevail. *See City of Riverside v. Rivera*, 477 U.S. 561, 569-73 (1986) (holding the district court did not abuse its discretion in awarding attorney's fees for all time reasonably spent litigating the case although respondents had prevailed only on some of their claims and against only some of the defendants); *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (noting "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis.")

**4. Costs**

Plaintiff seeks reimbursement of non-taxable costs totaling $15,703.50. Section 1988 permits a prevailing party to recover as part of an attorneys' fee award "those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted); *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting same). Plaintiff's counsel declares that it is the routine and common practice of firms handling complex litigation to charge fee-paying clients

separately for copying, expert or consultant fees and other necessary out-of-pocket expenses. (Stormer Decl. ¶ 38.) In addition to the $19,080.29 in costs requested in Plaintiff's Bill of Costs, filed on June 13, 2023, Plaintiff requests reimbursement of $15,703.50 in non-taxable expenses. (Dkt. No. 180.) Plaintiff includes an exhibit with documents supporting the costs requested. (Stormer Decl. ¶ 40, Ex. 4.) Plaintiff seeks the following non-taxable costs: $600 paid to Defendants' police practices expert, Edward Flosi, for time spent in deposition; $10,043 in photocopying costs; $2500 in costs to prepare demonstrative video clips for trial; and $2,560.50 in costs to prepare exhibit binders for trial. Defendants concede that these costs are recoverable with the exception of $10,043.10 for photocopying, which Defendants' expert declares "constitutes a part of the firm's overhead." The Court finds reasonable photocopying costs are generally recoverable, however Plaintiff has not adequately shown that the request for $10,043 is reasonable. *See Harper v. City of Los Angeles*, 2006 WL 8446990, at *11 (C.D. Cal. May 16, 2006) (finding plaintiff had not met burden of demonstrating that photocopying costs were "reasonable and necessary for effective and competent representation"). It is Plaintiff's burden to provide the Court with evidence indicating the general purpose or subject matter of the photocopies. The Court cannot determine what would be a reasonable figure based upon this lack of evidence. Accordingly, the Court declines to award the photocopying costs sought. As to the other costs sought and upon review of the evidence, Plaintiff's requests appear reasonably and necessarily incurred in advancing the interests of the client. Therefore, the Motion is **GRANTED** as to the request for nontaxable costs, with the exception of the costs for photocopying.

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees in the amount of $1,182,333.30 and $5,660.4 for nontaxable costs pursuant to 42 U.S.C. § 1988.


**IT IS SO ORDERED.**


DATED:  APRIL 19, 2024

HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE