**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**IVIE MCNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Tel:    (213) 489-0028
Fax:    (213) 489-0552

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367
Tel:    (818) 347-3333
Fax:    (818) 347-4118

Attorneys for Plaintiff, STEFFON BARBER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED,<br><br>  Defendants | Case No. 5:22-cv-00625-KK-DTBx<br><br>*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*<br><br>**DECLARATION OF RODNEY S. DIGGS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |

## DECLARATION OF RODNEY S. DIGGS

I, Rodney S. Diggs, declare:

1. I am an attorney at law fully licensed and admitted to practice before all courts of the State of California and before the United States District Court for the Central District of California. I am the President, Managing Partner, and an Equity Named Partner of Ivie McNeill Wyatt Purcell & Diggs

1

("IMW"), counsel of record for Plaintiff Steffon Barber ("Plaintiff"). The matters contained in this declaration are known to me personally, and if called upon to testify as to such matters under oath in a court of law, I could and would do so competently.

**MY REQUESTED HOURLY RATE IS REASONABLE**

2. I have maintained contemporaneous time records reflecting the work activity and time spent on this case. I have exercised billing judgment, and I have reduced or written off unproductive time or other time that would not ordinarily be charged to a fee-paying client. A copy of the time records for me and my associates, paralegal, and legal support staff at my firm for this case is attached hereto as **Exhibit "A."**

3. All of the work done in this case was performed to advance the claims ultimately presented to the jury, to defend Mr. Barber's criminal case in a manner that preserved the viability of this civil action, or to otherwise advance Mr. Barber's interest in obtaining justice for the constitutional violations committed against him.

4. I graduated with a B.A. from the University of California, Los Angeles in 2005, where I was a standout member of the track and field team, earning All-Pac-10 and All-American honors in the 400-meter sprint and 4×400-meter relay. I attended and graduated from Howard University School of Law in 2010, where I served as Vice President of the Student Bar Association, Chief Justice of Sigma Delta Tau Legal Fraternity, and Senior Staff Editor of the Human Rights and Globalization Law Review.

5. I have specialized in and devoted the majority of my practice to civil rights, catastrophic injury, wrongful death, employment litigation, and related fields, which I believe go hand in hand. Over the course of my career, spanning more than 15 years of distinguished legal practice, I have handled over 1,500 cases and have secured more than $250 million in verdicts and settlements for

my clients. My practice encompasses civil rights, catastrophic injury, wrongful death, employment law, sports and entertainment, municipal liability, high-stakes commercial litigation, and international matters.

6. In January of 2011, I became an associate at Ivie, McNeill & Wyatt. In 2016, I was elevated to partner — the first person elevated to partner at this firm in 14 years. In 2019, I was elevated to named partner. In 2025, I was appointed President and Managing Partner. IMW is California's largest Black-owned law firm and one of the most respected full-service litigation, corporate, and entertainment firms in the state. The firm has been in existence since 1943 and maintains on average 20–25 attorneys. I chair the firm's Labor & Employment and Civil Rights practice groups and oversee firm strategy, operations, and attorney development while maintaining an active litigation practice.

7. I have extensive trial experience in both federal and state courts as first-chair trial counsel. In 2013, my second year as an attorney, I tried my first case as first chair — *Rodney Sawyer v. City of Los Angeles, et al.*, Case No. CV-12-10819 — and obtained a six-figure verdict for my client. Over the years, I have served as first chair in over fifteen civil trials in federal and state court.

8. Among my landmark results:

- In 2019, I was lead trial counsel in *Sinuon Samantha Pream, et al. v. City of Long Beach, et al.*, Case No. CV 17-04295 TJH (FFMx), and obtained a $9.1 million jury verdict — the largest verdict against the City of Long Beach in a shooting wrongful death case and the second-largest wrongful death verdict in the history of the United States District Court, Central District of California. That verdict was also a Top 10 civil rights verdict in California for 2019.

- In 2023, as lead trial counsel, I obtained a $24,584,449.00 jury verdict in an employment civil rights case against a school district — believed to be the largest employment retaliation verdict ever secured against a school district.

3

- In 2019, I obtained a Top 10 verdict in the United States and a Top 10 verdict in California. In 2020, I obtained a Top 50 verdict in California. In 2021, I obtained a Top 10 settlement in the United States and two Top 10 settlements in California.

9. I have also shaped California law through published appellate decisions. I was lead counsel in *Mitchell v. California Department of Public Health*, 1 Cal. App. 5th 1000 (2016), in which the published opinion changed California law regarding FEHA lawsuits and the doctrine of equitable tolling. I was also lead counsel in *Department of Corrections and Rehabilitation v. State Personnel Board and Vickie Mabry-Height*, Case No. C084698, which changed the burden-shifting framework in discrimination cases. Most recently, I was lead counsel in *Bassett Unified School District v. Los Angeles County Superior Court*; Michael Ross (RPI), Case No. B323528, in which the Court of Appeal issued a significant ruling strengthening employee protections.

10. My peer-recognized honors and awards reflect a sustained record of excellence at the highest levels of the profession, including:

- Best Lawyers in America (2023–2026 Editions)
- Southern California Super Lawyer (2024–2026), after a decade as Super Lawyers Rising Star (2014–2023)
- Daily Journal's Top Plaintiff Lawyer (2023, 2024)
- Daily Journal Top Labor & Employment Lawyers (2021–2025)
- Daily Journal Top 100 Lawyers in California (2019, 2022–2024) — one of the profession's most selective distinctions, awarded to fewer than 100 attorneys out of more than 220,000 licensed in California
- Los Angeles Business Journal Leaders of Influence: Litigators & Trial Attorneys (2023–2025)
- Los Angeles Business Journal Leaders of Influence: Labor & Employment Attorneys (2022–2025)

4

- Los Angeles Times B2B Leading Consumer Attorney (2023–2025)
- Los Angeles Times B2B Legal Visionary (2023)
- Los Angeles Times B2B DEI Visionary (2023)
- UCLA Alumni Association Bruin Business 100 (2024)
- IAOTP Top Attorney of the Year (2021)
- The National Trial Lawyers: Top 100 Attorney and Top 40 Under 40 (2019–2020)
- Most Powerful Employment Lawyer — Lawdragon (2018)
- Los Angeles Business Journal Who's Who in Law (2023)
- Los Angeles Business Journal Leaders of Influence: Thriving in Their 40s (2022)
- National Bar Association Top 40 Under 40 Nation's Best Advocates (2017)
- National Black Lawyers Top 40 Under 40 (2016)
- Los Angeles African American Vanguard Awards — 100 Most Influential African Americans (2017)
- California Legislature Assembly — 40 Under 40 Civic Emerging Leaders (2017)
- Marquis Who's Who in America (2020)
- Alpha Kappa Alpha Sorority, Inc., Tau Beta Omega Chapter Community Leader Award (2018)

11. I am an active member of the John M. Langston Bar Association (past Officer, past Board of Directors, Lifetime Member), the Los Angeles County Bar Association, the National Bar Association, and serve on the Board of Directors of the Watts Labor Community Action Committee. I am also an active member of Interact Law, an international alliance of leading law firms across more than 45 countries, through which I collaborate on cross-jurisdictional matters for clients with global interests. In 2015, I was selected

5

as one of 25 attorneys out of 250 invited to ABOTA SideBar, part of the Los Angeles Chapter of ABOTA.

12. I have spoken at numerous seminars and panels over the years on civil rights, employment, and trial practice topics, including serving as a panelist for a trial boot camp for new and young attorneys held in Toronto, Canada by the National Bar Association and ABOTA in 2018, and was asked to serve as a speaker for a five-day trial boot camp at the University of Las Vegas.

13. I have been awarded attorneys' fees by courts on multiple occasions. On July 6, 2018, Judge Ann I. Jones awarded me $700.00 per hour in *Richard McCorkle, et al. v. American Textile Maintenance Company*, Case No. BC495759. On March 28, 2017, the California Court of Appeal affirmed that Judge Mackey was reasonable in awarding me $500.00 per hour in *Ruiz v. U.S. Security Association*, B275201, when I was still an associate at my firm — I am now the Equity Named President and Managing Partner. In January 2020, my hourly billing rate was approved by San Diego County Superior Court Presiding Judge Kevin Enright at $850.00 per hour. My skills, experience, accolades, and trial results have increased substantially since each of those awards, and my requested rate of $1,250.00 per hour reflects the current prevailing market rate for attorneys of my skill, experience, and reputation in the Central District.

14. Taking on a case of this nature involves a significant commitment of time and resources and precludes me and my firm from accepting other matters. Handling this case required me to forego other matters that would have been financially lucrative, and I and my firm advanced all litigation costs over the course of five-plus years with no guarantee of recovery.

15. This case presented an unusual and demanding challenge. From 2021 through the February 9, 2026 verdict, my firm worked on this matter with a risk of no recovery. Bringing it to a successful resolution required the skill and specific

6

knowledge I have acquired from representing hundreds of plaintiffs in civil rights matters, combined with the unique challenge of simultaneously managing a companion criminal defense matter — in which Mr. Barber faced charges including assault with a deadly weapon on a peace officer under Penal Code § 245(c) — that served as a prerequisite to this civil case proceeding at all.

16. A further complexity of this matter is that Mr. Barber, as a result of having been shot in the head by Deputy Alfred, was in a coma for an extended period following the April 27, 2021 shooting and remained cognitively impaired during the early years of this litigation. Mr. Barber's sister, Shyrah Butcher, served as his Guardian Ad Litem during this period. As a result, a significant portion of client communications during the early stages of this case — and throughout the period of Mr. Barber's incapacitation — were conducted with Ms. Butcher as his representative. The time reflected in my billing records that references communications with Ms. Butcher was work performed on behalf of Mr. Barber as Plaintiff, through his GAL. The billing matter was accordingly denominated "Butcher, Shyrah — GAL Steffon Barber" but reflects legal services rendered on Plaintiff Steffon Barber's behalf in this matter.

17. This case was vigorously defended every step of the way. Defendants maintained throughout that the shooting was justified and did not make any meaningful settlement offer, as reflected in the parties' joint status report regarding settlement filed December 11, 2025. Despite the difficult evidence — including the defense's central contention that Mr. Barber attempted to reverse his vehicle toward Deputy Alfred — my office, together with co-counsel at the Law Offices of Dale K. Galipo, achieved a jury verdict on February 9, 2026, awarding total damages of $27,350,000. It is anticipated

that Defendants will file post-trial motions and a likely appeal, such that this case continues to demand attorney time and resources.

18. The successful result in this matter was achieved through diligent and tireless effort over five years of litigation, including prosecution of the companion criminal case, complex civil discovery, motion practice, retention and coordination of four expert witnesses, and nearly two weeks of trial preparation and trial. All work performed by myself and each attorney and staff member of my firm was reasonable and necessary. All time was contemporaneously recorded and reflects legitimate, necessary activities, including: (1) client communications, in-custody visits, coordination with CDCR, and extensive communications with Mr. Barber's Guardian Ad Litem Shyrah Butcher; (2) criminal court appearances, criminal trial attendance, and nightly preparation during the criminal trial; (3) drafting and reviewing pleadings; (4) preparing for, taking, and attending depositions and conducting written discovery; (5) drafting and opposing motions, including the Opposition to Defendants' Motion for Summary Judgment; (6) attending court hearings and mediation; (7) reviewing extensive documentary evidence, investigative reports, forensic materials, and criminal trial transcripts; (8) retaining, coordinating with, and preparing expert witnesses; (9) preparing pretrial documents including jury instructions, motions in limine, and the memorandum of contentions of fact and law; (10) preparing for and attending all seven days of civil trial, including nightly preparation reviewing prior testimony and preparing examinations for the following day's witnesses; and (11) post-trial matters.

19. The extensive number of hours my firm worked on this case precluded me and my attorneys from devoting that time to the prosecution of other matters handled by this office.

20. In this matter, I spent approximately 1,249 hours of my own time across the criminal and civil proceedings. This figure does not include each and every telephone conference, internal meeting, and related activity; those hours were not billed. All of the work undertaken and performed by me on this case was necessary and reasonable. A true and correct copy of my firm's billing records is attached hereto as **Exhibit "A."**

21. My reasonable billing rate is $1,250.00 per hour. This rate is reasonable based on my more than 15 years of experience, my peer-recognized honors and awards, my track record of trial results, my extensive expertise in civil rights and employment litigation, my leadership of California's largest Black-owned law firm, my published appellate decisions, my history of court-approved fee awards at increasing rates commensurate with my growing experience, and the extraordinary result obtained in this case. I am respectfully requesting this hourly fee on the basis of all of the foregoing.

22. My associates Ryan C. Duckett and Brandon R. Tanter, my paralegal Alice D. Williams, and my legal secretarial and legal assistant staff Le Chaune Metoyer and Alexandria K. Feather assisted me in the prosecution and support of this matter, as detailed below. I believe it is appropriate to compensate them at the following hourly rates. As recognized by the Supreme Court in *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989), fee awards under § 1988 properly include compensation for the work of paralegals as well as legal secretaries and legal assistants whose time contributes to the prosecution of the case:

| Attorney/Biller | Role | Rate | Hours | Total Amount |
|---|---|---|---|---|
| Rodney S. Diggs, Esq. | President/Managing Partner | $1,250.00/hr | 1,249.00 | $1,561,251 |

| Attorney/Biller | Role | Rate | Hours | Total Amount |
|---|---|---|---|---|
| Ryan C. Duckett, Esq. | Associate – Criminal Case | $900.00/hr | 214.80 | $193,320 |
| Brandon R. Tanter, Esq. | Associate – Civil Case | $650.00/hr | 297.00 | $193,000 |
| Alice D. Williams | Paralegal | $450.00/hr | 260.10 | $117,045 |
| Le Chaune Metoyer | Legal Secretary | $150.00/hr | 119.50 | $17,925 |
| Alexandria K. Feather | Legal Assistant | $150.00/hr | 80.50 | $12,075 |
| Total | | | 2,220.90 | $2,094,616 |

23. A true and correct copy of my firm's detailed billing records itemizing the date, hours, and description of the nature of the work performed to date by each attorney and staff member in my office is attached hereto as Exhibit "A." Each timekeeper is identified by their initials.

**Ryan C. Duckett — Criminal Case**

24. Ryan C. Duckett (SBN 288750) is an associate attorney at IMW who served as primary defense counsel throughout the entirety of Mr. Barber's criminal proceedings from July 2024 through June 2025. Mr. Duckett has been a member of the California State Bar since approximately 2013 and has concentrated his practice in civil rights and criminal defense matters during his time at IMW.

25. Mr. Duckett was responsible for virtually all day-to-day management of the criminal defense throughout its four-year pendency. His work included: initial case intake and review of all incident reports, probable cause declarations,

10

arrest booking records, and the complete SBCSD investigative file; drafting and filing the initial Government Tort Claim on Plaintiff's behalf; reviewing and analyzing Alfred's recorded interview transcript (79 pages), all forensic lab reports, the Bio-Tox toxicology report, vehicle processing reports, shell casing documentation, and all scene photographs; reviewing and analyzing all percipient witness statements, including Maria Gallo's 911 call, Joseph Cocchi's witness interview, and Ryan Murphy's firefighter interview; drafting all versions of the Complaint for Damages under RSD's direction; communicating extensively with Mr. Barber while he was in custody at West Valley Detention Center and subsequently in state prison; communicating with the District Attorney's office and attending multiple criminal pre-trial hearings in San Bernardino County Superior Court; coordinating with accident reconstruction expert Robert Morales for purposes of the criminal trial and preparing Morales for his criminal trial testimony; traveling to and attending hearing on setting criminal trial date in Victorville on July 16, 2024; conducting comprehensive criminal trial preparation from September through December 2024, including review of all discovery, all witness statements, all forensic evidence, and all criminal jury instructions; preparing for and attending all days of the criminal jury trial from December 2, 2024 through the verdict on December 12, 2024, including full days of jury selection, witness examination — including cross-examination of prosecution reconstruction witness Ryan Layos — presentation of defense witnesses, and closing argument, and reviewing the day's testimony and preparing examinations for each following day each evening; drafting and filing the Romero motion to strike prior strike convictions in connection with sentencing; drafting the Statement in Mitigation; traveling to and attending the sentencing hearing on January 22, 2025; coordinating post-conviction matters including the motion for physical therapy and medical care for the

incarcerated Mr. Barber and attending the related hearing on May 23, 2025; and traveling to and attending the final sentencing and state prison commitment hearing on June 20, 2025.

26. Mr. Duckett's work on the criminal case was directly tied to the viability of this civil action. A conviction on the PC § 245(c) charge — assault with a deadly weapon on a peace officer — would have raised a potential Heck v. Humphrey bar to Mr. Barber's civil excessive force claims. Mr. Duckett's diligent and skillful criminal defense work was thus not merely parallel to the civil case — it was a prerequisite to Mr. Barber's ability to prosecute it. The criminal jury's acquittal on the PC § 245(c) charge, secured through Mr. Duckett's years of preparation and skilled trial advocacy, preserved the foundation upon which the $27,350,000 civil verdict was ultimately built.

27. In this matter, Mr. Duckett spent approximately 214.80 hours working on the criminal case from July 2024, through June 2025. This figure does not include each and every telephone conference, in-custody client visit, internal meeting, or related activity that was not recorded. All work was necessary and reasonable. A true and correct copy of Mr. Duckett's time records is included in Exhibit "A."

28. I believe that a reasonable fee for Mr. Duckett's professional services in this case is $900.00 per billable hour, based on his years of experience, his demonstrated skill in handling this complex, high-stakes criminal matter, and prevailing rates in the Los Angeles legal community for attorneys of comparable experience and skill. I am intimately familiar with Mr. Duckett's skill level and work ethic, having worked closely with him on this matter from inception through verdict. I can competently state that the quality of his work in this matter — which required him to serve simultaneously as criminal defense counsel and civil litigation contributor over four years — is as good

as or better than that of most attorneys I have encountered with significantly more years of experience.

**Brandon R. Tanter — Civil Case**

29. Brandon R. Tanter (SBN 351037) is an associate attorney at IMW who assisted, with the civil case from late 2025 through trial and verdict. Mr. Tanter graduated from the University of the Pacific, McGeorge School of Law in May 2023 and has been a member of the California State Bar since 2023. Mr. Tanter has conducted seven first-chair criminal jury trials, over fifty preliminary hearings, drafted and argued several motions, and conducted more than twenty-five motions to suppress evidence hearings during his time as a Deputy District Attorney. Since leaving the District Attorney Office, he has concentrated his practice in civil rights and employment litigation during his time at IMW.

30. Although Mr. Tanter joined this case as a relatively junior attorney, the quality and scope of his contributions belie his years in practice. His work on this matter was substantial and independently meaningful to the outcome. His work included: researching and drafting Plaintiff's Motions in Limine Nos. 1, 2, and 3; researching, Shepardizing, and drafting Plaintiff's Oppositions to all five of Defendants' Motions in Limine; drafting the Memorandum of Contentions of Fact and Law, proposed voir dire, statement of the case, joint proposed jury instructions, and joint exhibit list; appearing and arguing all motions at the Final Pretrial Conference in Riverside on January 8, 2026; preparing direct examination outlines for all four of Plaintiff's experts and assisting RSD with cross-examination preparation throughout trial preparation; participating in the trial strategy session on January 28, 2026; attending and assisting with all seven days of civil trial from January 30 through February 9, 2026, including reviewing the prior day's testimony and

preparing for each following day's proceedings each evening during trial; and assisting with preparation of this fee motion.

31. In this matter, Mr. Tanter spent approximately 349 hours working on this case. This figure does not include each and every telephone conference, internal meeting, or related activity that was not recorded. All work was necessary and reasonable. A true and correct copy of Mr. Tanter's time records is included in Exhibit "A."

32. I believe that a reasonable fee for Mr. Tanter's professional services is $650.00 per billable hour, based on his demonstrated skill, the complexity of the work he performed, and prevailing rates in the Los Angeles legal community for attorneys of comparable experience. I am intimately familiar with Mr. Tanter's skill level and work ethic, having supervised his work from his first day on this matter through verdict. The quality of his legal research and writing, his preparation for and conduct during expert depositions, the caliber of his pretrial drafting — particularly the MILs and oppositions, which required Shepardizing dozens of authorities and synthesizing complex evidentiary standards — and his performance as second chair at trial were all of the highest quality. His thorough, diligent, and often independent contributions to this case were essential to the favorable result. I can competently state that his abilities are as good as or better than those of most attorneys I have encountered with significantly more years of experience.

**Alice D. Williams — Paralegal**

33. Alice D. Williams is a paralegal at IMW who worked on this matter from the inception of this case in July 2021 through trial, verdict, and the preparation of this motion. Ms. Williams handled the day-to-day management and organization of this matter throughout — including the early stages, the multi-year stay period, the criminal trial support phase, and the intensive pretrial

14

and trial phases — and was indispensable to the efficient functioning of the litigation team at every stage.

34. Ms. Williams' work on this matter was extensive and spanned every phase of the case. Her work included: reviewing and organizing the initial case file, investigative reports, and crime scene evidence; coordinating communications with co-counsel at the Law Offices of Dale K. Galipo and the Cochran Firm; communicating with Mr. Barber's family, including his Guardian Ad Litem Shyrah Butcher, and communicating with the West Valley Detention Center regarding client access; drafting, preparing, and filing the initial Complaint and all subsequent amended complaints; drafting and filing all periodic status reports, stipulations, and court filings during the two-year stay period; reviewing and organizing the San Bernardino County Sheriff's Department policy manual and procedures for case preparation; communicating with accident reconstruction experts in connection with both criminal and civil proceedings; providing full logistical support for all criminal trial proceedings from the office in Los Angeles, including coordinating RSD's travel to the criminal trial in Victorville, transmitting requested documents to RXD during trial, and coordinating communications with the trial team during all criminal trial days; preparing and filing the Status Report re Criminal Case Resolution and all documents required to return the civil case to the active calendar; organizing the civil case file upon reopening in December 2024 and preparing a comprehensive document index; coordinating the preparation, service, and filing of all written discovery requests and responses, including Plaintiff's responses to all 25 of Defendants' interrogatories and all of Defendants' RFPs, and Plaintiff's 68 RFPs and 25 ROGs to COSB; receiving, logging, and distributing the COSB initial document production (COSB000001-COSB000946, 946 pages) and the COSB Second Supplemental Disclosures (COSB001358-COSB003604+); preparing and executing all CDCR security

clearance forms and coordinating prison access logistics for expert evaluations; coordinating all deposition logistics for all depositions in this matter, including scheduling, notices, court reporter retention, and transcript distribution; compiling and organizing all case documents for the four expert files and transmitting materials to all experts per the YAES fee agreement requirements; preparing, filing, and serving all motions, oppositions, and pretrial documents, including all three Plaintiff's MILs and all five MIL oppositions; preparing all trial exhibits and exhibit binders, coordinating delivery of all YAES demonstrative aids and animations, and providing hands-on courtroom support during all seven days of civil trial.

35. In this matter, Ms. Williams spent approximately 260.10 hours working on this case from inception through the present. This figure does not include each and every brief communication, telephone call, or administrative task that was not separately recorded. All work was necessary and reasonable. A true and correct copy of Ms. Williams' time records is included in **Exhibit "A."**

36. I believe that a reasonable fee for Ms. Williams' professional services is $450.00 per billable hour, consistent with prevailing rates in the Los Angeles legal community for an experienced litigation paralegal handling a complex federal civil rights case of this nature and duration. Ms. Williams' abilities in trial preparation, document management, expert coordination, court filing logistics, and general litigation support made it possible for me to focus my time on strategy, legal research, and trial advocacy. Her contributions to the success of this case were essential. I have worked with Ms. Williams extensively and can competently state that her work ethic, organizational skills, and quality of work product are unparalleled.

**Le Chaune Metoyer — Legal Assistant**

37. Le Chaune Metoyer is the Legal Assistant to Rodney S. Diggs at IMW and has worked on this matter from inception through the present. Ms. Metoyer is

16

listed on the CM/ECF service list for this case and has been the primary recipient of all ECF notifications from the Court throughout the pendency of this matter. Ms. Metoyer filed a declaration in this case in connection with the e-filing of the First Amended Complaint following a server outage and executed proofs of service on filings in this matter.

38. Ms. Metoyer's work on this matter included: organizing and maintaining the case file from inception; calendaring all deadlines and court dates throughout the case's five-year pendency; preparing and coordinating the e-filing of all case management documents, status reports, and stipulations filed during the stay period; managing all correspondence between RSD and opposing counsel and co-counsel; receiving and distributing all court orders, ECF notifications, and case communications; coordinating RSD's travel to criminal trial appearances in Victorville in December 2024; assisting ADW with the FAC filing logistics during the server outage in May 2025; preparing and e-filing all motions, oppositions, and pretrial documents upon their finalization; receiving and distributing all court notices, orders, and jury notes received through the CM/ECF system during all seven days of civil trial — including receiving and distributing all seven jury notes filed on February 10, 2026; and assisting with the preparation of this fee motion and Exhibit A.

39. In this matter, Ms. Metoyer spent approximately 119.5 hours working on this case from inception through the present. This figure does not include each and every brief communication or routing task not separately recorded. All work was necessary and reasonable. A true and correct copy of Ms. Metoyer's time records is included in **Exhibit "A."**

40. As the Supreme Court recognized in *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989), "reasonable attorney's fees" under fee-shifting statutes such as § 1988 include compensation for the work of legal secretaries and support staff whose time is devoted to the prosecution of the case. I believe that a

reasonable fee for Ms. Metoyer's services is $150.00 per billable hour, consistent with prevailing rates in the Los Angeles legal community for experienced legal secretarial staff on complex federal civil rights matters of this nature. Her contributions to the orderly and efficient prosecution of this case throughout its five-year duration were valuable and necessary.

**Alexandria K. Feather — Legal Assistant**

41. Alexandria K. Feather is a Legal Assistant at IMW who worked on this matter from February 2025 through the present. Ms. Feather is listed on the CM/ECF service list for this case and executed proofs of service on virtually every civil filing in this matter from February 2025 through trial and verdict. Her name appears on the proof of service executed in connection with Plaintiff's Initial Disclosures, Plaintiff's discovery responses, Plaintiff's propounded discovery, Plaintiff's expert deposition subpoena responses, Plaintiff's MILs and oppositions, and all other major filings throughout the active civil litigation phase.

42. Ms. Feather's work on this matter included: executing and coordinating proofs of service on all civil filings from February 2025 through the present; receiving, logging, and distributing all incoming filings from defense counsel, including Defendants' discovery requests, expert disclosures, MSJ and supporting documents, and all five motions in limine; managing and distributing all court ECF notifications and orders received throughout the active civil litigation phase, including orders on the Motion for Leave to Amend, the FPTC rulings, and the OSC order; coordinating deposition logistics and scheduling for all depositions in this matter, including drafting and distributing amended notices of deposition for all plaintiff and defense experts; receiving and logging all defense subpoenas for records and coordinating the team's responses; managing all CDCR prison access coordination and related documentation; coordinating the expert retainer fee

process and expert file setup; assisting with the e-filing and service of all motions, oppositions, and pretrial documents during the active civil litigation phase; assisting LCM and ADW with all trial preparation logistics, including organizing trial materials and managing filing deadlines; providing office support and managing all incoming CM/ECF court notifications and jury notes during all seven days of civil trial, including receiving and distributing all seven jury notes and related court responses filed on February 10, 2026; and assisting with the preparation of this fee motion and Exhibit A.

43. In this matter, Ms. Feather spent approximately 80.5 hours working on this case from February 2025 through the present. This figure does not include each and every brief routing task or communication not separately recorded. All work was necessary and reasonable. A true and correct copy of Ms. Feather's time records is included in **Exhibit "A."**

44. I believe that a reasonable fee for Ms. Feather's services is $150.00 per billable hour, consistent with prevailing rates in the Los Angeles legal community for experienced legal assistant staff on complex federal civil rights matters of this nature. Her contributions in coordinating service of process, managing court notifications, and supporting the filing of all civil case documents were necessary to the efficient prosecution of this action and are properly compensable under *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

45. To date, my firm has received no compensation in this case and has advanced all litigation costs.

46. I estimate that my firm will incur additional fees between the filing of this Motion and its final adjudication, including preparation of the reply brief, preparation for and attendance at the hearing on this motion, and opposition to any post-trial motions filed by Defendants. I estimate these additional fees

will be no less than $50,000.00 based on the anticipated scope of work required.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on this 25th day of March, 2026, at Los Angeles, California.

Rodney S. Diggs

RODNEY S. DIGGS, Declarant