Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
*kayleigh.andersen@manningkass.com*
Angela Brunson (State Bar No. 189223)
*Angela.Brunson@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTBx<br><br>*[District Judge: Kenly Kiya Kato; Magistrate Judge: David T. Bristow]*<br><br>**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>*Filed concurrently with:*<br>*1. Declaration of Kayleigh Andersen and Exhibits;*<br>*2. Declaration of Gerald Knapton and Exhibits; and*<br>*3. Request for Judicial Notice*<br><br>Judge:   Hon. Kenly Kiya Kato<br>Date:    May 7, 2026<br>Time:    9:30 a.m.<br>Crtrm.:  3; 3rd Floor |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT PROCEDURAL HISTORY ......................................................... 2

III.    PLAINTIFF IS NOT ENTITLED TO FEES FOR DEFENDING HIMSELF IN A CRIMINAL PROSECUTION ...................................................... 4

    A.    Criminal Defense Is Not An "Action Or Proceeding To Enforce" Plaintiff's Civil Rights Under 42 U.S.C. § 1983 ................................... 4

    B.    Plaintiff's Criminal Defense Is Not Reasonably Related To The Enforcement Of His Civil Rights Action As It Is Not "Useful And Of A Type Ordinarily Necessary To Advance" Plaintiff's Civil Rights Action ................................................................................ 5

        1.    Plaintiff's Criminal Defense Is Not "Ordinarily Necessary" To Advance His Civil Rights Action ........................ 6

        2.    Plaintiff's Criminal Defense Is Not "Useful" to Plaintiff's Civil Rights Action Because Plaintiff Was Convicted of An Assault With a Deadly Weapon ............................................. 7

    C.    Plaintiff Misrepresents the Reason for the Stay in the Civil Rights Case ................................................................................................... 8

    D.    Plaintiff Provides No Authority to Support The Award of Fees For His Criminal Defense; Plaintiff's Cited Cases Are Inapposite ........ 8

    E.    Plaintiff's Criminal Defense Case Is Also Not Ordinarily Expected to Be Tried with His Civil Rights Action ............................. 8

    F.    The Court Should Not Award Fees for Mr. Bryant's or Mr. Duckett's Time, or for Certain Time Entries for Mr. Diggs .................. 9

IV.     PLAINTIFF'S LODESTAR SHOULD BE REDUCED IN ACCORDANCE WITH *KERR* AND *HENSLEY* ........................................... 10

    A.    Legal Standard ................................................................................... 10

    B.    Plaintiff's Proposed Rates For Each Legal Professional Should Be Reduced to Reasonable Rates (Factor 5) ...................................... 11

    C.    The Time and Labor Required Is Not Atypical; Questions Involved Were Not Particularly Novel or Difficult; No Evidence of Undesirability (Factors 1, 2 and 10) ................................................ 15

    D.    Plaintiff's Fees Should Be Reduced For Defendants Prevailing on the *Monell* Claim; The Amount of the Jury's Award Has No Bearing on the Fee Award (Factor 8) ............................................... 16

i

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

E.      Plaintiff's Misrepresentations ................................................... 16

V.    OTHER FACTORS REQUIRING REDUCTION IN TOTAL FEE AWARD ......................................................................................... 17

A.      Fees for Legal Assistants' Time Should Not Be Awarded .................. 17

B.      Plaintiff's Fees for Trial Should Be Reduced Due to Overstaffing ...... 17

C.      Total Award Should Be Reduced By The Amount of Time Plaintiff's Counsel Spent Working On Criminal Cases and the *Monell* Claim ............................................................................ 18

VI.   A 2.0 MULTIPLIER IS NOT APPROPRIATE ............................................. 19

VII.  CONCLUSION ............................................................................... 22

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710 (S.D. Cal. 2014)..............................................................................................................19

*Avialae S De Rl De Cv v. Cummins Inc.*, No. EP-19-CV-00380-FM, 2023 WL 5163901 (W.D. Tex. Aug. 3, 2023) ......................................................17

*Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988)....................................4, 7

*City of Burlington v. Dague*, 505 U.S. 557 (1992)..........................................20

*Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115 (9th Cir. 2000) ..............................18

*Gates v. Deukmjian*, 987 F.2d 1392 (9th Cir. 1992) ......................................16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)..............................................passim

*Hiken v. Dep't of Def.*, 836 F.3d 1037 (9th Cir. 2016)...................................12

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ............2

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).................1, 10

*LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608 (9th Cir. 2025)......................................................................................................12

*Maher v. Gagne*, 448 U.S. 122 (1980) ............................................................8

*Marshall v. Kirby*, 2010 WL 4923486 (D. Nev., Nov. 29, 2010) ...................5

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996)..........................10

*New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980) .......................5, 6

*North Carolina Department of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6 (1986) ..................................................................4

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ..............................................................................................20

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)..................................21

*See e.g., Zeigler v. Cnty. of San Luis Obispo*, 2023 WL 3432238 (C.D. Cal., March 1, 2023) ......................................................................................12

iii

*Shapiro v. Pemmasani*, 2024 U.S. Dist. LEXIS 236146 (C.D. Cal., July 23, 2024)..........................................................................................................12

*Shapiro v. Pemmasani*, No. CV 23-4762-KK-AGRX, 2024 WL 5275497 (C.D. Cal. July 23, 2024)..........................................................................18

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir. 2016)............................19

*Ustrak v. Fairman,* 851 F.2d 983 (7th Cir. 1988) ......................................................8

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041 (9th Cir. 2000) ...............19

*Webb v. Board of Education*, 471 U.S. 234 (1985).......................................1, 4, 5, 6

*Welch v. Metro.  Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007).............................11, 18

*Young v. Wolfe*, No. CV0703190RSWLAJWX, 2017 WL 3184167 (C.D. Cal. July 26, 2017) ...............................................................................................6

*Zeigler v. Cnty. of San Luis Obispo*, 2023 WL 3432238 (C.D. Cal. Mar. 1, 2023)..........................................................................................................14

## STATE CASES

*Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672 (2000)...............................19

*Reynolds Metals Co. v. Alperson*, 599 P.2d 83 (Cal. 1979) .....................................18

## STATUTES

42 U.S.C. § 1988.........................................................................................................4

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants County of San Bernardino and Deputy Christopher Alfred ("Defendants") hereby submit their Opposition to Plaintiff Steffon Barber's Motion for Attorney's Fees and Application for Costs (Dkts. 209, 211, 212, 213, 214, 215, 216) ("Motion").

## I.     INTRODUCTION

Plaintiff's Motion should be denied, or the fee amount he seeks reduced, for several reasons.  First, Plaintiff is not entitled to fees related to the defense of his criminal case given that Plaintiff did not prevail in that defense – he was convicted of violating California Penal Code section 245(a)(1) and sentenced to 13 years in prison.  42 U.S.C. section 1988 does not authorize fee-shifting for any legal work other than prosecuting an action to enforce a civil rights law.  Plaintiff's criminal defense case is also not reasonably related to the enforcement of his civil rights action pursuant to *Webb v. Board of Education*, 471 U.S. 234 (1985).  Plaintiff's defense of his criminal case was aimed at avoiding a penal consequence (a criminal conviction); thus, any downstream benefit to the civil rights action was ancillary.  Thus, all fees attributed to the work on Plaintiff's criminal defense matter should not be awarded.

Second, Plaintiff's lodestar should be reduced in accordance with the factors laid out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) and *Hensley v. Eckerhart*, 461 U.S. 424 (1983). As explained in the Declaration of Mr. Gerald Knapton ("Mr. Knapton"), an expert in attorneys' fees, median rates is the best choice for most timekeepers, except for Mr. Dale Galipo, for which Third Quartile is appropriate given his experience and the level of publicity for the case. In addition, other *Kerr/Hensley* factors warrant a reduction, including the fact that the time and labor required in this case was not atypical, the legal and factual issues involved were not particularly novel or difficult, and Plaintiff presented no evidence

1

MANNING | KASS

MK

of undesirability.  At a minimum, Plaintiff's fees attributable to the *Monell* cause of action— on which he did not prevail—should not be awarded.

Third, no fees should be awarded for work performed by legal assistants, as time for clerical or secretarial work is not usually billed in Los Angeles.  Furthermore, fees should also be reduced for overstaffing the trial, as only Mr. Galipo and Mr. Diggs were on counsel of record during the trial.

Fourth, Plaintiff's request for a 2.0 multiplier is not appropriate here given that the contingency risk with which his proposed multiplier is based is already accounted for by the *Kerr/Hensley* factors.  Moreover, Plaintiff's overreaching attempt to justify a 2.0 multiplier based on Civil Code section 52(a) is erroneous, as that California law cannot serve as a basis to award fees for work related to a federal claim under 42 U.S.C. § 1983, and Plaintiff has made no attempt to apportion fees between work on the section 1983 claim and work on the Bane Act claim.

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff was arrested on April 23, 2021 for violation of California Penal Code section 245(c). [Dkt. 97-3].  He was subsequently charged in *People v. Barber*, FVI21001312 on two counts: Count 1 of the criminal complaint alleged a violation of Penal Code Section 664/187(a) Attempted Murder of a Peace Officer.  Count 2 of the criminal complaint alleged a violation of Penal Code Section 245(c) Assault Upon a Peace Officer. [Knapton Decl., ¶ 11].

Almost two years after he was arrested, Plaintiff filed his complaint in this action on April 12, 2022.  [Dkt. 1].  The proceedings in the civil case were stayed shortly thereafter on July 27, 2022.  [Dkt. 20.]  The stay was based on the "interests of justice." [Dkt. 19, p. 2:16-21 (citing *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)].  The parties' stipulation to the stay explained that requiring Plaintiff to participate in civil discovery during the pendency of his criminal case could unfairly prejudice him while his criminal case was pending, and

2

Defendants might be precluded from discovery should plaintiff invoke his 5th Amendment rights. [Dkt. 19, ¶ 9].

Following a jury trial, on December 16, 2024, Plaintiff was convicted of assault with deadly weapon. [Dkt. 97-5]. Plaintiff was sentenced to 13 years in state prison on June 20, 2025. [Dkt. 97-6].

Plaintiff requested to restore his civil rights lawsuit to active status on December 19, 2024. [Dkt. 43.]

Plaintiff filed his first amended complaint on May 17, 2025. [Dkt. 2].

On January 30, 2026, Plaintiff's civil case proceeded to trial by jury on six claims: excessive force; unconstitutional policy, practice, or custom; battery; negligence; violation of the Bane Act; and intentional infliction of emotional distress ("IIED"). [Dkt. 171]. Trial lasted seven days. [Dkt. 182]. Plaintiff called his first witness on the second day (Monday, February 2, 2026) and rested on the third day (Tuesday, February 3, 2026) after presenting five witnesses. [Dkt. 173, 175]. Defendants rested on the fifth day (Thursday, February 5, 2026) after presenting five witnesses. [Dkt. 178]. The jury was charged on the fifth day (Thursday, February 5, 2026). [Dkt. 178].

On Monday, February 9, 2026, the jury returned its verdict. [Dkt. 200]. The jury concluded that Deputy Alfred used excessive force against Plaintiff and was negligent. *Id*. The jury concluded Plaintiff was comparatively negligent. *Id*. The jury allocated 64% responsibility to Deputy Alfred for Plaintiff's injuries, and 36% to Plaintiff himself. *Id*.

The jury found for Plaintiff on his battery, Bane Act, and IIED claims. *Id*. The jury concluded that the County did not fail to provide adequate training to its police officers, and thus could not be liable on Plaintiff's federal claims. *Id*. The jury awarded $27,350,000 in total damages: $7,250,000 in past pain and suffering and emotional distress; $18,250,000 in future pain and suffering and emotional

3

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS

distress; and $1,850,000 in future economic loss. *Id.*

## III. PLAINTIFF IS NOT ENTITLED TO FEES FOR DEFENDING HIMSELF IN A CRIMINAL PROSECUTION

### A. Criminal Defense Is Not An "Action Or Proceeding To Enforce" Plaintiff's Civil Rights Under 42 U.S.C. § 1983

42 U.S.C. § 1988(b) authorizes fees only "in any action or proceeding to enforce a provision of section[] … 1983." 42 U.S.C. § 1988. On its face, section 1988 does not authorize a court to award attorney's fees except in Plaintiff's civil rights action. *North Carolina Department of Transportation v. Crest Street Community Council, Inc.*, 479 U.S. 6, 12 (1986); *see also Webb v. Board of Education*, 471 U.S. 234 (1985) (plaintiff not entitled to fees related to his administrative proceeding in state court when it was not "part of the proceedings to enforce § 1983"). Indeed, the Ninth Circuit has recognized that attorney's fees incurred in defending against a criminal charge are not compensable as fee-shifting under § 1988. *Borunda v. Richmond*, 885 F.2d 1384, 1389 n.4 (9th Cir. 1988).[1]

Thus, by its plain text, 42 U.S.C. § 1988 authorized fee-shifting only for affirmative litigation to enforce enumerated civil rights statutes. 42 U.S.C. § 1988. Plaintiff's defense in the state's criminal prosecution is not an action to enforce the civil rights law nor is it based on civil rights law, as Plaintiff was defending against an action by the State seeking to enforce a criminal statute and impose criminal penalties against him. The text of § 1988 does not include work performed by Plaintiff's criminal attorney defending against the criminal prosecution. *Id.*; *see*

---

[1] In *Borunda*, the procedural posture was different from this matter. The plaintiff in the action was ultimately acquitted of all criminal charges against him; had presented evidence sufficient to establish that "appellants procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney"; and the attorney's fees were presented to and awarded by the trier of fact as an element of damages (not as fee-shifting awarded by the judge under section 1988).

4

*also* the title of 42 U.S.C. § 1988 ("Proceedings in vindication of civil rights"); *Marshall v. Kirby*, 2010 WL 4923486 (D. Nev., Nov. 29, 2010) ("attorney's fees incurred in handling the underlying criminal matters are not allowed in connection with attorney's fees sought pursuant to 42 U.S.C. § 1988").

**B.    Plaintiff's Criminal Defense Is Not Reasonably Related To The Enforcement Of His Civil Rights Action As It Is Not "Useful And Of A Type Ordinarily Necessary To Advance" Plaintiff's Civil Rights Action[2]**

The Supreme Court in *Webb v. Board of Education*, 471 U.S. 234 (1985) recognized a narrow exception to the principle that § 1988 fees are limited to federal court civil rights work: fees incurred in a related non-judicial proceeding may be compensable if the work was "both useful and of a type ordinarily necessary to *advance* the civil rights litigation." *Id*. at 243 (emphasis added). *Webb* distinguished between fees awarded in cases where a plaintiff is **required** to pursue available state remedies before it can commence proceedings in federal court (*see New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980)), and section 1983 actions which have **no comparable requirement**, *id*., at 240.  The Court emphasized that the fees must be expended on the "litigation;" consequently, it

---

[2] Plaintiff asserts that he is entitled to criminal defense fees, in part, because his criminal counsel obtained an acquittal on the charge under California Penal Code section 245(c); he was found guilty only of violating section 245(a)(1); and therefore, his claim is not barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Plaintiff's moving papers at Dkt. 211 at p. 15). As explained in Defendants' Rule 50(b) motion, Plaintiff is incorrect when he asserts that his conviction under section 245(a)(1) does not bar his claims under *Heck*. [Dkt. 208, Section IV.]  If the court grants Defendants' Rule 50(b) motion on the basis of *Heck*, then judgment should be in favor of Defendants on all of Plaintiff's claims—including his state law claims, [*id*., at Section VII.A]—and Plaintiff would therefore not be entitled to attorneys' fees at all.

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS**

affirmed the district court's denial of the plaintiff's motion for fees related to the administrative proceeding. *Id.* at 243-4.

### 1.    Plaintiff's Criminal Defense Is Not "Ordinarily Necessary" To Advance His Civil Rights Action

A state criminal defense is not "ordinarily necessary to advance" a § 1983 action because it is not a condition precedent to a plaintiff's civil rights action. *See Webb*, 471 U.S. at 243. The defense against criminal charges advances entirely different objectives than the enforcement of a civil rights action, i.e., the avoidance of a conviction and incarceration. Thus, the motivation of a criminal defendant to prevail at trial, or otherwise reap positive benefits from a successful defense, exists separate and apart from a civil rights action.

That a party may utilize successes from the criminal defense in advance of a section 1983 action does not mean that the defense is "necessary to advance" the section 1983 action. This is not akin to an exhaustion requirement where the underlying proceeding was a condition precedent to the maintenance of a subsequent civil suit.

Whether or not Plaintiff benefited from the jury convicting him on the lesser included charge of Penal Code section 245(a)(1) and whether or not this created favorable conditions for his § 1983 suit is incidental to the civil rights action, and not a recognized necessity to advance Plaintiff's section 1983 action.[3] *See Young v. Wolfe*, No. CV0703190RSWLAJWX, 2017 WL 3184167, at *10 (C.D. Cal. July 26, 2017) (no compensation for criminal defense because "Plaintiff's expenditure for

---

[3] As explained in Defendants' Rule 50(b) motion, Plaintiff is incorrect when he asserts that his conviction under section 245(a)(1) does not bar his claims under *Heck*. Dkt. 208, pp. 10–16. And if the court grants Defendants' Rule 50(b) motion on the basis of *Heck*, then judgment should be entered in favor of Defendants on all of Plaintiff's claims—including his state law claims, *id.* at p. 17—and Plaintiff would not be entitled to attorneys' fees.

6

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS**

attorney services in the criminal proceedings was not 'unquestionably, a foreseeable result of [Defendants'] actions'").

### 2.  Plaintiff's Criminal Defense Is Not "Useful" to Plaintiff's Civil Rights Action Because Plaintiff Was Convicted of An Assault With a Deadly Weapon

Work done primarily to achieve a criminal defense objective does not transform into civil rights litigation work simply because it later proves procedurally beneficial to a contemplated § 1983 suit.  Criminal defense requires different legal strategies, the standard of proof is different, and there are completely different elements required to be proven than in a civil rights action, notwithstanding that they arise from the same set of facts.  *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) (presenting claims in one lawsuit with distinctly different claims for relief that are based on different facts and legal theories does not warrant recovery of fees).

Moreover, even if a plaintiff secured an acquittal in a criminal case and later sued for a civil rights violation, the acquittal demonstrates only that the state failed to prove guilt beyond a reasonable doubt.  It does not mean ipso facto that attorney's fees are recoverable, unless it can be shown that the amount of attorney's fees incurred during the criminal prosecution was somehow a direct and foreseeable consequence of the alleged illegal conduct.  *See*, *e.g., Borunda*, 885 F.2d at 1389 (permitting recovery of fees expended in defending against underlying criminal case as compensatory damages because plaintiff was forced to defend himself in criminal case due to opposing party's illegal conduct).

Here, in contrast to the narrow circumstance presented in *Borunda* where the plaintiff was permitted to recover criminal defense attorney fees as compensatory damages, Plaintiff cannot credibly argue that counsel's work on the criminal case was a "necessary predicate" to the viability of the Plaintiff's civil rights action.

7

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS**

(Plaintiff's moving papers, 15:8-9). Accordingly, the request for fees relating to the underlying criminal case should be rejected in full.

### C. Plaintiff Misrepresents the Reason for the Stay in the Civil Rights Case

As set forth above, Plaintiff misrepresents the stay because it did not at all govern "whether the civil case could proceed at all." [*See* Dkt. 211, p. 15:12]. Rather, the stay in the civil proceedings was based on the interests of justice as to both parties. [Dkt. 19]. In particular, the parties stipulated to the stay to protect Plaintiff from being prejudiced in his criminal case by discovery in the civil rights action, not because the criminal case was recognized as some sort of prerequisite to the civil rights action.

### D. Plaintiff Provides No Authority to Support The Award of Fees For His Criminal Defense; Plaintiff's Cited Cases Are Inapposite

Plaintiff's cited cases provide the court with no authority to award fees for the defense of Plaintiff's criminal case. [*See* Dkt. 211, 15:24-16:10]. All of Plaintiff's cases are factually inapposite. As set forth above, *Webb* involved an unrelated administrative proceeding, and the Court upheld both the district court and appellate court's denial of fees for the administrative proceeding. The issues in *Hensley* and *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988) pertained to whether a prevailing plaintiff could recover fees for services on unsuccessful claims. *Ustrak* is thus factually inapposite.

### E. Plaintiff's Criminal Defense Case Is Also Not Ordinarily Expected to Be Tried with His Civil Rights Action

Plaintiff's criminal defense case is neither a pendent claim nor does it comport with the legal definition of "common nucleus of operative fact" (*see Maher v. Gagne*, 448 U.S. 122, 132 (1980)), which requires that the claim be "so interrelated with non-fee claims that [Plaintiff] 'would ordinarily be expected to try

8

them all in one judicial proceeding." *Gerling Glob. Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 808–09 (9th Cir.), *opinion amended on denial of reh'g*, 410 F.3d 531 (9th Cir. 2005).

Here, the State's criminal prosecution and Plaintiff's subsequent civil rights action would not "ordinarily be expected" to be tried "in one judicial proceeding." *Gerling*, 400 F.3d at 809.  The two proceedings are governed by different procedural rules, with different burdens of proof, and they are adjudicated by different factfinders.  The fact that these proceedings are separate negates any argument that they arise from a "common nucleus of operative fact."  *Id.* at 808.  Thus, Plaintiff's criminal defense fees should not be awarded.

**F.      The Court Should Not Award Fees for Mr. Bryant's or Mr. Duckett's Time, or for Certain Time Entries for Mr. Diggs**

James Bryant represented Plaintiff in his defense against the criminal case. That was his sole involvement in this matter and, as set forth above, his fees should not be included in any award. The same is true for the fees of Ryan Duckett.

Additionally, Rodney Diggs performed work on both the criminal and civil case, but he block-billed his time and included work for criminal and civil matters in the same entries.  As explained below, Plaintiff cannot meet his burden of establishing the hours expended on the relevant causes of action when the attorney block bills in this manner and fails to segregate time for which fees are recoverable and time for which fees are not.  *See* Section V(C), *post*.  Accordingly, the court should not award fees for block time entries that include work on both the criminal and civil matters.

Separately, no evidence in the form of timekeeping records were submitted to substantiate Mr. Bryant's time, and therefore the court should reduce the award accordingly.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (applicant "must submit evidence in support of those hours worked"); *Hensley v.*

9

*Eckerhart*, 461 U.S. 424, 430 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.")[4]

## IV.    PLAINTIFF'S LODESTAR SHOULD BE REDUCED IN ACCORDANCE WITH *KERR* AND *HENSLEY*

### A.    Legal Standard

To determine a "reasonable attorney's fee," courts employ the "lodestar" method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* "After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id.* at 363-64. The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

The burden is on plaintiffs to prove up their fees. "The party seeking fees

---

[4] To the extent that the Plaintiff attempts to submit evidence of Mr. Bryant's timekeeping records before the date of the hearing, the court should reject them as untimely.

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS

bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

Defendants do not dispute counsel's qualifications, training, or years of experience (factor 3 and 9). Defendants also do not dispute that the jury returned a verdict in Plaintiff's favor as to five out of six of his claims (factor 8). Nonetheless, based on the remaining *Kerr* and *Hensley* factors, and the Declaration and supporting documents of Mr. Knapton regarding reasonable rates, Plaintiff's lodestar should be reduced accordingly.

**B.** **Plaintiff's Proposed Rates For Each Legal Professional Should Be Reduced to Reasonable Rates (Factor 5)**

Mr. Knapton is a senior partner in the Los Angeles office of Ropers Majeski, with nearly 30 years' of experience in analyzing and opining on the reasonableness of attorney fee claims, equally divided between supporting and opposing fee petitions. Knapton Decl. ¶¶ 1-8. Mr. Knapton's status as an expert in the field is without question – he has been qualified as a testifying expert over 70 times. *Id.,* at ¶ 8; Exhibit 1 (Mr. Knapton's curriculum vitae).

Mr. Knapton analyzes both the number of hours counsel expended, and the hourly billing rates that would reflect "'the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Welch*, 480 F.3d at 946 (citation omitted). Mr. Knapton "review[s] legal bills almost every day and, because of this … [has] an understanding of what rates are for the Los Angeles area for legal work over the period at issue from 2014 to the present time." *Id.* ¶ 33. Mr. Knapton cross-checks his personal knowledge by referencing the Real Rate Report published by Wolters Kluwer as an objective source of the rates charged by similarly experienced Los Angeles counsel. *Id*. ¶¶ 34-37. The Ninth Circuit has approved the use of the Real

11

Rate Report as a helpful source for rates in *LA Int'l Corp. v. Prestige Brands Holdings, Inc*., 168 F.4th 608 (9th Cir. 2025). *Id.* at ¶ 38.  The Real Rate Report has been accepted by many district courts in this district. *Id.* at ¶¶ 39-40; *Shapiro v. Pemmasani*, 2024 U.S. Dist. LEXIS 236146, *12 (C.D. Cal., July 23, 2024).

The hourly rates reported in the Real Rate Report are calculated "from invoice line-item entries contained in invoices received and approved by participating companies through Wolters Kluwer." Knapton Decl., ¶ 41; Ex. 3, p. 256 (2025 Real Rate Report). As this Court has observed, the Real Rate Report is regularly relied on as a reliable source. *See e.g., Zeigler v. Cnty. of San Luis Obispo*, 2023 WL 3432238, at *5 (C.D. Cal., March 1, 2023) (relying "primarily" on the Real Rate Report to establish rates in a civil rights case, recognizing it as "'a much better reflection of true market rates than self-reported rates in all practice areas.'") (quoting *Rolex Watch USA Inc. v. Zeotec Diamonds Inc*., No. 21-cv-089-PSG-VBKx, 2021 WL 4786889, at *2 (C.D. Cal. Aug. 24, 2021)).

In establishing hourly rates, a district court can appropriately consider "'rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney.'" *Hiken v. Dep't of Def*., 836 F.3d 1037, 1044 (9th Cir. 2016) (citation omitted).

Mr. Knapton's proposed rates and hours for each of Plaintiff's counsel and paralegal are:

| Timekeeper | Hours | Work dates range | Real Rate Report Rates | Fees (Rounded) |
|---|---|---|---|---|
| Galipo | 405.9 | 6-14-2025 to 3-24-2026 | $1,334 (Q3) | $541,471 |
| Masongsong | 250.1 | 7-1-2025 to 3-25-2026 | $700 (Median) | $175,070 |
| Gilbert | 43.7 | 6-4-2025 to 3-25-2026 | $226 (Median) | $9,877 |
| Diggs | 1,249.0 | 9-16-2021 to 3-18-2026 | $875 (Median) | $1,092,875 |

| Timekeeper | Hours | Work dates range | Real Rate Report Rates | Fees (Rounded) |
|---|---|---|---|---|
| Duckett[5] | 218.85 | 7-16-2024 to 6-20-2025 | $700 (Median) | $153,195 |
| Tanter | 297.0 | 11-3-2025 to 3-10-2026 | $461 (Q1) | $136,917 |
| Williams | 260.1 | 7-23-2021 to 3-10-2026 | $226 (Median) | $58,783 |
| Metoyer | 119.5 | 9-16-2021 to 3-25-2026 | $00.00* | $00.00 |
| Feather | 80.5 | 2-13-2025 to 3-25-2026 | $00.00* | $00.00 |
| Totals before adjustments | 2,924.65 | | | $2,168,188 |

*Time for clerical or secretarial work is not usually billed in Los Angeles as this kind of work is usually included as "overhead" and is considered a component in the professional's hourly rates.

Mr. Knapton's proposed lodestar with adjustments is $1,683,201. Knapton Decl., ¶¶ 61, 63. His table with a recapitulation of the adjustments is below:

| Issue | Amount | Explanation |
|---|---|---|
| Fees Requested | $3,679,030 | Motion at page 21 |
| Less Bryant hours/fees | -$739,500 | Solely criminal case |
| Adjusted balance once Bryant time and fees deducted | $2,939,530 | At requested rates; no detail provided |
| Balance 2,924.65 hours (-$771,342 rates adjustment) | $2,168,188 | All time adjusted rates see §49, above |
| Less Duckett 218.85 | -$153,195 | Solely criminal case – at adjusted rates |
| Less Diggs -270.55 | -$236,731 | Stay at adjusted rates |
| Less Williams -45.1 | -$10,960 | Stay at adjusted rates |

[5] The hours for Mr. Duckett have a discrepancy as both 23.9 hours and 19.4 hours are listed for Phase 1 Criminal Case Development During Stay. 23.9 hours is correct.

13

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS**

| Issue | Amount | Explanation |
| --- | --- | --- |
| Less portion of Diggs -19.0 | -$16,625 | Block billed entries combining criminal and civil work; at adjusted rates |
| Less portion of Williams 1.5 | -$339. | Block billed entries combining criminal and civil work; at adjusted rates |
| Subtotal 2,369.65 hours | $1,750,311. | Request less Bryant, Duckett and portion of Diggs hours; at adjusted rates |
| Galipo time too vague 40.6 hours | -$54,160 | At adjusted rates |
| Masongsong travel 18.5 hours | -$12,950 | At adjusted rates |
| Balance 2,310.55 hours | $1,683,201 | Possible Lodestar |

Knapton Decl., ¶ 61.

The Court should not place much weight on Plaintiffs' counsel's declaration, given its self-serving nature, or the declaration of Carol Sobel. *See Zeigler v. Cnty. of San Luis Obispo*, 2023 WL 3432238, *4 (C.D. Cal. Mar. 1, 2023) (*quoting Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS (NLS), 2010 WL 1912867, at *4 (S.D. Cal. Apr. 21, 2010) ("[T]he value of these declarations is questionable because they are both self-serving and self-perpetuating. Each of these attorneys works [in this area of the law] and claiming that the rates charged by

14

Plaintiff's counsel, no matter how high, is in their own interest. A high award in this case would support the declarants' own high hourly rate requests in the future.")).

As this Court has held, rates encroaching on the outer bounds of the fee range cannot be considered prevailing. Andersen Decl., ¶ 3, Ex. A (Order Granting in Part and Denying in Part Motion for Attorneys' Fees at 4, *Anaheim Union High Sch. Dist. v. J.E.,* 2:12-cv-6588-MWF (C.D. Cal. July 11, 2013) (ECF No. 50).) Even despite a supporting declaration, fee requests with above-market rates for Los Angeles must be reduced.  Andersen Decl., ¶ 4, Ex. B; RJN, Ex. B (Order Granting in Part Motion for Statutory Attorney's Fees and Costs at 2, *Magic Laundry Servs., Inc. v. Workers United Serv. Emp. Int'l Union*, 2:12-cv-09654- MWF-AJW (C.D. Cal. June 21, 2013) (ECF No. 66).)

### C.    The Time and Labor Required Is Not Atypical; Questions Involved Were Not Particularly Novel or Difficult; No Evidence of Undesirability (Factors 1, 2 and 10)

Plaintiff cannot credibly argue that the time and labor his counsel expended on this case was extraordinary.  The difficulty of the case presents no particularly extra burden beyond any typical trial.  *Cf.* Dkt. P's motion: 10:8-10 ("To succeed, Plaintiff's counsel had to conduct depositions, review numerous discovery materials, retain, pay, and consult with multiple experts, and spend almost two weeks away from the office at trial.)  Here, Plaintiff put on only five witnesses which they presented within two days, Defendants presented five witnesses for which Plaintiff's counsel had to prepare, and the jury was charged after the fifth day of trial, with the first day of trial being devoted entirely to jury selection.

Neither can Plaintiff credibly argue that the case was novel or involved difficult questions, or that there is a built-in bias in favor of police.  Excessive force cases may have been difficult in the past; however, given the current climate, the opposite can be argued in civil rights cases involving excessive use of force today.

15

*Cf.* Dkt. 211, p: 8:23 (indicating difficulty based on inherent bias in favor of the police).  Also, any difficulties involved in the fact that Plaintiff attempted to reverse his vehicle into Deputy Alfred were extremely mitigated because Plaintiff prevailed on a motion in limine to exclude the "damaging evidence" of the Plaintiff's underlying conviction.  *Id.* at p: 8:24.

Also, Plaintiff has not offered evidence regarding the undesirability of the case  *Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (in support of an award of San Francisco rates, plaintiffs offered numerous declarations of San Francisco and Sacramento attorneys averring that Sacramento attorneys and law firms with requisite expertise and experience were unavailable).

**D.      Plaintiff's Fees Should Be Reduced For Defendants Prevailing on the *Monell* Claim; The Amount of the Jury's Award Has No Bearing on the Fee Award (Factor 8)**

Plaintiff did not prevail on his *Monell* claim.  Because that claim was based on different facts and legal theories than the excessive force and state law claims (namely, whether San Bernardino County maintained a policy or custom of failing to train its law enforcement officers in the constitutional and proper use of force, rather than whether Deputy Alfred used excessive force in this particular case), work on the "unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  No fees should be awarded for Plaintiff's counsel's work on the *Monell* claim.

**E.      Plaintiff's Misrepresentations**

Defendants' position was never that the case had "little value" (P's motion at 8:28), and Plaintiff misrepresents the Defendants' position in stating otherwise.  Also, Defendants' "position" about the case is irrelevant and has no bearing on Plaintiffs' motion for attorney's fees, which is not about the value of the case.

16

Plaintiff can get a $1 million or $1 billion dollar award for their case, and yet, their substantive evidence in support of an award of attorney's fee must be based on evidence of their attorney's fees and not based on the amount of the award.

## V.    OTHER FACTORS REQUIRING REDUCTION IN TOTAL FEE AWARD

### A.    Fees for Legal Assistants' Time Should Not Be Awarded

Whether work performed by legal assistants should be billed is determined by the local custom and practice, and in Los Angeles firms do not bill for this type of work.  Knapton Decl., ¶ 49.  An exception can be made if the assistant's work constitutes "substantive legal work" or work traditionally done by an attorney, and where a legal assistant is "qualified through education, training, or work experience to perform substantive legal work." *See Avialae S De Rl De Cv v. Cummins Inc*., No. EP-19-CV-00380-FM, 2023 WL 5163901, at *3 (W.D. Tex. Aug. 3, 2023).

The billing records here indicate that fees should not be awarded for time spent by legal assistants because that work was primarily clerical and not legal.  Dkt. 211-19 (Timekeeping record for Darci Gilbert showing multitude of line items for downloading and saving documents, printing, etc.); Dkt. 213-1, p. 44 (Timekeeping records for Le Chaune Metoyer showing multitude of line items for non-legal work such as calendaring, coordinating, service); Dkt. 213-1, p. 48 (Timekeeping records for Alexandra K. Feather showing multitude of line items for non-legal tasks, i.e., "receive and distribute", coordinate).

### B.    Plaintiff's Fees for Trial Should Be Reduced Due to Overstaffing

This Court must exclude from the initial fee calculation hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing S.Rep. No. 94–1011, p. 6 (1976).)  "Cases may be overstaffed … [and c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in

17

private practice ethically is obligated to exclude such hours from his fee submission." *Id.* Here, Mr. Galipo handled opening and closing statements, and the examination of all of Plaintiff's witnesses except for the examination of Plaintiff, which was handled by Mr. Diggs. Andersen Decl., ¶ 3. Thus, fees submitted for work during trial by attorneys and paralegals other than Mr. Galipo and Mr. Diggs constitute overstaffing, and the fees should be reduced accordingly. Furthermore, the fees for Mr. Diggs should reflect his examination of only one witness.

### C.    Total Award Should Be Reduced By The Amount of Time Plaintiff's Counsel Spent Working On Criminal Cases and the *Monell* Claim

As set forth above, "the fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). An applicant may fail to carry his burden when block billing is used, making it more difficult to determine how much time is spent on particular activities. *Id.*; *see also Hensley,* 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims"); *Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly documented" billing); *Shapiro v. Pemmasani*, No. CV 23-4762-KK-AGRX, 2024 WL 5275497, at *3 (C.D. Cal. July 23, 2024) (applicant must "segregate fees between claims for which [fees] are recoverable and claims for which they are not") (citing to *Tony Gullo Motors*, 212 S.W.3d at 311); *see also Reynolds Metals Co. v. Alperson*, 599 P.2d 83, 129 (Cal. 1979) ("A litigant may not increase his recovery of attorney's fees by joining a cause of action in which attorney's fees are not recoverable to one in which an award is proper.").

Evidence in support of reducing the fee award includes improper inclusion of

18

fees for non-compensable work on the *Monell* claim as well as on Plaintiff's criminal defense. *See, i.e.,* Dkt. 213-1 (Timekeeping for Mr. Diggs for dates 10/1/21, 10/14/21, and 12/10/21 (showing combined criminal and civil entries) and 2/15/23 (research on *Monell* liability). Recoverable time should not be grouped with nonrecoverable time. *See Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672, 689 (2000). As set forth above, because Plaintiff did not prevail on his *Monell* claim and because work on his criminal defense is nonrecoverable, he is therefore not entitled to fees related to either type of work. *See also*, Knapton Decl., ¶¶ 56-58 (recommending further adjustment downward for entries that include work on both criminal and civil cases).

## VI.   A 2.0 MULTIPLIER IS NOT APPROPRIATE

### A.   No Multiplier Is Warranted Even Though The Case Was Taken On Contingency

"Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar 'are the exception rather than the rule.'" *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (per curiam) (*quoting Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)). "[A] multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citations omitted). Courts "may adjust the lodestar figure upward or downward based upon the factors enunciated in *Kerr*." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 715–16 (S.D. Cal. 2014), *aff'd sub nom. Goldkorn v. Chipotle Mexican Grill, Inc.*, 669 F. App'x 920 (9th Cir. 2016).

That Plaintiff's counsel took this case on contingency does not warrant a

19

multiplier under federal law. "The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does *not* prevail." *Id.* (*Cf.* Dkt. 216, Amended Decl. of Dale Galipo at ¶ 33).

While California law permits a multiplier for contingency cases (*see* Knapton Decl., ¶ 62), based on the *Kerr* factors set forth in Section IV, no multiplier is warranted here.

**B.    Plaintiff's Request For A Multiplier Is Erroneous And Overbroad, And This Is Not A "Rare" Or "Exceptional" Case Warranting It**

The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "rare" and "exceptional" cases, supported by both "specific evidence" in the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). "[T]here is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A.*

20

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES; DECLARATIONS OF KAYLEIGH ANDERSEN AND GERALD KNAPTON AND EXHIBITS

*ex rel. Winn*, 559 U.S. 542, 546 (2010).

Here, Plaintiff's motion states that his requested lodestar multiplier is supported by the fact that he prevailed on his Bane Act claim under California law. (P's motion at 16.)  The notice of motion also indicates that the multiplier is requested pursuant to Civil Code section 52, et seq.  But in Plaintiff's motion, he concedes—in light of the difference between federal and state law—that there is generally *no fee multiplier* permitted under federal law, citing to *Burlington v. Dague*, 505 U.S. 557, 567 (1992), whereas under California law, fee multipliers may be available where the contingent fee market would support it, citing to *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001).

Plaintiff's request for a multiplier erroneously relies upon a Bane Act state law cause of action to bootstrap an overbroad request for fees for *all causes of action*, including his claim arising under 42 U.S.C. § 1983.  Though a state law Bane Act claim may permit a fee multiplier under Civil Code § 52(a), Plaintiff's motion inexplicably applies the 2.0 multiplier *to the entire $3.679 million requested*—including every hour spent on the federal § 1983 claim, the criminal defense fees, discovery, and all federal work—*with zero apportionment*.  This results in an outrageous and indiscriminate request for $7,358,060 in attorney's fees.

At a minimum, the multiplier can only be applied to the portion of the fee attributable to the Bane Act claim, and only to the extent it is severable from the § 1983 work.  But Plaintiff's motion never attempts this analysis.  Nor can it.  The verdict form did not assign separate damages to the Bane Act claim alone, as opposed to the § 1983 claim, and Plaintiff's motion offers zero basis for allocating hours between the various claims.  If the court is inclined to award any multiplier at all (it should not), it must first require Plaintiff to perform an apportionment—and, regardless, any *competent* apportionment would have to dramatically reduce the base to which the multiplier applies, since the Bane Act and § 1983 excessive force

21

claims were litigated on an essentially identical factual theory.

**VII.   CONCLUSION**

For the reasons set forth herein, the Plaintiff's lodestar should be substantially reduced and fees awarded in an accordingly reduced amount.

DATED:  April 8, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _____/s/ Kayleigh Andersen_____
Eugene P. Ramirez
Kayleigh Andersen
Angela Brunson
Attorneys for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED



22

*Certificate of Compliance with L.R. 11-6.2*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,507 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 8, 2026

By:     /s/ Kayleigh Andersen
        Kayleigh Andersen

---

1