LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA  91367
Telephone:   (818) 347-3333
Facsimile:   (818) 347-4118

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

STEFFON BARBER, an individual,

        Plaintiff,

    v.

COUNTY OF SAN BERNARDINO
and DEPUTY CHRISTOPHER
ALFRED,

        Defendants.

Case No. 5:22-cv-00625-KK-DTBx

*[District Judge, Kenly Kiya Kato,
Magistrate Judge, David T. Bristow]*

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' RENEWED
MOTION FOR JUDGMENT AS A
MATTER OF LAW (RULE 50b)**

*[Filed concurrently with Declaration of
Renee V. Masongsong and exhibits
thereto]*

Date: June 7, 2026
Time: 9:30 a.m.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)

## TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................1

II.     LEGAL STANDARD ...............................................................................2

III.    THE JURY'S FINDING OF EXCESSIVE FORCE IS SUPPORTED BY SUBSTANTIAL EVIDENCE ........................................2

        IV.     DEPUTY ALFRED IS NOT ENTITLED TO QUALIFIED IMMUNITY ...............................................................................9

        A.      Alfred's Shooting Was Excessive ..........................................9

        B.      Barber's Right Was Clearly Established ................................9

        C.      Violation of Police Training Weighs Against Granting Qualified Immunity ............................................................11

        D.      Defendants' Cited Cases Are Inapposite .............................12

V.      PLAINTIFF'S CLAIMS ARE NOT *HECK-* BARRED ...........................14

VI.     DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ......................................................18

        A.      *Heck* Does Not Bar Plaintiff's State Law Claims ...............18

        B.      Plaintiff Presented Sufficient Evidence at Trial to Support the Verdict on Plaintiff's State Law Claims .......................18

                1.      *Battery and Negligence* ...............................................18

                2.      *Bane Act* ....................................................................19

                3.      *Intentional Infliction of Emotional Distress* .............20

VII.    CONCLUSION .......................................................................................21

L.R. 11-6.2. CERTIFICATE OF COMPLIANCE .............................................22

-i-

# TABLE OF AUTHORITIES

<u>Cases</u>

*A.D. v. Cal. Highway Patrol*
    712 F.3d 446 (9th Cir. 2013) ................................................................................2, 9

*Acosta v. City & Cnty. of S.F.*
    83 F.3d 1143 (9th Cir. 1996) ...........................................................................passim

*Blanford v. Sacramento Cnty.*
    406 F.3d 1110 (9th Cir. 2005) ..................................................................................12

*Bryan v. McPherson*
    630 F.3d 805 (9th Cir. 2010) .....................................................................................3

*Cornell v. City and County of San Francisco*
    17 Cal. App. 5th 766 (2017) .....................................................................................20

*Costa v. Desert Palace, Inc.*
    299 F.3d 838 (9th Cir. 2002) .....................................................................................2

*Deorle v. Rutherford*
    272 F.3d 1272 (9th Cir. 2001) ...................................................................................4

*Drummond v. City of Anaheim*
    343 F.3d 1052 (9th Cir. 2004) .................................................................................11

*Dupree v. Younger*
    598 U.S. 729 (2023) ...........................................................................................16, 17

*Espinosa v. City & Cnty. of San Francisco*
    598 F.3d 528 (9th Cir. 2010) .....................................................................................3

*Estate of Aguirre v. Cnty. of Riverside*
    131 F.4th 702 (9th Cir. 2025) .............................................................................15, 16

*Estate of Hernandez v. City of Los Angeles*
    139 F.4th 790 (9th Cir. 2025) .............................................................................12, 16

*Glenn v. Washington Cnty.*
    673 F.3d 864 (9th Cir. 2011) .....................................................................................3

*Gonzalez v. City of Anaheim*
    747 F.3d 789 (9th Cir. 2014) .....................................................................................3

*Graham v. Connor*
    490 U.S. 386 (1989) ...................................................................................................3

*Harris v. Roderick*
    126 F.3d 1189 (9th Cir. 1997) ...................................................................................3

*Havens v. Johnson*
    783 F.3d 776 (10th Cir. 2015) .................................................................................17

-ii-

*Headwaters v. Cnty. of Humboldt*
    240 F.3d 1185 (9th Cir. 2000)..................................................................................3

*Heck v. Humphrey*
    512 U.S. 477 (1994) ....................................................................................passim

*Hung Lam v. City of San Jose*
    869 F.3d 1077 (9th Cir. 2017) ...............................................................................15

*Jensen v. Exc, Inc.*
    82 F.4th 835 (9th Cir. 2023).................................................................................16

*Johnson v. Paradise Valley Unified Sch. Dist.*
    251 F.3d 1222 (9th Cir. 2001)................................................................................2

*Josephs v. Pac. Bell*
    443 F.3d 1050 (9th Cir. 2006)................................................................................2

*Mayfield v. City of Mesa*
    131 F.4th 1100 (9th Cir. 2025)............................................................................17

*Mullenix v. Luna*
    136 S. Ct. 305 (2015) ..........................................................................................14

*Nehad v. Browder*
    929 F.3d 1125 (9th Cir. 2019)..............................................................................12

*Orn v. City of Tacoma*
    949 F.3d 1167 (9th Cir. 2020)...............................................................1, 9, 10, 19

*Ortiz v. Jordan*
    562 U.S. 180 (2011) ............................................................................................15

*OTR Wheel Engineering v. West Worldwide Services*
    897 F.3d 1008 (9th Cir. 2018) .............................................................................15

*Pavao v. Pagay*
    307 F.3d 915 (9th Cir. 2002)..................................................................................2

*People v. Marsh*
    37 Cal. App. 5th 474 (2019)................................................................................17

*Plumhoff v. Rickard*
    134 S. Ct. 2021 ...................................................................................................13

*Reese v. Cnty. of Sacramento*
    888 F.3d 1030, 1036 (9th Cir. 2018) ..............................................................17, 20

*Reeves v. Sanderson Plumbing Prods., Inc.*
    530 U.S. 133 (2000) ..............................................................................................2

*Rivas-Villegas v. Cortesluna*
    595 U.S. 1 (2021) ................................................................................................10

-iii-

*Smith v. City of Hemet*
    394 F.3d 689 (2005) .................................................................................3

*Tabares v. City of Huntington Beach*
    988 F.3d 1119 (9th Cir. 2021)...............................................................19

*Tortu v. Las Vegas Metro. Police Dep't*
    556 F.3d 1075 (9th Cir. 2009)...............................................................15

*United States v. Reese*
    2 F.3d 870 (9th Cir. 1993) ....................................................................20

*Villanueva v. California*
    986 F.3d 1158 (9th Cir. 2021)...........................................................1, 9

*Wilkins v. City of Oakland*
    350 F.3d 949 (9th Cir. 2003).................................................................12

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010).................................................................12

*Williams v. City of Sparks*
    112 F.4th 635 (9th Cir. 2024)..........................................................13, 14

Statutes

Cal. Gov't. Code § 815.2 ...............................................................................21

California Penal Code § 835(a) ..................................................................3, 18

Other Authorities

CACI 1305B ...................................................................................................18

CACI 1600.......................................................................................................20

CACI 441 .........................................................................................................19

-iv-

## I.    INTRODUCTION

Defendants' post-verdict motion made pursuant to Federal Rules of Civil Procedure, Rule 50(b), for judgment as a matter of law, should be denied in full. Under any objective standard of review, but particularly when viewing the facts and reasonable inferences in the light most favorable to Plaintiff as this Court must, the jury's verdict must stand. This Court has already correctly denied Defendants' Rule 50(a) motion, and the same result is mandated here. As discussed in detail below, substantial evidence was presented at trial supporting the jury's finding that Deputy Alfred's use of deadly force against Steffon Barber violated Barber's right to be free from excessive and unreasonable force under federal and state law. Alfred's self-serving claims that Barber's vehicle posed an immediate threat of death or serious bodily injury necessitating deadly force were refuted by contradictory evidence and Alfred's general lack of credibility. The overwhelming evidence at trial indicated that the Trailblazer moved back slowly a short distance, and Alfred could have stepped three to four feet to his right into a wide opening in the fence within one second rather than shooting. Additionally, the evidence showed that Alfred did not announce himself as a police officer or give Barber a verbal warning that he was prepared to use deadly force prior to shooting.

Alfred is not entitled to qualified immunity because it was clearly established at the time of the shooting that deadly force is not justified where an officer can step out of the path of a slow-moving vehicle rather than shooting. *See Villanueva v. California*, 986 F.3d 1158, 1172-73 (9th Cir. 2021); *Orn v. City of Tacoma*, 949 F.3d 1167, 1179 (9th Cir. 2020); *Acosta v. City & Cnty. of S.F.*, 83 F.3d 1143, 1146-47 (9th Cir. 1996). *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar Plaintiff's claims here, where Defendants waived this affirmative defense at trial, Defendants failed to raise any *Heck* issue under Rule 50(a), this Court correctly held in denying summary judgment that Defendants' *Heck* defense was forfeited and lacked

-1-

substantive merit, and additional evidence from Barber's criminal trial does not establish that the jury's verdict necessarily invalidates Plaintiff's conviction.

## II.   LEGAL STANDARD

A party seeking judgment as a matter of law under Rule 50(b) has a "very high" standard to meet. This "high hurdle recognizes that credibility, inferences and factfinding are the province of the jury[.]" *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A court ruling on a Rule 50(b) motion may not substitute its own view of evidence for that of a jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* "Further, unlike a motion to dismiss or motion for summary judgment, [the court] must defer to the facts as they were reasonably found by the jury[.]" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013).

## III.   THE JURY'S FINDING OF EXCESSIVE FORCE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Substantial evidence was presented at trial to support the jury's finding that Alfred violated Barber's right to be free from excessive force under the Fourth Amendment. "Fourth Amendment claims of excessive or deadly force are analyzed

-2-

under an objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). When evaluating an excessive force claim, the inquiry is whether the deputy's actions are "objectively reasonable" in light of the facts and circumstances confronting him. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Law enforcement deputies may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his escape will result in serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Governmental interests to balance against the type of force used include the following factors identified in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the deputies' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. Other significant factors to consider are the availability of alternative methods to effectuate an arrest or overcome resistance and whether the officer gave a warning that deadly force would be used. *Headwaters v. Cnty. of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014); *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (en banc).

Under the facts of this case, the most important *Graham* factor is whether Barber posed an immediate threat of death or serious bodily injury to Alfred at the time of the shooting. *Bryan v. McPherson*, 630 F.3d 805, 826 (9th Cir. 2010). As Plaintiff's police practices expert, Scott DeFoe, testified at trial, pursuant to basic police training and California Penal Code § 835(a), a potential threat or fear of future harm does not rise to the level of an immediate threat. TT-II: 328:23-330:8, 337:20-338:14. Along these lines, "[a] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). An

-3-

officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.*

The following evidence presented at trial clearly supports a finding that Barber posed no immediate threat of death or serious bodily injury to Alfred or anyone else at the time of the shooting:

- When Alfred responded to the scene, he had no information that anyone had been injured or that any crime had been committed. TT-II: 200:13-21, 201:5-17. The nature of the call was a disagreement about getting out of a shared driveway, a lower-level call for service. TT-II: 311:19-312:25. Alfred never saw a firearm or other weapon in Barber's hand or in the Trailblazer. TT-II: 328:3-16; TT-III: 585:9-13. When Barber entered his vehicle, he was not under arrest. TT-II: 327:11-13.

- The equipment Alfred wore at the time of the incident was normal equipment worn by deputies. TT-II: 194:18-23, 195:8-14, 363:9-14. Alfred was the point guard of his high school varsity basketball team, and basketball players are trained to move laterally. TT-II: 194:1-4, 220:21-23. Alfred was 31 years old at the time of this incident, and he kept in shape. TT-II: 194:6-12.

- Alfred never announced himself as a police officer during this incident. TT-II: 202:18-24, 208:13-15. Barber did not know it was law enforcement speaking to him and never saw any police lights. TT-III: 461:1-16. Alfred had been trained to identify himself as law enforcement, and according to DeFoe, it would have been important for him to do so, especially in the dark at night. TT-II: 208:16-22, 316:11-317:8. Alfred's patrol car was not visible in the street to Barber. TT-II: 198:11-15, 315:1-11.

- Alfred used profanity with Barber, even though the department's policy is to refrain from using profanity because part of the training is to de-escalate these situations. TT-II: 202:23-203:8.

- Alfred was trained in the concepts of cover and concealment and tactical positioning, TT-II: 211:21-212:1, but he chose to position himself behind the Trailblazer. TT-II: 218:3-8.  Prior to Barber entering the Trailblazer, Alfred saw that the Trailblazer's lights were on and its engine was running, giving the impression that it was going to leave.

-4-

TT-II: 205:24-206:11, 208:2-6, 220:9-17, 323:4-13, 324:10-24. Alfred knew the only way to leave the driveway was to reverse out. TT-II: 352:7-15. Approximately two seconds passed between the Trailblazer door closing and the engine revving, and approximately three seconds passed between the door closing and the first shot. TT-III: 416:5-418:15. When Barber closed the Trailblazer's door, Alfred thought Barber was going to back up. TT-II: 220:9-17. Even when Alfred saw the reverse lights come on, and, as the jury heard he stated in his initial interview, Alfred thought at that time Barber was getting ready to leave, Alfred still did not move out of the way. TT-II: 207:7-208:2-6, 217:11-18, 220:9-17, 225:4-9.

- When the Trailblazer started backing up, Alfred just stood there. TT-II: 222:13-24. Instead of moving out of the way as trained, Alfred made a radio dispatch. TT-II: 222:25-11, 224:20-225:9.

- At the time of the shooting, there was an opening to the west side, adjacent to the wooden fence, approximately 3 to 4 feet to Alfred's right. TT-II: 209:10-13, 212:19-25, 220:2-5. The opening was approximately 8 to 15 feet wide. TT-II: 211:4-9, TT-IV: 617:2-25, 622:22-25. Alfred saw that opening before the shooting. TT-II: 209:10-13, 210:8-16. It would have taken Alfred 1 second to move 3 to 4 feet to his right. TT-II: 221:14-22, 250:3-13, TT-III: 426:2-7. According to DeFoe, a reasonable deputy in this position would have just moved 3 to 4 feet into the opening rather than shooting. TT-II: 324:22-325:2, 326:4-327:10.

- According to DeFoe, Alfred should never have positioned himself behind the Trailblazer; rather, the safest place to position himself would be in the opening. TT-II: 320:22-322:23, 326:19-22. Tellingly, after the shooting, Alfred positioned himself in the opening, as did the deputies who responded after the shooting. TT-II: 248:17-23; TT-III: 581:6-20, 593:7-594:2.

- At the time of the shooting, Alfred understood that police training and the department's policy on shooting at moving vehicles states that deputies shall not shoot at a moving vehicle and shall step out of the way rather than shooting, when feasible. TT-II: 212:2-18, 223:3-5, 230:17-231:1.

-5-

- As Plaintiff's expert Robert Morales explained to the jury, Alfred would have had time to move out of the way rather than shooting. TT-III: 425:8-13, 425:21-426:20. The Trailblazer was on a low-friction surface, meaning it would have taken longer for the Trailblazer to gain traction and move backwards. TT-III: 416:22-417:7. At the time of the first shot, the Trailblazer was either not moving or had moved back only about 1 foot and was moving slowly, less than 1 mile per hour. TT-III: 411:11-19, 419:11-19. At the time of the third shot, the Trailblazer had moved about 1.4 feet total. TT-III: 9-19. Alfred was at least 25 to 30 feet from the Trailblazer when it started backing up. TT-II: 222:19-21; TT-III: 413:11-24, TT-IV: 620:4-24. The maximum speed the Trailblazer reached was 3.4 miles per hour, which is average human walking speed. TT-III: 421:14-422:1, 425:14-20. Defendants' own witness estimated the maximum speed of the Trailblazer to be 2.7 to 3.1 miles per hour. TT-IV: 651:13-25. The Trailblazer moved backward only about 10 to 13 feet before Barber was removed from the vehicle. TT-II: 197:11-23, 223:12-14; TT-III: 409:7-12, 411:20-412:12, 587:21-588:8 TT-IV: 650:5-15.

- Alfred intentionally pressed the trigger six times. TT-II: 204:3-5, 223:15-16. Alfred was trained that he must justify every shot fired. TT-II: 204:6-8.

- After the shooting, Barber's foot was on the brake. TT-III: TT-III: 409:7-12, 412:4-6, 579:2-12, 581:21-582:4.

- Alfred did not give Barber a verbal warning that he was going to shoot. TT-II: 223:19-21.

- When Alfred was firing, he was aiming for the headrest. TT-II: 204:9-11. One of Alfred's shots struck Barber in the back of the head. TT-II: 204:12-15. Alfred knew that striking someone in the head with a bullet would cause death or permanent serious injury. TT-II: 204:16-19.

- According to DeFoe, Alfred was never about to be run over by the Trailblazer, and there was no immediate threat of great bodily injury or death immediately prior to or at the time of the shooting. TT-II: 328:23-329:2. An officer cannot justify a shooting by simply saying that he thought he was about to be run over—the fear must be objective, and a fear of future harm, including speculation that maybe the Trailblazer could have gone through the wooden fence, is insufficient. TT-II:

-6-

329:10-21, 337:21-338:14. Police training and standards instruct that deadly force can only be used when the person has the present ability, opportunity, and apparent intent to cause death or serious bodily injury, which, according to DeFoe, was not the case here. TT-II: 330:20-331:334:7.

Additionally, the jury likely found that Alfred's credibility was at issue, based on the following discrepancies in Alfred's testimony:

- At trial, Alfred initially testified that when he saw that the Trailblazer's lights were on and heard its engine idling, he did not think the Trailblazer was about to leave. TT-II: 205:24-206:14. But Alfred was impeached with a directly contrary statement in his interview, that at that time he thought Barber was getting ready to leave. TT-II: 207:7-208:2-6, 220:9-17.

- At trial, Alfred testified that he was positioned *ahead* of the fence opening to his west/right when Barber entered the Trailblazer. TT-II: 213:19-21. Alfred was impeached with his inconsistent deposition testimony that he was *behind* the opening, and he did not move into the opening because he did not want to move in the direction of a vehicle that was reversing. TT-II: 213:24-214:19, 215:24-217:3, 229:7-230:8. Plaintiff also introduced Alfred's interview statement that there was no opening at all to his right, which conflicted with his trial testimony and deposition testimony that he noticed the opening before the shooting. TT-II: 210:11-16, 369:3-20.

- Alfred had time to make a radio dispatch after Barber entered the Trailblazer but claimed he had no time to move out of the way or give Barber a warning before shooting him in the head. TT-II: 223:19-224:23.

- At this trial, Alfred denied that Barber may not have known that Alfred was behind the Trailblazer, but he was impeached with his prior under oath testimony that he "had no idea if Mr. Barber even knew" he was behind the Trailblazer. TT-II: 238:2-241:8.

- At trial, there was testimony that the location of Alfred's dropped flashlight indicated his location at the time of the shooting, and Alfred testified that he never saw anyone move the flashlight. TT-II: 219:22-25, 232:11-13, 245:19-21, 372:13-16; TT-III: 610:6-20. However,

-7-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

Alfred was impeached with his deposition testimony that he *did* see someone move his flashlight at the scene. TT-II: 372:17-373:22.

- In a prior proceeding, Alfred testified under oath that even if he had moved into the opening to his right, he still would have fired anyway, but at this trial, Alfred testified that had he repositioned into the opening, he would not have fired. TT-II: 252:22-255:4.

- Alfred testified in this trial that the patrol car's overhead lights were on during the incident, but he was impeached with his interview statement that they were *not* on. TT-II: 367:12-368:22.

Viewing the facts in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, as this Court must do in deciding a motion for judgment as a matter of law, substantial evidence was presented at trial to support the jury's conclusion that Alfred used excessive and unreasonable force when he shot Barber. As described above, the Trailblazer moved back slowly a short distance, and Alfred had time and space to move out of the way rather than shooting. Defendants' argument that Alfred's standard equipment hindered his ability to move and the gravel presented a trip-and-fall hazard is unavailing. Alfred testified at trial that he did not trip and fall when he was walking up the driveway or when he moved the 3 to 4 feet to the opening after the shooting, the weight from his gear would not have prevented him from moving 3 to 4 feet to the right, and it would have taken him one second to move 3 to 4 feet into the opening. TT-II: 221:14-22, 250:3-13, 370:9-21, TT-III: 426:2-7. Contrary to Defendants' argument in their motion, the fact that Alfred could have moved out of the way is not 20/20 hindsight. The Ninth Circuit model instruction on excessive force (9.27, formerly 9.25), which was given in this case, lists "the availability of alternative measures" as a factor for the jury to consider in deciding whether the force was excessive. TT-V: 813:18-19. Here, Alfred saw the opening prior to firing his shots and knew or should have known that he could have simply moved 3 to 4 feet to his right, taken cover,

-8-

and called for backup rather than shooting. Therefore, Defendants are not entitled to judgment as a matter of law.

## IV.  DEPUTY ALFRED IS NOT ENTITLED TO QUALIFIED IMMUNITY

### A. Alfred's Shooting Was Excessive

As explained above, the first prong of qualified immunity is satisfied here, where the evidence substantially supports the jury's verdict that Alfred's shooting violated Barber's constitutional right to be free from excessive force. In the time that it took Alfred to make a radio communication and fire his shots, he chose to spend that time shooting rather than moving out of the way, even though he could have moved 3 to 4 feet into the wide fence opening within one second. TT-III: 426:2-7

### B. Barber's Right Was Clearly Established

The second prong of qualified immunity is satisfied because at the time of the shooting, it was clearly established that deadly force would be excessive under this factual scenario. As this Court stated in denying qualified immunity to Alfred at the summary judgment stage, "on the date of the incident in April 2021, it had been well established for at least a quarter century that using deadly force is unreasonable where the officer, 'standing closer to the side than the dead-center of [a] car,' shoots at the 'slow-moving car' instead of 'simply stepping to the side.'" Dkt. 132 (Order Denying MSJ) at p. 18 (quoting *Acosta v. City & Cnty. of S.F.*, 83 F.3d 1143, 1146-47 (9th Cir. 1996); *Villanueva v. California*, 986 F.3d 1158, 1172-73 (9th Cir. 2021) ("In light of *Acosta*, all reasonable officers would know it is impermissible to shoot at a slow-moving car when he could 'simply step[] to the side' to avoid danger.") (quoting *Acosta*, 83 F.3d at 1146).

*Villanueva*, *Acosta*, and *Orn v. City of Tacoma*, 949 F.3d 1167, 1179 (9th Cir. 2020) clearly establish Barber's right to be free from excessive force under these facts. *See also A.D.*, *supra*, 712 F.3d at 458 (denying qualified immunity where

-9-

suspect's nondangerousness placed the case squarely "within the obvious" and holding that shooting driver of slow-moving car was unreasonable where the driver posed no threat). As this Court articulated in denying Alfred qualified immunity at summary judgment:

> In *Acosta*, an officer chased two suspected robbers around 6:45 p.m. at night until they hopped in a getaway car. 83 F.3d at 1144. The officer then "positioned himself facing the driver so that he was standing closer to the side than the dead-center of the car." *Id*. Shortly after, the car "mov[ed] or roll[ed] very slowly from a standstill," and the officer fired two shots. *Id*. at 1144, 1147. The Ninth Circuit opined that the jury could have concluded the officer acted unreasonably given the car's speed and the officer's ability to "simply step[] to the side." *Id*. at 1146.

> In *Orn*, officers blocked a suspect's vehicular path after pursuing him into an apartment complex parking lot and repeatedly commanding him to stop his car. 949 F.3d at 1172. The suspect "briefly stopp[ed]" in front of the officer's SUV, but then "attempted to navigate through a narrow opening between the passenger side of [the officer's] SUV and a nearby parked car." *Id*. at 1173. He drove "very slowly" at just "five miles per hour." *Id.* After "clipp[ing]" the officer's rear quarter panel, the officer – who claimed to be "in the path of [the suspect's] vehicle" – fired multiple shots out of fear "he would be run over . . . or pinned between his vehicle and [the suspect's]." *Id*. According to the officer, the suspect "stepped on the gas and propelled the vehicle toward him under 'hard acceleration.'" *Id*. The Ninth Circuit ruled that, even under the officer's version of the facts, a jury could find the officer "lacked an objectively reasonable basis to fear for his own safety" because he could "have avoided any risk of being struck by simply taking a step back." *Id*. at 1175.

> Hence, at the time of the incident, *Acosta* or *Orn* put Deputy Alfred "on notice that his specific conduct was unlawful," *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). As in *Acosta* and *Orn*, Plaintiff's car moved from standstill to a very slow speed with an officer potentially in its vehicular path. Morales Decl. ¶ 11. Also as in *Acosta* and *Orn*, a jury could find the officer could have simply stepped out that path given his surroundings and his location relative to the slow-moving vehicle.

Dkt. 132 (Order Denying MSJ) at p. 18.

-10-

Consistent with this Court's analysis in denying qualified immunity on summary judgment, the evidence presented at trial overwhelmingly showed that Alfred simply could have moved 3 to 4 feet to his right within one second rather than just standing there and shooting Barber in the back of the head. Alfred knew that Barber wanted to leave the driveway in his vehicle (which was the nature of the dispute triggering the call for service), knew that the only way to leave the driveway was to reverse out, heard the engine running, and saw the reverse lights come on. Despite all this, Alfred still chose to stand behind the Trailblazer. Over 3 seconds passed between Barber closing the door and Alfred firing the first shot. When Alfred fired the first shot, he was at least 25 to 30 feet away from the back of the Trailblazer. The jury also heard testimony from Plaintiff's expert Morales that at the time of the first shot, the Trailblazer was either not moving or had moved back only about 1 foot and was moving slowly, less than 1 mile per hour.

## C. Violation of Police Training Weighs Against Granting Qualified Immunity

This Court should also deny Alfred's request for qualified immunity because it is well established that a violation of officer training weighs against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052 1062 (9th Cir. 2004) ("[T]raining materials are relevant not only to whether the force employed in this case was objectively unreasonable . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable."). An officer who makes a conscious decision to violate basic training guidelines, designed to safeguard the subject, should not be heard subsequently to claim to have made a reasonable mistake or to have reasonably believed his or her decision to be lawful. *Id.* Police officers are trained to identify themselves as law enforcement, trained not to stand behind a vehicle they think might move and trained that an assaultive motor vehicle does not independently

-11-

justify the use of lethal force. TT-II: 208:16-22, 212:2-18, 223:3-5, 230:17-231:1, 316:11-317:8, 341:4-20. Alfred violated this training.

Along these lines, Defendants' argument that Alfred is entitled to qualified immunity even if his perception that Barber posed an imminent threat was mistaken but reasonable is unavailing. Whether Alfred made a mistake of fact, and if so, whether that mistake was reasonable, are questions that required the jury to weigh conflicting evidence and evaluate credibility. *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (reasonableness of mistake of fact is "a question of fact best resolved by a jury," not "a legal inquiry"); *see* Ninth Cir. Jury Inst. 9.27; *Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019); TT-V: 814:2-4. On Defendants' Rule 50 motion, this Court can only ask whether there was sufficient evidence to support the jury's implicit finding that Alfred either made no mistake or an unreasonable one. The evidence above easily satisfies the Rule 50 standard.

**D. Defendants' Cited Cases Are Inapposite**

The cases cited by Defendants, which involve dangerous pursuits and officers who could not easily avoid any potential threat by stepping out of the way, are materially distinguishable. In *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010), a fleeing stolen van crashed into a pole following a police pursuit, and the shooting officer observed another officer approach the van and fall to the ground in slippery mud. *Id.* at 549. In finding the shooting reasonable, the Ninth Circuit emphasized the chaotic nature of the post-pursuit scene—the shooting officer saw another officer fall to the ground, the driver continued to accelerate, the muddy yard was slippery, and an officer was either lying on the ground nearby or disoriented and unable to move out of the way. 610 F.3d at 541. Despite Defendants' attempts to portray Barber's driveway as a similar trip-and-fall hazard, the record genuinely disputes that characterization—Alfred could have easily moved into the opening to his right, as he never fell to the ground, and was in fact able to move into the

-12-

opening after the shooting without tripping on the gravel driveway.

*Plumhoff v. Rickard*, which involved a car chase on a major interstate with speeds reaching 100 miles per hour, where Rickard's "outrageously reckless driving posed a grave safety risk," is also distinguishable. 134 S. Ct. at 2017, 2021. The *Plumhoff* Court noted that Rickard's conduct after the shots were fired—pressing down on the accelerator, reversing, and then speeding away—underscores the Court's point that Rickard was "intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." *Id.* at 2016, 2022.

Similarly, in *Williams v. City of Sparks*, 112 F.4th 635, 640-41 (9th Cir. 2024), Williams led officers with lights and sirens on a 42-minute vehicle pursuit at speeds up to 70 miles per hour while running red lights, and officers had information that Williams had a history of "battery with a deadly weapon and eluding" and had just stolen alcohol and was vandalizing a vehicle. Williams stopped at one point and then yelled at the officers and drove through a chain-link fence to flee the area. *Id*. at 640. Williams then drove on the wrong side of the freeway and attempted to ram a police vehicle before officers executed a PIT maneuver. *Id*. Still, Williams continued driving and struck another police vehicle. *Id*. at 641. The shooting occurred after Williams was boxed in by patrol vehicles, ignored commands, revved the engine, and "the tires continued to spin and kick up dust." *Id*. at 644-45. Relying on *Plumhoff*, the Ninth Circuit granted qualified immunity because "Williams was clearly attempting to accelerate" and the officers had a reasonable belief that Williams would accelerate forward into traffic. *Id*. at 644-45. The *Williams* court found that the "question would be closer if, for example, Williams had taken his foot off the accelerator." *Id*. at 645. Here, there is no evidence that Barber was attempting to flee, and Barber's foot was on the brake after the shooting.

-13-

In *Mullenix v. Luna*, 136 S. Ct. 305 (2015), an intoxicated suspect led officers on an 18-minute vehicle chase at speeds reaching 110 miles per hour, twice threatened to shoot the involved officers, told the dispatcher he had a gun and was prepared to use it, and then sped toward the officer he threatened to kill. *Id.* at 307, 312.

In contrast to the facts of the above high-speed pursuit cases, here, Barber was attempting to reverse his own vehicle out of his own driveway at very low speeds and Alfred chose to position himself behind the Trailblazer even though there were indications that the Trailblazer was about to reverse. Further, Alfred easily could have moved out of the Trailblazer's potential path, where Alfred was at least 25 to 30 feet away from the back of the Trailblazer, and the Trailblazer moved backward a short distance at one mile per hour at the time of the first shot and at a maximum speed of the average human walking pace during the shots. Further, the suspects in Defendants' cited cases were aware of the police presence, including lights and sirens, whereas Alfred did not announce himself as a police officer, the overhead lights on his police vehicle were not activated, the police vehicle was not visible from the driveway, and Barber did not know it was law enforcement talking to him.

Accordingly, viewing the trial evidence in the light most favorable to Plaintiff, a reasonable jury could find that Alfred violated Barber's clearly established right to be free from excessive force.

## V.    PLAINTIFF'S CLAIMS ARE NOT *HECK-* BARRED

Defendants' motion for judgment as a matter of law on their affirmative defense based on *Heck v. Humphrey*, 512 U.S. 477 (1994), fails for five independent reasons. First, Defendants waived their affirmative defense at trial. Defendants listed five other defenses in the Final Pretrial Conference Order, which superseded the pleadings and governed the course of trial. But Defendants failed to assert *Heck*. Dkt. 134-1 at 11–13, 16. Plaintiff, therefore, was not on notice that *Heck* would be an issue at trial.

-14-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW (RULE 50b)

Second, Defendants failed to raise any *Heck* issue under Rule 50(a). Dkt. 172. "[A] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Engineering v. West Worldwide Services*, 897 F.3d 1008, 1016 (9th Cir. 2018). The Ninth Circuit "strictly construe[s] the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1082 (9th Cir. 2009).

Third, Defendants' waiver cannot be avoided by treating their summary-judgment motion as a Rule 50(a) motion. "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). Thus, when a defense depends on the factual record, "the filing of a motion for summary judgment or raising the defense in a pre-trial submission is not sufficient to avoid a waiver." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1088 (9th Cir. 2017) (qualified-immunity defense).

In a footnote, Defendants seem to argue that the usual Rule 50 preservation rule does not apply because they fit within the exception for a pure issue of law recognized in *Estate of Aguirre v. Cnty. of Riverside*, 131 F.4th 702 (9th Cir. 2025). *Aguirre* is inapposite. The defendant-officer in *Aguirre* made a Rule 50(a) motion on the ground that he did not use excessive force. *Id.* at 706. His Rule 50(b) motion added a second ground, "based on the same underlying factual arguments" about the trial evidence, that the right was not clearly established. *Id.* The Ninth Circuit found that the defendant did not waive qualified immunity because his Rule 50(b) motion made no new factual arguments. *Id.* Here, by contrast, Defendants made no motion under Rule 50(a) motion based on the same factual arguments in their Rule 50(b) motion asserting

-15-

*Heck* preclusion. Indeed, Defendants' Rule 50(b) motion relies extensively on their request for judicial notice to support their affirmative defense.[1]

The *Aguirre* court noted that the reviewability of qualified immunity on appeal found further support in *Dupree v. Younger*, 598 U.S. 729 (2023), which "held that '[w]hile factual issues addressed in summary-judgment denials are unreviewable on appeal . . . a post-trial motion under Rule 50 is not required to preserve for appellate review a purely legal issue resolved at summary judgment." *Aguirre*, 131 F.4th at 706 (quoting *Dupree*, 598 U.S. at 735–36). But neither that summary-judgment rationale of *Aguirre*, nor *Dupree*, applies here, because this Court is not engaging in "appellate review." Instead, Defendants' Rule 50(b) motion is a disguised motion for reconsideration of this Court's summary-judgment order, which fails to satisfy L.R. 7-18's requirements. *See* L.R. 7-18 (motion for reconsideration "must be filed no later than 14 days after entry of the Order" challenged, and "may be made only on" three enumerated grounds not asserted here).

*Dupree* also does not apply because Defendants' *Heck* defense is not "purely legal." *Dupree*, 598 U.S. at 736. "[A] purely legal question is, by definition, one whose answer is independent of disputed facts" as to which "factual development at trial will not change the district court's answer." *Id.* at 737. Here, Defendants do not raise any "clean legal issues that can be meaningfully separated from one's understanding of the underlying facts concerning how the [incident] occurred." *Jensen v. Exc, Inc.*, 82 F.4th 835, 857 (9th Cir. 2023). *Heck* requires a defendant to show that (1) the factual bases of the conviction and the § 1983 claim are the same, and (2) "the plaintiff's success on

---

[1] The Court should not take judicial notice of anything, because Rule 50 tests the sufficiency of the trial evidence. Moreover, many of Defendants' submissions are wholly irrelevant to the factual basis of Plaintiff's conviction. *See* Anderson Decl., Exs. 3–5. If the Court is inclined to take notice of anything, then it should also take notice of the prosecution's rebuttal closing, which Defendants selectively omit. *See* Masongsong Decl., Ex. 5.

-16-

[their § 1983] claim would necessarily "'negat[e] an element of the offense' of which [the plaintiff] was convicted." *Mayfield v. City of Mesa*, 131 F.4th 1100, 1108–09 (9th Cir. 2025); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1036, 1045–46 (9th Cir. 2018). "Because the record concerning [plaintiff's § 1983 claim] changed from summary judgment to the trial, the factual record at summary judgment is 'obsolete' and cannot provide the basis for our review of those issues.'" *Id.* (quoting *Dupree*, 598 U.S. at 736).

Fourth, even if summary judgment could be revisited, this Court meticulously and correctly held that Defendants' *Heck* defense to Plaintiff's § 1983 claims (1) was forfeited and (2) lacked substantive merit considering the differences between California's broad assault statute and Plaintiff's § 1983 claim. *See* Dkt. 132 at pp. 10–12.[2] As this Court explained in rejecting Defendants' *Heck* argument, even assuming the factual bases for Plaintiff's criminal conviction and Plaintiff's excessive force claim were the same—which is entirely unclear from the record—Plaintiff's excessive force claim does not negate an element of his Section 245(a)(1) conviction. *Id.* at p. 11 (explaining that California's assault statute "covers a broad swath of conduct" and citing *People v. Marsh*, 37 Cal. App. 5th 474, 488 (2019)); *see also Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015) ("An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer.").

Fifth, even if the Court could consider Defendants' newly cited evidence from Barber's criminal trial, it does not conclusively show that the jury's verdict would necessarily invalidate Plaintiff's conviction. There is no unavoidable conflict. Barber's criminal trial did not decide the excessive force issue. Even if Barber's "conduct rose to the level of assault, it may not have risen to 'the type of threat that justifie[d] an

---

[2] Moreover, the prosecution repeatedly told the jury not to consider whether it was reasonable for Alfred to shoot Barber, as that was not an issue for them to decide. Masongsong Decl., Ex. 5 at 763-64.

-17-

officer[]' to use deadly force while [Barber] was in his vehicle. Dkt. 132 at pp. 12 (citing *Acosta*, 83 F.3d at 1146 n.9).

## VI.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

### A. *Heck* Does Not Bar Plaintiff's State Law Claims

Defendants' instant motion argues for the first time that *Heck* bars Plaintiff's state claims. Even Defendants' summary-judgment motion asserted *Heck* as a defense to Plaintiff's § 1983 claims only. *See* Dkt. 97 at 14. And even if Defendants had not waived this defense as to Plaintiff's state law claims, they are not *Heck*-barred for the reasons described above.

### B. Plaintiff Presented Sufficient Evidence at Trial to Support the Verdict on Plaintiff's State Law Claims

#### 1. *Battery and Negligence*

The evidence at trial described in detail above supports the jury's finding that Alfred's shots were objectively unreasonable and "not necessary to defend human life." *See* Judicial Council of California Civil Jury Instructions ("CACI"), No. 1305B (Battery by Peace Officer, Deadly Force); CACI 441 (Negligent Use of Deadly Force by Peace Officer). "A threat of death or serious bodily injury is "imminent" when … a reasonable officer … would believe [the] person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury." *Id*.; Cal. Penal Code § 835(a). Further, "[a]n imminent harm is not merely a fear of future harm." *Id*. This Court must defer to the jury's findings that there was no imminent threat of death or serious bodily injury, where Alfred knew Barber wanted to leave the driveway, Barber did not know law enforcement was speaking to him, and at the time of the first shot, the Trailblazer had moved back at most 1 foot at a speed of less than 1 mile per hour, and Alfred was at least 25 to 30 feet from the

-18-

back of the Trailblazer. *See Villanueva*, 986 F.3d at 1172-73; *Orn* , 949 F.3d at 1179; *Acosta*, 83 F.3d at 1146-47.

Particularly pertinent here, this Court correctly instructed the jury under CACI 1305B that a "peace officer [has] a duty to use tactical repositioning" (TT-V: 817:12-14), and under CACI 441, the jury must consider Alfred's tactical conduct leading up to the shooting and whether Alfred had other available techniques as an alternative to using deadly force (TT-V: 819:4-15). *See also Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 639 (2013) (holding that pre-shooting tactics "are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise where the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable."); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021). As DeFoe explained to the jury, Alfred never should have positioned himself behind the Trailblazer and should have tactically repositioned himself into the fence opening rather than shooting. Plaintiff also presented sufficient evidence at trial that Alfred engaged in pre-shooting negligent tactics when he: positioned himself behind a vehicle he anticipated would move; failed to tactically reposition himself when he had time and room to move a few feet to his right into the fence opening; failed to announce himself as a police officer; failed to give Barber a verbal warning prior to shooting; and failed to call for backup before contacting Barber.

### 2. *Bane Act*

The evidence at trial also sufficiently supported the jury's finding that Alfred violated the Bane Act when he fired six shots at Barber without giving Barber a warning, announcing himself as a police officer, or considering reasonable alternative measures to shooting (*e.g.*, tactically repositioning to the opening to his right, which he could have done in one second). As set forth above, Plaintiff presented sufficient evidence that Alfred violated Barber's constitutional right to be

-19-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

free from excessive force. Contrary to Defendants' arguments, Plaintiff need not show "threat, intimidation or coercion" separate from the use of excessive force or that Alfred intended to violate his constitutional rights. *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 799-800 (2017). "[I]t is not necessary for the defendants to have been 'thinking in constitutional or legal terms at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993). The reasonable inference is that the jury determined that the evidence at trial established that Alfred acted with a reckless disregard for Barber's constitutional right to be free from excessive force, consistent with the appropriate jury instruction read by this Court. TT-V: 814:14-815:2. The jury's finding that Alfred acted with reckless disregard—a higher standard than "objective reasonableness"—further supports the substantial evidence for Plaintiff's claims for excessive force, battery, and negligence.

### 3. *Intentional Infliction of Emotional Distress*

Evidence that "Alfred acted with reckless disregard of the probability that [] Barber would suffer emotional distress" supports the jury's verdict in Plaintiff's favor on his claim for Intentional Infliction of Emotional Distress, and there is no specific "intent" requirement separate from the "reckless disregard." TT-V: 820:10-19 (giving CACI 1600). There is also no requirement that Plaintiff seek treatment for his emotional distress to prevail on this claim. The evidence at trial supports the jury's finding that Alfred's conduct—including standing behind a vehicle that was clearly about to reverse and shooting six times instead of moving a few feet to the right—was "outrageous" and demonstrates a "reckless disregard." *Id*. Barber testified at trial that he was "devastated" when he learned he had been shot in the head and that he now uses a wheelchair as a result of the shooting, supporting the

-20-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (RULE 50b)

jury's finding that Barber suffered severe emotional distress as a result of the shooting. TT-III: 464:14-465:20, 466:15-24.

With respect to each of Plaintiff's state law claims, the County of San Bernardino is vicariously liable for Alfred's conduct. *See* Cal. Gov't. Code § 815.2.

## VII.   CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Renewed Motion for Judgment as a Matter of Law in its entirety.

DATED:  April 8, 2026,                    LAW OFFICES OF DALE K. GALIPO

By          */s/ Renee V. Masgongsong*
            Dale K. Galipo
            Renee V. Masongsong
            Attorneys for Plaintiff

-21-

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Steffon Barber, certifies that this brief contains 7,000 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

Dated: April 8, 2026                     LAW OFFICES OF DALE K. GALIPO

                                  By:  _____/s/ Renee V. Masongsong_____
                                         Dale K. Galipo
                                         Renee V. Masongsong
                                         Attorneys for Plaintiff

-22-