# EXHIBIT 4

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

HONORABLE KENLY KIYA KATO, U.S. DISTRICT JUDGE

| | | |
|---|---|---|
| STEFFON BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | CV 22-625 KK (DTBx) |
| COUNTY OF SAN BERNARDINO, et al., | ) | |
| | ) | Volume 5 |
| Defendants. | ) | (Pages 763 - 901) |
| _____ | ) | |

REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
JURY TRIAL:  DAY FIVE
THURSDAY, FEBRUARY 5, 2026
9:16 AM
RIVERSIDE, CALIFORNIA

_____

MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET
RIVERSIDE, CALIFORNIA  92501
(951) 328-4414

UNITED STATES DISTRICT COURT

764

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

    LAW OFFICES OF DALE K. GALIPO
    BY:  DALE K. GALIPO
    BY:  RENEE V. MASONGSONG
         Attorneys at Law
    21800 Burbank Boulevard, Suite 310
    Woodland Hills, California  91367
    (818) 347-3333

    IVIE, MCNEILL, WYATT, PURCELL & DIGGS, APLC
    BY:  RODNEY S. DIGGS
    BY:  BRANDON R. TANTER
         Attorneys at Law
    444 South Flower Street, 32nd Floor
    Los Angeles, California  90071
    (213) 489-0028

    COCHRAN FIRM CALIFORNIA
    BY:  JAMES A. BRYANT, II
         Attorney at Law
    4929 Wilshire Boulevard, Suite 1010
    Los Angeles, California  90010
    (310) 860-6231


**FOR THE DEFENDANTS:**

    MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
    BY:  EUGENE P. RAMIREZ
    BY:  ANGELA D. BRUNSON
    BY:  KAYLEIGH A. ANDERSEN
         Attorneys at Law
    801 South Figueroa Street, 15th Floor
    Los Angeles, California  90017
    (213) 624-6900


**ALSO PRESENT:**

    ALICE WILLIAMS, Paralegal


**UNITED STATES DISTRICT COURT**

**INDEX OF WITNESSES**

**DEFENDANTS' WITNESSES**                                                        **PAGE**

  GARY MICHAEL VILKE, M.D.

    Direct Examination by Mr. Ramirez                                    784
    Cross-Examination by Mr. Galipo                                      790

**UNITED STATES DISTRICT COURT**

THE COURT:  Of course.

MR. RAMIREZ:  Copy for you if you need one, too.

Do you need one or two, Your Honor?

THE COURT:  Just one.  Thank you.

MR. RAMIREZ:  And I was referring to page 2, lines 12 through 21 of our expert disclosure, Your Honor.

THE COURT:  All right.  Give me one moment.

MR. RAMIREZ:  Absolutely.

(Pause in the proceedings.)

THE COURT:  All right.  Go ahead.

MR. RAMIREZ:  Thank you.

I think we've complied with Rule 26.  What I hope to elicit from Dr. Vilke is that, putting aside his review of medical records which indicated that the plaintiff did not attend a variety of physical therapy sessions, but also based on the plaintiff's admission as a party opponent in his deposition that he did not attend physical therapy for whatever reason and also based upon his testimony in this trial that for a variety of reasons, he did not attend physical therapy and that led to a possible regression of his injuries and goes to mitigation of damages, that if he had continued with physical therapy, the type of injuries he had could have been assisted by physical therapy.  By failing to do so, he's contributed to his own disability and failure to improve.  That's what I was seeking to elicit.

in jail, that has nothing to do with that opinion.  It doesn't support that opinion.  It doesn't provide analysis for -- that is a separate opinion in its entirety.  And that is the concern.

And had your expert prepared a report with the opinions that he intended to present at trial, I would have no problem with this.  But the problem is you are putting information -- and I'm not saying there was any intentionality to it -- but the way that this report reads is almost like trying to slide in some opinion that has nothing to do with what was the identified opinion in the report.  And that is my problem with that.

MR. RAMIREZ:  I understand that.  Let me ask this.  If he had put out a separate heading, his failure to attend physical therapy has led to a regression of his recovery, that is what a Court -- this Court would accept and would anticipate.

THE COURT:  Correct.

MR. RAMIREZ:  All right.  So as it stands now, I will not be able to get into that testimony.

THE COURT:  Correct.

MR. RAMIREZ:  Well, with that ruling, I'm going to ask for time to be able to call Dr. Vilke before the jurors come in whenever is convenient to the Court to let him know that I will not be calling him.

that that last paragraph, although it's not an enunciated opinion, I am going to allow Dr. Vilke to essentially say what's in that last paragraph without reference to deposition testimony or trial testimony or hypotheticals.  But I do want to say, if he goes beyond that, that would be beyond our agreement and I would object.  But I am going to allow him to state what is on the record.  And I also agree with Mr. Ramirez, if he wants to lead him a little bit, just to keep it in line what's said, I won't object on the leading basis.

THE COURT:  All right.  Very well.

And, obviously, he's been instructed not to refer to any treatment while in jail or prison.  Correct?

MR. RAMIREZ:  Correct.  And I'm also -- that's one of the reasons I may lead him a little, just to make sure we skip over those parts.  But he has been briefed on that.

THE COURT:  All right.  Very well.

Then, assuming that that is the limit to which Dr. Vilke -- and is it Dr. *Vill-keh*?  Because in the witness list, it was identified -- spelled out phonetically as Dr. *Vill-keh*.  So I just want to make sure.

MR. RAMIREZ:  I just checked with him.  It's Vilke.

THE COURT:  Vilke.  Okay.  Thank you.

So Dr. Vilke's testimony regarding the lack of mitigation argument will be limited to essentially this final sentence; correct?

**UNITED STATES DISTRICT COURT**

placeholder for the case.  My background doesn't change, my expertise doesn't change, my qualifications doesn't change, and I have headings for other parts of my report -- opinions and discussion and things.  And I -- honest mistake, I think I forgot to change the law firm on this one.

Q.    But you got it to us?

A.    Got it to you.  Made it there, yes.

Q.    All right.  Your first opinion appears that Mr. Barber has some bilateral lower extremity weakness as well as some left upper extremity weakness -- extremity weakness; is that correct?

A.    That is correct, yes.

Q.    What does that mean?

A.    That means that the lower legs have weakness. They're not -- they're not as strong as they would be in a -- I guess a normal full exam.  So they're not functioning at full strength.  Similarly, the left upper extremity also is not functioning at full strength.

Q.    You also wrote that it appeared to be less functional than when he was in the hospital.  Is that correct?

A.    That is correct, yes.

Q.    And did you also write that his regression and progress is likely due to his lack of following physical therapy recommendations from the hospital as well as refusing physical therapy -- therapy treatments thereafter?

**UNITED STATES DISTRICT COURT**

A.    I did write that, yes.

Q.    What does it mean "regression in progress"?

A.    Meaning, as you do physical therapy, the intent is to improve from where your baseline is.  So after an injury, you're trying to gather strength, range of motion, functionality.  And so during his hospital stay, he was showing significant improvement over the first couple months.  He was walking with a walker, he was transferring to a bedside commode.  He got to a point where they -- physical therapists felt he was safe for discharge.

The regression is when you start going backwards.  You know, with -- with injuries, particularly head injuries, there is often lifelong physical therapy needs to keep range of motion, to keep strength, to keep functionality going.  You do your own exercises, but the physical therapy also assists with that.

And so when that falls off, often the progression that you got will fall backwards and not go as far forward as you would have liked it to if you had continued full physical therapy.

MR. RAMIREZ:  Thank you.

May I have a moment, please, Your Honor?

THE COURT:  Yes.

MR. RAMIREZ:  I have nothing further from you at this point, Dr. Vilke.  Thank you.

County of San Bernardino.

"Plaintiff Steffon Barber claims that defendant Christopher Alfred unreasonably seized and used excessive force against him.  In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest, in defending himself or others, and/or in attempting to stop a fleeing or escaping suspect.  Therefore, to establish an unreasonable seizure in this case, plaintiff Steffon Barber must prove by a preponderance of the evidence that defendant Christopher Alfred used excessive force during the incident at issue in this case.

"Under the Fourth Amendment, a police officer may use only such force as is 'objectively reasonable' under all of the circumstances.  You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.  Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

"In determining whether defendant Christopher Alfred used excessive force in this case, consider all the circumstances known to defendant Christopher Alfred on the scene, including:

"1.  The nature of the crime or other circumstances known to defendant Christopher Alfred at the time force was

applied;

"2.   Whether plaintiff Steffon Barber posed an immediate threat to the safety of defendant Christopher Alfred or to others;

"3.   Whether plaintiff Steffon Barber was actively resisting arrest or attempting to evade arrest by flight;

"4.   The amount of time defendant Christopher Alfred had to determine the type and amount of force that reasonably appeared necessary and any changing circumstances during that period;

"5.   The relationship between the need for the use of force and the amount of force used;

"6.   The extent of plaintiff Steffon Barber's injury;

"7.   Any effort made by defendant Christopher Alfred to temper or to limit the use of force;

"8.   The severity of the security problem at issue;

"9.   The availability of alternative methods either to take plaintiff Steffon Barber into custody or to subdue him;

"10.   The number of lives at risk -- motorists, pedestrians, police officers -- and the parties' relative culpability, that is, which party created the dangerous situation and which party is more innocent;

"11.   Whether it was practical for defendant Christopher Alfred to give warning of the imminent use of force

and whether such warning was given;

"12.  Whether a reasonable officer would have or should have accurately perceived a mistake" of fact -- mistaken fact; and

"13.  Whether there was probable cause for a reasonable officer to believe that the subject had committed a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause exists when, under all of the circumstances known to defendant Christopher Alfred at the time, an objectively reasonable police officer would conclude there is a fair probability that plaintiff Steffon Barber had committed or was committing a crime.

"Plaintiff Steffon Barber claims that defendant Christopher Alfred intentionally interfered with or attempted to interfere with plaintiff's civil rights by threats, intimidation, or coercion.

"To establish this claim, plaintiff Steffon Barber must prove all of the following:

"1.  That defendant Christopher Alfred acted violently against plaintiff Steffon Barber to prevent him from exercising his right to be free from the use of excessive force;

"2.  That defendant Christopher Alfred intended to deprive plaintiff Steffon Barber of or acted with reckless

disregard for his enjoyment of the interest protected by the right to be free from the use of excessive force;

"3.   That plaintiff Steffon Barber was harmed; and

"4.   That the conduct of defendant Christopher Alfred was a substantial factor in causing plaintiff Steffon Barber's harm.

"Under California law, a peace officer may use deadly force only when necessary in defense of human life. Plaintiff Steffon Barber claims that defendant Christopher Alfred unnecessarily used deadly force" against -- "on him.  To establish this claim, plaintiff Steffon Barber must prove all of the following:

"1.   That defendant Christopher Alfred intentionally touched plaintiff Steffon Barber or caused plaintiff Steffon Barber to be touched;

"2.   That defendant Christopher Alfred used deadly force on plaintiff Steffon Barber;

"3.   That defendant Christopher Alfred's use of deadly force was not necessary to defend human life;

"4.   That plaintiff Steffon Barber was harmed; and

"5.   That defendant Christopher Alfred's use of deadly force was a substantial factor in causing plaintiff Steffon Barber's harm.

"Defendant Christopher Alfred's use of deadly force was necessary to defend human life only if a reasonable officer

Alfred's tactical conduct and decisions before using deadly force on plaintiff Steffon Barber and whether defendant Christopher Alfred used other available resources and techniques as alternatives to deadly force if it was reasonably safe and feasible to do so.

"A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist.  Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance.  A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

"Under California law, a peace officer may use deadly force only when necessary in defense of human life. Plaintiff Steffon Barber claims that defendant Christopher Alfred was negligent in" his -- "in using deadly force to arrest, detain, prevent escape, or overcome the resistance of plaintiff Steffon Barber.  To establish this claim, plaintiff Steffon Barber must prove all of the following:

"1.  That defendant Christopher Alfred was a peace officer;

"2.  That defendant Christopher Alfred used deadly

UNITED STATES DISTRICT COURT

and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances means all facts known to or perceived by the peace officer at the time, including the conduct of defendant Christopher Alfred and plaintiff Steffon Barber leading up to the use of deadly force.  In determining whether defendant Christopher Alfred's use of deadly force was necessary in defense of human life, you must consider defendant Christopher Alfred's tactical conduct and decisions before using deadly force on plaintiff Steffon Barber and whether defendant Christopher Alfred used other available resources and techniques as alternatives to deadly force if it was reasonably safe and feasible to an objectively reasonable officer.

"A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist.  Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest, detain, prevent escape, or overcome resistance.

"Defendants claim that plaintiff Steffon Barber's own negligence contributed to his harm.  To succeed on this claim, defendants must prove both of the following.

"1.   That plaintiff Steffon Barber was negligent; and

"2.   That plaintiff Steffon Barber's negligence was a substantial factor in causing his harm.

"If defendants prove the above, plaintiff Steffon Barber's damages on his negligence claim only are reduced by your determination of the percentage of plaintiff Steffon Barber's responsibility.  I will calculate the actual reduction.

"Plaintiff Steffon Barber claims that defendant Christopher Alfred caused him to suffer severe emotional distress.  To establish this claim, plaintiff Steffon Barber must prove all of the following:

"1.   That defendant Christopher Alfred's conduct was outrageous;

"2.   That defendant Christopher Alfred acted with reckless disregard of the probability that plaintiff Steffon Barber would suffer emotional distress knowing that plaintiff Steffon Barber was present when the conduct occurred;

"3.   That plaintiff Steffon Barber suffered severe emotional distress; and

"4.   That defendant Christopher Alfred's conduct was a substantial factor in causing plaintiff Steffon Barber's severe emotional distress.

"In order to establish liability for plaintiff's

**UNITED STATES DISTRICT COURT**

the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

"If you find for the plaintiff on any claim, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.

"You should consider the following:

"1.  The nature and extent of the injuries;

"2.  The disability, disfigurement, and loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

"3.  The mental, physical, and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

"4.  The reasonable value of necessary medical and psychological care, treatment, and services received to the present time; and

"5.  The reasonable value of necessary medical and psychological care, treatment, and services that with reasonable probability will be required in the future.

"It is for you to determine what damages, if any, have been proved.

client who had been injured to the same extent as Mr. Barber. Anybody I was representing.

You may think my numbers are too high, too low. You might think they're crazy. I don't know. I'm going to give you numbers that I think are supported by the evidence and the law, but ultimately you will decide.

And, importantly, you got an instruction from the Court that under state law, the County of San Bernardino is vicariously liable under the state law claims for any harm caused by Deputy Alfred. Because they were the employer and he was working under the course and scope of their employment.

Past pain and suffering and emotional distress? It's been five years. I would submit $10 million for past. Think about what you think is fair.

Future pain and suffering, emotional distress. 33 years. Is a million a year fair? A half a million? Three-quarters of a million? I think a million a year is not unfair, especially given that he's going to need lifetime care, 24/7 care, get early dementia, not even be able to function and take care of himself. Imagine how he felt sitting in that wheelchair, hearing that.

And future economic loss. So, yes, 33 years at a million a year would be $33 million.

And future economic loss, we heard a little bit from Dr. Omalu on that. To get him the best care for the future,

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )


             I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


                       DATED THIS 5TH DAY OF FEBRUARY, 2026.



                            /S/ MYRA L. PONCE
             _____
               MYRA L. PONCE, CSR NO. 11544, CRR, RDR
                    FEDERAL OFFICIAL COURT REPORTER


**UNITED STATES DISTRICT COURT**