# EXHIBIT 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-00625-KK-DTBx** | Date: | December 22, 2025 |
|---|---|---|---|
| Title: | ***Steffon Barber v. County of San Bernardino et al.*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order DENYING Defendants' Motion for Summary
Judgment [Dkt. 97]**

## I.
## INTRODUCTION

On June 17, 2025, plaintiff Steffon Barber ("Plaintiff") filed the operative Second Amended Complaint ("SAC") against defendants County of San Bernardino ("County") and Christopher Alfred ("Deputy Alfred") (together, "Defendants"). ECF Docket No. ("Dkt.") 72, SAC. Plaintiff brings claims, pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law, stemming from an incident on April 27, 2021, when Deputy Alfred shot at Plaintiff and his vehicle. Id. On October 9, 2025, Defendants filed the instant Motion for Summary Judgment ("Motion") as to all claims. Dkt. 97, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Defendants' Motion is **DENIED**.

///

///

///

///

On December 16, 2024, the jury rendered a split verdict, finding Plaintiff not guilty on Count One but guilty on Count Two of the lesser included crime of assault with a deadly weapon other than a firearm, in violation of Section 245(a)(1).  Dkt. 97-5 at 1.  Plaintiff was later sentenced to thirteen years in prison.  Dkt. 97-6 at 2.

**III.**
**EVIDENTIARY OBJECTIONS[4]**

**A.  APPLICABLE LAW**

At the summary judgment stage, the parties may only rely on "evidence that would be admissible at trial."  Hill v. Walmart Inc., 32 F.4th 811, 822 (9th Cir. 2022); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence.").  The focus is "on the admissibility of [the evidence's] contents," not its "form."  Sandoval v. Cnty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) (quoting Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)).  "Under the general rule of evidence, all relevant evidence is admissible unless . . . the Federal Rules of Evidence provide otherwise."  Weil v. Citizens Telecom Servs. Co., 922 F.3d 993, 998 (9th Cir. 2019).

Under Federal Rule of Evidence 702, an expert must be "sufficiently qualified . . . by knowledge, skill, experience, training, or education," to testify.  Elosu v. Middlefork Ranch Inc., 26 F.4th 1017, 1023 (9th Cir. 2022) (quoting City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1043 (9th Cir. 2014)).  Testimony by an expert must be "based on sufficient facts or data."  Fed. R. Evid. 702(b).  In addition, expert testimony must be reliable, meaning it must have a sound "basis in the knowledge and experience of the relevant discipline."  Engilis v. Monsanto Co., 151 F.4th 1040, 1047 (9th Cir. 2025) (citation modified).

**B.  ANALYSIS**

Here, Defendants argue the Court should exclude the declaration of Plaintiff's expert Robert Morales because he is unqualified and his testimony is unreliable.[5]  See Reply at 9-13.  The Court partly agrees and addresses both arguments in turn.

In his declaration, Morales notes he is a "mechanical engineer" with a master's degree in "mechanical engineering" and "controlled systems."  Morales Decl. ¶ 2.  Morales further states he has a certificate for "accident reconstruction" and "video analys[is]," has received annual continuous education at "accident reconstruction conferences," has "been employed as an accident reconstructionist for approximately fourteen years," and, as part of his experience, "listen[s] to audio

---

[4] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Thus, the Court declines to address such objections.

[5] Defendants also object to the testimony of Plaintiff's expert, Scott DeFoe.  Reply at 12-13.  However, since the Court is not relying on expert Scott DeFoe's testimony in reaching its conclusions, the Court declines to address these objections.  See Hall v. Live Nation Worldwide, Inc., 146 F. Supp. 3d 1187, 1193 n.26 (C.D. Cal. 2015) ("Because the court does not rely on this evidence, it need not rule on [the] objections.").

to determine the movement of objects and people." Id. His practice involves combining "physical evidence, photographs, audio, and/or video, . . . with research, engineering, computations, simulations, and calculations." Id. ¶ 4.

Defendants first argue Morales is not qualified to opine on "ballistics evidence." Reply at 12. The Court agrees. Nothing in Morales's declaration suggests he is qualified to speak on ballistics. See Morales Decl. ¶¶ 2-4. Ballistics evidence fits "outside the jurors' knowledge," United States v. Scheffer, 523 U.S. 303, 313 (1998), and thus an expert must attest to its reliability, cf. United States v. Johnson, 875 F.3d 1265, 1280 (9th Cir. 2017) (recognizing that ballistics jury instructions are "meant to ensure that juries are not misled about the reliability of ballistics evidence"). See also Krause v. Cnty. of Mohave, 459 F. Supp. 3d 1258, 1265-66 (D. Ariz. 2020) ("Ballistics testimony requires specialized expertise."). Accordingly, Defendants' objection is **SUSTAINED** as to Morales's conclusions set forth in paragraphs 16, 17, and 18, to the extent they set forth opinions other than the objective evidence of where the shell casings were located. See Morales Decl. ¶¶ 16-18.

Defendants also broadly contend Morales's declaration is unreliable because it "is based on opinions that fail to consider the testimony of both Deputy Alfred and Plaintiff." Reply at 12. Defendants do not identify the specific opinions that are unreliable – but even if they did, the Court does not find that to be a basis for exclusion. See Hyer v. City & Cnty. of Honolulu, 118 F.4th 1044, 1056 (9th Cir. 2024) ("Rule 702's 'sufficient facts or data' element requires foundation, not corroboration.'" (quoting Elosu, 26 F.4th at 1025)). Based on Morales's knowledge, skill, experience, training, or education, Defendants concede "Morales is a mechanical engineer and accident reconstructionist with training in photogrammetry." Reply at 12. Accordingly, to the extent Defendants seek to exclude the remainder of Morales's declaration, the objection is **OVERRULED**.

## IV.
## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of production by "producing evidence[] or showing the absence of evidence." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). "[T]he ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial." Id. A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. "[T]o carry its ultimate burden of persuasion on the motion, the moving party must" establish "there is no genuine issue of material fact." Id.

(concluding the defendants did not establish which of the plaintiff's specific acts "underl[y] her plea and conviction").  Indeed, the current record is sparce.  See supra n.6.  Though the jury was instructed Plaintiff must have acted with his Trailblazer in a way that "would directly and probably result in the application of force to a person," Jury Instrs. Tr. at 2-3, it is unclear what specific act this was.  Among other possibilities, Plaintiff (1) entered an idling car knowing someone was behind him, (2) illuminated his brake lights by putting the Trailblazer in reverse, (3) revved his engine or spun his tires, and (4) then reversed his Trailblazer.  SUMF ¶¶ 39, 42, 44.  It is also undisputed that Plaintiff remained in the Trailblazer after the shooting, which was still in reverse.  Id. ¶ 54.  Given assault's focus on "indirect preparation," People v. Chance, 44 Cal. 4th 1164, 1172 (2008), the jury arguably could have convicted Plaintiff based on any of these acts.  Plaintiff's Section 1983 claim, however, solely rests on the force Deputy Alfred used while Plaintiff reversed his Trailblazer.  See Morales Decl. ¶ 11.  Thus, without information "show[ing] the specific factual basis" for Plaintiff's conviction, "this Court cannot determine that [Plaintiff's] claim of excessive force in this case would call into question the validity of his [assault] conviction."  Reese, 888 F.3d at 1046; see also Mayfield, 131 F.4th at 1109 (reversing the district court for granting Heck defense where the record contained no "recitation of the factual basis" for the involved crime).

### ii.    Plaintiff's Section 1983 Claim Would Not Negate an Element of His Conviction

Moreover, even assuming the factual bases were the same, Defendants' Heck defense also fails because Plaintiff's Section 1983 claim does not negate an element of his conviction.  Cf. Lemos, 40 F.4th at 1006 (opining that a conviction under section 148(a)(1) of the California Penal Code, which requires an officer to be "engaged in the performance of his or her duties," would necessarily be negated by an excessive force claim).  Regarding this prong, Defendants argue Plaintiff's Section 1983 claim requires him to "contradict the jury's findings that [he] acted 'with a deadly weapon' . . . 'likely to produce great bodily injury.'"  Mot. at 16; see also Reply at 6.  This is not necessarily so.

Section 245(a)(1) prohibits (1) "assault[ing] . . . the person of another" (2) "with a deadly weapon . . . other than a firearm."  In re B.M., 6 Cal. 5th 528, 532-33 (2018) (citation modified) (quoting Cal. Penal Code § 245(a)(1)).  The "deadly weapon" inquiry focuses on "what harm could have resulted from the way the object was actually used."  In re B.M., 6 Cal. 5th at 535 (emphasis added); cf. People v. Williams, 26 Cal. 4th 779, 787 (2001) ("[A]ssault criminalizes . . . what might have happened – and not what actually happened.").  Though this element is obviously met in cases where harm from using an object is certain, it may also be met where there is just "more than a mere possibility" of injury.  In re B.M., 6 Cal. 5th at 534.  The same goes for the "assault" component.  One completes the actus reus for assault when they have the "present ability[] to commit a violent injury on the person of another."  Chance, 44 Cal. 4th at 1167.  Though this element is of course met when an injury is "immediate," it may also be met when an injury would occur with "delay" or not as the "next step in the sequence of events."  Id. at 1172.  Indeed, assault does not even require a "direct attempt at violence" – just the "indirect preparation towards it" is sufficient.  Id.  California's assault statute, thus, covers a broad swath of conduct.  See, e.g., People v. Marsh, 37 Cal. App. 5th 474, 488 (2019) (affirming assault conviction where the defendant severed the brake lines of a parked car).

Conversely, the Fourth Amendment's "immediate" and "significant threat of death or serious physical injury" standard, Hyer, 118 F.4th at 1061, covers a much narrower range of

conduct.[7]  See, e.g., Vos v. City of Newport Beach, 892 F.3d 1024, 1032 (9th Cir. 2018) (ruling the immediate threat factor was a question for a jury where the plaintiff "charged" at the officers with scissors); S.B. v. Cnty. of San Diego, 864 F.3d 1010, 1014 (9th Cir. 2017) (finding a triable issue of fact where the plaintiff wielded a knife "approximately six to eight feet away from [the officers]"). Such a threat cannot be "hypothetical."  Blanford v. Sacramento Cnty., 406 F.3d 1110, 1115 (9th Cir. 2005).  This is especially so when an officer shoots at a suspect driving a car.  See generally Acosta v. City & Cnty. of San Francisco, 83 F.3d 1143 (9th Cir. 1996), as amended (June 18, 1996). In Acosta, the Ninth Circuit concluded that despite the possibility that a car moved in the officer's direction before the officer fired shots, a "jury could have reasonably concluded that a reasonable officer . . . would have recognized that he could avoid being injured . . . by simply stepping to the side."  Id. at 1146.  In doing so, the Ninth Circuit acknowledged that while a car certainly "can inflict deadly force," there are circumstances where it would not "constitute the type of threat that justifies an officer[] shooting the driver."  Id. at 1146 n.9.  As such, a person who survives such deadly force could certainly bring a Section 1983 claim under the theory that the officer "used too much force to respond to the assault," despite their conviction.  Havens v. Johnson, 783 F.3d 776, 782 (10th Cir. 2015) (collecting First, Fifth, Seventh, Ninth, and Eleventh Circuit cases); accord Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011) (ruling Heck did not bar claim where the plaintiff argued "he suffered unnecessary injuries because the response to his [conduct] was not objectively reasonable" (citation modified) (quoting VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006))).

Thus, even considering Defendants' forfeited Heck defense, Plaintiff's Section 1983 claim is not barred just because he was convicted under Section 245(a)(1).  See Havens, 783 F.3d at 782 ("An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer."); Ramos-Ramirez v. Berwick Borough, 819 F. App'x 103, 106 (3d Cir. 2020) ("[W]e conclude that simple assault with a deadly weapon . . . is not necessarily inconsistent with an excessive force claim.").  Put simply, though Plaintiff's conduct rose to the level of assault, it may not have not risen to "the type of threat that justifie[d] an officer[]" to use deadly force while Plaintiff was in his vehicle, Acosta, 83 F.3d at 1146 n.9.  For this reason, the Court cannot conclude Plaintiff's Section 1983 claim requires invalidating his conviction.[8]

\* \* \*

In short, Plaintiff is not using Section 1983 to "collateral[ly] attack" his conviction.  King, 156 F.4th at 987.  His first Cause of Action is thus not precluded under Heck.

---

[7] For example, one could be guilty of assault even if the "intended victim [took] effective steps to avoid injury."  Chance, 44 Cal. 4th at 1174.  A similar situation, however, would be insufficient to justify deadly force.  See Villanueva v. California, 986 F.3d 1158, 1170 (9th Cir. 2021) ("We have consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger.").

[8] To the extent Defendants also argue Plaintiff would have to negate the mens rea element of assault to succeed on his Section 1983 claim, see Reply at 6, that argument is meritless.  An excessive force inquiry focuses on the arrestee's conduct rather than their subjective intent, see Barnes v. Felix, 605 U.S. 73, 80 (2025) (instructing courts to consider the "stopped person's conduct" for purposes of whether they posed a threat).  Thus, Plaintiff's subjective mens rea has no bearing on his Section 1983 claim.

---

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam)). Unless the violated right is "obvious," the plaintiff "must identify a case that put [the officer] on notice that his specific conduct was unlawful," id., and the court must make an "effort to explain how that case law prohibit[s] [the officer's] actions," City of Escondido v. Emmons, 586 U.S. 38, 43 (2019). There may be "notable factual distinctions between the precedents relied on . . . so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." Hope v. Pelzer, 536 U.S. 730, 740 (2002); accord Cortesluna, 595 U.S. at 5 ("Although 'this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting White v. Pauly, 580 U.S. 73, 79 (2017)); cf. Scott, 109 F.4th at 1227 ("[A] decision with identical facts is not required to clearly establish that it is unreasonable to use deadly force when the force is totally unnecessary to protect officers, the public, or the suspect himself." (citing Hope, 536 U.S. at 740)).

> b.    Analysis

Here, Deputy Alfred is not entitled to qualified immunity because his use of deadly force, viewed most favorably to Plaintiff, violated clearly established law. On the date of the incident in April 2021, it had been well established for at least a quarter century that using deadly force is unreasonable where the officer, "standing closer to the side than the dead-center of [a] car," shoots at the "slow-moving car" instead of "simply stepping to the side." Acosta, 83 F.3d at 1146-47; accord Villanueva, 986 F.3d at 1172 ("In light of Acosta, all reasonable officers would know it is impermissible to shoot at a slow-moving car when he could 'simply step[] to the side' to avoid danger.'" (quoting Acosta, 83 F.3d at 1146)).

Among other cases, Plaintiff cites Acosta and Orn as establishing his violated right. See Opp. at 15-16. In Acosta, an officer chased two suspected robbers around 6:45 p.m. at night until they hopped in a getaway car. 83 F.3d at 1144. The officer then "positioned himself facing the driver so that he was standing closer to the side than the dead-center of the car." Id. Shortly after, the car "mov[ed] or roll[ed] very slowly from a standstill," and the officer fired two shots. Id. at 1144, 1147. The Ninth Circuit opined that the jury could have concluded the officer acted unreasonably given the car's speed and the officer's ability to "simply step[] to the side." Id. at 1146.

In Orn, officers blocked a suspect's vehicular path after pursuing him into an apartment complex parking lot and repeatedly commanding him to stop his car. 949 F.3d at 1172. The suspect "briefly stopp[ed]" in front of the officer's SUV, but then "attempted to navigate through a narrow opening between the passenger side of [the officer's] SUV and a nearby parked car." Id. at 1173. He drove "very slowly" at just "five miles per hour." Id. After "clipp[ing]" the officer's rear quarter panel, the officer – who claimed to be "in the path of [the suspect's] vehicle" – fired multiple shots out of fear "he would be run over . . . or pinned between his vehicle and [the suspect's]." Id. According to the officer, the suspect "stepped on the gas and propelled the vehicle toward him under 'hard acceleration.'" Id. The Ninth Circuit ruled that, even under the officer's version of the facts, a jury could find the officer "lacked an objectively reasonable basis to fear for his own safety" because he could "have avoided any risk of being struck by simply taking a step back." Id. at 1175.

Hence, at the time of the incident, Acosta or Orn put Deputy Alfred "on notice that his specific conduct was unlawful," Cortesluna, 595 U.S. at 6. As in Acosta and Orn, Plaintiff's car

moved from standstill to a very slow speed with an officer potentially in its vehicular path. Morales Decl. ¶ 11. Also as in Acosta and Orn, a jury could find the officer could have simply stepped out that path given his surroundings and his location relative to the slow-moving vehicle. See Section V.A.2. Accordingly, assuming the facts in the light most favorable to Plaintiff, Deputy Alfred violated a clearly established right, and his motion for summary judgment as to Cause of Action One is **DENIED**.

## B. DEFENDANT COUNTY IS NOT ENTITLED TO SUMMARY JUDGMENT ON CAUSE OF ACTION TWO UNDER MONELL

### 1. Applicable Law

A government entity may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978)). Such an entity may not be sued under Section 1983 "for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Rather, a municipality is liable under Section 1983 only "when execution of [the local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id.

To prove a Monell claim, a plaintiff must first show an underlying constitutional violation by a municipal employee. See id. Second, a plaintiff must show: (1) the alleged constitutional violation was committed "pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) the constitutional violation was committed by a government official with "final policy-making authority," or (3) a government official with "final policy-making authority" ratified a subordinate's unconstitutional conduct and the basis for it. Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992) (citation modified). Alternatively, a plaintiff may establish municipal liability under Section 1983 by showing a municipality failed to train its employees and such failure to train amounts to "deliberate indifference" to the constitutional rights of the persons with whom the employees come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989).

The plaintiff must also show the municipality's "deliberate conduct . . . was the 'moving force' behind the [constitutional] injury." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). "Ordinarily, 'a pattern of similar constitutional violations,' rather than proof of a single incident, is 'necessary to demonstrate deliberate indifference.'" Perez v. City of Fresno, 98 F.4th 919, 931 (9th Cir. 2024). However, "single-incident liability may exist in the rare case where 'the unconstitutional consequences of failing to train' are 'patently obvious.'" Id. (quoting Connick, 563 U.S. at 63-64)); accord Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 794 (9th Cir. 2016) ("[T]he Supreme Court has opined that a single incident of excessive force, coupled with evidence that a city had neglected to train its armed officers on the constitutional limitations on using force against fleeing felons, might establish that the city manifested deliberate indifference in training law enforcement." (citing Harris, 489 U.S. at 390 n.10)).

///

///

## VI.
## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.