Eugene P. Ramirez (State Bar No. 134865)
  *eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
  *kayleigh.andersen@manningkass.com*
Angela Brunson (State Bar No. 189223)
  *Angela.Brunson@manningkass.com*
**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant, COUNTY OF
SAN BERNARDINO and DEPUTY
CHRISTOPHER ALFRED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTBx<br><br>*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*<br><br>**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)**<br><br>Judge:  Hon. Kenly Kiya Kato<br>Date:  May 7, 2026<br>Time:  9:30 a.m.<br>Crtrm.:  3; 3rd Floor |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  DEPUTY ALFRED IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S EXCESSIVE FORCE CLAIM .......................... 3

    A.   The Changing Circumstances of the Incident Warranted Deputy Alfred's Use Of Force ....................................................................... 3

    B.   Plaintiff's Red Herrings ............................................................... 4

    C.   Plaintiff Mischaracterizes Deputy Alfred's Testimony ......................... 6

III.  DEPUTY ALFRED IS ENTITLED TO QUALIFIED IMMUNITY .............. 9

IV.  *HECK v. HUMPHREY* BARS PLAINTIFF'S CLAIMS AS A MATTER OF LAW. ....................................................................................... 12

V.   STATE LAW CLAIMS ............................................................................ 16

    A.   Battery and Negligence ................................................................. 16

    B.   Bane Act ..................................................................................... 18

    C.   Intentional Infliction of Emotional Distress ..................................... 19

VI.  CONCLUSION ......................................................................................... 20

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acosta v. City & Cnty of S.F.,* 83 F.3d 1143 (9th Cir. 1996) ...................................10

*Beets v. Cnty. of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012) ...........................13, 15

*Blanford v. Sacramento County*, 406 F.3d 1110 (2005). ........................................11

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ...............................................3, 5

*Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002) .............................................13

*Davis v. Scherer*, 468 U.S. 183, 194 (1984) ........................................................6, 12

*Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2004) ..............................11

*Dupree v. Younger*, 598 U.S. 729 (2023) ................................................................15

*Emmons v. City of Escondido*, 921 F.3d 1172 (9th Cir. 2019)................................10

*Est. of Aguirre v. Cnty. of Riverside*, 131 F.4th 702 (9th Cir. 2025)......................15

*Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) ..................................................................................................2

*Est. of Hernandez*, 139 F.4th 790 (9th Cir. 2025) ...................................................11

*Est. of Strickland v. Nevada Cnty*., 69 F.4th 614 (9th Cir. 2023)..............................3

*Havens v. Johnson*, 783 F.3d 776 (10th Cir. 2015)..................................................12

*Hereford v. City of Hemet*, 791 F. Supp. 3d 1126 (C.D. Cal. 2025) .......................19

*Hodges v. Mack Trucks, Inc.,* 474 F.3d 188 (5th Cir.2006) .......................................6

*Hung Lam v. City of San Jose*, 869 F.3d 1077 (9th Cir. 2017) ................................14

*Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022)............................................3, 4

*King v. Riley*, 76 F.4th 259 (4th Cir. 2023) ..........................................................6, 12

*Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) ......................................15

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) ............................16

*Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020) ...........................................10

*Ortega v. Rodenspiel*, 617 F. App'x 795 (9th Cir. 2015).........................................12

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ...............................................................11

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ............................18, 19

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) .....................................................10

*Scott v. Harris*, 550 U.S. 372 (2007) .........................................................................3

*Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*,  252 F.Supp.2d 1046 (E.D. Cal. 2002) .........................14

*Tolan v. Cotton*, 572 U.S. 650 (2014) ........................................................................9

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) ..........................................10

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)....................5, 8, 12, 17

*Warner v. Hill*, 2022 WL 16549350 (D. Mont. Oct. 31, 2022)................................14

*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010)...................................................11

*Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024) ......................................11

## STATE CASES

*Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009) ................................................16

*Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766 (2017), *as modified* (Nov. 17, 2017) .................................................................................18

*Fetters v. Cnty. of Los Angeles*, 243 Cal.App.4th 825 (2016)..................................13

*Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (Ct. App. 1970)..................20

*Hayes v. Cnty of San Diego*, 57 Cal. 4th 622 (2013) ................................................17

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009)............................................................19, 20

*In re B.M.*, 6 Cal.5th 528 (2018) ..............................................................................12

*Koussaya v. City of Stockton*, 54 Cal.App.5th 909 (2020)........................................11

*Lopez v. City of Los Angeles*, 196 Cal. App. 4th 675 (2011) ...................................17

*People v. Marsh*, 37 Cal.App.5th 474 (2019)...........................................................12

*Truong v. Orange Cnty. Sheriff's Dep't*, 129 Cal.App.4th 1423 (2005) ..................13

## STATE STATUTES

Cal. Gov't. Code § 815.2 .....................................................................................3, 20

iii

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

MANNING | KASS

MK

**OTHER AUTHORITIES**

CACI 1305 .................................................................................................................17

**RULES**

Fed. R. Civ. P. 16(e) ...........................................................................................14, 15

Fed. R. Evid. 602 ...........................................................................................................6

MANNING | KASS

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants County of San Bernardino and Deputy Christopher Alfred's motion for judgment as a matter of law should be granted for the reasons set forth in their moving papers and herein.  Even viewing the trial record in the light most favorable to Plaintiff Steffon Barber, a reasonable juror could reach only one conclusion: Plaintiff's reversing his Trailblazer into Deputy Alfred posed an immediate threat of death or serious bodily injury to Deputy Alfred, who had no means of safely stepping out of the path of the Trailblazer, and thus his use of force was reasonable.  A jury in the underlying criminal case in fact *convicted Barber for assault with a deadly weapon* arising out of this same incident.  Though Defendants were erroneously forced to proceed to trial in this federal civil rights case, the evidence confirmed that Deputy Alfred responded to a low-level call, and Plaintiff's actions escalated the encounter by unpredictably accelerating his vehicle in reverse.  The jury found that Barber was 36% responsible for his own injuries, and Deputy Alfred was forced to make a split-second decision to save his own life.

Plaintiff's opposition not only mischaracterizes Deputy Alfred's testimony but also improperly cites to testimony of Scott DeFoe and Robert Morales to establish Deputy Alfred's personal knowledge, when the law requires that the totality of the circumstances be analyzed from the perspective of a reasonable officer in Deputy Alred's position.  Further, DeFoe and Morales's testimony is exactly the 20/20 hindsight that is prohibited, as it fails to account for the fact that Deputy Alfred had to make a tense, split-second decision in a rapidly evolving situation.  Finally, any implied finding against Deputy Alfred's credibility is not proper as a negative inference regarding inconsistent testimony is not supported by the record and the Court may not make credibility determinations on a Rule 50 motion.

The pertinent events of this incident lasted 10 seconds at most, and given the

1

changing circumstances and Plaintiff's own actions, Deputy Alfred's use of force was objectively reasonable under the totality of the circumstances. Accordingly, Deputy Alfred is entitled to judgment as a matter of law on Plaintiff's excessive force claim. "Constitutional violations do not rise and fall on a fraction of a second." *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 816 (9th Cir. 2025) (Nelson, J., concurring in part, dissenting in part).

Deputy Alfred is also entitled to qualified immunity, which is afforded to all but the plainly incompetent or those who knowingly violate the law—neither of which describes Deputy Alfred's actions here. Plaintiff failed to meet his burden to show that his right asserted here was clearly established at the time of the incident. Relevant precedent must define the right with a high degree of specificity. While Plaintiff's cited cases put a reasonable officer in Deputy Alfred's position on notice that he must step to the side of a moving vehicle, no case put such an officer on notice that he must step *into the path of a moving vehicle* in order to get to a position of speculative safety. Notably, here, the area Plaintiff claims Deputy Alfred should have moved into did not even guarantee Deputy Alfred's safety.

Plaintiff also fails to meaningfully rebut the merits of Defendants' argument based on *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff does not address the deadly weapon element of his conviction, the California Supreme Court's interpretation of that element, or the Ninth Circuit's prior, on-point decision (albeit unpublished) holding that a plaintiff's excessive force claim was *Heck*-barred where the plaintiff was convicted of assault with a deadly weapon for driving his vehicle towards an officer. Instead of meaningfully responding to the merits of the *Heck* issue, Plaintiff resorts to procedural arguments. But each of those fail, too.

Finally, Defendants are entitled to judgment as a matter of law on Plaintiff's state law claims. *Heck* forecloses liability on each of Plaintiff's state law claims. And, in any event, substantial evidence does not support the finding that Deputy Alfred is liable for battery, negligence, a violation of the Bane Act, or intentional

2

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

infliction of emotional distress. Deputy Alfred's use of force was reasonable under the circumstances, and the facts do not support a finding that Deputy Alfred had the specific intent to violate Plaintiff's constitutional rights—Deputy Alfred was shooting to save himself from being run over, not to threaten, coerce, or intimidate Plaintiff. Finally, Plaintiff's testimony of being "devastated," coupled with the fact that he never sought treatment for emotional distress, establishes that substantial evidence does not support a finding of severe emotional distress. This court should therefore enter judgment as a matter of law on all of Plaintiff's claims.

## II. DEPUTY ALFRED IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S EXCESSIVE FORCE CLAIM

This incident began and concluded within a manner of ***seconds.*** Under the totality of the circumstances and in light of the unique facts presented in this incident, Deputy Alfred's actions were objectively reasonable, and he is entitled to judgment on Plaintiff's excessive force claim. *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023); *Scott v. Harris*, 550 U.S. 372, 387 (2007). Deputy Alfred's actions must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and allow for the fact that Deputy Alfred was making a split-second decision. *Bryan v. MacPherson*, 630 F.3d 805, 812 (9th Cir. 2010); *Est. of Strickland*, 69 F.4th at 619. The analysis of whether Deputy Alfred's use of force was reasonable is not a static proposition, as the calculus of reasonableness changes as circumstances unpredictably unfold. *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022).

### A. The Changing Circumstances of the Incident Warranted Deputy Alfred's Use Of Force

Plaintiffs emphasize the following evidence:

- the nature of the call that Deputy Alfred was responding to was low-level in nature, Plaintiff was not observed to have had a firearm or other weapon in his hand. (Plaintiff's opp., p. 4:6-10) and when Plaintiff entered his vehicle, he was not arrested. (Plaintiff's opp. p. 4:10)

3

- Deputy Alfred was wearing thirty pounds of equipment at the time of the incident, and Deputy Alfred was a basketball player who could move laterally. (Plaintiff's opp. p. 4:12-15)

- Deputy Alfred did not announce himself as a police officer and used profanity, department policy was to announce and to "refrain" from using profanity; and Deputy Alfred was trained in cover and concealment. (Plaintiff's opp., 4:16-17; 4:22-23).

- At the time of the shooting, Deputy Alfred understood that police training and the department's policy on shooting at moving vehicles states that deputies shall not shoot at a moving vehicle and shall step out of the way rather than shooting, when feasible. (Plaintiff's opp., p. 5:23-26)

- Deputy Alfred intentionally pressed the trigger six times and was trained that he must justify every shot fired, and he did not give Plaintiff a verbal warning that he was going to shoot (Plaintiff's opp., p. 6:13-15, 18-19).

- At the time of the shooting, there was an opening to the west side, adjacent to the wooden fence'. The opening was approximately 8 to 15 feet wide. Deputy Alfred saw that opening before the shooting. (Plaintiff's opp., p. 5:11-15).

None of this' cited evidence contradicts the fact that Plaintiff's sudden and unpredictably threatening actions resulted in Deputy Alfred fearing immediate threat of death or serious bodily injury.

Deputy Alfred did not have a crystal ball. The evidence confirmed that the circumstances changed rapidly. Deputy Alfred had no way to know that Plaintiff would transform the Trailblazer into a deadly weapon and attempt to run him over. In evaluating the use of force under Fourth Amendment standards, the law acknowledges that circumstances can change in the blink of an eye. *Hyde v. City of Willcox*, 23 F.4th at 870, citing *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Deputy Alfred was forced to make a split-second decision: either shoot to save his life or be run over.

**B.     Plaintiff's Red Herrings**

Plaintiff relies upon numerous hypothetical and speculative factors to support the verdict that force was unreasonable. For example, Plaintiff points to the fact that Deputy Alfred *was, in the past,* a basketball player who was trained to move laterally. This is not substantial evidence, nor is it relevant to any material determination of fact. This is rank speculation offered to disparage an officer's state

4

of mind.  At the time of this incident, Deputy Alfred was not playing basketball. Deputy Alfred was acting as a reasonable police officer investigating a call for service that quickly escalated, requiring him to make a split-second decision.  He had to protect himself from being run over.  Basketball experience is irrelevant and adds nothing relevant to the question of how to respond to a life-or-death situation.

Next, Morales's testimony regarding a second-by-second timeline of events (Plaintiff's opp., p. 5:2-8) does not account for the fact that the circumstances changed quickly due to Plaintiff's own actions.  An incident appears far different on paper, when intellectually severed into component parts, than when it actually occurs in real-time in real life.  But at the time of the incident, Deputy Alfred did not have the same luxury of time Morales did to assess every micro-second of the incident—Deputy Alfred was responding in real time.  Furthermore, as well as responding in real time, Deputy Alfred could not measure the exact speed of the vehicle.  Deputy Alfred was responding to what he observed: a Trailblazer's engine revving, gaining tracking, and reversing into him.  The timeline of events and Morales' assessment are exactly the 20/20 hindsight that is prohibited under governing Fourth Amendment standards.  *Bryan v. MacPherson*, 630 F.3d at 812.

Lastly, that Deputy Alfred the lack of compliance with department policies (*cf.* Plaintiff's opp., 4:18-20 ("it would have been important for [Deputy Alfred]" to "identify himself as law enforcement," citing to Scott DeFoe's testimony)) may be relevant to a determination of Deputy Alfred's reasonableness under the totality of the circumstances, but does not by itself indicate a violation of constitutional rights. To the extent that Plaintiff ties non-compliance with department policies to indicate bad tactics, "a Fourth Amendment violation cannot be established 'based merely on bad tactics that result in a deadly confrontation that could have been avoided'". *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018).  Furthermore, it is axiomatic that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or

5

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *see also King v. Riley*, 76 F.4th 259, 267–68 (4th Cir. 2023).

### C.   Plaintiff Mischaracterizes Deputy Alfred's Testimony

Plaintiff mischaracterizes Deputy Alfred's testimony and improperly uses DeFoe's testimony as evidence of Deputy Alfred's personal observations and impressions.  Fed. R. Evid. 602; *Hodges v. Mack Trucks, Inc.,* 474 F.3d 188, 193 (5th Cir. 2006) (quoting *Weisgram v. Marley,* 528 U.S. 440, 454 (2000)) ("in deciding whether [judgment as a matter of law] should have been awarded, [we] must first excise inadmissible evidence; such evidence 'contributes nothing to a legally sufficient evidentiary basis.'").)

First, Deputy Alfred testified that he made a radio dispatch instead of moving out of the way, but Plaintiff draws an incorrect inference, implying that Deputy Alfred simply *chose* to not move out of the way.  (Plaintiff's opposition, p. 5:9-10 ("Instead of moving out of the way as trained, Alfred made a radio dispatch. TT-II: 222:25-11, 224:20-225:9").  While it is true that Deputy Alfred did not move out of the way, Deputy Alfred testified that he did not move out of the way because he ***could not safely*** do so.  [Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2; 257:23-258:4; 287:10- 288:3].

Second, Plaintiff improperly cites to the testimony of DeFoe for the premise that Deputy "Alfred knew the only way to leave the driveway was to reverse out. TT-II: 352:7-15."  DeFoe had no personal knowledge of Deputy Alfred's personal observations and impressions and what Alfred knew at the time.

Third, while Deputy Alfred did testify that when he saw the reverse lights and did not move out of the way (Tr. II: 222: 13-24), Plaintiff incorrectly characterizes this testimony as "[w]hen the Trailblazer started backing up, Alfred **just stood there**. TT-II: 222:13-24."[1] (emphasis added).  Deputy Alfred in fact testified that he

---

[1] Q: So after the door closed and before you saw -- or – you're saying it was the

6

*could not safely move out of the way*.  (Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2; 257:23-258:4; 287:10- 288:3).

Fourth, Plaintiff improperly represents that Deputy Alfred knew that Plaintiff was going to leave before Plaintiff reversed the Trailblazer to indicate that Deputy Alfred should have moved out of the driveway earlier.  (Plaintiff's opp., p. 4:27-28 ("Alfred saw that the Trailblazer's lights were on and its engine was running giving the impression that it was going to leave.")).  Deputy Alfred's testimony explicitly contradicted this premise.  Deputy Alfred testified that it was both the lights being illuminated *and* the car moving that caused Deputy Alfred to believe that Plaintiff was going to leave (Tr. II: 220:9-17).  Thus, Deputy Alfred did not know that Plaintiff was going to leave until the car started moving, and he could not have predicted that the Trailblazer would reverse.[2]  Also, Plaintiff improperly cites to the testimony of DeFoe (citations to Tr. II: 323-4-13 and 324:10-24) on this issue, as DeFoe had no personal knowledge of Deputy Alfred's personal observations and impressions.

Fifth, Deputy Alfred's testimony was that it would have taken him "a couple of seconds" to move 3 or 4 feet (Tr. II: 221:14-22) or 1 to 2 seconds to the opening (Tr. 250:3-13).  Plaintiff incorrectly concludes that it would have taken Deputy

---

same time that the door closed and the reverse lights came on?
A: It was very close.
Q: When you saw the reverse lights, did you then move out of the way?
A: No. The vehicle was in motion.
Q: 25 feet away from you; correct?
A: Approximate, yes.
Q: Now, you're standing there, you're saying the vehicle starts backing up; correct?
A: Correct.
(Tr. II: 222:13-24).

[2] Even when Plaintiff attempted to impeach him with his past testimony, Deputy Alfred's testimony was consistent because he had testified that the lights of the vehicle being on indicated that Plaintiff "just got there or he's getting ready to leave" (Tr. II: 208:2-6).

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Alfred only *1* second.  (Plaintiff's opp., p. 5:14-16 citing to TT-II: 221:14-22, 250:3-13, TT-III: 426:2-7.)  Rather, Plaintiff improperly relies on Morales's testimony, even though Morales does not have personal knowledge of Deputy Alfred's personal observations and impressions and provides only an improper 20/20 hindsight perspective.

Sixth, Plaintiff's reliance on expert witness statements regarding Deputy Alfred's pre-shooting tactics, the speed and lack of immediate threat of the Trailblazer, and opinions on Deputy Alfred's ability to move out of the way, are improper 20/20 hindsight.  (Plaintiff's opp., p. 4:25-27; 5:15-17; 5:18-22; 6:1-12; 6:23-7:4).  Deputy Alfred was responding to the reversing Trailblazer in real time and did not have the luxury of an ex post facto replay of events.  At the time, Deputy Alfred believed the Trailblazer was reversing into him.  Also, "a Fourth Amendment violation cannot be established based merely on bad tactics that result in a deadly confrontation that could have been avoided."  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (internal citations omitted.)

As set forth in Defendants' moving papers, Deputy Alfred testified that the Trailblazer was in motion for all six of his shots and only came to a stop after his sixth shot.  (Tr. II: 226:12-227:14).  Morales's testimony confirmed that the vehicle was in motion for all six shots.  (Tr. III: 419:15-16; 421:20-24; 423:9-424:17).  It is therefore irrelevant whether *"[a]fter* the shooting, Barber's foot was on the brake."  (Plaintiff's opp. p. 6:16-17).

Deputy Alfred could not feasibly and safely move out of the way of the reversing Trailblazer.  This is clearly evident based on his position in the alley when Plaintiff entered his vehicle.  Deputy Alfred was positioned on the left (east) side of the alley, aligned with the driver's side of the vehicle. (Tr. II: 248:2; Defendant's Trial Exhibit 1).   But the left (east) boundary of the alley was a chain-link fence approximately 6 feet high.  (Tr. II: 277:23-278:5). The opening in the wooden fence was on the right (west) side of the alley.  (Tr. II: 210:11-12; 212:19-22). Thus, in

8

order for Deputy Alfred to access the gap in the wooden fence on the west side of the alley, Deputy Alfred would have had to *cross through the path of the reversing Trailblazer*. (Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2).

Moreover, Deputy Alfred testified that the Trailblazer was in motion for all six of his shots and only came to a stop after his sixth shot.  (Tr. II: 226:12-227:14). Even if Deputy Alfred had positioned himself in the opening initially, he testified that even if he could have accessed the gap in the wooden fence, the wooden fence would not have provided any protection from the reversing Trailblazer.  (Tr. II: 257:23-258:4; 287:10- 288:3).  Simply because Deputy Alfred and the deputies positioned themselves there *after the shooting* has no bearing on the reasonableness of Deputy Alfred's decision at the time he shot in order to stop the threat.

## III.   DEPUTY ALFRED IS ENTITLED TO QUALIFIED IMMUNITY

A peace officer is entitled to qualified immunity unless: (1) the "facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right," and (2) "the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).  "The second part of this analysis . . . is an issue for a judgment as a matter of law under Rule 50(a) and (b)." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id*. (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

As set forth above, the record viewed even in the light most favorable to Plaintiff establishes that Deputy Alfred was facing an immediate threat of death or serious bodily injury and therefore his use of force was reasonable under the circumstances and not excessive.  Thus, Deputy Alfred is entitled to qualified immunity as the Plaintiff cannot meet the first prong of the analysis.

Deputy Alfred is also entitled to qualified immunity on the second prong of the analysis as Plaintiff's right was not clearly established at the time of the incident.

9

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff has not met his burden to establish that the right at issue is clearly established because none of the cases establish that the alleged unconstitutionality of Deputy Alfred's use of deadly force is "beyond debate." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (where facts do not present "an obvious case," Plaintiff "must identify a case that put [defendant] on notice that his specific conduct was unlawful"); *Zorn v. Linton*, No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026) ("relevant precedent must define the right with a 'high degree of specificity'").

Plaintiff cites to *Acosta v. City & Cnty of S.F.*, 83 F.3d 1143 (9th Cir. 1996), *Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021), and *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020), but none of these cases are applicable—none involve an officer having no means of safely moving out of the path of a reversing vehicle. In *Acosta* and *Villanueva*, the officer could simply step to the side. *Acosta*, 83 F.3d at 1148; *Villanueva*, 986 F.3d at 1170. Specifically, in *Villanueva*, a witness testified that the truck was moving at a "very slow" speed and was not rushing, and he never heard the engine rev or saw the truck accelerate towards the police sedan. *Id.* at 1170. Similarly, in *Orn*, 949 F.3d at 1175, the defendant officer was never in the path of the vehicle since the vehicle was moving away from him and he was on the side of the vehicle.

In contrast, here, Deputy Alfred had no means of simply stepping to the side. In order to access the opening in the wooden fence, he would have had to cross through the path of the vehicle. While the cases cited by Plaintiff may put a reasonable officer on notice that he cannot use deadly force if he could simply step to the side of a moving vehicle, none of the cases put the officer on notice that he must step *into the path of that vehicle* in order to reach a position of purported safety. For this reason, qualified immunity is appropriate here as a matter of law.

10

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

The cases cited in Defendants' moving papers are more directly on point as they involve situations where the officers could not have safely stepped out of the way of the threat. *Wilkinson v. Torres,* 610 F.3d 546, 551 (9th Cir. 2010); *Williams v. City of Sparks*, 112 F.4th 635 (9th Cir. 2024); *Plumhoff v. Rickard*, 572 U.S. 765 (2014). In addition, the cases involve situations holding that the use of force is justified until the threat is eliminated. *Est. of Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025); *Blanford v. Sacramento County*, 406 F.3d 1110, 1116 (9th Cir. 2005). Notably, the Supreme Court in *Mullenix v. Luna*, 577 U.S. 7, 17 (2015), noted that "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect" and reversed the Circuit Court's determination denying the officer qualified immunity. *Id.* If granting qualified immunity was warranted in *Mullenix*, then it is even more so here because in this tense and dangerous situation, Plaintiff did use his car as a deadly weapon.

Given Plaintiff's conduct and the circumstances faced by Deputy Alfred, it cannot be said that Deputy Alfred was "plainly incompetent" or "knowingly violate[d] the law." *Mullenix*, 577 U.S. at 15, and Deputy Alfred is entitled to qualified immunity.

Plaintiff extrapolates the improper conclusion that "a violation of officer training weighs against granting qualified immunity" from *Drummond v. City of Anaheim,* 343 F.3d 1052 (9th Cir. 2004). But "a general order governing officer conduct in specific situations does not establish the standard of care for the use of force." *Koussaya v. City of Stockton*, 54 Cal.App.5th 909, 939 (2020). "Rather, officers have a duty to act reasonably when using force, and the reasonableness of an officer's conduct is determined in light of the totality of the circumstances." *Id.* Training and guidance do not create clearly established law, and non-compliance with training and guidance is not relevant to the second prong of the qualified immunity inquiry. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir.

11

2018); *King v. Riley*, 76 F.4th 259, 267–68 (4th Cir. 2023); *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

## IV.    *HECK v. HUMPHREY* BARS PLAINTIFF'S CLAIMS AS A MATTER OF LAW.

Plaintiff's rebuttal to Defendants' *Heck* argument fails.  To begin, Plaintiff hardly addresses the merits of Defendants' argument.  For example, Plaintiff does not address the elements of his conviction for assault with a deadly weapon under California Penal Code section 245(a)(1).  He does not address the California Supreme Court's holding that a conviction under that statute *means* that the defendant committed an act for which "the probability of serious injury is great." *In re B.M.*, 6 Cal.5th 528, 534 (2018) (quotations and citations omitted).  And he does not address the Ninth Circuit's decision (albeit unpublished) holding that a plaintiff's claim was *Heck* barred where he was convicted of assault with a deadly weapon after he "used his car in such a way that was . . . likely to cause death or great bodily injury." *Ortega v. Rodenspiel*, 617 F. App'x 795, 796 (9th Cir. 2015).

Instead, Plaintiff simply makes a conclusory assertion—with no reasoning and minimal support—that his excessive force claim "does not negate an element of his Section 245(a)(1) conviction." (Plaintiff's opp. at 17.)  To support that assertion, Plaintiff cites only this court's prior order and two cases.  But one of those cases in fact held that, under *Heck*, a plaintiff's conviction for assault with a deadly weapon barred his section 1983 claim because he drove his car towards an officer, thereby "intentionally taking a substantial step toward causing serious bodily injury to [the officer]." *Havens v. Johnson*, 783 F.3d 776, 783 (10th Cir. 2015).  And the other case simply affirmed a conviction for assault with a deadly weapon where the defendant cut the brake lines of the victim's vehicle. *People v. Marsh*, 37 Cal.App.5th 474, 488 (2019).

To the extent Plaintiff cites *Marsh* to suggest that there may have been a material gap in time between the act that formed the basis of Plaintiff's conviction

12

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

and Deputy Alfred's use of deadly force, which is wrong.  As previously explained, the only act that could have possibly formed the basis of Plaintiff's conviction was reversing the vehicle toward Deputy Alfred, as that is the only act that had *any* probability of causing serious injury or death.  (Defendants' moving papers at 14.)  And that act occurred immediately before Deputy Alfred fired his weapon.

In any event, it is undisputed that the entire sequence of events—from the moment Plaintiff entered his vehicle to the moment Deputy Alfred fired his weapon—lasted, at most, ten seconds.  This is therefore not a case where courts can create two isolated factual contexts, one involving the criminal act, and another involving the alleged excessive force.  *See Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1044 (9th Cir. 2012) (rejecting effort to create two isolated factual contexts because incident occurred quickly); *Cunningham v. Gates*, 312 F.3d 1148, 1154–55 (9th Cir. 2002) (same); *see also Truong v. Orange Cnty. Sheriff's Dep't*, 129 Cal.App.4th 1423, 1429 (2005) (rejecting effort at "temporal hair-splitting" because "[t]his was not a case where the acts alleged to be violations of the plaintiff's civil rights occurred hours, or even minutes, after the act which led to the plaintiff's conviction; the acts occurred mere moments later" and constituted a single, "unbreakable chain of events"); *Fetters v. Cnty. of Los Angeles*, 243 Cal.App.4th 825, 840 (2016) (holding plaintiff's claim was *Heck*-barred and rejecting effort to create "two isolated factual contexts" because the incident was "one continuous and very brief factual situation that lasted just seconds").

Plaintiff also argues that his criminal trial "did not decide the excessive force issue," and that the prosecutor told the jury "not to consider whether it was reasonable for Alfred to shoot [him]."  (Plaintiff's opp. at 17 n.2.)  Like the rest of his argument on the merits, this argument ignores the critical element of Plaintiff's conviction: his act was likely to cause serious injury or death.  And because that element is preclusively established, the reasonableness of Deputy Alfred's use of deadly force is likewise preclusively established.  *See Hung Lam v. City of San Jose*,

13

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

869 F.3d 1077 1086 (9th Cir. 2017), ("[D]eadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'").  That is the legal effect of the jury's finding, regardless of whether the jury was expressly asked whether Deputy Alfred's use of deadly force was reasonable.  *Cf. Warner v. Hill*, 2022 WL 16549350, at *6 (D. Mont. Oct. 31, 2022) ("The issue is not whether the legal questions in [the plaintiff's] state and federal proceedings are identical, but rather whether resolving this question in his favor would impugn the validity of his conviction or sentence.").

In short, Plaintiff cites no authority and provides no reasoning that undercuts the fundamental reason that Plaintiff's claim is *Heck*-barred: Plaintiff used his car in a way that was likely to produce serious bodily injury or death, and Deputy Alfred was therefore permitted to use deadly force.  *See Hung Lam*, 869 F.3d at 1086; *Ortega*, 617 F. App'x at 796.

Unable to respond to the merits of defendants' *Heck* argument, Plaintiff resorts to a variety of procedural arguments.  For example, Plaintiff argues that Defendants forfeited the *Heck* argument by not raising it in the final pretrial conference order.  (Plaintiff's opp. at 14–16.)  Plaintiff is wrong for a simple reason: this court never issued a final pretrial conference order.  Plaintiff cites to the parties' *proposed* pretrial conference order.  (Plaintiff's opp. at 14 (citing Dkt. 134-1).)  But no pretrial conference order exists because the court never issued one.  *See* Fed. R. Civ. P. 16(e) (referring to "the *order issued* after a final pretrial conference") (emphasis added); *see also Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F.Supp.2d 1046, 1058 (E.D. Cal. 2002) (rejecting similar argument because "the court never issued a final pretrial order within the meaning of Rule 16," and instead only issued a scheduling order), *aff'd sub nom. Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 83 Fed. App'x. 954, 955 (9th Cir. 2003) (affirming district court's

14

rejection of argument because order on which plaintiff relied was "[a] scheduling conference order [which] is not a final pretrial order").

In any event, Plaintiff's assertion that he "was not on notice that *Heck* would be an issue at trial" fails because *Heck* is not an issue for trial. (Opp. at 14.) It is not a question for the jury. Instead, it is a purely legal question for the court to decide. There is therefore no need to "formulate a trial plan, including a plan to facilitate the admission of evidence" on the *Heck* issue. Fed. R. Civ. P. 16(e).

For the same reason, Defendants did not need to argue *Heck* in their Rule 50(a) motion. The Ninth Circuit has expressly held that, where a party has raised a legal issue in a motion for summary judgment, it need not renew that issue in a Rule 50(a) motion in order to bring it in a Rule 50(b) motion. *Est. of Aguirre v. Cnty. of Riverside*, 131 F.4th 702, 706 (9th Cir. 2025); *see also Dupree v. Younger*, 598 U.S. 729, 731 (2023).

Plaintiff attempts to escape the holdings of *Aguirre* and *Dupree* by asserting that *Heck* is not a pure question of law, but instead a question whose answer depends on disputed facts. (Opp. at 16–17.) But Ninth Circuit authority squarely forecloses that argument: "whether [a] civil action is barred by *Heck* is a question of law." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1041 (9th Cir. 2012); *see also Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022) (en banc) (explaining that, to determine whether a claim is *Heck* barred, "a court must look at the record of the criminal case").[3] And Plaintiff is wrong to assert that there are disputed facts, or that the relevant record changed between the summary judgment

---

[3]    Other circuits also treat the applicability of the *Heck* bar as a pure question of law. *See Surat v. Klamser*, 52 F.4th 1261, 1272 n.5 (10th Cir. 2022); *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019); *Harrison v. Michigan*, 722 F.3d 768, 770, 772–76 (6th Cir. 2013); *Long v. Atl. City Police Dep't*, 670 F.3d 436, 447 (3d Cir. 2012); *Thore v. Howe*, 466 F.3d 173, 178 (1st Cir. 2006).

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

briefing and now.  (*See* Plaintiff's opp. at 16–17.)  As *Lemos* explained, the *Heck* analysis is simple: courts compare the jury instructions and the elements of the criminal offense to Plaintiff's civil rights claim to determine whether success on that claim would negate an element of the criminal offense.  *See* 40 F.4th at 1006.  The jury instructions and the elements of a Penal Code section 245(a)(1) conviction are undisputed here, and it is therefore undisputed that Plaintiff committed an act that is likely to cause serious injury or death.  And as previously explained, the only act on which that conviction could possibly be based under the governing law is Plaintiff's reversing his vehicle toward Deputy Alfred.  (Defendants' moving papers at 14.) There are therefore no relevant factual disputes, and the *Heck* bar presents a pure question of law.

In any event, the existence of "subsidiary factual disputes" does not change the purely legal nature of the *Heck* bar.  *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 317 (2019).  When "the question is 'for the judge and not the jury,'" courts must resolve factual disputes that are "part and parcel of the broader legal question."  *Id.*  Thus, even if there were disputed facts at issue (there are none), that would not alter the purely legal nature of the *Heck* bar.

Plaintiff's rebuttal arguments on the *Heck* issue therefore fail, and this court should enter judgment as a matter of law on that ground in favor of the County and Deputy Alfred on all claims, including his state law claims.  (Defendants' moving papers at 17.)

## V.  STATE LAW CLAIMS

### A.  Battery and Negligence

Though *Heck* bars all of Plaintiff's state law claims, judgment as a matter of law on those claims is also warranted because substantial evidence does not support them.  Under California law, the excessive force inquiry is "highly deferential to the police officer's need to protect himself and others."  *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009).  "The standard for evaluating the unreasonable use of

16

force reflects deference to the split-second decisions of an officer and recognizes that, unlike private citizens, officers may use deadly force." *Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 685 (2011).  "Unlike private citizens, police officers act under color of law to protect the public interest.  They are charged with acting affirmatively and using force as part of their duties, because the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (cleaned up).  "We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.  What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.* at 686.

Here, Deputy Alfred had to make a choice between shooting or being hit by the reversing Trailblazer, as he could not safely move out of the path of the reversing Trailblazer.  Thus, his actions were objectively reasonable under the totality of the circumstances.

Plaintiff's emphasis on Deputy Alfred's tactical repositioning need not be separately analyzed, as the law already encompasses tactical decisions as a factor in the totality of the circumstances. *See Hayes v. Cnty of San Diego*, 57 Cal.4th 622, 639 (2013); *Vos*, 892 F.3d at 1034 ("the events leading up to the shooting, including the officers' tactics, are encompassed in the facts and circumstances for the reasonableness analysis").  Furthermore, the law does not require Deputy Alfred to put himself in harm's way and considers whether an alternative option is both safe and feasible.  CACI 1305 (asking jury to consider "whether [name of defendant] used other available resources and techniques as [an] alternative[s] to deadly force, ***if it was reasonably safe and feasible to do so***" (emphasis added).)

Accordingly, Deputy Alfred's use of force was reasonable under the totality of the circumstances.  He is entitled to judgment as matter of law on both Plaintiff's battery and negligence claims.

17

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**B.     Bane Act**

Substantial evidence does not support the finding that Deputy Alfred violated the Bane Act.  As set forth above, substantial evidence does not support the jury's finding that Deputy Alfred's actions violated Plaintiff's constitutional rights because Deputy Alfred's actions were objectively reasonable under the totality of circumstances.  Plaintiff also did not present sufficient evidence of any threat, intimidation, or coercion by Deputy Alfred independent of the constitutional violation itself.

Plaintiff misrepresents Defendants' argument that the "threat, intimidation or coercion" requirement be separately established; and also misrepresents the holding in *Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766, 799-800 (2017), *as modified* (Nov. 17, 2017).  The issue in that case was not whether a plaintiff needs to show "threat, intimidation or coercion" separate from the use of excessive force or that a defendant intended to violate plaintiff's constitutional rights (see plaintiff's opp. p. 20:2-3).  The *Cornell* court specifically held that "where, as here, an unlawful arrest is properly pleaded and proved, the ***egregiousness required by Section 52.1*** is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention."  *Id.* at 801-02 (emphasis added).

The *Reese* court, in applying *Cornell*, specifically held that "the Bane Act ***does not require*** the 'threat, intimidation or coercion' element of the claim to be ***transactionally independent*** from the constitutional violation alleged.  *Cornell*, 225 Cal.Rptr.3d at 382–83. Second, the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.' *Id.* at 384." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  Thus, Plaintiff must establish that the facts of the incident here meet the requirements of a violation of the Bane

18

Act; no separate facts are required.

"[T]he specific intent requirement articulated in *Cornell* is consistent with the language of Section 52.1, which requires interference with rights by 'threat, intimidation or coercion,' words which connote an element of intent." *Id.* at 1044. However, the intent is not akin to a general criminal intent, but rather a specific intent standard. *Id.* at 1043 (citing to *Cornell*, adopting the specific intent standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights).

By no means can anyone interpret the circumstances surrounding the incident as one in which Deputy Alfred had specific intent, akin to the specific intent to commit a crime, to violate Plaintiff's constitutional rights.  Deputy Alfred was only reacting to the escalation caused by Plaintiff's own actions over the course of less than 10 seconds, and his actions were indisputably taken to save his own life. Regardless of whether the force used was reasonable (it was), those undisputed circumstances squarely foreclose a finding that Deputy Alfred acted with the specific intent to violate Plaintiff's rights.

### C.    Intentional Infliction of Emotional Distress

"[A] police defendant is 'not similarly situated' to an ordinary tort defendant" and thus, "in evaluating a tort claim against a police officer, a court should 'take[ ] into account the special situation of the police defendant,' particularly with respect to the officer's use of force.'"  *Hereford v. City of Hemet*, 791 F.Supp.3d 1126, 1161 (C.D. Cal. 2025) (citing to *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1273 (1998).)  Here, Deputy Alfred was responding to a call for service, and Plaintiff's actions caused a change in circumstances, resulting in Deputy Alfred reasonably fearing for his life.  That Deputy Alfred was forced to shoot at Plaintiff or else be run over does not constitute conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009).

19

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff also has not established severe emotional distress. "Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970). Barber's use of a wheelchair goes to his physical injuries and is separate and apart from his emotional distress. Barber's only testimony of emotional distress was that he was "devastated." (Tr. III: 464:25-465:3). This is insufficient to constitute substantial evidence of Plaintiff's severe or extreme emotional distress. *See Hughes*, 46 Cal.4th at 1050-51. Moreover, that Plaintiff never sought treatment is not a requirement for Plaintiff to prevail on his claim. Rather, it is evidence that Plaintiff did not suffer severe or extreme emotional distress at all.

Since substantial evidence does not support the finding that Deputy Alfred is liable on any of Plaintiff's state law claims, the County cannot be liable under any of those claims under respondeat superior. *See* Cal. Gov't. Code § 815.2.

## VI.    CONCLUSION

For all the reasons stated herein, the Court should grant the Defendants' motion in its entirety.

20

DATED:  April 22, 2026        Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**


By: _____ /s/ Kayleigh Andersen _____
Eugene P. Ramirez
Kayleigh Andersen
Angela Brunson
Attorneys for Defendant, COUNTY OF
SAN BERNARDINO and DEPUTY
CHRISTOPHER ALFRED

MANNING | KASS

21

*Certificate of Compliance with L.R. 11-6.2*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,794 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 22, 2026

By:   /s/ Kayleigh Andersen
Kayleigh Andersen

22

## DECLARATION OF KAYLEIGH ANDERSEN

I, Kayleigh Andersen, declare as follows:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of Defendants County of San Bernardino and Deputy Christopher Alfred's Reply in Support of Renewed Motion for Judgment as a Matter of Law Pursuant to Frcp 50(b).

2.    Attached as **Exhibit A** are relevant excerpts of the trial transcript cited to in Defendants' moving papers and reply papers, and do not include any new information, and are provided for the convenience of the Court.

3.    Attached as **Exhibit B** is Defendant's Trial Exhibit 1, Diagram 1-01.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of April, 2026, at Los Angeles, California.


_____/s/ Kayleigh Andersen_____
Kayleigh Andersen

1
**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**