Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
 *kayleigh.andersen@manningkass.com*
Angela Brunson (State Bar No. 189223)
 *Angela.Brunson@manningkass.com*
**MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 5:22-cv-00625-KK-DTBx<br><br>*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*<br><br>**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**<br><br>Judge:  Hon. Kenly Kiya Kato<br>Date:   May 7, 2026<br>Time:   9:30 a.m.<br>Crtrm.: 3; 3rd Floor |

---

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**



**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................... 1

II.  THE VERDICT IS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE ................................................................................................ 2

    A.   The clear weight of the evidence establishes that Deputy's Alfred's use of force was reasonable and not excessive under the totality of the circumstances. ........................................................ 2

    B.   The clear weight of the evidence establishes that Deputy Alfred is entitled to qualified immunity. ............................................ 7

    C.   The jury's verdict as to Plaintiff's state law claims is against the clear weight of the evidence. .................................................... 8

III. THE COURT'S ERRONEOUS EVIDENTIARY RULINGS SUBSTANTIALLY PREJUDICED THE DEFENDANTS ........................... 11

    A.   Plaintiff's criminal conviction and criminal record were relevant and admissible; exclusion of them was error that prejudiced Defendants ................................................................................. 11

        1.   *Plaintiff's criminal conviction* ...................................... 11

        2.   *Plaintiff's criminal record and other criminal history* .............. 14

        3.   *Defendants did not ask Plaintiff about his criminal history; Plaintiff opened the door in response to questions about physical therapy.* ................................. 15

    B.   Dr. Vilke's Report ................................................................... 16

    C.   Future Economic Damages ...................................................... 16

    D.   Morales' testimony ................................................................. 17

IV.  THE JURY'S DAMAGES AWARD WAS EXCESSIVE ........................... 18

V.   CONCLUSION ....................................................................................... 21

i

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acosta v. City & Cnty of S.F.,* 83 F.3d 1143 (9th Cir. 1996) ......................................8

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)............................................................8

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002).....................................................................................20

*Bell v. Williams*, 108 F.4th 809 (9th Cir. 2024) ........................................18

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010).............................................2, 5

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017) ....................14

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829 (9th Cir. 2014).....................................................................................7

*Georges v. Novartis Pharms. Corp.*, 988 F. Supp. 2d 1152 (C.D. Cal. 2013)....17, 19

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) ........................................15

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................................2

*Grunenthal v. Long Island R. Co.,* 393 U.S. 156 (1968)...........................................20

*Havens v. Johnson*, 783 F.3d 776 (10th Cir. 2015)........................................11

*Hung Lam v. City of San Jose*, 869 F.3d 1077 1086 (9th Cir. 2017) ........................12

*Hunter v. Bryant*, 502 U.S. 224 (1991) ....................................................9

*Hyde v. City of Willcox*, 23 F.4th 863 (9th Cir. 2022).....................................3

*King v. Riley*, 76 F.4th 259 (4th Cir. 2023) ................................................4

*Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) ........................................9

*Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020) ..................................8

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ..................................9

*Snake River Valley Elec. Ass'n v. PacifiCorp,* 357 F.3d 1042 (9th Cir. 2004).........15

*United States v. Bagley*, 772 F.2d 482 (9th Cir. 1985)...............................13

*United States v. Berry*, 627 F.2d 193 (9th Cir. 1980)................................13

ii

*United States v. Rangel,* 466 F.3d 158 (1st Cir. 2006).........................................15, 16

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) ............................................8

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)................................3, 4


**STATE CASES**

*Cornell v. City & Cnty. of San Francisco*, 225 Cal.Rptr.3d 766 (Cal. Ct. App. 2017)..........................................................................................................9, 10

*Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (Ct. App. 1970)..................10

*Hayes v. Cnty of San Diego*, 57 Cal. 4th 622 (2013) ...................................................4

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009).....................................................................10

*Koussaya v. City of Stockton*, 54 Cal.App.5th 909 (2020)...........................................4


**OTHER AUTHORITIES**

CACI 1305 .......................................................................................................................9

CACI 3066, Bane Act—Essential Factual Elements (Civ. Code, § 52.1) ................21

CALCRIM No. 875, Assault With Deadly Weapon or Force Likely to Produce Great Bodily Injury (Pen. Code, §§ 240, 245(a)(1)-(4), (b))...........12

Ninth Circuit Model Civ. Jury Instruction No. 1.10................................................20

MANNING | KASS

MK

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The clear weight of the evidence established that Deputy Alfred could not feasibly and safely move out of the way of the reversing Trailblazer and had no choice but to shoot or be run over. In order for Deputy Alfred to access the gap in the wooden fence, which would not have necessarily provided sufficient safety from a reversing Trailblazer, Deputy Alfred would have had to move into the path of the reversing Trailblazer. Plaintiff's own unpredictable actions in reversing the Trailblazer escalated a low-level call to a life-threatening situation. Indeed, even the jury found Plaintiff over one-third responsible for his own injuries. Thus, Deputy Alfred's actions were reasonable under the totality of the circumstances.

Plaintiff Steffon Barber's opposition to Defendants' new trial motion relies on mischaracterizations of Deputy Alfred's testimony and improper reliance on the testimonies of Scott DeFoe and Robert Morales in violation of precedent requiring that the reasonableness of an officer's actions must not be viewed from 20/20 hindsight and must be viewed from the perspective of a reasonable officer on the scene.

As the clear weight of the evidence establishes that Deputy Alfred's actions do not constitute excessive use of force, so Deputy Alfred is also entitled to qualified immunity. Based on precedent, Plaintiff cannot establish that the right at issue was clearly established at the time of the incident and relies on inapposite case law that does not address this incident. Here, Deputy Alfred would have had to put himself in greater danger – into the path of the reversing Trailblazer -- in order to attempt to access a spot of dubious safety.

For the same reasons that Plaintiff's excessive force claim fails, so Plaintiff's state law claims fail. Specifically, with the respect to the violation of the Bane Act, Plaintiff failed to establish Deputy Alfred acted with "threat, intimidation or coercion" or with specific intent to violated Plaintiff's constitutional rights. The

1

record shows that Deputy Alfred was only responding to a rapidly changing circumstance created by Plaintiff's own unpredictable actions.

Moreover, the Court's erroneous evidentiary rulings substantially prejudiced the Defendants.  The Court's improper exclusion of Plaintiff's criminal conviction and history, prejudicial ruling regarding Dr. Vilke's report, improper permitting of testimony of future economic damages, and failing to exclude the testimony of Robert Morales were prejudicial.

Finally, the jury's award was clearly excessive and Plaintiff cannot identify any verdict that would justify the jury's astronomical and unjustified award.  While *Lam v. City of San Jose* may be the most analogous verdict with the jury in that case finding that plaintiff was 35% at fault for his own injuries, which include paraplegia from a gunshot, even accounting for inflation, the jury's award of $3 million in that case for pain and suffering is far below this jury's award for past and future pain and suffering.  Moreover, the award is grossly disproportionate given that Plaintiff did not seek treble damages under the Bane Act.

## II.   THE VERDICT IS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE

### A.   The clear weight of the evidence establishes that Deputy's Alfred's use of force was reasonable and not excessive under the totality of the circumstances.

Deputy Alfred's actions must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight, and allow for the fact that Deputy Alfred was making a split-second life-or-death decision.  *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"); *see Bryan v. MacPherson*, 630 F.3d 805, 812 (9th Cir. 2010); *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023).  The analysis of whether Deputy Alfred's use of force was reasonable

2

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59

under the circumstances must not be static because the reasonableness of a particular use of force changes as circumstances change while the incident unfolds. *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir. 2022). "[A] Fourth Amendment violation cannot be established based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018) (internal citations omitted).

Here, based on the evidence presented at trial, Deputy Alfred's actions were reasonable under the totality of the circumstances. The entire incident, from start to finish, lasted only 10-12 seconds. Between the time that Deputy Alfred began talking to Plaintiff and the time that he fired the first shot, Deputy Alfred had to make a multitude of subsidiary decisions about the physical scene, the situation, Plaintiff's actions, and his own safety—all within an incredibly compressed timeframe.

This is exactly the kind of case—based on all of the undisputed facts, and certainly under the clear weight of the evidence at trial—that highlights, and indeed confirms, the Supreme Court's admonition in *Graham*. Deputy Alfred determined that he could not feasibly and safely move out of the way of the reversing Trailblazer due to several important factors. The left (east) boundary was a chain-link fence approximately 6 feet high, and the right (west) boundary was the building stucco. In order for Deputy Alfred to access the gap in the wooden fence on the west side of the driveway, Deputy Alfred would have had to move into the path of the reversing Trailblazer and risk his life due to the unpredictable actions that Plaintiff chose to undertake. Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2. Specifically, the evidence confirmed that Plaintiff unexpectedly escalated the situation by reversing his Trailblazer at Deputy Alfred. The jury found Plaintiff more than one-third responsible for his own injuries. Dkt. 200.

Plaintiff's arguments in opposition to a new trial should be rejected. First, Plaintiff misrepresents Deputy Alfred's choices about situational awareness, cover,

3

concealment and tactical position as a violation of departmental policy that is somehow determinative in the reasonableness calculus for purposes of Plaintiff's Fourth Amendment claim. (Plaintiff's opp. p. 4:13-22.) That Deputy Alfred may have deviated from departmental policies does not alter the calculus of reasonableness when he was faced with a life-or-death situation. *See Koussaya v. City of Stockton*, 54 Cal.App.5th 909, 939 (2020) (general order governing officer conduct in specific situations does not establish standard of care for use of force). The law already encompasses tactical decisions as a factor in the totality of the circumstances. *See Hayes v. Cnty of San Diego*, 57 Cal.4th 622, 639 (2013); *Vos*, 892 F.3d at 1034 ("the events leading up to the shooting, including the officers tactics, are encompassed in the facts and circumstances for the reasonableness analysis").

Plaintiff is incorrectly seeking to shift the analysis from Deputy Alfred's reasonable apprehension of imminent death or injury to purported policy violations, which is not the Fourth Amendment standard under *Graham* and its progeny. *Id.* ("a Fourth Amendment violation cannot be established based merely on bad tactics that result in a deadly confrontation that could have been avoided"); *see also King v. Riley*, 76 F.4th 259, 267–68 (4th Cir. 2023). Furthermore, the record shows that Deputy Alfred never violated any department policy. Tr. II: 203:1-4 (no explicit prohibition on the use of profanity); 257: 13-16 (can use deadly force if you cannot safely move out of the way); 356:14-19 (exigent circumstances exception permitting shooting at a moving vehicle); 356:20-23 (no critiques by DeFoe of the use of force policy); Dkt. 200 (no *Monell* violation).

No reasonable officer in Deputy Alfred's position would expect that when walking up a driveway in response to a low-level call, a suspect would ignore his commands and then reverse the Trailblazer into him as Plaintiff did. No reasonable officer in Deputy Alfred's position would expect a Trailblazer with the hatch open to suddenly be turned into a dangerous weapon, resulting in Deputy Alfred fearing

4

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

for his safety and life and having to shoot to avoid being run over.

Plaintiff also misrepresents Deputy Alfred's testimony about when he realized that Plaintiff was planning to escape the scene by reversing the Trailblazer in his direction. (Plaintiff's opp. p. 4:14-22.) Deputy Alfred testified that it was not until the Trailblazer's lights were illuminated and the car started moving that he believed Plaintiff was going to leave. Tr. II: 220:9-17. His testimony does not say that he had "clear indications that the Trailblazer was going to leave," that he knew "the only way to leave the driveway was to reverse out," or that when Plaintiff closed the door, he thought Plaintiff was going to reverse. (Plaintiff's opp., p. 4:13-22.) The clear weight of the evidence shows that Plaintiff's actions were sudden and unpredictable, and Deputy Alfred had to make a split-second decision in light of numerous unknown variables.

Next, Plaintiff's characterization of the time it would take for Deputy Alfred to "move out of the Trailblazer's potential path rather than shooting" (Plaintiff's opp. p. 4:23-24) and statement that Deputy Alfred could have "repositioned himself within one second rather than shooting" (*id.* at 5:16-17) improperly emphasize the testimony of Scott DeFoe and Robert Morales over Deputy Alfred in violation of the law prohibiting 20/20 hindsight bias. *Bryan*, 630 F.3d at 812; *Est. of Strickland*, 69 F.4th at 619. This speculative and conjectural expert testimony cannot substitute for the situational determinations of an officer confronted with a life-or-death scenario.

In fact, Deputy Alfred's testimony contradicted Morales' testimony that it would have taken Deputy Alfred only *one* second to move out of the vehicle's path (Plaintiff's opp., p. 5:22-23), and Deputy Alfred's testimony should be given more weight. Deputy Alfred testified that it would have taken him more than one second—specifically, he stated it would have taken him "a couple of seconds" to move 3 or 4 feet (Tr. II: 221:14-22) or 1 to 2 seconds to the opening (Tr. II: 250:3-13). That difference of two or three seconds may seem miniscule on paper, but relative to the fact that the entire incident lasted no more than 10 seconds, those

5

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59

seconds are a matter of life and death when a Trailblazer is transformed into a deadly weapon and reversing into the officer in the dark on a narrow driveway.

Moreover, Deputy Alfred testified that in order for him to access the gap in the wooden fence on the west side of the driveway, he would have had to move into the path of the reversing Trailblazer.  (Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2.)  Even if he could have accessed that gap in the fence, it would not have provided any protection.  (Tr. II: 257:23-258:4; 287:10- 288:3.)  Deputy Alfred considered his options in a flash and concluded that he had no option but to shoot in order to save himself.  His lack of options confirms the objective reasonableness of his fear of immediate injury or death.

Plaintiff's characterization of Defendants' new trial motion as arguing that the "Trailblazer 'could have knocked' down the fence" takes Defendants' argument out of context.  *See* Plaintiff's opp. p. 6:7-11.  This case is not about the structural integrity of the fence.  The core controverted issue was the reasonableness of the force Deputy Alfred used in order to stop a deadly threat foisted upon him by virtue of a suddenly reversing Trailblazer, *which a criminal jury unequivocally concluded was a deadly weapon that was used to assault the officer*.[1]

Next, Plaintiff argues that he did not know law enforcement was speaking to him and that Deputy Alfred never identified himself as a police officer. (Plaintiff's opp., p. 6:14-18).  This is simply not credible.  And contrary to Plaintiff's argument that the Court should not revisit the jury's credibility determinations (p. 6:13-14), in reviewing a motion for a new trial, the Court "can weigh evidence and assess the credibility of the witnesses."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com*

---

[1]   Thus revealing, in its starkest form, how and why—as a matter of law—the excessive force verdict in this section 1983 action is fundamentally incompatible with the criminal trial jury's verdict convicting Plaintiff of assault with a deadly weapon.  (*See* Defs.' Rule 50(b) motion and *Heck* argument, which is incorporated herein by reference.)

6

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

*Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  As set forth more fully in Defendants' moving papers, Plaintiff's testimony was simply not credible, because he previously testified that it was *the police telling him not to leave* (*compare* Tr. III: 479:25; 482:8-10 with Tr. III: 480:2-481:15).

**B.      The clear weight of the evidence establishes that Deputy Alfred is entitled to qualified immunity.**

Qualified immunity holds that a law enforcement officer defendant may not be held liable unless all reasonable officers in his position would realize that the officer's actions violate clearly established law under the Fourth Amendment.  The Fourth Amendment excessive force standard embodies an assessment of an officer's reasonableness that is heavily weighted toward the officer defendant.  Here, the clear weight of the evidence in this case falls short of satisfying that stringent standard.

Plaintiff's arguments against qualified immunity ignore the key point of the doctrine.  First, Plaintiff incorrectly contends that Deputy Alfred's qualified immunity may only be raised in a Rule 50(b) motion.  (*See* Plaintiff's opp. 7:20).  If Defendants' argument were solely confined to whether the law was clearly established at the time Deputy Alfred acted, then Plaintiff's argument might be correct.  But here, Defendants assert that this Court erred in its conclusion regarding *both prongs of the analysis*.  Because the qualified immunity determination in part turns on whether Deputy Alfred violated an underlying statutory or constitutional right (i.e., a factual question under prong one of the analysis), this issue is properly raised in this Rule 59 motion—in addition to Defendants' concurrently filed Rule 50(b) motion.

Here, the clear weight of the evidence shows that Deputy Alfred's shooting at Plaintiff did not constitute excessive use of force in violation of Plaintiff's constitutional rights.  For the reasons set forth *supra*, Deputy Alfred had to make a split-second, life-or-death decision, and *Graham* instructs the district court not to

7

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

review the circumstances with 20/20 hindsight bias.  Additionally, given Plaintiff's conduct and the circumstances faced by Deputy Alfred, it cannot be said that Deputy Alfred was "plainly incompetent" or "knowingly violate[d] the law." *Mullenix v. Luna*, 577 U.S. 7, 15 (2015), and Deputy Alfred is thus entitled to qualified immunity.

Plaintiff's citations to *Acosta v. City & Cnty of S.F.,* 83 F.3d 1143 (9th Cir. 1996), *Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021), and *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020), are inapposite for a simple reason: none of those cases involve an officer who could have gotten out of the way of a deadly threat only by *first placing himself in greater physical danger*.  Given the time for Deputy Alfred to respond, 1 or 2 seconds, and the uncertainty of whether the wooden fence could even provide safety, Deputy Alfred's actions were reasonable under the circumstances.  Thus, when reviewing this case with the requisite level of specificity that the Supreme Court mandated, this is not a case where the law was clearly established to put Deputy Alfred on notice that he was violating the federal constitution when he chose to use force.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts  . . . not to define clearly established law at a high level of generality").

## C.	The jury's verdict as to Plaintiff's state law claims is against the clear weight of the evidence.

The clear weight of the evidence does not support the jury's verdict on Plaintiff's state law claims for battery, negligence, violation of the Bane Act and intentional infliction of emotional distress.  Plaintiff's reversing of his Trailblazer into Deputy Alfred posed an imminent threat of death or serious bodily injury, and Deputy Alfred acted reasonably when he was forced to stop the threat.  Deputy Alfred ***could not safely*** move out of the way. (Tr. II: 277:15-278:5; 288:9-289:1; 305:25-306:2; 257:23-258:4; 287:10- 288:3).  The law does not require Deputy Alfred to put himself in harm's way.  Rather, it considers whether an alternative

8

option is both safe and feasible.  CACI 1305 (asking jury to consider "whether [name of defendant] used other available resources and techniques as [an] alternative[s] to deadly force, *if it was reasonably safe and feasible to do so*" (emphasis added).)  Here, moving into the path of the Trailblazer cannot be interpreted as "reasonably safe and feasible."

Simply because Plaintiff's experts testified otherwise does not render Deputy Alfred's actions unreasonable.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (question is whether officer "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed … after the fact"); *Lal v. California*, 746 F.3d 1112, 1118 (9th Cir. 2014).

The clear weight of the evidence also does not support the jury's finding that Deputy Alfred violated the Bane Act.  Because the evidence does not support the finding that Deputy Alfred violated Plaintiff's constitutional rights, there can be no Bane Act violation.  Moreover, the evidence confirms that Deputy Alfred never used "threat, intimidation, or coercion" independent of any constitutional violation.

The *Reese* court, in applying *Cornell*, specifically held that: "the Bane Act *does not require* the 'threat, intimidation or coercion' element of the claim to be *transactionally independent* from the constitutional violation alleged.  *Cornell v. City & Cnty. of San Francisco*, 225 Cal.Rptr.3d 766, 382–83 (Cal. Ct. App. 2017).  Furthermore, the Bane Act requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure.' *Id.* at 384." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (emphasis added).  Thus, Plaintiff must still establish the threat, intimidation and coercion prong and the specific intent to violate his constitutional rights but need not do so with separate facts.  However, Plaintiff fails to do so here, as the clear weight of the evidence shows that Deputy Alfred was only reacting to the changing circumstances caused by Plaintiff's own actions.  Deputy Alfred's shooting at Plaintiff to prevent the reversing Trailblazer from

9

running him over cannot, by any stretch of the imagination, be interpreted as Deputy Alfred having the specific intent to violate Plaintiff's constitutional rights. *See Cornell*, 225 Cal.Rptr.3d at 801-2 (adopting the specific intent standard established in *Screws v. United States*, 325 U.S. 91 (1945), for assessing criminal violations of federal civil rights).

Finally, the clear weight of the evidence is against the jury's verdict on Plaintiff's intentional infliction of emotional distress claim. Deputy Alfred was responding to a call for service, and Plaintiff's actions caused a change in circumstances, resulting in Deputy Alfred reasonably fearing for his life. The fact that Deputy Alfred was forced to shoot at Plaintiff or else be run over does not constitute conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). Plaintiff has also not established severe emotional distress. "Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970). Plaintiff's use of a wheelchair goes to his physical injuries and is separate and apart from his emotional distress. Plaintiff's only testimony about emotional distress was that he was "devastated." (Tr. III: 464:25-465:3).This is insufficient to support a jury finding of Plaintiff's suffering extreme emotional distress. *Hughes*, 46 Cal.4th at 1050-51.

Since substantial evidence does not support the finding that Deputy Alfred is liable on any of Plaintiff's state law claims, the County cannot be liable under any of Plaintiff's state law claims under respondeat superior principles. *See* Cal. Gov't. Code § 815.2.

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

## III.   THE COURT'S ERRONEOUS EVIDENTIARY RULINGS SUBSTANTIALLY PREJUDICED THE DEFENDANTS

### A.   Plaintiff's criminal conviction and criminal record were relevant and admissible; exclusion of them was error that prejudiced Defendants.

#### 1.   *Plaintiff's criminal conviction*

Plaintiff cannot credibly claim that his criminal conviction for assault with a deadly weapon under California Penal Code section 245(a)(1) for the same incident at issue in this trial "had little or no probative value in the civil case." (Plaintiff's opp. p. 11: 19-20).  While the court in *Havens v. Johnson*, 783 F.3d 776 (10th Cir. 2015) did hold that "[a]n excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer" (*id.,* at 782), that court also held that "[s]ometimes the excessive-force claim must be barred in its entirety because the theory of the claim is inconsistent with the prior conviction." (*Id.* at 783).  And applying that rule, it held that, under *Heck*, a plaintiff's conviction for assault with a deadly weapon barred his section 1983 claim because he drove his car towards an officer, thereby "intentionally taking a substantial step toward causing serious bodily injury to [the officer]." *Id.*  That is the case here.

As set forth in Defendants' moving papers, Plaintiff's conviction is evidence that he posed an immediate threat to Deputy Alfred.  It also confirms that Plaintiff acted "willfully" with awareness that reversing his Trailblazer would likely result in great bodily injury to Deputy Alfred (regardless of whether Plaintiff was aware that he was a police officer).  Further, it confirmed what Deputy Alfred perceived prior to the use of force; and that Deputy Alfred's use of force was reasonable under the circumstances because it was not practical for Deputy Alfred to give advance warning of his use of force.

Plaintiff incorrectly focuses on the different "standards" for California Penal Code section 245(a)(1) and excessive force under the Fourth Amendment.

11

(Plaintiff's opp. p. 11:22-24.)  But here, Plaintiff's criminal conviction demonstrates that the two cases are legally incompatible in a way that should have prevented this case from going to a jury in the first place.

In order to convict Plaintiff of violating California Penal Code section 245(a)(1), the jury in the criminal case must have found that Plaintiff's actions were likely to result in serious injury or death.  CALCRIM No. 875, Assault With Deadly Weapon or Force Likely to Produce Great Bodily Injury (Pen. Code, §§ 240, 245(a)(1)-(4), (b)).  Because Deputy Alfred was faced with a deadly threat (as the criminal trial jury concluded), his use of force to stop that threat and save his life was reasonable and appropriate under federal law.  *See Hung Lam v. City of San Jose*, 869 F.3d 1077 1086 (9th Cir. 2017) ("[D]eadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'")

Defendants do not argue that "an assaultive motor vehicle … independently justif[ies] the use of lethal force," but rather that Plaintiff's criminal conviction for assault with a deadly weapon already established as a matter of law that Deputy Alfred reasonably feared for his life.  This is 100 percent relevant to the civil case.[2]  The criminal jury verdict established that Plaintiff had the specific intent to reverse his Trailblazer into Deputy Alfred and that by that action, the application of force would probably result.  This is a critical factor in determining whether Deputy Alfred's actions were reasonable under the circumstances.

It beggars belief for Plaintiff to argue that his conviction was properly excluded as "misleading and confusing" pursuant to Federal Rule of Evidence 403.  There is no basis for Plaintiff's argument that "[a]dmission [of Plaintiff's criminal conviction] would have risked the jury assuming the criminal case already

---

[2]    More so, it should have barred this action from ever reaching a jury under *Heck*.

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

adjudicated the propriety of Alfred's deadly force." (Plaintiff's opp. p. 12:12-14). Plaintiff's citation to *United States v. Bagley*, 772 F.2d 482, 488 (9th Cir. 1985), is inapposite. In *Bagley*, the defendant was on trial for bank robbery and had four prior convictions, two for robbery and two for forgery. *Id.* at 485–86. *Bagley* held that evidence of the prior robbery convictions was unduly prejudicial because the defendant was on trial for robbery, and the prejudice was not outweighed by the government's need to impeach the defendant because the government could have used the convictions for forgery to impeach the defendant. *Id.* at 488. But here, Defendants did not seek to introduce prior convictions for the same offense—there was no risk of the jury thinking, "because he did it before, he must have done it again." *Id.* Instead, Defendants sought to introduce a conviction stemming from the very same incident and conduct that the jury was being asked to evaluate. The conviction was therefore highly probative. And Defendants did not have other convictions they could use to establish that Plaintiff's conduct created a likelihood of serious injury or death. *Bagley* is therefore inapposite.

Furthermore, Plaintiff provides no legal basis for his contention that "it would have been unfair to permit the jury to speculate on what the jury in the criminal case found, where there was different evidence presented and a different standard of proof," or that "admission of the criminal jury's findings would have included [Plaintiff's] acquittals … leaving the jury confused." (Plaintiff's opp. p. 12:18-13:7). That the Plaintiff was convicted of assault with a deadly weapon following a jury trial arising from the same incident for which he is now suing need not require any mention of the other charges of which Plaintiff was acquitted. Also, any purported confusion from acquittal of other charges could have been remedied by a limiting instruction. *See United States v. Berry*, 627 F.2d 193, 198 (9th Cir. 1980) ("[a] timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate.").

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

### 2.   *Plaintiff's criminal record and other criminal history*

Contrary to Plaintiff's contentions (Plaintiff's opp. p. 13:15-21), Defendants did not intend to introduce Plaintiff's criminal record to show his character.  Fed. R. Evid. 404(b)(1); Dkt. 119.  Also, contra Plaintiff's argument, Defendants did not argue that his criminal history was relevant only to lost earnings (Compare Plaintiff's opp. p. 13:23-24 with Dkt. 119, p. 4:1-5 (intent, motive, and plan; ignoring police and resisting arrest).  As set forth in Defendants' moving papers, Plaintiff's criminal record is relevant to damages, Plaintiff's bias against police officers, and Plaintiff's motive in bringing the lawsuit, impeachment, and mitigation.  Dkt. 210.

That the Court reserved ruling as to the admissibility of Plaintiff's criminal history with respect to damages and that Defendants never revisited this point or raised the issue of impeachment of Plaintiff with his criminal history is irrelevant. While a court may change a ruling during trial, the parties expect the court to adhere to the earlier ruling if no facts or circumstances arise to warrant a reversal.  *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

In *City of Pomona,* the trial court denied plaintiff's *Daubert* motion and then at trial, when plaintiff made a request to voir dire the expert witness, the court quickly denied it, and the Ninth Circuit held that no further objection by plaintiff was required especially at the risk of irritating the district judge who was intent at moving the trial along briskly.  *Id.* at 1071.)  Similarly, here, Plaintiff's criminal history was relevant to Defendants' argument regarding mitigation of damages, but the Court nonetheless barred any testimony related to it.  Tr. III: 494:7-14 (Court sustaining objection about Plaintiff stopping physical therapy because of his trial); Tr. V: 776:5-15 ("the argument regarding mitigation … gets into my order on the motions in limine, because [the Court's] understanding is that [Plaintiff] refused physical therapy while in prison because of the restraints and conditions of that therapy. … [S]o to simply say that he declined therapy without a full explanation of

14

MK MANNING | KASS

why under the circumstances … does not present a full picture."). Thus, the facts are similar to how the plaintiff in *City of Pomona* need not have objected or raised the issue again at the risk of irritating the trial judge.

Here, notwithstanding the Court's order on the motion in limine reserving judgment, the Court demonstrated that it would continue to exclude testimony of Plaintiff's criminal history as to damages despite the testimony at trial. Defendants' raising the issue with respect to damages or even impeachment would have been a pointless formality. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1326 (9th Cir. 1993) (party need not have objected to jury instruction when it would have been a "futile formal objection").

> **3.** *Defendants did not ask Plaintiff about his criminal history; Plaintiff opened the door in response to questions about physical therapy.*

Plaintiff's argument that it was "defense counsel who intentionally asked [Plaintiff] questions designed to elicit testimony … [and] they knew would violate this Court's order on Plaintiff's motion in limine" (Plaintiff's opp., p. 14:9-13) mischaracterizes the record. Defense counsel was asking Plaintiff about his *physical therapy* when Plaintiff offered (spontaneously and with no prompting from defense counsel) that he was "being chained in a room" during physical therapy (Tr. III: 496:10-11 [emphasis added]), and he "[had] a walker in prison" (Tr. III: 496:15-16 [emphasis added]).

That Defendants did not make an offer of proof is irrelevant. *Cf. Snake River Valley Elec. Ass'n v. PacifiCorp,* 357 F.3d 1042, 1052-53 (9th Cir. 2004) and *United States v. Rangel,* 466 F.3d 158, 162 (1st Cir. 2006), cited by Plaintiff. *Snake River* is factually distinguishable because the Ninth Circuit specifically noted that because plaintiff did not proffer the evidence once the door had assertedly been opened, it forfeited the issue by its inaction. In contrast, here, after Plaintiff opened the door to his criminal history, the Court later prevented Defendants' attempt to

15

elicit testimony from Dr. Vilke regarding mitigation exactly because it would reference Plaintiff's period of incarceration. Similar to how Defendants need not have raised the issue of the Court's ruling as to Plaintiff's criminal history as to damages because it would have been futile, so here, Defendants need not have raised the issue because Defendants need not risk irritating the Court when the Court's position on it was unambiguous.

*United States v. Rangel* is also factually distinguishable because the Ninth Circuit held that defendant in that case raised the issue of the "willing participant" defense for the first time six months after trial. 466 F.3d 158, 162 (1st Cir. 2006). Here, Defendants are not raising any new theory, as it was their position long before the verdict was rendered that Plaintiff's criminal history was relevant to motive, intent, or plan, anti-police bias, resisting arrest, and damages.

### B.    Dr. Vilke's Report

Plaintiff's opposition does not address the prejudicial errors resulting from the Court's improper exclusion of Dr. Vilke's report as set forth in Defendants' moving papers. Following the Court's prejudicial ruling, the only option for Defendants was to acquiesce to an agreement with Plaintiff's counsel so that limited testimony regarding regression would be admitted into evidence. However, that severe limitation prevented crucial testimony by Dr. Vilke regarding Plaintiff's refusal to go to physical therapy or occupational therapy, despite counseling by medical staff. Dkt. 210-1, pp. 14-15. The jury determined that Plaintiff was 36% responsible for his injuries without this evidence; with it, there is little doubt the jury would have considered Plaintiff even more at fault for his own injuries by his failure to mitigate by attending therapy despite being counseled by medical staff to the contrary. By no means can Dr. Vilke's testimony be characterized as "unrestricted" (Plaintiff's opp. p. 15:20), and the exclusion was prejudicial to Defendants.

### C.    Future Economic Damages

Plaintiff presented no evidence of his future medical costs or specific future

16

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

medical treatment.  Tr. III: 460-500 (Plaintiff's testimony, generally); 505-560 (Dr. Bennet Omalu's testimony, generally).  Dr. Omalu's testimony is insufficient evidence in support of future medical costs or specific future medical treatment.

Plaintiff mischaracterizes the record.  Defense counsel never asked Dr. Omalu about the cost of Plaintiff's future medical treatment; rather, Dr. Omalu offered a hypothetical and used "one hundred million" as an example in response to defense counsel's question about whether Plaintiff could ever use a walker and ambulate with a walker.  Tr. III: 552:1-10.  Previously, Dr. Omalu had identified $20 million to "spend" to see if Plaintiff could walk.  Tr. III: 557:12-5586.  Dr. Omalu's random, unsubstantiated throwing out of random dollar amounts is not based on past medical expenses and does not constitute sufficient evidence in support of future economic loss.  *Cf. Georges v. Novartis Pharms. Corp.*, 988 F. Supp. 2d 1152, 1161 (C.D. Cal. 2013) (plaintiff presented evidence of past medical expenses setting a baseline for reasonable medical expenses necessary to treat his condition).

### D.    Morales' testimony

Defendants never claimed that Morales offered "gunshot source localization" and "voice analysis" (Plaintiff's opp. 17:19-22).  Rather, the comparison of Morales's purported expertise in audio analysis with the FBI acoustic forensics specialists who perform gunshot source localization and voice analysis demonstrated the degree of specificity required in order to be considered an expert in a field.  Here, Morales' stated expertise did not qualify him to be an expert in the necessary fields to adequately reconstruct the incident here.  It is telling that Morales even attempted to qualify as a ballistics expert (which the Court correctly excluded).

Plaintiff admits that it "is a very basic universally recognized fact requiring no specialized biomechanics training" (Plaintiff's opp. 18:4-7) that 3.5 miles per hour is the average walking speed of a healthy adult.  This undermines Plaintiff's position that an expert was required in this case.  Plaintiff's characterization that "what Morales did with the audio was straightforward" also undermines Plaintiff's

17

position that an expert was required to analyze Deputy Alfred's belt recording. (Plaintiff's opp. 17:16-18). Specifically, Plaintiff explains that Morales "identified discrete sounds on Alfred's belt recording, such as a door closing, an engine revving, tires spinning, and six gunshots, and noted the timestamps at which each occurred." (Plaintiff's opp. 17:16-19). No expertise was required for this type of audio analysis.

Plaintiff mischaracterizes Defendants' argument, arguing "[t]hat the incident involved a firearm does not transform reconstruction opinions into ballistics opinions." (Plaintiff's opp. p. 18:2-3). That is not Defendants' argument. As set forth in Defendants' moving papers, without ballistics expertise, there is no basis for Morales' conclusions as to how many feet Plaintiff's Trailblazer had travelled in the driveway in relation to Deputy Alfred before the first shot was fired and at the time each subsequent shot was fired. (Defendants' motion, p. 23:20-23). Sergeant Hernandez's opinions regarding the total distance the Trailblazer travelled before Plaintiff was removed from the vehicle, and the maximum speed the Trailblazer reached, does nothing to rectify Morales' lack of qualifications to reconstruct the incident, especially as to how many feet the Trailblazer travelled before Deputy Alfred fired the first shot and when each subsequent shot was fired.

## IV. THE JURY'S DAMAGES AWARD WAS EXCESSIVE

The jury's damage award was so excessive that it is punitive. *Bell v. Williams*, 108 F.4th 809, 831 (9th Cir. 2024) (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 435 (1996).) The damages award is grossly excessive, unsupported, and based on speculation and guesswork. At no point in the proceedings did the Plaintiff adduce evidence to support the jury's award. Plaintiff's lack of citation to the record only further evidences the lack of evidence to support the jury's excessive damages award.

At best, Plaintiff conflates evidence of injuries with evidence of damages to justify the jury's award. (Plaintiff's opp. p. 20: 5-19). Plaintiff may have testified

18

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59

to his injuries, but he failed to present evidence of medical expenses to set a baseline for future medical expenses. *Georges v. Novartis Pharms. Corp.*, 988 F. Supp. 2d 1152, 1161 (C.D. Cal. 2013) (plaintiff presented evidence of past medical expenses setting a baseline for reasonable medical expenses necessary to treat his condition). Dr. Omalu's pure speculative testimony of random dollar amounts does not suffice. *Id.*

The fact that the jury's damages award is less than the dollar amounts suggested by Plaintiff's counsel during closing argument is irrelevant. Indeed, this logic would justify the worst and most abusive kind of anchoring by plaintiff's counsel. Plaintiff could only point to concrete numbers provided during closing argument, which is not evidence. This further highlights the fact that the record is devoid of evidence to justify the award. That the jury did not award what counsel requested in closing argument does not cure the fact that no evidence supports the jury's excessive award.

Plaintiff's citation to survival damages awarded in similar cases should be disregarded, as survival damages are not comparable because this is not a survival action. Then, Plaintiff cites to cases "where the person shot or asphyxiated endured pain and suffering for only a short period of time before dying" (Plaintiff's opp. p. 20: 24-26). These cases are not analogous by any stretch of the imagination. Plaintiff is comparing cases in which the jury awarded damages for physical injuries to cases where there was a death. Also, Plaintiff cites to cases where the dollar amounts range from $6 million for a decedent who died five days after the incident, to $10 million where the decedent died on the same day of the shooting. There is thus no calculation based on days of pain that can be drawn from these cases that can be applied to the jury's award here. For example, based on the first example, Plaintiff should be awarded $1.2 million for each day he suffered pain, and by the second example, Plaintiff should be awarded $10 million for each day he suffered. Yet, Plaintiff's counsel then requested an arbitrary dollar amount of $1 million for

19

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

each year that he suffered since the incident and then $1 million for each year for his life expectancy without providing any evidence of Plaintiff's life expectancy beyond pure speculation during closing argument.  *See Grunenthal v. Long Island R. Co.,* 393 U.S. 156, 158 (1968); Tr. V: 850:24; 851:16 ("33 years"); see also Ninth Circuit Model Civ. Jury Instruction No. 1.10 ("What Is Not Evidence" . . . "Arguments and statements by lawyers are  not evidence"); *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("the arguments and statements of counsel are not evidence") (quotations omitted).

Defendants cited cases in which the injuries were closely analogous to Plaintiff's – where a plaintiff survived a police shooting.  That some cases were decided more than a decade ago only reflects the rarity of a plaintiff surviving in these circumstances – indeed, Plaintiff does not cite to cases with a plaintiff similarly situated as Barber and instead cites to wrongful death actions.

Plaintiff also inappropriately attempts to downplay the injuries suffered by the plaintiff in *Lam* as "only back wound causing paraplegia" (Plaintiff's opp. p. 22:8-9) to justify an award to Plaintiff greater than the award to the plaintiff in *Lam*. Significantly, the jury in *Lam* awarded the plaintiff ***$3 million in pain and suffering*** and $8.3 million in other compensatory (economic) damages. Dkts. 210-3, p. 16; 210-6, p. 13. Thus, accounting for inflation which places the value of $3,000,000 at $4,188,305.68 in March 2016[3], the verdict's award of $7,250,000 for past pain and suffering and emotional distress and $18,250,000 for future pain and suffering and emotional distress is a product of passion, prejudice, and intent to punish.

---

[3] Based on the United States Bureau of Labor Statistics provides a CPI Inflation Calculator, the value of $3,000,000 in December 2015 adjusted for inflation equals $4,188,305.68 in March 2026 (noting that "Calculations using October 2025 data cannot be calculated due to a lapse in appropriations") available at https://www.bls.gov/data/inflation_calculator.htm?utm=syndication (last visited April 21, 2026).

20

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

Defendants' references to the Westlaw Personal Injury Valuation Handbook ("Handbook") are also to verdicts where the plaintiff suffered comparable injuries as the Plaintiff – paraplegia and brain injury. Defendants' selected cases more accurately reflect the appropriate damages given that the awards are based on more analogous facts.

Finally, notably, this damages award is grossly excessive and disproportionate to actual damages suffered especially given that Plaintiff never elected to seek treble damages under the Bane Act. Cal. Civ. Code §§ 51.2, 52); CACI 3066, Bane Act—Essential Factual Elements (Civ. Code, § 52.1), Directions for use ("reference to section 52 in subdivision (b) of the Bane Act would seem to indicate that damages may be recovered under both subdivisions (a) and (b) of section 52). Tr. 796:11-824:5; 893:12-894:17. Therefore, treble damages are not available to the Plaintiff.

**V.      CONCLUSION**

For the reasons set forth herein, the Court should grant the Defendants' Motion; or deny the Motion on the condition that Plaintiff accept a remittitur and that judgment be entered in whatever lesser amount of damages the Court considers justified.

21

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

DATED:  April 22, 2026          Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:  _____/s/ Kayleigh Andersen_____
     Eugene P. Ramirez
     Kayleigh Andersen
     Angela Brunson
     Attorneys for Defendant, COUNTY OF
     SAN BERNARDINO and DEPUTY
     CHRISTOPHER ALFRED

22

**DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

*Certificate of Compliance with L.R. 11-6.2*

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,774 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 22, 2026

By:    /s/ Kayleigh Andersen
                Kayleigh Andersen

23

## DECLARATION OF KAYLEIGH ANDERSEN

I, Kayleigh Andersen, declare as follows:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendant, COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of Defendants County of San Bernardino and Deputy Christopher Alfred's Reply in Support of Motion for New Trial Pursuant to FRCP 59.

2.    Attached as **Exhibit A** are relevant excerpts of the trial transcript cited to in Defendants' moving papers and reply papers, and do not include any new information, and are provided for the convenience of the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of April, 2026, at Los Angeles, California.


 /s/ Kayleigh Andersen
Kayleigh Andersen

DEFENDANTS COUNTY OF SAN BERNARDINO AND DEPUTY CHRISTOPHER ALFRED'S REPLY IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 59