**RODNEY S. DIGGS, Esq. (SBN 274459)**
Email: RDiggs@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

**LAW OFFICES OF DALE K. GALIPO**
**Dale K. Galipo, Esq. (SBN 144074)**
dalekgalipo@yahoo.com
**Renee V. Masongsong, Esq. (SBN 281819)**
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff **STEFFON BARBER**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEFFON BARBER,<br><br>*Plaintiff,*<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, and DEPUTY CHRISTOPHER ALFRED,<br><br>*Defendants.* | Case No. 5:22-cv-00625-KK-DTB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Date: June 7, 2026<br>Time: 9:30 a.m. |

i

# TABLE OF CONTENTS

I.    INTRODUCTION................................................................................................1

II.   CRIMINAL DEFENSE FEES ARE COMPENSABLE UNDER § 1988 .........2

  A.  The Criminal Defense Work Was "Useful and of a Type Ordinarily Necessary" to Advance the § 1983 Action...............................................................2

  B.  Defendants' Reliance on *Borunda* and *Young* Is Misplaced..........................4

  C.  Bryant's and Duckett's Hours Reflect Indispensable Civil Rights Work.......4

III.  PLAINTIFF'S LODESTAR IS REASONABLE...............................................5

  A.  Hourly Rates Are Supported by Substantial Evidence...................................5

    1.   Dale K. Galipo's Requested Hourly Rate of $1,500 is Reasonable ............5

    2.   Rodney S. Diggs Requested Hourly Rate of $1,250 is Reasonable. ...........7

    3.   Renee V. Masongsong's Requested Hourly Rate of $900 is Reasonable. ..7

    4.   Brandon R. Tanter's Hourly Rate of $650 is Reasonable...........................8

    5.   Support Staff Rates.....................................................................................8

  B.  Counsel's Hours Are Reasonable and Well-Documented .............................9

  C.  *Monell* Claim ................................................................................................10

  D.  Mr. Diggs' Block-Billed Entries. ...................................................................11

IV.   2.0 LODESTAR MULTIPLIER IS APPROPRIATE....................................11

  I.    The Bane Act Authorizes a Multiplier for All Related Work .......................11

  II.   The 2.0 Multiplier Is Well-Supported by the Ketchum Factors....................12

V.    PLAINTIFF'S COUNSEL ARE ENTITLED TO FEES AND COSTS FOR LITIGATING THE POST-TRIAL MOTIONS........................................................14

VI.   CONCLUSION...............................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Beltran Rosas,* 260 F.Supp.2d 990, 994 (C.D. Cal. 2003)................................................3

*Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968 (2013)....................................14

*Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988) .......................................................4

*Burlington v. Dague*, 505 U.S. 557 (1992)...................................................................13

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) .....................12

*Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986)................................14

*Corp. v. Prestige Brands Holdings, Inc*., 168 F.4th 608, 624-26 (9th Cir. 2026).........7

*Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988) ..............................................14

*Heck v. Humphrey*, 512 U.S. 477 (1994)...................................................................2, 14

*Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986)..........................................14

*Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998).....................................14

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001)............................................................12, 13

*Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978)..........................................................14

*Missouri v. Jenkins,* 491 U.S. 274 (1989)......................................................................8

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)..........................10

*Pierce v. County of Orange*, 905 F.Supp.2d 1017 (2012) ...............................9, 11, 12

*Rahman v. FCA US LLC,* 594 F.Supp.3d 1199 (2022).....................................................9

*Reese v. County of Sacramento*, 888 F.3d 1030 (2018)..............................................12

*Rodriguez v. Barrita, Inc*. 53 F.Supp.3d 1268 (2014) ................................................12

*Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014)......8

*Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014).........13

*Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982) ...........................................................14

*U.S. v. $60,201.00 U.S. Currency*, 291 F.Supp.2d 1126 (2003) ...................................9

*Webb v. Board of Education*, 471 U.S. 234 (1985) .........................................................2

*Webb v. Sloan,* 330 F.3d 1158 (2003)..........................................................................10

*Young v. Wolfe*, 2017 WL 3184167 (C.D. Cal. July 26, 2017) .......................................4

**Statutes**

California Civil Code § 52.1 ...............................................................................12

California Civil Code section 52(a) .....................................................................12

Penal Code § 245(a)(1) .........................................................................................3

Penal Code § 187(a)............................................................................................2

Penal Code § 245(c)............................................................................................2

## I.   INTRODUCTION

Defendants oppose Plaintiff's motion for attorneys' fees on several grounds: (1) that fees for criminal defense work are categorically excluded under § 1988; (2) that counsel's rates and hours should be reduced based on Defendants' expert's application of the Real Rate Report; (3) that no fees should be awarded for legal assistants' time; and (4) that a 2.0 multiplier is unavailable and overbroad. Each argument fails for the reasons set forth in detail below.

On February 9, 2026, the jury returned a verdict of $27,350,000 in favor of Plaintiff Steffon Barber, on his claims for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment, negligence, battery, violation of the Bane Act, and intentional infliction of emotional distress. The jury found in Defendants' favor only on Plaintiff's *Monell* claim. This result—one of the largest police excessive force verdicts in the Central District—was achieved only because counsel undertook the extraordinary and indispensable task of defending Mr. Barber in parallel criminal proceedings that directly threatened the viability of his civil rights claims. Defendants now attempt to strip away those fees after the fact, having vigorously litigated both proceedings over five years without quarter. The Court should decline to reward that strategy.

Additionally, each counsel's requested hourly rate and lodestar is reasonable. For example, Mr. Galipo tried the entire case with the exception of one witness, and he only billed 405.9 hours total in this case, showing that he is extremely efficient with his time and underestimated his hours in several instances. Plaintiff's counsel's requested hourly rates are supported by their own declarations, exhibits detailing their prior fee awards filed concurrently with their attorney fee motion, and by the Declaration of Carol Sobel (Dkt. 212).

///

///

///

///

1

## II.   CRIMINAL DEFENSE FEES ARE COMPENSABLE UNDER § 1988

### A. The Criminal Defense Work Was "Useful and of a Type Ordinarily Necessary" to Advance the § 1983 Action

Defendants contend that fees for Mr. Barber's criminal defense are categorically barred under § 1988 because a criminal defense is not an "action or proceeding to enforce" civil rights. Defendants rely primarily on *Webb v. Board of Education*, 471 U.S. 234 (1985), and argue that Plaintiff's criminal defense was not a "necessary predicate" to his civil rights action. This argument misunderstands both the law and the facts. *Webb* recognized a narrow exception but did not foreclose it: fees incurred in a related non-judicial proceeding may be compensable where the work was "both useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb*, 471 U.S. at 243. That standard is met here.

When counsel for the Ivie McNeill Wyatt Purcell & Diggs firm agreed to represent Mr. Barber in this matter, Mr. Barber was simultaneously facing serious criminal charges arising directly from the April 27, 2021 shooting—including a charge for attempted murder on a peace officer under Penal Code § 187(a) and assault with a deadly weapon on a peace officer under Penal Code § 245(c). A conviction under PC § 245(c) would have required a finding that Deputy Alfred was lawfully performing his duties at the time of the shooting—an element potentially incompatible with Plaintiff's civil excessive force claim. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a civil § 1983 claim must be dismissed if success on that claim would necessarily imply the invalidity of the plaintiff's criminal conviction.

The civil case was stayed from July 2022 through December 2024, pending resolution of the criminal matter, because the factual and legal issues in both proceedings arose from the same set of facts. The criminal proceedings did not run parallel to the civil case; they governed whether the civil case could proceed at all. Mr. Barber was ultimately acquitted on both the attempted murder charge and the assault on a peace officer charge (PC § 245(c)) and was convicted only of assault with a deadly weapon

under PC § 245(a)(1)—a conviction that contains no element relating to Deputy Alfred's conduct and therefore does not implicate *Heck*.

Defendants' own account confirms this dynamic. Defendants acknowledge that the civil proceedings were stayed based on the "interests of justice" because "requiring Plaintiff to participate in civil discovery during the pendency of his criminal case could unfairly prejudice him while his criminal case was pending." Yet, Defendants now claim the criminal defense was wholly unrelated to the civil case. That position is irreconcilable with their own stipulation to stay the civil proceedings and the arguments made in their post-trial motions, which continue to assert that Plaintiff's § 1983 claim are *Heck*-barred and asserts for the first time that Plaintiff's state law claims are also *Heck*-barred.

The time spent defending Mr. Barber in the criminal case was, in practical and legal effect, time spent safeguarding and developing the civil case. Excluding those hours would undercompensate counsel for work that was essential to the prosecution and ultimate success of Plaintiff's § 1983 claim, contrary to the purpose of § 1988 to ensure effective enforcement of civil rights. In *Beltran Rosas*, the district court held that attorney fees under Section 1988 are recoverable for criminal defense work when such work was "essential to advance Plaintiffs civil rights action." 260 F.Supp.2d 990, 994 (C.D. Cal. 2003). There, the district court found that where a malicious prosecution claim under Section 1983 was not cognizable until criminal charges were resolved favorably, "it was necessary for *Barham* to perform legal services to cause the criminal action against Epifanio to be resolved successfully in his favor before Plaintiffs could prevail on their Section 1983 claim." *Id*. Here, the criminal and civil matters both arose from the April 27, 2021, shooting, and the acquittal on the PC 245(c) made it clear that Plaintiff's claims were not *Heck*-barred.[1]

///

///

---

[1] Plaintiff reiterates his arguments made in his oppositions to Defendants' post-trial motions, wherein Plaintiff explains that his claims are not *Heck*-barred. (Dkt. Nos. 218 and 219).

**B. Defendants' Reliance on *Borunda* and *Young* Is Misplaced**

Defendants cite *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), and *Young v. Wolfe*, 2017 WL 3184167 (C.D. Cal. July 26, 2017). Neither case supports exclusion here. In *Borunda*, the Ninth Circuit noted in a footnote that attorney's fees "incurred in defending against a criminal charge" may not be compensable as fee-shifting under § 1988—but the court did so in the context of fees as compensatory damages, not fee-shifting, and the plaintiff there was acquitted. The case did not establish a categorical bar. Indeed, the *Borunda* court permitted recovery of criminal defense fees as compensatory damages precisely because the criminal charges were a direct consequence of the defendants' illegal conduct. The same logic applies here: Plaintiff was subjected to criminal prosecution as a direct result of the excessive force incident that forms the basis of his § 1983 claim.

*Young* is distinguishable. That case involved a plaintiff who had been represented in a criminal case long before any civil rights action was contemplated. Here, by contrast, the criminal and civil representations were concurrent, arose from the same event, and were strategically intertwined from inception. Counsel's criminal defense work was not ancillary; rather, it was a prerequisite to keeping the civil case alive.

**C. Bryant's and Duckett's Hours Reflect Indispensable Civil Rights Work**

Defendants argue that James Bryant worked "solely on the criminal case" and that Ryan Duckett's time is similarly non-compensable, and further that no timekeeping records were submitted for Mr. Bryant.

Plaintiff concedes that the time records for Mr. Bryant were inadvertently omitted from the initial filing and will be supplemented by separate declaration. As to the substance, Mr. Bryant's work—defending Mr. Barber against the attempted murder and peace officer assault charges—was directly necessary to preserve the civil case. Mr. Duckett similarly assisted in the criminal defense and transition to the civil phase. The criminal transcripts and factual record developed during the criminal trial were influential in achieving the $27,350,000 verdict.

### III.   PLAINTIFF'S LODESTAR IS REASONABLE

#### A. <u>Hourly Rates Are Supported by Substantial Evidence</u>

Defendants oppose the requested hourly rates primarily through their expert, Gerald Knapton, who applies the 2025 Real Rate Report median and third-quartile or first-quartile figures to all timekeepers. Mr. Knapton proposes rates of $1,334 (Q3) for Mr. Galipo, $875 (median) for Mr. Diggs, $700 (median) for Ms. Masongsong and Mr. Duckett, $461 (Q1) for Mr. Tanter, and $226 (median) for paralegals. Plaintiffs disagree with this analysis for the reasons stated in their attorney fee motion and declarations thereto. Further, Defendants' rate analysis suffers from a fundamental flaw: the Real Rate Report measures rates paid in commercial litigation by corporate clients to large defense firms. It does not reflect the prevailing market rate for highly specialized civil rights contingency representation, where the risk of nonpayment is borne entirely by counsel and where top practitioners command premium rates precisely because the market for such services is thin and the difficulty of the cases is extreme.

#### 1.  Dale K. Galipo's Requested Hourly Rate of $1,500 is Reasonable

Mr. Galipo's requested hourly rate of $1,500 is supported by prior fee awards in this district progressing from $1,100 (2020), to $1,200 (2023), to $1,300 (2024), to $1,400 (2024). Judge Drozd of the Eastern District of California recently noted on the record: "There is no doubt in my mind - and I don't even think defense counsel would disagree - Mr. Galipo is as good as it gets, at least in this court ... he's a fabulous trial lawyer, he's a pleasure to have in court ... he's a pro's pro." After that hearing, Judge Drozd awarded Mr. Galipo $1,300 per hour for work performed in 2024 and prior to 2024, over two years ago. (Dkt. 216 at ¶ 26).

As set forth in Mr. Galipo's Declaration (Dkt. 216), Judge Wright of this district awarded Mr. Galipo $1,300 per hour in June 2024 in *Zelaya v. City of Los Angeles* for work performed in 2022 and 2023, following a $13.5 million jury verdict. Judge Bernal of this district awarded Mr. Galipo $1,400 per hour in February 2024 for appellate work in *French v. City of Los Angeles*, Case No. Case No. EDCV 20-0416 JGB. Inflation and

Mr. Galipo's continued record of success—including a $30.5 million verdict in *Lewis v. Kern County* in March 2025, the $27,350,000 verdict in this case, and his recent $17 million verdict in the police shooting case *Garcia v. City of Tustin*, Case No. 22-cv-00131-SPG on April 21, 2026—justify the incremental increase to $1,500. In fact, many of Mr. Galipo's fellow trial attorneys believe that Mr. Galipo's hourly rate should be $2,000 per hour. Even Defendants concede that Mr. Galipo's hourly rate should be no lower than $1,336.

Mr. Galipo's request for an hourly rate of $1,500 is also supported by the Declaration of Carol Sobel. As Ms. Sobel stated in her declaration:

> I am very familiar with Mr. Galipo and know him for many years. In my experience he is, perhaps, the most skilled trial lawyer in complex civil rights cases involving deaths and serious injury caused by law enforcement. Based on discussions I have had with other civil rights lawyers in California, I believe my view of Mr. Galipo's reputation and his skill are broadly shared.

(Dkt. 212 at ¶ 32). Ms. Sobel's opinions on Mr. Galipo's hourly rate are well supported by her interpretation of the Real Rate Report and the exhibits filed concurrently with her declaration.

Given Mr. Galipo's precedent-setting jury verdicts as described in his Declaration (Dkt. 216 at ¶ 18), the number of verdicts in civil rights cases, his published appellate opinions, his numerous prior attorney fee awards, and the recognition he has received as a trial attorney for his work in police excessive force cases, including his membership in the Inner Circle of Advocates, the "2020 Consumer Attorney of the Year" from CAOC and "2020 Trial Lawyer of the Year" award from CAALA, his request for $1,500 per hour is reasonable. (Dkt. 216 at ¶ 28-29). In addition to his hourly rate being reasonable, the number of hours he billed is reasonable. Mr. Galipo tried the entire case with the exception of one witness, and he only billed 405.9 hours, showing that he was extremely efficient with his time and also underbilled.

Additionally, the Ninth Circuit has recently held that small firms can be awarded "big law" rates in a motion for attorney fees, and that a district court abuses its discretion

6

in setting rates based on the attorney's prior fee award with a slight adjustment for inflation rather than calculating the fee based on the prevailing market rate. *LA International Corp. v. Prestige Brands Holdings, Inc*., 168 F.4th 608, 624-26 (9th Cir. 2026). Defendants' approach of anchoring all rates to prior awards contradicts this binding authority.

### 2. Rodney S. Diggs Requested Hourly Rate of $1,250 is Reasonable.

Mr. Diggs is an experienced civil rights partner who originated this representation, tried the case alongside Mr. Galipo, and examined Plaintiff at trial. He managed the case from inception in 2021 through verdict in 2026 - nearly five years of contingency work. Defendants propose $875/hr (median litigation partner in L.A.). Given Mr. Diggs' 17 years of practice, his leadership role, and his trial participation, the median rate is inadequate. Courts in this district have regularly awarded rates above the Real Rate Report median to civil rights attorneys of comparable experience who take on difficult contingency cases. An award at the upper range of the median-to-Q3 spectrum is appropriate.

### 3. Renee V. Masongsong's Requested Hourly Rate of $900 is Reasonable.

Ms. Masongsong has previously been awarded $550 (2020), $600 (2022), $700 (2024), and $800 (2024) per hour by courts in this district, with each award reflecting her increased experience, skill, and the inflation-adjusted market rate. A 12.5% increase from her 2024 award to reflect two additional years of experience and market-rate inflation is well within the bounds of prior awards. Defendants do not dispute her qualifications, only the rate. Ms. Masongsong was an integral part of Plaintiff's team in this case. Ms. Masongsong handled Plaintiff's opposition to Defendants' motion for summary judgment and Plaintiff's ex parte application to certify Defendants' appeal as frivolous, which allowed the case to proceed to trial. Ms. Masongsong also assisted with expert retention and depositions, handled the pretrial documents and was Mr. Galipo's primary support during the trial. Ms. Masongsong also handled Plaintiff's oppositions to Defendants' post-trial motions, and her participation in trial contributed to her ability to competently

handle those oppositions. (Dkt. 211-13 at ¶ 13).

Ms. Masongsong's requested hourly rate of $900 per hour is supported by the Declaration of Carol Sobel (Dkt. 212 at ¶¶ 33, 39, 43, 46-47) and the Declaration of Mr. Galipo (Dkt. No. 216 at ¶ 30). Ms. Masongsong has been practicing law in the civil rights arena for over thirteen (13) years, and she has been influential in several of Mr. Galipo's large verdicts in civil rights cases. (Dkt. 211-13 at ¶ 11).

Defendants argue that Ms. Masongsong's 18.5 hours of travel time (3.5–4.0 hours per trial day) should be excluded. The law is clear that "reasonable travel time by the attorney is compensable, at full rates." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014). Trial was held in the Eastern Division of the Central District, requiring Mr. Masongsong, who is based in Woodland Hills, to travel to and from court each trial day.

### 4. Brandon R. Tanter's Hourly Rate of $650 is Reasonable.

Defendants propose a First Quartile rate of $461 for Mr. Tanter. Mr. Tanter is a licensed attorney who performed substantive legal work on this matter. Application of the First Quartile rate—reflecting the lowest 25% of the market—for an attorney doing complex civil rights litigation under the supervision of a nationally recognized firm is unreasonably low. A rate in the median range is appropriate.

### 5. Support Staff Rates.

With respect to paralegals like Ms. Williams, the Supreme Court in *Missouri v. Jenkins* directly addressed whether paralegal and law clerk work should be compensated at prevailing market rates or merely at cost to the attorney. 491 U.S. 274 (1989). Defendant *Missouri* argued that while compensation for the cost of these personnel should be included in fee awards, an hourly rate corresponding to their salaries, benefits, and overhead would be appropriate rather than market rates. *Id*. The Court rejected this position, holding that separate compensation for paralegals and law clerks at prevailing market rates was "fully in accord" with the Civil Rights Attorney's Fees Awards Act. *Id*. Here, Ms. Williams, is an eight (8) year paralegal who performed substantive tasks,

including drafting discovery, summarizing records, and assisting with motion and pleading preparation, thereby reducing overall litigation costs. All clerical or administrative tasks have been excluded. Accordingly, paralegal time is properly included in the lodestar. Ms. Williams' participation in trial was helpful to the attorneys.

Further, the Courts in the Central District routinely approve paralegal rates in the $300 to $400 per hour range for experienced paralegals. In *Rahman v. FCA US LLC*, a 2022 case from the Central District of California, the court found that the requested hourly rates were reasonable where "numerous recent opinions had approved the same or substantially similar rates" for the legal team members. 594 F.Supp.3d 1199 (2022). Given that the Central District of California, particularly the Los Angeles area, typically commands higher legal rates than other California districts due to market conditions, paralegal rates in the $300 to $400 range for experienced paralegals would be consistent with the prevailing market rates in that jurisdiction, especially in complex litigation matters.

Defendants contend that time for legal assistants "is not usually billed in Los Angeles" and that Ms. Gilbert, Ms. Metoyer and Ms. Feather should receive no compensation. This argument is flatly inconsistent with the weight of authority in this Court. Courts regularly compensate legal assistant time in civil rights fee awards, provided the work is substantive and not purely clerical. The timekeeping records for Ms. Gilbert, Ms. Metoyer, and Ms. Feather reflect tasks like organizing discovery files, assembling trial exhibits with proper foundation and authentication considerations, coordinating witness schedules and logistics, and managing the filing of complex pretrial documents all fall on the compensable side of this line because they involve substantive legal work traditionally performed by attorneys. *Pierce v. County of Orange*, 905 F.Supp.2d 1017 (2012); *U.S. v. $60,201.00 U.S. Currency*, 291 F.Supp.2d 1126 (2003).

**B. Counsel's Hours Are Reasonable and Well-Documented**

Defendants' expert recommends a 10% reduction to Mr. Galipo's 405.9 hours for "vague" trial preparation entries. This Court and others in this district have consistently

found Mr. Galipo's "Trial Preparation*" entries—accompanied by an asterisk explaining the detailed tasks included—to be acceptable. Courts have found reasonable Mr. Galipo's trial preparation hours totaling 206-390 hours over comparable trial periods. The asterisk footnote identifying the specific tasks covered by "Trial Preparation" provides sufficient detail for the Court to assess reasonableness. Any further reduction would be punitive and inconsistent with the Ninth Circuit's admonition that "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Defendants argue that only Mr. Galipo and Mr. Diggs should be compensated for trial work because "Mr. Galipo handled opening and closing statements, and the examination of all of Plaintiff's witnesses except for the examination of Plaintiff, which was handled by Mr. Diggs." Contrary to Defendants' arguments, it is not "overkill" to have experienced counsel like Ms. Masongsong present at trial for strategy, expert witness preparation, exhibit management, preparation of any necessary trial briefs or amended trial documents, and real-time consultation. Presence of attorneys other than Mr. Galipo and Mr. Diggs at trial, including Ms. Masongsong, was also crucial given that Ms. Masongsong anticipated handling and did handle the oppositions to the post-trial motions, and drew from the context of the trial to do so. Courts have recognized that civil rights lawyers working without payment from their clients have little incentive to "inflate their fees," as the payoff is too uncertain, and that the court should defer to the winning lawyer's judgment. Defendants' own trial team in this case included multiple partners at trial, and Plaintiff should not be held to a stricter standard.

### C. *Monell* Claim

Defendants argue that fees attributable to the *Monell* claim should be excluded because the jury found in Defendants' favor on that claim. In *Webb v. Sloan*, the Ninth Circuit held that a plaintiff's unsuccessful claims for false arrest and failure to train were related to the successful claim for prosecution without probable cause, and the plaintiff

10

was entitled to fees for time spent on those unsuccessful claims. 330 F.3d 1158 (2003). The *Monell* claim arose from the same core facts as the excessive force claims—both turned on whether Deputy Alfred's conduct was constitutional and whether the County was responsible. Discovery, expert work, and trial preparation were shared across all claims. Other than the brief section of the MSJ opposition, the record does not show that Plaintiffs' counsel have devoted hours solely to the *Monell* claim and to no other purpose.

### D.   Mr. Diggs' Block-Billed Entries.

Defendants identify approximately 19 hours of entries by Mr. Diggs that allegedly combine criminal and civil work. Plaintiff acknowledges that some entries include both criminal and civil tasks. However, in *Pierce v. County of Orange*, the district court held that "a reduction in attorney fee award for block-billed hours may not be appropriate if individual tasks are specified and the entries are detailed enough for the court to assess the reasonableness of the hours billed."  905 F.Supp.2d 1017 (2012). The court further noted that even if billing entries were vague, a substantial reduction was not justified "absent specific explanation for reduction." *Id*. Mr. Diggs' entries are descriptive and clearly reflect work that advanced the civil litigation, even where they also reference criminal case developments. The Court should decline to penalize counsel for maintaining diligent time records that accurately reflect the integrated nature of the criminal and civil work.

## IV.   2.0 LODESTAR MULTIPLIER IS APPROPRIATE

### A.   <u>The Bane Act Authorizes a Multiplier for All Related Work</u>

Defendants argue that the 2.0 multiplier is impermissible and overbroad because Plaintiff seeks to apply it to the entire fee award—including hours devoted to the § 1983 claim and criminal defense—without apportionment. At minimum, this Court should exercise its discretion to apply a 1.5 multiplier.

Defendants fundamentally misunderstand the mechanics of the Bane Act multiplier in this Circuit. The Ninth Circuit has held that where a plaintiff prevails on both federal and state claims—including the Bane Act—the state law multiplier applies

to the full lodestar, not merely to hours attributable to the Bane Act. (*Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014), (Pierce v. County of Orange, 905 F.Supp.2d 1017 (2012)).  In *Rodriguez v. Barrita, Inc*., the district court acknowledged that "when a plaintiff in federal court prevails under both federal and state law, the district court 'may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk.'" 53 F.Supp.3d 1268 (2014). This language indicates that the enhancement is not artificially limited to time spent exclusively on state law claims but rather encompasses the entire fee award. Plaintiff prevailed on his Bane Act claim, which supports the granting of a multiplier under state law. California Civil Code section 52(a) provides for damages up to three times actual damages on violations of certain civil code sections. The Bane Act refers to section 52.

Defendants' demand for apportionment between Bane Act and § 1983 hours finds no support in the law. Claims for excessive force under § 1983 and under the Bane Act are tried on "a common core of facts" and "related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Indeed, courts have recognized that the elements of an excessive force claim under California Civil Code § 52.1 are the same as under § 1983. *Reese v. County of Sacramento*, 888 F.3d 1030 (2018). Requiring apportionment between these claims would produce arbitrary results inconsistent with *Hensley* and the Ninth Circuit's approach in *Chaudhry*.

### B.      The 2.0 Multiplier Is Well-Supported by the Ketchum Factors

Under *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), the lodestar may be enhanced based on "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award."

Each factor weighs in Plaintiff's favor. This case was complicated from inception by allegations that Plaintiff reversed his vehicle toward Deputy Alfred, by damaging

12

evidence arising from Plaintiff's criminal history, and by the concurrent criminal prosecution that threatened to bar the civil case entirely under *Heck*. Plaintiff's counsel had to conduct depositions, review numerous discovery materials, retain and pay multiple experts, and spend almost two weeks away from the office at trial. Defendants' position was that the case had little value, as reflected in their arguments to the jury and their settlement posture. Despite the negative evidence, Plaintiff's counsel achieved a successful result - a testament that truly difficult cases such as this require truly dedicated and highly skilled representation.

Plaintiff's counsel also invested hundreds of hours of uncompensated time and incurred costs, including expert retention fees, without any interim payments from Plaintiff or guarantee of success at trial. Many more hours and expenses are expected to be put at risk based on an anticipated appeal.

Defendants suggest that the contingency risk is already subsumed in the lodestar under federal law, citing *Burlington v. Dague*, 505 U.S. 557 (1992). But the Ninth Circuit has expressly held that California law - which expressly authorizes a contingency multiplier—applies when a plaintiff succeeds on both federal and state claims. The rationale is straightforward: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum*, 24 Cal.4th at 1132-33.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Marshall applied a 2.0 multiplier to the attorneys' fees in an excessive force case. The Ninth Circuit affirmed, approving a decision based on "the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing [the plaintiff]; and the opportunity costs the years-long litigation in this case required." The parallels to this case are direct.

13

In *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968 (2013), following a jury verdict for plaintiff on the Bane Act claim, the Court of Appeal affirmed a 1.2 multiplier, noting that counsel put "both their time and their purse at risk" and that the prosecution of the case was "tenacious, skillful and effective." Here, the result was vastly more impressive—a $27,350,000 verdict after five years of litigation, over vigorous opposition, and despite difficult evidence—warranting a more significant enhancement.

Defendants also argue that Plaintiff "misrepresented" Defendants' settlement posture by describing them as believing the case had "little value." This characterization is drawn directly from the evidence at trial and the parties' litigation history, not from any improper exaggeration. It is well-established that a defendant cannot "litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982). Plaintiff's counsel's understanding of Defendants' settlement posture is also supported by the arguments that Defendants continue to make in their post-trial motions, including their continued assertion that Plaintiff's claims are precluded by *Heck v. Humphrey*.

## V.    PLAINTIFF'S COUNSEL ARE ENTITLED TO FEES AND COSTS FOR LITIGATING THE POST-TRIAL MOTIONS

Plaintiff reiterates that his counsels are entitled to attorneys' fees for their time spent working on the post-trial motions. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiff will file a supplemental attorney fee motion detailing his counsels' additional work on this case.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorneys' fees in the current total amount of $7,358,060, including a 2.0 lodestar enhancement, as set forth in the opening motion. Plaintiff also requests that the Court award attorneys' fees for time spent working on the post-trial motions, and Plaintiff will file a supplemental attorney fee motion for that time.

Dated: April 22, 2026          **IVIE McNEILL WYATT PURCELL & DIGGS**

                    By:    /s/ Rodney S. Diggs_____
                           Rodney S. Diggs, Esq.
                           Brandon Tanter, Esq.
                           Attorneys for Plaintiff,
                           STEFFON BARBER

Dated: April 22, 2026          **LAW OFFICES OF DALE K. GALIPO**

                    By:    /s/ Renee V. Masongsong
                           Dale K. Galipo, Esq.
                           Renee V. Masongsong, Esq.
                           Attorneys for Plaintiff,
                           STEFFON BARBER