UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-00625-KK-DTBx** | | Date: | June 1, 2026 |
|---|---|---|---|---|
| Title: | ***Steffon Barber v. County of San Bernardino et al.*** | | | |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order DENYING Defendants' Motion for Judgment as a Matter of Law [Dkt. 208], CONDITIONALLY DENYING Defendants' Motion for a New Trial [Dkt. 210], and DENYING as MOOT Plaintiff's Motion for Attorney's Fees [Dkt. 211]**

**I.
INTRODUCTION**

This case arises from San Bernardino County Sheriff's Department Deputy Christopher Alfred's ("Deputy Alfred") shooting of plaintiff Steffon Barber ("Plaintiff") on April 27, 2021. On June 17, 2025, Plaintiff filed the operative Second Amended Complaint ("SAC") against defendants Deputy Alfred and the County of San Bernardino ("County") (collectively, "Defendants") raising several state tort claims and two claims for excessive force and municipal liability under 42 U.S.C. § 1983 ("Section 1983"). ECF Docket No. ("Dkt.") 72, SAC.

On January 30, 2026, this matter proceeded to trial for five days. On February 3, 2026, following Plaintiff's case-in-chief, Defendants filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(a), which the Court denied. Dkts. 172, 179. On February 9, 2026, the jury returned a verdict in favor of Plaintiff on all counts but the municipal liability claim. Dkt. 182.

On March 25, 2026, Defendants filed a Renewed Motion for Judgment as a Matter of Law under Rule 50(b) ("Rule 50(b) Motion") and a Motion for New Trial under Rule 59(a) ("Rule 59(a) Motion"). Dkts. 208, 210. On the same day, Plaintiff filed a Motion for Attorney's Fees ("Fees Motion"). Dkt. 211.

---

Page **1** of **21**                    **CIVIL MINUTES—GENERAL**              Initials of Deputy Clerk <u>DC</u>

The Court finds these matters appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendants' Rule 50(b) Motion is **DENIED**, Defendants' Rule 59(a) Motion is **CONDITIONALLY DENIED**, and Plaintiff's Fees Motion is **DENIED as MOOT**.

## II.
## BACKGROUND

Plaintiff commenced this action on April 12, 2022, and filed the operative SAC against Defendants on June 17, 2025.  Dkt. 1; SAC.  Plaintiff raised the following causes of action:

> **First Cause of Action:** Excessive Force, pursuant to Section 1983, against Deputy Alfred;
>
> **Second Cause of Action:** Unconstitutional Policy, Practice, or Custom, pursuant to Section 1983, against defendant County;
>
> **Third Cause of Action:** Battery, pursuant to section 43 of the California Civil Code and sections 815.2(a) and 820(a) of the California Government Code, against Defendants;
>
> **Fourth Cause of Action:** Negligence, pursuant to sections 815.2(a) and 820(a) of the California Government Code, against Defendants;
>
> **Fifth Cause of Action:** Violation of the Bane Act, pursuant to section 52.1 of the California Civil Code, against Defendants; and
>
> **Sixth Cause of Action:** Intentional Infliction of Emotional Distress, against Defendants.

SAC ¶¶ 24-116.

On December 22, 2025, the Court denied Defendants' motion for summary judgment, finding, among other things, Defendants forfeited the defense provided under Heck v. Humphrey, 512 U.S. 477 (1994), Heck did not bar Plaintiff's Section 1983 claim in any event, genuine issues of material fact existed from which a reasonable factfinder could find for Plaintiff on all causes of action, and Deputy Alfred was not entitled to qualified immunity.  Dkt. 132.

On January 7, 2026, the Court granted in part and denied in part the parties' motions in limine.  Dkt. 158.  The Court bifurcated trial into liability and punitive damages phases and precluded any reference to (i) Deputy Alfred and other San Bernardino County Sheriff's Department deputies' prior or subsequent use of excessive force in proving Deputy Alfred's individual liability; (ii) Mr. Morales's expert testimony on ballistics evidence; (iii) evidence of Plaintiff's criminal history, including prior contacts with law enforcement, allegations that Plaintiff had a moniker, whether Plaintiff had struck or yelled at his wife in the past, Plaintiff's probation status, and Plaintiff's criminal conviction and incarceration resulting from the April 27, 2021 incident; (iv) the County and District Attorney's post-incident investigation of Deputy Alfred; and (v) evidence of Plaintiff's drug use.  Id. at 3, 6, 9-11.

On January 30, 2026, trial commenced. Dkt. 171. On that day, Plaintiff voluntarily withdrew his prayer for punitive damages. Id.

On February 3, 2026, following the close of Plaintiff's case, Defendants moved for judgment as a matter of law, which the Court denied from the bench the next day. Dkts. 172, 179. The Court reasoned that, based on the evidence presented, "a reasonable jury would have a legally sufficient basis to find for [Plaintiff] on his [Section] 1983 claims" and, for the same reasons, "could find in favor of [Plaintiff] on his related state claims." Trial Tr. 744:22-745:1. The Court further concluded, based on binding precedent, Deputy Alfred was "not entitled to qualified immunity." Id. 743:13-14.

On February 9, 2026, the jury returned a verdict for Plaintiff. Dkt. 200. In the Special Verdict Form, the jury answered, "Yes," to the following questions: whether Deputy Alfred used excessive force against Plaintiff; whether the use of excessive force was a cause of injury, damage, loss, or harm to Plaintiff; whether Deputy Alfred intentionally interfered with, or attempted to interfere with, Plaintiff's civil rights by threats, intimidation, or coercion; whether Deputy Alfred committed a battery in using deadly force on Plaintiff; whether Deputy Alfred was negligent in using deadly force on Plaintiff; whether Plaintiff was negligent in interacting with Deputy Alfred; and whether Deputy Alfred caused Plaintiff to suffer severe emotional distress. Id. The jury assigned sixty-four percent responsibility to Deputy Alfred's negligence and the remaining thirty-six percent to Plaintiff's negligence. Id. at 8. The jury answered, "No," to whether defendant County failed to provide adequate training to its police officers and skipped the remaining questions concerning municipal liability. Id. at 3-4. The jury therefore found for Plaintiff on the First (Excessive Force), Third (Battery), Fourth (Negligence), Fifth (Bane Act), and Sixth (Intentional Infliction of Emotional Distress) Causes of Action.

The jury awarded Plaintiff $27,350,000 in total damages: (1) $7,250,000 for past pain and suffering and emotional distress; (2) $18,250,000 for future pain and suffering and emotional distress; and (3) $1,850,000 for future economic loss. Id. at 10.

On February 25, 2026, the Court entered judgment consistent with the Special Verdict. Dkt. 207.

On March 25, 2026, Defendants timely filed the instant Rule 50(b) and 59(a) Motions. Both motions were filed with accompanying exhibits and included requests for judicial notice of certain state court records.[1] Dkts. 208-1 to -5, 210-1 to -6.

On the same day, Plaintiff filed the Fees Motion. In support of the Fees Motion, Plaintiff filed the declarations of Dale K. Galipo, Renee V. Masongsong, Darci Gilbert, Rodney S. Diggs, Carol A. Sobel, James A. Bryant, and the attached exhibits. Dkts. 211-1 to -19, 212, 213, 216, 225.

On April 8, 2026, the parties filed their respective oppositions. Dkt. 217; Dkt. 218, Rule 50(b) Motion Opposition; Dkt. 219, Rule 59(a) Motion Opposition ("Rule 59(a) Opp."). In support

---

[1] "Because the Court reaches its conclusion without relying on those documents," Chamber of Com. of the U.S. v. Cal. Air Res. Bd., 763 F. Supp. 1005, 1015 n.6 (C.D. Cal. 2025); see also Japanese Vill., LLC v. Fed. Transit Admin., 843 F.3d 445, 454 (9th Cir. 2016), these requests are **DENIED**.

of Plaintiff's oppositions, Plaintiff filed a declaration by Renee V. Masongsong with attached exhibits. Dkt. 220.

On April 22, 2026, the parties filed their respective replies. Dkt. 222, Rule 50(b) Motion Reply ("Rule 50(b) Reply"); Dkt. 223, Rule 59(a) Motion Reply ("Rule 59(a) Reply"); Dkt. 224. Defendants filed two exhibits in support of the Reply to Plaintiff's Opposition to the Rule 50(b) Motion. Dkt. 222-1 to -2.

These matters, thus, stand submitted.

## III.
## LEGAL STANDARDS

### A.    RULE 50(b)

A "movant may file a renewed motion for judgment as a matter of law" following "entry of judgment." Fed. R. Civ. P. 50(b). In deciding the renewed motion, a court should not "reweigh the evidence or substitute [its] preferred result." Bell v. Williams, 108 F.4th 809, 818 (9th Cir. 2024). Rather, the court must determine "whether the evidence permits only one reasonable conclusion, and that reasonable conclusion is contrary to the jury's verdict." Sedlik v. Von Drachenberg, 163 F.4th 667, 675 (9th Cir. 2026) (citation modified). The verdict must be upheld "if it is 'supported by substantial evidence,'" i.e., "evidence adequate to support the jury's conclusion." Alves v. Cnty. of Riverside, 135 F.4th 1161, 1168 (9th Cir. 2025) (quoting Bell, 108 F.4th at 818).

### B.    RULE 59(a)

A court may grant a new trial "after a jury trial[] for any reason for which a new trial has [] been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In the Ninth Circuit, this is limited to situations where the verdict (1) "even though supported by substantial evidence[,] is contrary to the clear weight of the evidence," (2) "is based upon evidence which is false," or (3) would promote a "miscarriage of justice." Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc., 104 F.4th 1128, 1152 (9th Cir. 2024) (citation modified), cert. denied, 145 S. Ct. 1127 (2025). Unlike on a Rule 50(b) motion, "the trial court may weigh the evidence and assess the credibility of witnesses and is not required to view the evidence in the light most favorable to the verdict." Id. "[T]he authority to grant a new trial is confided almost entirely to the exercise of discretion on the part of the trial court." Dees v. Cnty. of San Diego, 960 F.3d 1145, 1155 (9th Cir. 2020) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). This discretion is "virtually unassailable." Hung Lam v. City of San Jose, 869 F.3d 1077, 1084 (9th Cir. 2017) (citation modified).

///

///

///

///

## IV.
## DISCUSSION

### A.     DEFENDANTS' RULE 50(b) MOTION IS DENIED

#### 1.     Defendants Failed to Raise Heck in Their Rule 50(a) Motion

##### a.     Applicable Law

A Rule 50(b) motion "is not a freestanding motion." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 962 (9th Cir. 2009). "Rather, it is a renewed Rule 50(a) motion" that is "limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." Id. As such, "a party cannot properly 'raise arguments in its post-trial [Rule 50(b) motion] . . . that it did not raise in its preverdict Rule 50(a) motion." Id. (quoting Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003)); Tortu v. L.V. Metro. Police Dep't, 556 F.3d 1075, 1081-81 (9th Cir. 2009) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." (citation modified) (quoting Fed. R. Civ. P. 50 advisory committee notes)). The "one safety valve" for this "harsh" rule is where, when "[r]ead fairly," the Rule 50(a) motion advanced the argument in an "ambiguous or inartful[]" way. Williams v. Gaye, 895 F.3d 1106, 1131 n.20 (9th Cir. 2018) (emphasis added) (citation modified) (quoting Go Daddy Software, Inc., 581 F.3d at 961 (citation modified)); Go Daddy Software, Inc., 581 F.3d at 962. Otherwise, Rule 50(b) relief is "preclude[d]." Williams, 895 F.3d at 1134 (citation modified).

##### b.     Analysis

Here, Rule 50(b) relief based on Defendants' Heck argument is precluded because, as they themselves concede, "Defendants did not . . . argue Heck in their Rule 50(a) motion."[2] Rule 50(b) Reply at 20. Hence, Defendants "cannot properly 'raise'" Heck now in their post-verdict Rule 50(b) motion. Go Daddy Software, Inc., 581 F.3d at 961 (citation modified); see also Tortu, 556 F.3d at 1085 n.9 ("[W]ithout the requisite Rule 50(a) motion, this . . . issue could not be revived under Rule 50(b).").

Further, Defendants misread Dupree v. Younger, 598 U.S. 729 (2023), and Estate of Aguirre v. County of Riverside, 131 F.4th 702 (9th Cir. 2025). See Rule 50(b) Reply at 20. The Dupree Court simply held a Rule 50(b) motion "is not required to preserve for appellate review a purely legal

---

[2] Despite not reaching the merits of Defendants' Heck argument, the Court heeds the Supreme Court's recent decision in Olivier v. City of Brandon, 146 S. Ct. 916 (2026), which acknowledges Heck's language often "swe[eps] a bit too broad." Id. at 925. The Court also notes how, in an attempt to establish the factual record necessary for a Heck analysis, Defendants now seek judicial notice of state court records relating to Plaintiff's prosecution that were not introduced at summary judgment. They also cite to new authorities, including Ortega v. Rodenspiel, 617 F. App'x 795 (9th Cir. 2015), that were absent from their summary judgment motion. Ortega is likely the closest the Ninth Circuit has come to addressing whether Section 1983 plaintiffs convicted of assault with a deadly weapon are Heck-barred from bringing excessive force claims. However, Ortega is factually distinguishable and, in any event, is "not only officially nonprecedential but also of little use to district courts or litigants in predicting how [the Ninth Circuit] . . . will view any novel legal issues in the case on appeal." Grimm v. City of Portland, 971 F.3d 1060, 1067 (9th Cir. 2020).

---

issue resolved at summary judgment." 598 U.S. at 736 (emphasis added). The Ninth Circuit in Estate of Aguirre applied Dupree in justifying "appellate review" of the purely legal issue of qualified immunity "which had been expressly raised at summary judgment." Est. of Aguirre, 131 F.4th at 706 (emphasis added). Neither case permits a district court to review an argument in a renewed Rule 50(b) motion that was not advanced in the prerequisite Rule 50(a) motion. See Williams, 895 F.3d at 1131 ("Rule 50(b) [does] not authorize [a] district court to overturn the jury's [] verdict[]" where the party "fail[s] to file a Rule 50(a) motion" raising the argument).

If anything, Dupree counsels against revisiting Heck. The Court already determined Defendants forfeited their Heck defense by not listing it in any of their answers. Dkt. 132 at 10. See Wakefield v. ViSalus, Inc., 51 F.4th 1109, 1119 (9th Cir. 2022) ("'[A] defendant's failure to raise an affirmative defense' in [their] answer effects a waiver of that defense."); Rice v. May, 231 F.2d 389, 392 (9th Cir. 1956) ("These defenses are all affirmative defenses and were not pleaded. Therefore, no attention should be paid to them."). Given Defendants' procedural shortcoming, and a record factually devoid of Plaintiff's state criminal proceedings, the Court opted not to exercise its "discretionary authority to allow a defendant to plead an affirmative defense in a subsequent motion," KST Data, Inc. v. DXC Tech. Co., 980 F.3d 709, 713 (9th Cir. 2020). See Dkt. 132 at 10 n.6. The Court further explained why, regardless of forfeiture, Heck did not bar Plaintiff's Section 1983 claim. Id. at 10-12. Such questions of forfeiture and Heck are "independent of disputed facts," and "factual development at trial" simply could not "change the [] [C]ourt's answer[s]" to those questions. Dupree, 598 U.S. at 737. Thus, Defendants' invitation to revisit an argument already addressed in the Court's Order denying summary judgment would amount to nothing more than "the tedium of saying no twice." Id. The Court refuses "to undertake that empty exercise." Id.

Accordingly, Defendants' Rule 50(b) Motion is **DENIED** on this ground.

## 2.    Substantial Evidence Supports the Jury's Section 1983 Verdict

### a.    Applicable Law

"The 'touchstone of the Fourth Amendment is "reasonableness,"' as measured in objective terms." Barnes v. Felix, 605 U.S. 73, 79 (2025) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). "[D]eciding whether a use of force was objectively reasonable demands 'careful attention to the facts and circumstances' relating to the incident, as then known to the officer." Id. at 80 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Courts traditionally focus on the "'severity of the crime' prompting the stop," "actions the officer took during the stop," and "the stopped person's conduct." Id. (quoting Graham, 490 U.S. at 396). Where the officer used deadly force, however, the relevant inquiry is whether the suspect posed a "significant" and "immediate" "threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985); see also Scott v. Harris, 550 U.S. 372, 384 (2007) (concluding "substantial and immediate risk of serious physical injury" justified officer's use of deadly force). Absent such a threat, the use of deadly force is "constitutionally unreasonable." Garner, 471 U.S. at 11; accord Est. of Hernandez ex rel. Hernandez v. City of Los Angeles, 139 F.4th 790, 799 (9th Cir. 2025) (same).

A suspect driving in the direction of an officer does not present a significant and immediate threat where the officer can "avoid[] any risk of being struck by simply taking a step back." Orn v. City of Tacoma, 949 F.3d 1167, 1175 (9th Cir. 2020). In assessing whether such a situation presents

an immediate and significant threat, the two most important considerations are (1) "the speed at which the vehicle was traveling" and (2) "the officer's ability to avoid the oncoming vehicle." <u>Acosta v. City & Cnty. of San Francisco</u>, 83 F.3d 1143, 1146 n.9 (9th Cir. 1996), <u>as amended</u> (June 18, 1996).

### b.    Analysis

Here, substantial evidence supports the jury's verdict.  Defendants continue to argue Deputy Alfred did not have time to move out of the way when Plaintiff got in his vehicle, turned the engine on, and then began slowly driving in reverse.  <u>See</u> Rule 50(b) Mot. at 12.  Notably, Plaintiff's car moved at a top speed of "3.4 miles per hour," Trial Tr. 421:18-19, thus allowing more than sufficient time for Deputy Alfred to simply move out the way.  <u>See Orn</u>, 949 F.3d at 1175 ("Orn's vehicle was moving at just five miles per hour. Clark could therefore have avoided any risk of being struck by simply taking a step back.").  Additionally, Deputy Alfred testified he believed Plaintiff was going to reverse his car after closing the car door yet stood behind the car for three seconds until starting to fire shots at Plaintiff.  Tr. 220:9-17, 416:5-418:15.  Further, not only did Deputy Alfred have time to get out of the way of this slow-moving car, there was an opening into a backyard approximately three to four feet from where he stood – which he notably moved into immediately after shooting.  <u>Id.</u> 212:19-22, 248:17-23.  While Defendants argued both at trial and in their motion that Deputy Alfred could not move out of the way because of the gravel on the driveway and his heavy gear, it is undisputed that he wore his regular deputy gear and that he was physically in shape the day of the incident.  <u>Id.</u> 194:6-12, 18-23.  To claim these conditions prevented him from moving out of the way of a slow-moving car is simply not credible – and the jury's verdict reflects their rejection of this testimony.  <u>See Acosta</u>, 83 F.3d at 1148 ("[T]he problem with this argument is that it depends upon the officers' version of the facts—a version the jury plainly rejected." (citation modified)).  Rather than simply move out of the way, Deputy Alfred aimed at Plaintiff's headrest and chose to fire six rounds, ultimately striking Plaintiff in the back of the head.

From this evidence, "a juror could have reasonably reached the conclusion at which the jury appears to have arrived: that the car did move prior to [Deputy Alfred] shooting [Plaintiff] but that it was moving or rolling sufficiently slowly that a reasonable officer in [Deputy Alfred's] position" would have "recognized that he could avoid being injured . . . by simply stepping to the side." <u>Acosta</u>, 83 F.3d at 1146-47; <u>see also</u> <u>Smith ex rel. Mason v. City of Hayward</u>, No. 24-7541, 2025 WL 3527445, at *2 (9th Cir. Dec. 9, 2025) (holding there was a genuine dispute as to whether the officers acted unreasonably in shooting at the plaintiff's car where "[a]ll three [] had the opportunity to remain in a safe position, step back, or reverse away from [the plaintiff's driving] path").  Thus, there was ample evidence to support the jury's finding that Deputy Alfred's use of force was "constitutionally unreasonable." <u>Garner</u>, 471 U.S. at 11.

### 3.    Deputy Alfred Is Not Entitled to Qualified Immunity

### a.    Applicable Law

"Government officials enjoy qualified immunity from suit under [Section] 1983 unless their conduct violates clearly established law." <u>Zorn v. Linton</u>, 146 S. Ct. 926, 930 (2026) (citing <u>Rivas-Villegas v. Cortesluna</u>, 595 U.S. 1, 5 (2021) (per curiam)).  "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected. <u>City of Tahlequah v. Bond</u>, 595 U.S. 9, 12 (2021) (per curiam) (citation modified) (quoting <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 63 (2018)).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas, 595 U.S. at 5 (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curiam)). Unless the violated right is "obvious," the plaintiff "must identify a case that put [the official] on notice that his specific conduct was unlawful," id., and the court must make an "effort to explain how that case law prohibit[s] [the official's] actions," City of Escondido v. Emmons, 586 U.S. 38, 43 (2019) (per curiam). See Zorn, 146 S. Ct. at 930 ("[O]fficials receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'known' that it proscribed their specific conduct." (citation modified) (quoting City & Cnty. of San Francisco v. Sheehan, 575 U.S. 600, 616 (2015))). There may be "notable factual distinctions between the precedents relied on . . . so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." Hope v. Pelzer, 536 U.S. 730, 740 (2002); accord Rivas-Villegas, 595 U.S. at 5 ("Although 'this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting White v. Pauly, 580 U.S. 73, 79 (2017))).

            b.      Analysis

Here, based on the jury's adequate finding of a constitutional violation, the Court finds Deputy Alfred violated clearly established law. At the time of the incident, Deputy Alfred could have "read" at least two "precedent[s] beforehand and 'known' that it proscribed [his] specific conduct." Zorn, 146 S. Ct. at 930. Orn and Acosta, which the Court has already described in depth in its Order denying summary judgment, stand for the well-accepted rule that an officer acts unreasonably by shooting at a car "moving slowly enough that the officer could [] avoid[] any risk of injury 'by simply stepping to the side.'" Orn, 949 F.3d at 1179 (quoting Acosta, 83 F.3d at 1146-47); see also Villanueva v. California, 986 F.3d 1158, 1170 (9th Cir. 2021) ("We have consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger." (citing Orn, 949 F.3d at 1175)).[3]

In sum, "accept[ing] the jury's version of the facts" and their finding that Deputy Alfred acted unreasonably in shooting at Plaintiff's car as it slowly backed out the driveway instead of stepping to the side in the backyard opening, Deputy Alfred "cannot be entitled to qualified immunity." Acosta, 83 F.3d at 1148. Accordingly, Defendants' Rule 50(b) Motion is **DENIED** as to the jury's Section 1983 verdict.

///

---

[3] Because this case involved a slow-moving vehicle and an officer who had the ability to avoid the vehicle, Defendants' comparisons to Williams v. City of Sparks, 112 F.4th 635 (9th Cir. 2024), and Wilkinson v. Torres, 610 F.3d 546 (9th Cir. 2010) – both of which involved car pursuits and pit maneuvers – are not persuasive. See Williams, 112 F.4th at 640; Wilkinson, 610 F.3d at 549. See also Orn, 949 F.3d at 1180 (distinguishing case from Wilkinson and Plumhoff v. Rickard, 572 U.S. 765 (2014)); Smith ex rel. Mason, 2025 WL 3527445, at *2 (distinguishing from Wilkinson, Plumhoff, and Monzon v. City of Murrieta, 978 F.3d 1150 (9th Cir. 2020)); Villanueva, 986 F.3d at 1170-71 (same).

### 4.    Substantial Evidence Supports the Jury's Verdict on Plaintiff's State Claims[4]

#### a.    Battery

##### i.    Applicable Law

"Under California law, when an alleged battery was committed by a police officer, the plaintiff must prove 'unreasonable force' in addition to the typical elements of the tort." Uzun v. City of Santa Monica, 54 F.4th 595, 596 (9th Cir. 2022) (citing Yount v. City of Sacramento, 43 Cal. 4th 885, 902 (2008)); see also A.B. v. Cnty. of San Diego, 112 Cal. App. 5th 404, 416 (2025) (listing out the remaining elements), as modified on denial of reh'g (July 18, 2025). "California battery claims are coextensive with claims for excessive force under the Fourth Amendment." Alves, 135 F.4th at 1166 (citing Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272-73 (1998)).

##### ii.    Analysis

Here, Defendants challenge only the unreasonableness component of the jury's battery verdict. See Rule 50(b) Mot. at 23-24; Rule 50(b) Reply at 22. For the reasons set forth in Section IV.A.2.b, substantial evidence supports the jury's finding that Deputy Alfred acted unreasonably under the circumstances. Accordingly, Defendants' Rule 50(b) Motion is **DENIED** as to the jury's battery verdict.

#### b.    Negligence

##### i.    Applicable Law

"For a negligence claim, the plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." A.B., 112 Cal. App. 5th at 416 (citing Hayes v. Cnty. of San Diego, 57 Cal. 4th 622, 629 (2013)). "[P]reshooting conduct is included in the totality of circumstances surrounding an officer's use of deadly force, and therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct." Villalobos v. City of Santa Maria, 85 Cal. App. 5th 383, 389 (2022) (quoting Hayes, 57 Cal. 4th at 632); cf. Alves, 135 F.4th at 1171 ("[P]reshooting circumstances might show that an otherwise reasonable use of deadly force was in fact unreasonable." (citation modified) (quoting Hayes, 57 Cal. 4th at 630)).

///

---

[4] Defendants now argue for the first time that Heck also bars Plaintiff's state law claims. Defendants forfeited this defense. See Wakefield, 51 F.4th at 1119; see also Sram Corp. v. Shimano, Inc., 25 F. App'x 626, 629 (9th Cir. 2002) ("Even assuming that Shimano validly raised the issue in its post-trial motions, this fact is not sufficient to avoid waiver. Federal Rule of Civil Procedure 8(c) requires the defendant to plead affirmatively 'any matter constituting an avoidance or affirmative defense.' Where a defendant fails to raise the defense . . . prior to trial, the defense is waived." (citation modified) (citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 924 (9th Cir. 1988))). Defendants filed a total of four answers in this matter. See Dkts. 14, 64, 75, 78. None of them raised Heck.

### ii.     Analysis

Here, Defendants argue only Deputy Alfred did not act negligently because his "actions were reasonable under the totality of the circumstances." Rule 50(b) Mot. at 25; see also Rule 50(b) Reply at 23. Defendants' perfunctory argument fails as a matter of law because "California negligence law is broader than federal excessive force law." Uzun v. City of Santa Monica, 54 F.4th 595, 596 (9th Cir. 2022) (reversing district court order ruling a negligence claim was precluded by the grant of summary judgment on a Section 1983 claim); see also Tabares v. City of Huntington Beach, 988 F.3d 1119, 1128 (9th Cir. 2021) (reversing where "the district court conflated Fourth Amendment excessive force standards with California negligence law"). Regardless, given the reasons set forth in Section IV.A.2.b, in addition to the evidence regarding Deputy Alfred's pre-shooting negligence, the Court finds substantial evidence supports the jury's finding that Deputy Alfred acted negligently. See Uzun, 54 F.4th at 596-97 ("Uzun only needed to prove the officers had a duty to use due care, they breached that duty, and the breach was the proximate cause of his injury."). Accordingly, Defendants' Rule 50(b) Motion is **DENIED** as to the jury's negligence verdict.

### c.     Bane Act

### i.     Applicable Law

The Bane Act prohibits interference with constitutional rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1. The Act "does not require that 'the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." Murchison v. Cnty. of Tehama, 69 Cal. App. 5th 867, 896 (2021) (citation modified) (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 800 (2017)), as modified (Nov. 17, 2017). Rather, where a constitutional claim is properly pleaded and proved, "the egregiousness required by [the Act] is tested by whether the circumstances indicate the [] [official] had a specific intent to violate the [plaintiff's constitutional right]." Id. (citation modified) (quoting Cornell, 17 Cal. App. 5th at 801; see also B.B. v. Cnty. of Los Angeles, 25 Cal. App. 5th 115, 133 n.14 (2018) ("'[C]oercion is inherent' in an unreasonable [] search."), rev'd on other grounds, 10 Cal. 5th 1, 10 (2020). Specific intent turns on (1) the right at issue being "clearly delineated and plainly applicable under the circumstances of the case," and (2) the official "commit[ting] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." Murchison, 69 Cal. App. 5th at 896 (citation modified) (quoting Cornell, 17 Cal. App. 5th at 803). An official "need not 'recognize the unlawfulness of [their] act' if [they] 'acted in "reckless disregard" of the constitutional right.'" Chinaryan v. City of Los Angeles, 113 F.4th 888, 907 (9th Cir. 2024) (quoting Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 520 (9th Cir. 2018)), cert. denied sub nom. Cueto v. Chinaryan, 145 S. Ct. 1927 (2025).

### ii.     Analysis

Here, Defendants argue Plaintiff "did not present sufficient evidence of an underlying constitutional violation" or "of coercion independent of the constitutional violation itself." Rule 50(b) Mot. at 25. As explained above in Section IV.A.2.b, there was more than sufficient evidence that Deputy Alfred violated Plaintiff's right to be free from deadly force. In addition, the jury had sufficient evidence to find Deputy Alfred "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1045 (9th Cir. 2018) (quoting United States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993)). In

particular, there was substantial evidence that Deputy Alfred acted at least in "reckless disregard" of Plaintiff's constitutional rights where, in addition to not stepping aside from the path of a slow moving car, Deputy Alfred: (1) did not announce himself as an officer upon approaching Plaintiff despite being trained to, (2) was trained to justify every shot, (3) intentionally pressed the trigger of his firearm six times, (4) did not give a verbal warning that he was going to shoot Plaintiff, and (5) aimed for Plaintiff's headrest, resulting in Plaintiff suffering a gunshot wound to his head. See Chinaryan, 113 F.4th at 908 ("The officers' refusal to exercise discretion to use less intrusive measures when warranted would support a finding that they acted with reckless disregard for plaintiffs' rights."). Hence, the "evidence [was] adequate to support the jury's conclusion" that Deputy Alfred violated the Bane Act. Alves, 135 F.4th at 1168 (citation modified). Accordingly, Defendants' Rule 50(b) Motion is **DENIED** as to the jury's Bane Act verdict.

### d.     Intentional Infliction of Emotional Distress

#### i.     Applicable Law

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1001 (1993)). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" Id. at 1050-51 (quoting Potter, 6 Cal. 4th at 1001). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." Id. at 1051 (quoting Potter, 6 Cal. 4th at 1001). The question is typically for the jury as to whether "the conduct has been sufficiently extreme and outrageous to result in liability." Alcorn v. Anbro Eng'g, Inc., 2 Cal. 3d 493, 499 (1970) (citation modified).

#### ii.     Analysis

Here, Defendants challenge the sufficiency of the evidence as to the first two prongs.

As to the first prong, the jury heard testimony that Deputy Alfred began firing his gun – without warning Plaintiff or even announcing himself as law enforcement – at a reversing car that was twenty-nine feet in front of him. The evidence also demonstrated Deputy Alfred aimed his gun at the driver's side headrest and fired five additional gunshots, despite the car reaching a maximum speed of 3.4 miles per hour and ultimately moving a total distance of only thirteen feet. This evidence would "arouse" an "average member of the community" with "resentment" and "lead [them] to exclaim, 'Outrageous!'" Crouch v. Trinity Christian Ctr. of Santa Ana, Inc., 39 Cal. App. 5th 995, 1007 (2019) (citation modified) (quoting Restatement (Second) of Torts § 46 (1965)); see also Gold v. Cal. Highway Patrol, 763 F. Supp. 3d 914, 934 (N.D. Cal. 2025) ("[A] reasonable jury could conclude . . . that [the officer's unreasonable] use of deadly force constituted 'extreme and outrageous' conduct."); McDonald v. Cnty. of Sonoma, 506 F. Supp. 3d 969, 987 (N.D. Cal. 2020) ("As a matter of law, 'extreme and outrageous conduct' includes the . . . use of excessive force against a suspect."). Further, because the evidence supports the conclusion that Deputy Alfred unnecessarily resorted to deadly force, this evidence would support a jury's finding that Deputy Alfred at least "act[ed] with reckless disregard" of Plaintiff and "the probability that his conduct

[would] cause [Plaintiff] severe emotional distress." <u>Christensen v. Superior Ct.</u>, 54 Cal. 3d 868, 905 (1991) (citation modified). Notably, Deputy Alfred did not deny or present evidence contradicting these facts and instead merely argued he could not have moved out of the pathway of the vehicle due to the gravel and his heavy gear – arguments that were simply not credible in light of the evidence presented.

As to the second prong, "the extreme and outrageous character of [Deputy Alfred's] conduct is in itself important evidence that [Plaintiff's] distress has existed." Restatement (Second) of Torts § 46 cmt. j (1965); <u>see also</u> <u>Perkins v. City of Modesto</u>, No. 1:19-cv-00126-NONE-EPG, 2022 WL 297101, at *22 (E.D. Cal. Feb. 1, 2022) ("[A] jury could reasonably conclude from the evidence that plaintiff suffered from emotional harm as a result of being shot six times."). Further, the jury heard Plaintiff testify he "was devastated" after learning he had been shot in the head, could not "describe" how he felt after learning Deputy Alfred shot him, and now thinks about the fact he was shot "[e]very day." Trial Tr. 465:2-10. The jury also had the benefit of observing Plaintiff's fragile stature as he testified and was thus "in a far better position . . . to judge the severity of [his] emotional distress." <u>Fletcher v. W. Nat'l Life Ins. Co.</u>, 10 Cal. App. 3d 376, 397 (1970). Finally, Dr. Omalu's testimony was credible and impactful – describing how Plaintiff's condition was "permanent, progressive, and irreversible." Trial Tr. 543:13-14. Hence, there was sufficient evidence for the jury to find Plaintiff's distress is of an "enduring quality that no reasonable person in civilized society should be expected to endure." <u>Hughes</u>, 46 Cal. 4th at 1051 (citation modified); <u>see also</u> <u>Jaramillo v. City of San Mateo</u>, 76 F. Supp. 3d 905, 926 (N.D. Cal. 2014) (concluding a jury could find the plaintiff's "broken rib" and claim that he "continues to be 'traumatized by this incident and fearful of police'" as sufficient to constitute severe emotional distress).

For these reasons, the "evidence [was] adequate to support the jury's conclusion" that Deputy Alfred intentionally inflicted emotional distress upon Plaintiff. <u>Alves</u>, 135 F.4th at 1168 (citation modified); <u>see also</u> <u>Fisher v. Fisher</u>, 118 Cal. App. 5th 899, 917 (2026) ("The intentional-infliction tort (unlike other intentional torts, which address specific types of conduct or protect narrow interests) covers a wide range of behavior that is bounded only by the 'extreme and outrageous' limitation."). Accordingly, Defendants' Rule 50(b) Motion is **DENIED** as to the jury's intentional infliction of emotional distress verdict.

## B.    DEFENDANTS' RULE 59(a) MOTION IS CONDITIONALLY DENIED

### 1.    The Jury's Verdict Was Not Against The Clear Weight of the Evidence

Here, Defendants first argue the clear weight of the evidence shows Deputy Alfred's use of force was objectively reasonable, that Deputy Alfred is entitled to qualified immunity, and that Deputy Alfred did not commit battery, negligence, a Bane Act violation, or intentional infliction of emotional distress. <u>See</u> Rule 59(a) Mot. at 11-16. For the reasons already explained above, the Court finds "there was some reasonable basis for the jury's verdict." <u>Flores v. City of Westminster</u>, 873 F.3d 739, 757 (9th Cir. 2017) (citation modified); <u>see also</u> <u>Dees</u>, 960 F.3d at 1155-56 ("Requiring the district court to copy and paste its judgment as a matter of law analysis under a separate header for a new trial makes little, if any, sense."). Said differently, based on the Court's Rule 50(b) analysis, "one simply cannot say truthfully that there was an absolute absence of evidence supporting the jury's verdict in this case." <u>Williams</u>, 895 F.3d at 1136. Accordingly, Defendants' Rule 59(a) Motion is **DENIED** on these grounds.

### 2.    The Court Evidentiary Rulings Were Not Erroneous

#### a.    Applicable Law

An erroneous evidentiary ruling warrants a new trial only when that ruling "'substantially prejudiced' a party." Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008) (quoting Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995)). "[W]hen error is established, [courts] must presume prejudice unless it is more probable than not that the error did not materially affect the verdict." Sidibe v. Sutter Health, 103 F.4th 675, 691-92 (9th Cir. 2024) (quoting Barranco v. 3D Sys. Corp., 952 F.3d 1122, 1127 (9th Cir. 2020)). The moving party has "the burden to show error," and only then does the "burden shift[]" to the prevailing party "to demonstrate that the error was harmless." Id. at 692.

#### b.    Analysis

Defendants argue the Court prejudicially erred in (1) excluding evidence of Plaintiff's criminal history, (2) limiting Dr. Vilke's testimony, (3) permitting testimony of future economic damages, and (4) permitting Mr. Morales's testimony. See Rule 59(a) Mot. at 17-25.

##### i.    Criminal History

Federal Rule of Evidence 403 ("Rule 403") allows a court to exclude evidence that "poses an undue risk of harassment, prejudice, or confusion of the issues." United States v. Kvashuk, 29 F.4th 1077, 1090 (9th Cir. 2022) (quoting Jones v. Davis, 8 F.4th 1027, 1035 (9th Cir. 2021)). "Because Rule 403 requires a case-specific analysis, 'a district court's Rule 403 determination is subject to great deference.'" United States v. Justus, 162 F.4th 962, 969 (9th Cir. 2025) (quoting United States v. Hinkson, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc)).

Here, the Court did not err in excluding Plaintiff's criminal history. First, as the Court explained in its Order denying summary judgment, an assault conviction is not outcome determinative that an officer acted reasonably in using deadly force. Dkt. 132 at 9-12 ("Put simply, though Plaintiff's conduct rose to the level of assault, it may not have not risen to 'the type of threat that justifie[d] [the] officer[]' to use deadly force while Plaintiff was in his vehicle." (quoting Acosta, 83 F.3d at 1146 n.9)); see also Orn, 949 F.3d at 1176 ("[W]e [have] held that a reasonable jury could find that an officer standing near a slow-moving vehicle 'would not have perceived himself to be in danger of serious bodily harm,' because he could have avoided any risk of injury 'by simply stepping to the side.'" (quoting Acosta, 83 F.3d at 1146-47)). The Court further found any marginal relevance would be substantially outweighed by the prejudice and confusing the issues, such as misleading the jury to believe Deputy Alfred could not have used excessive force simply because a criminal jury found him guilty of committing a crime. See Dibbern v. City of Bakersfield, No. 1:22-cv-00723-CDB, 2024 WL 3993196, at *9 (E.D. Cal. Aug. 29, 2024) (finding a conviction "in connection with the same use of force incident" would "not only cause unfair prejudice, but also, confuse the jury into perceiving that officers could not have engaged in excessive force"). Such evidence would, in turn, unfairly prejudice Plaintiff by "suggest[ing] decision on [the] improper basis" of emotion. United States v. Ruiz, 167 F.4th 1024, 1036 (9th Cir. 2026) (citation modified) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)).

Second, Plaintiff's case is distinguishable from both <u>Boyd v. City & Cnty. of San Francisco</u>, 576 F.3d 938, 944 (9th Cir. 2009), and <u>Heath v. Cast</u>, 813 F.2d 254, 259 (9th Cir. 1987). <u>Boyd</u> is distinguishable because it was a survival action and evidence of criminal history was only "relevant to the issue of damages" because the decedent "had spent a large portion of [his heirs'] lives behind bars." 576 F.3d at 948. <u>Heath</u> is distinguishable because, as other courts have noted, criminal history was admissible there to show bias in large part since the plaintiff himself "agreed to stipulate" to his "bias[] against the police officers." 813 F.2d at 259; <u>see also</u> <u>Romero v. Los Angeles Cnty.</u>, No. CV 21-03972-SPG-PVCx, 2024 WL 3467741, at *7 (C.D. Cal. June 27, 2024) ("[<u>Heath</u>] . . . does not hold that a civil rights plaintiff's prior arrests are always admissible to show bias, and several courts have held otherwise." (internal quotation marks omitted)). Defendants' remaining arguments – that Plaintiff's criminal history was "relevant to impeachment" and "Defendants' argument regarding mitigation" – are perfunctory and do not explain how the Court erred in excluding Plaintiff's criminal history. <u>See</u> <u>Williams v. J.B. Hunt Transp., Inc.</u>, 151 F.4th 1020, 1037 (9th Cir. 2025) ("We need not decide whether this evidence was relevant because Plaintiffs have not carried their burden of showing that the district court abused its discretion by excluding the evidence under Rule 403.").

Third, Plaintiff did not "open[] the door" to his criminal record. Rule 59(a) Mot. at 19. Under the "opening the door" doctrine, "the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." <u>Microsoft Corp. v. Motorola, Inc.</u>, 795 F.3d 1024, 1055 n.23 (9th Cir. 2015) (citation modified). The door is left open only where the earlier admission was used in a "partial, misleading" way. <u>United States v. Osazuwa</u>, 564 F.3d 1169, 1176 (9th Cir. 2009) (citation modified). Plaintiff's testimony on cross-examination about "being chained in a room" and using "a walker in prison," Rule 59(a) Mot. at 19, did not open the door to the introduction of his criminal record because such testimony did not leave a false impression on the jury. <u>Cf.</u> <u>United States v. Ellison</u>, No. 23-335, 2024 WL 5200176, at *2 (9th Cir. Dec. 23, 2024) (holding door was opened where cross-examination "suggested to the jury that [the witness] had fabricated her testimony"), <u>cert. denied</u>, 145 S. Ct. 1948 (2025). Rather, Plaintiff was testifying as to why he declined further treatment for his injuries and "truthfully answered the question asked." <u>Osazuwa</u>, 564 F.3d at 1176. Moreover, Defendants' questioning about criminal history "was not responsive to any false impression the jury may have gotten about" Plaintiff's medical treatment. <u>Microsoft Corp.</u>, 795 F.3d at 1055 n.23; <u>see also</u> <u>United States v. Whitworth</u>, 856 F.2d 1268, 1285 (9th Cir. 1988) ("The doctrine does not permit the introduction of evidence that is related to a different issue or is irrelevant to the evidence previously admitted.").

Accordingly, Defendants' Rule 59(a) Motion is **DENIED** on these grounds.

### ii.    Dr. Vilke's Testimony

Defendants also argue the Court erred in excluding "Dr. Vilke's opinion with respect to Plaintiff's regression resulting from [] not following physical therapy recommendations." Rule 59(a) Mot. at 20. However, Defendants themselves concede they "strategically came to an agreement with plaintiff's counsel to admit" only part of Dr. Vilke's report. <u>Id.</u> Such a stipulation is "tantamount to a waiver." <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1108 (9th Cir. 2001). Regardless, even putting this agreement aside, the Court did not err in limiting Dr. Vilke's opinion because such expert testimony would have otherwise exceeded the scope of his expert report. <u>See</u> <u>U.S. Fid. & Guar. Co. v. Lee Invs. LLC</u>, 641 F.3d 1126, 1138 (9th Cir. 2011) ("A district court does

not abuse its discretion in limiting expert testimony to the . . . subjects contained in the expert's disclosure."). Accordingly, Defendants' Rule 59(a) Motion is **DENIED** on this ground.

### iii.    Testimony on Future Economic Damages

Defendants provide no argument as to how the Court erred in permitting testimony on economic damages. See Rule 59(a) Mot. at 21-22; Rule 59(a) Reply at 20-21. They contest solely whether Plaintiff's economic damage award was excessive. Defendants have thus failed to "show error" on the Court's part. Sidibe, 103 F.4th at 692. Accordingly, Defendants' Rule 59(a) Motion is **DENIED** on this ground.

### iv.    Mr. Morales's Testimony

Defendants argue the Court erred in allowing Mr. Morales to testify as an expert witness on "reconstruction of the April 27, 2021 incident." Rule 59(a) Mot. at 23 (citing Fed. R. Evid. 702).

Federal Rule of Evidence 702 ("Rule 702") requires district courts "to ensure that [] proffered [expert] testimony is both relevant and reliable" before admitting it. Engilis v. Monsanto Co., 151 F.4th 1040, 1047 (9th Cir. 2025) (quoting United States v. Valencia-Lopez, 971 F.3d 891, 897-98 (9th Cir. 2020)). "Generally, 'expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry' and 'reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" Id. (quoting Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013)). This rule "is concerned with 'the soundness of the expert's methodology,' rather than 'the correctness of the expert's conclusions.'" Id. at 1050 (quoting Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010)). Hence, "where experts' opinions 'are not the 'junk science' Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system to 'attack shaky but admissible evidence.'" Id. (quoting Wendell, 858 F.3d at 1237).

Here, the Court did not err in permitting Mr. Morales to testify as an expert.

First, Defendants concede "Mr. Morales qualifies as an expert [in] automobile accident reconstruction" and instead argue Mr. Morales was not qualified to testify on the distance travelled by Plaintiff's car. Rule 59(a) Mot. at 22-23. The Court, however, finds Mr. Morales's testimony fell "within the reasonable confines of his subject area." Avila v. Willits Env't Remediation Tr., 633 F.3d 828, 839 (9th Cir. 2011) (citation modified). Contrary to Defendants' mischaracterization, Mr. Morales never testified about "how many feet Plaintiff's Trailblazer had travelled . . . in relation to Deputy Alfred." Rule 59(a) Mot. at 23 (emphasis added). Rather, he testified only about how far the Trailblazer reversed in relation to (1) where Plaintiff began driving it from and (2) from the flashlight Deputy Alfred dropped at the scene. Trial Tr. 411:3-19; 423:9-424:14; 427. Such testimony fell within the purview of his accident reconstructionist expertise and did not require any knowledge of ballistics.

Second, Mr. Morales's testimony concerning Deputy Alfred's ability to move out the way was inadmissible. Defendants contradict themselves on this point. They first argue "Mr. Morales['s] comments on Deputy Alfred's walking speed were [] baseless" because he lacks expertise in "biomechanics or police practices." Rule 59(a) Mot. at 23. They then claim his testimony was

improper because it fell "within the full understanding of the average man." Id. at 24 (citation modified). Defendants' attempt to have it both ways is meritless. See Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 846 (9th Cir. 2009) ("The inconsistency of these arguments render them unpersuasive.").

As to Defendants' first argument, Mr. Morales was qualified to testify on this matter. "The qualifications of an expert do not depend on [their] formal title." Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1174 (5th Cir. 1992); accord In re Toy Asbestos, No. 19-cv-00325-HSG, 2021 WL 1201231, at *3 (N.D. Cal. Mar. 30, 2021) ("An expert's job title . . . is not dispositive of [their] qualifications."). To the contrary, Rule 702 "contemplates a broad conception of expert qualifications." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (citation modified). In deciding whether an expert is "qualified," "specialized knowledge and experience" are of "critical significance." Engilis, 151 F.4th at 1053 (citation modified). In this case, Mr. Morales "constructed more than one thousand vehicle accidents" over fourteen years, which entailed listening to audio "to determine the movement of objects and people." Dkt. 101-2 ¶ 2. Further, to extent it was necessary, his opinion concerning the average human walking speed was "[b]ased on standard biomechanical data," id. ¶ 14. See Engilis, 151 F.4th at 1053 ("Importantly, such knowledge and experience can also 'serve as the requisite "facts or data" on which they render an opinion.'" (quoting Elosu v. Middlefork Ranch Inc., 26 F.4th 1017, 1024 (9th Cir. 2022))). From these representations, the Court finds Mr. Morales was qualified to testify on average walking speeds. See Garcia v. United States, No. 3:19-cv-30026-KAR, 2021 WL 4847443, at *2 (D. Mass. Oct. 18, 2021) ("[T]here is no question that experts in [the accident reconstructionist] field rely on standard reaction times and average walking speeds.").

As to Defendants' second argument, Mr. Morales's testimony was helpful to the jury. Trial Tr. 425:15-16. "Expert testimony is admissible if it will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" Tekoh v. Cnty. of Los Angeles, 75 F.4th 1264, 1265 (9th Cir. 2023) (quoting Fed. R. Evid. 702(a)). This is "in essence a relevance inquiry." Id. (citation modified). Testimony on general matters is relevant where even though "an issue appears to be within the parameters of a layperson's common sense," it "in actuality, is beyond their knowledge." Id. (citation modified). While "[j]urors may have a common understanding on whether a person is walking relatively fast or slow," the "average walking speed[] of an adult . . . and calculations on how far a person can walk in a set amount of time" goes "beyond a juror's common understanding." Jayne v. City of Sioux Falls, No. 4:18-CV-04088-KES, 2020 WL 2129599, at *10 (D.S.D. May 5, 2020). Thus, since a core issue in Plaintiff's case is whether Deputy Alfred had enough time to walk outside the path of Plaintiff's car, the Court finds Mr. Morales's testimony was relevant and thus helpful. See Garcia, 2021 WL 4847443, at *2 (finding accident reconstructionist testimony "easily [met] the relevance standard" where his opinion "considered whether the [pedestrian] collision could have been avoided if [the driver] had been driving at a significantly reduced speed").

Finally, Mr. Morales was permitted to testify about audio analysis. Although he identified training only in forensic video rather than forensic audio – to the extent there is a difference – such difference is an issue of "specialization [that] goes to weight, not admissibility." Avila, 633 F.3d at 839; accord United States v. Garcia, 7 F.3d 885, 890 (9th Cir. 1993) ("[A] lack of particularized expertise goes to the weight accorded [] testimony, not to the admissibility of [an] opinion as an expert.").

Accordingly, Defendants' Rule 59(a) Motion is **DENIED** on these grounds.[5]

### 3.    The Jury's Damages Awards, With the Exception of Future Economic Damages, Are Supported by Substantial Evidence

#### a.    Applicable Law

Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432 (2001). Juries, charged with the duty of "assess[ing] [] the extent of a plaintiff's injury," id., "enjoy broad discretion in awarding [such] damages," Wakefield, 51 F.4th at 1120.

"The due process clauses of the Constitution, however, set outer limits on the magnitude of damages awards." Id.; see also Bell v. Williams, 108 F.4th 809, 831 (9th Cir. 2024) ("There 'must be an upper limit' to every damages award."). In particular, because due process "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor," grossly excessive awards "further[] no legitimate purpose and constitute[] an arbitrary deprivation of property." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416-17 (2003); see also Bell, 108 F.4th at 831 ("Otherwise, if left unrestrained, compensatory damages awards could go beyond their compensatory function and turn punitive."). Where the jury's verdict is "palpably and grossly . . . excessive, it should not be permitted to stand." Dimick v. Schiedt, 293 U.S. 474, 486 (1935).

A trial court thus has discretion to "overturn[] verdicts for excessiveness and order[] a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 433 (1996) (citing Dimick, 293 U.S. at 486-87). A trial court is given "the benefit of every doubt" in deciding whether to uphold a verdict, abusing its discretion "only where a damages award exceeds its reasonable bounds." Bell, 108 F.4th at 831 (citation modified) (quoting Gasperini, 518 U.S. at 436). The verdict "must be upheld unless the amount is 'grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.'" Id. at 830 (quoting Harper, 533 F.3d at 1028).

---

[5] The Court notes many of these arguments were not raised as objections during Mr. Morales's examination and were thus waived. See S.A. Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters, 125 F.3d 1230 (9th Cir. 1997) (holding an objection not raised during examination was "untimely" and "waived"); see also Jerden v. Amstutz, 430 F.3d 1231, 1237 (9th Cir. 2005) ("Counsel should not 'sandbag' Daubert concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a severe disadvantage." (citation modified)). Defendants, for example, argue Mr. Morales's testimony was not relevant because "there is no duty to retreat under California law." Rule 59(a) Mot. at 24 (citing Cal. Penal Code § 835a(d)). Notably, Defendants' parenthetical quoting of this statute omits that an officers' "right to self-defense" is subject to "the use of objectively reasonable force." Cal. Penal Code § 835a(d). As detailed in the Court's summary judgment order, there was a genuine dispute as to whether Deputy Alfred exercised reasonable force. Mr. Morales's testimony was thus relevant. In any event, the last sentence in that provision further notes "'retreat' does not mean tactical repositioning or other de-escalation tactics." Id. Consistent with that definition, Orn and Acosta merely require an officer to step to the side of a slowly moving car, not retreat from apprehending a subject.

If a court "determines that the damages award is excessive, it has two alternatives." Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir. 1983). "It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." Id. "[A] remittitur must reflect the maximum amount sustainable by the proof." Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 52 F.4th 1054, 1087 (9th Cir. 2022). The court should "set the remittitur amount where objective evidence clearly identified the correct damages amount." Bell, 108 F.4th at 835 (remanding without a specific non-economic damages remittitur because it "lack[ed] [] an objective measure"). Under California law, an award without proof "cannot be sustained." Behr v. Redmond, 193 Cal. App. 4th 517, 533 (2011). "If the prevailing party does not consent to the reduced amount, a new trial must be granted." Bell, 108 F.4th at 835.

### b. Analysis

Here, the evidence presented at trial supports all but the jury's economic damages award.

### i. Economic Damages

"California law applies for purposes of calculating damages." Castro v. Cnty. of Los Angeles, 797 F.3d 654, 675 (9th Cir. 2015), incorporated by reference on reh'g en banc, 833 F.3d 1060, 1066 n.2 (9th Cir. 2016). "An injured plaintiff is entitled to recover the reasonable value of medical services that are reasonably certain to be necessary in the future." Corenbaum v. Lampkin, 215 Cal. App. 4th 1308, 1330 (2013) (citing Cal. Civ. Code §§ 3283, 3359). Though the extent of harm need not be proved with "complete certainty" and there need not be a "precise figure as to future damages," there must at least be "sufficient evidence from which the jury could determine when, if ever, the [harm] could [occur], and what the future expenses [are] likely to be." Garcia v. Duro Dyne Corp., 156 Cal. App. 4th 92, 99 (2007); accord Lonn-Nichols v. Brugger, No. F066232, 2014 WL 1386874, at *3-6 (Cal Ct. App. Apr. 9, 2014) (collecting cases declaring there must "evidence of the [medical] cost"); see also Castro, 797 F.3d at 675 (affirming future economic damages award where there was evidence of "billing records" and a "chart detailing the charges" for past medical expenses, among other things).

Here, the evidence presented does not support the jury's award of $1,850,000 for future economic loss.

Defendants argue "Plaintiff's fail[ed] to provide evidence of post-injury lifespan" and thus the award was "based solely on Plaintiff's counsel's closing argument suggesting that Plaintiff was expected to live for another 33 years." Rule 59(a) Mot. at 26. Plaintiff does not contest this argument. Instead, he concedes he "did not present [] testimony" on "future economic damages" and that Defendants' cross-examination of Dr. Omalu was the only testimony elicited about future medical expenses. Rule 59(a) Opp. at 19-20. That testimony hypothesized that if Plaintiff was awarded "a hundred million dollars" he may recover his ability to walk again. Trial Tr. 552:9-23. However, without more, this was not sufficient evidence of "what [Plaintiff's] future expenses were likely to be." Garcia, 156 Cal. App. 4th at 99; see also PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 417 F.2d 659, 663 (9th Cir. 1969) ("Damages cannot be based on speculation or guesswork."). Accordingly, Plaintiff's future economic damages award warrants remittitur. See Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 778 (9th Cir. 1990) (affirming "remittitur on the ground that the expert testimony on future economic conditions was necessarily speculative"), disapproved of on other grounds by Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317 (2000).

As explained above, Dr. Omalu's testimony was not sufficient evidence of "what [Plaintiff's] future expenses were likely to be." Garcia, 156 Cal. App. 4th at 99. Because Plaintiff ultimately concedes the jury considered no other evidence in support of a future medical expenses award, see Rule 59(a) Opp. at 19-20, 26, there is no "objective evidence" to support the jury's future economic damages award, Bell, 108 F.4th at 835. See Lonn-Nichols, 2014 WL 1386874, at *6 ("Because there was no evidence of the cost of the trigger point injections – past or future – or of the future cost of any other recommended treatment, the jury could only have speculated as to their cost to determine the amount awarded."); see also Behr, 193 Cal. App. 4th at 532-35 (reducing $2.5 million award to $72,000 where the award was "supported only by the evidence of the cost of Behr's medication over her expected life span"). Accordingly, alternative to a new trial, the appropriate remittitur is $0.

### ii.    Non-Economic Damages

In deciding whether a non-economic damages award is grossly excessive, courts first consider "the evidence presented at trial" and then "awards in comparable cases." Id. at 832. "[T]he evidence presented at trial should be given foremost priority," and if such evidence is sufficient by itself to support the award, "there is no need to compare cases." Id. This approach ensures courts "do not restrain the effects of social change on damages awards." Id. The burden rests on the moving party to show the evidence, viewed in the nonmovant's favor, is grossly excessive. See Harper, 533 F.3d at 1028; Bond v. Sheriff of Ottawa Cnty., 173 F.4th 1265, 1305 (10th Cir. 2026) ("The moving party bears 'the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence.'" (quoting Hynes v. Energy W., Inc., 211 F.3d 1193, 1206 (10th Cir. 2000))).

Here, the evidence presented at trial supports the jury's award of $7,250,000 for past pain and suffering and emotional distress and $18,250,000 for future pain and suffering and emotional distress, and Defendants' arguments to the contrary fail.

Defendants first argue the future non-economic damages award is unsupported by "post-injury lifespan" evidence. Rule 59(a) Mot. at 26. Defendants, however, provide no authority requiring a jury to consider such evidence in calculating non-economic damages. See Tapia v. NaphCare Inc., No. C22-1141-KKE, 2025 WL 835168, at *5 (W.D. Wash. Mar. 17, 2025) (declining "to find life expectancy relevant to [] non-economic damages"); cf. Bennett ex rel. Bennett v. Hosp. Corp. of Am., 912 F.2d 468, at *2 (9th Cir. 1990) ("In calculating damages for future medical expenses . . . it is proper to consider post-injury lifespan because these costs will terminate when the victim expires." (emphasis added)). Their argument also cuts against the longstanding rule "that [non-economic] damage awards [need not] be supported by 'objective' evidence." Harper, 533 F.3d at 1030 (quoting Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1040 (9th Cir. 2003)); Bell, 108 F.4th at 831 n.4 (same). In any event, Dr. Omalu testified Plaintiff would suffer "full-blown dementia" fifteen to twenty-five years from now, and the jury could have inferred from this that Plaintiff is expected to at least live for another fifteen years. Trial Tr. 519:8-13. Accordingly, this argument fails.

Defendants' second argument on non-economic damages skips to "compar[ing] [] prior civil verdicts in which a plaintiff was shot and survived." Rule 59(a) Mot. at 27. This step, however, is unnecessary if "the evidence is sufficient to support even a high award." Bell, 108 F.4th at 832. Because Defendants have not shown a shortage of evidentiary support for the verdict as to non-

economic damages, "there is no need to compare cases," see Bell, 108 F.4th at 832; see also Harper, 533 F.3d at 1028-29 (ending excessiveness inquiry after concluding "[t]he evidence presented at trial and viewed in the [plaintiffs'] favor justif[ied] the jury's damages verdict."); Bond, 173 F.4th at 1311 ("[T]he district court had [] correctly rejected the invitation to 'compare awards' between cases."), and the Motion can be denied on this ground alone.

However, even had Defendants adequately challenged the evidence underlying the non-economic damages awards, the Court would uphold those awards.  Finding so would comport with the "cardinal principle of damages": "compensati[ng] for the injury caused to [the] plaintiff by [the] defendant's breach of duty."  Carey v. Piphus, 435 U.S. 247, 254-55 (1978) (citation modified) (quoting 2 F. Harper & F. James, Law of Torts § 25.1 at 1299 (1956)).  The "level of damages" in a Section 1983 action "is ordinarily determined according to principles derived from the common law of torts."  Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986).  At common law, past or future "bodily harm and emotional distress" were two well-accepted bases for tort recovery. Restatement (Second) of Torts § 924 (1979); see also Field v. Mans, 516 U.S. 59, 70 (1995) ("[T]he most widely accepted distillation of the common law of torts [is] the Restatement (Second) of Torts.").  "The testimony of the plaintiff alone can substantiate a jury's award of emotional distress damages."  Harper, 533 F.3d at 1029.

Evidence at trial showed Plaintiff was shot in the back of his head; his skull was fractured and required cranioplasty; bullet fragments are still scattered throughout Plaintiff's brain, causing permanent brain damage; Plaintiff's cognitive function will progressively deteriorate until he develops full-blown dementia; Plaintiff will eventually require daily assistance; Plaintiff is "hemiplegic" and has "lost significant power on the left side of his body"; Plaintiff will be at risk of falling for the rest of his life; Plaintiff will be in constant, severe, high-scale pain for the rest of his life; and Plaintiff's pain is incurable.  Trial Tr. 513:15-16, 517:2-19, 518:17-23, 519:2-17, 523:1-19, 525:7-9, 528:25-529:8, 530:5-531:4.  Plaintiff himself testified to his constant pain, disabilities, and memory issues.  Id. 467:20-470:23.  Considering this evidence of bodily harm and emotional distress, the jury's award "reasonably reflect[s] the actual injury suffered" by Plaintiff: namely, being shot in the brain and left to suffer debilitating, incurable, and progressively degenerative cognitive functions for the rest of his life.  Watson v. City of San Jose, 800 F.3d 1135, 1141 (9th Cir. 2015).

The jury's award also underscores a "primary purpose of [] § 1983": "deterr[ing] [] future egregious conduct."  Smith v. Wade, 461 U.S. 30, 49 (1983); see also Memphis Cmty. Sch. Dist., 477 U.S. at 307 ("[Deterrence] operates through the mechanism of . . . damages grounded in determinations of plaintiffs' actual losses.").  Deterrence is central in this case given sufficient evidence supports the jury's finding that Deputy Alfred exercised poor judgment or a lack of preparedness in unreasonably using deadly force when it was not justified.  See S.R. Nehad v. Browder, 929 F.3d 1125, 1135 (9th Cir. 2019) ("Reasonable triers of fact can, taking the totality of the circumstances into account, conclude that an officer's poor judgment or lack of preparedness caused him or her to act unreasonably, 'with undue haste.'" (quoting Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011))).  The evidence also demonstrated poor decision-making in the moments leading up to the shooting, including, for example, evidence that Deputy Alfred used profanity at Plaintiff, purposely aimed at Plaintiff's headrest before shooting, failed to identify himself as an officer, failed to announce a warning before shooting at Plaintiff, and ultimately fired at a moving car against department policy.  Thus, while not going so far as to punish Defendants, the jury's verdict accurately reflects compensating Plaintiff for his injuries while also deterring Defendants from future violative conduct.  See Berry v. City of Muskogee, 900 F.2d 1489, 1507

(10th Cir. 1990) ("[An action] must make available to plaintiffs sufficient damages to serve the deterrent function central to the purpose of [Section] 1983."); see also Bell, 108 F.4th at 832 ("Whether due to inflation or changing attitudes toward certain types of official misconduct, a damages award . . . can be substantial if a plaintiff presents sufficient evidence to support it.").

As a final point, the jury's rejection of the higher verdict proposed by Plaintiff's counsel also suggests the jury was sound in its calculation and did not act with "passion and prejudice." Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir.), amended on other grounds by, 817 F.2d 609 (9th Cir. 1987); see also Bond, 173 F.4th at 1309 n.30 (noting the jury's award "shows it necessarily rejected" the plaintiff's higher verdict proposal).

\*    \*    \*

For these reasons, the evidence presented at trial is "sufficient to support" the jury's non-economic damages awards, thus erasing the "need to compare cases." Bell, 108 F.4th at 832. For Plaintiff's economic damages award, however, the award shall be remitted to $0 or a new trial limited to proving economic damages. Accordingly, Defendants' Rule 59(a) Motion is **CONDITIONALLY DENIED**.

## V.
## CONCLUSION

For the reasons set forth above, the Court rules as follows:

1.  Defendants' Rule 50(b) Motion is **DENIED**.
2.  Defendants' Rule 59(a) Motion is **CONDITIONALLY DENIED** based on Plaintiff accepting a remittitur to $0 in economic damages. The judgment otherwise remains intact. Plaintiff shall file a notice with the Court within 14 days stating whether he accepts or rejects the remittitur (and a proposed amended judgment if he accepts it). The Court will then enter an order granting a new trial on economic damages or enter a final, appealable order denying Defendants' Rule 59(a) Motion and an amended judgment.
3.  Plaintiff's Fees Motion is **DENIED as MOOT**.

**IT IS SO ORDERED**.