LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff, Steffon Barber

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEFFON BARBER, an individual,

Plaintiff,

v.

COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED,

Defendants.

Case No. 5:22-cv-00625-KK-DTBx

*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

[*Filed concurrently with supporting declarations and exhibits thereto]*

Date: October 15, 2026
Time: 9:30 a.m.

**<u>TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD</u>:**

**PLEASE TAKE NOTICE** that on October 15, 2026, at 9:30 a.m. or as soon thereafter as is practicable for this Honorable Court, Plaintiff will and hereby does move this Court for an Order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, Federal Rule of Civil Procedure 54(d), California Civil Code § 52 *et seq*. and Local Rule 54 in the enhanced lodestar amount of $8,270,034. This amount includes a 2.0 multiplier based on Plaintiff's success on his claim for violation of the Bane Act. In addition to requesting compensation for time spent in defending the criminal case, litigating the civil case and bringing it to trial, Plaintiff is also requesting compensation for his counsel's time necessarily spent in drafting this motion and the anticipated reply brief, as well as compensation for their time spent opposing Defendants' post-trial motions and any appeal, and appearing at any related hearings. This Motion is based on grounds that the Plaintiff was the prevailing party at trial on his 42 U.S.C. Section 1983 claim and on his Bane Act claim and is entitled to statutory attorneys' fees as a matter of law.

**<u>Statement of Meet and Confer Compliance</u>**: This motion is made following an initial conference of counsel on March 11, 2026, wherein no resolution can be reached. Attorneys Renee V. Masongsong and Eugene Ramirez attended the conference of counsel. Subsequently, Plaintiff's counsel discussed the refiled Fees Motion with Nathan Oyster, current counsel for Defendants.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, the pleadings on file herein, and such other oral and documentary evidence as may be presented at the time of the hearing.

Respectfully submitted,

DATED: September 14, 2026

LAW OFFICES OF DALE K. GALIPO

By *\/s/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff, Steffon Barber

DATED: September 14, 2026

IVIE MCNEILL WYATT
PURCELL & DIGGS

By: *s/ Rodney S. Diggs*
Rodney S. Diggs
Attorney for Plaintiff, Steffon Barber

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. PLAINTIFF IS ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW ..... 2

A. Legislative History of 42 U.S.C. § 1988. ..... 2

B. The Supreme Court's Standard in *Hensley v. Eckerhart*. ..... 3

C. Plaintiff is the Prevailing Party ..... 4

III. PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE ..... 6

A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment. ..... 7

B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment. ..... 9

C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases. ..... 10

IV. A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE ..... 16

V. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

Cases

*Amaral v. Cintas Corp.*
163 Cal. App. 4th 1157 (Cal. Ct. App. 2008) ........ 17

*Arizona v. ASARCO LLC*
773 F.3d 1050 (9th Cir. 2014) ........ 2

*Ballen v. City of Redmond*
466 F.3d 736 (9th Cir. 2006) ........ 6

*Beaty v. BET Holdings, Inc.*
222 F.3d 607 (9th Cir. 2000) ........ 7

*Bell v. Farmers Ins. Exch.*
2004 WL 1281818 (Cal. Ct. App. June 9, 2004) ........ 19

*Bender v. Cty. of Los Angeles*
217 Cal. App. 4th 968 (2013) ........ 18

*Blum v. Stenson*, 465 U.S. 886 (1984) ........ 5, 11, 12

*Bouman v. Block*
940 F.2d 1211 (9th Cir. 1991) ........ 3

*Brewster v. Dukakis*
786 F.2d 16 (1st Cir. 1986) ........ 4

*Camacho v. Bridgeport Financial, Inc.*
523 F.3d 973 (9th Cir. 2008) ........ 12

*Chavez v. City of Los Angeles*
47 Cal. 4th 970 (2010) ........ 5

*Chavez v. Netflix, Inc.*
162 Cal. App. 4th 43 (Cal. Ct. App. 2008) ........ 19

*City of Riverside v. Rivera*
477 U.S. 561 (1986) ........ 4, 11

*Clark v. City of Los Angeles*
803 F.2d 987 (9th Cir. 1986) ........ 14

*Colgan v. Leatherman Tool Grp., Inc.*
2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) ........ 19

*Collins v. Chandler Unified Sch. Dist.*
644 F.2d 759 (9th Cir. 1981) ........ 3

*Compare Burlington v. Dague*
505 U.S. 557 (1992) ........ 6

*Crommie v. PUC*
840 F. Supp. 719 (N.D. Cal. 1994) .......... 19

*Dang v. Cross*
422 F.3d 800 (9th Cir. 2005) .......... 11

*Davis v. City & County of San Francisco*
976 F.2d 1536 (9th Cir. 1992), .......... 4

*Dennis v. Chang*
611 F.2d 1302 (9th Cir. 1980) .......... 3

*Donastorg v. City of Ontario*
2021 WL 6103545 (C.D. Cal. Sept. 23, 2021) .......... 13

*Estate of Diaz v. City of Anaheim*
840 F.3d 592 (9th Cir. 2016) .......... 8

*Fair Housing of Marin v. Combs*
285 F.3d 899 (9th Cir. 2002) .......... 4

*Farrar v. Hobby*
506 U.S. 103 (1992) .......... 5

*Fish v. St. Cloud State Univ.*
295 F.3d 849 (8th Cir. 2002) .......... 11

*French v. City of Los Angeles*
2022 WL 2189649, (C.D. Cal. May 10, 2022) .......... 13

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*
2015 WL 13646906 (C.D. Cal. Sept. 14, 2015) .......... 11

*Gates v. Deukmjian*
987 F.2d 1392 (9th Cir. 1992); .......... 4, 11, 13

*Glass v. Pfeffer*
849 F.2d 1261 (10th Cir. 1988) .......... 14

*Graham v. Daimler Chrysler Corp.*
34 Cal. 4th 553 (2004) .......... 16

*Gregory v. Oliver*
2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) .......... 8

*Guam Society of Obstetricians & Gynecologists v. Ada*
100 F.3d 691 (9th Cir. 1996) .......... 3

*Hall v. Cole*
412 U.S. 1 (1973) .......... 3

*Heck v. Humphrey*
512 U.S. 477 (1994) .......... 15

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ....................3, 4, 5

*Hernandez v. George*
793 F.2d 264 (10th Cir. 1986)....................14

*Hernandez v. Kalinowski*
146 F.3d 196 (3rd Cir. 1998)....................14

*Hiken v. Dep't of Def.*
836 F.3d 1037(9th Cir. 2016)....................12

*Horsford v. Bd. Of Trustees of Cal. State Univ.*
132 Cal. App. 4th 359 (2005)....................8

*Horsford v. Bd. of Trustees of Cal. State Univ.*
132 Cal. App. 4th 359 (Cal. Ct. App. 2005) ....................17, 18

*Jordan v. Multnomah Cnty.*
815 F.2d 1258 (9th Cir. 1987)....................6

*Kerr v. Screen Extras Guild, Inc.*
526 F.2d 67 (9th Cir. 1975)....................6

*Ketchum v. Moses*
24 Cal.4th 1122 (2001)....................passim

*Leuzinger v. Cnty. of Lake*
2009 WL 839056 (N.D. Cal. Mar. 30, 2009)....................19

*Lund v. Affleck*
587 F.2d 75 (1st Cir.1978) ....................14

*Maldonado v. Club Fresh*
2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009)....................19

*Mangold v. PUC*
67 F.3d 1470 (9th Cir. 1995)....................19

*McCown v. City of Fontana*
565 F.3d 1097 (9th Cir. 2009)....................19

*McGrath v. County of Nevada*
67 F.3d 248 (9th Cir. 1995)....................6

*McKibben v. McMahon*
2019 WL 1109683 (C.D. Cal. Feb. 28, 2019)....................11

*Mendez v. County of San Bernardino*
540 F.3d 1109 (9th Cir. 2009)....................2

*Missouri v. Jenkins by Agyei*
491 U.S. 274 (1989) ....................13

*Moore v. James H. Matthews & Co.*
682 F.2d 830 (9th Cir. 1982)....................7

*Morales v. City of San Rafael*
96 F.3d 359 (9th Cir. 1996)....................20

*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008)....................7, 12

*National Ass'n of Corder v. Gates*
688 F. Supp. 1418 (C.D. Cal. 1988)....................4

*Odima v. Westin Tucson Hotel*
53 F.3d 1484 (9th Cir. 1995)....................3

*Orr v. Brame*
727 F. App'x 265 (9th Cir. 2018)....................19

*Parker v. Vulcan Materials Co. Long Term Disability Plan*
2012 WL 843623 (C.D. Cal. Feb. 16, 2012)....................13

*Peak-Las Positas Partners v. Bollag*
171 Cal. App. 4th 101 (2009)....................7

*Pellegrino v. Robert Half Int'l, Inc.*
182 Cal. App. 4th 278 (Cal. Ct. App. 2010) ....................19

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*
483 U.S. 711(1987) ....................13

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*
163 Cal. App. 4th 550 (Cal. Ct. App. 2008) ....................8

*Prison Legal News v. Schwarzenegger*
608 F.3d 446 (9th Cir. 2010)....................11

*Ramon v. County of Santa Clara*
173 Cal. App. 4th 915 (Cal. Ct. App. 2009) ....................7

*Roberts v. City of Honolulu*
938 F.3d 1020 (2019) ....................12

*Rodriguez v. Cty. of Los Angeles*
96 F. Supp. 3d 1012 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018) .17, 18

*Schwarz v. Secretary of Health & Human Servs.*
73 F.3d 895 (9th Cir. 1995)....................4

*Serrano v. Priest*
20 Cal. 3d 25(1977)....................18

*Serrano v. Unruh*
32 Cal. 3d 621 (1982)....................3, 10

*Sethy v. Alameda County Water Dist.*
602 F.2d 894 (9th Cir. 1979) ........ 2

*Texas Teachers v. Garland School Dist.*
489 U.S. 782 (1989) ........ 5

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996) ........ 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*
896 F.2d 403 (9th Cir. 1990) ........ 6, 11, 12

*Uphold our Heritage v. Town of Woodside*
2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) ........ 19

*Ustrak v. Fairman*
851 F.2d 983 (7th Cir. 1988) ........ 4

*Vo v. Las Virgenes Municipal Utility Dist.*
79 Cal. App. 4th 440 (2000) ........ 7

*W. Century 102, Ltd. v. City Of Inglewood*
2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) ........ 19

*Webb v. Bd. of Educ.*
471 U.S. 234 (1985) ........ 15

*Welch v. Metro. Life Ins. Co.*
480 F.3d 942 (9th Cir. 2007) ........ 11

*Wershba v. Apple Computer, Inc.*
91 Cal. App. 4th 224 (Cal. Ct. App. 2001) ........ 19

*Wiersta v. Heffernan*
789 F.2d 968 (1st Cir. 1986) ........ 8

*Wilson v. Union Pacific R. Co.*
56 F.3d 1226 (10th Cir. 1995) ........ 8

*Zeigler v. Cnty. of San Luis Obispo*
2023 WL 3432238 (C.D. Cal. Mar. 1, 2023) ........ 13

*Zelaya v. City of Los Angeles,*
2024 WL 3183882 ........ 19

Statutes

42 U.S.C. § 1988 ........ 3, 5, 6

42 U.S.C. 1983 ........ 4

California Civil Code § 52.1 ........ 5, 16

California Penal Code Section 245(c) ........ 9, 14, 15

Penal Code § 187(a) ........ 14

Other Authorities

1976 U.S. Code Cong. & Ad. News 5908. Section 1988 ........ 2

1976 U.S.C.C.A.N. 5908 ........ 11

Legislative History of Section 1988 S. Rep. No. 94-1011, 94th Cong. 2d Session ........ 2, 12

## I. INTRODUCTION

On February 9, 2026, the jury in this matter reached a verdict against Defendants Christopher Alfred and the County of San Bernardino by and through the San Bernardino County Sheriff's Department and in favor of Plaintiff Steffon Barber, on Plaintiff's claim for excessive force under 42 U.S.C. Section 1983 and the Fourth Amendment, and state law claims for negligence, battery and violation of the Bane Act. The jury awarded Plaintiff damages totaling $27,350,000. As the prevailing party, Plaintiff now requests attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1(i), § 52(a), in the amount of $4,135,017. Plaintiff also requests that this Court apply a 2.0 multiplier to the statutory attorneys' fees pursuant to California Civil Code § 52.1 and § 52(a), making this amount $8,270,034. The attorney fee award is justified by the significant verdict in Plaintiff's favor, Plaintiff's counsels' skill and experience in the civil rights field, the difficulties and complexities of this case, and the risk assumed by Plaintiff's counsel. Plaintiff's counsel litigated this case for over five years, with diligence and dedication to vindicating Mr. Barber's constitutional rights, ultimately culminating in a tremendously favorable result for Mr. Barber. Police misconduct lawsuits such as the instant matter advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. The instant case exemplifies that, but for competent willing counsel, police misconduct would have gone without consequences. For these reasons and those set forth in detail below and in the accompanying declarations, Plaintiff's counsels are highly deserving of the full amount of the attorneys' fees requested herein.

/ / /

/ / /

## II. PLAINTIFF IS ENTITLED TO FEES UNDER BOTH § 1983 AND CALIFORNIA LAW

### A. Legislative History of 42 U.S.C. § 1988.

The Civil Rights Attorney's Fees Awards Act of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage competent counsel to undertake and enforce civil rights cases by assuring them that if they were successful in vindicating federally protected rights, they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Section 1988 clearly provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."

Congress has recognized that "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." *Id.* at 5910. "[T]he citizen who must sue to enforce the law has little or no money with which to hire a lawyer," thus, "citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Id.* Given this purpose, courts have long established that a court's discretion to deny attorney's fees to a successful civil rights litigant "is very narrow and . . . fee awards should be the rule rather than the exception." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2009), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014); *see also Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) ("Congress plainly intended that successful Plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

The application for attorneys' fees "must be liberally construed to achieve Congress' purpose to encourage compliance with and enforcement of the civil rights laws." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citation omitted). Justice Brennan opined that "[n]ot to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose." *Hall v. Cole*, 412 U.S. 1, 13 (1973). The difficulty for citizens to stand up to the police is great, especially considering the disparity in funding. *See id.* "An award in these circumstances serves the purposes of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes." *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).

**B. The Supreme Court's Standard in *Hensley v. Eckerhart*.**

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. Courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (Plaintiff cannot be faulted for their thoroughness in pleading related claims).

A full fee is one that encourages the vindication of constitutional and statutory rights through recovery of all time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' so that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmjian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), modified on other grounds (9th Cir. 1993) 984 F.2d 345; *National Ass'n of Corder v. Gates*, 688 F. Supp. 1418, 1422 (C.D. Cal. 1988), aff'd in part and rev'd in part 947 F2d 374 (9th Cir. 1991); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002); *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

**C. Plaintiff is the Prevailing Party**

Plaintiff is the prevailing party in this litigation, and judgment was entered in Plaintiff's favor on his claims under the 42 U.S.C. Section 1983 and California Civil

Code § 52.1. The jury awarded Plaintiff a total of $27,350,000 in damages. Under 42 U.S.C. § 1988 and California Civil Code § 52.1(i), civil rights plaintiffs who have prevailed on some significant issue in their litigation are entitled to an award of fees. *See*, *e.g.*, *Hensley*, 461 U.S. at 433; *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citing *Hensley* and indicating that California law was "consistent" with it). Once the fee entitlement threshold has been crossed, the prevailing plaintiff's fee award is based upon the lodestar method. "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. The appropriate rate is the "market rate," which is demonstrated by the moving party submitting "satisfactory evidence in addition to the attorney's own affidavit that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Such a rate "is normally deemed to be reasonable, and is referred for convenience as the prevailing market rate." *Id*.

The Supreme Court in *Texas Teachers v. Garland School Dist.*, 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiff's prevailing party status. In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby,* 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for any amount modified the defendant's behavior in a way that benefits the plaintiff by forcing the defendant to pay an amount that would otherwise not be paid. In the foregoing respects, federal and California law are parallel. Ordinarily, where a case

has gone to trial and plaintiff has prevailed, the only significant distinction between the standards for an award of fees under federal or state law is the availability of a multiplier. *Compare Burlington v. Dague*, 505 U.S. 557, 567 (1992) (generally no fee enhancements), *with Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001) (fee enhancements available where the contingent fee market would support it).

## III. PLAINTIFF'S "LODESTAR" IS APPROPRIATE AND REASONABLE

"In the Ninth Circuit, the method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The lodestar method multiples the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate. *Id.* (quoting *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)) (quotations omitted). After computation, courts then assess whether it is necessary to adjust the lodestar figure on the basis of the twelve *Kerr* factors. *Id.* (citations omitted). These twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). "[T]here is a strong presumption" that the lodestar calculation "is a reasonable fee." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 405 (9th Cir. 1990) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)).

/ / /

/ / /

### A. Counsels' Hours Are Reasonable given the Time and Labor Required and Preclusion from Other Employment.

The total number of hours for which Plaintiff's counsel request compensation, to be reflected in their declarations and billing logs, is reasonable. Under California law, every hour reasonably spent on the case is compensable. "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) (emphasis in original); *see also Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000) (Attorneys who take FEHA cases "ordinarily . . . can anticipate receiving full compensation for every hour spent litigating a claim." (internal quotations omitted)). Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982) (internal quotations omitted); *see also Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 925 (Cal. Ct. App. 2009).

In making that determination, courts must look at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics, and the trial itself . . . ." *Vo v. Las Virgenes Municipal Utility Dist.*, 79 Cal. App. 4th 440, 447 (2000); *see also Peak-Las Positas Partners v. Bollag*, 171 Cal. App. 4th 101, 114 (2009) (fees reasonable because of complexity of issues, results obtained, and defendants' aggressive litigation). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "inflating their fees," as the payoff is too uncertain. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to *win* the case: "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he

won, and might not have, had he been more of a slacker." *Id.*

Counsels' sworn declarations and attached time records filed concurrently herewith document the attorney and legal assistant hours reasonably spent in the successful prosecution of this action. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Bd. Of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."). Plaintiff's attorneys also have exercised billing judgment in several ways. Attorney hours that were duplicative, unnecessary, or administrative in nature were either not entered by attorneys during the initial timekeeping process or were reduced during the review of the billing records done for this Motion.

The burden shifts to Defendants to prove that any specific time is unreasonable and "to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Assn.*, 163 Cal. App. 4th 550, 564 (Cal. Ct. App. 2008). Defendants cannot meet that burden. To the contrary, the hours for which Plaintiff's counsel request compensation were reasonably necessary for the prosecution of Plaintiff's claims for approximately five years. Plaintiff's counsel had an obligation to be diligent and thorough. Excessive force cases are extremely difficult given the inherent bias in favor of the police, especially in a case such as this where there was damaging evidence. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Defendants' position was that the case had little value, as was reflected in their arguments to the jury and their settlement posture. Thus, Plaintiff's counsel correctly anticipated that the case would have to be tried and took the steps to do so

successfully. That came at a heavy burden and with great risk. First, when Plaintiff's counsel Rodney Diggs' office agreed to represent Mr. Barber in this civil matter, Plaintiff Mr. Barber was facing criminal charges, including a charge for assault with a deadly weapon against a peace officer under California Penal Code Section 245(c). If Mr. Barber had been convicted under that charge, it is possible that his civil case may have been precluded. Second, as to the civil case, Plaintiff bore the burden of proof and persuasion. This required obtaining and meticulously analyzing all the relevant documents and testimony, and extensive preparation for trial. Third, Plaintiff's counsel retained a large time and economic commitment for this case. Mr. Galipo compensated the attorneys and staff at the Law Offices of Dale K. Galipo throughout the time that Mr. Galipo's office litigated this case, and incurred costs, including expert retention fees, without any interim payments from the Plaintiff or guarantee of success at trial. Plaintiff's counsels' close examination, organization, and analysis of the evidence proved worthwhile for the successful result for the Plaintiff.

**B. Skill Necessary to Perform Proper Legal Services given the Complexity and Undesirability of the Case, and Risk of Non-Payment.**

In general, successfully litigating police misconduct cases requires extensive experience and skill and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police. The favorable trial result in this case was the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting this case at trial. This is especially true in light of the particular difficulty presented in this case, including allegations that Mr. Barber attempted to reverse his vehicle toward Deputy Alfred. Despite the negative evidence, Plaintiff's counsel achieved a successful result.

At Plaintiff's counsel's first review of this case, they were aware of the difficulty, risk, and expense in taking this case on a contingency basis. Nevertheless, Mr. Diggs, and later, Mr. Galipo, took on this case. Despite the difficult evidence Plaintiff's counsel ultimately won a favorable verdict for Mr. Barber—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation. To succeed, Plaintiff's counsel had to conduct depositions, review numerous discovery materials, retain, pay and consult with multiple experts, and spend almost two weeks away from the office at trial. Defendants vigorously defended this case. From the outset, Defendants contended that the shooting was reasonable, and that Mr. Barber posed an immediate threat to Deputy Alfred when he reversed his vehicle. Defendants' trial arguments showed that they believed they should receive a defense verdict. Thus, Plaintiff's counsel had to litigate well enough to win. "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Serrano v. Unruh*, 32 Cal. 3d 621, 633 (1982).

### C. Counsel's Hourly Rates Are Reasonable Considering the Customary Fee, Contingency Basis, Experience and Reputation, and Awards in Similar Cases.

As set forth in the accompanying declarations filed concurrently herewith, Plaintiff's counsel's requested hourly rates ($1,500 for Mr. Galipo; $1,250 for Mr. Diggs; $1,250 for Mr. Bryant; $900 for Ms. Masongsong, $650 for Mr. Tanter; $900 for Mr. Duckett) are reasonable. *See* Declaration of Carol A. Sobel filed concurrently herewith (supporting the requested hourly rates for Mr. Galipo and Ms. Masongsong).

The "prevailing market rates in the relevant community," in the forum where the district court sits, govern the reasonable hourly rate for computing the lodestar amount. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Blum*, 465 U.S. at 895); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.

2010). Within this community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007). Within the relevant community, the Court should take into account the "experience, skill and reputation of the [requesting] attorney." *Dang*, 422 F.3d at 813; *see Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

"Affidavits of the Plaintiff's attorney . . . and rate determinations in other cases, particularly those setting a rate for the Plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. "[C]ourts can also use survey data to evaluate the reasonableness of attorneys' rates." *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. CV 09-8943 MMM (SHX), 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14, 2015) (citing *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002)); *McKibben v. McMahon*, 2019 WL 1109683, at *14 (C.D. Cal. Feb. 28, 2019)). Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *Gates*, 987 F.2d at 1405 (9th Cir. 1992). Congress expressly recognized that fees in federal civil rights cases should be comparable to those in complex federal civil litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986) ("Congress made clear that it 'intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation.'" (citing S. Rep. No. 94-1011, at 6 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913).

In determining what constitutes a reasonable fee in civil rights litigation, courts should consider the hourly rates that similarly skilled and experienced attorneys in private practice charge their paying clients. *Blum v. Stevenson*, 465 U.S. 886, 895 (1984); *see* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th

Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908. Market rates may be established by declarations regarding prevailing fees and fee awards in other cases. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In this instance, counsel's requested hourly rates are fully supported by the declarations of Plaintiff's counsels, as well as the supporting declarations of knowledgeable civil rights law practitioner Carol Sobel. *See also LA International Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 624-26 (9th Cir. 2026) (holding that small firms can be awarded big law rates in a motion for attorney fees, and the district court abused its discretion in setting rates based on the attorney's prior fee award, with a slight adjustment for complexity and inflation, rather than calculating the fee based on the prevailing market rate)

Moreover, the Ninth Circuit has repeatedly held that "in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008); *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1045 (9th Cir. 2016) (reversing because "the court simply re-invoked the 2015 rates and added a $30 enhancement, without discussion of why the 2015 rates are an appropriate anchor or why an increase in $30 is reasonable"); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate . . . ."); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024-25 (2019) ("Examining prior fee awards to Holcomb and Beck in the district was not an acceptable substitute for considering the declarations submitted by Holcomb, and explaining why those declarations did or did not establish the prevailing hourly rate in the district."). Courts also appropriately recognize that rates, and inflation, increase over time. *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07–1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012) (approving as reasonable an approximate 10 percent increase between 2011 rates and 2012 rates and because "[i]t is common practice for

attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice”).

Additionally, the Supreme Court in *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), recognized that compensation received several years after an attorney renders his or her services “is not equivalent to the same dollar amount received promptly as the legal services are performed, as would normally be the case with private billings.” *Id.* at 283. Accordingly, “an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [§ 1988].” *Id.* at 284; *see also Pennsylvania v. Delaware Valley Citizens’ Counsel for Clean Air*, 483 U.S. 711, 716 (1987) (“In seeing fees for prevailing counsel, the courts have regularly recognized delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.”).

Thus, the Ninth Circuit “recognize[s] that district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use of funds.” *Gates*, 987 F.2d at 1406. The prevailing practice is to award the current requested rate for all work performed. *See, e.g.*, *Zeigler v. Cnty. of San Luis Obispo*, No. CV179295MWFAFMX, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (awarding requested rates commensurate with current practice experience for work that commenced years prior); *French v. City of Los Angeles*, No. EDCV2000416JGBSPX, 2022 WL 2189649, at *1, 17-19 (C.D. Cal. May 10, 2022) (same); *Donastorg v. City of Ontario*, No. EDCV18992JGBSPX, 2021 WL 6103545, at *1, 8-9 (C.D. Cal. Sept. 23, 2021) (same).

**a. Plaintiff’s Counsels Are Entitled to Fees and Costs for Litigating the Instant Motion and Defendants’ Post-Trial Motions**

In addition to the attorneys’ fees derived from legal work performed in

litigating this case, Plaintiff's counsels are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested and also on all work in opposing Defendants' post-trial motions. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."); *see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer*, 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Here, Plaintiff successfully opposed Defendants' post-trial motions pursuant to FRCP, Rules 50(b) and 59, including reaching a settlement on the amount of economic damages following this Court's ruling on Defendants' post-trial motions. [*See* Dkt. 232, 256].

**b. Plaintiff's Counsels Are Entitled to Fees for Time Spent on the Related Criminal Defense**

Plaintiff's counsels are also entitled to recover compensation for time necessarily spent handling the criminal proceedings arising from the same incident at the heart of this civil rights action. When counsel for the Ivie McNeil Wyatt Purcell & Diggs firm agreed to represent Mr. Barber in this matter, Mr. Barber was simultaneously facing serious criminal charges arising directly from the April 27, 2021 shooting—including a charge for attempted murder on a peace officer under Penal Code § 187(a) and assault with a deadly weapon on a peace officer under Penal Code § 245(c). A conviction under PC § 245(c) would have required a finding that Deputy Alfred was lawfully performing his duties at the time of the shooting—an element potentially incompatible with Plaintiff's civil excessive force claim. Under *Heck v. Humphrey*, 512 U.S. 477 (1994) a civil § 1983 claim must be

dismissed if success on that claim would necessarily imply the invalidity of the plaintiff's criminal conviction. Had Mr. Barber been convicted under PC § 245(c), Plaintiff's § 1983 claim potentially could have been compromised or precluded.

Faced with this possibility, counsel's work in the criminal proceedings was not merely ancillary—it was a necessary prerequisite to the viability of this civil rights action. Indeed, the civil case was stayed from July 2022 through December 2024, pending resolution of the criminal matter, because the factual and legal issues in both proceedings arose from the same set of facts. The criminal proceedings did not run parallel to the civil case; they governed whether the civil case could proceed at all. Mr. Barber was ultimately acquitted on both the attempted murder charge and the assault on a peace officer charge (PC § 245(c)), and was convicted only of assault with a deadly weapon under PC § 245(a)(1)—a conviction that contains no element relating to Deputy Alfred's conduct and therefore does not implicate *Heck*, with no finding explicitly or implicitly that the officer's use of deadly force was reasonable. *See* Plaintiff's opposition to Defendants' motion for summary judgment at Dkt. No. 101, pp. 20-22 of 27 and this Court's Order Denying Defendants' Motion for Summary Judgment at Dkt. No. 132, pp. 9-12 of 24. This outcome, secured through diligent criminal defense work, preserved the foundation on which Plaintiff's civil rights claims were built and ultimately led to the $27,350,000 jury verdict.

While § 1988 does not automatically authorize recovery for work performed in collateral proceedings, such work is compensable where it is "useful and of a type ordinarily necessary" to advance or preserve the civil rights litigation. *Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985). That standard is satisfied where the criminal and civil matters arise from a "common core of facts," *Hensley*, 461 U.S. at 435, and the work performed in the criminal case is indispensable to the development of the factual record underlying the civil claims. In such circumstances, the criminal defense functions as a direct substitute for discovery, investigation, and evidentiary

preparation that would otherwise be required in the § 1983 action. *See, e.g.*, *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). The time spent defending Mr. Barber in the criminal case was, in practical and legal effect, time spent safeguarding and developing the civil case. Excluding those hours would undercompensate counsel for work that was essential to the prosecution and ultimate success of Plaintiff's § 1983 claim, contrary to the purpose of § 1988 to ensure effective enforcement of civil rights.

## IV A 2.0 LODESTAR ENHANCEMENT IS APPROPRIATE

The application of a 2.0 lodestar enhancement is justified in this case by the great risk counsel took that after hundreds of hours and many thousands of dollars, they would end up with no compensation for their work. Such risk commands a significant multiplier. In this case, Plaintiff prevailed on his Bane Act claim, which supports the granting of a multiplier under state law. California Civil Code section 52(a) provides for damages up to three times actual damages on the violations of certain civil code sections. The Bane Act refers to section 52. *See* Civ. Code, § 52.1(b) (indicating that damages may be recovered under both subsections (a) and (b) of Section 52). "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis . . . [.]" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 579 (2004). "[An enhancement] is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal.4th at 1138.

Risk enhancements reflect the attorney's risk of receiving no payment at all.

*See Graham*, 34 Cal. 4th at 583-84. That financial risk commands a premium in the legal marketplace for attorneys whose compensation is wholly dependent upon achieving success for their clients. *See Ketchum*, 24 Cal. 4th at 1132, 1138; *see also Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394-95 (Cal. Ct. App. 2005). Indeed, the risk of litigating the case and receiving no compensation if the case is lost is often the most significant lodestar enhancement factor. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (Cal. Ct. App. 2008). Unless risk is compensated, the purpose of the statute will not be fulfilled. *Ketchum*, 24 Cal. 4th at 1132-33 ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." Here, Plaintiff's requested multiplier is justified based on the great risk Plaintiff's counsel assumed in litigating this case on a contingency basis, the difficulty of the case, and based on counsels' demonstrated skill. Counsel invested several hours of work without any interim payments from Plaintiff and also risked costs paid out of pocket since the inception of this case in 2021. Many more hours and expenses promise to be put at risk based on an anticipated appeal.

In *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018), Judge Conseulo B. Marshall applied a 2.0 multiplier to the attorneys' fees, resulting in over $5 million in attorneys' fees payable to the Plaintiff's attorneys. The Ninth Circuit affirmed Judge Marshall's decision, approving that her decision was "based . . . on the substantial financial risk that appellees' counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing prisoners with the Men's Central Jail's highest security classifications, in an excessive force action against high-ranking jail officials, all the while facing "aggressive opposition" from appellants; and the opportunity costs the years-long litigation in this case required. The court

expressly noted that it had considered the burden to California's taxpayers that the fee award would represent, and found that the award was justified given the factors described above and the importance of civil rights suits in protecting the public against abuses at the hands of "large or politically powerful defendants." *Rodriguez*, 96 F. Supp. at 1026. Refusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public. *Id.* (citing *Horsford*, 132 Cal. App. 4th at 399-401); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977) ("The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.").

Additionally, in *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 988 (2013), following a jury verdict for plaintiff Bender, including on the Bane Act claim, the Superior Court applied a 1.2 multiplier and awarded $989,258 in attorneys' fees. *Id.* at 976. Affirming the multiplier and the attorney fee award, the Court of appeals explained, that the case required both:

> Proof both of excessive force claims and of liability on a statutory cause of action authorizing recovery of legal fees . . . , [that] counsel put both their time and their purse at risk, investing capital to pay trial expenses; that the time invested limited trial counsel's availability for other cases; that counsel achieved a trial victory "against the united testimony of three deputy sheriffs, and over a vigorous defense"; and that their prosecution of the case was "tenacious, skillful and effective." The court acknowledged payment of the legal fees by the taxpayers counted against a high multiplier, but "every excessive force case in which a plaintiff prevails encourages better supervision within our police agencies and thus reinforces the constitutional protections to which citizens are entitled.

*Bender*, at 988.

In light of the special difficulties presented in this case, the hard fought litigation, and the public interest served by obtaining a verdict that brought justice to Plaintiff for the Defendants' behavior, a multiplier of 2.0 is appropriate here. Many cases have awarded multipliers of 1.5 to 2.0 in civil rights and public interest

litigation. *See*, *e.g.*, *Garcia v. City of Tustin* (order granting 1.6 multiplier attached to Masongsong Decl. as "Ex. 6"); *L.D. v. City of Los Angeles* (order granting 1.5 multiplier attached as "Ex. 2" to Masongsong Decl.); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (2.5 multiplier); *Crommie v. PUC*, 840 F. Supp. 719, 726 (N.D. Cal. 1994) (2.0 multiplier regarding age discrimination actions), *aff'd sub nom Mangold v. PUC*, 67 F.3d 1470 (9th Cir. 1995); *Uphold our Heritage v. Town of Woodside*, No. A120749, 2008 WL 4868816 (Cal. Ct. App. Nov. 12, 2008) (multiplier of 2.0 under § 1021.5); *Leuzinger v. Cnty. of Lake*, No. C 06-00398-SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009) (multiplier of 2.0 in FEHA case); *Colgan v. Leatherman Tool Grp., Inc.*, No. B196650, 2007 WL 4532916 (Cal. Ct. App. Dec. 27, 2007) (multipliers of 2.0 and 1.5 for trial and appellate work in consumer class action); *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) (multiplier of 2.0 in anti-SLAPP motion); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (Cal. Ct. App. 2001) (multiplier of 1.42, recognizing multipliers as high as 4.0); *Bell v. Farmers Ins. Exch.*, No. A101246, 2004 WL 1281818 (Cal. Ct. App. June 9, 2004) (1.833 multiplier in overtime class action); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278 (Cal. Ct. App. 2010) (multiplier of 1.75 in wage and hour case); *W. Century 102, Ltd. v. City Of Inglewood*, No. B164350, 2004 WL 886384 (Cal. Ct. App. Apr. 27, 2004) (multiplier of 1.75 in inverse condemnation case); *Maldonado v. Club Fresh*, No. C055954, 2009 WL 3246450 (Cal. Ct. App. Oct. 9, 2009) (1.5 multiplier in disability discrimination case); *Zelaya v. City of Los Angeles*, No. 2:20-CV-08382-ODW (MAAX), 2024 WL 3183882 at *12 (finding that an enhanced award would be justified, although counsel did not seek a fee multiplier in that case).

It is well-established that excessive force cases inure "a public benefit of deterring unconstitutional conduct by law enforcement officials." *Orr v. Brame*, 727 F. App'x 265, 269 (9th Cir. 2018) (holding that the district court abused its discretion where it reduced an attorney fee award and disregarded a long line of case

law that fee awards have deterrent effects); citing *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009); *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996). Nevertheless, these cases are extremely difficult to win and require plaintiff's lawyers to take significant risks. In the legal marketplace, law firms simply do not commit thousands of hours of uncompensated time to such a highly risky case without the expectation that, if they are successful, they will be compensated for their risk with a fee that is significantly greater than if they had been paid hourly rates, win or lose. Thus, a multiplier is appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorneys' fees in the amount of $8,270,034. Plaintiff also requests that the Court award attorneys' fees for any additional work performed on this case, including preparing the anticipated reply brief to the instant motion and attending any hearings on the post-trial motions. The table below summarizes the fees requested.

| Attorney/Biller | Yrs. Practice | Rate | Hours | Total |
|---|---|---|---|---|
| Dale K. Galipo | 36 | $1,500 | 421.3 | $631,950 |
| Renee V. Masongsong | 15 | $900 | 324.8 | $292,320 |
| Benjamine Levine | 5 | $600 | 11.8 | $7,080 |
| Darci Gilbert | Legal Assist. | $250 | 48.3 | $12,075 |
| John Fattahi | 20 | $1,115 | 22.8 | $25,422 |
| Rodney S. Diggs | 17 | $1,250 | 1,468 | $1,835,000 |
| James Bryant | 19 | $1,250 | 591.6 | $739,500 |
| Ryan Duckett | 14 | $900 | 214.80 | $193,320 |
| Brandon R. Tanter | 3 | $650 | 359 | $233,350 |
| Alice D. Williams | Paralegal | $450 | 300 | $135,000 |
| Le Chaune Metoyer | Legal Assist. | $150 | 119.50 | $17,925 |

| | | | | |
|---|---|---|---|---|
| Alexandria Feather | Legal Assist. | $150 | 80.50 | $12,075 |
| **Subtotal**: | | | | $4,135,017 |
| **Total with 2.0 Multiplier:** | | | | $8,270,034 |

DATED: September 14, 2026

LAW OFFICES OF DALE K. GALIPO

By * /s/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff, Steffon Barber

DATED: September 14, 2026

IVIE MCNEILL WYATT
PURCELL & DIGGS

By: *s/ Rodney S. Diggs*
Rodney S. Diggs
Attorney for Plaintiff, Steffon Barber

**L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Steffon Barber, certifies that this brief contains 6,919 words (excluding the caption page, signature blocks, and certificate of compliance), which complies with the word limit of L.R. 11-6.2.

Dated: September 14, 2026

LAW OFFICES OF DALE K. GALIPO

By: *\/s\/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiff