**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Blvd., Ste. 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
**IVIE MCNEILL WYATT PURCELL & DIGGS**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Tel: (213) 489-0028
Fax: (213) 489-0552

Attorneys for Plaintiff, STEFFON BARBER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO and CHRISTOPHER ALFRED,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTB<br><br>Assigned to:<br>District Judge Kenly Kiya Kato<br>Magistrate Judge David T. Bristow<br><br>**DECLARATION OF DALE K. GALIPO IN SUPPORT OF PLAINTIFF'S MOTION FOR STATUTORY ATTORNEY'S FEES**<br><br>[*Notice of Motion and Motion; Declarations and Exhibits thereto filed concurrently herewith*] |

# DECLARATION OF DALE K. GALIPO

I, Dale K. Galipo, declare as follows:

1. I am an attorney duly admitted to practice before this Honorable Court and am one of the attorneys of record and was lead trial counsel in the instant matter. I have personal knowledge of the facts set forth herein, and could and would testify competently thereto if called upon to do so. I make this declaration in support of Plaintiff's Motion for Attorneys' Fees.

2. I have maintained contemporaneous time records reflecting the work, activity and time spent on this case. I have exercised billing judgment, and I have reduced or written off unproductive time or other time that would not ordinarily be charged to a fee-paying client. To date, I have spent 420.3 hours on this matter. A copy of my time records for this case is attached hereto as **"Exhibit 1."**

3. I graduated with a B.B.A. from the University of Michigan in Ann Arbor, Michigan in 1981. I attended law school at UCLA from 1981 to 1984.

4. Since 1991, I have managed my own law firm originally specializing in personal injury and criminal defense. Due to my experience in personal injury law and criminal defense law, and my significant trial experience, prosecuting civil rights actions involving police misconduct causing serious injury or death was a natural transition for me. I have specialized in handling police misconduct civil rights litigation for over twenty-four years, and I take on very difficult liability cases that require extensive expertise in this area of law.

5. I have obtained numerous recognitions for my work in civil rights, including receiving the Defender of the Constitution Award in 2012 from the Inland Empire Chamber of the Federal Bar Association. Other recipients of the award include Judge Virginia A. Phillips and Judge Terry J. Hatter.

6. I have also been elected as a "Super Lawyer" every year since the year 2013.

7. In 2018, I was contacted by associate professor Dennis Cota, who has become a Magistrate Judge in Redlands, California, and was honored to have the Top Trial Advocacy Award for the Martin Luther King, Jr. Moot Court Competition to be given in my name.

8. In 2019, I was selected to the Inner Circle of Advocates, considered to represent the top one hundred civil plaintiff's attorneys in the United States. I am currently an active member of the Inner Circle. There are only approximately fourteen active members in the entire state of California, including such prominent plaintiff attorneys as Bruce Broillet, Brown Greene, Lawrence Grassini, and Brian Panish.

9. Also in 2019, I was elected as a Fellow of the American College of Trial Lawyers, which is recognized as the preeminent organization of trial lawyers in North America, dedicated to maintaining and improving the standards of trial practice, professionalism, ethics, and the administration of justice.

10. I was chosen by UCLA School of Law to give the Irving H. Green Memorial Lecture to students and faculty in 2019. Irving H. Green was a much-honored trial attorney known for representing the underdog in courts across the county. In honor of his memory, the Green family created a program designed to bring outstanding trial lawyers to inspire law students and engage in an exchange with them. Past attorneys who have been honored with this recognition include Johnnie Cochran, Jr. Attached hereto as **"Exhibit 2"** is a true and correct copy of the program for the 2019 Irving H. Green Memorial Lecture.

11. In 2020, I received the "Trial Lawyer of the Year" award from the Consumer Attorneys Association of Los Angeles ("CAALA"). Prior to being awarded CAALA Trial Lawyer of the Year 2020, I was recognized by CAALA in 2018 and 2019 for my trial successes and nominated for Trial Lawyer of the Year in each of those years in which I finished as runner up.

12. Also in 2020, I received the "2020 Consumer Attorney of the Year" award from the Consumer Attorneys of California ("CAOC").

13. CAALA selected me to speak on the Masters' Panel in August 2019, in Las Vegas, in recognition of my skill and accomplishments as a trial attorney. There were approximately eight hundred attorneys present for the presentation, which took place in Las Vegas, Nevada at the CAALA annual convention. I also recently taught at the CAALA 2023 Plaintiffs Trial Academy from June 5 to June 7, 2023, and I spoke on jury selection at the CAALA conference in Las Vegas on September 1, 2023. I recently spoke at the CAALA Conference in Las Vegas in late August 2025 on the topic of public entity litigation.

14. I have been invited to speak to the law students at UCLA and UC Irvine on several occasions, and I have also spoken to students at Cal. State Dominguez. I have been asked to speak at seminars and webinars on several occasions on various topics of civil rights litigation. I am routinely called for consultation by various civil rights attorneys throughout the state and country with regard to my opinions and input on civil rights cases.

15. Over the last several years I have been teaching a course for twelve hours over two days to a group of civil rights attorneys regarding litigating a civil rights case through trial.

16. I have had approximately twenty published opinions in civil rights cases that I have worked on, and I have argued numerous appellate cases before the Ninth Circuit Court of Appeals.

17. I have tried well in excess of one hundred civil cases through verdict. I have won the majority of my civil jury trials, and I have had numerous seven and eight-figure verdicts in civil rights cases. I am listing here some of my most notable trial successes in civil rights cases between approximately 2011 and 2015, and I am separately listing below the jury verdicts and trial successes I have more recently received within approximately the last nine years. Most of my cases

settle, and these jury verdicts are on my most difficult cases, where there was little to no offer. Some of my jury verdicts and trial successes between approximately 2011 and 2015 include:

- $1.1 million jury verdict in *Gilbert v. City of Los Angeles* (police shooting) (January 2011)
- $2 million jury verdict in *Nash v. City of San Bernardino* (excessive force) (April 2011)
- $4.5 million jury verdict in *Cotton v. City of Eureka* (excessive force) (September 2011)
- $3.2 million jury verdict in *P.C. v. City of Los Angeles* (excessive force) (April 2012)
- $5.7 million jury verdict in *Contreras v. City of Los Angeles* (police shooting) (2011)
- $6.5 million jury verdict in *R.S. v. City of Long Beach* (police shooting) (April 2013)
- $8.825 million jury verdict in *Simplis v. Culver City* (police shooting) (May 2013)
- $1 million jury verdict in *Salinas v. City of San Jose* police excessive force—taser) (June 2013)
- $2 million jury verdict in *Gutierrez v. County of Los Angeles* (police shooting) (October 2013)
- $7.81 million jury verdict in *Howard v. County of Riverside* (police shooting resulting in paralysis) (June 2014)
- $1 million jury verdict in *Munoz v. County of Riverside* (police shooting) (August 2014)
- $2.925 million jury verdict in *Ramirez v. City of Oxnard* (excessive force and denial of medical care) (June 2015)

- $4.9 million settlement during trial in *Thomas v. City of Fullerton* (excessive force) (October 2015)

18. In addition to the above-listed verdicts, in the approximate last nine years, I have prevailed in approximately thirty-eight jury trials. Thirty-six of the jury trials were civil rights cases. Two of the trials were criminal cases in which there was a related civil rights case where the plaintiff was shot by the police and then charged with various crimes, including assault with a deadly weapon and resisting by force. The majority of my cases settle, and it should be noted that in the majority of my trial success, there was little to no offer of settlement prior to trial. In other words, the following jury verdicts were achieved in some of my most difficult cases. My specific trial successes in approximately the last nine years include:

- $3.05 million jury verdict in *Amaya v. County of Los Angeles* (police shooting, no offer) (May 2017)
- $2.5 million jury verdict in *Borges v Humboldt County* (denial of medical care, no offer) (August 2017)
- $6.5 million jury verdict in *Rose v. County of Sacramento* (police shooting, no offer) (September 2017)
- $3.5 million jury verdict in *Herrera v. City of Los Angeles* (police shooting, no offer) (October 2017)
- $200,000 ($1.755 million settlement with statutory fees) jury verdict after re-trial in *Huizar v. City of Anaheim* (police shooting, no offer) (October 2017)
- $5.5 million jury verdict in *Mears v. City of Los Angeles* (excessive force/taser-related death, no offer) (October 2017)
- $350,000 settlement during trial in *Lopez v. City of Inglewood* (police excessive force) (January 2018)

- Criminal case of *People v. Fajardo*, charged with five (5) felony counts and received a hung jury (6-6) on all felony counts. All felony counts were thereafter dismissed. (January/February 2018)
- $1.45 million settlement following jury verdict on liability in *Hernandez v. City of Los Angeles* (excessive force/restraint asphyxiation, no offer) (February 2018)
- $33.5 million jury verdict in *Archibald v. County of San Bernardino* (police shooting, no offer) (March 2018)
- Criminal case of *People v. Juarez* (eighteen (18) acquittals, convicted on only one felony and one misdemeanor) (January/February 2019)
- $4.75 million verdict in the *Estate of Casimero Casillas v. City of Fresno* (police shooting, offer of $50,000) (March 2019)
- $3.4 million jury verdict in *Craig v. County of Orange* (police shooting, no offer) (April 2019)
- $3 million jury verdict in *Schroeder v. City of Rialto* (excessive force, offer of $50,000) (June 2019)
- $13.2 million jury verdict in *Valenzuela v. City of Anaheim* (excessive force/asphyxia) (December 2019)
- $4.5 million jury verdict in *L.D. v. City of Los Angeles* (excessive force/police shooting; no offer) (January 2020)
- $500,000 jury verdict in *Donastorg v. City of Ontario* (excessive force) (June 2021)
- $1.77 jury verdict in *Bowles v. City of San Jose* (police shooting) (July 2021)
- $4.5 million settlement in *Villanueva v. State of California* (police shooting) (October 2021)

- $17,002,00 jury verdict in *French v. City of Los Angeles* (police shooting) (October 2021)
- $500,000 jury verdict in *Gomez v. City of Santa Clara* (police shooting) (December 2021)
- $4.5 million jury verdict in *Ramos v. County of San Bernardino* (police shooting) (April 2022)
- $2,165,000 jury verdict in *V.V. v. City of Los Angeles* (police shooting) (July 2022)
- $1 million jury verdict (reduced by contributory fault) in *Weick v. County of San Diego* (police shooting) (November 2022)
- $1,165,000 settlement during trial in *Cooke v. City of Los Angeles* (police shooting) (November 2022)
- $7.5 million (reduced by contributory fault) in *Alves v. County of San Bernardino* (restraint death) (April 2023)
- $10 million jury verdict in *Najera v. County of Riverside* (police shooting) (April 2023)
- $23.8 million jury verdict in *Murillo v. City of Los Angeles* (police shooting) (August 2023)
- $13.5 million jury verdict in *Zelaya v. City of Los Angeles* (restraint death) (October 2023)
- $1.5 million jury verdict in *Hurtado v. State of California* ((police shooting) October 2024)
- $30.5 million jury verdict in *Lewis v. Kern County* (police shooting) (March 2025)
- $5 million jury verdict in *Stephenson v. State of California* (restraint death) (September 2025)
- $6.5 million jury verdict in *Gomez v. Las Vegas Metropolitan Police Department, et al.* (police shooting) (November 2025)

- $27,350,000 jury verdict in *Barber v. County of San Bernardino, et al.* (police shooting) (February 2026)
- $4.2 million jury verdict in *Quan v. County of Los Angeles, et al.* (police shooting) (February 2026)
- $3 million jury verdict in *Petit v. City of Los Angeles, et al.* (police shooting) (March 2026)
- $17 million jury verdict in *Garcia v. City of Tustin* (police shooting) (April 2026)
- $3.62 million jury verdict in *Gonzales v. City of Hemet* (police shooting) (May 2026)

19. I tried the case *L.D. v. City of Los Angeles*, referenced above, in federal court in January 2020 in front of the Honorable Philip Gutierrez. In that case, there was no offer of settlement. Plaintiffs contended that the individual defendant LAPD SWAT officers used beanbag shotguns, hot gas, and Tasers against the decedent, who was inside his own bedroom and committing no crime, eventually forcing the decedent out of the house, where he was fatally shot by a SWAT officer. The defense argued that the decedent refused to drop a pair of scissors and that the decedent injured an officer with the scissors immediately prior to the shooting. The jury awarded Plaintiffs a verdict of $4.5 million, and Judge Gutierrez awarded me an hourly rate of $1,100 in ruling on the attorney fee motion brought post-trial pursuant to 42 U.S.C. § 1988. A true and correct copy of Judge Gutierrez's April 23, 2020, Order awarding me $1,100 per hour is attached hereto as **"Exhibit 3."**

20. I tried the case *Donastorg v. City of Ontario*, also referenced above, in federal court in June 2021 before the Honorable Jesus G. Bernal. In that case, Plaintiff contended that City of Ontario police officers deployed Tasers, beanbag shotguns, hot gas, and a K9 against the Plaintiff who was unarmed inside his vehicle, boxed in between patrol cars and a bearcat. The defense argued that

Plaintiff refused to comply with numerous commands, attempted to maneuver his vehicle around the patrol cars, striking several cars in the process, and grabbed the K9 and attempted to choke the K9 while using the dog as a shield. The jury awarded the plaintiff a verdict of $500,000. In ruling on Plaintiff's post-trial motion for attorney's fees brought pursuant to 42 U.S.C. § 1988, Judge Bernal awarded me $1,100 per hour. A true and correct copy of Judge Bernal's September 23, 2021, Order awarding me $1,100 is attached hereto as "**Exhibit 4**."

21. I tried the *French v. City of Los Angeles* case, also referenced above, in October 2021 in federal court before the Honorable Jesus G. Bernal. This was a legally complex case in which the City of Los Angeles contended that the shooting officer was not acting under color of law or in the course and scope of his employment with the City at the time of the shooting. The City of Los Angeles made no settlement offer and filed numerous dispositive motions in an attempt to preclude plaintiffs from having their day in court. The plaintiffs prevailed and obtained a $17,002,000 jury verdict award. In ruling on plaintiffs' post-trial motion for attorney's fees brought pursuant to 42 U.S.C. § 1988, Judge Bernal awarded me $1,100 per hour and applied a 1.5 multiplier. Attached hereto as "**Exhibit 5**" is a true and correct copy of Judge Bernal's May 10, 2022, Order awarding me $1,100 per hour and applying a 1.5 multiplier to the lodestar calculation.

22. I tried the case *Craig v. County of Orange*, also referenced above, in April of 2019 in federal court before the Honorable Cormac J. Carney. In that case, there was no offer of settlement, and the facts of the case were highly disputed. Plaintiffs contended that the deputy shot and killed the unarmed decedent, who was lawfully seated in his car, and at most committed a misdemeanor. The defense argued that the decedent, who under the influence of a large amount of methamphetamine, failed to comply with commands, reached for a gun and was about to shoot the deputy defendant. The plaintiffs prevailed,

obtaining a $3.4 million-dollar jury verdict. Judge Carney awarded me $1,000 per hour in the related attorney fee motion under 42 U.S.C. § 1988. The defendants then appealed to the Ninth Circuit, wherein the Ninth Circuit affirmed the jury verdict. Defendants then appealed to the Supreme Court but, after requesting a response to the petition, the Supreme Court denied certiorari. Judge Carney subsequently awarded me $1,200 per hour in the related attorney fee motion for all work done on the defendants' appeal to the Ninth Circuit and the Supreme Court. Attached hereto as "**Exhibit 6**" is a true and correct copy of Judge Carney's February 21, 2023, Order awarding me $1,200 per hour.

23. In November 2019, I tried the case *Valenzuela v. City of Anaheim*, also referenced above, in federal court before the Honorable Cormac J. Carney. The plaintiffs contended that the officers asphyxiated the decedent by improperly applying a controversial air choke hold while decedent was not actively resisting and posed no threat. The defense argued that the decedent had a long history of drug abuse, had preexisting health issues, and was under the influence of methamphetamine at the time of his encounter with law enforcement during which he refused to comply with officers' commands and exhibited "superhuman" strength. After the plaintiffs prevailed and was awarded a verdict of $13.2 million, the defendants appealed to the Ninth Circuit and subsequently to the Supreme Court. After the Supreme Court denied certiorari, Judge Carney awarded me $1,200 per hour, pursuant to a 42 U.S.C. § 1988 attorney's fees motion, for my work done in response to the defendants' appeal to the Ninth Circuit and the Supreme Court. Attached hereto as "**Exhibit 7**" is a true and correct copy of the February 23, 2023, Order awarding me $1,200 per hour.

24. In October 2023, I tried the case *Zelaya v. City of Los Angeles*, also referenced above, in federal court before the Honorable Otis D. Wright. In that case, there was no offer, and the case was highly disputed. The plaintiff contended that officers used unreasonably detained a homeless man and used excessive and

unreasonable force in detaining him, applied excessive body weight while decedent was restrained in the prone positioned, and positionally asphyxiated him. The defense argued that decedent was under the influence of drugs and that the drugs in his system was the cause of his death. After plaintiff prevailed and was awarded a verdict of $13.5 million, Judge Wright awarded me $1,300 per hour, pursuant to a 42 U.S.C. § 1988 attorney's fee motion. Judge Wright also found that in light of the excellent results achieved, a lodestar enhancement was justified but declined to consider one because plaintiff did not specifically request one in her attorney's fee motion. Attached hereto as "**Exhibit 8**" is a true and correct copy of the June 25, 2024, Order awarding me $1,300 per hour.

25. In January 2024, after successfully defending the appeal in front of the Ninth Circuit in the *French v. City of Los Angeles* case, in which defendants argued for a new trial based on the defendant officer's invocation of his Fifth amendment right to avoid self-incrimination, the plaintiffs filed for attorneys' fees on the appeal. On February 2024, Judge Bernal of the Central District of California awarded me $1,400 per hour. Attached hereto as "**Exhibit 9**" is a true and correct copy of the February 21, 2024, Order awarding me $1,400 per hour.

26. I tried the case *Hurtado v. State of California*, Case No. 2:19-cv-02343-DAD-AC, in front of Judge Dale Drozd in October 2024 and received a $1.5 million jury verdict. At the hearing on the attorney fee motion, Judge Drozd stated the following regarding my skills, which are reflected in a true and correct copy of the transcript of the proceedings attached hereto as "**Exhibit 10**":

> So the whole issue about what rate should apply, you know, this is somewhat problematic and I think -- I think it might be different, actually, depending on which plaintiff's counsel we're talking about. And there's a few things that I would say that at least I have in my mind and that is in the Eastern District of California, the entire district, there are very few reputable lawyers that, in my view, are doing cases such as this one in federal court at all. I think I could count them on one hand, and I think I've seen them all.

> There may be other lawyers you could get to take a case like this. You probably, if you were in any plaintiff's shoes, wouldn't want to have those lawyers taking the case. So, you know, what is there to say about that? You know, it's a very specialized field. There are very few lawyers doing these cases, at least in federal court; maybe they're doing them elsewhere.
>
> There is no doubt in my mind -- and I don't even think defense counsel would disagree -- I mean, you just look at all the judges that have said in fee awards, hey, Mr. Galipo is as good as it gets, at least in this court and, you know, his work in this case fully supports that observation, in my view. I mean, he -- yeah, he's a fabulous trial lawyer, he's a pleasure to have in court, seems even like a pleasure to have on the other side of a case, picks battles, you know, with – exercising a lot of judgment, doesn't fight over the silly stuff. Yeah, he's a pro's pro, so who wouldn't want him taking your case and presenting it in court?
>
> I think Mr. Henderson and Carrazco ended up coming to that conclusion just before the case came to trial and said let's roll out the big guns, but -- okay. So what does that mean in terms of hourly rate?
>
> I actually think, Ms. Whitmore, I'm inclined to say, look, under those circumstances -- Mr. Galipo is unique, the area is unique -- awarding him an hourly rate similar to that which he has been awarded in other courts, in federal courts throughout California is appropriate and that he shouldn't be paid less because he took a case in the Eastern District because, in a lot of ways, it was even more difficult for him to work that case than if he had been in the Central District. And it's not like there's anybody that you would say, oh, there's a lot of lawyers that would take this case and do just as good of a job. I don't think -- that's not even close. You can't say that.
>
> So anyway, I just throw that out there as a way – I mean, Mr. Galipo probably doesn't have a heck of a lot to say on this one. That's a high rate that Mr. Galipo is getting, I will say that. That's quite a rate he's -- I'm not saying he's not worth it because I think he is, but it's an impressive rate the courts have been awarding him, but well deserved, in my view.

After the hearing, Judge Drozd of the Eastern District of California awarded me $1,300 per hour. Attached hereto as "**Exhibit 11**" is a true and correct copy of the April 21, 2025, Order awarding me $1,300 per hour.

27. In February 2026, I tried the police shooting case *Quan v. County of Los Angeles* in federal court in front of the Honorable Mark C. Scarsi. The jury awarded Plaintiff $4,200,000 in damages, and Judge Scarsi awarded me an hourly rate of $1,400 in ruling on the attorney fee motion brought post-trial pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(i). Attached hereto as "**Exhibit 12**" is a true and correct copy of the August 18, 2026, Order awarding me $1,400 per hour.

28. In April 2026, I tried the police shooting case *Garcia v. City of Tustin* in federal court in front of the Honorable Sherilyn Peace Garnett. In that case, there was no offer of settlement. Plaintiffs argued that the shooting officer used excessive and unreasonable force when she shot a homeless man who was asleep in a bush before the shooting officer abruptly woke him up and forced him out of the bush. The defense argued that the decedent "jabbed" or attempted to "jab" the shooting officer with a wooden pole that he used to collect recyclables. The jury awarded Plaintiffs $17 million in damages, and Judge Garnett awarded me an hourly rate of $1,400 in ruling on the attorney fee motion brought post-trial pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(i). Attached hereto as "**Exhibit 13**" is a true and correct copy of the August 18, 2026, Order awarding me $1,400 per hour.

29. I have been diligently working on this case since June 2025. The extensive number of hours I worked on this case precluded me and my office from accepting other cases and employment opportunities.

30. Based on the difficulty of this case and the skill, experience and ability necessary to prevail in this case, I believe an hourly attorney fee rate for my services under the circumstances should be **$1,500** per hour. I am respectfully requesting this hourly fee on the basis of my extensive trial experience, extensive experience in civil rights cases, my accomplishments in this case and other civil rights cases, and my previous awards of $1,300 per hour and $1,400 by the United

States District Court. Given my precedent-setting jury verdicts, the number of verdicts in civil rights cases, my published appellate opinions, my numerous prior attorney fee awards, and the recognition I have received as a trial attorney for my work in police excessive force cases, including consumer attorney of the year, I believe by request for **$1,500** per hour is reasonable.

31. Given that top litigators at top law firms are billing their clients between in excess of $1,000 per hour for trial work and preparation, I am respectfully requesting an hourly fee award of **$1,500** based on my trial experience and accomplishments as a civil rights attorney and as a trial attorney in general. Given that I have had my own law firm for over three decades and have tried well over 100 civil cases, I believe that I have more trial experience and expertise than most law firm partners. Considering that civil rights cases are thought to be the most difficult cases for plaintiffs to prevail on and considering that I have prevailed on more police excessive force cases than probably any other attorney in the country, I believe **$1,500** per hour is an appropriate rate.

32. In addition to my work on this case, my senior associate Renee Masongsong has managed and litigated this case for my office from July 2025 to the present. Since that time, she has handled the case with skill and diligence. Ms. Masongsong has worked for my firm exclusively on civil rights cases in my office for approximately 13 years. In that time, her excellent legal research and writing, as well as her attention to detail and diligence in the day-to-day management of approximately twenty cases per year, has resulted in numerous six, seven, and eight-figure settlements and jury verdicts for my clients. In my opinion, Ms. Masongsong is a dedicated, reliable, and intelligent attorney. I am routinely contacted by other attorneys interested in civil rights litigation for advice, whom I refer to Ms. Masongsong for her guidance and opinions in assisting colleagues to successfully litigate their cases. Given Ms. Masongsong's experience and

competency in civil rights litigation, I believe it would be appropriate to compensate Mr. Masongsong's work at **$900** per hour.

33. Our office's legal assistant Darci Gilbert supported the attorneys while working on this case and in preparation for trial. Ms. Gilbert has been working for me for over a year, and he has been in the legal field for over twenty years. I believe it would be appropriate to compensate Ms. Gilbert's work at **$250** per hour based upon her years of experience, knowledge and it is a comparable rate for legal assistants of her skill and experience.

34. The work done on this case by Ms. Masongsong and Ms. Gilbert, in my opinion, as well as the work performed by my co-Plaintiff's counsel Rodney Diggs, was of high quality and was instrumental in helping the Plaintiffs prevail at trial.

35. My office takes all of our civil rights cases, including the present case, purely on a contingent fee basis, paying costs in advance, including considerable expert fees, and at considerable risk with the ultimate result open to question. Practicing in this area of law involves a great deal of risk as these cases are often subject to motions to dismiss, can be lost on the merits, or on appeal. The Law Offices of Dale K. Galipo takes these cases on a contingency basis despite the considerable expense involved, because of the critically important civil and human rights issues at stake. Few attorneys are willing to run such a risk of recovery in order to press for a victory for civil rights. My office has turned down cases that could potentially result in settlement or verdict for much higher amounts than our average verdict or settlement, specifically because those cases are not civil rights cases and detract from the time spent on these cases of vital importance to our nation. Upon first review of this case, I was aware of the difficulty, risk, and expense that would follow. Nevertheless, these are just the type of cases that my firm does not readily turn away—a testament that truly

difficult cases such as this require truly dedicated and highly skilled representation.

36. A full award in a contingent case should provide a rate well above the ordinary market billing rate for fee-paying clients in order to reflect full compensation. In light of the substantial risks of contingency litigation and the need for experienced and competent counsel to represent plaintiffs in civil rights litigation, it is important that courts award enhanced compensation in contingent risk litigation. Attorneys expect to receive compensation well in excess of their hourly billing rate in cases in which their compensation is contingent upon success, and would decline to represent plaintiffs in risky civil rights cases if it were not for this expectation.

37. Plaintiff's counsel in this case, including myself, my associates, and my co-counsel, have demonstrated experience and hard work in dealing with the issues presented by this case and in preparing for trial. To litigate this case, I compensated the attorney and legal assistants at the Law Offices of Dale K. Galipo for the last year, without any interim payments from the Plaintiff or any guarantee of success at trial.

38. For each of the reasons stated above and stated within Plaintiff's motion for attorneys' fee filed concurrently herewith, I respectfully request an hourly rate of **$1,500**.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this was executed this 14th day of September 2026 at Woodland Hills, California.

/s/ *Dale K. Galipo*

Dale K. Galipo