# EXHIBIT 12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,

Plaintiff,

v.

COUNTY OF LOS ANGELES, MARISOL BARAJAS, HECTOR VAZQUEZ,

Defendants.

Case No. 2:24-cv-04805-MCS-KS

**ORDER RE: MOTION FOR ATTORNEY'S FEES (ECF NO. 139)**

Plaintiff Jennie Quan moves for an award of attorney's fees under 42 U.S.C. § 1988 and California Civil Code sections 52(b) and 52.1(c). (Mot., ECF No. 139.) Defendants County of Los Angeles, Marisol Barajas, and Hector Vazquez opposed, (Opp'n, ECF No. 152), and Plaintiff replied, (Reply, ECF No. 153). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

///

## I. BACKGROUND

Plaintiff is the mother and survivor of Benjamin Chin. (MSJ Order 2, ECF No. 56.) On June 19, 2023, in Diamond Bar, California, Defendants Barajas and Vazquez (together, "the Deputies") responded to a dispatch call regarding a man, Mr. Chin, who was wearing a bulletproof vest and walking down the street with an AR-15 style rifle. (*Id.* at 2–3.) The Deputies fired a combined total of five shots at Mr. Chin, who died from his injuries. (*Id.* at 3.)

Plaintiff filed suit, alleging that the Deputies used unreasonable and excessive force against Mr. Chin. The case proceeded to a jury trial on the following claims: against the Deputies, excessive force in violation of 42 U.S.C. § 1983; and against all Defendants, battery, negligence, and violation of the Bane Act, California Civil Code section 52.1. (FPTCO 4, ECF No. 102.) The jury returned a verdict in Plaintiff's favor on these claims and awarded her $4,200,000 in damages. (Verdict, ECF No. 114.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(2) authorizes a party to make a claim for attorney's fees and related nontaxable expenses by motion. Rule 54 "creates a procedure but not a right to recover attorneys' fees"; the rule requires "an independent source of authority for an award of attorneys' fees." *MRO Commc'ns, Inc. v. AT&T Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999).

"In any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). A prevailing party is a party that "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted). "Congress' intent in enacting § 1988 was to attract competent counsel to prosecute civil rights cases . . . ." *Mendez v. County of San Bernadino*, 540 F.3d 1109, 1126 (9th Cir. 2008), *overruled on other grounds by*,

*Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014). Accordingly, "a court's discretion to deny fees under § 1988 is very narrow and fee awards should be the rule rather than the exception." *Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) (cleaned up); *see also Hensley*, 461 U.S. at 429 ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (internal quotation marks omitted)).

In addition, the Bane Act provides that "[i]n addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to [section 52.1(c)], the court may award the . . . plaintiff reasonable attorney's fees." Cal. Civ. Code § 52.1(i).

Courts in the Ninth Circuit employ the familiar "lodestar method" to determine reasonable fees. *Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019). The lodestar method proceeds in two steps. First, courts multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate to arrive at the lodestar figure. Second, courts may adjust the figure upward or downward based on factors not subsumed in the lodestar figure. *Id*. at 1023–24.

## III. DISCUSSION

Plaintiff seeks an award of $1,804,620 in attorney's fees, consisting of $902,310 in attorney's fees and $902,310 as a 2.0 multiplier enhancement. (Mot. 20.) Plaintiff contends that her counsel, consisting of attorneys Dale K. Galipo and Hang D. Le and litigation assistant Santiago G. Laurel, reasonably expended the hours they worked and submits billing records in support of her request. (Mot. 6–8; Galipo Decl. ¶ 2, ECF No. 139-1; Galipo Decl. Ex. 1, ECF No. 139-2; Le Decl. ¶ 2, ECF No. 139-8; Le Decl. Ex. 7, ECF No. 139-9; Laurel Decl. ¶ 6, ECF No. 139-10; Laurel Decl. Ex. 8, ECF No. 139-11.) On top of the $1,804,620 figure, Plaintiff further requests $10,640 in attorney's fees for 13.3 hours of work counsel expended in connection with drafting Plaintiff's reply brief. (Reply 9–10; Le Decl. ISO Reply ¶ 5, ECF No. 153-1; Le Decl. Ex. 11, ECF No. 153-4.)

Defendants challenge Plaintiff's requested award on several grounds, contending that: (1) Mr. Galipo's hourly rate of $1,500 is unreasonable, (Opp'n 3–5); (2) counsel expended unreasonable hours, (*id.* at 5–10); many of the hours expended by Mr. Laurel, a litigation assistant, involved secretarial and administrative tasks and therefore are not recoverable, (*id.* at 10); and (4) Plaintiff is not entitled to a multiplier, (*id.* at 10–11). The Court addresses Defendants' arguments below.

**A. Reasonable Hours Expended**

Courts calculate the number of compensable hours "by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The movant bears the burden of establishing the number of hours it requests is reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Courts should begin the analysis "with the billing records the prevailing party has submitted." *Id.* "Courts generally accept the reasonableness of hours supported by declarations of counsel." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) (citing *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005)). If the records include hours that are inadequately documented or "excessive, redundant, or otherwise unnecessary," a court may exclude such hours from the sum or, if faced with a "massive fee application," may apply "across-the-board percentage cuts." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted); *accord Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (authorizing deduction of inadequately documented hours).

Defendants argue that Plaintiff's counsel expended unreasonable hours on several tasks. First, Defendants argue that the fee motion includes several block billing entries. (Opp'n 6–8.) Second, Defendants contend that it was unreasonable for Ms. Le to attend depositions for which only Mr. Galipo conducted the examination. (*Id.* at 8–9.) Third, Defendants argue that 29.2 hours spent on intraoffice communications are

duplicative and should be stricken or reduced. (*Id.* at 9–10.) Finally, Defendants assert that Mr. Laurel spent approximately 40.95 hours on clerical activities that are not recoverable. (*Id.* at 10.)

The Court disagrees that it was unreasonable for both Mr. Galipo and Ms. Le to attend the depositions of the individual Defendants and expert witnesses. In the Court's experience, it is not uncommon or unreasonable for two attorneys to attend a deposition. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (observing that "duplicative work is not inherently inappropriate"). Here, the evidence reflects that Ms. Le was responsible for the day-to-day management of the case and heavily involved in fact discovery and pretrial preparation, including drafting Plaintiffs' motions in limine to exclude the testimony of Defendants' expert witnesses. (*See generally* Le Decl. Ex. 7.) Accordingly, the hours Ms. Le expended preparing for and attending these depositions is not inherently duplicative or unreasonable.

With respect to Defendants' remaining arguments, the Court agrees that Plaintiff improperly identified certain clerical tasks as compensable. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing hours for "filing, transcript, and document organization time," tasks that are "clerical in nature" and that "should have been subsumed in firm overhead rather than billed at paralegal rates"); *In re Mohsen*, 473 B.R. 779, 795 (N.D. Cal. Bankr. 2012) (reducing "time spent downloading documents, calendaring deadlines, confirming papers were filed, organizing files, and electronically filing documents").

The Court also agrees that at least some of Plaintiff's intraoffice communications are not compensable. Both attorneys and Mr. Laurel, in his capacity as a litigation assistant, billed for these conferences, but the time spent by a lower-billing attorney in intraoffice conferences is not recoverable if it amounts to duplication of effort. *See, e.g.*, *Scott v. Jayco Inc.*, No. 1:19-cv-0315 JLT, 2021 U.S. Dist. LEXIS 242660, at *15 (E.D.

Cal. Dec. 18, 2021) ("In general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary."); *Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, at *6 (E.D. Cal. Sept. 6, 2013) ("[M]any courts have . . . reduced fee awards for time spent in interoffice conferences or other internal communications." (internal quotation marks omitted)); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1194 (S.D. Cal. 2003) ("[T]he Court has noted numerous occasions in which Attorneys Monson and Horner consulted and coordinated with one another. Although it has been recognized that the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort, the Court believes that Monson and Horner inappropriately billed for communicating with one another . . . ." (internal quotation marks and citation omitted)).

Finally, Defendant argues that counsel's time entries contain improper block billing. (Opp'n 6–8.) Plaintiff's counsel did block bill certain time entries, rendering the Court unable to determine how much time was spent on certain tasks. (*See, e.g.*, Galipo Decl. Ex. 1, at 1 (16.2 hours billed under "Review Case Materials" across seven days); Galipo Decl. Ex. 1, at 4 (seven hours billed under "Outline Officer Statements" across two days and 9.7 hours billed under "Outline Officer Examinations" across three days); Laurel Decl. Ex. 8, at 5 ("Met with Hang and reviewed calendar. Prepared Fourth Notice of Deposition of Defendant Hector Vasquez, emailed to attorney for review. Prepared proof of service, printed, served, ordered court reporter and updated calendar with event and Zoom link for deposition."); Laurel Decl. Ex. 8, at 7 ("Reviewed disclosures and medical records. Obtained contact information for witnesses, that we would be called to appear at trial. Drafted subpoenas, and emailed to attorney for review.").)

In light of the legitimate issues Defendants raise in their brief, the Court in its discretion imposes a 15% reduction on the hours expended by Plaintiff's counsel. *See Moreno*, 534 F.3d at 1112 ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more

specific explanation."); *see also Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (holding a district court did not abuse its discretion in reducing block-billed hours by 30% and applying "an additional 10% across-the-board reduction for excessive and redundant work").[1]

**B. Reasonable Hourly Rate**

In determining the reasonable hourly rate, courts consider "[t]he prevailing market rates in the relevant community," which is "the forum in which the district court sits." *Gonzalez*, 729 F.3d at 1205 (internal quotation marks omitted). Courts must consider the experience, skill, and reputation of attorneys and paralegals in determining the appropriate rate. *Id.* at 1205–06; *accord Hiken v. Dep't of Def.*, 836 F.3d 1037, 1044 (9th Cir. 2016) (imploring courts to consider the "experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented" (internal quotation marks omitted)). The movant must submit evidence to support the requested hourly rates. *Roberts*, 938 F.3d at 1024; *Gonzalez*, 729 F.3d at 1206. Courts ordinarily look to attorney affidavits and rate determinations in other cases to ascertain the prevailing fees in the community. *Roberts*, 938 F.3d at 1024; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). Judges also may apply their own knowledge of rates in the community. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

1. <u>Mr. Galipo</u>

Mr. Galipo requests an hourly rate of $1,500. (Galipo Decl. ¶ 38.) Defendants oppose, arguing that Mr. Galipo's proposed hourly rate is unreasonably high. (Opp'n 5.)

---

[1] The Court declines to reduce hours Ms. Le reasonably expended and appropriately documented to prepare the reply brief. (*See* Le Decl. Ex. 11.)

Mr. Galipo is a 1984 graduate of the University of California Los Angeles School of Law. (Galipo Decl. ¶ 3.) He has managed his own law firm specializing in personal injury and criminal defense law since 1991 and has specialized in police misconduct civil rights litigation for the past 24 years. (*Id.* ¶ 4.) Mr. Galipo has tried more than 100 civil cases through verdict, winning the majority of his civil jury trials and receiving significant jury awards in many cases. (*Id.* ¶¶ 18–19.) He submits that his requested rate of $1,500 reflects his extensive trial and civil rights experience and is commensurate with the rates typically billed by "top litigators at top law firms." (*Id.* ¶ 30.)

The Court assigns limited weight to declarations submitted by Mr. Galipo and Ms. Sobel, one of his peers in the legal community. (*See generally* Sobel Decl., ECF No. 139-7.)[2] Courts often question the value of attorney declarations concerning rates, as "[a] high award in this case would support the declarants' own high hourly rate requests in the future." *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS (NLS), 2010 U.S. Dist. LEXIS 41330, at *10 (S.D. Cal. Apr. 21, 2010); *see also, e.g.*, *Antuna v. County of Los Angeles*, No. CV 14-5600-MWF (PLAx), 2016 U.S. Dist. LEXIS 189152, at *9 (C.D. Cal. Mar. 8, 2016) ("The Court does not assign much weight to Plaintiffs' [submitted] declarations given their self-serving nature.").

The Court notes several recent court awards in this District and the Eastern District of California awarding fees to Mr. Galipo in amounts ranging from $1,100 to $1,400 per hour. (*See* Galipo Decl. ¶¶ 20–27); *see also Donastorg v. City of Ontario*, No. EDCV 18-992 JGB (SPx), 2021 U.S. Dist. LEXIS 246890, at *21 (C.D. Cal. Sept. 23, 2021) (approving rate of $1,100); *French v. City of Los Angeles*, No. EDCV 20-00416 JGB (SPx), 2022 U.S. Dist. LEXIS 111194, at *51 (C.D. Cal. May 10, 2022) (approving rate of $1,100); *Valenzuela v. City of Anaheim*, Nos. SACV 17-00278-CJC

---

[2] The Court also notes that Ms. Sobel's declaration repeatedly misidentifies the associate attorney for whose services Plaintiff seeks fees, (*see, e.g.* Sobel Decl. ¶¶ 33, 39, 43, 46–48, ECF No. 139-6), further undermining the declarant's averments with respect to the reasonableness of the hourly rates requested.

(DFMx), SACV 17-02094-CJC (DFMx), 2023 U.S. Dist. LEXIS 32012, at *9 (C.D. Cal. Feb. 23, 2023) (approving rate of $1,200); *French v. City of Los Angeles*, No. EDCV 20-0416 JGB (SPx), 2024 U.S. Dist. LEXIS 240244, at *9–10 (C.D. Cal. Feb. 21, 2024) (approving rate of $1,400); *I.H. v. California*, No. 2:19-cv-02343-DAD-AC, 2025 U.S. Dist. LEXIS 75577, at *19 (E.D. Cal. Apr. 18, 2025) (approving rate of $1,300). The Court considers these decisions in determining a reasonable hourly rate, including the relative age of the decisions.

Based on the evidence discussed and the Court's knowledge of rates in the community, the Court assigns Mr. Galipo a rate of $1,400.

2. <u>Ms. Le</u>

Ms. Le requests an hourly rate of $800. (Le Decl. ¶ 12.) Defendants do not object to the reasonableness of Ms. Le's hourly rate. (*See generally* Opp'n.)

Ms. Le is a senior associate at the Law Offices of Dale K. Galipo. (Le Decl. ¶ 6.) She is a 2013 graduate of the University of Southern California Gould School of Law and was admitted to the California State Bar that same year. (*Id.* ¶¶ 4–5.) Ms. Le has worked at Mr. Galipo's firm for 12 years specializing in civil rights actions and has been the managing attorney for several civil rights cases resulting in substantial settlement sums or jury verdict awards. (*Id.* ¶¶ 6, 8–10.) Ms. Le's billing entries reflect that she was responsible for the day-to-day management of this case, including discovery, pretrial and trial preparation, and pretrial and posttrial motions practice. (*See generally* Le Decl. Ex. 7.) The Court also notes that two federal courts in the past five years approved rates for Ms. Le of $650 and $550 per hour. *Donastorg*, 2021 U.S. Dist. LEXIS 246890, at *22 (approving rate of $550); *I.H.*, 2025 U.S. Dist. LEXIS 75577, at *21 (approving rate of $650). Based on the evidence discussed and the Court's knowledge of rates in the community, the Court assigns Ms. Le a rate of $800.

///

3. Mr. Laurel

Mr. Laurel requests an hourly rate of $250. (Laurel Decl. ¶ 9.) Defendants do not object to the reasonableness of Mr. Laurel's hourly rate. (*See generally* Opp'n.)

Mr. Laurel has been a litigation assistant at the Law Offices of Dale K. Galipo since September 2021. (Laurel Decl. ¶¶ 1, 3.) He submits that he has approximately 20 years of experience in the legal field and that his work at Mr. Galipo's firm includes substantive legal work such as drafting discovery and assisting with trial preparation. (*Id.* ¶¶ 2–5.) Though some of Mr. Laurel's billing entries comprise noncompensable clerical work, Mr. Laurel's other billing entries reflect that he provided services on substantive legal tasks, such as reviewing evidence and assisting with discovery. (*See generally* Laurel Decl. Ex. 8.) The Court notes that three federal courts have approved hourly rates for Mr. Laurel of $200 and $220. *French*, 2022 U.S. Dist. LEXIS 111194, at *55 (approving rate of $200); *Zelaya v. City of Los Angeles*, No. 2:20-cv-08382-ODW (MAAx), 2024 U.S. Dist. LEXIS 112652, at *12 (C.D. Cal. June 25, 2024) (approving rate of $220); *I.H.*, 2025 U.S. Dist. LEXIS 75577, at *31 (approving rate of $220). Based on the evidence discussed and the Court's knowledge of rates in the community, the Court assigns Mr. Laurel a rate of $250.

**C. Lodestar Figure**

Based on the rates and hours determined above, the lodestar figure is as follows:

| **Name** | **Rate** | **Hours** | **Lodestar** |
|---|---|---|---|
| Mr. Galipo | $1,400 | 350.3 | $490,420 |
| Ms. Le | $800 | 292.2 | $233,760 |
| Mr. Laurel | $250 | 72.9 | $18,225 |
| | | **Total:** | $742,405 |

///

**D. Adjustment**

The lodestar figure represents a presumptively reasonable attorney's fee. *Gonzalez*, 729 F.3d at 1202. However, the Court may adjust the lodestar based on several factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 1209 n.11 (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996)).

In addition, "[u]nlike federal law, California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation" in particular. *Chaudhry*, 751 F.3d at 1112. Accordingly, "when a plaintiff succeeds on both federal and state claims that support a fee award, the state-law multiplier is available." *Id.* In deciding whether to apply a multiplier under California law, trial courts should consider "whether, and to what extent, the attorney and client have been able to mitigate the risk of nonpayment" as well as "the degree to which the relevant market compensates for contingency risk, extraordinary skill, or other factors." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001). "[W]hen determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar." *Id.* It is within the district court's discretion whether to award a multiplier.

*See id.*; *see also Chaudhry*, 751 F.3d at 1112.

Plaintiff asks that the Court adjust the lodestar by multiplying the fee award by 2.0. Plaintiff argues that the multiplier is warranted due to the difficulty of the case, the quality of counsel's representation, and the risk counsel assumed in taking Plaintiff's case on a contingency basis. (Mot. 16–19.) Defendants oppose, arguing that counsel's hourly rate adequately accounts for contingency risk. (Opp'n 10–11.) Defendants also argue that to the extent Plaintiff might be entitled to a multiplier for prevailing on her claim under the California Bane Act, it would be improper to apply a multiplier to the entirety of Plaintiff's requested fees, which encompass both the federal and state law claims. (*Id.* at 11.)

The Court concludes that a multiplier is not warranted. This action did not pose particularly difficult or novel questions of law or fact, and the scope of the case was relatively narrow, with the key facts of the case concerning the reasonableness of the Deputies' actions during a single encounter. Further, counsel's respective hourly rates of $1,400 and $800 already adequately capture the quality and skill of their representation and the successful outcome counsel obtained for Plaintiff. While Plaintiff's counsel took this case on a contingency basis, (Galipo Decl. ¶ 35), that fact alone does not warrant a multiplier, *see Ketchum*, 24 Cal. 4th at 1138; *see also Aung v. Watts*, No. 2:24-cv-05501-SVW, 2025 U.S. Dist. LEXIS 216465, at *17 (C.D. Cal. Aug. 7, 2025) ("[N]ot all contingency fee cases demand upward adjustment."). Here, counsel's hourly rates adequately compensate for the risks they took by prosecuting this action for Plaintiff. To apply a multiplier where, as here, the lodestar figure already encompasses the contingency arrangement and the quality of counsel's successful representation would "result in unfair double counting and be unreasonable." *Ketchum*, 24 Cal. 4th at 1139. Accordingly, the Court declines to apply a multiplier and awards the lodestar figure.

///

## IV. CONCLUSION

The motion is granted in part and denied in part. The Court awards Plaintiff $742,405 in attorney's fees.

**IT IS SO ORDERED.**

Dated: August 18, 2026

Mark C. Scarsi

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE