# EXHIBIT 4

**O**

# United States District Court
# Central District of California

NICOLE JUAREZ ZELAYA,
Plaintiff,
v.
CITY OF LOS ANGELES et al.,
Defendants.

Case № 2:20-cv-08382-ODW (MAAx)

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES [137]**

## I. INTRODUCTION AND BACKGROUND

On October 13, 2023, the jury in this matter returned a verdict in favor of Plaintiff Nicole Juarez Zelaya and against Defendants Dustin Richmond, Joseph Hunt, and the City of Los Angeles, on Zelaya's claims arising under 42 U.S.C. § 1983. (Verdict 1–3, ECF No. 121.) The jury awarded Zelaya $13.5 million in damages. (*Id.* at 4.) Zelaya now requests her attorneys' fees pursuant to 42 U.S.C. § 1988, in the amount of $766,097. (Mot. Fees ("Motion" or "Mot."), ECF No. 137.) The parties are familiar with the facts, which may be found in the Court's Order Denying Defendants' Motion for a New Trial. (*See* Order Den. Defs.' Mot. New Trial 2–3, ECF No. 160.) For the reasons below, the Court **GRANTS IN PART** Zelaya's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. LEGAL STANDARD

In general, courts apply the "American Rule," under which "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). However, 42 U.S.C. § 1988 is just such a statute. Section 1988 authorizes a district court "to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Id.*; 42 U.S.C. § 1988(b). The purpose of § 1988 is to encourage "private enforcement of civil rights legislation [that] relies on the availability of fee awards." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Therefore, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (internal quotation marks omitted).

To determine a reasonable attorney fee award under § 1988, federal courts employ "the lodestar method." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Under the lodestar method, a court multiplies "the number of hours an attorney reasonably expended on the prevailing party's case" with the attorney's "reasonable hourly rate, based on evidence of the market rate for the services provided." *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). Once the lodestar figure is determined, the court then decides whether to adjust the figure based on a variety of factors.[2] *Moreno*, 534 F.3d at 1111. "[T]here is a strong presumption that [the lodestar figure] is a reasonable fee," *United Steelworkers of Am. v. Phelps Dodge Corp.*,

---

[2] These factors include

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

896 F.2d 403, 407 (9th Cir. 1990), and it should therefore be adjusted only in "rare" and "exceptional" cases, *Edmo*, 97 F.4th at 1168. The fee applicant bears the "burden of showing that the claimed rate and number of hours are reasonable." *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley,* 461 U.S. at 433 (noting that fee applicants should "submit evidence supporting the hours worked and rates claimed").

## III. DISCUSSION

Zelaya's counsel moves for attorneys' fees as the prevailing party. They request $766,097 in attorneys' fees for 835.45 hours worked. (*See* Mot. 17; Reply ISO Mot. ("Reply") 9, ECF No. 155.) The requested fee amount includes time associated with drafting the Motion and Reply, as well as opposing Defendants' unsuccessful motion for a new trial,[3] as follows:

| **Attorney/Biller** | | **Hourly Rate** | **Total Hours** | **Lodestar** |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | $1,300 | 362 | $470,600 |
| Miguel Flores | Attorney | $700 | 26.9 | $18,830 |
| John Fattahi | Attorney | $920 | 7.6 | $6,992 |
| Michael Carrillo | Attorney | $700 | 131.6 | $92,120 |
| Renee V. Masongsong | Attorney | $700 | 226.6 | $158,620 |
| Benjamin Levine | Attorney | $400 | 6.5 | $2,600 |
| Santiago Laurel | Legal Assistant | $220 | 74.25 | $16,335 |
| **TOTAL** | | | **835.45** | $766,097 |

(*See* Mot. 17; Reply 9.)

[3] Defendants object to Zelaya's fees on post-trial matters as premature because, at the time Zelaya filed this fee motion, the Court had not yet ruled on Defendants' motion for a new trial. (Opp'n 10–11, ECF No. 154.) The Court has since denied Defendants' motion. (Order Den. Defs.' Mot. New Trial.) Accordingly, Zelaya prevailed and is entitled to recover her attorneys' fees on the post-trial motion practice. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (holding that time spent on fee petition is compensable); *Lambert v. Ackerley*, 180 F.3d 997, 1012–13 (9th Cir. 1999) (affirming award of attorneys' fees for post-trial matters).

The City argues that Zelaya's requested fee award is unreasonable and challenges both the hourly rates and number of hours as excessive. (*See* Opp'n 3.)

**A. Reasonable Hourly Rate**

To determine whether hourly rates are reasonable under § 1988, fees "are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (citation omitted) (cleaned up). "[T]he relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407. Once the party claiming fees presents evidence supporting the claimed rate, the burden shifts to the party opposing fees to present equally specific countervailing evidence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

In support of her Motion, Zelaya submits a declaration from her counsel of record, Dale K. Galipo, detailing his experience and that of the other attorneys and support staff representing Zelaya. (*See* Decl. Dale K. Galipo ISO Mot. ("Galipo Decl."), ECF No. 137-1.) Zelaya also submits declarations from each attorney and support staff seeking fees for their work on Zelaya's behalf in this action, as well as the declaration of Carol A. Sobel, on whose expertise courts in the Ninth Circuit and Central District of California routinely rely for determining reasonable attorney rates. *See, e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 912–13, 917–18 (9th Cir. 2009); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1119 (C.D. Cal. 2012). Defendants contend that Zelaya's counsel fails to support their rates with sufficient evidence. (Opp'n 5–8.) The Court finds that Zelaya's counsel's evidence is sufficient and supports the requested rates, as discussed further below. *See United Steelworkers*, 896 F.2d at 407; *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony

that, in fact, it took the time claimed . . . is evidence of considerable weight on the issue of the time required . . . .” (internal quotation marks omitted)).

*1. Dale K. Galipo*

Zelaya’s counsel requests an hourly rate of $1,300 for Mr. Galipo. (Mot. 11.) Mr. Galipo bases his rate on his thirty-four years of civil rights practice experience, his track record of success, and his numerous recognitions for his work in civil rights. (*See* Galipo Decl. ¶¶ 3–26; Decl. Renee V. Masongsong ISO Mot. (“Masongsong Decl.”) ¶ 9, ECF No. 137-2 (“Mr. Galipo is considered to be one of the top civil rights attorneys in the state and country, [and] has gone to trial and won more cases against the police for excessive force than any attorney in the country.”).)

Moreover, courts in this district have recently found Mr. Galipo’s requested hourly rate appropriate given his demonstrated expertise and track record for success. *See, e.g.*, *Valenzuela v. City of Anaheim*, No. 8:17-cv-00278-CJC (DFMx), 2023 WL 2249178, at *3 (C.D. Cal. Feb. 23, 2023) (finding in 2023 that $1,200 was “a reasonable hourly rate for Mr. Galipo” based on his strong reputation, his consistent record of success in civil rights cases, and his awarded reasonable rate of $1,100 as early as 2020); *Donastorg v. City of Ontario*, No. 5:18-cv-00992-JGB (SPx), 2021 WL 6103545, at *8 (C.D. Cal. Sept. 23, 2021) (finding in 2021 “Mr. Galipo’s requested rate of $1,100 per hour” was reasonable because “Mr. Galipo is without question at the top of his field”). Changes in market rates, the rise of inflation, and Mr. Galipo’s increased experience justify the increase of Mr. Galipo’s rate to $1,300. *See Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. 5:07-cv-01512-ABC (OPx), 2012 WL 843623, at *7 (C.D. Cal. Feb. 16, 2012) (“It is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time . . . .”).

The Court agrees that Mr. Galipo is unquestionably at the top of his field and finds Mr. Galipo’s requested rate is appropriate given his “experience, skill, and reputation.” *Dang*, 422 F.3d at 813.

*2. Renee V. Masongsong*

Zelaya's counsel requests an hourly rate of $700 for Ms. Masongsong. (Mot. 13.) Ms. Masongsong is a senior civil rights attorney at Mr. Galipo's firm with twelve years of legal experience. (Masongsong Decl. ¶¶ 6, 8–9.) She has worked almost exclusively on civil rights litigation for more than ten years. (*Id.* ¶ 8.) In this case, she was the assigned senior associate and handled the "case's day-to-day management." (*Id.* ¶ 15.) In 2022, a sister court in this district found "Ms. Masongsong's requested rate of $600 per hour" for her civil rights work in 2020 and 2021 reasonable. *French v. City of Los Angeles*, No. 5:20-cv-00416-JGB (SPx), 2022 WL 2189649, at *19 (C.D. Cal. May 10, 2022). Moreover, the defendant in that case, City of Los Angeles—the same Defendant in this case—did not contest that rate. *Id.* ("The City does not contest this rate."). As with Mr. Galipo, Ms. Masongsong's rate increase is justified. *See Charlebois*, 993 F. Supp. 2d at 1122 ("[C]ourts routinely recognize that fee rates increase over time based on a variety of factors.").

Ms. Masongsong's requested rate is well within the range of reasonable rates in the community for attorneys of comparable skill and experience. Accordingly, the Court finds Ms. Masongsong's requested rate reasonable.

*3. Michael Carrillo & Miguel Flores*

Zelaya's counsel requests an hourly rate of $700 for Mr. Carrillo and Mr. Flores. (Mot. 14–15.) Mr. Carrillo has over fourteen years of legal experience and is the managing partner of the Carrillo Law Firm, LLP. (Decl. Michael Carrillo ISO Mot. ¶¶ 5–6, 13, ECF No. 137-5.) His firm has been recognized for its work and advocacy in civil rights matters. (*Id.* ¶ 14.) Mr. Carillo was the attorney primarily responsible for the work on this case done by his firm, and he has been involved in depositions, client communication, coordinating experts, law and motion practice, trial preparation, assisting with the trial, and the handling of post-trial issues. (*Id.* ¶ 19.) Similarly, Mr. Flores has been a licensed attorney for eighteen years and is a senior attorney at

Carrillo Law Firm, where he has worked extensively on cases involving civil rights. (Decl. Miguel Flores ISO Mot. ¶¶ 5, 8, ECF No. 137-6.)

Mr. Carillo and Mr. Flores's requested rate, which is the same as Ms. Masongsong's, is well within the range of reasonable rates in the community for attorneys of comparable skill and experience. *See Dugan v. County of Los Angeles,* No. 2:11-cv-08145-CAS (SHx), 2014 WL 12577377, at *3 (C.D. Cal. Mar. 3, 2014) (finding in 2014 that $650 was a reasonable rate for an attorney without much civil rights experience because "he was an experienced trial lawyer and was familiar with Fourth Amendment doctrine").

Accordingly, the Court finds Mr. Carillo and Mr. Flores's requested rate of $700 reasonable.

*4. John Fattahi*

Zelaya's counsel requests an hourly rate of $920 for the work Mr. Fattahi has performed post-trial. (Mot. 15.) Zelaya's counsel associated Mr. Fattahi "as co-counsel to represent Plaintiff in connection with post-trial motions and any appeals." (*Id.*) Mr. Fattahi bases his rate on his seventeen years of legal experience, with fifteen years dedicated exclusively to civil rights litigation. (Decl. John Fattahi ISO Mot. ¶ 4, ECF No. 137-7.) In *Valenzuela,* the court found $850 per hour was a reasonable hourly rate for Mr. Fattahi in 2023, given "his continued strong reputation within the field." 2023 WL 2249178, at *4. The court reasoned that an increase to his previously awarded hourly rates of $725 and $775 was justified because "Mr. Fattahi [had] gained substantial additional experience." *Id.* Since the court's ruling in 2023, Mr. Fattahi has raised his rate $70, to $920. (Mot. 15.) The Court finds that this increase is justified and not excessive, given his increased experience and expertise. *See Charlebois*, 993 F. Supp. 2d at 1122; *Parker*, 2012 WL 843623, at *7.

Accordingly, the Court finds Mr. Fattahi's requested rate of $920 reasonable.

*5. Benjamin Levine*

Zelaya's counsel requests an hourly rate of $400 for Mr. Levine. (Mot. 16.) Mr. Levine is a second-year associate and civil rights attorney at the Law Offices of Dale K. Galipo. (Decl. Benjamin Levine ISO Mot. ¶ 8, ECF No. 137-3.) Prior to joining Mr. Galipo's firm, Mr. Levine earned his J.D. from the UCLA School of Law, where he graduated in the top 5% of his class. (*Id.* ¶ 5.) He served as a judicial law clerk for the Honorable William B. Shubb, in the United States District Court for the Eastern District of California. (*Id.* ¶ 7.) Regarding Mr. Levine's rate, Ms. Sobel opines that a $400 hourly rate is "slightly below the mid-range for attorneys of comparable skill and experience in the Central District." (Decl. Carol A. Sobel ISO Mot. ¶ 52, ECF No. 138.) Defendants do not contest Mr. Levine's rate. (*See* Opp'n 8.) Indeed, Defendants' expert actually proposes a higher hourly rate as reasonable for Mr. Levine, $450. (*See* Decl. Gerald G. Knapton ISO Opp'n ¶ 26, ECF No. 154-1.) The Court agrees with Ms. Sobel's and Mr. Knapton's assessments, and finds an hourly rate of **$450** reasonable for Mr. Levine.

*6. Santiago Laurel*

Zelaya's counsel requests an hourly rate of $220 for Mr. Laurel. (*See* Mot. 17; Galipo Decl. ¶ 31.) Mr. Laurel is a litigation/legal assistant for Mr. Galipo, Ms. Masongsong, and Mr. Levine. (Decl. Santiago G. Laurel ("Laurel Decl.") ¶¶ 1–3, ECF No. 137-4.) He has worked in the legal field for approximately sixteen years and is experienced with both state and federal court. (*Id.* ¶ 2.) Mr. Galipo attests to the contributions Mr. Laurel made in this case. (Galipo Decl. ¶ 31.) Although Mr. Santiago is a legal assistant and not a paralegal, sister courts in this district have found his experience in the legal field supports his rate. *See French*, 2022 WL 2189649, at *19 (finding, in 2022, Mr. Laurel's hourly rate of $200 to be reasonable). Defendants do not contest this rate. (*See generally* Opp'n; Knapton Decl. ¶ 26.) Thus, the Court finds Mr. Laurel's that requested hourly rate of $220 is reasonable.

**B. Number of Hours Reasonably Expended**

"A district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts . . . should not[] become green-eyeshade accountants."). Thus, the court "may take into account [its] overall sense of a suit." *Id.* The court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112 (noting that civil rights lawyers on contingency fee cases are "not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees [because t]he payoff is too uncertain"). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 439.

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397. Once the applicant meets her burden, the party opposing the fee award must "come up with specific reasons for reducing the fee request that the district court finds persuasive." *Moreno*, 534 F.3d at 1116. If the opposing party cannot do so, the court "should normally grant the award in full, or with no more than a haircut." *Id.*

Zelaya's counsel requests attorneys' fees for a total of 835.45 hours worked on this case. (Mot. 17; Reply 9.) Zelaya's counsel submits contemporaneously maintained timekeeping records from each attorney and support staff requesting fees. (*See, e.g.*, Masongsong Decl. ¶ 4, Ex. 1, ECF No. 137-2.) Counsel exercised billing judgment in the time submitted by eliminating or not recording wholly duplicative, unnecessary, or administrative time. (Mot. 7; *see* Galipo Decl. ¶ 2; Masongsong Decl. ¶ 4.) The Court finds Zelaya's counsel submits sufficient evidence to support the appropriate hours expended in the litigation. Accordingly, the burden shifts to Defendants to offer specific

persuasive reasons for reducing the fee award. *See Moreno*, 534 F.3d at 1116. Defendants argue that Zelaya's counsel's hours should be reduced because they include unbillable purely clerical work and unnecessary duplicative time. (Opp'n 9–10.)

*1. Clerical*

Defendants contest certain of Zelaya's counsel's time entries as "purely clerical work." (Opp'n 9.) Purely clerical or secretarial tasks are not compensable. *See Nadarajah*, 569 F.3d at 921 ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). However, it is appropriate to distinguish between non-legal, "purely clerical" work, which is not compensable, and substantive legal work, which may be. *Id.*; *Donastorg*, 2021 WL 6103545, at *11. For instance, courts consider tasks like copying, scanning, calendaring, filing, and document organization to be clerical in nature and thus non-compensable, because they are subsumed within firm overhead. *See Nadarajah*, 569 F.3d at 921; *French*, 2022 WL 2189649, at *20. In contrast, tasks like drafting discovery correspondence, preparing deposition notices, and reviewing and organizing case files are not necessarily purely clerical tasks and may be compensable. *See French*, 2022 WL 2189649, at *20.

Defendants first argue the Court should disregard Mr. Santiago's time entirely because he is "clerical personnel." (Opp'n 9.) The Court disagrees that "clerical personnel" are categorically incapable is performing substantively valuable work. The Court has reviewed Mr. Laurel's time entries and finds that while some entries reflect tasks considered purely clerical in nature, other entries reflect compensable time. (*See* Laurel Decl. Ex. 1, ECF No. 137-4.) For instance, reviewing body worn camera footage, participating in depositions, and preparing relevant case information for onboarding experts are all entries reflecting non-clerical tasks. Accordingly, the Court reduces Mr. Laurel's compensable hours from 74.25 to **38.0**, eliminating the time for purely clerical work.

Defendants next argue the Court should reduce Ms. Masongsong's entries by 1.3 hours because her time scheduling and coordinating depositions should be considered purely "administrative." (Opp'n 9; Decl. Diane Martinez ISO Opp'n ¶ 7, ECF No. 154-2.) However, depositions were essential to proving Zelaya's claims and theory of the case at trial and it was reasonable for Ms. Masongsong to directly coordinate the depositions. No changes to Ms. Masongsong's hours are warranted.

*2. Duplicative*

Defendants contest certain hours spent by Zelaya's counsel as duplicative. (Opp'n 10.) "It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." *Moreno*, 534 F.3d at 1113; *Blackwell*, 724 F. Supp. 2d at 1081 ("[I]t must appear that the time claimed is obviously and convincingly excessive under the circumstances."). The Court has reviewed the time entries identified by Defendants and finds that Zelaya's counsel sufficiently establishes that these hours were not unnecessarily duplicative. (*See* Reply 7–9.)

**C. Lodestar**

Based on the Court's modifications to hourly rates and hours expended identified above, Zelaya's counsel's modified lodestar is **$758,447**, as follows.

| **Attorney/Biller** | | **Hourly Rate** | **Total Hours** | **Lodestar** |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | $1,300 | 362 | $470,600 |
| Miguel Flores | Attorney | $700 | 26.9 | $18,830 |
| John Fattahi | Attorney | $920 | 7.6 | $6,992 |
| Michael Carrillo | Attorney | $700 | 131.6 | $92,120 |
| Renee V. Masongsong | Attorney | $700 | 226.6 | $158,620 |
| Benjamin Levine | Attorney | **$450** | 6.5 | $2,925 |
| Santiago Laurel | Legal Assistant | $220 | **38.0** | $8,360 |
| **TOTAL** | | | **799.20** | **$758,447** |

Complex civil rights litigation, such as this case, is often lengthy and demanding. *Hensley*, 461 U.S. at 436. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. Indeed, "in some cases of exceptional success an enhanced award may be justified." *Id.* Zelaya's counsel in this case achieved excellent results after years of challenging litigation, and they are entitled to a fully compensatory fee. *Id.* Moreover, in light of the exceptional results achieved, the complex issues, and the lengthy litigation history, the Court finds the above lodestar lean. However, although the Court finds an enhanced award would be justified, Zelaya's counsel does not seek a fee multiplier, (*see generally* Mot.), and Defendants have not had the opportunity to oppose one. Accordingly, the Court does not consider an upward adjustment to the lodestar.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees and **AWARDS** Plaintiff's counsel **$758,447**. (ECF No. 137.)

**IT IS SO ORDERED.**

June 25, 2024

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**