LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEFFON BARBER, an individual,

Plaintiff,

v.

COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED,

Defendants.

Case No. 5:22-cv-00625-KK-DTBx

*[District Judge, Kenly Kiya Kato, Magistrate Judge, David T. Bristow]*

**DECLARATION OF JOHN FATTAHI IN SUPPORT OF GARCIA PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

# DECLARATION OF JOHN FATTAHI

I, John Fattahi, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California, the United States Court of Appeals for the Ninth Circuit, and each of the four United States District Courts in California. I make this Declaration in support of Plaintiff's Motion for Attorneys' Fees. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

2. **Hours Reasonably Expended.** Since March 2026, I have reasonably expended **22.8** hours of billable time on this matter. Attached hereto as **Exhibit 1** is a table of my contemporaneous line-item billing entries through the present date. If necessary, I will submit a supplemental declaration for any further time expended on this matter after this filing.

3. In March 2026, Mr. Galipo requested my assistance with post-trial motions and anticipated appellate proceedings. I formulated Plaintiff's initial legal strategy regarding Defendants' post-trial motions challenging the entire verdict and judgment on multiple grounds. I then drafted significant portions of Plaintiff's opposition to Defendants' post-trial motions, including the sections on *Heck v. Humphrey*, qualified immunity, credibility, excessive damages, the exclusion of Dr. Vilke's testimony, and the exclusion of criminal history. For the remaining sections, I provided input and made revisions. In addition, I participated in several conferences among co-counsel, which were invaluable and extremely productive. Each of these tasks was critical to Plaintiff's effective representation post-trial and on anticipated appeal, and each task was a direct response to a position taken by Defendants. I contemporaneously tracked my time in tenth-of-an-hour increments, and exercised billing judgment by excluding time spent on unproductive or administrative tasks. All of my time was reasonably incurred and could have been billed to a private client. I have already excluded at least five hours of time spent on

this matter. If necessary, I will incur additional time responding to any challenge to the instant fee request.

4. **Reasonable Hourly Rate.** A reasonable year 2026 rate for my professional services in this case is $1115 per billable hour. This represents a less than 7 percent annual increase since my last fee award applying a 2024 rate of $975. Seven percent is less than the average increase in my rate from 2022 to 2024.

- In *French v. City of Los Angeles*, Judge Bernal, of the Eastern Division (Riverside) of the Central District of California, found that a reasonable year 2024 rate for my professional services in civil-rights litigation was $975 per billable hour. The *French* fee order, Dkt. 188, is attached hereto as **Exhibit 2**.
- In *Zelaya v. City of Los Angeles*, Judge Wright of the Central District of California found that a reasonable year 2023 rate for my professional services in opposing post-trial motions in civil-rights litigation of similar complexity was $920 per billable hour. The *Zelaya* fee order, Dkt. 164, is attached hereto as **Exhibit 3**.
- In *Valenzuela v. City of Anaheim*, 2023 WL 2249178 (C.D. Cal. Feb. 23, 2023), Judge Carney of the Central District of California, found that a reasonable year 2022 rate for my professional services in civil rights appellate litigation of similar complexity was $850 per billable hour, given my "continued strong reputation within the field." The *Valenzuela* fee order, Doc. No. 462, is attached hereto as **Exhibit 4**.

5. I have been practicing law since 2006, and have almost exclusively practiced federal civil-rights litigation since 2008. I graduated from UCLA School of Law in 2006, where I was Senior Editor of the UCLA Law Review and spent one semester as a judicial extern to Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit. After graduation, I took and passed the California Bar Exam, then served for one year as a law clerk to U.S. District Judge Virginia A. Phillips in the Central District of California. From October 2007 until February

2009, I was employed as a partnership-track litigation associate at Quinn Emanuel Urquhart & Sullivan, LLP, in Los Angeles, California. While at Quinn Emanuel, I litigated a prisoner lawsuit as a member of the Central District of California's pro bono civil-rights panel, and as lead trial counsel I obtained a plaintiff's verdict on an Eighth Amendment theory. In February 2009, I joined the Law Offices of Dale K. Galipo, where I practiced plaintiff's civil-rights litigation. In July 2011, I started my own law firm that exclusively handles civil-rights litigation. I have continued to work closely with Mr. Galipo on several matters in which we have achieved great success.

6. I have had primary responsibility for several civil-rights appeals before the California Court of Appeal, Ninth Circuit, and U.S. Supreme Court, resulting in multiple published decisions that have clearly established several important principles including of constitutional law. At the district-court level, I have tried approximately fifteen federal civil rights jury trials, obtaining a favorable result approximately 80% of the time. I have also had primary responsibility for countless pleadings and motions, percipient, Rule 30(b)(6), and expert depositions, motions for summary judgment, pretrial documents, and post-trial motions. I have obtained excellent results for my clients, including but not limited to the following since 2023:

- 2026: Successfully defended $17 million jury verdict obtained by Mr. Galipo in fatal police shooting case against post-trial motions under Rule 50(b) and for new trial. (*Garcia v. City of Tustin*, C.D. Cal.)
- 2026: On appeal to the Ninth Circuit, obtained complete, unanimous reversal of summary judgment and adverse jury verdict arising from failure to adequately screen pretrial detainee who was suffering a stroke, in addition to denial of qualified immunity that was raised as an alternative ground for

affirmance of the verdict. Subsequently settled with remaining defendants, yielding $2.6 million in total. (*Porio v. Cnty. of Orange*, 9th Cir.)

- 2025: On appeal to the California Court of Appeal, obtained complete, unanimous reversal of summary judgment dismissing all claims arising from fatal police prone-restraint, resulting in a published opinion, 112 Cal. App. 5th 404 (2025), establishing that prone compression is deadly force and county sheriffs are not immune for their negligent training on the subject. (*A.B. (Birtcher) v. Cnty. of San Diego*, Cal. Ct. App.)
- 2025: On interlocutory appeal to the Tenth Circuit, obtained complete, unanimous affirmance of denial of summary judgment based on qualified immunity, resulting in a published opinion, 135 F.4th 1257 (2025), establishing that both the right to be free from an arrest without probable cause, and the use of excessive deadly force, were clearly established under the circumstances. (*Ibarra v. Lee*, 10th Cir.)
- 2024: Successfully defended $13.5 million jury verdict obtained by Mr. Galipo in fatal police prone-restraint case against post-trial motion for new trial, then briefed pending appeal. (*Zelaya (Cedillo) v. City of Los Angeles*, C.D. Cal., 9th Cir.)
- 2023: On appeal to the Ninth Circuit, obtained complete, unanimous affirmance of $17 million jury verdict obtained by Mr. Galipo, after successfully opposing post-trial motions in the district court. (*French v. City of Los Angeles*, C.D. Cal., 9th Cir.)
- 2023: Obtained complete, unanimous reversal of summary judgment dismissing all claims arising from the use of deadly force, reviving § 1983 and state law claims in the district court. (*Ibarra v. Lee*, 10th Cir.)
- 2023: Opposed certiorari before the U.S. Supreme Court, after obtaining complete affirmance before the Ninth Circuit of $13.2 million jury verdict

obtained by Mr. Galipo in fatal police chokehold case, including a published opinion, 6 F.4th 1098 (9th Cir. 2021), which established the entitlement to "loss of life" damages in § 1983 death cases, and an unpublished memorandum affirming the denial of post-trial motions including qualified immunity. (*Valenzuela v. City of Anaheim*, C.D. Cal., 9th Cir., U.S.)

7. In 2024, I was selected as a finalist for the Consumer Attorney of the Year award by the Consumer Attorneys of California, due to my work in opposing post-trial motions and defending the appeal in *French v. City of Los Angeles*. I was selected to the Super Lawyers Southern California list in 2025, 2026, and 2027, for the civil-rights practice area, reflecting my strong reputation among my peers. Previously, I was selected to the Super Lawyers Rising Stars list for several years. I am also frequently asked to give presentations on civil rights litigation to law students, fellow attorneys, and judges, including at national conferences and symposia, and to serve as a moot court judge, including for noted Supreme Court advocates such as Dean Erwin Chemerinsky of UC Berkeley School of Law.

8. In addition to my firm's own case load, I am frequently asked to associate with co-counsel on pending or anticipated federal civil rights matters. In particular, Mr. Galipo and other attorneys have sought my counsel and services to oppose post-trial motions and defend appeals in numerous cases such as this involving the largest civil-rights verdicts. These high-stakes opportunities, which would certainly include the case at bar, typically present themselves on short notice, demand substantial attention precluding other opportunities, attract exceptionally zealous and skilled advocacy from adverse parties, carry a high degree of risk, and come with no guarantee of any compensation. Substantial plaintiff's verdicts are not infrequently negated by a successful motion for judgment as a matter of law or new trial. Even if a plaintiff's verdict manages to survive post-trial motions, about half (48 percent) of verdicts of over $1 million in large counties were reversed or

modified on appeal from 2001 to 2005, as opposed to 35 percent of those under $100,000. *See* U.S. Department of Justice Bureau of Justice Statistics, Special Report: Appeals from General Civil Trials in 46 Large Counties, 2001–205, at 6, *available at* https://www.bjs.gov/content/pub/pdf/agctlc05.pdf (June 2006). I believe that the reversal rate for large civil-rights verdicts is likely higher, particularly in light of the Supreme Court's recent "beyond debate" formulation of the "clearly established" prong of qualified immunity. Typically, as in this case, my only compensation is the potential statutory fee awarded for my work by the Court and paid if and when a defendant has exhausted all appellate options and the judgment is enforceable. My representation of Plaintiff in this case involves significant risk and extremely high stakes. Nearly all of the clients I have represented in civil-rights litigation have been indigent, many have been minors, and all have been unable to afford my services on a paid basis and therefore I routinely accept representations on a contingency basis and advance litigation costs. If statutory attorneys' fees in line with prevailing market rates for similarly complex work were not available in cases such as this, I would not be able to represent clients such as Plaintiffs in pursuit of remedies for violations of fundamental constitutional rights. Based on my skill, experience and qualifications to practice federal civil rights litigation, my reputation, and the quality of my work product in this case and others, a reasonable 2026 rate for my professional services in this case is $1115 per billable hour.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this was executed on September 14, 2026, at Torrance, California.

By: */s/ John Fattahi*

John Fattahi