**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

Attorneys for Plaintiff, STEFFON BARBER

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEFFON BARBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO and CHRISTOPHER ALFRED,<br><br>Defendants. | Case No. 5:22-cv-00625-KK-DTB<br><br>Assigned to:<br>District Judge Kenly Kiya Kato<br>Magistrate Judge David T. Bristow<br><br>**DECLARATION OF CAROL A. SOBEL SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>[*Notice of Motion and Motion; Declarations and Exhibits thereto filed concurrently herewith*] |

# DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts. I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2. I graduated from law school and was admitted to practice in 1978. After 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997. My practice primarily involves complex civil rights litigation, focusing on the rights of homeless people, First Amendment rights and police practices. Exhibit 1 is my resumé.

3. I received many awards for my legal work over the years. In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine. That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation. In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles. I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than two decades. Additional recognition of my legal work is set out in my attached resumé.

4. For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party. Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish

reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5. As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was at the ACLU. Since entering private practice, I continue to survey firms each year to obtain relevant information for rates. As part of my survey, I obtain information concerning rates for attorneys in larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6. I also review fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing civil rights law, as well as court awards to the ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel, Western Center on Law and Poverty ("WCLP"), and other public interest groups in Los Angeles. Because many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I see those billing rates as well.

7. When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these

firms. Many of these commercial firms also serve as pro bono counsel on occasion. I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years. If I am preparing a declaration for a specific jurisdiction, I search for recent fee awards for comparably skilled and experienced attorneys in that legal market.

8. I do not charge to provide a fee declaration; however, I suggest that attorneys in private civil rights practices donate to a non-profit legal organization.

9. I believe I am extremely qualified to provide declarations for the civil rights bar and the non-profit legal community because of my work at the ACLU and in private practice since 1978 in the area of civil rights, my adjunct teaching at Loyola Law School for the past 18 years, and my role in organizing representation for large-scale legal actions. For example, at the request of the ACLU of Georgia, I organized the initial representation of nearly 1,000 Mariel Cubans in immigration hearings after they were transferred to federal prisons in Southern California following an uprising over conditions and prolonged detention at the Atlanta Federal Penitentiary in the late 1980s. Ultimately, the USC Criminal Law Clinic took over responsibility; however, in the initial rounds of hearings, I recruited dozens of law students from UCLA, Loyola and USC and supervised them in representing the Mariel Cubans at administrative hearings. Many of them are employed now at various public interest and civil rights groups in Los Angeles.

10. I also organized attorneys and students to represent about 5,000 high-school students in Southern California charged in juvenile court as truants after they walked out of school to protest the proposed Sensenbrenner immigration bill in Congress in 2005. Through all this work, I am familiar with a significant portion of civil rights and public interest law students and lawyers in Los Angeles and am able to assess their skill, experience and reputation based on my professional interactions with them.

11. In addition, unlike most other attorneys providing expert evidence of market rates, I have extensive experience in a broad range of civil rights litigation, including Public Records Act Requests, employment law, First Amendment Church/State law, free speech and assembly, anti-SLAPP litigation, homelessness litigation, excessive force, false arrest and class actions. As my resumé demonstrates, I successfully brought landmark cases in these and other civil rights subject areas, including a state-wide class-action on behalf of women's health-care providers in California against the anti-abortion group Operation Rescue. *National Abortion Federation, et al. v. Operation Rescue, et. al.*, 8 F.3d 680 (9th Cir. 1993). Many of these cases required novel approaches and became models for attorneys challenging similar issues around the country.

12. For example, in *Jones v. City of Los Angeles*, 2014 U.S. App. LEXIS 6640 (9th Cir. Apr. 10, 2014), (subsequent citation on vacatur upon settlement omitted), first filed in 2003, the groundwork was laid for *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019). When *Jones* was filed, I faced three cases in the Ninth Circuit and one at the California Supreme Court, as well as multiple lawsuits across the country, all unsuccessful in striking policies criminalizing homelessness and replicating *Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *aff'd*. 40 F.3d 1155 (11th Cir. 1994). Although the *Jones* case has now been rejected by the Supreme Court in *Grants Pass v. Johnson*, 603 U.S. 520 (2024), the legal theory I developed to protect the rights of unhoused persons was successfully applied around the country for more than two decades.

13. In *National Abortion Federation*, the district court dismissed the action pursuant to *Bray v. Alexandria Clinic,* 506 U.S. 263 (1993), holding the first two clauses of the Ku Klux Klan Act, 42 U.S.C.S. § 1985 did not state a claim for relief. The Circuit reversed and remanded, finding the district court erred in denying Plaintiffs' move to amend to add a claim under 42 U.S.C.S. § 1985(3), the

"hindrance" clause. 8 F.3d at 685-87.

14. My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. Most recently, my declaration was cited favorably in support of an award of fees in *Herrera v. County of Los Angeles,* Case No. cv 22-1013-HDV-PDx (C.D. Cal. Feb. 23, 2026) [Doc. 75, p. 3]; *Lucas R., et al. v. Robert F. Kennedy, Jr.,* Case No. 18-05741 DMG (DEMx), (C.D. Cal. March 3, 2026) [Doc. 482, p. 11]; and *HIT & MISS ENTERPRISES, INC.,* Case 2:18-cv-09996-WLH-SSC, [Doc. 138] (C.D. Cal. Feb. 11, 2025).

15. In September 2023, my declaration was cited with approval for both rates and methodology in an award of attorney fees in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. Cal. 2023). [Doc. 484, p.7]. The motion in *Myles* was filed in late 2022 in San Diego. Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 462], and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 280], on behalf of the Galipo law firm. My declaration was also cited with approval in *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023).

16. In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. 2008), granting IDEA fees pursuant to 20 U.S.C. §1415(i)(3)(c), the Court cited my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (C.D. Cal. 2007), Judge Pregerson cited my declaration and that of Barry Litt to support the requested rates. *Id.* at pp. 8-9 and n.4. Additional cases

in which my declaration was cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (C.D. Cal. May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 29,963-64 (C.D. Cal. 2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. Wash. 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. Jan. 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012); and *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018), awarding EAJA fees to the ACLU. In *Jochimsen*, a unanimous court held I was qualified as an expert on market rates in California.

17. I also litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal. 4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and affirming a nearly $2 million fee award in 1999 in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. I was co-counsel in that case with attorneys Connie Rice and Barry Litt. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (9th Cir. 2014), establishing entitlement to fees as a

"prevailing party" based on the Circuit's necessary approval of a settlement that was, in turn, conditioned on vacatur of the panel decision.

18. I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

19. In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours. Many of these cases involve multiple attorneys and law offices. In my own cases, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours. This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items. For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of work for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates. The unadorned lodestar in *Tipton* was approximately $1,900,000.

20. In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case. Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable. The fee approved in the case 25 years ago was $3,713,000.

21. In all the fee declarations I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand

this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful. *See Nadarajah,* 569 F.3d at 910.

22. *Blum* directs that the most important factors in determining reasonable market rates are skill and experience; the size of the firm is not a determinative factor. This principle in *Blum* was recently reiterated by the Ninth Circuit in *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.,* 168 F.4th 608, 2026 U.S. App. LEXIS 5422, *38 (9th Cir. 2026) (remanding a decision reducing rates based on firm size). *See also, Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993) (upholding sole practitioners and non-profit law firm staff rates at those charged by "corporate attorneys of equal caliber." *Id.* at 1545; *see also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

23. I apply several additional principles to assess market rates. First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2008).

24. Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys

who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

25. When the specific rate evidence identified in the preceding paragraph is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

26. I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

27. Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

28. To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal

market. Each is a true and correct copy of the document available in the Court's files. Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). For the last three years, I have used a slightly higher increase of five percent to reflect a rise in inflation rates. Even that is below what I observed for increases in the Los Angeles legal market at firms doing similarly complex litigation.

29. I have not filed a contested fee motion in several years other than to seek Court approval of the lodestar fees in class-action settlements, or to settle non-class cases. In 2024, the Court approved the rate of $1,325 an hour for me in granting final approval of a class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64].

30. In 2022, the Court approved a rate of $1,150 an hour for me in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM (C.D. Cal.), a class-action challenging Orange County's regulations for determining eligibility to qualify for General Relief. [Doc. 40, p.5]. In the same case, the Court approved the 2022 rate of $650 an hour for my co-counsel, Brooke Weitzman, then with 8 years of experience.

31. In May 2019, I applied the rate of $1050 an hour to calculate the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.)

and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS (C.D. Cal.). My last court awarded fee in a contested motion was $875 in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

32. I understand fees are sought by this motion for Dale Galipo at the 2026 rate of $1500 an hour. I am very familiar with Mr. Galipo and know him for many years. In my experience he is, perhaps, the most skilled trial lawyer in complex civil rights cases involving deaths and serious injury caused by law enforcement. Based on discussions I have had with other civil rights lawyers in California, I believe my view of Mr. Galipo's reputation and his skill are broadly shared.

33. I understand that fees are also being sought for Renee Masongsong, an attorney at the Galipo law firm who assisted in this matter. While I have never worked with her, I have spoken with Ms. Masongsong in the past on several occasions. I understand, based on reviewing the firm's website, that she is a 2011 law graduate, currently with 15 years of experience. She is requesting a rate of $ 900 an hour.

34. Attached to my declaration are several exhibits setting out rates for attorneys in the Central District legal market. Each is a true and correct copy of the document from an official Court website, LEXIS or Westlaw, or an official government website.

35. In my experience, the rates for counsel in this matter are well within the market rate for attorneys of their skill, experience and reputation in the public interest legal community but well below rates for comparably skilled and experienced attorneys at large firms engaged in similarly complex litigation in the Los Angeles legal market.

36. Attached at Exhibit 2 is the Declaration of Michael Strub, Jr. in *Nelson*

*v. Bridgers*, an anti-SLAPP lawsuit in Los Angeles Superior Court. Case No. 21STCV35635. The motion included fees at 2022 rates of $1400 an hour for name partners at Greenberg & Gross. Both attorneys are identified in Exhibit 2 as 1988 graduates. A copy of the Order approving the fee motion is attached at Exhibit 3. Notably, although the court reduced the total requested fees based on excessive billing for some tasks performed by multiple associates, the Court approved the requested rates. Ex. 3, pp. 1-2.

37. Attached at Exhibit 4 is the fee award by Judge Marshall to the law firm of Hadsell, Stormer, Renick and Dai in *Pineda v. City of Los Angeles*, Case 2:21-cv-06470-CBM-AS (C.D. Cal. April 19, 2024) [Doc. 195]. I am very familiar with each of these attorneys. The motion was filed in 2023, seeking 2023 market rates. The Court approved $1,400 an hour for attorney Dan Stormer and $915 an hour for Morgan Ricketts. Ex. 4, pp. 3,4.

38. As the Court's order notes, referencing a supplemental filing by Plaintiff's counsel in *Pineda*, Mr. Stormer received fees in 2024 at $1500 an hour in *Pederson, et al. v. The County of Plumas*, 2:89-1659 (E.D. Cal. Filed Dec. 4, 1989). Ex. 4, p.6.

39. Ms. Ricketts was noted to be a 2009 law graduate. Ex.4, p. 7. In 2023 she had 14 years of experience, one year less than Ms. Masongsong. Even applying a modest annual increase of 3 percent, Ms. Ricketts' increase over two years would bring the comparable billing rate in the range of $970 an hour, not counting the additional experience for Ms. Masongsong.

40. Exhibit 5 is a true and correct copy of the contract between the City of Los Angeles and the law firm of Gibson, Dunn & Crutcher in *Los Angeles Alliance for Human Rights, et al. v. City of Los Angeles, et al.,* 2:20-cv-02291-DOC-KES. At p. 23, the contract sets out Gibson Dunn's standard billing rates for 2025 and its discounted rates for the *LA Alliance* litigation. I am very familiar with

the litigation in the case and represent an intervenor.

41. The lead Gibson partner on the case is Theane Evangelis. Her standard rate for 2025 was $2,425 and her discounted rate was $1,295.00. Ex. 5, Ex. B, p. 23. Although I do not know her personally, I read a number of briefs she wrote and watched her argument before the Supreme Court in *Grants Pass v. Johnson*, 603 U.S. 520 (2025). Based on my review of her profile on the firm's website, I believe she is a 2003 graduate, now with 22 years of experience. Her standard 2025 rate is almost $1,000 an hour above the rate for Dale Galipo, who has nearly twice the experience.

42. In Exhibit 5, the standard 2025 billing rate for Marcellus McRae, also a partner at Gibson Dunn, is listed as $2,245 an hour. Based on my review of the firm's website, I formed the belief that Mr. McRae is a 1988 law graduate, now with 27 years of experience. *Id.* His 2025 customary billing rate is more than $700 an hour higher than the rate requested for Mr. Galipo.

43. As another point of comparison in Exhibit 5, the 2025 billing rate for Gibson Dunn attorney Bradley Hamburger is $2,110 an hour, nearly $1,200 an hour above the rate requested for Renee Masongsong. *Id.* I reviewed Mr. Hamburger's listing on the firm's website and, on that basis, believe he is a 2009 law graduate. In 2009 he had 1 more year of experience than Ms. Masongsong has now.

44. Finally, Gibson's standard 2025 rate for a seventh-year associate is $1,555 an hour, higher than Mr. Galipo's requested rate. *Id.*

45. In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-AHG (S.D. Cal. 2020), Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market. A true and correct copy of the Edelman Declaration is attached at Exhibit 6. *Herring Networks* was an anti-SLAPP lawsuit in the Southern District of California. The motion sought fees for Nathaniel Bach, then a senior associate in Gibson Dunn's

Los Angeles office, at his customary 2019 rate of $915 an hour and his 2020 rate of $960 an hour. Ex. 6, pp. 5-6. I reviewed Mr. Bach's listing on the State Bar and his current firm and, on that basis, concluded that he is a 2006 law graduate. In 2020, the year of the *Herring* award, Mr. Bach had 14 years of experience. Although the Court in *Herring* reduced Mr. Bach's rate to align with local market rates in San Diego, more recent awards to Mr. Bach are Los Angeles market rates and support the reasonableness of the rates in this motion.

46. Attached at Exhibit 7 is the declaration of Nathaniel Bach submitted in support of an award of fees in *Tracy Anderson Mind and Body, LLC v. Megan Roup*, et al., Case No. 2:22-cv-04735-PSG-E (C.D. Cal. 2023), an anti-SLAPP case. In his declaration, Mr. Bach set out his standard 2022 rate of $960 an hour and his standard 2023 rate of $1,065 an hour, an increase of approximately 12 percent annually. Ex. 7, p. 5. In 2023, Mr. Bach had 17 years of experience, two years more than Renee Masongsong has now. His 2023 rate of $1,065 is approximately 10 percent above the 2026 rate requested for Renee Masongsong.

47. Attached at Exhibit 8 is the 2024 order of final approval by Judge Snyder of the class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64], filed October 22, 2024. Among the attorneys for whom fees were approved were Paul Hoffman at the 2024 rate of $1,425 an hour. I have known Mr. Hoffman since approximately 1982. He was my supervisor on the legal staff of the ACLU. Mr. Hoffman is a 1976 law graduate. Erin Darling was also approved at the 2024 rate of $975 an hour. I have known Mr. Darling since he was a law student and, based on my personal knowledge, believe him to be a 2008 graduate. In 2024, he had 16 years of experience, one year more than Ms. Masongsong has now.

48. The rates sought by this motion are consistent with previous awards

of fees to the same attorneys in the Central District. Attached at Exhibit 9 is the Order awarding fees to Mr. Galipo and associated in his office in *Paolo French v. City of Los Angeles* (*French II*), Case No. EDCV 20-0416 JGB (SPx) (C.D. Cal. 2024). [Doc. 188]. As the Court's order notes, I provided a supporting fee declaration in this matter both pre- and post-appeal. The 2024 award followed the City's unsuccessful appeal. The Court approved the 2024 rate of $1400 an hour for Dale Galipo and $975 an hour for John Fattahi. *Id.* at 5-6. I have known Mr. Fattahi since approximately 2007 and believe he is a 2006 law graduate.

49. Attached at Exhibit 10 is a rate sheet filed by Robbins Geller Rudman & Dowd, a nationally recognized class-action litigation firm. Over the years, I have known several attorneys at the firm and provided a declaration on the reasonableness of the hours incurred in defeating a SLAPP lawsuit by Trump University. The 2024 rates were provided for a lodestar crosscheck in *Dicker v. TuSimple Holdings, Inc., et al.,* Case No. 3:22-cv-01300 BEN-MSB. *See* 2024 U.S. Dist. LEXIS 232627 (CA SD 12 18 24). The approved 2024 rates in Exhibit 9 include $1400 an hour for Darren Robbins, identified on the firm's website as a 1993 law graduate.

50. Attached at Exhibit 11 is the 2025 Real Rate Report. The report provides market rates by quartile and mean assessments. I know several of Mr. Galipo's associates over the years and have worked with them in different contexts. Given the skill, experience and reputation of attorneys at the Galipo firm, I would place Mr. Galipo and his associates in the top quartile for their respective categories; however, because the Real Rate Report does not provide fourth-quartile rates, I have applied third-quartile rates. The Real Rate Report for Los Angeles supports the reasonableness of the rates sought.

51. The third-quartile rate for a partner in Los Angeles for 2025 was $1,334 an hour and for an associate it was $1041 an hour. Ex. 11, p.20. The 2025

third-quartile rate for an attorney in Los Angeles with seven or more years of experience was $1,065 an hour. Ex. 11, p. 68.

52. The Real Rate Report also sets out a more detailed analysis of rates for Los Angeles by the size of the law firm. Those rates are a proper comparator since the skills, experience and reputation of attorneys at larger firms are the measure for similarly skilled and experienced attorneys in the public interest and civil rights legal communities. For example, the breakdown by City and areas of practice reports rates up to $1,800 or more for the Los Angeles legal market. Ex. 11, pp. 207-209.

1. The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Years | Rate |
|---|---|---|---|---|---|
| 2 | Alan Greenberg | 1988 | 2022 | 34 | $1,400.00 |
| 2 | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |
| 4 | Dan Stormer | 1974 | 2023 | 49 | $1,400.00 |
| 4 | Morgan Ricketts | 2009 | 2023 | 14 | $ 915.00 |
| 5 | Theane Evangelis | 2003 | 2025 | 22 | $2,425.00 |
| 5 | Marcellus McRae | 1988 | 2025 | 37 | $2,245.00 |
| 5 | Bradley Hamburger | 2009 | 2025 | 16 | $2,110.00 |
| 5 | 7th Year Associate | 2018 | 2025 | 7 | $1,555.00 |
| 6 | Nathaniel Bach | 2006 | 2020 | 14 | $ 960.00 |
| 7 | Nathan Bach | 2006 | 2022 | 16 | $ 960.00 |
| 7 | Nathaniel Bach | 2006 | 2023 | 17 | $1,065.00 |
| 8 | Erin Darling | 2008 | 2024 | 16 | $ 975.00 |
| 8 | Paul Hoffman | 1976 | 2024 | 48 | $1,425.00 |
| 9 | Dale Galipo | 1988 | 2024 | 36 | $1,400.00 |
| 9 | John Fattahi | 2006 | 2024 | 18 | $ 975.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10 | Darrell Robbins | 1993 | 2024 | 31 | $1,400.00 |
| 11 | Real Rate Report | partner | 2025 | -- | $1.365.00 |
| 11 | Real Rate Report | Associate | 2025 | -- | $ 982.00 |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of March, 2026 at Los Angeles, California.

Carol Sobel

CAROL A. SOBEL