Nathan A. Oyster (SBN 225307)
E-mail: noyster@bwslaw.com
Caylin W. Jones (SBN 327829)
E-mail: cjones@bwslaw.com
Delaney K. Sirmay (SBN 345397)
E-mail: dsirmay@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, 40th Floor
Los Angeles, California 90071-2942
Tel: 213.236.0600 Fax: 213.236.2700

Attorneys for Defendants
COUNTY OF SAN BERNARDINO and
DEPUTY CHRISTOPHER ALFRED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEFFON BARBER, an individual,

Plaintiff,

v.

COUNTY OF SAN BERNARDINO, a municipal entity, DEPUTY CHRISTOPHER ALFRED, an individual, and DOES 1 through 10, inclusive,

Defendant.

Case No. 5:22-cv-00625-KK-DTBx

**DEFENDANTS' CORRECTED OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR ATTORNEYS' FEES**

**Date:** October 29, 2026
**Time:** 9:30 a.m.

Defendants COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED (hereinafter "Defendants") hereby submit the following Corrected Opposition to Plaintiff's Amended Motion for Attorney's Fees.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. RELEVANT PROCEDURAL HISTORY ..... 1

III. PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES FOR DEFENSE WORK IN HIS PRIOR CRIMINAL PROSECUTION. ..... 3

A. Section 1988's Plain Language Does Not Authorize Attorneys' Fees And Costs For Criminal Defense Work. ..... 3

B. The Narrow Webb Exception Does Not Apply. ..... 4

1. Plaintiff Misstates the Requisite Standard. ..... 4

2. Plaintiff's Criminal Defense Is Not "Useful." ..... 5

3. Plaintiff's Criminal Defense Is Not "Ordinarily Necessary" And Plaintiff Misrepresents The Reason For The Stay. ..... 6

C. Attorneys Bryant's, Duckett's, Digg's Times Should Be Excluded. ..... 8

IV. PLAINTIFF'S LODESTAR AMOUNT SHOULD BE REDUCED. ..... 8

A. Lodestar Reasonable Rate and Kerr Factors. ..... 8

B. The Requested Hourly Rates Are Unreasonable. ..... 9

1. Counsel's Hours Exceed Prevailing Los Angeles Market Rates. ..... 9

2. Plaintiff's Counsel's Own Declarations Confirm Their Requested Rates Are Unreasonable. ..... 13

3. The Increase In Plaintiff's Hours In The Renewed Motion Compared To The Original Motion Is Unreasonable. ..... 16

C. Clerical or Secretarial Work Are Non-Compensable. ..... 19

D. Kerr Factors Require A Lodestar Reduction. ..... 20

1. The Case Was Not Novel, Difficult, Or Undesirable Under Kerr Factors 1: Time & Labor, 2: Novelty & Difficulty, And 10: Undesirability Of Case. ..... 20

2. No Fees Should Be Awarded For The Unsuccessful Monell Claim Under Kerr Factor 8: Results Obtained. ..... 21

V. PLAINTIFF'S REQUEST FOR A 2.0 MULTIPLIER IS NOT APPROPRIATE ..... 22

A. Federal Law Bars A Contingency Enhancement. ..... 22
B. The Bane Act Does Not Authorize An Enhancement. ..... 22
VI. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Borunda v. Richmond,
885 F.2d 1384 (9th Cir. 1988) ........ 9

City of Burlington v. Dague,
505 U.S. 557 (1992) ........ 26

Doran v. Corte Madera Inn Best W.,
360 F. Supp. 2d 1057 (N.D. Cal. 2005) ........ 23

Greer v. Holt,
718 F.2d 206 (6th Cir. 1983) ........ 11

Heck v. Humphrey,
512 U.S. 477 (1994) ........ 9

Hensley v. Eckerhart,
461 U.S. 424 (1983) ........ *passim*

Kerr v. Screen Extras Guild, Inc.,
526 F.2d 67 (9th Cir. 1975) ........ 5, 13, 24, 25

LA Int'l Corp. v. Prestige Brands Holdings, Inc.,
168 F.4th 608 (9th Cir. 2026) ........ 14

Lui v. Comm'n, Adult Ent., De,
369 F.3d 319 (3d Cir. 2004) ........ 11

Morales v. City of San Rafael,
96 F.3d 359 (9th Cir. 1996) ........ 12

Nadarajah v. Holder,
569 F.3d 906 (9th Cir. 2009) ........ 23

Perdue v. Kenny A. ex rel. Winn,
559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ........ 26

Pierce v. Cnty. of Orange,
905 F. Supp. 2d 1017 (C.D. Cal. 2012) ........ 26

Shapiro v. Pemmasani,
No. CV 23-4762-KK-AGRX, 2024 WL 5275497 (C.D. Cal. July 23, 2024) ... 14

Smith v. City of La Verne,
No. 24-5805, 2025 WL 2992541 (9th Cir. Oct. 24, 2025) ... 27

Smith v. City of La Verne,
No. CV 23-644-KK-EX, 2024 WL 4331733 (C.D. Cal. Sept. 4, 2024) ... 27

United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL,
579 F.3d 1315 (11th Cir. 2009) ... 11

United Steelworkers of Am. v. Phelps Dodge Corp.,
896 F.2d 403 (9th Cir. 1990) ... 17

Van Gerwen v. Guarantee Mut. Life Co.,
214 F.3d 1041 (9th Cir. 2000) ... 26

Vargas v. Howell,
949 F.3d 1188 (9th Cir. 2020) ... 16, 18, 24

Venuti v. Riordan,
702 F.2d 6 (1st Cir. 1983) ... 11

Webb v. Bd. of Educ. of Dyer Cnty., Tenn.,
471 U.S. 234 (1985) ... 7, 8, 9, 10

Welch v. Metro. Life Ins. Co.,
480 F.3d 942 (9th Cir. 2007) ... 13, 17, 21

**Statutes**

U.S.C. § 1988 ... *passim*

42 U.S.C. § 1988(b) ... 7

Bane Act ... 26, 27

Cal. Civ. Code § 52.1 ... 27

California Civil Code section 52(a) ... 27

California Penal Code 2459(c) .......... 5

California Penal Code section 245(a)(1) .......... 5, 9

Penal Code Section 245(c) .......... 5

Penal Code Section 644/187(a) .......... 5

**Other Authorities**

Fifth Amendment .......... 6, 11

Decl. of Knapton ¶ 15 .......... 24

Decl. of Knapton ¶ 21 .......... 24

Rule 59 .......... 18

## I. INTRODUCTION

Plaintiff's requests for attorney's fees should be significantly reduced for several reasons. First, Plaintiff is not entitled to fees related to his separate criminal defense, in which he was convicted of violating California Penal Code section 245(a)(1) and sentenced to 13 years in prison. Section 1988, which controls the award under section 1983, does not authorize fee-shifting work for prosecuting any actions unrelated to the enforcement of civil rights. Second, as supported by fee expert Mr. Gerald Knapton, Plaintiff's fees are unreasonable because: (1) counsel seeks fees above prevailing Los Angeles market rates; (2) counsel gives either no basis or contradictory evidence for their fees; and (3) counsel's fees are overstaffed, redundant, and duplicative. Third, clerical work is not compensable as attorney's fees. Fourth, the Kerr factors warrant a reduction of the lodestar figure because the time and labor of this case was not atypical, the legal and factual issues involved were not novel or difficult, and Plaintiff presented no evidence of its undesirability. At a minimum, Plaintiff's fees attributable to the unsuccessful Monell claim should not be awarded. Finally, Plaintiff is not entitled to a 2.0 multiplier because not only is it excessive, but it is not authorized under federal or state law. For the reasons below, and as Mr. Knapton's analysis confirms, the Court should substantially reduce Plaintiff's request for attorney's fees.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff was arrested on April 23, 2021 for violating California Penal Code 2459(c). He was subsequently charged in People v. Barber, FVI21001312, on two counts: (1) violation of Penal Code Section 644/187(a) attempted murder of a peace officer and (2) violation of Penal Code Section 245(c) Assault Upon a Peace Officer.

Almost two years after his arrest, Plaintiff filed a complaint for the current civil action on April 12, 2022. (Dkt. 1.) On July 27, 2022, however, the proceedings in the case were stayed "in the interests of justice." (Dkt. 20.) Namely, both parties

stipulated to the stay because requiring Plaintiff to participate in discovery for his civil case while his criminal case was still pending could unfairly prejudice him and could preclude Defendants from discovery, should Plaintiff invoke his Fifth Amendment Rights. (Dkt. 19.) On December 16, 2024, Plaintiff was convicted of assault with a deadly weapon on a peace officer. (Dkt. 97-5.) He was thus sentenced to 13 years in state prison the following June 20, 2025. (Dkt. 97-6.)

As to the civil suit, Plaintiff requested to restore the lawsuit to active status on December 19, 2024. (Dkt. 43.) Accordingly, on May 17, 2025, Plaintiff filed his First Amended Complaint. (Dkt. 61.). On January 30, 2026, Plaintiff's civil case proceeded to trial by jury, alleging six claims: (1) excessive force; (2) Monell; (3) battery; (4) negligence; (5) Bane Act; and (6) intentional infliction of emotional distress. (Dkts. 61, 171.) The jury returned its verdict on February 9, 2026, finding in favor of Plaintiff for all claims, except for Claim Two. (Dkt. 200.) The jury therefore awarded Plaintiff $7,250,000 in past pain and suffering and emotional distress; $18,250,000 in future pain and suffering and emotional distress; and $1,850,000 [1] in future economic loss. Id.

Shortly thereafter on March 25, 2026, Plaintiff filed a Motion for Attorneys' Fees ("Original Motion"), with accompanying declarations. (Dkts. 210-213.) That same day Defendants filed a Renewed Motion for Judgment as a Matter of Law. (Dkts. 208, 210.) On June 1, 2026, the Court issued an Order on Defendants' Motion for Judgment as a Matter of Law and denying Plaintiffs' Original Motion for Attorney's fees as moot. (Dkt. 232.) Plaintiffs have now filed a renewed Motion for Attorneys' Fees ("Motion"). (Dkt. 261.) The Motion is accompanied by declarations by Dale Galipo, Renee Masongsong, Rodney Diggs, James Bryant, Benjamin Levine, John Fattahi, Darci Gilbert, and Carol A. Sobel. (Dkts. 261-262.)

---

[1] This was subsequently reduced to $500,000 following an agreement between the parties. Dkt. 256.

## III. PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES FOR DEFENSE WORK IN HIS PRIOR CRIMINAL PROSECUTION.

Plaintiff requests attorney fees and costs for the time counsel spent on his prior criminal defense arising from the April 27, 2021 incident, in which he was convicted of assault of a deadly weapon on December 16, 2024. (Mot. at 24.) Plaintiff's request, however, must be denied because: 1) Section 1988 does not authorize such fees under section 1983 and 2) Plaintiff's situation does not fall under the narrow Webb exception.

### A. Section 1988's Plain Language Does Not Authorize Attorneys' Fees And Costs For Criminal Defense Work.

Section 1988(b) authorizes a court to award a prevailing party "reasonable attorney's fees" in any "action or proceeding to enforce a provision of" certain civil rights statutes, including section 1983. 42 U.S.C. § 1988(b). Its plain text title specifically denotes that it applies in "[P]roceedings in vindication of *civil* rights[.]" See title of U.S.C. § 1988 (*emphasis added*). Supreme Court jurisprudence has held that a Plaintiff is "not automatically entitled to claim attorney's fees for time spent" in prior proceedings, even where that prior work supplements a subsequent civil rights lawsuit. Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 241 (1985).

Applying that principle, attorneys' fees incurred in defending against a prior criminal charge are not compensable under section 1983. Plaintiff argues that he is entitled to fees for time spent on his previous criminal defense because it arose "from the same incident at the heart of this civil rights action." (Mot. at 24.) Nonetheless, based on clear statutory language and jurisprudence, Plaintiff's criminal defense was, by definition, not an action to enforce his *civil* rights and therefore falls squarely outside section 1988's text.

**B. The Narrow Webb Exception Does Not Apply.**

Plaintiff erroneously attempts to claim Webb's narrow exception that his counsel's criminal defense work was "useful and of a type ordinarily necessary" to advance his § 1983 claim. (Mot. at 25.) He argues that it arose from the same set of facts and was a necessary prerequisite to his civil action, thereby justifying compensation. Id. However, Plaintiff's argument is a far cry from what the standard authorizes.

**1. Plaintiff Misstates the Requisite Standard.**

Webb carves out a limited exception to the general principle that only civil rights work is recoverable for attorney's fees under § 1983—the unrelated proceeding must be "both useful and of a type ordinarily necessary to advance the civil rights litigation[.]" Webb, 471 U.S. at 243. Plaintiff misstates the standard by misapplying Hensley. Specifically, he argues that the standard articulated in Webb is satisfied where the criminal and civil matters "arise from a 'common core of facts," and where work performed in the criminal case is "indispensable to the development of the factual record underlying the civil claims." (Mot. at 25.) Contrary to Plaintiff's argument, Hensley governs how courts should treat multiple, unrelated claims within a *single* civil rights lawsuit for an attorneys' fee calculation. Hensley v. Eckerhart, 461 U.S. 424, 434-36 (1983). It does *not* extend its ruling to how courts should address *two distinct* criminal and civil lawsuits. Id.

The Webb exception is also far narrower than what Plaintiff suggests. The proponent invoking the exception must establish that the noncivil rights work is: (1) discrete; (2) useful; and (3) ordinarily necessary for the civil rights litigation. Webb, 471 U.S. at 243. Therefore, Plaintiff's reliance on Hensley is misplaced and even under Webb's standard, Plaintiff's argument still fails. Plaintiff's state criminal defense is not "useful and of a type ordinarily necessary" because 1) Plaintiff filed his § 1983 action while his criminal conviction remained pending and 2) Plaintiff's criminal defense was not a condition precedent to maintain his civil rights action.

See Webb, 471 U.S. at 243.

**2. Plaintiff's Criminal Defense Is Not "Useful."**

Plaintiff seeks to argue that counsel's work in the prior criminal proceeding was useful because had Plaintiff been convicted of attempted murder or assault with a deadly weapon on a peace officer under Penal Codes § 187(a) and 245(c), respectively, his § 1983 excessive force claim *could have* been potentially "compromised or precluded." (Mot. at 24-25.) If Plaintiff had been convicted on those grounds, he argues, then he would have faced a potential Heck bar. See Heck v. Humphrey, 512 U.S. 477 (1994) (finding that for civil damages to be recoverable under § 1983 for an allegedly unconstitutional conviction, the conviction must have been reversed, expunged, or declared invalid). Thus, it is argued, counsel's efforts to fight his charges were useful in the present civil claim. However, Plaintiff's argument is unavailing. Here, Plaintiff actually was convicted of assault with a deadly weapon in violation of Penal Code § 245(a)(1) and sentenced to 13 years in prison. Accordingly, the exoneration theory on which Plaintiff depends under Heck cannot stand. In fact, Plaintiff's case stands in contrast to Borunda v. Richmond, 885 F.2d 1384 (9th Cir. 1988) (finding that the Borundas were entitled to attorneys' fees incurred for criminal defense work under later § 1983 civil damages claims because their convictions were reversed, and were interlinked as a direct and foreseeable consequence of officers' unlawful conduct.) Unlike *Borunda*, Plaintiff was actually convicted under Penal Code § 245(a)(1) and his criminal fees were therefore not "useful" to his civil excessive force claim. As a policy matter, allowing Plaintiff attorney's fees in this case would create a dangerous precedent that a criminal defendant can commit a crime against a peace officer and then sue him to obtain fees for his criminal case.

Moreover, whatever incidental benefit Plaintiff's ultimate conviction on a lesser charge produced for his civil case does not automatically convert his criminal defense into "useful" § 1983 civil rights work under Webb's definition. The

Supreme Court has found that "useful" work is performed "on the litigation"—namely, drafting initial pleadings, discovery, and other theory-developing work associated with the civil case at hand. Webb, 471 U.S. at 243. Here, criminal defense requires different legal strategies, different standards of proofs, and different elements to be proven than in a civil rights litigation. Plaintiff's defense against criminal charges thus advances entirely different objectives than the enforcement of a civil rights action (i.e., the avoidance of a conviction and incarceration). The motivation of a criminal defendant to prevail at trial, or otherwise reap positive benefits from a successful defense, exists separate and apart from a civil rights action. Accordingly, the fact that a party may utilize successes from the criminal defense in advance of a section 1983 action does not mean that the defense is "useful" and "necessary to advance" the section 1983 litigation.

### 3. Plaintiff's Criminal Defense Is Not "Ordinarily Necessary" And Plaintiff Misrepresents The Reason For The Stay.

Plaintiff's counsel's work in his criminal defense is not "ordinarily necessary" to his civil action. In Webb, the Supreme Court expressly rejected the notion that attorney work performed in Webb's prior administrative proceeding was compensable in his later §1983 civil litigation because such proceedings are not required under §1983. . Webb, 471 U.S. at 243-44. The Court thus denied Webb's request for such fees, finding that he failed to specify how attorney work in those proceedings specifically advanced his civil rights action, even though records of those proceedings were filed in support of his §1983 claim. Id. Here, Plaintiff makes the same error. Aside from the fact that § 1983 does not require litigation of criminal prosecution, Plaintiff has shown that litigating the criminal prosecution was not a necessary prerequisite because he filed his § 1983 action in April 2022 while his own criminal case remained pending. (Dkt. 1.) He did so more than two years before his December 16, 2024 criminal conviction. Had the criminal defense been a necessary prerequisite to the civil action, the parties would not have had to stay the

civil action in July 2022. (Dkt. 19.) Further, Plaintiff misrepresents the reason for the stay. Plaintiff's criminal defense did not necessarily govern "whether the civil case could proceed at all." (Mot. at 25.) Rather, both parties agreed to pause the civil case on July 27, 2022 because requiring Plaintiff to participate in civil discovery could potentially unfairly prejudice him while the criminal case was pending, and could bar Defendants from necessary discovery if Plaintiff invoked his Fifth Amendment Rights. (Dkt. 19.)

Last, Plaintiff's argument that excluding criminal defense hours "would undercompensate counsel for work that was essential to the prosecution and ultimate success of Plaintiff's § 1983 claim" cannot stand. (Mot. at 25-26.) In Greer v. Holt, 718 F.2d 206 (6th Cir. 1983), the court expressly declined to extend attorneys' fees for criminal defense work despite counsel's contention that their criminal defense victory was a "necessary predicate" to Greer's success in his subsequent § 1983 civil action. The court held that even while the "operative facts were identical in Greer's state criminal and . . .federal civil rights cases [including identical counsel], the actions were not the same" that plaintiff was not entitled to attorney's fees for the criminal case. Id. at 208. The court emphasized that courts that have awarded attorney's fees for work completed in prior administrative or state court hearings did so only where it was part of the "*same action*." Id. (*emphasis added*). Notably, the First, Third, and Eleventh Circuits have all addressed nearly identical requests for attorney's fees and just as in Greer, each Circuit has held that attorney's fees for the criminal case are not recoverable. See Venuti v. Riordan, 702 F.2d 6, 9 (1st Cir. 1983); see also Lui v. Comm'n, Adult Ent., De, 369 F.3d 319, 328 (3d Cir. 2004) ("Thus, even a successful defense of the State criminal charges would not entitle Lui to seek fees and costs in federal court, and the stay of those claims was therefore in error."); United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd., N.W., Huntsville, AL, 579 F.3d 1315, 1325 (11th Cir. 2009) (same).

Despite Plaintiff's efforts to argue that the his proceedings "arose from the

same set of facts," his prior criminal prosecution is simply *not* the same action as his civil one. Rather, Plaintiff's criminal prosecution was an altogether separate proceeding, with a separate docket, different adversary, different purpose, and for the most part, different counsel. Plaintiff, in his criminal case, was seeking to combat his criminal charges of assault on a police officer, not at proving that his civil rights were violated by Deputy Alfred and San Bernardino County, as in his civil case. Therefore, Plaintiff's argument that his criminal defense was "useful and of a type ordinarily necessary" to his civil litigation foundationally lacks merit and cannot stand.

### C. Attorneys Bryant's, Duckett's, Digg's Times Should Be Excluded.

Because at least 450.6 hours of James Bryant's declaration is solely for criminal defense work, it must be excluded in full. (Mot. at 30-31; see also Declaration of James Bryant (Dkt. 261.)) Same goes for Ryan Duckett's criminal defense work. Id. Rodney Diggs also block-billed for both criminal and civil work, starting in 2021. Thus, his entries that denote time billed for criminal work must also be excluded. The fee applicant bears the burden of submitting evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate or not "reasonably expended," a reduction is justified. Hensley, 461 U.S. at 433-434. Therefore, Mr. Bryant's, Mr. Duckett's, and Mr. Diggs hours should be excluded, or at least reduced, as part of a reasonable attorneys' fee calculation.

## IV. PLAINTIFF'S LODESTAR AMOUNT SHOULD BE REDUCED.

### A. Lodestar Reasonable Rate and Kerr Factors.

Courts employ the "lodestar" method to determine a "reasonable attorney's fee" under § 1988. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Id. After computing the lodestar figure, Courts then have discretion to assesses whether it is necessary to adjust it upwards or downwards based on Kerr factors, which are:

(1) time and labor required; (2) novelty and difficulty of the questions involved; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorneys; (10) 'undesirability' of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

Plaintiff bears the burden to prove their fees and must submit evidence supporting their hours. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007). The fee applicant therefore must establish "entitlement to an award and [document] the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. Here, Plaintiff's lodestar should be reduced because first, its requested hourly rates and hours billed are unreasonable, and second, Kerr factors 1, 2, 8, and 10 require a reduction.

### B. The Requested Hourly Rates Are Unreasonable.

#### 1. Counsel's Hours Exceed Prevailing Los Angeles Market Rates.

The reasonable rate is determined by the prevailing market rate in the relevant community, not the rates actually charged to the prevailing party. 42 U.S.C. § 1988 (see Notes of Decisions: O'Connor's Annotations.); see also Welch, 480 F.3d at 946. The Ninth Circuit standard establishes that the prevailing market rate is determined by considering similar work performed by attorneys of comparable skill, experience, and reputation. Id. In this case, Plaintiff seeks rates ranging up to $1,500 per hour for Mr. Galipo and $1,250 per hour for Mr. Diggs and Mr. Bryant. (Mot. at 30.) However, as determined by Mr. Knapton's expert testimony, these rates sit at the outer edge for prevailing rates for Los Angeles practitioners of comparable skill and experience and should be adjusted downwards.

Mr. Knapton is a senior partner in the Los Angeles office of Ropers Majeski, with nearly 30 years' of experience in analyzing and opining on the reasonableness of attorney fee claims, whose time is approximately equally divided between supporting and opposing fee petitions. Knapton Decl. ¶¶ 1-8. Mr. Knapton's status as an expert in the field is without question—he has been qualified as a testifying expert over 70 times. Id. at ¶ 8; Exhibit 1 (Mr. Knapton's curriculum vitae). Mr. Knapton's knowledge of Los Angeles legal market rate stems from his background of reviewing the rates paid in the Los Angeles area almost every day from 2014 to today, and having personally reviewed more than $6 billion in fees since then. Id. at ¶ 39. Aside from his personal knowledge, Mr. Knapton anchors his reasonable rates on the 2025 Wolters Kluwer Real Rate Report ("Real Rate Report") as an objective source. Id. at ¶¶ 40-45; Exhibit 3. The Real Rate Report compiles anonymized, actual billing data from a database exceeding $200 billion in paid and processed invoices, organized by location, experience, firm size, and practice area. Id. In fact, the Ninth Circuit has approved of Mr. Knapton's expertise on fees and approved his use of Real Rate Report in LA Int'l Corp. v. Prestige Brands Holdings, Inc., 168 F.4th 608 (9th Cir. 2026). Id. at ¶ 44. Numerous judges of this District have also recognized the Real Rate Report as a reliable guidepost, including this Court. Shapiro v. Pemmasani, No. CV 23-4762-KK-AGRX, 2024 WL 5275497 at *5 (C.D. Cal. July 23, 2024) (acknowledging reliance on Real Rate Report is appropriate in identifying reasonableness of hourly rates). The 2025 Real Rate Report establishes rates paid for litigation work by attorneys in Los Angeles as follows:

**Section I: High-Level Data Cuts**

**Cities**
By Matter Type

**2025 Real Rates for Associate and Partner** | **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Los Angeles CA | Litigation | Partner | 289 | $519 | $875 | $1,334 | $984 | $945 | $866 |
| | | Associate | 229 | $461 | $700 | $1,041 | $763 | $736 | $687 |
| | Non-Litigation | Partner | 335 | $515 | $950 | $1,377 | $1,002 | $1,005 | $949 |
| | | Associate | 312 | $504 | $740 | $959 | $759 | $744 | $681 |

Knapton Decl. ¶ 50; Exhibit 3 at 20.

For ease of reference, Mr. Knapton created a table that shows the time and rates requested by Plaintiff for counsel and staff that should be considered based on the Renewed Motion.

| **Civil Case** | Hours | Category | Rate | Fees |
|---|---|---|---|---|
| Diggs | 1,468.0 | Partner | $875.00 | $1,284,500.00 |
| Galipo | 421.3 | Partner | $1,334.00 | $562,014.20 |
| Tanter | 359.0 | Associate | $700.00 | $251,300.00 |
| Masongspong | 324.8 | Associate | $700.00 | $227,360.00 |
| Williams | 300.0 | Paralegal | $226.00 | $67,800.00 |
| Bryant (Civ) | 115.0 | Partner | $875.00 | $100,625.00 |
| Fattahi | 22.8 | Associate | $700.00 | $15,960.00 |
| Levine | 11.8 | Associate | $700.00 | $8,260.00 |
| Civil Case Totals | 3,022.7 | | $832.97 | $2,517,819.20 |

Knapton Decl. ¶ 22.

Mr. Knapton excludes from the chart Mr. Duckett's entire hours and includes only part of Mr. Bryant's hours because they requested attorney's fees for Plaintiff Barber's criminal defense (totaling 690.9 hours). Id. at ¶¶ 30, 51. As discussed above, criminal defense fees should not be awarded. Mr. Knapton also excludes from the chart clerical staff (Darci Gilbert, Le Chaune Metoyer, Alexandria Feather) because they completed overhead work that is not compensated in fee motions (248.3 hours). Id. at ¶¶ 21, 30. Furthermore, as discussed below, the remaining 3,022.7 hours that Plaintiff requests include time spent on the Monell claim on which he did not prevail, and should be reduced accordingly. Id. Applying the Real Rate Report benchmarks, Mr. Knapton's proposed rates and hours for Plaintiff's counsel are:

1) $1,334 Third Quartile Rate for only Mr. Galipo based on his specialized experience and level of case publicity;
2) $875 Median rate for Mr. Diggs;
3) $700 Median rate for Ms. Masongsong;
4) $461 First Quartile or $700 Median rate for Mr. Tanter.

Knapton Decl. ¶ 53.

Mr. Knapton's proposed lodestar is therefore $1,224,420.60 for 1,481.1 hours of legal work from July 23, 2021 to September 14, 2021. Id. at ¶ 63. His table with a recapitulation of adjustments are as follows:

| Issue | Amount | Explanation |
|---|---|---|
| Fees Requested | $4,135,017.00 | Motion at page 32 |
| Balance 3,022.7 hours at adjusted rates for all civil suit claimed hours | $2,517,819.20 | All civil case time at adjusted rates see above |
| Galipo time too vague – 42.0 hours | -$56,028 | At adjusted rates |
| Masongsong local travel - - 18.5 hours | -$12,950 | At adjusted rates |
| Subtotals 2,962.2 hours | $2,448,841.20 | $2,448,841.20 |
| *Monell* claim adjustment<br>25% = -740.55 hours<br>50% = - 1,481.1 hours | -$612,210.30 | -$1,224,420.60 |
| Balances<br>If -25% then 2,221.65 hours<br>If -50% then 1,481.10 hours | $1,836,639.90<br>(If 25% *Monell*) | $1,224,420.60<br>(If 50% *Monell*) |

Id. at ¶ 61.

In evaluating the requested rates, the court is "justified in relying on [its] own knowledge of customary rates and [its] experience concerning reasonable and proper fees," and may rely on comparable-case rate determinations and expert analysis submitted by the opposing party. Vargas v. Howell, 949 F.3d 1188, 1199 (9th Cir. 2020). Plaintiff's supporting declarations, offered by counsel and other allied professionals who stand to benefit from a high award, are entitled to little weight on this issue when measured against Mr. Knapton's neutral, data-driven analysis. The Court should therefore set rates consistent with the prevailing market and reduce the lodestar accordingly.

**2. Plaintiff's Counsel's Own Declarations Confirm Their Requested Rates Are Unreasonable.**

Not only does Mr. Knapton's objective, data-backed computations support a fee reduction for Plaintiff's counsel, but their own Declarations contradict their requested fees. Prior fee awards to the same attorney, including their rate determinations in other cases, are "satisfactory evidence of the prevailing market rate" and establishes "a rate for the plaintiffs" attorney[.]" United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990); see also Declaration of Dale Galipo at 120. In the present case, declarants' own affidavits show differing rates for what courts have actually awarded them, including for cases tried *after* the instant action, and Plaintiff offers no explanation for the difference. Because the fee applicant bears the burden of justifying and recording their requested rates, a lodestar reduction is warranted.

First, Attorney Tanter altogether did not submit a declaration in support of their request for $233,350 ($650 hourly rate x 359 hours billed), nor did Attorney Duckett. (Mot. at 30.) Fee applicants bear the burden of documenting their own hours and must submit evidence in support of their rates to receive an attorney's fee award. Welch, 480 F.3d at 945-46. Because Attorneys Tanter and Duckett failed to meet their burden and submit supporting declarations, their fees should be disallowed on that basis.

Second, Attorneys Fattahi and Levine are not attorneys of record in this case and were not included in the original motion. Mr. Fattahi's own declaration confirms he was brought onto the case in March 2026 *after* the verdict to assist Mr. Galipo with post-trial motions and "anticipated appellate proceedings[,]" totaling 22.8 hours of involvement. Decl. of John Fattahi at 1, 9. (Dkt. 261-29.) Likewise, Mr. Levine declares he "began working on this case in January of 2026" and that his contributions "primarily consisted of preparing a brief in opposition to Defendants' Rule 59 motion for a new trial," totaling 11.8 hours of work. Decl. of Benjamin

Levine at 5, 21 (Dkt. 261-26.) Not only are they not counsel of record on this matter, no showing was made that their work was not duplicative for the team already staffed on the matter. In fact, Mr. Levine's billing entries only reflect Opposition to Rule 59 Motion, and Ms. Masongsong's billing entries also indicate duplicative work for that same Rule 59 opposition. Decls. of Benjamin Levine, Renee Masongsong (Dkts. 261-28 Exhibit 2; 261-17 Exhibit 1.) Likewise, Mr. Fattahi's work devoted to post-trial motions were referenced in Ms. Masongsong's billing entries. Id.; see also Decl. of John Fattahi. Where cases are overstaffed, counsel must make a good faith effort to exclude fees that are duplicative, redundant, and unnecessary. Hensley, 461 U.S. at 434 (citing S.Rep. No. 94–1011, p. 6 (1976).) Adding new billers, such as Levine and Fattahi, after the fee dispute has already been filed reflects poor billing judgment and thus should be excluded. Vargas, 949 F.3d at 1199.

Further, Mr. Fattahi's own declaration shows recent awards below his current 2026 requested rate of $1,115. (Mot. at 30.) His declaration establishes that no court has ever awarded him a rate of more than $975 per hour. Rather, the following rates were awarded to him for "civil-rights litigation of similar complexity": $975 for his 2024 work in French v. City of Los Angeles; $920 in 2023 Zelaya v. City of Los Angeles; and $850 was reasonable in 2023 for Valenzuela v. City of Anaheim. Declaration of John Fattahi at 3 (Dkt. 261-29.) The Zelaya order, attached as Exhibit 3 to his declaration, expressly found that Mr. Fattahi's $920 rate was reasonable for opposing post-trial motions. This is the same kind of work Mr. Fattahi now claims he conducted for Plaintiff Barber in the present case. Because his own evidence indicates a $975 ceiling, Mr. Fattahi's $1,115 request is unsupported. Accordingly, because Attorneys Levine and Fattahi never were of counsel for Plaintiff's case and Fattahi's declaration establishes a recent reasonable rate below what he is requesting now, their fees should not be considered, or at the very least, reduced.

Third, Mr. Galipo's own declaration admits that he was awarded $1,400 per

hour in two cases tried *after* this present one, which is $100 less than what he is requesting here. After the February 9, 2026 verdict was entered in this case, courts awarded Mr. Galipo $1,400 per hour in two cases: Quan v County of Los Angeles in August 18, 2026 and Garcia v. City of Tustin in April 2026. Decl. of Dale Galipo at 14 (Dkt. 261-2.) Both cases discussed were tried for excessive force claims. Mr. Galipo also fails to substantiate any real explanation as to why this case should exceed the rate he received for more recent trial work. Because both awards postdate the instant trial, and both awarded Mr. Galipo $100 below the $1,500 Mr. Galipo now demands, his rate should be adjusted downwards accordingly.

Fourth, Ms. Masongsong's request for $900 per hour is unreasonable because her declaration lists prior awards of $550 to $800 per hour, and offers no basis for the jump to $900. Ms. Masongsong lists the following prior awards: $550 per hour in L.D. v. City of Los Angeles in April 2020; the Ninth Circuit granted her $800 per hour in French v. City of Los Angeles in February 2024; and $700 per hour in Zelaya v. City of Los Angeles in June 2024. Decl. of Renee Masongsong at 9-10 (Dkt. 261-16.) Further, in April 2026, tried *after* the present action, Ms. Masongsong lists Garcia v. City of Tustin in which she was awarded $800 per hour by Honorable Sherilyn Peace Garnett. Id. Ms. Masongsong claims that her $800 per hour award was for work done in 2022, and that the $900 per hour she is seeking is for work in 2025/2026. Id. at 11. Nonetheless, the jump from that award to $900 is substantial, and at the very least, the court should lower Ms. Masonsong's rate to reflect what she received in 2026.

Last, Mr. Bryant's declaration is inconsistent and cites no comparable fee award for his civil work. His declaration requests a rate of $1,200 per hour which "reflects the current prevailing market rate for attorneys of [his] skill, experience, and reputation[,]" but also provides that his "reasonable billing rate is $1,250.00 per hour." Decl. of James Bryant at 5, 15 (Dkt. 261-25.); Mot at. 30. Mr. Bryant thus has not even stated his own rate consistently. More importantly, however, Mr.

Bryant lists only two cases of prior fee awards: $500 per hour in Ruiz v. U.S. Security Association in March 2017 and $700 per hour in Bassett Unified School District in January 2022. Id. at 5. Both list rates far lower than what he claims now. Moreover, as shown above, Mr. Bryant's fee request for criminal defense work is non-compensable.

### 3. The Increase In Plaintiff's Hours In The Renewed Motion Compared To The Original Motion Is Unreasonable.

From the roughly six months between Plaintiff's original motion filed March 25, 2026 and amended motion filed September 14, 2026, Plaintiff added more than 450 hours of total billed time, 400 of which were attorney billing. Their requested lodestar increased by $911,974. See Mot. at 30-31; Original Mot. at 30-31. Notwithstanding the fact that many of the already existing entries are vague and not compensable, the sheer increase in hours and nearly one million dollars in claimed fees between the two motions is not justified by merely preparing post-trial motions and the renewed motion. Counsel's hours should thus be excluded or adjusted accordingly. The below chart represents the total hours and amount increases that Plaintiff is requesting from the original and renewed motions (Dkts 211, 261):

| Timekeeper | Original | Amended | +Hours | +Amount |
|---|---|---|---|---|
| Dale Galipo | 405.9 | 421.3 | +15.4 | +$23,100 |
| Rodney Diggs | 1,249 | 1,468 | +219 | +$273,750 |
| Renee Masongsong | 250.1 | 324.8 | +74.7 | +$67,230 |
| Brandon Tanter | 297 | 359 | +62 | +$40,300 |
| Alice Williams (paralegal) | 260.1 | 300 | +39.9 | +$17,955 |
| Darci Gilbert (legal assistant) | 43.7 | 48.3 | +4.6 | +$1,150 |
| Ryan Duckett (attorney)<br><br>Le Chaune Metoyer (legal | 214.8 | no change | no change | no change |

| | | | | |
|---|---|---|---|---|
| assistant)<br><br>Alexandria Feather (legal assistant) | 119.50<br><br>80.50 | | | |
| John Fattahi (new motion only) | 0 | 22.8 | 22.8 | +$25,422 |
| Benjamin Levine (new motion only) | 0 | 11.8 | 11.8 | +$7,080 |

With respect to Mr. Galipo, a fee applicant must submit records detailed enough for the Court to adequately assess what work was performed. Mr. Galipo, however, includes descriptions that are too vague to receive full credit. Namely, his entries read “Review case Materials,” “Review Criminal File,” “Trial Preparation.” Decl. of Dale Galipo (Dkt. 261-3 Exhibit 1.) He adds an asterisk to various block-billing entries and attaches an explanation at the end of what it includes, but this is not an acceptable explanation because he has the burden to explain those entries. Welch, 480 F.3d at 948. Because those minimal descriptions do not permit a reasonableness assessment, and because the burden to explain is counsel's, Mr. Knapton recommends a 10% reduction to Mr. Galipo's 421.3 hours. Decl. of Knapton ¶ 59.

Mr. Diggs’ hours had the most conspicuous jump, yet were the least supported. Mr. Diggs’ time entries offer no elaboration for his request for a +219 hour jump. Rather, he merely includes a note that requests nearly 200 hours for general non-documented items (see below).

| Phase | Description | Hours | Amount |
|---|---|---|---|
| Phase 1 | Case Inception & Filing | 72.45 | $90,563 |
| Phase 2 | Stay Period – Criminal Oversight & Civil Development | 302.05 | $377,563 |
| Phase 3 | Civil Reopening – Discovery, Pleadings & Strategy | 167.50 | $209,375 |
| Phase 4 | Expert Development, Depositions & Document Review | 212.50 | $265,625 |
| Phase 5 | MSJ Opposition | 84.00 | $105,000 |
| Phase 6 | Expert Depositions – Preparation, Conduct & Review | 108.00 | $135,000 |
| Phase 7 | Motions In Limine & Pretrial Documents | 56.00 | $70,000 |
| Phase 8 | FPTC & Trial Preparation | 137.00 | $171,250 |
| Phase 9 | Civil Trial | 106.00 | $132,500 |
| Phase 10 | Post-Trial Matters & Fee Motion | 43.80 | $54,750 |
| **RSD TOTAL** | | **1,289.30** | **$1,611,625** |

*Note: These entries reflect documented matter activities. Additional time not individually itemized includes ongoing telephone conferences, internal meetings, email correspondence with co-counsel, opposing counsel, and experts throughout the case that were not separately entered. Total time including all activities: **1,468 hours / $1,835,000**.*

Decl. of Rodney Diggs Exhibit A (Dkt. 261-24.)

Plaintiff bears the burden of documenting and justifying every hour, and he has not satisfied that burden. Therefore, Mr. Diggs hours must be disallowed as excessive, or reduced.

Additionally, Ms. Masongsong's travel times of 3.5 to 4.0 hours for each day of trial totaled 18.45 hours, or $12,950 at her requested $700 rate. Decl. of Knapton ¶ 60. Mr. Knapton explains that this time is not usually billed to a client, and is not awarded in a fee-shifting matter. Id. Moreover, many of Ms. Masongsong's time entries are duplicative, specifically for work done by associates John Fattahi and Benjamin Levine. Ms. Masongsong's hours therefore should be lowered based on redundant hours and non-compensable travel time.

Ms. Williams' time entries present the same issue as Mr. Diggs' as she lists general "brief communications and administrative tasks," which are not only excluded in fee motion, but are not specific enough to be compensable.

| Phase | Description | Hours | Amount |
|---|---|---|---|
| Phase 5 | Expert Depositions, MILs & Pretrial | 27.50 | $12,375 |
| Phase 6 | Trial Preparation & Trial | 77.50 | $34,875 |
| **ADW TOTAL** | | **269.20** | **$121,140** |

*Total hours including all brief communications and administrative tasks not individually itemized: **300 hours / $135,000**.*

See Decl. of Rodney Diggs (Dkt. 261-24 Exhibit A.)

Finally, with respect to Brandon Tanter, Darci Gilbert, Ryan Duckett, Le Chaune Metoyer, Alexandria Feather, John Fattahi, Benjamin Levine, as discussed in this Opposition, these individuals' requests should be denied. Tanter and Duckett failed to submit supporting declarations to support their requests as required under law. Fattahi and Levine were added after the original motion was filed, and to the extent that their hours are duplicative, their requests should be excluded, or at the very least, reduced.

**C. Clerical or Secretarial Work Are Non-Compensable.**

Plaintiff requests fees for legal assistants, including Darci Gilbert, Le Chaune Metoyer, and Alexanderia Feather, much of which is for clerical work. However, work for "clerical tasks should be included in the attorney billing rates as overhead to run the office, not recoverable in a motion for attorney fees." Doran v. Corte Madera Inn Best W., 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005); see also Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009). Moreover, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them. Missouri v. Jenkins by Agyei (footnote 10), 491 U.S. 274 (1989). Here, Gilbert's timekeeping record shows multitudes of line items for downloading and saving documents, printing, and organizing. (Dkt. 261-32.) Metoyer's records show calendaring and scheduling, office support, and service. (Dkt. 261-24.) Alexandria Feather's records show items for non-legal tasks, such as "receive and distribute," office support, and managing correspondence. (Dkt. 261-24.) These fees therefore

should be excluded because they must be subsumed within counsel's overhead costs to run their firm. See Decl. of Knapton ¶ 21.

**D. Kerr Factors Require A Lodestar Reduction.**

Apart from the fact that the lodestar should be adjusted based on unreasonable fees and hours, Kerr factors 1, 2, 8, and 10 warrant further reduction.

**1. The Case Was Not Novel, Difficult, Or Undesirable Under Kerr Factors 1: Time & Labor, 2: Novelty & Difficulty, And 10: Undesirability Of Case.**

Plaintiff here contends that counsel should be fully paid for their hours because that in "extensive[ly] prepar[ing] for trial," they paid expert and cocounsel fees, conducted deposition, reviewed discovery, and litigated for almost two weeks, notwithstanding the difficulty of overcoming the "built-in bias favoring the police."[2] (Mot. at 19-20.) Plaintiff, however, cannot credibly argue that the time and labor, difficulty, or undesirability of the case was extraordinary. This was a seven-day trial in which Plaintiff called only five witnesses over two days and rested on the third. (Dkt. 182.); see also Decl. of Knapton ¶ 15. Reasonable hours inquiry asks whether "in light of the circumstances, the time could reasonably have been billed to a private client[;]" and here, a trial of that length and scope does not justify the thousands of hours that Plaintiff claims. Vargas, 949 F.3d at 1194. The labor required was that of a typical single-defendant in an excessive force trial, and the hours must be measured against that reality. Any difficulties that Plaintiff claims to have faced also has no merit. An excessive force claim is among the most frequently litigated in this District, governed by well-established standards. Plaintiff does not identify any unsettled law or issues of first impression; if anything, Plaintiff actually mitigated whatever difficulty the case presented when he prevailed on a motion in

[2] Plaintiff fails to explain how there is a "built in bias" in favor of police, particularly in Southern California, an area known to be anti-police.

limine to exclude the "damaging evidence" of Plaintiff's underlying conviction from the jury. (Dkt. 158.) Plaintiff fails to prove undesirability. Because Plaintiff's arguments regarding to support his award under Kerr factors 1, 2, and 10, his lodestar should be adjusted downwards.

**2. No Fees Should Be Awarded For The Unsuccessful Monell Claim Under Kerr Factor 8: Results Obtained.**

Plaintiff did not prevail on his Monell claim. Under Hensley, the mixed success that Plaintiff had in this lawsuit must be considered in calculating the appropriate fee amount. Hensley, 461 U.S. at 434. Where a plaintiff presents "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. . .counsel's work on one claim will be unrelated to his work on another claim." Id. at 434-435. Accordingly, the unrelated claims must be treated as raised in separate lawsuits, and fees may not be awarded for services on any unsuccessful claim. Id. Here, Plaintiff's loss on the Monell claim is distinct in law and fact from his excessive force claim, both of which are raised under section 1983. Monell asks whether the County maintained a policy, custom, or practice of failing to train deputies, with the standard of proof as deliberate indifference, whereas excessive force considers reasonableness and totality of the circumstances. Therefore, since the claims are markedly distinct and Plaintiff lost on Monell, the lodestar should be reduced according to Factor 10.

Mr. Knapton's review provides that Monell claims are time-intensive because policy manuals, training, and history of incidents must be developed. Decl. of Knapton ¶ 32. He identifies at least 34 pre-trial entries for roughly eight hours each (approximately 272 hours) devoted towards developing Monell and even more time was spent taking it to the jury. Id. at ¶ 31. On that basis, Mr. Knapton declares that between 25% to 30% of the 3,022.7 civil hours is attributable to the unsuccessful claim and should be reduced appropriately. Id. at ¶¶ 33; 61.

## V. PLAINTIFF'S REQUEST FOR A 2.0 MULTIPLIER IS NOT APPROPRIATE

### A. Federal Law Bars A Contingency Enhancement.

The fact that Plaintiff's counsel accepted this case on contingency does not warrant a multiplier under federal law. A multiplier may adjust the lodestar "amount upward or downward only in rare and exceptional cases, supported by specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). The Supreme Court, however, has established that there is a "strong presumption" that the base lodestar is the reasonable fee, and an additional enhancement "would likely duplicate in substantial part factors already subsumed in the lodestar" since the difficulty of the case is already reflected within the higher hours and hourly rate. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). Here, because Supreme Court case law "construing what is a 'reasonable' fee" is applied uniformly to all federal fee-shifting statutes (like those under section 1988), Plaintiff cannot claim a 2.0 enhancement under federal law. An enhancement would be duplicative since the difficulty of the case is already reflected in the hours and rates counsel claims for the lodestar. Moreover, awarding Plaintiff a multiplier of attorney's fees on top of a eight figure verdict would seek to punish local taxpayers. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010); see also Pierce v. Cnty. of Orange, 905 F. Supp. 2d 1017 (C.D. Cal. 2012) (District court denied a 1.5 multiplier in case against a county, noting that the fee award would not be paid out of a common fund or borne by a private wrongdoer but would ultimately fall upon the shoulders of California taxpayers.)

### B. The Bane Act Does Not Authorize An Enhancement.

Plaintiff's argument that his Bane Act success supports a multiplier under state law is unfounded.

First, the cases cited by Plaintiff do not support a 2.0 multiplier. Plaintiff strings together a slew of cases which are not civil actions under § 52.1. (Mot. at 29.) The only Bane Act excessive force decision that Plaintiff cites is Bender v. County of Los Angeles, which approved a multiplier of only 1.2. (Mot. at 28.) Moreover, Plaintiff should be awarded no enhancement because his counsel took this matter for over a 40% contingency, which on the $27,350,000 verdict alone yields over $10.9 million.

Second, Plaintiff attempts to invoke California Civil Code section 52(a) as a basis to provide for "three times the amount of actual damage[s,]" for its lodestar multiplier. (Mot. at 26.); Cal. Civ. Code § 52 (a). However, Plaintiff's reference fails on two fronts. One, Plaintiff's citation has no footing because the actual Bane Act is section 52.1. Cal. Civ. Code § 52.1. Two, Plaintiff erroneously attempts to use section 52.1(b) to back its argument, stating that it refers to section 52(a). (Mot. at 26.) Nothing in 52.1(b) refers to section 52. The provision that Plaintiff likely sought to claim was under 52.1(c), but even so, it discusses only damages under Section 52, *not* a lodestar multiplier. Id. Section 52.1's plain language references no lodestar multiplier or fee enhancement and only authorizes a "reasonable attorney's fees" award under 52.1(i).

Third, section 52 is unavailable to Plaintiff. In fact, this Court ruled in Smith v. City of La Verne that a § 52(a) enhancement is reserved to "a jury" at trial or a bench trial. Smith v. City of La Verne, No. CV 23-644-KK-EX, 2024 WL 4331733 (C.D. Cal. Sept. 4, 2024). This Court affirmatively held that if a case is tried by jury, a court is not authorized to award a damages enhancement after the verdict has been entered under § 52(a). Id. The Ninth Circuit affirmed Judge Kato's interpretation. Smith v. City of La Verne, No. 24-5805, 2025 WL 2992541 (9th Cir. Oct. 24, 2025). Here, the same analysis applies. Plaintiff Barber's case was tried by jury, not by bench trial, and he was given a verdict at the end of it. Since the jury never made a section 52(a) damages enhancement for Plaintiff Barber for his damages at trial, he

cannot now seek to resurrect it in his Motion, let alone use it to ask for an attorney's fee multiplier.

## VI. CONCLUSION

For the reasons set forth herein, Plaintiff's lodestar should be substantially reduced and fees adjusted downwards. Defendants thereby respectfully ask the Court to: (1) exclude all fees attributable to Plaintiff's criminal defense; (2) reduce the requested hourly rates to prevailing market rates; (3) strike unreasonable or duplicative hours from the newly added timekeepers; (4) reduce fees based on the unsuccessful Monell claim; (5) exclude hours for clerical work, vague entries, and/or travel time; (6) deny the requested 2.0 multiplier in full; and (7) award at the very most, what Mr. Knapton identifies as reasonable attorney's fees: $1,224,420.60.

Dated: October 2, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Caylin W. Jones
Nathan A. Oyster
Caylin W. Jones
Delaney K. Sirmay
Attorneys for Defendants
COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 11-6.2, the undersigned, counsel of record for Defendants hereby certifies that this brief complies with the word limit of Local Rule 11-6.1.

Dated: October 2, 2026

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Caylin W. Jones
Nathan A. Oyster
Caylin W. Jones
Delaney K. Sirmay
Attorneys for Defendants
COUNTY OF SAN BERNARDINO and DEPUTY CHRISTOPHER ALFRED