LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

RODNEY S. DIGGS, Esq. (SBN 274459)
Email: RDiggs@imwlaw.com
IVIE McNEILL WYATT PURCELL & DIGGS
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 489-0028
Facsimile: (213) 489-0552

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEFFON BARBER,<br><br>*Plaintiff,*<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO, and DEPUTY CHRISTOPHER ALFRED,<br><br>*Defendants.* | Case No. 5:22-cv-00625-KK-DTB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>*Hearing Vacated* |

TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. CRIMINAL DEFENSE FEES ARE COMPENSABLE .......... 2

A. The Criminal Defense Work Was "Useful and of a Type Ordinarily Necessary" to Advance the § 1983 Action .......... 2

B. Diggs', Bryant's and Duckett's Times Should Not be Excluded .......... 4

III. PLAINTIFF'S LODESTAR IS REASONABLE .......... 5

A. No Reduction is Warranted .......... 5

B. Counsel's Request Hourly Rates Are Reasonable and Supported by Substantial Evidence .......... 6

*1. Gerald Knapton's Opinions* .......... 6

*2. Mr. Galipo's Requested Hourly Rate of $1,500 is Reasonable* .......... 8

*3. Mr. Diggs' Requested Hourly Rate of $1,250 is Reasonable* .......... 10

*4. Ms. Masongsong's Requested Hourly Rate of $900 is Reasonable* .......... 10

*5. Mr. Tanter's Requested Hourly Rate of $650 is Reasonable* .......... 11

*6. Mr. Fattahi's Requested Hourly Rate of $1,115 is Reasonable* .......... 11

*7. The Increase in Hours is Reasonable* .......... 12

*8. Support Staff Rates and Work* .......... 13

C. No Reduction is Warranted Based on the *Monell* Claim .......... 14

IV. 2.0 LODESTAR MULTIPLIER IS APPROPRIATE .......... 15

A. The Bane Act Authorizes a Multiplier .......... 15

B. The 2.0 Multiplier Is Well-Supported by the *Ketchum/ Serrano* Factors .......... 17

V. CONCLUSION .......... 19

# TABLE OF CONTENTS

**Cases**

*Beltran Rosas v. County of San Bernardino*
260 F.Supp.2d 990 (C.D. Cal. 2003) ............................................................ 3, 4
*Bender v. Cty. of Los Angeles*
217 Cal. App. 4th 968 (2013) ............................................................ 16
*Borunda v. Richmond*
885 F.2d 1384 (9th Cir. 1988) ............................................................ 4
*Camacho v. Bridgeport Financial*
523 F.3d 973 (9th Cir. 2008) ............................................................ 6
*Charlebois v. Angels Baseball LP*
993 F. Supp. 2d 1109 (C.D. Cal. 2012) ............................................................ 7
*Chaudhry v. City of Los Angeles*
751 F.3d 1096 (9th Cir. 2014) ............................................................ 16
*City of Burlington v. Dague*
505 U.S. 557 (1992) ............................................................ 18
*Cruz v. Alhambra School Dist.*
601 F. Supp. 2d 1183 (C.D. Cal. 2009) ............................................................ 6
*Downey Cares v. Downey Community Development Com.*
196 Cal. App. 3d 983 (1987) ............................................................ 16
*Flannery v. California Highway Patrol*
61 Cal. App. 4th 629 (1998) ............................................................ 16
*French v. City of Los Angeles*
Case No. EDCV 20-0416 JGB. ............................................................ 8, 11
*Garcia v. City of Tustin*
Case No. 8:22-cv-00131-SPG-KES ............................................................ 8, 17
*Gregory v. Oliver*
2003 WL 1860270 (N.D. Ill. Apr. 9, 2003) ............................................................ 5

*Heck v. Humphrey*
512 U.S. 477 (1994) ....................................................................................3
*Hensley v. Eckerhart*
461 U.S. 424 (1983) .................................................................................. 5, 6, 15
*Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016) ..................................................7
*Housing Rights Center v. Sterling*
2005 WL 3320738 (C.D. Cal. Nov. 1, 2005) ......................................................6
*Ketchum v. Moses*
24 Cal. 4th 1122, 1138 (2001)............................................................. 16, 17, 18
*L.D./Juan Frias v. City of Los Angeles*
Case No. CV 16-4626 PSG (SKx) .....................................................................17
*LA International Corp. v. Prestige Brands Holdings Inc.*
168 F.4th 608 (9th Cir. 2026).............................................................................10
*McGrath v. County of Nevada*
67 F.3d 248 (9th Cir. 1995)................................................................................12
*Missouri v. Jenkins*
491 U.S. 274 (1989............................................................................................14
*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008)...................................................................... 12, 13
*Nadarajah v. Holder*
569 F.3d 906 (9th Cir. 2009).................................................................................7
*Orantes-Hernandez v. Holder*
713 F. Supp. 2d 929(C.D. Cal. 2010)....................................................................7
*Pierce v. County of Orange*
905 F.Supp.2d 1017 (2012)..............................................................................5, 16
*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*
743 F. Supp. 2d 1136 (C.D. Cal. 2010)...............................................................12

*Rahman v. FCA US LLC*
594 F.Supp.3d 1199 (2022) ........................................................................14

*Riverside v. Rivera*
477 U.S. 561 (1986) ....................................................................................5

*Rodriguez v. Barrita, Inc.*
53 F.Supp.3d 1268 (2014) ...........................................................................16

*Rodriguez v. County of Los Angeles*
96 F. Supp. 3d 1012 (C.D. Cal. 2014).........................................................11

*Schwarz v. Secretary of Health & Human Services*
73 F.3d 895 (9th Cir. 1995) .........................................................................15

*Serrano v. Priest*
20 Cal. 3d 25 (1977) ...............................................................................1, 17

*Torrance Unified School District v. Magee*
2008 U.S. Dist. LEXIS 95074 (C.D. Cal. Nov. 10, 2008) ..................................7

*Trendsettah USA v. Swisher Int'l*
Case No. 8:14-cv-01664-JVS-DFM (C.D. Cal. Aug. 30, 2023).....................7, 12

*Valenzuela v. City of Anaheim*
Case No. SACV 17-00278-CJC (DFMx) (C.D. CA. 2023)..................................7

*Webb v. Board of Education*
471 U.S. 234 (1985) .....................................................................................2

*Webb v. Sloan*
330 F.3d 1158 (2003) ..................................................................................15

*Young v. Wolfe*
2017 WL 3184167 (C.D. Cal. July 26, 2017) ..................................................4

*Zelaya v. City of Los Angeles*
2024 WL 3183882 ...................................................................................8, 13

**Statutes**

California Penal Code § 187(a).......................................................................2

Penal Code § 245(a)(1) .......... 3
Penal Code § 245(c) .......... 2, 3, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 9, 2026, the jury returned a verdict of $27,350,000 in favor of Plaintiff Steffon Barber on five of his six claims—excessive force under 42 U.S.C. § 1983 and the Fourth Amendment, negligence, battery, violation of the Bane Act, and intentional infliction of emotional distress. [Dkt. 200]. The jury found in Defendants' favor on only one claim, *Monell*. This result—one of the largest police excessive force verdicts in the Central District of California and the largest verdict in a non-fatal police shooting case out of the Riverside Federal Courthouse—was achieved by Mr. Barber's attorneys' exceptional skill and dedication to Mr. Barber's case. Influential to this verdict was Mr. Barber's attorneys' vigorous defense of Mr. Barber's criminal case, where he was acquitted of the assault with a deadly weapon against a peace officer charge.

Plaintiff submits that his counsel's full lodestar of $8,270,034 should be awarded, and no reduction in the lodestar is warranted. [Dkt. 261, pp. 20-21]. Each of Mr. Barber's counsel's requested hourly rate and hours billed is reasonable. For example, Mr. Galipo tried the entire case with the exception of one witness, and he only billed 421.3 hours total in this case, showing that he is extremely efficient with his time and underestimated his hours in several instances. Plaintiff's counsel's requested hourly rates are supported by their own declarations, exhibits detailing their prior fee awards filed concurrently with their attorney fee motion, and by the declaration of attorney Carol Sobel (Dkt. 212, 262). This Court should apply an upward multiplier of 2.0, or at minimum, a 1.5 multiplier, to the lodestar, because the factors identified in *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977), weigh heavily in Plaintiff's favor, and the jury returned a verdict in Plaintiff's favor on his Bane Act claim.

## II. CRIMINAL DEFENSE FEES ARE COMPENSABLE

### A. The Criminal Defense Work Was "Useful and of a Type Ordinarily Necessary" to Advance the § 1983 Action

Defendants contend that fees for Mr. Barber's criminal defense are categorically barred under § 1988 because a criminal defense is not an "action or proceeding to enforce" a civil rights statute. [Def. Mot. at 3:12-13]. However, *Webb v. Board of Education*, 471 U.S. 234 (1985), provides an exception. Under *Webb*, attorneys' fees incurred in a related proceeding may be compensable where the work was "both useful and of a type ordinarily necessary to advance the civil rights litigation." *Webb*, 471 U.S. at 243. That standard is met here.

When Ivie McNeill Wyatt Purcell & Diggs agreed to represent Mr. Barber in this matter, he was simultaneously facing criminal charges arising from the April 27, 2021 shooting giving rise to the civil suit—including a charge for attempted murder on a peace officer under California Penal Code § 187(a) and assault with a deadly weapon on a peace officer under Penal Code § 245(c). The civil case was stayed from July 2022 through December 2024, pending resolution of the criminal matter, because the factual and legal issues in both proceedings arose from the same set of facts. The criminal proceedings did not run parallel to the civil case; rather, they governed whether the civil case could proceed at all. Defendants' own account confirms this dynamic. Defendants acknowledge that the civil proceedings were stayed based on the "interests of justice" because "requiring Plaintiff to participate in civil discovery during the pendency of his criminal case could unfairly prejudice him while his criminal case was pending." [Def. Mot. at 1:28-2:4]. Yet, Defendants now claim the criminal defense was wholly unrelated to the civil case. That position is irreconcilable with their own stipulation to stay the civil proceedings.

Mr. Barber was ultimately acquitted on both the attempted murder charge and the assault on a peace officer charge and was convicted only of assault with a deadly weapon on a person under Penal Code § 245(a)(1)— a conviction that contains no element relating to Deputy Alfred's conduct and therefore does not implicate *Heck*. A conviction under Penal Code § 245(c) would have required a finding that Deputy Alfred was lawfully performing his duties at the time of the shooting—an element potentially incompatible with Plaintiff's civil excessive force claim. As Defendants have argued throughout this case, under *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 claim must be dismissed if success on that claim would necessarily imply the invalidity of the plaintiff's criminal conviction. Under Defendants' *Heck* arguments made on summary judgment and post-trial (with which Plaintiff continues to disagree), had Plaintiff been convicted under Penal Code § 245(c), his civil excessive force claim may potentially have been barred. Therefore, the criminal defense work to acquit Mr. Barber of the Penal Code § 245(c) charge was "useful" and "necessary" to the civil case. Defendants' argument that Plaintiff's criminal defense was not "useful" because he was still convicted under Penal Code § 245(a)(1) is unpersuasive, as this Court has determined twice that Plaintiff's § 1983 excessive force claim is not *Heck*-barred by the Penal Code § 245(a)(1) conviction. [Dkt. 232 (Order Denying Defendants' Motion for Judgment as a Matter of Law) at pp. 2, 5-6; Dkt. 132 (Order Denying Defendants' Motion for Summary Judgment) at pp. 9-12].

*Beltran Rosas v. County of San Bernardino*, 260 F.Supp.2d 990 (C.D. Cal. 2003) is on point. In *Beltran*, the district court held that attorney fees under § 1988 are recoverable for criminal defense work when such work was "essential to advance Plaintiffs [sic] civil rights action." 260 F.Supp.2d at 994. There, the district court found that where a malicious prosecution claim under § 1983 was not cognizable until criminal charges were resolved favorably, "it was necessary for

*Barham* to perform legal services to cause the criminal action against Epifanio to be resolved successfully in his favor before Plaintiffs could prevail on their Section 1983 claim." *Id*. Similarly, here, the time spent defending Mr. Barber in the criminal case was, in practical and legal effect, time spent safeguarding and developing the civil case. Excluding those hours would undercompensate counsel for work that was essential to the prosecution and ultimate success of Plaintiff's § 1983 excessive force claim, contrary to the purpose of § 1988 to ensure effective enforcement of civil rights.

Defendants cite *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), and *Young v. Wolfe*, 2017 WL 3184167 (C.D. Cal. July 26, 2017). Neither case is controlling here. *Borunda* did not establish a categorical bar. Rather, the *Borunda* court permitted recovery of criminal defense fees as compensatory damages precisely because the criminal charges were a direct consequence of the defendants' conduct. The same logic applies here: Plaintiff was subjected to criminal prosecution as a direct result of the excessive force incident that forms the basis of his § 1983 claim. *Young* is distinguishable in that it involved a plaintiff who had been represented in a criminal case long before any civil rights action was contemplated. Here, by contrast, the criminal and civil representations were concurrent, arose from the same general event, and were strategically intertwined from inception. Mr. Barber's counsel's criminal defense work was not ancillary; rather, it was a prerequisite to keeping the civil case alive.

**B. Diggs', Bryant's and Duckett's Times Should Not be Excluded**

Defendants argue that attorneys James Bryant's and Ryan Duckett's hours should be excluded because they worked solely on the criminal case. Plaintiff disagrees. Mr. Bryant's work—defending Mr. Barber against the Penal Code § 245(c) charge—was useful in ensuring that Mr. Barber's § 1983 could proceed. Mr. Duckett similarly assisted in the criminal defense and transition to the civil

phase. The criminal trial transcripts and factual record developed during the criminal trial were influential in achieving the $27,350,000 verdict in the civil case.

Mr. Diggs acknowledges that some of his entries include both criminal and civil tasks. However, in *Pierce v. County of Orange*, 905 F.Supp.2d 1017, 1030 (2012), the district court held that "a reduction in attorney fee award for block-billed hours may not be appropriate if individual tasks are specified and the entries are detailed enough for the court to assess the reasonableness of the hours billed." The court further noted that even if billing entries were vague, a substantial reduction was not justified "absent specific explanation for reduction." *Id*. Mr. Diggs' entries are descriptive and clearly reflect work that advanced the civil litigation, even where they also reference criminal case developments. The Court should decline to penalize counsel for maintaining diligent time records that accurately reflect the integrated nature of the criminal and civil work.

## III. PLAINTIFF'S LODESTAR IS REASONABLE

### A. No Reduction is Warranted

Contrary to Defendants' assertion that the *Kerr* factors require a lodestar reduction, excessive force cases are by nature extremely difficult cases in which there is an inherent bias in favor of the police. *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003). "Congress made clear that it intended that the amount of fees awarded under § 1988 be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Riverside v. Rivera*, 477 U.S. 561, 575 (1986) (cleaned up); *see Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) (noting that "judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases") (Brennan, J., concurring in part and dissenting in part). "In order to encourage able counsel to undertake [§ 1983] cases, as congress intended, it is necessary that counsel be awarded fees

commensurate with those which they could obtain by taking other types of cases." *Camacho v. Bridgeport Financial*, 523 F.3d 973, 981 (9th Cir. 2008). The "most critical factor [in determining an attorneys' fee] is the degree of success obtained." *Hensley*, 461 U.S. at 436. Thus, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," which "encompass[es] all hours reasonably expended on the litigation." *Id.* at 435. Here, there is no reasonable dispute that Plaintiff's counsel obtained "excellent results."

**B. Counsel's Request Hourly Rates Are Reasonable and Supported by Substantial Evidence**

Defendants oppose the requested hourly rates primarily through their expert, Gerald Knapton, who applies the 2025 Real Rate Report median and third-quartile or first-quartile figures to all timekeepers. Mr. Knapton proposes rates of $1,334 (Q3) for Mr. Galipo, $875 (median) for Mr. Diggs, $700 (median) for Ms. Masongsong and Mr. Duckett, $461 (Q1) for Mr. Tanter, and $226 (median) for paralegals. Plaintiff disagrees with this analysis for the reasons stated in their Fees Motion and declarations thereto.

***1. Gerald Knapton's Opinions***

Whereas the Ninth Circuit and district courts have regularly relied on attorney Carol Sobel's expertise in determining reasonable hourly rates, courts have repeatedly disregarded the opinions of Gerald Knapton. *See, e.g., Cruz v. Alhambra School Dist*., 601 F. Supp. 2d 1183, 1200 n.15 (C.D. Cal. 2009) (rejecting Knapton's proposed rates as "inconsistent with the standards applicable here requiring that the Court consider the skill and expertise of these particular attorneys in setting their rate"); *Housing Rights Center v. Sterling*, 2005 WL 3320738 (C.D. Cal. Nov. 1, 2005) (holding that the court "generally disregards his opinions as unsupported by the evidence"). As in *Sterling*, here, Mr. Knapton's opinions are unsupported by the evidence and contrary to settled legal principles.

By contrast, there can be no question that Ms. Sobel's extensive analysis is satisfactory evidence of prevailing market rates. Her detailed declaration speaks for itself, and the Ninth Circuit and its district courts routinely rely on her expertise in determining reasonable hourly rates. [Dkt. 262 (Sobel Decl.) at ¶¶ 15, 16, 18, 23, 28 (citing *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Nadarajah v. Holder*, 569 F.3d 906, 912-14 (9th Cir. 2009); *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. CA. 2023); *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 929, 963-64 (C.D. Cal. 2010); *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. Nov. 10, 2008)]. Notably, Defendants make no attempt to distinguish Ms. Sobel's comparison fee awards.

Contrary to settled law that Mr. Knapton cited in another case when it supported his paid opinions, Defendants' proposed rates make no attempt to account for the experience, skill, or reputation of each biller. ["Ex. 1" to Masongsong Reply Decl. at p. 18-27 (Knapton Declaration in *Trendsettah USA v. Swisher Int'l*, Case No. 8:14-cv-01664-JVS-DFM (C.D. Cal. Aug. 30, 2023)]. Nor do Defendants acknowledge what Mr. Knapton emphasized in *Trendsettah*—that since June 2022, billing rates "exploded" and then "continued their steep upward trajectory into 2023." *Id.* at 21-22. In *Trendsettah*, Mr. Knapton provided a declaration on behalf of the plaintiffs in support of their request for $11,760,292 in lodestar attorney fees, and asserted that attorneys from one small firm should be awarded rates in the third quartile from the Real Rate Report, compared their hourly rates to those charged at Gibson Dunn & Crutcher, and opined that attorneys at a second small firm should be awarded rates far above the third quartile—up to $2,180 per hour. ["Ex. 1" to Masongsong Reply Decl. at p. 23-24]. Mr. Knapton described the latter firm as "one of only a few truly elite appellate

boutiques in the country." Similarly, the Law Offices of Dale K. Galipo is one of the top boutique civil rights firms. *Id.*

### *2. Mr. Galipo's Requested Hourly Rate of $1,500 is Reasonable*

Mr. Galipo's requested hourly rate of $1,500 is supported by prior fee awards in this district progressing from $1,100 (2020), to $1,200 (2023), to $1,300 (2024), to $1,400 (2024 and 2026). Judge Drozd of the Eastern District of California recently noted on the record: "There is no doubt in my mind - and I don't even think defense counsel would disagree - Mr. Galipo is as good as it gets, at least in this court ... he's a fabulous trial lawyer, he's a pleasure to have in court ... he's a pro's pro." After that hearing, Judge Drozd awarded Mr. Galipo $1,300 per hour for work performed in 2024 and prior to 2024, over two years ago. [Dkt. 261-2 at ¶ 26].

As set forth in Mr. Galipo's Declaration (Dkt. 261-2), Judge Wright of this district awarded Mr. Galipo $1,300 per hour in June 2024 in *Zelaya v. City of Los Angeles* for work performed in 2022 and 2023, following a $13.5 million jury verdict. Judge Bernal of this district awarded Mr. Galipo $1,400 per hour in February 2024 for appellate work in *French v. City of Los Angeles*, Case No. EDCV 20-0416 JGB. Inflation and Mr. Galipo's continued record of success—including a $30.5 million verdict in *Lewis v. Kern County*, Case No. 1:21-cv-00378-KES-CDB, in March 2025, the $27,350,000 verdict in this case, and his recent $17 million verdict in the police shooting case *Garcia v. City of Tustin*, Case No. 22-cv-00131-SPG on April 21, 2026, where he was awarded an hourly rate of $1,400—justify the incremental increase to $1,500. In fact, many of Mr. Galipo's fellow trial attorneys believe that Mr. Galipo's hourly rate should be $2,000 per hour. Even Defendants concede that Mr. Galipo's hourly rate should be no lower than $1,336.

Mr. Galipo's request for an hourly rate of $1,500 is also supported by the Declaration of Carol Sobel. As Ms. Sobel stated in her declaration:

> I am very familiar with Mr. Galipo and know him for many years. In my experience he is, perhaps, the most skilled trial lawyer in complex civil rights cases involving deaths and serious injury caused by law enforcement. Based on discussions I have had with other civil rights lawyers in California, I believe my view of Mr. Galipo's reputation and his skill are broadly shared.

[Dkt. 262 at ¶ 32]. Ms. Sobel's opinions on Mr. Galipo's hourly rate are well supported by her interpretation of the Real Rate Report and the exhibits filed concurrently with her declaration.

Given Mr. Galipo's precedent-setting jury verdicts as described in his Declaration (Dkt. 261-2), the number of verdicts in civil rights cases, his published appellate opinions, his numerous prior attorney fee awards, and the recognition he has received as a trial attorney for his work in police excessive force cases, including his membership in the Inner Circle of Advocates, the "2020 Consumer Attorney of the Year" from CAOC and "2020 Trial Lawyer of the Year" award from CAALA, his request for $1,500 per hour is reasonable. In addition to his hourly rate being reasonable, the number of hours he billed is reasonable. Mr. Galipo tried the entire case with the exception of one witness, and he only billed 421.3 hours, showing that he was extremely efficient with his time and also underbilled.

Additionally, the Ninth Circuit has recently held that small firms can be awarded "big law" rates in a motion for attorney fees, and that a district court abuses its discretion in setting rates based on the attorney's prior fee award with a slight adjustment for inflation rather than calculating the fee based on the prevailing market rate. *LA International Corp. v. Prestige Brands Holdings, Inc.*,

168 F.4th 608, 624-26 (9th Cir. 2026). Defendants' approach of anchoring all rates to prior awards contradicts this binding authority.

***3. Mr. Diggs' Requested Hourly Rate of $1,250 is Reasonable***

Mr. Diggs is an experienced civil rights partner who originated this representation, tried the case alongside Mr. Galipo, and examined Plaintiff at trial. He managed the case from inception in 2021 through verdict in 2026 - nearly five years of contingency work. Defendants propose $875/hr (median litigation partner in L.A.). Given Mr. Diggs' 17 years of practice, his leadership role, and his trial participation, the median rate is inadequate. Courts in this district have regularly awarded rates above the Real Rate Report median to civil rights attorneys of comparable experience who take on difficult contingency cases. An award at the upper range of the median-to-Q3 spectrum is appropriate.

***4. Ms. Masongsong's Requested Hourly Rate of $900 is Reasonable***

Ms. Masongsong has previously been awarded $550 (2020), $600 (2022), $700 (2024), $800 (2024 and 2026) per hour by courts in this district, with each award reflecting her increased experience, skill, and the inflation-adjusted market rate. Defendants do not dispute her qualifications, only the rate. Ms. Masongsong was an integral part of Plaintiff's team in this case. Ms. Masongsong handled Plaintiff's opposition to Defendants' motion for summary judgment and Plaintiff's ex parte application to certify Defendants' appeal as frivolous, which allowed the case to proceed to trial. Ms. Masongsong also assisted with expert retention and depositions, handled the pretrial documents and was Mr. Galipo's primary support during the trial. Ms. Masongsong also handled Plaintiff's oppositions to Defendants' post-trial motions, and her participation in trial contributed to her ability to competently handle those oppositions. [Dkt. 261-6 at ¶ 12].

Ms. Masongsong's requested hourly rate of $900 per hour is supported by the Declaration of Carol Sobel (Dkt. 262 at ¶¶ 33, 39, 43, 46-47) and the

Declaration of Mr. Galipo (Dkt. 261-2 at ¶ 32). Ms. Masongsong has been practicing law in the civil rights arena for over thirteen (13) years, and she has been influential in several of Mr. Galipo's large verdicts in civil rights cases. [Dkt. 261-6 at ¶ 11].

Defendants argue that Ms. Masongsong's 18.5 hours of travel time (3.5–4.0 hours per trial day) should be excluded. The law is clear that "reasonable travel time by the attorney is compensable, at full rates." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014). Trial was held in the Eastern Division of the Central District, requiring Mr. Masongsong, who is based in Woodland Hills, to travel to and from court each trial day.

***5. Mr. Tanter's Requested Hourly Rate of $650 is Reasonable***

Defendants propose a First Quartile rate of $461 for Mr. Tanter. Mr. Tanter is a licensed attorney who performed substantive legal work on this matter. Application of the First Quartile rate—reflecting the lowest 25% of the market—for an attorney doing complex civil rights litigation under the supervision of a nationally recognized firm is unreasonably low. A rate in the median range is appropriate.

***6. Mr. Fattahi's Requested Hourly Rate of $1,115 is Reasonable***

Mr. Fattahi has operated his own civil rights practice since 2012, and also serves as "of counsel" for Mr. Galipo's firm. As Judge Bernal found in *French v. City of Los Angeles*, EDCV 20-0416 JGB (SPx), "hourly rates for partners provide a more appropriate measure for Mr. Fattahi's compensation than rates for associates." [Dkt. 261-21, p. 24]. Mr. Fattahi has successfully defended millions of dollars in judgments, including several obtained by Mr. Galipo, on post-trial motions and appeal. Mr. Fattahi's 17 years of federal trial and appellate experience, including his 15 years of litigating police civil rights cases was reasonably sought in order to defend the verdict in this matter against post-trial

motion and appellate challenges. Indeed, Mr. Knapton declared in *Trendsettah* that it was similarly reasonable for the Gaw | Poe firm to associate with additional appellate counsel to protect a "high stakes" breach-of-contract verdict that was *less* than the verdict here—and *less* than the $11,760,292 lodestar fees that Mr. Knapton found reasonable in that case. [Masongsong Reply Decl., Ex. 1, p. 6].

***7. The Increase in Hours is Reasonable***

Since the filing of Plaintiff's initial Fees Motion, Plaintiff's attorneys have performed significant work on the case, including: reviewing all trial transcripts; opposing Defendants' Rule 50(b) Motion; opposing Defendants' Ruled 59 Motion; drafting Plaintiff's Reply to the initial Fees Motion; drafting documents relating to the remittitur issue and engaging in related discussions with defense counsel to reach a settlement as to the economic damages; preparing Plaintiff's refiled Fees Motion and the instant reply thereto. This additional work was necessary to protect Plaintiff's verdict and is specifically documented in counsel's timesheets accompanying Plaintiff's refiled Fees Motion.

Defendants take issue billing entries for "duplicative" work. However, some degree of duplication is to be expected as an inherent part of the process. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("Division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings. Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law."). "[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995). "[T]he district court may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno*, 534 F.3d at 1114 (citation omitted).

Defendants' expert recommends a 10% reduction to Mr. Galipo's hours for "vague" trial preparation entries. Courts in this district have consistently found Mr. Galipo's "Trial Preparation*" entries—accompanied by an asterisk explaining the detailed tasks included—to be acceptable. Courts have found reasonable Mr. Galipo's trial preparation hours totaling 206-390 hours over comparable trial periods. [*See generally* Dkt. 621-4-13, Exhibits 2-13 to Galipo Decl.]. The asterisk footnote identifying the specific tasks covered by "Trial Preparation" provides sufficient detail for the Court to assess reasonableness. Any further reduction would be punitive and inconsistent with the Ninth Circuit's admonition that "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112.

***8. Support Staff Rates and Work***

Defendants do not request that all of paralegal Ms. Williams' hours be struck, seemingly acknowledging that she performed significant legal work that was instrumental to the case. Defendants appear to contend that the Court should disallow all hours sought by Plaintiff's legal assistants Ms. Gilbert, Ms. Metoyer and Ms. Feather, because purely clerical or secretarial tasks are not compensable. While that may be true, legal assistants do not perform purely clerical tasks, and "it is appropriate to distinguish between non-legal, 'purely clerical' work, which is not compensable, and substantive legal work, which may be." *Zelaya v. City of Los Angeles*, 2024 WL 3183882, at *5. "[T]asks like drafting discovery correspondence, preparing deposition notices, and reviewing and organizing case files are not necessarily purely clerical tasks and may be compensable. *Id.* The tasks performed by the legal assistants were not all purely clerical tasks. Thus, the Court should not disallow all hours billed by the legal assistants.

The Supreme Court in *Missouri v. Jenkins,* 491 U.S. 274 (1989) directly addressed whether paralegal and law clerk work should be compensated at prevailing market rates or merely at cost to the attorney. 491 U.S. 274 (1989). Defendant *Missouri* argued that while compensation for the cost of these personnel should be included in fee awards, an hourly rate corresponding to their salaries, benefits, and overhead would be appropriate rather than market rates. *Id*. The Court rejected this position, holding that separate compensation for paralegals and law clerks at prevailing market rates was "fully in accord" with the Civil Rights Attorney's Fees Awards Act. *Id*.

Further, the Courts in the Central District routinely approve paralegal rates in the $300 to $400 per hour range for experienced paralegals like Ms. Williams. In *Rahman v. FCA US LLC*, 594 F.Supp.3d 1199, 1204 (C.D. Cal. 2022), the district court found that the requested hourly rates were reasonable where "numerous recent opinions had approved the same or substantially similar rates" for the legal team members. Here, Ms. Gilbert, Ms. Metoyer and Ms. Feather are seeking rates far less than the $300 to $400 range, despite their experience as described in their declarations.

**C. No Reduction is Warranted Based on the *Monell* Claim**

Plaintiff disputes Defendants' characterization of the verdict as "mixed success." [Def. Mot. at 21:7-9]. Plaintiff prevailed on five out of six of his claims. [Dkt. 200]. Defendants' request that this Court strike 25% to 50% of the Lodestar based on one unsuccessful claim when five claims were successful is illogical. [Def. Mot. at 12:15-16, 21:26]. Further, Defendants and Mr. Knapton do not specify which of the time entries were devoted towards developing *Monell*. [Def. Mot. at 21:23-25; Dkt. 268-1 at ¶ 31]. The *Monell* claim arose from the same core facts as Plaintiff's five successful claims—all turned on whether Deputy Alfred's conduct was constitutional. Discovery, expert work, and trial preparation were

shared across all claims. Plaintiff retained no *Monell* expert and took no *Monell* depositions. There was no testimony specific only to *Monell* presented at trial. Other than the brief section of the MSJ opposition, the record does not show that Plaintiff's counsel devoted hours solely to the *Monell* claim and to no other purpose.

*Webb v. Sloan*, 330 F.3d 1158 (2003), addressed this issue and supports Plaintiff's position. *Webb* relied on *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 902–03 (9th Cir. 1995), where the Ninth Circuit held that "the focus is on whether the claims arose out of a common course of conduct. *Id.* In short, claims may be related if either the facts *or* the legal theories are the same." Following Schwarz, the *Webb* court held that the plaintiff's unsuccessful claims for false arrest and failure to train were related to the successful claim for prosecution without probable cause, and the plaintiff was entitled to fees for time spent on those unsuccessful claims. "[T]he district court should exclude the hours spent on that claim only if those hours can be isolated. *Hensley* recognized that work on different aspects of a case often overlaps, and that "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Webb*, 330 F.3d at 1169 (quoting *Hensley*, 461 U.S. at 425). The deciding court also considers whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. If the deciding court concludes the prevailing party achieved "excellent results," it may permit a full fee award. *Id.* at 435.

## IV. 2.0 LODESTAR MULTIPLIER IS APPROPRIATE

### A. The Bane Act Authorizes a Multiplier

A number of California cases have relied on the contingent risk factor to apply a lodestar multiplier when there is an applicable statutory fee provision (here, the Bane Act). *See*, *e.g.*, *Flannery v. California Highway Patrol*, 61 Cal.

App. 4th 629, 640-47 (1998); *Downey Cares v. Downey Community Development Com.*, 196 Cal. App. 3d 983, 995-97 (1987). The Ninth Circuit has held that where a plaintiff prevails on both federal and state claims—including the Bane Act—the state law multiplier applies to the full lodestar, not merely to hours attributable to the Bane Act. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014); *Pierce v. County of Orange*, 905 F.Supp.2d 1017 (2012). In *Rodriguez v. Barrita, Inc.*, 53 F.Supp.3d 1268, 1286 (2014), the district court acknowledged that "when a plaintiff in federal court prevails under both federal and state law, the district court 'may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk.'" This language indicates that the enhancement is not artificially limited to time spent exclusively on state law claims but rather encompasses the entire fee award.

The California Supreme Court has rejected a similar argument to the one Defendants make, that Plaintiff should be awarded no enhancement because his counsel stands to yield over $10.9 million from the contingency fee [Def. Mot. at 23:5-7] stating, "[n]or is it true that applying a fee enhancement will inevitably result in unfair double counting or a windfall to attorneys," since "the lodestar was expressly based on the general local rule for legal services in a *noncontingent* matter, where payment is certain regardless of outcome," "it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider" in awarding a multiplier. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001).

Contrary to Defendants' opposition, Plaintiff has cited Bane Act cases where a multiplier was awarded. In *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968 (2013), following a jury verdict for plaintiff on the Bane Act claim, the Court of Appeal affirmed a 1.2 multiplier, noting that counsel put "both their time and their purse at risk" and that the prosecution of the case was "tenacious, skillful and

effective." Recently, in *Garcia v. City of Tustin*, Case No. 8:22-cv-00131-SPG-KES, a police excessive force case tried by Mr. Galipo, a jury found in the plaintiffs' favor on their Bane Act claim. In ruling on the plaintiffs' motion for attorneys' fees, the presiding Central District judge granted a 1.6 multiplier. [*See* Dkt. 261-22]. In the police use of force case *L.D./Juan Frias v. City of Los Angeles*, Case No. CV 16-4626 PSG (SKx), after the jury found in the plaintiffs' favor on the Bane Act claim, the Central District judge granted a 1.5 lodestar multiplier. [Dkt. 261-18]. Here, the result was even more impressive—a $27,350,000 verdict after five years of litigation, over vigorous opposition, and despite difficult evidence—warranting a more significant enhancement. If this Court is not inclined to award a 2.0 multiplier, then this Court should consider, at minimum, a 1.5 multiplier.

### B. The 2.0 Multiplier Is Well-Supported by the *Ketchum/ Serrano* Factors

Under *Ketchum v. Moses*, the lodestar may be enhanced based on "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award." 24 Cal. 4th 1122, 1132 (2001); *see also Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977). Contrary to Defendants' argument that the lodestar should be reduced under the Kerr factors, the lodestar should actually be enhanced.

Each factor weighs in Plaintiff's favor. This case was complicated from inception by allegations that Plaintiff intentionally reversed his vehicle toward Deputy Alfred, by damaging evidence arising from Plaintiff's criminal history, and by the concurrent criminal prosecution that threatened to bar the civil case entirely under *Heck*. Plaintiff's counsel had to conduct depositions, review numerous discovery materials, retain and pay multiple experts, and spend almost two weeks

away from the office at trial. Defendants' position was that the case had little value, as reflected in their arguments to the jury and their settlement posture. Despite the negative evidence, Plaintiff's counsel achieved a successful result—a testament that truly difficult cases such as this require truly dedicated and highly skilled representation.

Plaintiff's counsel also invested hundreds of hours of uncompensated time and incurred costs, including expert retention fees, without any interim payments from Plaintiff or guarantee of success at trial. Many more hours and expenses are expected to be put at risk based on an anticipated appeal. Defendants suggest that the contingency risk is already subsumed in the lodestar under federal law, citing *City of Burlington v. Dague*, 505 U.S. 557 (1992). But the Ninth Circuit has expressly held that California law—which expressly authorizes a contingency multiplier—applies when a plaintiff succeeds on both federal and state claims. The rationale is straightforward: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum*, 24 Cal.4th at 1132-33.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorneys' fees in the current total amount of $8,270,034, which includes a 2.0 lodestar enhancement.

Dated: October 15, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: /s/ *Renee V. Masongsong*
Dale K. Galipo, Esq.
Renee V. Masongsong, Esq.
Attorneys for Plaintiff

**IVIE McNEILL WYATT PURCELL & DIGGS**

By: /s/ *Rodney S. Diggs*
Rodney S. Diggs, Esq.
Brandon Tanter, Esq.
Attorneys for Plaintiff